1  **BIBIYAN LAW GROUP, P.C.**
   David D. Bibiyan (SBN 287811)
2  *david@tomorrowlaw.com*
   Jeffrey D. Klein (SBN 297296)
3  *jeff@tomorrowlaw.com*
   Sarah H. Cohen (SBN 330700)
4  *sarah@tomorrowlaw.com*
   8484 Wilshire Boulevard, Suite 500
5  Beverly Hills, California 90211
   Tel: (310) 438-5555; Fax: (310) 300-1705
6
   Attorneys for Plaintiff, MACKENZIE ANNE THOMA,
7  and on behalf of herself and all others similarly situated

8           **UNITED STATES DISTRICT COURT**

9           **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  MACKENZIE ANNE THOMA, a.k.a. KENZIE ANNE, an individual and on behalf of all others similarly situated, | CASE NO.: 2:23-cv-04901-WLH (AGRx) |
| 12 | *[Assigned to the Hon. Wesley L. Hsu]* |
| 13              Plaintiff, | **NOTICE OF MOTION AND MOTION FOR ORDER REMANDING ACTION TO STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF SARAH COHEN IN SUPPORT THEREOF** |
| 14       v. | |
| 15  VXN GROUP LLC, a Delaware limited liability company; STRIKE 3 HOLDINGS, LLC, a Delaware limited liability company; GENERAL MEDIA SYSTEMS, LLC, a Delaware limited liability company; MIKE MILLER, an individual; and DOES 1 through 100, inclusive, | |
| 16 | |
| 17 | DATE:        August 18, 2023 |
| 18 | TIME:         1:00 p.m. |
| 19 | COURTRM:   9B |
| 20 | State Action Filed:   April 20, 2023 |
| | Removal Date:       June 21, 2023 |
| 21              Defendants. | *(Los Angeles County Superior Court, Case No.: 23STCV08761)* |
| 22 | [[Proposed] Order Lodged Herewith] |
| 23 | [Evidentiary Objections filed concurrently herewith] |
| 24 | Trial Date: None Set |

25

26

27

28

Law Offices of
BIBIYAN LAW GROUP
A Professional Corporation
8484 Wilshire Blvd., Suite 500
Beverly Hills, California 90211
(310) 438-5555

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND; MEMO. OF P's & A's

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 18, 2023 at 1:00 p.m., or as soon thereafter as the matter can be heard in Courtroom Number 9B of the above-referenced court, located at 350 West First Street, Los Angeles, California 90012, Plaintiff Mackenzie Anne Thoma ("Plaintiff"), as an individual and on behalf of all others similarly situated, will and hereby does move this Court for an Order remanding the instant Action back to the state court in which it was originally filed. The Motion will be based on this Notice, the Memorandum of Points and Authorities, the Proposed Order lodged concurrently herewith, the complete files and records in this action, and all other matters and evidence that may be presented at the hearing on this Motion.

The Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on June 27, 2023, between counsel for Plaintiff, Sarah H. Cohen, on the one hand; and counsel for defendants VXN Group LLC; Strike 3 Holdings, LLC; General Media Systems, LLC; and Mike Miller (collectively, "Defendants"), on the other hand. *See* Declaration of Sarah Cohen, ¶ 4.

Plaintiff moves this Court to remand this Action back to the State Court where it belongs, and that the Clerk of the Court send a certified copy of the Order to the clerk of the State Court where the Action was originally filed, because this Court lacks subject-matter jurisdiction over the Action under the basis advanced by Defendants. Specifically, CAFA jurisdiction has not been established, as Defendants cannot demonstrate that the amount in controversy exceeds $5,000,000.00.

/ / /

/ / /

/ / /

/ / /

/ / /

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND; MEMO. OF P's & A's

Plaintiff also moves for remand on the separate and independent ground that this Court does not have equitable jurisdiction over Plaintiff's claim for equitable relief under the California Unfair Competition Law, Business & Professions Code section 17200.

DATED: July 21, 2022                    BIBIYAN LAW GROUP, P.C.

                                        By:    */s/ Sarah H. Cohen*
                                               DAVID D. BIBIYAN
                                               JEFFREY D. KLEIN
                                               SARAH H. COHEN
                                               Attorneys for Plaintiff, MACKENZIE
                                               ANNE THOMA, and on behalf of
                                               herself and all others similarly situated

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND; MEMO. OF P's & A's

# **TABLE OF CONTENTS**

I.    INTRODUCTION AND PROCEDURAL HISTORY .................................... 1

II.    LEGAL STANDARDS ................................................................................ 2

III.   SUMMARY OF ARGUMENT ................................................................... 4

    A.    Defendants Fail to Establish Subject-Matter Jurisdiction under CAFA ................................................................................................ 4

    B.    Remand Is Also Warranted for a Lack of Equitable Jurisdiction ........... 9

IV.   DEFENDANTS FAIL TO PROVE BY A PREPONDERANCE OF EVIDENCE THAT CAFA'S AMOUNT-IN-CONTROVERSY REQUIREMENT IS SATISFIED ................................................................ 10

    A.    Defendants Have Not Proffered the Requisite Credible, Summary-Judgment-Type Evidence to Establish the Amount in Controversy ................................................................................... 10

    B.    Defendants' Amount-in-Controversy Calculations Rely on Speculative and Unsupported Assumptions and Must Be Discounted ...................................................................................... 13

    C.    Defendants' Attempt to Balloon the Amount in Controversy with Unsubstantiated Attorneys' Fees is Improper and Should Be Rejected .............................................................................................. 20

V.    REMAND IS ALSO WARRANTED BECAUSE THIS COURT LACKS EQUITABLE JURISDICTION OVER PLAINTIFF'S UCL CLAIM ..................................................................................................... 22

VI.   CONCLUSION ......................................................................................... 24

Law Offices of
BIBIYAN LAW GROUP
A Professional Corporation
8484 Wilshire Blvd., Suite 500
Beverly Hills, California 90211
(310) 438-5555

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND; MEMO. OF P's & A's

# **TABLE OF AUTHORITIES**

## ***Statutes***

28 U.S.C. § 1332(d) ..................................................................................................1

Cal. Lab. Code § 510(a) ........................................................................................17

Cal. Lab. Code, § 226(a) ........................................................................................12

U.S.C. § 1441(a) .......................................................................................................1

U.S.C. § 1446 ............................................................................................................1

U.S.C. § 1453 ............................................................................................................1

## ***Rules***

Fed. R. Civ. P. 56(e) ..............................................................................................12

