**BIBIYAN LAW GROUP, P.C.**
David D. Bibiyan (SBN 287811)
*david@tomorrowlaw.com*
Jeffrey D. Klein (SBN 297296)
*jeff@tomorrowlaw.com*
Sarah H. Cohen (SBN 330700)
*sarah@tomorrowlaw.com*
8484 Wilshire Boulevard, Suite 500
Beverly Hills, California 90211
Tel: (310) 438-5555; Fax: (310) 300-1705

Attorneys for Plaintiff, MACKENZIE ANNE THOMA,
and on behalf of herself and all others similarly situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MACKENZIE ANNE THOMA, a.k.a. KENZIE ANNE, an individual and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> VXN GROUP LLC, a Delaware limited liability company; STRIKE 3 HOLDINGS, LLC, a Delaware limited liability company; GENERAL MEDIA SYSTEMS, LLC, a Delaware limited liability company; MIKE MILLER, an individual; and DOES 1 through 100, inclusive, <br><br> Defendants. | CASE NO.: 2:23-cv-04901-WLH (AGRx) <br><br> [*Assigned to the Hon. Wesley L. Hsu*] <br><br> **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR ORDER REMANDING ACTION TO STATE COURT** <br><br> DATE:          August 25, 2023 <br> TIME:           1:00 p.m. <br> COURTRM:    9B <br><br> State Action Filed:   April 20, 2023 <br> Removal Date:        June 21, 2023 <br><br> (*Los Angeles County Superior Court, Case No.: 23STCV08761*) <br><br> Trial Date: None Set |

Law Offices of
BIBIYAN LAW GROUP
A Professional Corporation
8484 Wilshire Blvd., Suite 500
Beverly Hills, California 90211
(310) 438-5555

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO REMAND

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................... 1

II. ARGUMENT ............................................................................................ 4

    A. Defendants' Hyperinflated Estimate of Plaintiff's Waiting Time Penalties Claim Is Not a Plausible Calculation of the Amount In Controversy ................................................................................. 4

    B. Defendants Fail to Produce Sufficient Evidence to Overcome Plaintiff's Factual Challenge to CAFA Jurisdiction ......................... 5

    C. Defendants Fail to Show that Plaintiff's Limiting Allegations Justify Their Use of an Extreme 100 Percent Violation Rate .......... 10

    D. Defendants Effectively Concede that this Court Lacks Equitable Jurisdiction ..................................................................................... 12

III. CONCLUSION ..................................................................................... 13

Law Offices of
BIBIYAN LAW GROUP
A Professional Corporation
8484 Wilshire Blvd., Suite 500
Beverly Hills, California 90211
(310) 438-5555

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO REMAND

# TABLE OF AUTHORITIES

*Statutes*

Cal. Bus. & Prof. Code § 17205 ..................................................................... 12

Cal. Lab. Code § 203(a) ............................................................................... 1, 5

*Cases*

*Armstrong v. Ruan Transp. Corp.*,
   2016 WL 6267931 (C.D. Cal. Oct. 25, 2016) .......................................... 8, 9

*Baretich v. Everett Fin., Inc.*,
   2018 WL 4579857 (S.D. Cal. Sept. 25, 2018) ............................................. 8

*Cates v. Allen*,
   149 U.S. 451 (1893) .................................................................................. 12

*Cortez v. Purolator Air Filtration Prods. Co.*,
   23 Cal.4th 163 (2000) ............................................................................... 12

*Dunn v. SHC Servs., Inc.*,
   2021 WL 5122057 (E.D. Cal. Nov. 4, 2021) ............................................ 10

*Erie Railroad Co. v. Tompkins*,
   304 U.S. 64 (1938) .................................................................................... 12

*Garibay v. Archstone Cmtys. LLC*,
   539 Fed. Appx. 763 (9th Cir. 2013) ............................................................ 8

*Gonzalez v. H&M Hennes & Mauritz L.P.*,
   2022 WL 179292 (C.D. Cal. Jan. 20, 2022) ..................................... 8, 9, 10

