UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MACKENZIE ANNE THOMA, a.k.a. KENZIE ANNE, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VXN GROUP LLC, a Delaware limited liability company; STRIKE 3 HOLDINGS, LLC, a Delaware limited liability company; GENERAL MEDIA SYSTEMS, LLC, a Delaware limited liability company; MIKE MILLER, an individual; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 2:23-cv-04901-WLH (AGRx)<br><br>**ORDER RE PLAINTIFF'S MOTION TO REMAND [13] AND DEFENDANTS' MOTION TO DISMISS [9]** |

Neither party filed a written request for oral argument stating that an attorney with five years or less of experience would be arguing the matter. *See* Standing Order for Newly Assigned Civil Cases at 15. Further, pursuant to Federal Rule of Civil Procedure 78 and Local Rule 7-15, the Court has deemed this matter suitable for decision without oral argument. The hearing set for August 31, 2023, at 9:30 a.m. is **VACATED.**

This is a putative class action. Before the Court are Plaintiff Mackenzie Anne Thoma's Motion to Remand (Docket No. 13) and Defendants' Motion to Dismiss (Docket No. 9). For the reasons below, the Court **DENIES** Thoma's Motion except as to her tenth cause of action under the California Unfair Competition Law; it severs and remands that claim to state court. The Court **GRANTS** Defendants' Motion to Dismiss with leave to amend as to Thoma's first through ninth causes of action.

## I. BACKGROUND

Thoma is an adult film actor. (Notice of Removal, Docket No. 1, Exh. A ¶ 1). Defendants VXN Group, LLC ("VXN"), Strike 3 Holdings, LLC ("Strike 3"), General Media Systems, LLC ("General Media"), and Mike Miller (collectively, "Defendants") run Vixen Media Group, an adult film production company. (*Id.* ¶¶ 3, 10). In November 2020, Thoma entered into an agreement with Defendants under which she "performed in Defendants' movies and modeled at their direction." (*Id.* ¶ 8). The agreement expired in September 2022. (*Id.*).

Thoma filed this action in California Superior Court on April 20, 2023. (*See generally id.*). Thoma alleges that Defendants are jointly liable for violating various sections of the California Labor Code[1] and California's Unfair Competition Law ("UCL"), Business and Professions Code section 17200, *et seq.*, by failing to, *inter alia*, pay minimum and overtime wages, provide meal periods and rest periods, furnish accurate wage statements, pay for vested vacation time, and timely pay final wages at termination. (*Id.*). Thoma alleges that "[f]or at least three (3) years prior to the filing of this action and continuing to the present, Defendants have, at times, failed to pay Plaintiff and Class Members, or some of them, the full amount of their wages owed to them upon termination and/or resignation," including "overtime wages, minimum wages, premium wages, and vacation pay pursuant to Labor Code section 227.3." (*Id.* ¶ 26). Thoma also seeks penalties from Defendants for misclassifying her and other

---

[1] All following mentions of the "Labor Code" refer to the California Labor Code.

class members as independent contractors. (*Id.* ¶ 6; 113(I)). She does not make an allegation regarding the frequency with which Defendants misclassified other potential class members.

On June 21, 2023, Defendants removed the action to federal court pursuant to the Class Action Fairness Act ("CAFA"), codified in relevant part at 28 U.S.C. §§ 1332, 1441(a), 1446, and 1453. Under CAFA, the federal court has jurisdiction over class actions "if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014) (citing 28 U.S.C. § 1332). Defendants support their assertion that the amount in controversy exceeds $5 million by relying on the declarations of VXN's Content Manager (*See* Decl. of Aldrich Yap ("Yap Decl."), Docket No. 1-1 ¶ 2), its Production Accountant (*See* Decl. of Belen Burditte ("Burditte Decl."), Docket No. 1-2 ¶ 2), and a producer (*See* Decl. of Taylor Brock ("Brock Decl."), Docket No. 1-3 ¶ 2). These employees reviewed accounting and personnel records, among other documents, from the entire class period. (Burditte Decl. ¶¶ 3–4; Yap Decl. ¶ 5). From the employees' personal knowledge and review of the documents, Defendants established the following[2]:

- Defendants categorizes their films into two types: "Type-I" and "Type-II." (Brock Decl. ¶ 4). Type-I films, like those Thoma performed in, "typically involve a different and more complex filming style that results in a longer duration on set." (*Id.*). For the purposes of the amount-in-controversy calculation, Defendants accounted for only the Type-I engagements. (*See* Notice of Removal ¶ 51).
- The number of actors who worked in Type-I films during the class period—and therefore the likely number of putative class members—is 384. (Yap Decl. ¶ 5).

