David D. Bibiyan (SBN 287811)
*david@tomorrowlaw.com*
Jeffrey D. Klein (SBN 297296)
*jeff@tomorrowlaw.com*
Sarah H. Cohen (SBN 330700)
*sarah@tomorrowlaw.com*
**BIBIYAN LAW GROUP, P.C.**
8484 Wilshire Boulevard, Suite 500
Beverly Hills, California 90211
Tel: (310) 438-5555; Fax: (310) 300-1705

Attorneys for Plaintiff, MACKENZIE ANNE THOMA,
and on behalf of herself and all others similarly situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MACKENZIE ANNE THOMA, a.k.a. KENZIE ANNE, an individual and on behalf of all others similarly situated, | CASE NO: 2:23-cv-04901-WLH (AGRx) |
| Plaintiff, | [*Assigned for all purposes to the Hon. Wesley L. Hsu*] |
| v. | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND CLASS CLAIMS** |
| VXN GROUP LLC, a Delaware limited liability company; STRIKE 3 HOLDINGS, LLC, a Delaware limited liability company; GENERAL MEDIA SYSTEMS, LLC, a Delaware limited liability company; MIKE MILLER, an individual; and DOES 1 through 100, inclusive, | |
| Defendants. | **HEARING INFORMATION** |
| | DATE:     December 1, 2023 |
| | TIME:     9:30 a.m. |
| | COURTRM:  9B |

# **TABLE OF CONTENTS**

**I.    INTRODUCTION**……………………………………………………1

**II.   LEGAL STANDARDS**…………………..……………………………2

    **A. Fed. R. Civ. P. 12(b)(6)**…………..………………..………..……2

    **B. Pleading Standards**..……………………………………………..3

**III.  LEGAL ARGUMENT**……………..………………………………5

    **A. DEFENDANTS FILED THEIR MOTION IN**
       **VIOLATION OF THE FEDERAL RULES OF CIVIL**
       **PROCEDURES AND IT SHOULD THEREFORE BE**
       **DISMISSED**…………………………………………………..5

       **1. Defendants Violated The Federal Rules**
         **Of Civil Procedure**………..……………………………………5

       **2. Defendant Failed to Comply With Local**
         **Rule 7-3**……………………………………………..…..6

    **B. DEFENDANTS FAIL TO PROVE ON THE MERITS**
       **THAT ANY OF PLAINTIFF'S CLAIMS ARE SUBJECT**
       **TO DISMISSAL**……………………………..………………7

       **1. A Motion To Dismiss Is Not The Mechanism**
         **To Determine What Wage Order And Exemptions**
         **Should Govern Ms. Thoma And Class Members**…………...7

          a.  It would be improper to decide which Wage
            Order governs this case at the pleading stage……………9

          b.  It cannot be determined whether Ms. Thoma and class
            members are covered under the professional actor
            exemption at this time…………………………..10

       **2. Ms. Thoma Properly Claims That She And Class**
         **Members Were Not Paid Minimum Wages**………...………11

       **3. None Of Plaintiff's Derivative Claims are Properly**

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

Subject To Dismissal…………………..……………………..13

4. **Ms. Thoma Is Not Required to Provide Inaccurate Wage**
   **Statements For Her Wage Statement Ciolation Cause of**
   **Action**……………………………………………………….13

5. **Ms. Thoma Properly Pleaded Enough Facts To**
   **Substantiate Her Claim That She And Class Members**
   **Were Not Reimbursed For Work Related**
   **Expenses**……………………………………………….....14

6. **Plaintiff Adequately Asserts Claims Against**
   **Defendants Strike 3, GMS, and Miller under Alter**
   **Ego and Other Theories of**
   **Liability**……………………………………………………..15

   a. All defendants are liable under joint employer
      and general joint liability theories………………………16

   b. Ms. Thoma adequately pleaded enough facts
      to state alter-ego liability………………………………18

**C. TO THE EXTENT THE COURT GRANTS**
**DEFENDANTS' MOTION, PLAINTIFF REQUESTS**
**LEAVE TO AMEND**…………………………………..…………..19