## ***Cases***

*Abrego Abrego v. Dow Chem Co.*,

      443 F.3d 676, 685 (9th Cir. 2006) ....................................................................3

*Akana v. Estee Lauder Inc.*,

      2019 WL 2225231 (C.D. Cal. May 23, 2019) ...............................................17

*Armstrong v. Ruan Transp. Corp.*,

      2016 WL 6267931 (C.D. Cal. Oct. 25, 2016) .........................................11, 14

*Arreola v. Finish Line*,

      2014 WL 6982571 (N.D. Cal. Dec. 9, 2014) ...................................................7

*Barajas v. CPC Logistics Solutions, LLC*,

      2022 WL 4397723 (N.D. Cal. Sept. 23, 2022) .........................................15, 19

*Bias v. Moynihan*,

      508 F.3d 1212 (9th Cir. 2007) .........................................................................12

*Boone v. Amazon.com Servs., LLC*,

562 F.Supp.3d 1103 (E.D. Cal. 2022) ..................................................................23

*Caterpillar Inc. v. Williams*,

482 U.S. 386, 392 (1987) .........................................................................................7

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND; MEMO. OF P's & A's

*Cates v. Allen*,

    149 U.S. 451 (1893) ..................................................................................23

*Cisneros v. Lerner New York, Inc.*,

    2016 WL 4059612 (C.D. Cal. Jul. 25, 2016) ..............................................7

*Clevenger v. Welch Foods, Inc.*,

    2023 WL 2390630 (C.D. Cal. Mar. 7, 2023) ............................................24

*Dart Cherokee Basin Operating Co., LLC v. Owens*,

    574 U.S. 81 (2014) ......................................................................................3

*Dobbs v. Wood Grp. PSN, Inc.*,

    201 F.Supp.3d 1184 (E.D. Cal. 2016) ...............................................6, 10

*Dunn v. SHC Servs., Inc.*,

    2021 WL 5122057 (E.D. Cal. Nov. 4, 2021) .......................................11, 12

*Duran v. Allegis Glob. Sols., Inc.*,

    2021 WL 3281073 (N.D. Cal. Aug. 2, 2021)................................8, 15, 16, 21

*Fan v. Home Depot U.S.A., Inc.*,

    2022 WL 16964099 (E.D. Cal. Nov. 16, 2022) .......................................9, 23

*Frias-Estrada v. Trek Retail Corp.*,

    534 F.Supp.3d 1058 (N.D. Cal. 2021) ................................................3, 21

*Fritsch v. Swift Transp. Co. of Ariz., LLC*,

    899 F.3d 785 (9th Cir. 2018) ...................................................................20

*Gaus v. Mile, Inc.*,

    980 F.2d 564 (9th Cir. 1992)......................................................................2

*Getaw v. Consol. Disposal Serv., LLC*,

    2021 WL 4902465 (C.D. Cal. Oct. 20, 2021) ..........................................11

*Gonzalez v. H & M Hennes Mauritz L.P. et al.*,

    2022 WL 179292 (C.D. Cal. Jan. 20, 2022) ..............................................8

*Gonzalez v. H&M Hennes & Mauritz L.P.*,

    2022 WL 179292 (C.D. Cal. Jan. 20, 2022) ........................................8, 15

vi

*Great N. R. Co. v. Alexander*,

    246 U.S. 276 (1918) ..................................................................2

*Guaranty Trust Co. of N.Y. v. York*,

    326 U.S. 99 (1945) ..................................................................22

*Guthrie v. Transamerica Life Ins. Co.*,

    561 F.Supp.3d 869 (N.D. Cal. 2021) .....................................4, 22, 24

*Holcomb v. Weiser Sec'y Servs., Inc.*,

    424 F.Supp.3d 840 (C.D. Cal. 2019)............................................14

*Ibarra v. Manheim Invs., Inc.*,

    775 F.3d 1193 (9th Cir. 2015)...............................................passim

*In re Ambry Genetics Data Breach Litig.*,

    567 F.Supp.3d 1130 (N.D. Cal. 2021) .........................................23

*Jauregui v. Roadrunner Transp. Servs., Inc.*,

    28 F.4th 989 (9th Cir. 2022).................................................5, 11, 13

*Koreisz v. On Q Fin., Inc.*,

    2018 WL 6567694 (C.D. Cal. Dec. 12, 2018) .................................8

*Korn v. Polo Ralph Lauren Corp.*,

    536 F.Supp.2d 1199 (E.D. Cal. 2008)...........................................3

*Lacasse v. USANA Health Sci., Inc.*,

    2021 WL 107143 (E.D. Cal. Jan. 12, 2021).....................................8

*LaCross v. Knight Transp., Inc.*,

    775 F.3d 1200 (9th Cir. 2015)....................................................6

*Lewis v. Verizon Commc'ns., Inc.*,

    627 F.3d 395, 399 (9th Cir. 2010)................................................3

*Lockhart v. Columbia Sportswear Co.*,

    2016 WL 2743481 (C.D. Cal. May 11, 2016) ................................12

*Martinez v. BAART Programs, Inc.*,

    2019 WL 6210932, at *2 (C.D. Cal. Nov. 21, 2019)........................14

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND; MEMO. OF P's & A's

*McGill v. Pac. Tel. Co.*,

    139 F.Supp.3d 1109 (C.D. Cal. 2015)..................................................2

*McGill v. Pac. Bell Telephone Co.*,

    139 F.Supp.3d 1109, 1115 (C.D. Cal. 2015).......................................2

*Morales v. Trans World Airlines, Inc.*,

    504 U.S. 374 (1992) ...........................................................................4

*Morris v. Camden Dev., Inc.*,

    2018 WL 4156593 (C.D. Cal. Aug. 27, 2018)..................................16

*Pac. Mar. Ass'n v. Mead*,

    246 F.Supp.2d 1087 (N.D. Cal. 2003) ................................................2

*Quackenbush v. Allstate Ins. Co.*,

    517 U.S. 706 (1996) .....................................................................23, 24

*Rodriguez v. AT&T Mobility Servs. LLC*,

    728 F.3d 975 (9th Cir. 2013)...............................................................3

*Roth v. Comerica Bank*,

    799 F.Supp.2d 1107 (C.D. Cal. 2010)...............................................19

*Ryan v. Mission Treatment Servs., Inc.*,

    2022 WL 4331093 (C.D. Cal. Sept. 19, 2022)..............................8, 14

*Salazar v. Johnson & Johnson Consumer Inc.*,

    2018 WL 4560683 (C.D. Cal. Sept. 19, 2018)..............................8, 16

*Schlesinger v. Councilman*,

    420 U.S. 738 (1975) .........................................................................22

*Serrano v. 180 Connect, Inc.*,

    478 F.3d 1018, 1021 (9th Cir. 2007)...................................................3

*Sharma v. Volkswagen AG*,

    524 F.Supp.3d 891 (N.D. Cal. 2021) ..................................................9

*Smith v. Diamond Resorts Mgmt.*,

    2016 WL 356020 (C.D. Cal. 2016)...................................................21

viii

*Sonner v. Premier Nutrition Corp.*,

    971 F.3d 834 (9th Cir. 2020)......................................................................4, 22

*Syngenta Crop Protection, Inc. v. Henson*,

    537 U.S. 28 (2002) ...........................................................................................2

*TopDevz, LLC v. LinkedIn Corp.*,

    2021 WL 3373914 (N.D. Cal. Aug. 3, 2021)................................................23

*Toribio v. ITT Aerospace Controls LLC*,

    2019 WL 4254935 (C.D. Cal. Sept. 5, 2019)....................................8, 9, 15, 17

*Treinish v. iFit Inc.*,

    2022 WL 5027083 (C.D. Cal. Oct. 3, 2022) ................................................22

*Twist v. Prairie Oil & Gas Co.*,

    274 U.S. 684 (1927) .....................................................................................23

*Valdez v. Allstate Ins. Co.* ,

    372 F.3d 1115 (9th Cir. 2004).........................................................................2

*Vanegas v. DHL Express (USA), Inc.*,

    2021 WL 1139743 (C.D. Cal. Mar. 24, 2021) ................................................9

*Vasserman v. Henry Mayo Newhall Mem. Hosp.*,

    65 F.Supp.3d 932 (C.D. Cal. 2014)...........................................................6, 16

*Weston v. Helmerich & Payne Inter. Drilling Co.*,

    2013 WL 5274283 (E.D. Cal. Sept. 17, 2013).......................................11, 17

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND; MEMO. OF P's & A's

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION AND PROCEDURAL HISTORY

On April 20, 2023, Plaintiff Mackenzie Anne Thoma ("Plaintiff") filed a putative class action complaint (Dkt. # 1, Ex. A, *hereinafter* "Complaint" or the "Action") in the Superior Court of the State of California for the County of Los Angeles naming as defendants: VXN Group LLC; Strike 3 Holdings, LLC; General Media Systems, LLC; and Mike Miller (collectively "Defendants" and together with Plaintiff, the "Parties"). Plaintiff asserts various wage-and-hour causes of action against Defendants, her former employers, under the California Labor Code, as well as a claim for unfair competition under Business & Professions Code section 17200. *See generally* Complaint.