*Guaranty Trust Co. of N.Y. v. York*,
   326 U.S. 99 (1945) .................................................................................... 12

*Guzman v. Peri & Sons Farms of Calif., LLC*,
   2022 WL 17852041 (E.D. Cal. Dec. 22, 2022) ............................ 2, 3, 5, 10

*Harris v. KM Industrial, Inc.*,
   980 F.3d 694 (9th Cir. 2020) ........................................................................ 6

*Herrera v. Carmax Auto Superstores Calif., LLC*,
   2014 WL 12586254 (C.D. Cal. Jun. 12, 2014) .............................................. 8

*Ibarra v. Manheim Invs., Inc.*,
   775 F.3d 1193 (9th Cir. 2015) ............................................................ 3, 7, 10

*Jauregui v. Roadrunner Transp. Servs., Inc.*,
   28 F.4th 989 (9th Cir. 2022) ....................................................................... 3, 9

*Lewis v. Verizon Commc'ns, Inc.*,
   627 F.3d 395 (9th Cir. 2010) ........................................................................ 2

*Luna v. Pronto Calif. Gen. Agency, LLC*,
   2020 WL 4883879 (C.D. Cal. Aug. 19, 2020) ............................................ 10

*Mackall v. Healthsource Global Staffing, Inc.*,
   2016 WL 4579099 (N.D. Cal. Sept. 2, 2016) .............................................. 10

*Mamika v. Barca*,
   68 Cal.App.4th 492-93 (Cal. 1998) ............................................................... 5

*Martinez v. BAART Programs, Inc.*,
   2019 WL 6210932 (C.D. Cal. Nov. 21, 2019) ............................................ 11

*Quackenbush v. Allstate Ins. Co.*,
   517 U.S. 706 (1996) .................................................................................... 12

*Salter v. Quality Carriers, Inc.*,
   974 F.3d 959 (9th Cir. 2020) ........................................................................ 5

*Sanchez v. Carpenter Co.*,
   2021 WL 2333096 (C.D. Cal. Jun. 8, 2021) ............................................... 11

*Singer v. State Farm Mut. Auto. Ins. Co.*,
   116 F.3d 373 (9th Cir. 1997) ........................................................................ 3

*Smith v. Superior Court*,
   39 Cal.4th 77 (Cal. 2006) .............................................................................. 4

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ........................................................................ 12
*Twist v. Prairie Oil & Gas Co.*,
   274 U.S. 684 (1927) ..................................................................................... 12
*Vasserman v. Henry Mayo Newhall Mem'l Hosp.*,
   65 F.Supp.3d 932 (C.D. Cal. 2014) ......................................................... 7, 11
*Weston v. Helmerich & Payne Inter. Drilling Co.*,
   2013 WL 5274283 (E.D. Cal. Sept. 17, 2013) ............................................... 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Incredibly, Defendants VXN Group LLC; Strike 3 Holdings, LLC; General Media Systems, LLC; and Mike Miller (collectively, "Defendants") have filed[1] an Opposition (*see* Dkt. 17, *hereinafter* "Opposition") to Plaintiff Mackenzie Anne Thoma's ("Plaintiff" or "Ms. Thoma") Motion for Remand that manages to almost *completely* ignore what is by far the most critical calculation in dispute here. Indeed, in what is apparently an effort to bury the issue after *twenty (20) pages* of misdirected, legally irrelevant diatribes, Defendants devote just *two* to defending the indefensible: namely, their amount-in-controversy calculations in their Notice of Removal for Plaintiff's waiting time penalties claim (Dkt. 1, "NOR"). *See* Dkt. 17, pp. 21-22.