---

[2] The Court recounts only those findings that are relevant to its calculations below.

3

- Actors in Type-I movies are engaged and paid on a per-film basis. (Burditte Decl. ¶ 5(b)). From April 20, 2020, to May 8, 2023, Defendants entered into 1,001 separate "engagements" with actors in Type-I films. (*Id.* ¶ 6(a)).
- The average daily rate paid to Type-I actors in the three years before Thoma filed this action was $1,603.18. (*Id.* ¶ 6(b)).
- "The on-set production duration for Type-I films is at least ten (10) hours. These production hours occur consecutively within the same calendar workday." (Suppl. Decl. of Taylor Brock ("Suppl. Brock Decl."), Docket No. 17-2 ¶ 7).

Defendants then made the following assumptions and calculations:

- The average daily rate during the class period of $1,603.18 equates to an average hourly rate of $200.40 ($1,603.18 average daily rate/8 hours). (Notice of Removal ¶ 44).
- The average hourly overtime rate was $300.60 (average hourly rate of $200.40 x 1.5). (*Id.*).
- Accordingly, assuming Thoma's allegations are correct, the actors' average daily rate including overtime works out to $2,204.38 ($1,603.18 average daily rate + 2 hours of overtime at $300.60 each) during the class period. (*Id.*).
- Each actor was "effectively discharged" after each engagement. (Notice of Removal ¶ 44).
- Under California Labor Code section 201, employers must pay employees all wages due to them at the time of discharge. Cal. Lab. Code § 201. California Labor Code section 203 allows recovery of a waiting time penalty equal to a day's wages for each day that wages are unpaid, up to 30 days. Cal. Lab. Code § 203.

- Because actors were paid on a per-film basis, Defendants never paid overtime wages for any engagement. The amount-in-controversy on the waiting time claim alone is therefore **$66,197,306.18** ($2,204.38 average daily wage x 30 days x 1,001 Type-I actor engagements).[3]

On June 28, 2023, Defendants filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Mot. to Dismiss).

On July 21, 2023, while Defendants' Motion to Dismiss was still pending, Thoma filed a motion to remand the action to state court, arguing that Defendants failed to carry their burden to establish that, based on reasonable assumptions and credible evidence, the amount in controversy exceeds $5 million. (*See generally* Mot. to Remand). Thoma also argues that remand is warranted because the Court lacks equitable jurisdiction over her claim under the UCL. (*Id.* at 22–24).

## II. LEGAL STANDARD

### A. Motion to Remand

When removing a class action under CAFA, "a removing party must initially file a notice of removal that includes 'a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'" *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) (quoting *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 81 (2014)). If the plaintiff challenges defendant's amount in controversy allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin*, 574 U.S. at 82. "[W]hen calculating the amount in controversy, the parties need not predict the trier of fact's eventual award with one hundred percent accuracy." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (quotation omitted). Rather, "the removing party must be able to rely on a chain

---

[3] By the Court's calculations, the total comes out to $66,197,531.40. It is unnecessary to resolve the disparity for the purposes of this motion.

of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million, as long as the reasoning and underlying assumptions are reasonable." *Id.* (quotation omitted). Importantly, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin*, 574 U.S. at 89.

### B. Motion to Dismiss

Under Rule 12(b)(6), a party may move to dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint need not include detailed factual allegations, but it must provide more than just a "formulaic recitation of the elements of a cause of action." *Twombly* at 555.

In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). The court is not required to accept as true legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

Because the ruling on Thoma's Motion to Remand concerns this Court's jurisdiction to hear the case, it considers that motion first before turning to Defendants' Motion to Dismiss.

### A. Motion to Remand

#### 1. *Amount in Controversy*

Though their calculations are flawed, Defendants have met their burden of showing, by a preponderance of the evidence and based on reasonable assumptions, that the amount in controversy exceeds $5 million.

As a threshold issue, Thoma argues that the employee declarations on which Defendants rely are "conclusory" and provide "no evidentiary support." (Mot. to Remand at 4). The Ninth Circuit has found, however, that a removing party may rely "primarily" on a declaration of an employee who has reviewed the relevant data to establish the amount in controversy. *Jauregui,* 28 F.4th at 991, 994 (holding that a defendant that "relied primarily on the declaration of its senior payroll lead" provided "substantial evidence and analysis supporting its amount in controversy estimate"). Moreover, Thoma has not given the Court any reason to doubt the statements in the VXN employees' declarations.