**IV.    CONCLUSION**……..……………………………………..19

1
2

# **TABLE OF AUTHORITIES**

## **Statutory Authority and Local Rules**

3  Fed. R. Civ. P. 15(a)(3)…………………………………….…………..1, 5

4  Local Rule 7-3……………………………………………………………1, 6, 7

5  Wage Order 12-2001……………………………………...…..1, 8, 10, 11, 16

6  Fed. R. Civ. Proc. 12(b)(6)……………………………………...2, 3, 5, 19

7  Fed. R. Civ. P. 12(d)…………………………………….…………………..3

8  Labor Code Section 226…………………………………………………13

9  Fed. R. Civ. P. 15(a)………………………………………………………19

10

## **Case Authority**

11  *Angiano v. Anheuser-Busch InBev Worldwide, Inc.*,

12      532 F.Supp.3d 911, 916 (C.D. Cal. 2021) …………………………………2

13  *Bell Atl. Corp. v. Twombly*,

14      550 U.S. 544, 555 (2007) …………………………………..………..……2, 3, 4

15  *Love v. Marriott Hotel Servs., Inc.*,

16      40 F.4th 1043, 1045 (9th Cir. 2022)……………………………………3

17  *Enesco Corp. v. Price/Costco Inc.*,

18      146 F.3d 1083, 1085 (9th Cir. 1998) ……………………………………3

19  *Massey v. Banning Unif. Sch. Dist.*,

20      256 F.Supp.2d 1090, 1092 (C.D. Cal. 2003) ………………...…………3, 4

21  *Levine v. Diamanthuset, Inc.*,

22      950 F.2d 1478, 1483 (9th Cir. 1991)……………………………………3

23  *McGary v. City of Portland*,

24      386 F.3d 1259, 1270 (9th Cir. 2004) ……………………………………4

25  *Wyshak v. City Nat. Bank*,

26      607 F.2d 824, 827 (9th Cir. 1979)……………………….………………..4

27  *Durham v. Prudential Ins. Co. of Am.*, 236

28      F.Supp.3d 1140, 1150 (C.D. Cal. 2017).  …………………………………4, 8

*Frame v. City of Arlington*,

    657 F.3d 215 (5th Cir. 2011) …………………………………………4

*Impress Communications v. UnumProvident Corp.*,

    335 F.Supp.2d 1053 (C.D. Cal. 2003) ……………………………………..4

*Foman v. Davis*,

    371 U.S. 178, 182 (1962)……………………………………………………4

*DeSoto v. Yellow Freight Sys., Inc.*,

    957 F.2d. 655, 658 (9th Cir. 1992)……………………………………………..5

*Bechtel v. Liberty Nat. Bank*,

    534 F.2d 1335, 1341 (9th Cir. 1976)………………………………...…………..5

*Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*,

    855 F.2d 1470, 1474 (9th Cir. 1988)…………………………………………….5

*United States v. Real Prop. Located at 41430 De Portola Rd., Rancho California*,

    959 F.2d 243, 1 (9th Cir. 1992)…………………………………………..…...5

*Tri-Valley CAREs v. U.S. Dep't of Energy*,

    671 F.3d 1113, 1131 (9th Cir. 2012)………………………………………....6

*Burke v. Basil*,

    2021 WL 5993524, at *1 (C.D. Cal. Oct. 20, 2021) …………….……………6

*Morales v. K. Chocolatier Inc.*,

    2022 WL 19829446, at *2 (C.D. Cal. Oct. 31, 2022)……………………………6

*Alcatel-Lucent USA, Inc. v. Dugdale Commc'ns, Inc.*,

    2009 WL 3346784, at *3-4 (C.D. Cal. Oct. 13, 2009) …………………….…….6

*Pina v. Lewis*,

    717 Fed. App'x 739, 740 (9th Cir. 2018). …………………………………7

*Eason v. Roman Catholic Bishop of San Diego*,

    414 F.Supp.3d 1276, 1280 (S.D. Cal. 2019)……………………………….8, 13

*Parker v. Country Oaks Partners, LLC*,

    2023 WL 3149330, at *3 (C.D. Cal. Mar. 22, 2023)……………………………18

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

1   *Nolen v. Fitzharris*,

2       450 F.2d 958, 958-59 (9th Cir. 1971)……………………………………..19

3   *St. Michael's Convalescent Hospital v. California*,

4       643 F.2d 1369, 1374 (9th Cir. 1981)……………………………………….19

5   *Morongo Band of Mission Indians v. Rose*,

6       893 F.2d 1074, 1079 (9th Cir. 1990)………………………………………19

7                           <u>**California Cases**</u>

8   *Combs v. Skyriver Commc'ns, Inc.*,

9       159 Cal.App.4th 1242, 1254 (Cal. 2008) ………………..…………….....……..8

10  *Miles v. City of Los Angeles*,

11      56 Cal. App. 5th 728, 736 (2020)……………………………….………..……9

12  *Thai v. Int'l Bus. Machines Corp.*,

13      93 Cal. App. 5th 364, 370 (Oct. 11, 2023)………………………..….…….....14

14  *Farrell v. Placer Cnty.*,

15      23 Cal. 2d 624, 631 (1944)……………………………………………….16

16  *St. Myers v. Dignity Health*,

17      44 Cal. App. 5th 301, 311 (2019)…………………………..………….16

18  *Vernon v. State of California*,

19      116 Cal. App. 4th 114, 126 (2004). …………………………………….....16

20  *Medina v. Equilon Enterprises, LLC*,

21      68 Cal. App. 5th 868, 879 (2021)……………………………………….16

22  *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*,

23      1 Cal. 3d 586, 595 (1970)………………………………………….16, 17

24  *Leek v. Cooper*,

25      194 Cal. App. 4th 399, 415 (2011). …………………..……………..18

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Mackenzie Anne Thoma ("Plaintiff" or "Ms. Thoma") hereby submits the following opposition to defendants VXN Group LLC ("VXN"); Strike 3 Holdings, LLC ("Strike 3"); General Media Systems, LLC ("GMS"); and Mike Miller ("Miller" and collectively with VXN, Strike 3, and GMS, "Defendants") Motion to Dismiss First Amended Complaint and Class Claims (the "Motion").

Defendants' Motion utterly fails to provide any legitimate reasons as to why Ms. Thoma's First Amended Complaint ("FAC") should be dismissed. Each and every argument provided by Defendants fail on several different bases. First and foremost, Defendants failed to comply with Local Rule 7-3, requiring that counsel meet and confer at least seven (7) days prior to filing any motion in this Court. *See* Declaration of Sarah H. Cohen ¶2 and 7. Furthermore, under Fed. R. Civ. P. 15(a)(3), a party has 14 days to file a responsive pleading to an amended complaint after that party was served with said complaint. Plaintiff filed and served her First Amended Complaint on September 20, 2023, as such Defendants were required to meet and confer *on or before* September 27, 2023 regarding any inadequacies in the FAC. Furthermore, under Fed. R. Civ. P. 15(a)(3), Defendants' responsive pleading was due October 4, 2023. This motion was filed and served October 18, 2023, two weeks after it was due. Defendants seemingly granted themselves the extension they requested in their Motion to Extend Time to Respond to Plaintiff's First Amended Complaint ("Motion to Extend Time") set to be heard by this Court on November 3, 2023. *See* Dkt. #30. Indeed, Defendants' Motion is untimely and should be denied in its entirety.

Further, looking past the Motion's procedural defects, Defendants fail to show that any of Plaintiff's claims should be dismissed on their merits. First and foremost, Defendants allege that the professional actor exemption under Wage 12-2001 governs Plaintiff and other similarly situated class members. However, Defendants provide

1

absolutely no legal authority or facts to indicate Ms. Thoma and Class Members are covered by this exemption. Similarly, the FAC should not be dismissed on these grounds.