On June 21, 2023, Defendants filed a Notice of Removal in this Court, asserting that federal jurisdiction exists in this Action on the basis of the Class Action Fairness Act of 2005 ("CAFA"), codified at, *inter alia*, 28 U.S.C. §§ 1332(d), 1441(a), 1446, and 1453. *See* Dkt. # 1, Notice of Removal ("NOR"), p.7. Defendants assert that the Action satisfies all the requirements for the exercise of federal jurisdiction under CAFA, including in material part that the claims of Plaintiff and Class Members herein "put an amount well over CAFA's $5,000,000 threshold in controversy." *Id.*, ¶ 15.

Plaintiff now brings the instant Motion for Remand on the separate grounds that: (1) the Court lacks subject-matter jurisdiction under CAFA in this Action; and (2) the Court cannot assert federal equitable jurisdictions over Plaintiff's equitable claims for relief asserted under substantive California state law. Defendants' claim that CAFA's jurisdictional requirements have been met here is supported almost entirely by an outrageously inflated estimate for the amount placed in controversy by Plaintiff's waiting time penalties claim—an estimate that is unsupported by any substantive evidence whatsoever beyond Defendants' bare, conclusory assumption that *each and every* Class Member during the relevant period was subjected to Labor

Code violations giving rise to waiting time penalties for the *maximum* statutory amount. Such bare assumptions, without the support of the requisite "summary-judgment-type" evidence required by the Ninth Circuit, plainly do not suffice to carry Defendants' burden to establish jurisdiction under CAFA. *See Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (internal quotes omitted). Thus, there has been no showing that federal jurisdiction exists over this Action and the case should be remanded to the California state court in which it was originally filed.

## II.    LEGAL STANDARDS

### A. General Principles Governing Removal Jurisdiction

Because the right to remove an action to federal court on the basis of diversity of citizenship is "a creature of statute," the long-standing rule is that "a suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress." *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 28-29 (2002) (quoting *Great N. R. Co. v. Alexander*, 246 U.S. 276, 280 (1918)).

The burden of establishing federal jurisdiction rests with the party seeking removal. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). The removing party must, by a preponderance of evidence, "***actually prov[e]*** the facts to support jurisdiction, including the jurisdictional amount." *Gaus v. Mile, Inc.*, 980 F.2d 564, 566-567 (9th Cir. 1992) (emphasis added); *accord Luther v. Countrywide Home Loans Servicing, LP,* 533 F.3d 1031, 1034 (9th Cir. 2008) ("defendant seeking removal … has the burden to establish that removal is proper and any doubt is resolved against removability.") On a motion for remand, the non-moving party must identify "a legitimate source of the court's jurisdiction," and "[d]isputed questions of fact and ambiguities in the controlling law must be resolved in favor of the remanding party." *Pac. Mar. Ass'n v. Mead*, 246 F.Supp.2d 1087, 1089 (N.D. Cal. 2003). A federal court thus must reject jurisdiction over a case "if there is *any* doubt as to the right of removal." *McGill v. Pac. Tel. Co.*, 139 F.Supp.3d 1109, 1115 (C.D. Cal. 2015) (emphasis added).

### B. CAFA Jurisdictional Analysis

Congress enacted CAFA, a statute specifying grounds for removal of state-court class actions to federal court, intending for federal courts to apply it in harmony with the general rule that the grounds for removal must be affirmatively proven to establish federal jurisdiction. *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007) ("[When enacting CAFA], Congress intended to maintain the historical rule that it is the proponent's burden to establish a prima facie case of removal jurisdiction")). Indeed, under CAFA, "the burden of establishing removal jurisdiction is, as it was before CAFA, on the party wishing to see the case in federal court." *Lewis v. Verizon Commc'ns., Inc.,* 627 F.3d 395, 399 (9th Cir. 2010) (citing *Abrego Abrego v. Dow Chem Co.,* 443 F.3d 676, 685 (9th Cir. 2006)); *see also Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1206 (E.D. Cal. 2008) ("[T]he removing party bears the burden of establishing federal jurisdiction under the CAFA."). This is particularly the case where "damages are unstated in a complaint[.]" *Frias-Estrada v. Trek Retail Corp.*, 534 F.Supp.3d 1058, 1062 (N.D. Cal. 2021) (quoting *Ibarra*, 775 F.3d at 1197).

In addition to establishing CAFA's other requirements, "[a] defendant seeking removal of a putative class action must demonstrate, ***by a preponderance of the evidence***, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) (emphasis added). "When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold." (*Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020); *see also Dart Cherokee Basin Operating Co., LLC v. Owens* 574 U.S. 81, 89 (2014) (holding that a defendant asserting removal jurisdiction under CAFA must proffer "[e]vidence establishing the amount [in controversy]" where "the plaintiff contests, or the court questions, the defendant's allegations.").

Thus, if after consideration of the Parties' positions and the evidence presented on the instant Motion, *any* doubt remains as to the propriety of removal, federal jurisdiction must be rejected and the Action remanded to state court.

## C. Principles of Federal Equitable Jurisdiction

A federal court's power to entertain a claim for equitable relief is strictly limited and "subject to traditional equitable principles unaffected by state law." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841 (9th Cir. 2020). Chief among these constraints is the "basic doctrine … that courts of equity should not act when the moving party has an adequate remedy at law." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992). Thus, for a federal court to have jurisdiction over a plaintiff's claim for equitable relief, "at a minimum, a plaintiff [must] *plead* that she lacks an adequate remedy at law." *Guthrie v. Transamerica Life Ins. Co.*, 561 F.Supp.3d 869, 871 (N.D. Cal. 2021) (italics original).

## III.   SUMMARY OF ARGUMENT

### A. Defendants Fail to Establish Subject-Matter Jurisdiction under CAFA

Critically, Defendants' NOR falls short of proving by a preponderance of evidence, as it must, that this Court has subject-matter jurisdiction under CAFA. Specifically, Defendants' NOR fails to show that CAFA's $5 million amount-in-controversy requirement is satisfied.

As a threshold matter, Defendants purport to establish key data points through the Declaration of one Belen Burditte, such as size of the putative class and average rate of pay of class members, *yet proffer no evidentiary support to support their conclusory claims*. *See generally* Dkt. No. 1-2 ("Burditte Decl."). While Ms. Burditte speaks vaguely about her review of "accounting records relating to payments for all payments made to Plaintiff … and other actors who performed services for" Defendants, this purported data is not identified or authenticated in any way—much less produced in the requisite "summary-judgment-type" format. *Ibarra*, *supra*, 775 F.3d at 1197. Where, as here, the removing parties "provide[] *no* evidence or clearly

4

inadequate evidence" in support of the amount-in-controversy calculation, the Court is justified in valuing the claims at $0. *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022). Indeed, in the absence of *any* "real evidence" anchoring its estimate of the amount in controversy, the NOR does not permit the Court to determine "the reality of what is at stake in the litigation," and fails to establish CAFA jurisdiction. *Ibarra*, 775 F.3d at 1198.

Adding to the lack of any real evidence supporting their CAFA analysis, Defendants make numerous improper inferences using these unverified class data points that only further diminish their NOR's persuasiveness. For example, in purporting to estimate the amount placed in controversy by Plaintiff's waiting time penalties claim, Defendants bizarrely calculate penalties arising after the conclusion of *each and every* "Type-I Actor Engagement, after each of which the [Class Members] were effectively discharged." (NOR, ¶ 44.) This mathematical sleight of hand on Defendants' part has the effect of assuming that each individual Class Member (of whom there are only approximately 384, according to Defendants' own Declaration of Aldrich Yap, *see* Dkt. 1-1 ¶ 5) are entitled to a full 30-days' worth of waiting time penalties after *each and every* limited "Engagement." Not only do Defendants offer no legal authority to support their assumption that such stacking of waiting time penalties is permitted under California law, but they indeed assume that Class Members will be entitled to *far more* than the maximum statutory 30-day penalty.