Defendants' amount-in-controversy calculation for Plaintiff's waiting time penalties claim, which accounts for an overwhelming **$66,197,306.18** (approximately **98.9%**) of the $66,949,219.58 total[2] alleged by Defendants to be in controversy here, is not only unsupported by anything in Ms. Thoma's Complaint or by any extrinsic evidence proffered by Defendants—***it does not represent a legally possible recovery under California law***. The California Labor Code is clear: an employer who willfully fails in the basic duty of paying its employees all wages owed at separation is liable for penalties in the form of continuing wages, "***but the wages shall not continue for more than 30 days***." Cal. Lab. Code § 203(a) (emphasis added); *see also Guzman v. Peri & Sons Farms of Calif., LLC*, 2022 WL 17852041, at *8 (E.D. Cal. Dec. 22,

---

[1] Notably, the Opposition filed by Defense Counsel, Kane Law Firm, makes *repeated* improper references to the Motion for Remand as "BLF's [*sic*] Motion" (*see*, *e.g.*, Dkt. 17, 2:11), presumably in a desperate effort to link Ms. Thoma to purported "artful pleading" in other cases where Plaintiff's Counsel also served as counsel. *See id.*, pp. 16-19. Such references are improper and irrelevant and should be discounted.

[2] This number excludes estimated attorneys' fees, which Defendants calculate based on this amount and is similarly inflated due to Defendants' hyperinflated waiting time penalties claim calculation. *See* NOR, ¶49.

2022) (holding that under California Labor Code, "the statutory scheme limits these [waiting time] penalties to 30 days of wages."). Defendants wrongly calculate 30 days of penalties after each of the 1,001 purported "Type I Actor Engagements" that allegedly occurred in the relevant time period (*see* NOR ¶44), resulting in significantly more penalties than the 384 alleged Class Members[3] could ever actually recover, even assuming *arguendo* that all Class Members were entitled to the statutory maximum. Thus, Defendants' calculation of the amount-in-controversy for Plaintiff's waiting time penalties claim is simply not plausible, and the Court is warranted in rejecting it altogether.

Next, Defendants attempt (and fail) to justify use of an extreme **_100 percent_** assumed violation rate for Plaintiff's waiting time penalties claim by shifting the focus to what they call Plaintiff's "artful pleading"—and away from their own woeful inability to identify *any* basis for such extreme assumptions. Defendants cannot seriously dispute—and indeed case authorities cited in their own Opposition establish—that, even under the Class Action Fairness Act ("CAFA"), "the burden of establishing removal jurisdiction is, as it was before CAFA, on the party wishing to see the case in federal court." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 399 (9th Cir. 2010). Yet Defendants' Opposition *repeatedly* tries to shift this burden to Plaintiff, incongruously attacking the allegations in Plaintiff's Complaint that violations occurred only "at times" and only to "some" Class Members as "factually devoid." *See* Dkt. 17, 2:6-12. Such arguments are irrelevant here.

Defendants cannot establish the existence of federal jurisdiction, under CAFA or otherwise, by haranguing Plaintiff for purported deficiencies in her pleading. Despite Defendants' protestations to the contrary, Plaintiff has *directly* challenged the "truth" of their arbitrary and speculative jurisdictional allegations, including their critical assumption (unsupported by evidence) the each and every Class Member is

---

[3] *See* Dkt. 1-1, Declaration of Aldrich Yap, ¶5.

entitled to a full 30 days' worth of waiting time penalties claims. To the contrary, as she has already stated more than once, **<u>Plaintiff does not allege such extreme levels of statutory violations</u>**, but rather violations occurred "at times" and "on occasion." *See*, *e.g.*, Dkt. 13, 7:4-19 (citing Complaint, ¶76). Defendants are, of course, entitled to dispute the allegations of Plaintiff's Complaint in their quest to establish federal jurisdiction. However, the law in this Circuit is clear that, absent *specific* allegations in the Complaint, Defendants must prove their jurisdictional claims with "affidavits," "declarations," or other "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). It is clear that Defendants have not done so here.