Regarding Defendants' calculation of the waiting time penalty, Thoma also takes issue with the assumption that each Type-I actor was "effectively discharged" after every engagement and is therefore entitled to a full 30-day waiting penalty for each engagement. (Mot. to Remand at 5). As Thoma points out, Defendants have provided no authority to show they can stack waiting time penalties in that way. (*Id.*). In fact, without any information from Defendants regarding the terms of their engagement agreements with Type-I actors, the Court has no evidence to support Defendants' underlying assumption that an actor is "effectively discharged" after each engagement. *See, e.g., Elliot v. Spherion Pac. Work, LLC*, 572 F. Supp. 2d 1169, 1176 (C.D. Cal.

2008), *aff'd*, 368 F. App'x 761 (9th Cir. 2010) (temporary worker "was not 'discharged' from her employment with Defendant each time one of her temporary assignments ended"). A more reasonable assumption is that each actor is entitled to a single waiting time penalty.[4] Instead of 1,001, then, the 30-day waiting penalty should have been multiplied by 384—the number of putative class members. (Yap Decl. ¶ 5).

Thoma also takes issue with Defendants' assumption of a 100% violation rate in their calculation of the waiting time penalty. (Mot. to Remand at 5–6). In her Complaint, Thoma alleges that Defendants "at times" did not pay her and other class members the full wages to which they were entitled upon discharge. (Compl. ¶ 26). Thoma argues that her "at times" language does not support Defendants' notion that every class member experienced a Labor Code violation entitling them to a waiting time penalty. While that may be true, Defendants' evidence shows that Defendants in fact *never* paid overtime because they paid Type-I actors on a "per-film" basis. (Burditte Decl. ¶ 5(b)). Paired with testimony that all actors must be on set for at least ten consecutive hours during production of a Type-I film, this supports Defendants' assertion that under Thoma's theory of liability, each actor would have in fact experienced a Labor Code violation for non-payment of two hours of overtime, entitling them to the waiting time penalty. (Suppl. Brock Decl. ¶ 7). Finally, because more than 30 days have passed since May 8, 2023—the date of Defendants' last payment to potential class members—it is reasonable to assume that all class members would be entitled to the full 30-days' worth of wages. (Burditte Decl. ¶ 6). These assumptions are reasonable, especially given that Thoma offers no evidence of her own to throw these assumptions into question. *See Mariscal v. Arizona Tile, LLC*, No.

---

[4] Contrary to Thoma's assertion, the Court may not value Defendants' claim at $0. While some of Defendants' assumptions miss the mark, where a district court may identify "a different, better assumption," it "should consider the claim under the better assumption—not just zero-out the claim." *Jauregui*, 28 F.4th at 996. The Court has identified a more reasonable assumption here.

8

820CV02071JLSKES, 2021 WL 1400892, at *3 (C.D. Cal. Apr. 14, 2021) (finding that defendant's assumed violation rate was "conservative and reasonable in light of [plaintiff's] failure to offer any alternative limiting principle or rebuttal evidence").

Defendants erred, however, in dividing performers' average daily rate by eight hours in order to reach the average hourly wage. Again, according to Defendants themselves, each production day spanned at least ten hours. This means that the average daily rate of $1,603.18 should have been divided by ten to reach an average hourly rate of $160.32 (not $200.40). Based on this calculation, the average hourly overtime rate was $160.32 x 1.5 = $240.48 (not $300.60). A ten-hour day, then, would earn a class member an average of $1,763.52 per day ($160.32 x 8 hours + $240.48 x 2 hours). So the amount in controversy on the waiting time penalty comes out to **$20,315,750.40** ($1,763.52 per day x 30-day penalty x 384 class members).

Again, a 100% violation rate is reasonable given the evidence. But even if the Court were to interpret Thoma's allegation that violations occurred only "at times" to imply that a quarter of the class members experienced a Labor Code violation, the waiting time penalty claim alone would still exceed $5 million.[5] Therefore, the Court need not address Defendants' other calculations. Defendants have met their burden to establish CAFA jurisdiction.

          2.     *Jurisdiction Over the UCL Claims*

Thoma also argues that this case must be remanded to state court because this Court does not have jurisdiction over her claim for equitable relief—"specifically, her claim under California's UCL for restitution of unpaid wages." (Mot. to Remand at 22 (citing Compl. ¶ 93)). Alternatively, Thoma requests that the Court sever and remand her UCL claim. (Reply, Docket No. 18 at 13).