Also, as will be discussed below, each and every other ground for dismissal stated by Defendants completely, totally, and utterly fail. Ms. Thoma pleads sufficient facts for each and every cause of action within the FAC, the burden is not on Ms. Thoma to produce a Wage Statement to substantiate her sixth cause of action, and sufficient facts are pleaded to support joint liability against all Defendants.

Plaintiff thus humbly requests that the Court deny Defendants' Motion in its entirety. Alternatively, to the extent that her Complaint does not already sufficiently allege any of the claims asserted herein, Plaintiff respectfully requests that the Court grant her leave to amend.

## II.     **LEGAL STANDARDS**

### A. **Fed. R. Civ. P. 12(b)(6)**

A plaintiff in federal court is required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While the Federal Rules of Civil Procedure ("FRCP") allow a district court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." Fed. R. Civ. P. 12(b)(6), 8(e). With this principle in mind, "[t]he Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6)[,]" and applies "a powerful presumption against rejecting pleadings for failure to state a claim." *Angiano v. Anheuser-Busch InBev Worldwide, Inc.*, 532 F.Supp.3d 911, 916 (C.D. Cal. 2021) (quoting *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997)). It is thus typically enough to withstand dismissal that a pleading "give[s] the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("*Twombly*") (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

On a motion to dismiss a complaint for failure to state a claim under FRCP 12(b)(6), the court must assume as true all allegations contained in the complaint, "construing the pleadings in the light most favorable to … the nonmoving party." *Love v. Marriott Hotel Servs., Inc.*, 40 F.4th 1043, 1045 (9th Cir. 2022). Indeed, a district court's order of dismissal will be affirmed "only if it is clear that no relief could be granted under any set of facts that could be provided consistent with the allegations." *Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083, 1085 (9th Cir. 1998) (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 12774 (9th Cir. 1993)). "It need not appear that plaintiff can obtain the specific relief demanded as long as the court can ascertain from the face of the complaint that *some* relief can be granted." *Massey v. Banning Unif. Sch. Dist.*, 256 F.Supp.2d 1090, 1092 (C.D. Cal. 2003) (quoting *Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1104 (D.C. Cir. 1985)).

## B. <u>Pleading Standards</u>

The purpose of sufficiently pled claims is "to give the defendant fair notice of what the… claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. While factual allegations challenged under FRCP 12(b)(6) must not be speculative, the United States Supreme Court has held that the federal rules do "not requir[e] heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 547; *accord. Ashcroft v. Iqbal*, 556 U.S. 662, 662 (2009).

Furthermore, in ruling on a 12(b)(6) motion, a court cannot generally consider material outside of the complaint, such as facts or allegations presented in briefs, affidavits, or discovery materials. *See Levine v. Diamanthuset, Inc.,* 950 F.2d 1478, 1483 (9th Cir. 1991), *overruled on other grounds*, *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994). If matters or factual allegations outside the pleadings are considered, the motion should instead be treated as a motion for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P.

12(d). Thus, dismissal is especially disfavored in cases where the complaint sets forth a legal theory "that can best be assessed after factual development." *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004) (internal quotes omitted).

Nevertheless, if the "plaintiffs … have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, *supra*, 550 U.S. at 570. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556. Even a request for an improper remedy for a claim is not grounds for dismissal so long as the court can ascertain from the face of the complaint that *some* relief can be granted. *See Massey*, *supra*, 256 F. Supp. 2d at 1092.

With respect to affirmative defenses, it is the defendant, *not* the plaintiff, asserting the defense that carries the burden of sufficiently pleading, so as to provide plaintiff with "fair notice of the defense." *Wyshak v. City Nat. Bank*, 607 F.2d 824, 827 (9th Cir. 1979). On a motion to dismiss, a defendant must "establish the affirmative defense through either facts that the plaintiff had pleaded or facts that are subject to judicial notice." *Durham v. Prudential Ins. Co. of Am.*, 236 F.Supp.3d 1140, 1150 (C.D. Cal. 2017). Thus, for example, a plaintiff is not required to plead *any* facts or allegations rebutting a defendant's proposed affirmative defense to survive a motion to dismiss. *See, e.g., Frame v. City of Arlington*, 657 F.3d 215, 239-40 (5th Cir. 2011) ("[A] plaintiff is not required to allege that his claims were filed within the applicable statute of limitations.")

Lastly, the court must also decide whether to grant the plaintiff leave to amend. *Impress Commc'n v. UnumProvident Corp.*, 335 F. Supp. 2d 1053, 1062 (C.D. Cal. 2003). A court should "freely give" leave to amend when there is no undue delay, bad faith, dilatory motives on the part of the movant, undue prejudice to the opposing party by virtue of the amendment, or futility of the amendment. Fed. R. Civ. P. 15(a); *Foman v. Davis,* 371 U.S. 178, 182 (1962). Generally, leave to amend is denied only

1    when it is clear the deficiencies of the complaint cannot be cured by amendment.

2    *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d. 655, 658 (9th Cir. 1992).

3    **III.    LEGAL ARGUMENT**

4          **A. DEFENDANTS FILED THEIR MOTION IN VIOLATION OF THE**

5              **FEDERAL RULES OF CIVIL PROCEDURES AND IT SHOULD**

6              **THEREFORE BE DISMISSED**

7          Even before reaching the merits, the Court may properly dispose of the pending

8    Motion on the *undisputed* ground that Defendants failed to comply with both the

9    Federal Rules of Civil Procedure *and* Local Rules in filing their Motion.

10          **1.    Defendants Violated The Federal Rules Of Civil Procedure.**

11          Fed. R. Civ. P. 15(a)(3) sets forth the time to respond to an amended complaint.

12   Defendants had 14 days to respond to Ms. Thoma's FAC after it was served upon

13   them on September 20, 2023. Therefore, Defendants' should have filed a responsive

14   pleading on or before October 4, 2023. However, Defendants filed their Motion on