Worse, Defendants do not even pretend that their proposed violation rates—critical variables in the CAFA amount-in-controversy calculation—are anything but arbitrary fabrications, unfounded in the language of the Complaint or any real evidence at all. Instead, Defendants rely on baseless assumptions to meet CAFA's $5 million jurisdictional minimum. Critically, without identifying *any* backing in Plaintiff's allegations or their own extrinsic evidence, Defendants assume that *every single* Class Member experienced Labor Code violations entitling them to unpaid

wages, thus calculating the amount placed in controversy by Plaintiff's waiting time penalties claim at a whopping ***100% violation rate***. *See* NOR, ¶ 30. This extreme assumptions lead to arbitrary, hyperinflated damages calculations for Plaintiff's waiting time penalties claim, in turn supporting unreasonable valuations of Plaintiff's derivate claim for waiting time penalties.

The Ninth Circuit has firmly held that "mere speculation and conjecture, with unreasonable assumptions" cannot support removal jurisdiction under CAFA. *Ibarra*, 775 F.3d at 1197-1198. Defendants also many not "improperly shift the burden to plaintiff to refute speculative assertions of jurisdiction and establish that there is no jurisdiction." *Vasserman v. Henry Mayo Newhall Mem. Hosp.*, 65 F.Supp.3d 932, 982 (C.D. Cal. 2014). To the extent that Defendants must resort to assumptions in the "chain of reasoning" supporting their calculation of the total amount in controversy, they "cannot be pulled from thin air, but need some reasonable ground underlying them." *Dobbs v. Wood Grp. PSN, Inc.*, 201 F.Supp.3d 1184, 1188 (E.D. Cal. 2016) (quoting *Ibarra*, 775 F.3d at 1199); *compare LaCross v. Knight Transp., Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015) (finding removing party's amount-in-controversy estimates reasonable where supported by concrete evidence).

Defendants inexplicably describe their assumed violation rates in support of their amount-in-controversy calculations as "logical" despite the fact that there is nothing but bare assumptions underlying Defendants' calculations of the total amount in controversy. (NOR, ¶ 30.) In reality, Defendants' amount-in-controversy calculations assume *all* Class Members experienced Labor Code violations that could support a claim for waiting time penalties and assume a greater recovery for each Class Member than is possible under California law. The Ninth Circuit has expressly disapproved of the use of such extreme assumed violation rates where neither the allegations of the complaint nor anything else in the record fairly gives rise to such assumptions. *See Garibay v. Archstone Cmties. LLC*, 539 Fed.App'x. 763, 764 (9th Cir. 2013); *see also*, *e.g.*, *Cisneros v. Lerner New York, Inc.*, 2016 WL 4059612, at

*4 (C.D. Cal. Jul. 25, 2016) ("Moreover, in calculating the amount in controversy for purposes of CAFA, courts have been hesitant to accept unsupported assumptions of a 100% violation rate."))

Here, Defendants' amount-in-controversy calculations **_directly contradict the plain language of the Complaint_**. Plaintiff is "'the master of the claim' and may avoid federal jurisdiction by pleading different facts." _Arreola v. Finish Line_, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) (quoting _Caterpillar Inc. v. Williams_, 482 U.S. 386, 392 (1987)). Thus, Defendants **may not simply ignore Plaintiff's _express_ and _repeated_ allegations that violations only occurred "at times" and "on occasion."** For example, the Complaint alleges that Defendants failed "**_at times_**, to pay all wages earned prior to termination or resignation." Complaint, ¶ 76 (emphasis added). A straightforward reading of the Complaint's plain language shows that it does not even allege _a single violation_ may have affected some Class Members; and for those who did allegedly experience violations that could give rise to derivative claims for inaccurate wage statements or failure to timely pay wages, it alleges only that those violations occurred "at times." _Id._, ¶ 22. As to overtime violations, for example, Plaintiff only alleges that Defendants "**_at times_**, failed to pay overtime wages to Plaintiff and Class Members, _**or some of them**_, in violation of California state wage and hour laws …" _Ibid._ (emphasis added).

When seeking to establish the amount in controversy under CAFA, a party is free to make assumptions reasonably "founded on the allegations of the complaint." _Arias v. Residence Inn by Marriott_, 936 F.3d 920, 925 (9th Cir. 2019). Here, however, there is simply no reasonable reading of Plaintiff's allegations (that "some" putative class members suffered violations "at times" and "on occasion") that could possibly support Defendants' assumption that every single class member experienced wage-and-hour violations _every single pay period_ throughout the Class Period as could give rise to what is constructively an extreme 100% violation rate. When confronted with language similar to Plaintiff's pleading here, numerous other federal courts have

reached this very conclusion. *See Toribio v. ITT Aerospace Controls LLC*, 2019 WL
4254935, at *3 (C.D. Cal. Sept. 5, 2019); *Salazar v. Johnson & Johnson Consumer
Inc.*, 2018 WL 4560683, at *3 (C.D. Cal. Sept. 19, 2018) (collecting cases); *Ryan v.
Mission Treatment Servs., Inc.*, 2022 WL 4331093, at *4 (C.D. Cal. Sept. 19, 2022);
*Gonzalez v. H&M Hennes & Mauritz L.P.*, 2022 WL 179292, at *3-4 (C.D. Cal. Jan.
20, 2022); *Duran v. Allegis Glob. Sols., Inc.*, 2021 WL 3281073, at *3 (N.D. Cal.
Aug. 2, 2021). As the *Duran* Court noted, where allegations reflect such limiting
language, "[i]t would be just as consistent with the complaint to assume a frequency
of once-per-month, or possibly once-per-quarter." *Duran*, 2021 WL 3281073 at *3.
Even a "20% violation rate for the wage statement claims is equally unavailing." *Ibid*.
Defendants offer no reason to find their extreme assumptions any more plausible.

Nor do Defendants proffer any evidence extrinsic to the Complaint to support
their jurisdictional assumptions. Indeed, Defendants provide no support for the
proposed violation rates' plausibility other than merely describing them as reasonable.
Yet court after court in this district have held that a party *cannot* establish CAFA
jurisdiction merely by "plucking a violation rate out of the air and calling it
reasonable." *Ryan*, *supra*, 2022 WL 4331093, at *3 (quoting *Gonzalez*, *supra*, 2022
WL 179292, at *4); *see also Toribio*, 2019 WL 4254935, at *3; *Koreisz v. On Q Fin.,
Inc.*, 2018 WL 6567694, at *3 (C.D. Cal. Dec. 12, 2018) (party did not establish
CAFA jurisdiction by "simply pull[ing] violation rates out of thin air … and
conclusively stat[ing] that they are 'reasonable inferences' about the most important
variables involved in the necessary calculations."). That Defendants assumed a lower
rate for some variables does not make them any less arbitrary or unreliable: it only
"shows how simple it is to manipulate the assumptions to produce totals larger or
smaller than the $5 million threshold." *Vanegas v. DHL Express (USA), Inc.*, 2021
WL 1139743, at *4 (C.D. Cal. Mar. 24, 2021) (quoting *Lacasse v. USANA Health
Sci., Inc.*, 2021 WL 107143, at *3 (E.D. Cal. Jan. 12, 2021)).

/ / /

Absent any real evidence supporting removal, there is no basis to find that federal jurisdiction exists here. The Honorable George Wu, sitting in this district, denigrated similar tactics in CAFA removal cases as "a wasteful and silly, but routine, exercise in mathematical fantasyland." *Toribio*, *supra*, 2019 WL 4254935, at *3. Even if Defendants revised their assumed violations rates down, any "alternative calculation [rates] provided by Defendant[s] again do[] 'not take the place of evidence.'" *Vanegas*, 2021 WL 1139743, at *4. Here, as in all of the cases cited above, "Defendant[s] ha[ve] not provided any evidence to suggest that a violation rate of once per week as opposed to once per month, or once every few months, per class member, is reasonable." *Ibid*.

In short, there is no excuse for Defendants' failure to provide anything more than unadorned conjecture and unsupported, unreasonable assumptions to justify its attempted removal of this Action. Thus, the NOR fails to meet the burden of proof once challenged to establish by a preponderance of the evidence that the $5 million jurisdictional threshold under CAFA has been met.