In short, despite their irrelevant attacks on the allegations of the Complaint, Defendants' amount-in-controversy calculation for Plaintiff's waiting time penalties claim is just as arbitrary and speculative now as it was before. Defendants do not even establish that their hyperinflated estimate for this claim is *plausible*, as they assume that Class Members will be able to recover penalties far in excess of what California law provides. Nor do Defendants identify support for their factual assumptions running contrary to the language of Plaintiff's Complaint that each and every Class Member experienced violations giving rise to waiting time penalties. Defendants cannot shift the burden to Plaintiff to provide an alternative violation rate to disprove federal jurisdiction, nor is it "the Court's role to determine *sua sponte* the appropriate violation rate." *Guzman*, 2022 WL 17852041, at *9. The Court may "simply reject[] that assumption and conclude[e] that [Defendants] failed to meet [their] burden." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 996 (9th Cir. 2022). Without their bloated waiting time penalties calculation and resulting attorneys' fees, Defendants clearly fail to show that CAFA's amount-in-controversy requirement is met, and thus conclusively fail to establish CAFA jurisdiction. Remand is warranted on this ground.

Finally, Defendants fail to contest that Plaintiff's claim for injunctive and other equitable relief under California's unfair competition law, codified at Business & Professions Code section 17200 ("UCL"), divests this Court of equitable jurisdiction. As a matter of respect for her substantive state-law right to seek equitable relief for her claims herein, Plaintiff respectfully contends that an order remanding the action in its entirety to state court is warranted. Alternatively, Plaintiff requests that the Court sever and remand the UCL claim to state court.

## II. ARGUMENT

### A. Defendants' Hyperinflated Estimate of Plaintiff's Waiting Time Penalties Claim Is Not a Plausible Calculation of the Amount In Controversy

The lion's share of Defendants' $83,686,524.48 total estimated amount-in-controversy here is its hyperinflated calculation of Plaintiff's waiting time penalties claim, to which it attributes a whopping **$66,197,306.18**, or approximately **98.9%** of the total estimated amount-in-controversy before accounting for attorneys' fees. *See* NOR, ¶45. Defendant makes this critical assumption by assuming that Class Members accrued waiting time penalties in an amount of 30 days' worth of unpaid wages after *each and every* "Type I Actor Engagement" in the relevant timeframe, totaling an alleged 1,001 distinct penalty periods according to Defendants. *See ibid*.

Defendants' Opposition purports to justify this calculation by citing to a single California decision, *Smith v. Superior Court*, 39 Cal.4th 77 (Cal. 2006), to establish that "each Type-I Actor Engagement … constitutes a separate period of employment" after the termination of which penalties may accrue under California law. *See* Dkt. 17, 21:11-14. *Smith*, however, says nothing about "stacking" penalties beyond the statutory maximum of 30 days as Defendants attempt here—only *when* they must be paid. Indeed, *Smith* expressly couched its analysis of the relevant California statutes in the context of the state's "fundamental public policy regarding prompt wage payment." *Smith*, 39 Cal.4th at 82.

4
REPLY IN SUPPORT OF MOTION TO REMAND

In reality, the plain language of the statute makes clear that an individual employee *cannot* recover any more than 30 days' worth of unpaid wages. *See* Cal. Lab. Code § 203(a); *see also Guzman*, *supra*, 2022 WL 17852041, at *8; *Mamika v. Barca*, 68 Cal.App.4th 487, 492-93 (Cal. 1998). Defendants produce absolutely *no* support for their argument that an individual employee can stack waiting time penalties *ad infinitum* despite the statute's clear 30-day maximum; their calculation of a $66,197,306.18 amount in controversy for Plaintiff's waiting time penalties claim is thus not only implausible—it is legally ***impossible***.

Defendants' calculation thus must be discounted as it is plainly not even *close* to representative of what is actually at stake in this case, and does not represent a plausible estimate of the amount placed in controversy on this claim.

### B. **Defendants Fail to Produce Sufficient Evidence to Overcome Plaintiff's Factual Challenge to CAFA Jurisdiction**

Defendants argue that they are not required to substantiate their jurisdictional allegations here because Plaintiff purportedly mounted only a "facial" (rather than a "factual") challenge to the NOR. This is simply false; Plaintiff clearly disputes the factual validity of Defendants' assumptions in support of removal, and Defendants cannot rely on this argument to excuse their evidentiary failures.