---

[5] The Court notes that there is no one-size-fits-all rule when plaintiff alleges that a violation occurred "at times." Rather, the Court merely demonstrates that even if the 100% violation rate were drastically reduced, Defendants could still establish CAFA jurisdiction on one claim alone.

9

In a federal court action, a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL…." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Such a showing is not required for an action in California state court. *Id.* at 839. Thoma argues that she "does not (and indeed cannot) plead" that she lacks an adequate remedy at law, because she "seeks a legal remedy in the form of money damages identical to her claim for equitable restitution of unpaid wages owed under the UCL." (Mot. to Remand at 22). Therefore, she says, the entire case should be remanded to state court. (*Id.*).

In *Treinish v. iFit Inc.*, No. CV 22-4687-DMG (SKX), 2022 WL 5027083 (C.D. Cal. Oct. 3, 2022), another court in this district faced a similar situation. There, the plaintiff "argue[d] that he did not, and could not have, pled that he lacks an adequate remedy at law," and that the court therefore lacked equitable jurisdiction over his UCL claim. *Id.* at *3. While the court agreed that it lacked jurisdiction over the UCL claim, it found that, under Ninth Circuit precedent, that was "not a proper basis to grant [the plaintiff's] motion to remand." *Id.* at *4.

This Court agrees with the decision in *Treinish*. Recognizing that it has no jurisdiction over Thoma's UCL claim for unpaid wages, the Court exercises its discretion to sever that claim under Federal Rule of Civil Procedure 21. The Court therefore remands Thoma's tenth cause of action under the UCL. *Cf. Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d 869, 880 (N.D. Cal. 2021) (recognizing that while "plaintiffs could simply refile their [UCL] claims in state court if they were dismissed in federal court" for lack of equitable jurisdiction, "[r]emand achieves the same outcome more efficiently").

### B. Motion to Dismiss

The Court now turns to the Motion to Dismiss. Each of Thoma's first through ninth claims are underpinned by generic allegations that fail to meet the plausibility pleading standard of *Iqbal* and *Twombly*. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550

U.S. at 570.

### 1. Joint Liability Allegations

Thoma alleges that Defendants are jointly liable for the violations she pleads in the Complaint. Thoma's claims, however, "are stated in wholly conclusory terms with little or no supporting facts." *Ovation Toys Co. v. Only Hearts Club*, 675 F. App'x 721, 724 (9th Cir. 2017) (affirming dismissal of alter ego allegations). To the extent Thoma's claims rely on a theory of joint liability, then, those claims fail for lack of factual support.

### 2. Overtime and Minimum Wage Claims

Thoma brings a first cause of action for failure to pay overtime wages in violation of Labor Code sections 510 and 1194 and a second cause of action for failure to pay minimum wages in violation of Labor Code section 1197. (Compl. ¶¶ 43–55). In *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 645 (9th Cir. 2014), the Ninth Circuit affirmed the district court's dismissal of similar claims because "[t]he complaint did not allege facts showing that there was a given week in which [the plaintiff] was entitled to but denied minimum wages or overtime wages."[6] Thoma likewise failed to allege any facts showing she was ever entitled to minimum or overtime wages that went unpaid. Her first and second causes of action are therefore **DISMISSED** with leave to amend.

### 3. Meal and Rest Break Claims

Thoma's third and fourth causes of action, for failure to provide meal and rest breaks in violation of Labor Code section 226.7, also lack any factual underpinning. (*See* Compl. ¶¶ 56–71). Thoma does not "allege at least one meal or rest break where [she] worked through the break and was not paid for that time," nor does she "allege a

---

[6] The claims in *Landers* were brought under the Fair Labor Standards Act, but courts in this circuit have repeatedly held that the same pleading standards apply to claims under the Labor Code. *See, e.g.*, *Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1007 n.3 (N.D. Cal. 2016) (collecting cases and stating that the reasoning in *Landers* applies "especially" to "overtime and wage claims because the language of the FLSA and Labor Code provisions is strikingly similar").

given instance where Defendant[s] failed to provide [her] a meal or rest break in compliance with state law." *Freeman v. Zillow, Inc.*, No. SACV1401843JLSRNBX, 2015 WL 5179511, at *5 (C.D. Cal. Mar. 19, 2015). Her third and fourth claims are also **DISMISSED** with leave to amend.[7]

### 4. *Waiting Time, Wage Statement, and Timely Payment Claims*

Thoma brings a fifth cause of action for failure to pay all wages due upon termination in violation of Labor Code sections 201 and 202, a sixth cause of action for failure to provide accurate wage statements in violation of Labor Code section 226, and a seventh cause of action for failure to timely pay wages during employment under Labor Code section 204. (Compl. ¶¶ 72–94). These claims are derivative of Thoma's first through fourth claims and are therefore also **DISMISSED** with leave to amend.