15   October 18, 2023; two weeks *after* a responsive pleading would be due.

16          Fed. R. Civ. P. 12 (b)(6) *only* allows the filing of a motion to dismiss "before

17   pleading if a responsive pleading <u>is allowed</u>." Appellate courts within the 9th district

18   have made it clear that a Fed. R. Civ. P. 12 (b)(6) motion is permissible only when a

19   responsive pleading is allowed. See *Bechtel v. Liberty Nat. Bank*, 534 F.2d 1335, 1341

20   (9th Cir. 1976); See also *Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470,

21   1474 (9th Cir. 1988); See also *United States v. Real Prop. Located at 41430 De*

22   *Portola Rd., Rancho California*, 959 F.2d 243, 1 (9th Cir. 1992). A responsive

23   pleading was due on October 4, 2023. No extensions have been granted regarding the

24   filing of Defendants' responsive pleading. Therefore, since this Motion was filed <u>two</u>

25   <u>weeks</u> after the deadline to file a responsive pleading, this honorable court should

26   dismiss this Motion as it is untimely.

27   ///

28   ///

### 2.   Defendants Failed to Comply With Local Rule 7-3

Furthermore, Defendants failed to meet and confer with Plaintiff within the as required by LR 7-3. *See* Dkt. #9, p.3. Defendants *alone* are responsible for this blatant violation of the Local Rules. "Denial of a motion as the result of a failure to comply with local rules is well within a district court's discretion." *Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1131 (9th Cir. 2012); *Burke v. Basil*, 2021 WL 5993524, at *1 (C.D. Cal. Oct. 20, 2021) (denying motion where moving party failed to attach copies of alleged meet-and-confer correspondence). "In particular, it is within the court's discretion to refuse to consider a motion based on a party's noncompliance with Local Rule 7-3." *Morales v. K. Chocolatier Inc.*, 2022 WL 19829446, at *2 (C.D. Cal. Oct. 31, 2022). Compliance with the Local Rules is mandatory *regardless* of whatever other filing deadlines a party may be required to satisfy. *See Alcatel-Lucent USA, Inc. v. Dugdale Commc'ns, Inc.*, 2009 WL 3346784, at *3-4 (C.D. Cal. Oct. 13, 2009) (denying motion to dismiss for defendant's failure to comply with Local Rules meet-and-confer requirement where "Defendant waited until the last possible moment to challenge a complaint of which it was clearly on notice").

As previously stated, Defendants Motion is untimely as the deadline to file a responsive pleading was October 4, 2023. Thus, Defendants were required to meet and confer no later than September 27, 2023. Defendants did not request to meet and confer regarding this Motion until October 9, 2023. Declaration of Sarah H. Cohen ¶ 2, Ex. A. Plaintiff responded to Defendants that same day informing Defendants that while Plaintiff is always willing to meet and confer in good faith, it is not possible to meet and confer in compliance with Local Rule 7-3 as that deadline was September 27, 2023 based on the October 4, 2023 responsive pleading deadline. Declaration of Sarah H. Cohen ¶ 3, Ex. B. Defendants then admitted their untimeliness but are "optimistic" this Court will essentially ignore the Local Rule 7-3 meet and confer requirement and the FRCP timing requirements for filing a responsive pleading.

Declaration of Sarah H. Cohen ¶ 4, Ex. C. On October 12, 2023, Defendants for the first time raised substantive issues relating to the amendments in FAC. This was *over two weeks* after their deadline to meet and confer pursuant to Local Rule 7-3. Declaration of Sarah H. Cohen ¶ 5, Ex. D. Despite Defendants' untimeliness, on October 20, 2023 at 4:00 p.m., Plaintiff met and conferred in good faith via Zoom videoconference. The Parties engaged in a detailed discussion regarding the amendments but were unable to reach any agreements. Declaration of Sarah H. Cohen ¶ 6. Based on the evidence presented here, any representation by Defendants that Plaintiff refused to meet and confer is false, misleading, and should be disregarded by this Court.

This is not the first time Defendants have failed to meet and confer in compliance with the Local Rules. Defendants failed to meet and confer in a timely manner when they filed their first motion to dismiss along with several other motions they filed. See *Dckt #11,* pp 5-7. This utter disregard for Chambers' Rules, Local Rules and the FRCP is quickly developing into an unbecoming habit for Defendants. As such, to stifle this ill-suited habit, this Court should dismiss this Motion in its entirety. The Court should not permit Defendants to profit from this blatant corner-cutting and complete disregard for Chambers' Rules, Local Rules, and the FRCP. Indeed, the Court may choose in its sound discretion to dismiss the Motion altogether on this basis. *See Pina v. Lewis*, 717 Fed. App'x 739, 740 (9th Cir. 2018).

## B. DEFENDANTS FAIL TO PROVE ON THE MERITS THAT ANY OF PLAINTIFF'S CLAIMS ARE SUBJECT TO DISMISSAL

### 1. A Motion To Dismiss Is Not The Mechanism To Determine What Wage Order And Exemptions Should Govern Ms. Thoma And Class Members

Defendants contend that Plaintiff's claims for unpaid overtime, meal period violations, and rest break violations are barred on the ground that Plaintiff and class members are purportedly subject to an exemption from California's general wage-

7

1   and-hour protections under the California Wage Order for the "motion picture
2   industry." This contention flatly fails.

3       Under substantive California state law, exemptions from general wage-and-
4   hour protections pursuant to an applicable wage order "are affirmative defenses, and
5   thus an employer bears the burden of proving that an employee is exempt." *Combs v.*
6   *Skyriver Commc'ns, Inc.*, 159 Cal.App.4th 1242, 1254 (Cal. 2008) (citing *Ramirez v.*
7   *Yosemite Water Co., Inc.*, 20 Cal.4th 785, 794-95 (Cal. 1999)). "Exemptions are
8   narrowly construed against the employer[,]" and "'will not be found except [in
9   contexts] plainly and unmistakably within [the given exemption's] terms and spirit.'"
10  *Eason v. Roman Catholic Bishop of San Diego*, 414 F.Supp.3d 1276, 1280 (S.D. Cal.
11  2019) (quoting *Haro v. City of L.A.*, 745 F.3d 1249, 1256 (9th Cir. 2014)). Thus,
12  California law is unambiguous on this issue: at *any* point during this litigation, it is
13  *Defendants* (and not Plaintiff or Class Members) who bears the burden to establish
14  that an exemption—including the exemption for "professional actors" under Wage
15  Order 12—applies to a specific employee.

16      Furthermore, Defendants' challenge on this issue is constricted due to the
17  procedural posture of the Motion. "Ordinarily, affirmative defenses may not be raised
18  by motion to dismiss." *Durham*, *supra*, 236 F.Supp.3d at 1150 (quoting *Scott v.*
19  *Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984)). "Dismissal under Rule 12(b)(6) on
20  the basis of an affirmative defense is proper only if the defendant shows some obvious
21  bar to securing relief on the face of the complaint." *ASARCO*, *supra*, 765 F.3d at 1004.
22  Indeed, dismissal on the basis of an affirmative defense is generally proper "*only* in
23  the relatively unusual case in which the plaintiff includes allegations that show on the
24  face of the complaint that there is some insuperable bar to securing relief[.]" *Ibid*.
25  (internal quotes omitted) (emphasis added).

26  ///
27  ///
28  ///

<blockquote>
a. It would be improper to decide which Wage Order governs this case at the pleading stage.
</blockquote>

Ms. Thoma clearly and plainly alleges in her FAC that she was <u>primarily</u> a model, <u>not</u> an actor. Ms. Thoma states on several occasions that she both acted and modeled. *See* Dkt. #26, ¶ 3, 8, 12, 33-35, 39, 41, 60, 61, 63, 64, 71, 72, 74, 75. Ms. Thoma also clearly states that during the <u>majority</u> of her employment, around 75 percent of the time, she and class members were required to model and not act. *See* Dkt. #26, ¶ 34, 63 and 74. Ms. Thoma also states that Defendants, while participating in the creation of motion pictures, also partook in the creation, sale, and distribution of photographs and other modeling materials. *See* Dkt. #26, ¶10, 13, 14, 19 and 20.

Although it is true that the *nature* of the business determines the applicability of a wage order, the nature of Defendants' work is <u>not</u> judicially noticeable and cannot be determined by the parties until they can properly conduct discovery. *Miles v. City of Los Angeles*, 56 Cal. App. 5th 728, 736 (2020). Indeed, this Honorable Court itself stated that the court cannot dismiss this claim on the basis of Wage Order 12-2001 at this point. *See* Dkt. #23, ¶. 12. Under *Levine,* this honorable court can <u>only</u> consider what is pleaded within the FAC. Ms. Thoma clearly pleads that Defendants required Ms. Thoma and Class Members to model, and it clearly states that during the majority of her employment, she and other class members were required to model as a primary part of their employment. *See* Dkt. #26, ¶. 3 and 34, 63 and 74. Furthermore, Ms. Thoma also explicitly states that Defendants partook in the sale, creation, and distribution of photographs and other pornographic material. Since extensive discovery must be conducted to determine the nature of Defendants' business and these facts can only be determined using facts brought outside the four corners of Ms. Thomas's complaint, it would be wholly inadequate to determine which Wage Order governs Ms. Thoma and class members at this stage of the. case.

///

///

b. It cannot be determined whether Ms. Thoma and class members are covered under the professional actor exemption at this time

Furthermore, Defendants fail to adequately explain what a "professional actor" is and exactly how Ms. Thoma and class members qualify as professional actors. Even assuming *arguendo* that Wage Order 12-2001 does apply, which cannot be determined at this time, Defendants wholly fail to explain exactly how and why Ms. Thoma and class members should be considered "professional actors." Wage Order 12-2001 still allows for the recovery of meal and rest break premiums along with overtime wages for employees who are *not* considered professional actors. This includes extras and other people who help with the creation of motion pictures, individuals who can be considered a part of the putative class.

Ms. Thoma clearly states that she and class members spent the majority of their time with Defendants modeling, not acting. Defendants completely fail to state exactly why this is implausible. The determination of whether or not this is implausible is a question of fact to be determined after extensive discovery has been conducted. Once again, Ms. Thoma adequately pleads that Defendants distributed photographic materials along with movies. *See* Dkt. #26, ¶10, 13, 14, 19 and 20. There can be no determination as to why it is implausible why Ms. Thoma and class members spent the majority of their time modeling and not acting at this time.

Defendants fail to provide any legal authority or legal theory indicating exactly why Ms. Thoma and class members should be considered professional actors. Ms. Thoma, on the other hand, added specific facts to her FAC that support her claim that she was *not* a professional actor. Even assuming that Defendants operate in the motion picture industry, that does not mean Ms. Thoma was a professional actor. For example, Ms. Thoma includes facts regarding the job duty of driving to Joshua Tree exclusively to model. *See* Dkt. #26 ¶3. Ms. Thoma states that she provided work on days where absolutely no adult scenes were performed. *See* Dkt. #26 ¶3. Furthermore,

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Ms. Thoma stated that she and Class Members would spend hours in fittings prior to their "(modeling) shoots." *See* Dkt. #26 ¶ 35 and 36. Ms. Thoma, as previously stated, even pleads that the majority of time spent for Defendants was spent modeling. *See* Dkt. #26 ¶34, 63, and 74.

Ultimately, Defendants completely fail to state any basis as to how or why Ms. Thoma and class members should be considered professional actors. There are several layers of factual issues that must be determined before making a determination as to whether the professional actor's exemption in Wage Order 12-2001 applies. This, coupled with the fact that Defendants completely fail to provide any legal basis as to what a professional actor is considered to be and how Ms. Thoma and class members qualify as such clearly indicate that at it would be wholly inappropriate to dismiss Plaintiffs' claims as to this issue.

## 2. Ms. Thoma Properly Claims That She And Class Members Were Not Paid Minimum Wages

Defendants allege that this cause of action fails because Ms. Thoma did not plead sufficient facts to show that she did not receive overtime wages. However, as was discussed above, since Ms. Thoma *is not* covered under the "professional actor" exemption for the purposes of this motion to dismiss and is therefore entitled to overtime wages, meal period premiums, and rest period premiums, Ms. Thoma adequately pleads that she was not paid overtime wages and was not paid minimum wages.

Ms. Thoma alleges that she would work two shoots per month, oftentimes lasting 32 hours combined. *See* Dkt. #26 ¶71. Ms. Thoma pleaded that she and Class Members would spend *at least* another thirty (30) minutes per day preparing for these shoots. *See* Dkt. #26 ¶71. As such, under any applicable wage order, Ms. Thoma would be entitled to 16 regular hours and 17 overtime hours for these two days alone. Furthermore, Ms. Thoma and Class Members were required to attend *at least* one (1) fitting for wardrobe per shoot outside of the days Ms. Thoma and Class Members

11

would be on set for their shoots that would last three to four hours. *See* Dkt. #26 ¶72. This is at least another six (6) to eight (8) hours per month that Ms. Thoma and Class Members were required to work without pay. Ms. Thoma and Class Members were required to drive one and one half (1.5) hours to arrive at these <u>mandatory</u> fittings. *See* Dkt. #26 ¶72. That is three (3) more hours *at least* per month that Ms. Thoma and Class Members were required to drive to without compensation.

Ms. Thoma and Class Members allege that they were required by Defendants to take Sexually Transmitted Disease ("STD") tests before every single shoot. *See* Dkt. #26 ¶72. Ms. Thoma and Class Members spent at least thirty (30) minutes for each and every one of those STD tests. *See* Dkt. #26 ¶72. That is another hour of work Ms. Thoma and Class Members would spend working without compensation. Finally, Ms. Thoma alleges that she and Class Members were required to drive at least forty-five minutes before every single shoot to have a manicure and pedicure. *See* Dkt. #26 ¶73. These appointments would take <u>at least</u> one (1) hour and were <u>required</u> by Defendants.

In total, Ms. Thoma specifically pleads that she and Class Members worked *at least* an additional fifteen (15) hours per month without <u>any</u> compensation and were not paid proper overtime rates that they are entitled to for up to seventeen (17) hours per month. Therefore, Ms. Thoma properly pleads that she and Class Members were not adequately compensated for the hours that they worked.

Ms. Thoma's rate of pay, at this point in time, is not relevant to this motion to dismiss. Once again, this Honorable Court cannot rely on any facts *outside* of Ms. Thoma's complaint to determine the validity of Ms. Thoma's complaint. Issues as to Ms. Thoma's average rate of pay, along with the average rate of pay for *all* Class Members, which Defendants completely and utterly fail to address, is an issue to be tackled at the discovery phase and is an issue relating to damages. Defendants fail to provide <u>any</u> legal authority that provides Ms. Thoma is required to state her rate of pay for a motion to dismiss. Furthermore, even if Ms. Thoma and class members were

paid a certain rate for her shoots, it does not change the fact that Ms. Thoma and class members were <u>not</u> paid wages for work on days they were not on set, as pleaded by Ms. Thoma. Any monies paid to Ms. Thoma and class members was meant only for those specific shoots on those specific days, not for the grueling hours spent providing mandatory preparation and work for Defendants.

The fact remains, this Honorable Court cannot consider any facts outside the four corners of Ms. Thoma's complaint, and within Ms. Thoma's complaint she adequately pleaded that she and class members were not paid their minimum wages. Ms. Thoma provides specific facts as to what wages she and class members are owed. Therefore, this claim should not be dismissed.

### 3. None of Plaintiff's Derivative Claims are Properly Subject to Dismissal.

Defendants further seek the dismissal of Plaintiff's fifth cause of action for waiting time penalties pursuant to California Labor Code section 203, her sixth cause of action for Wage Statement Violations, and seventh cause of action for failure to make timely payment as they allege claims one, two, three, and four fail.

Because Defendants fail to establish that these predicate claims are properly subject to dismissal, however, there is no basis on which to dismiss the derivative claims. *See*, *e.g.*, *Eason*, *supra*, 414 F.Supp.3d at 1281 (denying motion to dismiss as to derivative claims where defendants failed to establish that predicate claims must be dismissed.)

### 4. Ms. Thoma Is Not Required to Provide Inaccurate Wage Statements For Her Wage Statement Violation Cause Of Action

Defendants seem to misunderstand the basis for Ms. Thoma's sixth cause of action. Labor Code section 226 not only requires an employer to provide *accurate* wage statements, but it requires an employer to provide wage statements in general. Ms. Thoma alleges that she and class members did not receive proper itemized wage

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

statements *at all* as they were misclassified as independent contractors. *See* Dkt. #26 ¶117-119. How could Ms. Thoma provide Defendants with something that she herself was never furnished?

Furthermore, Defendants fail to provide <u>any</u> legal authority that indicates the onus is on Ms. Thoma to provide inadequate wage statements during the pleading stage. Once again, Defendants attempt to conflate an issue to be tackled during discovery with a dismissible issue.

It should also be noted that Ms. Thoma represents all of Defendants' non-exempt employees from April 20, 2019 to present, it would be extremely difficult, if not utterly impossible, for Ms. Thoma to provide inaccurate wage statements for each and every class member until full discovery is conducted. As such, this argument completely and utterly fails.

### 5. Ms. Thoma Properly Pleaded Enough Facts To Substantiate Her Claim That She And Class Members Were Not Reimbursed For Work Related Expenses

The elements of a failure-to-reimburse cause of action are: (1) the employee made expenditures or incurred losses; (2) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (3) the expenditures or losses were necessary. *Thai v. Int'l Bus. Machines Corp.,* 93 Cal. App. 5th 364, 370 (Oct. 11, 2023). Ms. Thoma properly pleaded the elements to this cause of action. Ms. Thoma explains that Defendants failed to reimburse when Defendants <u>required</u> Ms. Thoma and Class Members to incur several work related costs, including but not limited to; mileage going to locations for <u>mandatory</u> fittings, mileage going to <u>mandatory</u> nail and pedicure appointments, use of cellphones for work related purposes, costs for <u>mandatory</u> manicures, costs for <u>mandatory</u> pedicures, preparing hair and body for scenes and shoots, and for costs related to preparing for anal scenes, such as bleaching. *See* Dkt. #26 ¶133.

Ms. Thoma also stated that Defendants knew about these expenses as it was "under the directions of Defendants" that these costs were incurred. *See* Dkt. #26 ¶133. Furthermore, Ms. Thoma states that "Defendants failed and <u>refused</u>, and still fail and <u>refuse</u>, at times, to reimburse Plaintiff and Class Members…" *See* Dkt. #26 ¶136. Therefore, Ms. Thoma adequately pleaded that Defendants knew about the costs incurred by Ms. Thoma and class members and they <u>willfully</u> refused to compensate and were necessary for the duties assigned to her by Defendants.

Ms. Thoma specifically and adequately pleads facts to substantiate this claim. Ms. Thoma even states how much manicures and pedicures would cost, how much anal bleaching would cost, how many miles she would drive to her <u>mandatory</u> fitting locations, and how many miles she would drive to her <u>mandatory</u> manicure and pedicure locations. *See* Dkt. #26 ¶135. It is clear that for motion to dismiss purposes, Ms. Thoma has pleaded sufficient and specific enough facts to substantiate a claim for this cause of action.

### 6. Plaintiff Adequately Asserts Claims Against Defendants Strike 3, GMS, and Miller under Alter Ego and Other Theories of Liability.

Finally, Defendants contend that the Court must dismiss Defendants Strike 3, GMS, and Miller from the action on the ground that Plaintiff purportedly "pleads no facts to support including" them as parties. This argument must fail.

While it is not entirely clear in their Motion, Defendants appear to suggest that Plaintiff seeks to impose liability on Defendants Strike 3, GMS, and Miller solely on the basis of an alter ego theory. This interpretation, of course, finds no support in the language of the Complaint itself, which in fact states that all of the named Defendants acted together in a variety of capacities, including as joint employers and agents of each other. *See* Dkt. #26, ¶ 14-15. Thus, Defendants are simply wrong to suggest that Plaintiff cannot recover against any of the Defendants without prevailing on the alter ego theory of liability.

a. All defendants are liable under joint employer and general joint liability theories

Ms. Thoma does not only claim joint liability based upon the alter ego doctrine. Rather, Ms. Thoma also claims all Defendants are jointly liable under the theories of general joint and several liability as well as joint employer liability. Where two or more persons jointly engage in the commission of a tort they are jointly and severally liable and may be sued jointly. *Farrell v. Placer Cnty.*, 23 Cal. 2d 624, 631 (1944). Furthermore, no one factor is decisive in determining whether an organization is a joint employer, but rather the precise contours of an employment relationship can only be established by a careful factual inquiry. *St. Myers v. Dignity Health*, 44 Cal. App. 5th 301, 311 (2019). The most important factor to consider for the determination of joint employer liability is the extent of the defendant's right to control the means and manner of the workers' performance, and the level of control the defendant asserts over the employee's access to employment opportunities. *Vernon v. State of California*, 116 Cal. App. 4th 114, 126 (2004).

Also, a person or entity can be a joint employer without exercising direct control over employee; if the putative joint employer instead exercises enough control over the intermediary entity to indirectly dictate the wages, hours, or working conditions of the employee, that is a sufficient showing of joint employment. *Medina v. Equilon Enterprises, LLC*, 68 Cal. App. 5th 868, 879 (2021). Furthermore, when a director or officer participates in a tortious act on behalf of the corporation, they can be held liable for those actions. *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 595 (1970). Finally, even if Wage Order 12-2001 governs as Defendants erroneously claim, the definition for "employer" is any person who "directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person."

Ms. Thoma adequately pleaded through *joint employer liability* that all defendants in this case are liable for the wrongful actions undertaken against her and

16

Class Members. As to Miller, Ms. Thoma pleaded that he was the founder, principal, and executive producer for Defendant VXN Group. *See* Dkt. #26 ¶12.

Ms. Thoma alleges that Miller directly created the policies that this action is based upon and he actively enforced these policies. *See* Dkt. #26 ¶12 and 18. This alone is enough to establish liability under *Haidinger-Hayes, Inc.* and general joint and several liability theories. Furthermore, Ms. Thoma's allegations clearly paint a picture that Miller had direct control over VXN and could control the policies and procedures employed by VXN. *See* Dkt. #26 ¶10, 12 and 18. Miller would even be physically on set during many modeling shoots and on filming days and had a direct role in directing scenes and choosing outfits. *See* Dkt. #26 ¶12. This level of control means one thing; that Miller exerted control, whether it be direct or indirect, over the wages, hours, and working conditions of Ms. Thoma and Class Members.

As to Strike 3, Ms. Thoma pleads that it is the parent company for VXN. *See* Dkt. #26 ¶13. Ms. Thoma claims that Strike 3 owns, distributes, and produces pornographic films, images, and materials created by VXN. *See* Dkt. #26 ¶13. Ms. Thoma also pleads that since Strike 3 the copyright holder for VXN and the various films, photographs, and other materials of VXN, that Strike 3 had a role in controlling the working conditions for Ms. Thoma and class members. *See* Dkt. #26 ¶13. Ms. Thoma then states that given the level of control Strike 3 exerts over VXN, it controlled the hiring, firing, compensation, performance, suspension, and enforcement of workplace rules for VXN Group. *See* Dkt. #26 ¶19.

Finally, as is the case with each and every other defendant in this case, Ms. Thoma adequately pleaded sufficient facts to implicate liability upon GMS. Ms. Thoma states that not only is GMS a subsidiary of the greater Vixen Media Group, but through its role as the sole distributor of the films, photographs and materials produced by VXN, it exerts a level of control over VXN where it controls the work conditions of Ms. Thoma and Class Members. *See* Dkt. #26 ¶14. This is especially true considering Ms. Thoma pleaded that the materials produced by Defendants could

17

<u>only</u> be released through the express consent of GMS. *See* Dkt. #26 ¶20. Given this level of control, there is no doubt that under any definition of the word "employer," both within the confines of Wage Order 12-2001 and without, GMS had control over VXN so as to affect the wages, hours, or work conditions of Ms. Thoma and class members.

As such, there is no doubt that Ms. Thoma adequately pleaded enough facts to substantiate claims against each and every defendant in this case under joint employer theory.

### b. Ms. Thoma adequately pleaded enough facts to state alter-ego liability

Moreover, Plaintiff's alter ego allegations are clearly more than sufficient to pass scrutiny at this early stage of litigation. "At the motion to dismiss stage, the pleading requirements for alleging an alter ego theory are 'not strict.'" *Parker v. Country Oaks Partners, LLC*, 2023 WL 3149330, at *3 (C.D. Cal. Mar. 22, 2023) (quoting *Unichappell Music, Inc. v. Modrock Prod., LLC*, 2015 WL 546059, at *4 (C.D. Cal. Feb. 10, 2015)). "Because the most damning evidence of the 'unity of interest and identity' is often in the hands of the corporation and its principals and can be found nowhere else, it is sufficient for a plaintiff to plead only two or three of the factors showing unity of interest or identity to withstand a motion to dismiss." *Ibid*. (cleaned up). "To recover on an alter ego theory, a plaintiff need not use the words "alter ego" in the pleadings, but must allege sufficient facts to show a unity of interest and ownership, and an unjust result if the corporation is treated as the sole actor." *Leek v. Cooper*, 194 Cal. App. 4th 399, 415 (2011).

Given this lenient standard, Plaintiff's Complaint unquestionably survives dismissal. Plaintiff's Complaint clearly alleges that the named Defendants derived funding from each other in the course of perpetrating the unlawful conduct at issue, were separated as distinct entities in name only, and shared intermingled business affairs. *See* Dkt. #26 ¶¶ 18(A)-(E). Furthermore, as a result of the facts stated when

18

discussing Defendants' liability under general employer liability, it is abundantly clear that Ms. Thoma adequately pleaded a general unity of interest between Defendants which would result in injustice if VXN is treated as the sole actor. When considering *Leek* in conjunction with the early stage of the proceedings, this is all the specificity that can be reasonably expected of Plaintiff. Thus, Defendants' demand that Defendants Strike 3, GMS, and Miller be dismissed as parties to this action clearly fails, and the Motion must be denied.

## C. TO THE EXTENT THE COURT GRANTS DEFENDANTS' MOTION, PLAINTIFF REQUESTS LEAVE TO AMEND

A party has the right to amend his complaint "once as a matter of course at any time before a responsive pleading is served." Fed. R. Civ. P. 15(a). A 12(b)(6) motion is not a responsive pleading, and therefore a plaintiff may amend as of right even after such a motion is filed. *See Nolen v. Fitzharris*, 450 F.2d 958, 958-59 (9th Cir. 1971); *St. Michael's Convalescent Hospital v. California*, 643 F.2d 1369, 1374 (9th Cir. 1981). Indeed, even where a party has amended his complaint once or a responsive pleading has been served, the Federal Rules provide that leave to amend should be "freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit requires that this policy favoring amendment be applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

Here, Defendants have not yet filed responsive pleadings in the instant action. As such, should the Court grant Defendants' Motion, which it should not, Plaintiff should be permitted to file an amended complaint, as a matter of course, or with leave of court. Thus, in the event that the Court finds her pleading to be deficient, Plaintiff respectfully requests leave to amend

## II.  **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion in its entirety as procedurally improper and premature. Further, the Motion fails to establish on the merits that any of Plaintiff's claims are legally

19

deficient and thus dismissal must be denied as to all claims and all parties. In the alternative, to the extent that the Court is inclined to grant dismissal as to any of her claims, Plaintiff respectfully asks that the Court grant her leave to amend.


Dated:  October 27, 2023                 BIBIYAN LAW GROUP, P.C.

                                         */s/ Sarah Cohen*
                                         DAVID D. BIBIYAN
                                         JEFFREY D. KLEIN
                                         SARAH H. COHEN
                                         Attorneys for Plaintiff, MACKENZIE ANNE
                                         THOMA, and on behalf of herself and all
                                         others similarly situated

# CERTIFICATE OF SERVICE

## MACKENZIE ANNE THOMA, v. VXN GROUP, LLC, ET AL.
## 2:23-CV-04901-WLH(AGRx)
## CENTRAL DISTRUCT OF CALIFORNIA

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 8484 Wilshire Blvd., Suite 500, Beverly Hills, California 90211.

I certify that on October 27, 2023, I electronically filed the following document(s) described as **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND CLASS CLAIMS,** and that they are available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system. Further, I certify that the foregoing documents were served by electronic transmission to the below referenced electronic e-mail address as follows:

KANE LAW FIRM
Brad S. Kane
bkane@kanelaw.la
Eric Clopper
ecclper@kanelaw.la
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035
Tel:(323) 697-9840
Fax: (323) 571-3579

Attorneys for Defendants VXN GROUP LLC; STRIKE 3 HOLDINGS, LLC; GENERAL MEDIA SYSTEMS, LLC; and MIKE MILLER

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 27, 2023, at Beverly Hills, California.

/s/ Bryant Gamez
Bryant Gamez