### B. Remand Is Also Warranted for a Lack of Equitable Jurisdiction

Remand is also warranted on the separate and independent ground that the Court lacks equitable jurisdiction over Plaintiff's claim for equitable relief under California's Unfair Competition Law, codified at Business & Professions Code section 17200 *et seq*. ("UCL").

Here, Plaintiff seeks equitable remedies under the UCL seeking *inter alia* "restitution of amounts owed" as a result of Defendants' law-breaking conduct. Complaint, ¶ 93. Plaintiff has not pleaded that no adequate remedy at law exists for his restitution claim; indeed, the remedy she seeks targets unpaid wages, which in federal court are "exactly the type of injury for which legal remedies are appropriate." *Sharma v. Volkswagen AG*, 524 F.Supp.3d 891, 908 (N.D. Cal. 2021); *see also Fan v. Home Depot U.S.A., Inc.*, 2022 WL 16964099, at *3 (E.D. Cal. Nov. 16, 2022) (holding that claim for restitution on wage-and-hour claims under the California

9

Labor Code failed to allege an inadequate remedy at law.) Because this Court lacks equitable jurisdiction and Plaintiff can *only* pursue this claim for substantive relief under state law in the state court where this Action was originally filed, remand is also appropriate on this ground.

Defendants fail to establish traditional diversity jurisdiction, have not proffered any evidence to support their speculative and inflated CAFA amount-in-controversy calculations, and cannot establish that the Court has equitable jurisdiction over the UCL claim. For all of these reasons, Plaintiff respectfully requests that this Court remand the Action back to the state court in which it was filed.

## IV.  **DEFENDANTS FAIL TO PROVE BY A PREPONDERANCE OF EVIDENCE THAT CAFA'S AMOUNT-IN-CONTROVERSY REQUIREMENT IS SATISFIED**

### A. **Defendants Have Not Proffered the Requisite Credible, Summary-Judgment-Type Evidence to Establish the Amount in Controversy**

Defendants claim that federal jurisdiction exists over this Action pursuant to CAFA. *See* NOR, p.7. To establish that jurisdiction exists under CAFA, Defendants must show, *inter alia*, that the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

"In determining the amount in controversy, courts first look to the complaint." *Ibarra*, *supra*, 775 F.3d at 1197. If the pleading does not specify an amount in controversy on its face, the parties "may submit evidence outside the complaint, including affidavits or declarations, or other 'summary judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibid.* (internal quotes omitted). This prevents a defendant from attempting to establish jurisdiction "by mere speculation and conjecture, with unreasonable assumptions." *Id.* at 1197-1198. Instead, "[w]here the complaint contains generalized allegations of illegal behavior, a removing defendant must supply 'real evidence' grounding its calculations of the amount in controversy." *Dobbs*, *supra*, 201 F.Supp.3d at 1188. Any assumptions

10

Defendants makes "cannot be pulled from thin air but need some reasonable ground underlying them." *Ibarra*, 775 F.3d at 1199.

The Court may reject a calculation for the amount in controversy where the only evidence provided is "a declaration by [defendants'] supervisor of payroll, which set forth only the number of employees during the relevant period, the number of pay periods, and general information about hourly employee wages." *Garibay*, *supra*, 539 Fed. App'x. at 764 ; *see also Dunn v. SHC Servs., Inc.*, 2021 WL 5122057, at *8 (E.D. Cal. Nov. 4, 2021); *Contreras v. J.R. Simplot Co.*, 2017 WL 4457228, at *3 (E.D. Cal. Oct. 6, 2017). This is because where a declaration proffered in support of removal "provides no factual underpinning for the assumption that violations occurred at any given rate, it does not "sustain [the] evidentiary burden for purposes of removal." *Armstrong v. Ruan Transp. Corp.*, 2016 WL 6267931, at *3 (C.D. Cal. Oct. 25, 2016) (quoting *Weston v. Helmerich & Payne Inter. Drilling Co.*, 2013 WL 5274283, at *6 (E.D. Cal. Sept. 17, 2013)); *see also Getaw v. Consol. Disposal Serv., LLC*, 2021 WL 4902465, at *4-5 (C.D. Cal. Oct. 20, 2021) (amount-in-controversy threshold was not met where supporting declaration contained no information "as to the types of workers employed, their hours, or any other evidence that provides a basis for defendants' assumptions."). Where "a defendant provide[s] *no* evidence or clearly inadequate evidence supporting its valuation for a claim," it is "appropriate for a district court to assign that claim a $0 value." *Jauregui*, 28 F.4th at 994.

Here, Plaintiff's pleading does not specify an amount of damages. *See generally* Complaint. Thus, to overcome Plaintiff's jurisdictional challenge here, Defendants must show by a preponderance of the evidence that the amount-in-controversy requirement is satisfied (*i.e.*, that it is more likely than not that the amount in controversy exceeds $5 million). This should not be a particularly difficult task for Defendants, especially given that, as employers of workers in California, Defendants are required to create and maintain the vast majority of wage records most important in determining the amount in controversy in this Action. *See, e.g.*, Cal. Lab. Code §

11

226(a); *see also* Dkt. 1-1 ["Yap Dec."], ¶ 3 (referencing Defendants' legal obligation to maintain employee records).

Yet Defendants do not simply proffer inadequate evidence in support of the NOR—***they present absolutely no evidence at all***. Instead, Defendants merely speak vaguely about "business records" without identifying any specifics as to what such data might encompass, where it was obtained, or why the Court should consider it trustworthy or authentic. Such "evidence" is clearly inadequate. *See Dunn*, *supra*, 2021 WL 5122057, at *8 (declaration did not support CAFA jurisdiction because, among other defects, it was not properly authenticated); *see also Lockhart v. Columbia Sportswear Co.*, 2016 WL 2743481, at *4 (C.D. Cal. May 11, 2016) (defendant failed to establish CAFA jurisdiction where supporting declaration did not identify or "describe the records [declarant] reviewed or how he arrived at those numbers."). Here, the Court is not afforded the ability to evaluate even the threshold issue of the authenticity of Defendants' "data" because they have not introduced *any* foundational evidence to permit the Court to analyze the question. To be properly before this Court, Defendants' purported evidence required "a proper foundation." *Bias v. Moynihan*, 508 F.3d 1212, 1224 (9th Cir. 2007) (citing Fed. R. Civ. P. 56(e).) Defendants' failure to provide any such foundation whatsoever for any of the evidence they purport to proffer here is thus dispositive.

This is not even to mention that, for key class data points, including the length of the average shift worked by each Class Member, Defendants do not even claim that *any* basis exists in their records. For instance, the Declaration of one Taylor Brock, a Producer for Defendants, purports to offer into evidence an average of ten (10) hours or more for an employee shift in a Type-I production. *See* Dkt. 1-3, ¶ 5. Yet Ms. Brock neither states that she knows for a fact that the average shift length is longer than 10 hours, nor that Class Members would have been required to be on-set and under the control of Defendants for the duration of this nebulous 10-hour period, nor indeed even whether all of these 10 hours occur during the same 24-hour time period (such

12

that Class Members might be eligible for overtime pay for any portion of the shoot over and above eight (8) hours). *See generally ibid*. All of these are critical details that would be necessary for the Court to glean anything of evidentiary value from Ms. Brock's Declaration. Yet all of these facts are missing from the record. Defendants' calculations are thus unfounded and unsupported by even the most cursory evidence from *any* source, and should therefore be discarded and "zeroed out." *Jauregui*, 28 F.4th at 994.

Even if the Court were to set aside this dramatic evidentiary shortfall, however, Defendants would *still* fail to establish at least $5 million in controversy here via any reasonable chain of assumptions.

## B. Defendants' Amount-in-Controversy Calculations Rely on Speculative and Unsupported Assumptions and Must Be Discounted

Defendants calculate the amount-in-controversy specifically by reference to three causes of action in Plaintiff's Complaint: (1) Plaintiff's overtime claim; (2) Plaintiff's meal and rest break violation claims; and (3) Plaintiff's claim for failure to timely pay wages due at termination; as well as (4) a speculated award of attorneys' fees. *See* NOR, ¶¶ 50.

At the outset, it should be noted that by far the most decisive calculation in Defendants' amount-in-controversy analysis is with respect to Plaintiff's waiting time penalties claim, for which Defendants calculate a whopping **$66,197,306.18**. (*See* NOR, ¶ 45.) This **absurdly inflated calculation** has no basis in Plaintiff's allegations or in any extrinsic evidence whatsoever, and indeed is an impossible recovery under California law. Because, as discussed at length below, this calculation clearly fails to establish for purposes of CAFA removal the amount-in-controversy alleged in the NOR, Defendants have clearly failed to establish a right to defend against this Action before this Court.

With respect to her claim for waiting time penalties, Plaintiff's Complaint alleges that Defendants failed, "***at times***, to pay Plaintiff and Class Members all wages

13

earned prior to termination or resignation" as required by California law. Complaint, ¶ 76 (emphasis added). Plaintiff's untimely wage payment claim is predicated on other, underlying Labor Code violations, such as Defendants' failure to pay all overtime wages owed, which Plaintiff alleges occurred only "***at times***" to "Plaintiff and Class Members, ***or some of them*** …." *Id.*, ¶ 22 (emphasis added).

As discussed above, this language in the Complaint does not explicitly identify or even implicitly suggest any particular alleged violation rate. By way of reminder, the Ninth Circuit has held that even alleging a "pattern and practice" of violations does not necessarily support an assumption that such violations were universal or committed *all* of the time. *Ibarra*, 775 F.3d at 1199; *see also Holcomb v. Weiser Sec'y Servs., Inc.*, 424 F.Supp.3d 840, 844 (C.D. Cal. 2019) (finding it "unreasonable to assume a 100% violation rate based only on a plaintiff's allegation of a 'pattern and practice' of labor law violations.").

Here, Plaintiff does not allege a "pattern and practice" at all, but rather only that final wages were not paid "at times" and resulted from underlying violations occurring only for "some" of the class members. Complaint, ¶¶ 22, 76. Such general language regarding the frequency of underlying violations reflects Plaintiff's prerogative to plead broadly, and could ultimately mean anything in a broad range of outcomes, including that underlying violations occurred "once per year … once a month, or … every week." *Armstrong*, *supra*, 2016 WL 6267931, at *3. As with all wage-and-hour litigation, the actual amount placed in controversy by Plaintiff's claim "is highly dependent on the facts and circumstances of each individual case." *Ryan*, 2022 WL 4331093, at *3. While civil discovery may uncover precisely what is really at stake in connection with this claim, all that can reasonably be gleaned at this early stage of the action is that Plaintiff's allegations suggest that underlying violations occurred at "less than a 100% violation rate." *Martinez v. BAART Programs, Inc.*, 2019 WL 6210932, at *2 (C.D. Cal. Nov. 21, 2019).

/ / /

Nevertheless, Defendants calculate a whopping **$66,197,306.18** at stake in connection with Plaintiff's claim for failure to timely pay wages at separation, along with another **$663,453** in damages ascribed to Plaintiff's claims for unpaid overtime wages and $44,230.20 each for Plaintiff's meal period and rest break violation claims. *See* NOR, ¶¶ 45, 30, 36, 41.

These calculations must be discarded first of all to the extent that they rely on variables that have no support in the language of the Complaint. Numerous courts in the Ninth Circuit have expressly disapproved of the use of an assumed violation rate without any basis in the language of the Complaint or extrinsic evidence. *See*, *e.g.*, *Gonzalez*, *supra*, 2022 WL 179292, at *3-4 (merely "plucking a violation rate out of the air and calling it 'reasonable'—is 'a wasteful and silly, but routine, exercise in mathematical fantasyland'" (quoting *Toribio*, 2019 WL 4254935, at *3)); *see also Barajas v. CPC Logistics Solutions, LLC*, 2022 WL 4397723, at *3 (N.D. Cal. Sept. 23, 2022) ("Alone, broad allegations in a complaint do not typically justify a 100% violation rate for either the waiting time penalty or wage statement violations.") (collecting cases). Indeed, when faced with pleading making similar allegations as to frequency of the alleged violations, courts have held that "*[t]here is simply no support in the record for assuming a 100 percent violation rate on the inaccurate wage statement claim*." *Vasserman*, *supra*, 65 F. Supp. 3d at 979 (emphasis added). Nor, for that matter, is a more scaled-back assumption of even 20 percent assumed violation rate for a waiting time penalties claim reasonable where no real evidence has been proffered to support that assumption. *See Duran*, 2021 WL 3281073, at *3 (holding that an "assumption of a 20% violation rate … [was] unavailing" where defendant did "not cite to anything in the complaint to make that assumption reasonable.").

Defendants do not establish that the language of the Complaint supports their assumed violation rate for Plaintiff's underlying predicate wage claims, nor do they even attempt to explain how the Complaint's allegations that violations occurred "at

15

times" and to "some" Class Members (*see* Complaint, ¶¶ 22-23) could possibly be squared with an assumption that violations occurred at *all* times to *all* Class Members. Federal courts have held that where a pleading uses similar language to that used in Plaintiff's Complaint, an "assumption of once-per-week incidence of overtime and minimum wage, and meal and rest break violations is … arbitrary." *Duran*, 2021 WL 3281073, at *3. As the *Duran* Court put it, "[i]t would be just as consistent with the complaint to assume a frequency of once-per-month, or possibly once-per-quarter." *Ibid*.; *see also*, *e.g.*, *Salazar*, *supra*, 2018 WL 4560683, at *3 (collecting cases). In *Salazar*, the Court found it particularly persuasive that the complaint did "not allege regular and consistent violations, but assert[s] that [plaintiff] and other California Class members were unable to take off duty meal breaks 'from time to time,' and that they and other California Labor Sub-Class members were 'periodically' denied their proper rest periods." *Id*. at *4. This is directly parallel to the "at times" language Plaintiffs use here, and the Court should accordingly reach the same result.

Defendants also fail to proffer any extrinsic evidence supporting their extreme assumed violation rates. While Defendants cannot be compelled to prove Plaintiff's case for him, "the Court may not simply ignore the Ninth Circuit's directive that it should not rely [on] 'an assumption about the rate of [the] alleged labor law violations that is not grounded in real evidence.'" *Morris v. Camden Dev., Inc.*, 2018 WL 4156593, at *6 (C.D. Cal. Aug. 27, 2018) (quoting *Ibarra*, 775 F.3d at 1199); *see also Vasserman*, 65 F.Supp.3d at 982 (holding that a defendant cannot "improperly shift the burden to plaintiff to refute speculative assertions of jurisdiction and establish that there is no jurisdiction …")

Even putting aside the total lack of evidentiary support for the assumed violation rate, Defendants have also provided nothing to back up their assumptions that all Class Members are entitled to waiting time penalties, as ***no*** evidence has been proffered to establish the average length of a Class Member's shift. Rather, all that Defendants have proffered is the conclusory testimony of Ms. Brock that a "Type-I

16

film" requires approximately ten (10) hours or more of "on-set production" time. *See* Brock Decl., ¶ 5. Yet this Declaration is meaningless in the context of determining whether and how often Class Members were entitled to overtime pay, as there is no evidence proffered that Class Members were required to be on-set or otherwise under Defendants' control for the duration of the "on-set production" period or indeed that the period would occur entirely within the span of one workday. *See generally ibid*. Of course, Class Members *could not* have been entitled to overtime pay under California law unless their work rendered on these productions was "in excess of eight hours in one workday" or "in excess of 40 hours in any one workweek." Cal. Lab. Code § 510(a). Absent such essential context regarding the duration and timing of Class Members' shift lengths, it is impossible to determine whether and how often Class Members would have been entitled under California law to overtime pay, even assuming *arguendo* that the testimony in Ms. Brock's Declaration was admissible in the first place.

Absent any evidence regarding these critical variables, Defendants' proposed amount-in-controversy calculation is not reasonable or persuasive. *See Akana v. Estee Lauder Inc.*, 2019 WL 2225231, at *6 (C.D. Cal. May 23, 2019) (violation rate was unreasonable where no evidence was submitted regarding "the length of the shifts worked by the putative class members, or how many days each employee worked during any particular workweek … whether any employees are part-time, or whether they took vacation periods …."); *Toribio*, *supra*, 2019 WL 4254935, at *2 ("What [Defendants] cannot do is simply pull violation rates out of thin air … and conclusively state that they are 'reasonable inference[s]' about the most important variables involved in the necessary calculations."); *Weston*, *supra*, 2013 WL 5274283, at *6 (jurisdictional assumptions were unreasonable where defendant did not "us[e] actual numbers … or, at a minimum, explain[] why [its] methodology and assumptions make sense.")

/ / /

With respect to Plaintiff's claim for waiting time penalties (which makes up the lion's share of Defendants' calculated amount-in-controversy), Defendants lack any justification for the assumed penalty recovery. Defendants merely assume (without proving or indeed suggesting any basis in reality whatsoever) that various underlying claims asserted by Plaintiff that could give rise to waiting time penalties would affect virtually every employee, such that each and every employee would be entitled to additional wages at separation. *See* NOR, ¶ 43. Yet Defendants cannot point to any language in the Complaint suggesting that each Class Member suffered each and every identified Labor Code violation. Indeed, with respect to underlying claims that could give rise to derivative waiting time claims, the Complaint *expressly* alleges that such violations occurred only "at times," and only to "Plaintiff and Class Members, ***or some of them***[.]" Complaint, ¶¶ 22-32. Nor can Defendants support their implicit argument that each and every one of the direct claims asserted in the Complaint may give rise to waiting time penalties—as this is simply not true. For any number of Class Members, Defendants may have only subjected them to Labor Code violations that do *not* constitute wages and thus do not give rise to waiting time penalties. Defendants simply ignore this possibility altogether and assume (again, without any evidence in support whatsoever) that all Class Members *must* have been owed unpaid wages at separation from employment. This is not an assumption that Defendants can support, nor one that the Court should credit.

Indeed, Defendants have proffered no evidence supporting *any* assumed violation rate for waiting time penalties, including thirty (30) days' worth of penalties, 4,000 class members separated during the relevant time period, and an average eight-hour shift for each. *See* NOR, ¶ 39. Defendants' assumptions are unreasonable where unsupported by any allegations in the Complaint or extrinsic evidence. Moreover, where, as here, Plaintiff has expressly alleged that he seeks "***up to*** a maximum of thirty (30) days" (*see* Complaint, ¶ 77 (emphasis added)) worth of penalties, ***but not the maximum***, courts have held that an amount-in-controversy calculation assuming

30 days' worth of penalties is further unreasonable. *See Barajas*, *supra*, 2022 WL 4397723, at *4. "When applying the preponderance of the evidence standard to California Labor Code claims, many California district courts have refused to credit damage calculations based on variables not clearly suggested by the complaint or supported by evidence, concluding that the calculations are mere conjecture." *Roth v. Comerica Bank*, 799 F.Supp.2d 1107, 1127 (C.D. Cal. 2010). So too, here, Defendants' unsupported conjecture cannot carry its burden of proof.

Perhaps the most fatal point for Defendants' waiting time penalties claim calculation, however, is the fact that Defendants fail to include any *authority* to support their implied contention that waiting time penalties can be stacked for employees after each "Actor Engagement" _beyond_ the statutory maximum of 30 days. Indeed, while at the same time stating that they *only* had approximately 384 employees during the relevant time period (*see* Yap Decl., ¶ 5), Defendants outrageously assume full 30-day periods of penalties for a whopping "1,001 Type-I Actor Engagements, after each of which the [Class Members] were effectively discharged." (NOR, ¶ 44.)

The NOR thus appears to make the assumption that any employee, irrespective how many times they have been "employed" by Defendants in the course of prior Actor Engagements, are entitled to waiting time penalties after *each and every discrete engagement*. While Defendants cite no authority in their NOR in support of this assumption, Plaintiff notes that the California Labor Code provides a clear limitation on the penalties available: a maximum penalty of 30 days of wages. *See* Cal. Lab. Code § 203. Defendants however improperly stack multiple waiting time penalties for each employee after *every single Actor Engagement*. Not only is this unsupported by any authority, but it runs expressly counter to California statute. Defendants have thus calculated an amount that goes far beyond what Class Members could ever *possibly* recover for waiting time penalties.

/ / /

In short, Defendants have not provided *any* summary-judgment-type proof indicating in any way that they may be found liable for the maximum statutory penalty on Plaintiff's waiting time penalty claim for *every single class member*. Rather, Defendants once again base their calculations on arbitrary assumptions about the violation rate and other key variables—assumptions that are directly contradicted by the Complaint's plain language. Defendants' assumptions are extreme, speculative, and have no support in any real evidence. Thus, Defendants' amount-in-controversy calculations may be discounted and discarded, and Defendants' claim that this Court has jurisdiction over this Action pursuant to CAFA must be rejected.

### C. Defendants' Attempt to Balloon the Amount in Controversy with Unsubstantiated Attorneys' Fees is Improper and Should Be Rejected

Defendants further inflate an already exaggerated amount-in-controversy calculation by arguing that 25 percent of the total award is the benchmark in a class action involving a common settlement fund and contending that this amount must be included in the jurisdictional analysis under CAFA. *See* NOR, ¶¶ 47-49.

The Ninth Circuit has previously rejected this very argument, holding that "we require a removing defendant to prove that the amount in controversy (including attorneys' fees) exceeds the jurisdictional threshold by a preponderance of the evidence. We also require the defendant to make this showing with summary-judgment-type evidence[.]" *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 795 (9th Cir. 2018). By contrast, "'simply asking the Court to adopt [a] 25 percent benchmark' fails to meet the burden necessary to add such an amount to the calculation." *Loaiza v. Kinkisharyo Int'l, LLC*, 2020 WL 5913282, at *13 (C.D. Cal. Oct. 6, 2020) (quoting *Zamarripa v. Superior Talent Resources, Inc.*, 2019 WL 3246502, at *6 (C.D. Cal. Jul. 19, 2019)); *see also Gonzalez v. Hub Int'l Midwest Ltd.*, 2019 WL 2076378, at *6 (C.D. Cal. May 10, 2019) ("Defendant's mere reference to the 25% benchmark, without more, fails to establish the amount of attorneys' fees in controversy.")

Defendants' NOR here does little beyond simply reciting a list of cases where the court held a 25% attorney's fees award appropriate and mechanically applying that fee award this Action. *See* NOR, ¶¶ 48. Defendants make no effort to explain *why* their automated attorneys' fees calculation should apply in this Action, or indeed even address whether attorney's fees are in fact recoverable under applicable law for the claims at issue. *See Frias-Estrada*, *supra*, 534 F.Supp.3d at 1066-67 (noting with respect to an award of attorneys' fees in federal court that "no per se rule exists and … the California Labor Code's fee shifting provisions do[] not apply to meal and rest period claims."). A "conclusory assertion" regarding the total amount of recoverable attorney's fees does not carry Defendants' evidentiary burden and cannot be credited toward the amount-in-controversy total. *Akana*, *supra*, 2019 WL 2225231, at *7; *see also Zamarippa*, *supra*, 2019 WL 3246502, at *5 ("[T]he Ninth Circuit [has] held that a defendant may not simply assume the amount of attorney's fees in controversy in a class action is 25% of the total potential recovery, without providing additional evidence.") (citing *Fritsch*, 899 F.3d at 794)).

Moreover, even if the percentage of attorneys' fees used by Defendants is not unreasonable in and of itself, it is applied "to valuations of the claims that are inherently unreasonable, [] so the amount attributed to fees cannot be used toward the jurisdictional threshold." *Duran*, *supra*, 2021 WL 3281073, at *3-4; *see also Smith v. Diamond Resorts Mgmt.,* 2016 WL 356020, at * 5 (C.D. Cal. 2016) ("[B]ecause such uncertainty surrounds Defendant's calculation of damages and penalties, the Court cannot find that the inclusion of a 25% attorneys' fee…would necessarily place the amount in controversy over the $5,000,000 CAFA threshold.").

Because, as stated above, Defendants failed to substantiate the purported damages as set forth for Plaintiff's various claims, there is no justification to add a further conjectural 25% fee multiplied by these speculative, unsupported damages on top of already speculative, unsupported damages. Thus, on this ground, as well, Defendants cannot bootstrap Plaintiff into federal court.

## V.   REMAND IS ALSO WARRANTED BECAUSE THIS COURT LACKS EQUITABLE JURISDICTION OVER PLAINTIFF'S UCL CLAIM

A separate and independent ground for remand is the absence of federal equitable jurisdiction over all of Plaintiff's claims for relief—specifically, her claim under California's UCL for restitution of unpaid wages. *See* Complaint, ¶ 93. Plaintiff does not (and indeed cannot) plead facts in the Complaint sufficient to allow a federal court to grant or deny her substantive state-law claim for equitable relief. Because the Court thus lacks power to rule on Plaintiff's state-law claim for relief, remand is warranted independent of the absence of subject matter jurisdiction.

The doctrine of equitable jurisdiction limits the power of federal courts to hear civil actions independent and irrespective of the separate limitation of federal subject-matter jurisdiction. *See Schlesinger v. Councilman*, 420 U.S. 738, 753-54 (1975). "Equitable relief in a federal court is of course subject to restrictions[,]" most relevant among which is the traditional requirement in courts of equity that "a plain, adequate and complete remedy at law must be wanting." *Sonner*, *supra*, 971 F.3d at 840 (quoting *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 106 (1945)). The Ninth Circuit has held that this rule applies to *all* claims for equitable relief in federal courts, regardless of whether federal or state substantive law (such as the UCL) supplies the claimed right to relief. *See id*. at 841. Thus, "if the plaintiff cannot show a lack of adequate remedies at law, the court lacks equitable jurisdiction over the UCL claim. *Guthrie*, *supra*, 561 F.Supp.3d at 875.

Here, Plaintiff seeks a legal remedy in the form of money damages identical to her claim for equitable restitution of unpaid wages owed under the UCL. The "key question" here is "whether damages would fail to make [Plaintiff] whole." *Treinish v. iFit Inc.*, 2022 WL 5027083, at *3 (C.D. Cal. Oct. 3, 2022). Moreover, courts in the Ninth Circuit have generally held that a plaintiff in federal court "must, at a minimum, *plead* that []he lacks adequate remedies at law if []he seeks equitable relief." *Guthrie*, 561 F.Supp.3d at 875 (italics original). The Complaint does not allege any such facts,

instead asserting that Plaintiff and class members are entitled to "restitution of all wages and other monies owed to them under the Labor Code, including interest thereon[.]" Complaint, ¶ 100(K). The relief that Plaintiff seeks through the equitable remedy of restitution, in other words, is the same remedy she could obtain at law in the form of money damages at law equaling the total amount of unpaid wages plus interest. Where Plaintiff has not "distinguish[ed] [his] request for restitution from [his] request for damages," there can be no finding of an inadequate remedy at law. *Boone v. Amazon.com Servs., LLC*, 562 F.Supp.3d 1103, 1127 (E.D. Cal. 2022) (quoting *TopDevz, LLC v. LinkedIn Corp.*, 2021 WL 3373914, at *5 (N.D. Cal. Aug. 3, 2021)); *see also In re Ambry Genetics Data Breach Litig.*, 567 F.Supp.3d 1130, 1147 (N.D. Cal. 2021) (plaintiff did not establish inadequate remedies at law because the requested relief targeted only "Defendants' *past* conduct" and thus plaintiff could be made whole through "compensatory damages for this past harm."). Unpaid wages claims under the Labor Code seek a quintessential legal remedy: money damages. *See Fan*, *supra*, 2022 WL 16964099, at *3-4. Thus, Plaintiff's claim for restitution falls outside of this Court's equitable jurisdiction.

Having found that Plaintiff's claim for restitution under the UCL is not properly before this Court, the appropriate action is to remand this case back to state court, where Plaintiff will be able to vindicate her substantive state-law rights. The Supreme Court has repeatedly held that remand of an action removed to federal court is appropriate where the action lied "beyond the equitable jurisdiction of the federal court[.]" *Twist v. Prairie Oil & Gas Co.*, 274 U.S. 684, 690 (1927); *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996) (holding that, "where the relief being sought is equitable in nature or otherwise discretionary," federal courts may "decline to exercise jurisdiction altogether by *either* dismissing the suit *or remanding it to state court*.") (emphasis added); *Cates v. Allen*, 149 U.S. 451, 460-61 (1893) (directing lower court to remand removed action to state court where federal court lacked equitable jurisdiction). Thus, the district court faced with an action over

23

which it lacks equitable jurisdiction has discretion to either remand the action or dismiss it with instructions to permit the claim to be refiled in state court. *Quackenbush*, 517 U.S. at 721. Nor is this discretion limited by CAFA, which Congress passed to expand the federal courts' subject-matter jurisdiction over class actions and "did not purport to alter traditional equitable rules." *Guthrie*, 561 F.Supp.3d at 879; *see also Clevenger v. Welch Foods, Inc.*, 2023 WL 2390630, at *4-5 (C.D. Cal. Mar. 7, 2023) (granting remand and rejecting defendant's argument that remanding action over which court lacked equitable jurisdiction "would create an end run around CAFA.").

The Court should exercise its discretion to remand the Action to state court. It would not be consistent with principles of federalism to dismiss Plaintiff's claim, as he has a substantive right under California law to seek restitution under the UCL for Defendant's Labor Code violations. Moreover, convenience and judicial economy counsel in favor of remanding the case as a whole back to state court and avoiding parallel litigation. In order to avoid wasting judicial resources and the resources of the Parties, this Court should exercise its discretion to remand the Action as a whole.

## VI.  **CONCLUSION**

Remand is warranted, as Defendants fail to establish subject matter jurisdiction under any theory. Further, independent from any ruling the Court may make as to its subject matter jurisdiction, remand is appropriate because this Court lacks equitable jurisdiction over Plaintiff's UCL claim. Thus, Plaintiff respectfully requests that the Court issue an Order remanding the Action to state court.

Date: July 21, 2023                         BIBIYAN LAW GROUP, P.C.

                                       By:  */s/ Sarah H. Cohen*
                                            DAVID D. BIBIYAN
                                            JEFFREY D. KLEIN
                                            SARAH H. COHEN
                                            Attorneys for Plaintiff, MACKENZIE
                                            ANNE THOMA, and on behalf of
                                            herself and all others similarly situated

# CERTIFICATE OF SERVICE

MACKENZIE ANNE THOMA, a.k.a. KENZIE ANNE, **v.** VXN GROUP LLC
2:23-cv-04901-WLH (AGRx)
**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 8484 Wilshire Blvd., Suite 500, Beverly Hills, California 90211.

I certify that on July 21, 2023, I electronically filed the following document(s) described as **NOTICE OF MOTION AND MOTION FOR ORDER REMANDING ACTION TO STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF SARAH COHEN IN SUPPORT THEREOF ,** and that they are available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system. Further, I certify that the foregoing documents were served by electronic transmission to the below referenced electronic e-mail address as follows:

**KANE LAW FIRM**                              Attorneys for Defendants
Brad S. Kane, Esq.                              VXN GROUP LLC; STRIKE 3
bkane@kanelaw.la                                HOLDINGS, LLC; GENERAL MEDIA
1154 S. Crescent Heights. Blvd.                 SYSTEMS, LLC; and MIKE MILLER
Los Angeles, CA 90035
Tel: (323) 697-9840
Fax: (323) 571-3579

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 21, 2023, at Beverly Hills, California.

*/s/ Bryant Gamez*
Bryant Gamez