In a pair of rulings, the Ninth Circuit offered authoritative guidance regarding the distinction between a facial and a factual challenge to CAFA jurisdiction. In *Salter v. Quality Carriers, Inc.*, 974 F.3d 959 (9th Cir. 2020), the Court considered a plaintiff's challenge to defendant's assertion of CAFA jurisdiction which it ultimately ruled constituted only a "facial" attack. The plaintiff in *Salter* "did not question" the key evidentiary submissions regarding data points describing the putative class, but rather "argued only that [defendant] must support its assertion with competent proof." *Salter*, 974 F.3d at 964. As plaintiff challenged not the "substance" of defendants' jurisdictional assumptions but their "form," the Ninth Circuit held that defendant need not produce summary-judgment-type evidence to prevail. *See ibid.*

By contrast, in *Harris v. KM Industrial, Inc.*, 980 F.3d 694 (9th Cir. 2020), decided only a few months later, the Ninth Circuit described another kind of challenge against CAFA jurisdiction: a "factual" attack. "A factual attack," as the *Harris* Court put it succinctly, "need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." *Id.* at 700. In *Harris*, the Ninth Circuit held plaintiff had raised a factual challenge to defendant's CAFA jurisdictional allegations by contesting "the factual basis of [defendant's] assumption" that all class members had uniformly suffered specific violations at the rate proposed by defendant "by attacking the assumption's factual underpinnings." *Ibid*. Because the plaintiff had raised a factual attack, the defendant "had the burden of proving by a preponderance of the evidence that its assumptions were reasonable." *Id*. at 701. As defendant could point to nothing in the complaint or any extrinsic evidence supporting its assumptions, CAFA jurisdiction was defeated. *See id*. at 701-02.

Here, Plaintiff mounts a factual, rather than facial, challenge to Defendants' NOR. Indeed, even a cursory reading of her Motion makes clear that Plaintiff attacks Defendants' CAFA jurisdictional allegations not just as supported by insufficient evidence, but as utterly unsupported by the facts of this case altogether. This is clear from Plaintiff's repeated references to her Complaint, which states that relevant violations occurred "*at times*" and that underlying violations occurred "*at times*" and to "*some*" Class Members. *See* Complaint, ¶22, ¶75. Plaintiff argues that these express allegations in her Complaint do not give rise to the extreme 100% assumed violation rates employed by Defendants to calculate the total amount in controversy for Plaintiff's waiting time penalties claim. In other words, Plaintiff contends that Defendants have "misinterpreted the thrust of [her] complaint" (*Salter*, 974 F.3d at 964), and she directly challenges the truth of Defendants' allegation that violations occurred with such frequency that *each* Class Member is entitled to the maximum 30 days' worth of waiting time penalties.

This attack is clearly not focused on the *form* of Defendants' evidence, but rather on the lack of evidence altogether and the distortion wrought by Defendants' arbitrary assumptions that run counter to Plaintiff's express allegations. Plaintiff cannot make it any clearer: *she contests the truth and validity of Defendants' jurisdictional assumptions*, not merely their evidentiary support. Thus, the challenge here is of a factual—not facial—nature, and Defendants must establish by a preponderance of the evidence that their jurisdictional assumptions are reasonable, not merely "plausible."

Defendants appear to labor under the misapprehension that a "facial" challenge means any challenge by a plaintiff against CAFA jurisdiction where "Plaintiff fails to provide any evidence" to rebut Defendants' jurisdictional claims. Dkt. 17, 10:5-6. Yet Defendants simply cannot justify a rule that would require *Plaintiff* to submit evidence to affirmatively disprove the existence of CAFA jurisdiction where Defendants have not submitted any evidence to establish the reasonableness of their amount-in-controversy calculations, and in particular their 100% assumed violation rate for the waiting time penalties claim. *See Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F.Supp.3d 932, 982 (C.D. Cal. 2014) (removing party cannot "improperly shift the burden to plaintiff to refute speculative assertions of jurisdiction and establish that there is no jurisdiction.") Nor does Defendants' claim that Plaintiff somehow accepts all of their jurisdictional assumptions hold any weight—as discussed above, Plaintiff *clearly* challenges Defendants' assumption that each and every Class Member may seek 30 days of waiting time penalties for each and every Type-I Engagement. Thus, Plaintiff asserts a factual—rather than a facial—challenge here, and Defendants must produce *some* evidence to establish CAFA jurisdiction.

Under the controlling "preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." *Ibarra*, 775 F.3d at 1199. Thus, all else being equal, CAFA jurisdiction must be rejected if Defendants fail to adduce evidence establishing that it exists here.

Where, as here, Defendants "provide[] no factual underpinning for the assumption" that violations occurred at an assumed 100% rate, they have failed to establish CAFA jurisdiction. *Weston v. Helmerich & Payne Inter. Drilling Co.*, 2013 WL 5274283, at *6 (E.D. Cal. Sept. 17, 2013); *see also Garibay v. Archstone Cmtys. LLC*, 539 Fed. Appx. 763, 764 (9th Cir. 2013); *Baretich v. Everett Fin., Inc.*, 2018 WL 4579857, at *5 (S.D. Cal. Sept. 25, 2018); *Gonzalez v. H&M Hennes & Mauritz L.P.*, 2022 WL 179292, at *3-4 (C.D. Cal. Jan. 20, 2022) (granting remand where defendant did not "provide evidence that would assist the Court in making a reasonable assumption as to the applicable *violation rate*." (italics original)).

Nor do the supplemental declarations[4] that Defendants proffer alongside the Opposition establish that their amount-in-controversy calculations are reasonable. Courts in this Circuit have held that evidence outside the pleadings is meaningful in a CAFA amount-in-controversy analysis to the extent it assists the Court in evaluating whether the removing party has made "reasonable, conservative estimates ***about the frequency of alleged violations***" in light of "the language used in the complaint." *Herrera v. Carmax Auto Superstores Calif., LLC*, 2014 WL 12586254, at *2 (C.D. Cal. Jun. 12, 2014) (emphasis added). A ruling by a court sitting in this district, *Armstrong v. Ruan Transportation Corporation*, 2016 WL 6267931 (C.D. Cal. Oct. 25, 2016), is instructive. In *Armstrong*, the defendant had proffered the declaration of a human resources officer setting forth various data points, including the total number of class members, the average number of hours worked per day, the average number of days worked per week, and the average rate of pay. *Id.* at *3. Holding that the

---

[4] In addition to the Supplemental Declarations of Taylor Brock and Belen Burditte, Defendants proffer the Declaration of one Brad Kane, counsel for Defendants. Mr. Kane seeks to introduce an assortment of wholly irrelevant documents, including what he purports are complaints filed by Plaintiff's Counsel in completely unrelated cases and a separate complaint filed by Ms. Thoma in California superior court pursuant to the California Private Attorneys' General Act ("PAGA"). It is unclear what relation any of these documents is supposed to have with the issue squarely before the Court: namely, the inadequacy of Defendants' CAFA jurisdictional allegations.

proffered declaration was insufficient to support defendant's amount-in-controversy calculations, the *Armstrong* Court reasoned:

> Nowhere does [the declarant] address the possible rate of meal- and rest-period violations, the number of complaints Defendant received regarding the lack of meal and rest period, Defendant's policy addressing how meal and rest periods are scheduled, or anything else to provide factual support for Defendant's assumption of 'one meal and rest period violation per workweek' for every class member.

*Ibid.*

Defendants' proffered evidence here similarly fails to suggest any particular violation rate, instead simply stating general data points regarding numbers of "separate actor engagements" and a vague estimate of the average shoot length for "Type-I films," while leaving the most important variables that could help to establish a reasonable assumed violation rate up in the air. The assumed violation rate is the most critical variable here, and indeed is the focus of the Parties' dispute here. The fact that Defendants completely fail to produce evidence that could establish a reasonable assumed violation rate for Plaintiff's waiting time penalties claim is thus dispositive of their attempt to use the calculation as a basis for asserting CAFA jurisdiction here. Simply put, the supplemental declarations do not render Defendants' CAFA jurisdictional calculations reasonable, and the calculation is little more than "a wasteful and silly, but routine, exercise in mathematical fantasyland." *Gonzalez*, 2022 WL 179292, at *3 (quoting *Toribio v. ITT Aerospace Controls LLC*, 2019 WL 4254935, at *3 (C.D. Cal. Sept. 5, 2019)).

The Ninth Circuit has expressly stated that, where a defendant "provide[s] *no* evidence or clearly inadequate evidence supporting its valuation for a claim," it is "appropriate for a district court to assign that claim a $0 value." *Jauregui*, 28 F.4th at 994. Thus, the Court should reject Defendants' argument that they should be excused from the general requirement that a removing defendant proffer evidence establishing the existence of federal jurisdiction when challenged, as here.

## C. **Defendants Fail to Show that Plaintiff's Limiting Allegations Justify Their Use of an Extreme 100 Percent Violation Rate**

Defendants also bizarrely attempt to justify their CAFA jurisdictional claim and the extreme 100% assumed violation rate that is critical to it by attempting to denigrate Plaintiff's Complaint as an "artful pleading" drafted to avoid federal jurisdiction. *See*, *e.g.*, Dkt. 17, 16:3-16. Plaintiff could just as easily contend that Defendants' failure to produce real evidence in support of its jurisdictional allegations is an artful attempt to seek to avoid the jurisdiction of California state court, where Ms. Thoma originally sued them. It is not Plaintiff's duty to affirmatively state in her Complaint allegations preemptively blocking any meritless attempt to remove her case to federal court, like Defendants' attempt here. Still, it is clear from a cursory review of her pleading that Plaintiff has alleged sufficient limiting allegations so as to render Defendants' claim that *all* Class Members are entitled to waiting time penalties clearly unreasonable and insufficient to establish CAFA jurisdiction.

Courts sitting in this Circuit frequently hold extreme 100% assumed violation rates for waiting time penalties are not warranted where "the Complaint alleges violation occurred 'on occasion' or 'at times.'" *Luna v. Pronto Calif. Gen. Agency, LLC*, 2020 WL 4883879, at *3 (C.D. Cal. Aug. 19, 2020); *see also Gonzalez*, 2022 WL 179292, at *3-4; *Toribio*, 2019 WL 4254935, at *3; *Guzman*, *supra*, 2022 WL 17852041, at *8-9. Indeed, courts are reluctant to assume a 100% violation rate even when a pleading alleges a "pattern and practice" or uniform policy of committing Labor Code violations. *See Ibarra*, 775 F.3d at 1198-99 (agreeing with lower court's finding that allegations of a "pattern and practice" does not mean always doing something); *Dunn v. SHC Servs., Inc.*, 2021 WL 5122057, at *18 (E.D. Cal. Nov. 4, 2021) (finding assumption that all class members were entitled to waiting time penalties was unreasonable despite presence of language in complaint alleging a "pattern or practice" of Labor Code violations); *Mackall v. Healthsource Global Staffing, Inc.*, 2016 WL 4579099, at *4 (N.D. Cal. Sept. 2, 2016).

Defendants' argument that Plaintiff's limiting allegations should be discounted appears to boil down to their gripe that Plaintiff has made her allegations, "then [sat] silent, providing no other facts or analysis to support her argument for remand." Dkt. 17, 18:14-15. Yet however Defense Counsel may feel about Plaintiff's Counsel, it is abundantly clear that Plaintiff need not affirmatively disprove the claimed existence of federal jurisdiction—even under CAFA—to establish that remand to state court is proper. *See Vasserman*, *supra*, 65 F.Supp.3d at 982 (defendant cannot "improperly shift the burden to plaintiff to refute speculative assertions of jurisdiction and establish that there is no jurisdiction."); *Martinez v. BAART Programs, Inc.*, 2019 WL 6210932, at *2 (C.D. Cal. Nov. 21, 2019); *Sanchez v. Carpenter Co.*, 2021 WL 2333096, at *3 (C.D. Cal. Jun. 8, 2021).

Plaintiff has broadly alleged the putative class claims in her Complaint in accordance with typical class action procedures in California state court, where (of course) this action was originally filed. That Defendants claim to find *any* support for their extreme and unreasonable 100% assumed violation rate in the mere fact that Ms. Thoma filed a civil complaint in California civil court with the pleading standards of that forum in mind is simply absurd. Plaintiff's allegations control here, and they clearly disclaim any use of an extreme 100% violation rate.[5] Accordingly, the Court should discount Defendants' waiting time penalties calculation. Because this calculation is the basis for the vast majority of the total amount in controversy as

---

[5] Likely recognizing that their assumed 100% violation rate is unreasonable, Defendants' Opposition attempts to argue that the assumed violation rate is in fact only a 62% violation rate, on the basis of "Type II Actor Engagements" not included in the amount-in-controversy calculation. Yet Defendants produce no evidence in support of a 62% assumed violation rate, either, and it is thus just as unreasonable. Moreover, Defendants have not shown that any Class Members who may have been engaged in Type II Engagements would have been sufficiently similarly situated to Plaintiff such that they could actually be represented in a class action with Ms. Thoma as representative. Accordingly, this argument should be discounted, as well.

calculated by Defendants (including their calculation of attorneys' fees), Defendants' claim to CAFA jurisdiction here must collapse as a result.

### D. Defendants Effectively Concede that this Court Lacks Equitable Jurisdiction

Defendants do not even attempt to dispute that this Court has no equitable jurisdiction over Plaintiff's UCL claim, instead sidestepping the issue altogether by arguing that the "proper remedy is dismissal" of the UCL claim. Dkt. 17, 23:23. Notably, Defendants do not even attempt to distinguish the multiple Supreme Court decisions Plaintiff cites to show that a federal court has discretion to *either* dismiss or remand to state court any action over which it lacks equitable jurisdiction. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996); *Twist v. Prairie Oil & Gas Co.*, 274 U.S. 684, 690 (1927); *Cates v. Allen*, 149 U.S. 451, 460-61 (1893). Defendants' *ipse dixit* on this issue should not be credited.

The undisputed lack of equitable jurisdiction in this Court over this Action is an independent bar to federal jurisdiction here separate from Defendants' failure to establish CAFA jurisdiction. *See*, *e.g.*, *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (declining to extend federal jurisdiction over state-law UCL claim where federal court possessed diversity jurisdiction over action). Moreover, Despite Defendants' attempts to argue that Plaintiff can seek unique remedies in this Court through the UCL that he could not obtain under the Labor Code, it cannot be denied that the California Legislature intended to provide the law as a right for its citizens *regardless* of whether an adequate remedy exists at law. *See* Cal. Bus. & Prof. Code § 17205; *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal.4th 163, 174-78 (2000). Under long-standing rules of law, there is simply no basis to effectively eviscerate Plaintiff's state-law rights under the UCL here just because Defendants have asserted CAFA jurisdiction. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938); *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 105 (1945) ("Congress never gave, nor did the federal courts ever claim, the power to deny substantive rights

created by State law[.]"). The Court should accord respect to substantive state law here and grant remand on the basis of Plaintiff's UCL claim.

## III. CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully reiterates her request that the Court remand this action to the state court where it was originally filed. In the alternative, Plaintiff requests that the Court sever and remand her UCL claim.

Date: August 4, 2023                                BIBIYAN LAW GROUP, P.C.

                                          By: */s/ Sarah H. Cohen*
DAVID D. BIBIYAN
JEFFREY D. KLEIN
SARAH H. COHEN

Attorneys for Plaintiff, MACKENZIE ANNE THOMA, and on behalf of herself and all others similarly situated