### 5. *Reimbursement and Vacation Claims*

Thoma brings an eighth cause of action for failure to reimburse mandatory expenses in violation of Labor Code section 2802 and a ninth cause of action for failure to pay unused vested vacation time in violation of Labor Code section 227.3. (Compl. ¶¶ 95–107). These claims appear to have been wholly copied and pasted from another class action labor complaint. For example, not only does Thoma fail to supply any facts showing that she incurred mandatory expenses connected to her employment with Defendants, but she also, as Defendants point out, makes the generic allegation that she and other class members were not reimbursed for "laundering mandatory work

---

[7] Defendants assert that these claims should be dismissed with prejudice because Thoma is a "professional actor" exempt from overtime, meal period, and rest period provisions under Industrial Welfare Commission ("IWC") Wage Order No. 12-2001, which governs the motion picture industry. (Mot. to Dismiss at 10–12). Thoma states that she both "performed in Defendants' movies and modeled at their direction." (Compl. ¶ 8). While Wage Order No. 12-2001 exempts "professional actors" from most of its provisions, it does not explicitly exempt models. IWC Wage Order No. 12-2001 § 1(C). Based on the spare allegations in the Complaint, the Court cannot say at this point whether, as a matter of law, Thoma otherwise qualifies as an exempt professional under Wage Order 12-2001.

12

uniforms." (Compl. ¶ 98; *see also* Mot. to Dismiss at 7–8). Thoma provides no explanation for why an adult film actor would have a mandatory work uniform. The Court notes, however, that Thoma's counsel filed a complaint in a different action containing the same allegation six days before filing Thoma's complaint. *See* Decl. of Scott Gultz, Docket No. 1-1, Exh. A ¶ 87, *Wilcox v. Harbor UCLA Med. Ctr. Guild, Inc.*, Case No. 2:23-cv-02802-MCS-JC (C.D. Cal. Apr. 14, 2023). In that case the plaintiff alleged that she and other class members had purchased work uniforms, but a court in this district still dismissed that claim for lack of factual support. *Wilcox v. Harbor UCLA Med. Ctr. Guild, Inc.*, No. 2:23-CV-02802-MCS-JC, 2023 WL 5246264, at *8 (C.D. Cal. Aug. 14, 2023).

Thoma also does not state that she had vested vacation time at all. Given Thoma's allegation that she was classified as an independent contractor, it seems unlikely that Thoma had accrued vacation time. Further, Thoma cannot allege that she would be due vacation time had she been classified as an employee, as "California law does not require employers to provide employees with paid vacation." *McPherson v. EF Intercultural Found., Inc.*, 47 Cal. App. 5th 243, 259 (2020).

The Court therefore **DISMISSES** the eighth and ninth causes of action with leave to amend. Thoma's counsel is cautioned, however, that copy-and-paste allegations "completely undermine[] the credibility and genuine nature of [Thoma's] claims." *Molina v. City of Maywood*, No. CV 08-3105 ODW (SHX), 2008 WL 4057105, at *2 (C.D. Cal. Aug. 27, 2008). The Court understands that Defendants offered to stipulate to Plaintiff's counsel filing an amended Complaint but that Thoma's counsel declined to do so. (Mot. to Dismiss at 1 n.1). Instead, Thoma's counsel "forced Defendant[s] to file this motion and forced the Court to expend [its] scarce resources to adjudicate it." *Gerritsen v. FCA US LLC*, No. CV 19-08268-AB (KSX), 2020 WL 3841304, at *2 (C.D. Cal. Mar. 3, 2020). Federal Rule of Civil Procedure 15(a)(1) "provide[s] for amendment as of right precisely to avoid squandering the parties and the Court's

resources in this manner." *Id.*

## IV. CONCLUSION

The Court severs Thoma's tenth claim under the UCL and **GRANTS** remand as to that claim alone. Otherwise, Thoma's Motion to Remand is **DENIED**. The Court **GRANTS** Defendants' Motion to Dismiss the first through ninth causes of action with leave to amend. Thoma may file an amended complaint within 21 days of the issuance of this Order.

**IT IS SO ORDERED.**

Dated: August 30, 2023

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE