David D. Bibiyan (SBN 287811)
*david@tomorrowlaw.com*
Jeffrey D. Klein (SBN 297296)
*jeff@tomorrowlaw.com*
Sarah H. Cohen (SBN 330700)
*sarah@tomorrowlaw.com*
**BIBIYAN LAW GROUP, P.C.**
8484 Wilshire Boulevard, Suite 500
Beverly Hills, California 90211
Tel: (310) 438-5555; Fax: (310) 300-1705

Attorneys for Plaintiff, MACKENZIE ANNE THOMA,
and on behalf of herself and all others similarly situated

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MACKENZIE ANNE THOMA, a.k.a. KENZIE ANNE, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VXN GROUP LLC, a Delaware limited liability company; STRIKE 3 HOLDINGS, LLC, a Delaware limited liability company; GENERAL MEDIA SYSTEMS, LLC, a Delaware limited liability company; MIKE MILLER, an individual; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO: 2:23-cv-04901-WLH (AGRx)<br><br>[*Assigned for all purposes to the Hon. Wesley L. Hsu*]<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS STRIKE 3 HOLDINGS, LLC'S, GENERAL MEDIA SYSTEMS, LLC'S, AND MIKE MILLER'S NOTICE OF SPECIAL MOTION AND SPECIAL MOTION TO STRIKE (ANTI-SLAPP); DECLARATION OF SARAH H. COHEN**<br><br>[*Filed Concurrently with Declaration of Sarah H. Cohen and Plaintiff's Request for Judicial Notice*]<br><br>**<u>HEARING INFORMATION</u>**<br>DATE:     January 5, 2024<br>TIME:     1:30pm<br>COURTRM:  9B |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' ANTI-SLAPP MOTION

# **TABLE OF CONTENTS**

I.      INTRODUCTION…………..…..………………………………1

II.     DEFENDANTS' MOTION IS UNTIMELY……………………2

III.    LEGAL STANDARDS………..…...…………………………3

        A. CAL. CIV. PROC. CODE § 425.16……..…………………3

        B. CAL. CIV. PROC. CODE § 425.17…………………………5

IV.     LEGAL ARGUMENT…………………………………………...6

        A. THE ANTI-SLAPP MOTION IS IMPROPER UNDER CAL.

        CIV. PROC. CODE  § 425.16………..…………………………6

                1.  None Of The Causes Of Action Found Within The Class

                Action Arise Out Of Protected Activity……………………...6

                2.  Any Protected Activity Undertaken By Defendants

                MILLER and STRIKE 3 Is Incidental To The

                Imputation Of Liability…………………….....................…8

                3.  Defendants Fail To Provide Any Law That Indicates The

                Causes Of Action Arise Out Of Protected Activities

                For Anti-SLAPP Purposes……...……..…………………..10

        B. PLAINTIFF HAS A PROBABILITY OF WINNING THE

        CASE ON THE MERITS…………..…………….…..…………. ..11

                1.  All Defendants Are Liable Under Joint Employer And

                General Joint Liability Theories…………………………12

                2.  All Defendants Are Liable Under The Alter-Ego

                Doctrine……………………………………………………..14

        C. CAL. CIV. PROC. CODE § 425.17 ALLOWS PLAINTIFF

        TO BRING THIS SUIT…………………………………………...15

V.      DEFENDANTS ARE SUBJECT TO SANCTIONS…………………18

        A. CAL. CIV. PROC. CODE § 425.16 ENTITLES PLAINTIFF

        TO ATTORNEYS FEES……………………………………………18

1

**VI.    CONCLUSION**………..……………………………………….…………..21

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' ANTI-SLAPP MOTION

# TABLE OF AUTHORITIES

## Statutory Authority and Local Rules

Cal. Civ. Proc. Code § 425.16…………………………… 2, 3, 4, 5, 6, 9, 15, 18, 19, 20

Cal. Civ. Proc. Code § 425.17……………………………………..…5, 6, 15, 16, 18

Cal. Lab. Code § 558.1……………………………………………………..8, 12

## Case Authority

*Rusheen v. Cohen*,

      37 Cal. 4th 1048, 1055 (2006)……………….………….…….……1

*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism*,

      6 Cal. App. 5th 1207, 1219 (2018).……………………..………...…..2

*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism*,

      4 Cal. 5th 637, 643 (2018)………...……………………….…………2, 3

*Manlin v. Milner*,

      82 Cal. App. 5th 1004, 1019 (2022).……………………………………4, 6, 8

*Park v. Bd. of Trustees of California State Univ.*,

      2 Cal. 5th 1057, 1062 (2017)……………..………………..……….4, 5, 6, 8

*City of Cotati v. Cashman*,

      29 Cal. 4th 69, 78 (2002)……………………….…………………4, 6, 8

*Navellier v. Sletten*,

      29 Cal. 4th 82, 89 (2002)…………..…………………………4, 7, 8

*Briggs v. Eden Council for Hope & Opportunity*,

      19 Cal. 4th 1106, 1123 (1999)…...………………………..…………..5

*Wilson v. Parker, Covert & Chidester*,

      28 Cal. 4th 811, 821 (2002)…………………………..…….4, 15

*Contreras v. Dowling*,

      5 Cal. App. 5th 394 (2016)………………………………………..10

*Jordan-Benel v. Universal City Studios, Inc.*,

      859 F.3d 1184 (9th Cir. 2017)……………………………...………..11

*Farrell v. Placer Cnty,*

    23 Cal. 2d 624, 631 (1944). …………………...…………….…………………12

*St. Myers v. Dignity Health*,

    44 Cal. App. 5th 301, 311 (2019)…………………….…………………..12

*Vernon v. State of California*,

    116 Cal. App. 4th 114, 126 (2004)………………………...…………..12

*Medina v. Equilon Enterprises, LLC*,

    68 Cal. App. 5th 868, 879 (2021)……………………….……………12

*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc*.,

    1 Cal. 3d 586, 595 (1970)……….…………………...…………..…..…13

*Leek v. Cooper*,

    194 Cal. App. 4th 399, 418 (2011) ……………….…………..…...14

*Tribeca Companies, LLC v. First Am. Title Ins. Co*.,

    239 Cal. App. 4th 1088, 1104 (2015) …………………...…………..14

*N. Cal. Carpenters Reg'l Council v. Warmington Hercules Assocs.*,

    124 Cal. App. 4th 296, 299-300 (2004)……………………………16

*Blanchard v. DIRECTV, Inc.*,

    123 Cal. App. 4th 903, 915-916 (2004)…………………..…………16

*Kerr's Catering Serv. v. Dep't of Indus. Rels*,

    57 Cal. 2d 319, 326 (1962)…………………………………….………17

*City of Rocklin v. Legacy Fam. Adventures-Rocklin, LLC*,

    86 Cal. App. 5th 713, 726-727 (2022)…………………………………19

**<u>Secondary Sources</u>**

2011 Cal. Legis. Serv. Ch. 706 (S.B. 459)…………………….…………………...17

PLAINTIFF'S OPPOSITION TO DEFENDANTS' ANTI-SLAPP MOTION

The Senate Daily Journal for the 2011-2012 Regular

Session, pages 2490-2491………………………………………………………..17

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff Mackenzie Anne Thoma ("Plaintiff" or "Ms. Thoma") hereby submits the following opposition to defendants Strike 3 Holdings, LLC ("STRIKE 3"); General Media Systems, LLC ("GMS"); and Mike Miller's ("MILLER" and collectively with Strike 3 and GMS, "Defendants") Special Motion to Strike ("Anti-SLAPP Motion").

Defendants exhibit a wild misunderstanding of California law and attempt to abuse the Anti-SLAPP process to circumvent and delay Plaintiff's right to conduct discovery and have this case heard on its merits. This Anti-SLAPP Motion is completely and utterly meritless and only serves to delay the proceedings in this case. The legislative intent of the Anti-SLAPP statute was to ensure free speech is not chilled and is only appropriately used in actions where the underlying causes of action are brought with an intention to chill free speech. This concept has been repeatedly affirmed by California courts, including by the Supreme Court of California. *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1055 (2006). Plaintiff is not attempting to chill Defendants' speech. To the contrary, it actually *benefits* Plaintiff and Class Members to allow Defendants to continue distributing its media, as it will mean Plaintiff and Class Members will gain further exposure in the adult modeling industry and ultimately grow their careers. Rather than chilling Defendants' speech as Defendants' baselessly allege, Plaintiff is vindicating the rights of herself and Class Members who are victims of Defendants' violations of California wages and hour law. Plaintiff brings this suit on behalf of herself and those similarly situated to hold Defendants, with Defendant VXN Group, LLC ("VXN"), directly liable for their reprehensible and exploitative business strategies in misclassifying and underpaying its employees. Throughout the entirety of Defendants' Anti-SLAPP Motion, Defendants completely fail to state *how* paying its employees the wages they are owed and properly

classifying them chills their free speech or how the causes of action arise directly out of protected activity.

Since the underlying causes of action will neither chill Defendants' free speech nor do the underlying causes of action arise out of protected activity, and they are rather meant to ensure Plaintiff and Class Members are properly classified as employees and be given the full protections afforded to them under California law, there is absolutely <u>no grounds</u> for the granting of this Anti-SLAPP Motion. Rather, the filing of this Anti-SLAPP Motion and concurrent filing of the Anti-SLAPP Motion in the Private Attorneys General Act of 2004 ("PAGA") suit are Defendants' most recent attempt to circumvent the discovery process and deprive Plaintiff, Class Members, aggrieved employees, and the State of California from having a fair and meritorious trial. Indeed, Defendants' tactics are designed to harass Plaintiff and subject Plaintiff to a trial by surprise by any means necessary.

## II.   <u>DEFENDANTS' MOTION IS UNTIMELY</u>

Per Cal. Civ. Proc. Code § 425.16, a party must bring an anti-SLAPP motion within 60 days of service of the complaint. Per *Newport Harbor Ventures, LLC,* an amended complaint does *not* restart the time limit for anti-SLAPP challenge to causes of action contained within the original complaint. *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism*, 6 Cal. App. 5th 1207, 1219 (2018). The Supreme Court of California has held that untimely anti-SLAPP motions can only be brought in amended complaints against causes of action that have not existed in the previous complaint. *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism*, 4 Cal. 5th 637, 643 (2018).

Plaintiff filed her Wage and Hour Class Action claim on April 20, 2023.  The Class Action was removed to federal court on June 21, 2023. On June 28, 2023, Defendants filed a Motion to Dismiss the Class Action Complaint. On July 21, 2023, Plaintiff filed a Motion to Remand. On August 30, 2023, the court granted Defendants' Motion to Dismiss with leave to amend and partially granted Plaintiff's

Motion to Remand, remanding Plaintiff's Unfair Competition Law claim. Plaintiff filed her First Amended Complaint ("FAC") on September 20, 2023.

Plaintiff did not add any new causes of action to the FAC. Each and every cause of action included within the FAC is found within the original complaint. In fact, none of the facts argued by Defendants that give rise to this Anti-SLAPP Motion are included within any of the causes of action. Defendants allege that the facts within the first amended complaint that trigger this Anti-SLAPP Motion is that Defendants produced, distributed, and owned adult media, an allegation made within the "parties" and "joint employer liability" sections.

Furthermore, Plaintiff stated "VIXEN MEDIA GROUP (including MILLER, STRIKE 3, and GMS) is the creator of adult motion pictures and photographs distributed for commercial sale through various distribution outlets and platforms" in her original complaint. See Dkt. #4 ¶ 10. This is the *same exact* allegation that Defendants state releases them of liability under Cal. Civ. Proc. Code § 425.16.

While it is true that Plaintiff elaborated on some previously stated facts in her first amended complaint, absolutely no new claims were added to the first amended complaint that justifies the bringing of this Anti-SLAPP Motion. Plaintiff has always claimed Defendants created, distributed, and owned adult motion pictures and photos. As such, Defendants could have filed their Anti-SLAPP Motion within the 60 days prescribed by Cal. Civ. Proc. Code § 425.16, but failed to do so. As no new claims have been added, under Cal. Civ. Proc. Code § 425.16 and *Newport Harbor Ventures, LLC,* this motion is entirely untimely and should be denied.

## III.   <u>LEGAL STANDARDS</u>

### A. CAL. CIV. PROC. CODE § 425.16

Cal. Civ. Proc. Code § 425.16 (b)(1) states that:

> "a cause of action against a person ***arising from any act*** of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection

with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Emphasis added).

'The only means specified in section 425.16 by which a moving defendant can satisfy the ["arising from"] requirement is to demonstrate that the defendant's ***conduct by which plaintiff claims to have been injured*** falls within one of the four categories described in subdivision (e)" *Manlin v. Milner*, 82 Cal. App. 5th 1004, 1019 (2022). The Supreme Court of California has also held that "a claim arises from protected activity when that activity ***underlies or forms the basis for the claim***." *Park v. Bd. of Trustees of California State Univ*., 2 Cal. 5th 1057, 1062 (2017). In an earlier ruling, the California Supreme Court stated "in short, the statutory phrase "cause of action ... arising from" means simply that the defendant's act underlying the plaintiff's ***cause of action must itself*** have been an act in furtherance of the right of petition or free speech." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002).

After *City of Cotati,* the Supreme Court of California  in *Navellier* held that "the mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute." *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002). Critically, "***that a cause of action arguably may have been "triggered" by protected activity does not entail it is one arising from such***." *Ibid.* In *Navellier,* the Supreme Court of California reaffirmed that "the critical consideration ***is whether the cause of action is based on the defendant's protected free speech*** or petitioning activity." *Ibid.*

Finally, section 425.16 has a two step process for determining whether an action is a SLAPP. First, as mentioned above, the court decides whether there is a threshold showing that the challenged cause(s) of action arise from protected activity. Next, the court must determine if the Plaintiff has demonstrated a probability of prevailing on the claim. Per *Briggs,* the California Supreme Court held that to prevail,

the plaintiff must only show that she stated and substantiated a legally sufficient claim. *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1123 (1999). "Put another way, the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821 (2002). "In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant." *Ibid*. The standard to determine whether a case has potential to gain a favorable judgment is one that a "reasonable attorney" would think is "tenable." *Ibid*.

## B. CAL. CIV. PROC. CODE § 425.17

Cal. Civ. Proc. Code § 425.17 (a) holds that:

> "the Legislature finds and declares that there has been a disturbing abuse of Section 425.16, the California Anti-SLAPP Law, which has undermined the exercise of the constitutional rights of freedom of speech and petition for the redress of grievances, contrary to the purpose and intent of Section 425.16. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process or Section 425.16."

Cal. Civ. Proc. Code § 425.17 (b) also finds that Cal. Civ. Proc. Code § 425.16 does not apply in cases brought solely in the public interest or on behalf of the general public if all of the following elements exist: (1) the plaintiff does not seek any relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member. A claim for attorney's fees, costs, or penalties does not constitute greater or different relief for purposes of this subdivision; (2) the action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public

or a large class of persons; (3) private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter.

In determining whether private enforcement of a right is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter, for purpose of statute excluding public interest lawsuits from reach of anti-SLAPP statute, courts first focus on what sort of financial stake the plaintiff had in the outcome. *Blanchard v. DIRECTV, Inc*., 123 Cal. App. 4th 903, 915 (2004). Furthermore, the legislative intent of Cal. Civ. Proc. Code § 425.17 limits the effect of the anti-SLAPP statute on class actions. "SB 515 would make the SLAPP motion inapplicable to public interest and class action lawsuits 'brought solely in the public interest or on behalf of the general public' when three specified conditions are met. In general, the qualifying language would clearly encompass claims brought under…as any other public interest or class actions lawsuits where the three specified conditions are met," as in the present matter. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 515 (2003–2004 Reg. Sess.)

## IV.   LEGAL ARGUMENT

### A. THE ANTI-SLAPP MOTION IS IMPROPER UNDER CAL. CIV. PROC. CODE § 425.16

#### 1.   None Of The Causes Of Action Found Within The Class Action Arise Out Of Protected Activity

For Cal. Civ. Proc. Code § 425.16 to apply, the underlying <u>cause of action</u> must arise out of protected activity. Cal. Civ. Proc. Code § 425.16 (b)(1). The California Supreme Court has continuously and repeatedly held that the proper analysis to determine whether anti-SLAPP will apply is to determine whether the ***individual*** cause(s) of action arise out of protected activities.  *See Manlin v. Milner*, 82 Cal. App. 5th 1004, 1019 (2022); See also *Park v. Bd. of Trustees of California State Univ*., 2 Cal. 5th 1057, 1062 (2017); See also *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78

PLAINTIFF'S OPPOSITION TO DEFENDANTS' ANTI-SLAPP MOTION

(2002). As was held in *Navellier,* the ***critical*** consideration in an anti-SLAPP analysis is if the cause of action is based on ***defendant's protected free speech.*** *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002).

None of the underlying causes of action within Plaintiff's complaint contain any causes of action that arise out of any protected activity. The activity giving rise to all of Plaintiff's causes of action revolve around Defendants' illegal and unprotected activity of misclassifying its employees to avoid giving Plaintiff and Class Members the proper protections afforded to them under California law.

Defendants seem to erroneously conflate the mechanism of joint employer liability to what injuries underlie the causes of action pleaded by Plaintiff. Plaintiff's intent is not to limit any of Defendants' protected activities. In fact, Plaintiff fully acknowledges and understands that Defendants' protected activity of distributing adult materials is *beneficial* to Plaintiff and Class Members so long as Defendants comply with California labor law. This lawsuit in no way chills this right. Rather, Plaintiff on her own behalf and on behalf of Class Members is attempting to redress the exploitive business practices wielded by Defendants. The causes of action found within Plaintiff's complaint all address this singular issue and in no way attempt to limit any protected activity. This lawsuit is not attempting to prevent Defendants' right to distribute adult modeling materials in any way, and Plaintiff's complaint is completely devoid of any facts or allegations that claim otherwise.

Again, Defendants exhibit a misunderstanding of anti-SLAPP law and make the preposterous suggestion that individuals and/or entities engaged in media production and distribution are insulated from liability for California wage and hour law violations. Defendants conflate joint employer liability pleading with the actual bases of Plaintiff's causes of action. Plaintiff alleges that Defendants exerted a level of control over Defendant VXN such that all of the underlying wage and hour causes of action are imputed upon them as joint and direct employers. Furthermore, this is

PLAINTIFF'S OPPOSITION TO DEFENDANTS' ANTI-SLAPP MOTION

not the *only* basis that Defendants MILLER and STRIKE 3 are jointly liable, as will be discussed further below.

However, even assuming *arguendo* Plaintiff only pleaded that the distribution of adult materials is why joint employer liability is imputed on Defendants, anti-SLAPP would still not apply. As the California Supreme Court in *Navillier* held, "critically, that a cause of action arguably may have been "triggered" by protected activity ***does not*** entail it is one arising from such." *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002).

Even if this court finds that it is exclusively the fact that Defendants distributed adult materials that holds Defendants liable as joint employers, that fact is utterly irrelevant as the analysis <u>must</u> center on the individual causes of actions themselves, and whether these causes of action ask for redress of protected activities. *See Manlin v. Milner*, (2022) 82 Cal. App. 5th 1004, 1019; See also *Park v. Bd. of Trustees of California State Univ*., (2017) 2 Cal. 5th 1057, 1062; See also *City of Cotati v. Cashman*, (2002) 29 Cal. 4th 69, 78. The court may find that the distribution of adult materials and a protected activity *triggered* the causes of action pleaded by Plaintiff, yet that is wholly separate from having the causes of action *arising* from those activities. The damages and harm suffered by Plaintiff and Putative Class Members as pleaded in <u>each and every</u> cause of action are from wrongful employment practices and <u>direct violations</u> of California law, actions that in no way can be considered protected activity. As such, none of the causes of action found within Plaintiff's complaint can be said to arise out of protected activity.

## 2. Any Protected Activity Undertaken By Defendants MILLER and STRIKE 3 Is Incidental To The Imputation Of Joint Liability

Assuming *arguendo* this court finds that the distribution of adult materials is sufficient to satisfy the anti-SLAPP statute's first prong, which <u>more than half a dozen</u> on-point decisions from the California Supreme Court find otherwise, Defendants

MILLER and STRIKE 3 should still be found jointly liable.   The entirety of Defendants' argument centers around the proposition that Defendants' are immune to liability for wage and hour violations simply because they engaged in media distribution. However, Defendants MILLER and STRIKE 3 are jointly liable under CCP 558.1 and joint employer liability theories; any involvement in potential "protected activities" would be purely *incidental* to the imputation of liability.

Plaintiff states that Defendant MILLER is the joint employer of Plaintiff and Class Members because Defendant MILLER "plays an active role in the enforcement and creation of the policies and procedures set in place by VXN GROUP. In fact, MILLER was physically present during many modeling shoots and on filming days and had a direct role in directing the scenes and choosing outfits…" *See* Dkt. #26 ¶ 12. In fact, there are absolutely zero allegations in Plaintiff's complaint that signals Defendant MILLER partook in <u>any</u> protected activities that would shield him under Cal. Civ. Proc. Code § 425.16. Plaintiff claims that because of the level of control exhibited by Defendant MILLER, through his role as CEO, creator and enforcer of the same policies and procedures that caused the harm to Plaintiff and Class Members, that he is the joint employer of Plaintiff and Class Members. As an executive making direct policy decision for the employees, he himself is *directly* liable for the damages caused pleaded within Plaintiff's first amended complaint.

The same is true for Defendant STRIKE 3. Plaintiff states that Defendant STRIKE 3 is the joint employer of Plaintiff and Class Members because it maintains a level of control over VXN Group, LLC and its employees that it has authority over the policies and procedures that gave rise to the injuries alleged herein.  *See* Dkt. #26 ¶19. Again, it is not Defendant STRIKE 3's production, ownership, and distribution of the adult materials that gives rise to its liability as a joint employer, rather it is Defendant STRIKE 3's direct control over Defendant VXN. Thus, Defendant VXN cannot make any policies or procedures without the implicit permission of Defendant STRIKE 3. Essentially, Defendant STRIKE 3 is an employer of Plaintiff and Class

Members for the same exact reasons that Defendant VXN is. Defendant, by failing to include Defendant VXN as a party to this motion, admits that anti-SLAPP is wholly inappropriate for Defendant VXN. As such, this anti-SLAPP Motion is wholly inapplicable to Defendant STRIKE 3 as well.

Therefore, Defendants STRIKE 3 and MILLER are not only joint employers because of the distribution and creation of adult materials, but also because of their relationship to Defendant VXN and are therefore not subject to this Anti-SLAPP Motion.

### 3. Defendants Fail To Provide Any Law That Indicates The Causes Of Action Arise Out Of Protected Activities For Anti-SLAPP Purposes

Defendants completely neglect to provide any substantive legal authority to support their contention that the causes of action arise out of protected activity and counter the well-established law that defeats this motion. Defendants only dedicate two paragraphs to the first prong in the anti-SLAPP analysis and only provide two cases in a futile attempt to support their contention. The law is so clearly against Defendants, in fact, that the cases cited by Defendants actually *support* Plaintiff's contention. Defendants cite to *Contreras v. Dowling*, 5 Cal. App. 5th 394 (2016). *Contreras* correctly states that "the anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's activity that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." *Contreras v. Dowling*, 5 Cal. App. 5th 394, 407 (2016). Yet, this does not resolve the issues put forth in *Navellier, Manlin, Park, City of Cotati,* and many other cases. In fact, the phrase Defendants rely on is a direct quote from *Navellier,* the same case that stated "that a cause of action arguably may have been "triggered" by protected activity does not entail it is one arising from such." *Contreras v. Dowling*, 5 Cal. App. 5th 394, 407 (2016).

The fact remains, the underlying injury and cause of action is in no way based on Defendants' protected actions. The underlying injury and cause of action is based on Defendants' control over Defendant VXN and their role in causing harm to Plaintiff and the putative class by violating the California Labor Code. Even if it is found that a protected activity "triggered" this action herein, **which is not settled fact**, that does not satisfy the first prong of the anti-SLAPP analysis.

Defendants' only other citation on this matter is to *Jordan-Benel v. Universal City Studios, Inc*., 859 F.3d 1184 (9th Cir. 2017). Here, the court states that "for purposes of anti-SLAPP, the conduct from which a claim arises is the conduct that constitutes the specific act of wrongdoing challenged by the plaintiff." *Jordan-Benel v. City Studios, Inc*., 859 F.3d 1184, 1191 (9th Cir. 2017). The court later held that the conduct from which a claim arises is the ***specific*** act of wrongdoing which gives rise to a ***specific*** claim. *Ibid.* Similar to this case, the court held that the creation of films by the defendant was simply "collateral" to the lawsuit, and similar to Plaintiff, the plaintiff  actually *wanted* the film to be made. *Ibid.* Finally, the court states that because the "overall thrust of the complaint challenges Defendants' failure to pay for the use of his idea, we hold that the failure to pay is the conduct from which the claim arises." *Ibid.* Similar to *Jordan-Benel,* the overall thrust of Plaintiff's claim is *not* the fact that Defendants participated in a protected activity, rather it is that Defendants violated the rights afforded to Plaintiff and the putative class under California wage and hour law.

## B. PLAINTIFF HAS A PROBABILITY OF WINNING THE CASE ON THE MERITS

Should this Court determine that Defendants have satisfied the first prong of CCP 415.16 (b), Defendants are unable to satisfy the second prong. Defendants contend that Plaintiff has no chance to prevail because Plaintiff does not plead sufficient facts for alter-ego doctrine. Defendants, like with the entirety of this motion, conflate three separate and distinct issues. Defendants conflate and equate the alter-

ego doctrine, direct joint liability, and the joint <u>employer</u> liability, three entirely **<u>distinct and separate</u>** legal theories.

Plaintiff does not only claim Defendants are jointly liability under the alter-ego doctrine, but also claims Defendants are jointly liable because of their own independent actions. Defendants <u>only</u> address alter-ego liability, but fail to address that in Plaintiff's pleading, Defendants are liable as direct employers.

### 1. All Defendants Are Liable Under Joint Employer And General Joint Liability Theories

Plaintiff does not only claim joint liability based upon the alter ego doctrine. Rather, Plaintiff ***<u>also</u>*** claims all Defendants are liable under the theories of general and several liability as well as joint employer liability. Where two or more persons jointly engage in the commission of a tort they are jointly and severally liable and may be sued jointly. *Farrell v. Placer Cnty.*, 23 Cal. 2d 624, 631 (1944). Furthermore, no one factor is decisive in determining whether an organization is a joint employer, but rather the precise contours of an employment relationship can only be established by a careful factual inquiry. *St. Myers v. Dignity Health*, 44 Cal. App. 5th 301, 311 (2019). The most important factor to consider for the determination of joint employer liability is the extent of the defendant's right to control the means and manner of the workers' performance, and the level of control the defendant asserts over the employee's access to employment opportunities. *Vernon v. State of California*, 116 Cal. App. 4th 114, 126 (2004).

Also, a person or entity can be a joint employer without exercising direct control over employee; if the putative joint employer instead exercises enough control over the ***<u>intermediary entity to indirectly dictate the wages, hours, or working conditions of the employee</u>***, that is a sufficient showing of joint employment. *Medina v. Equilon Enterprises, LLC*, 68 Cal. App. 5th 868, 879 (2021). Furthermore, when a ***<u>director or officer participates</u>*** in a tortious act on behalf of the corporation, they can be held liable for those actions. Cal. Lab. Code § 558.1; *United States Liab. Ins. Co.*

*v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 595 (1970) ("*Hadinger-Hayes, Inc.*"). Finally, even if Wage Order 12-2001 governs as Defendants erroneously claim, the definition for "employer" is any person who "directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, <u>or</u> working conditions of any person."

Plaintiff adequately pleaded that <u>all</u> defendants in this case are liable for the wrongful actions undertaken against her and Putative Class Members. As to Defendant MILLER, Plaintiff pleaded that he was the founder, principal, and executive producer for Defendant VXN. *See* Dkt. #26 ¶12.

Plaintiff alleges that Defendant MILLER <u>directly</u> created the policies that this action is based upon and he actively enforced these policies. *See* Dkt. #26 ¶12 and 18. This alone is enough to establish liability under *Haidinger-Hayes, Inc.* and general joint and several liability theories. Furthermore, Plaintiff's allegations clearly posits that Defendant MILLER had direct control over Defendant VXN and could control the policies and procedures employed by Defendant VXN. *See* Dkt. #26 ¶10, 12 and 18. Defendant MILLER would even be physically on set during many modeling shoots and on filming days and had a direct role in directing scenes and choosing outfits. *See* Dkt. #26 ¶12. This level of control means one thing; that Defendant MILLER exerted control, whether it be direct or indirect, over the wages, hours, and working conditions of Plaintiff and Putative Class Members.

As to Defendant STRIKE 3, Plaintiff pleads that it is the parent company for Defendant VXN. *See* Dkt. #26 ¶13. Plaintiff claims that Defendant STRIKE 3 owns, distributes, and produces pornographic films, images, and materials created by Defendant VXN. *See* Dkt. #26 ¶13. Plaintiff also pleads that since Defendant STRIKE 3 is the copyright holder for Defendant VXN and the various films, photographs, and other materials of Defendant VXN, that Defendant STRIKE 3 had a role in controlling the working conditions for Plaintiff and class members. *See* Dkt. #26 ¶13. Plaintiff then states that given the level of control Defendant STRIKE 3 exerts over Defendant

VXN, it controlled the hiring, firing, compensation, performance, suspension, and enforcement of workplace rules for Defendant VXN. *See* Dkt. #26 ¶19.

Finally, as is the case with each and every other defendant in this case, Plaintiff adequately pleaded sufficient facts to implicate liability upon Defendant GMS. Plaintiff states that not only is Defendant GMS a subsidiary of the greater Vixen Media Group, but through its role as the sole distributor of the films, photographs and materials produced by Defendant VXN, it exerts a level of control over Defendant VXN where it controls the work conditions of Plaintiff and Class Members. *See* Dkt. #26 ¶14. This is especially true considering Plaintiff pleaded that the materials produced by Defendants could <u>only</u> be released through the express consent of Defendant GMS. *See* Dkt. #26 ¶20. Given this level of control, there is no doubt that under any definition of the word "employer," both within the confines of Wage Order 12-2001 and without, GMS had control over Defendant VXN so as to affect the wages, hours, or work conditions of Plaintiff and class members.

As such, there is no doubt that Plaintiff adequately pleaded enough facts to substantiate claims against each and every defendant in this case under joint employer theory. Therefore, Plaintiff has pleaded cognizable facts to implicate Defendants as joint employers and has demonstrated a probability of prevailing on the claim.

## 2. All Defendants Are Liable Under Alter-Ego Doctrine

Whether a party is an alter ego is a question of fact. *Leek v. Cooper*, 194 Cal. App. 4th 399, 418 (2011). Under the alter ego doctrine, a court may disregard a corporate identity where an abuse of the corporate privilege justifies holding the equitable ownership of a corporation liable for the actions of the corporation. *Tribeca Companies, LLC v. First Am. Title Ins. Co*., 239 Cal. App. 4th 1088, 1104 (2015). Per *Briggs,* the plaintiff must only show that she stated and substantiated a legally sufficient claim. And since whether a party is *actually* an alter ego of another party is ultimately a question of fact, it would be entirely premature to determine whether alter-ego liability *actually* applies. All that matters is that Plaintiff sufficiently stated

14

cognizable facts that a "reasonable attorney" would think is tenable. *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821 (2002). As such, Plaintiff has proven that she has a sufficient likelihood of prevailing on the alter-ego doctrine.

### C. CAL. CIV. PROC. CODE § 425.17 ALLOWS PLAINTIFF TO BRING THIS SUIT

Assuming *arguendo* this Court does find Cal. Civ. Proc. Code § 425.16 applies, then Cal. Civ. Proc. Code § 425.17 undoubtedly exempts Plaintiff from the anti-SLAPP rule. Cal. Civ. Proc. Code § 425.17 (b) finds that if the three following elements are met, then Cal. Civ. Proc. Code § 425.16 does not preclude a claim from being brought: (1) the plaintiff does not seek any relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member. A claim for attorney's fees, costs, or penalties does not constitute greater or different relief for purposes of this subdivision; (2) the action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a ***large class*** of persons; (3) private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter.

The legislative intent for Cal. Civ. Proc. Code § 425.17 is clear; it intends to create a carve out for Class Actions for anti-SLAPP laws. "SB 515 would make the SLAPP motion inapplicable to public interest and class action lawsuits 'brought solely in the public interest or on behalf of the general public' when three specified conditions are met. In general, the qualifying language would clearly encompass claims brought under the Unfair Competition Law (Business and Professions Code Section 17200 et. seq.), the Unfair Practices Act (Business and Professions Code Section 17500 et. seq.), the Consumer Legal Remedies Act (Civil Code Section 1750 et. seq.), as well as any other public interest or class actions lawsuits where the three specified conditions are met." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 515 (2003–2004 Reg. Sess.) as amended May 1, 2003, p. 13; see also Assem. Com. on

Judiciary, Rep. On Sen. Bill No. 515 (2003–2004 Reg. Sess.) as amended June 27, 2003, p. 11.)

In Plaintiff's case, all three elements are undoubtedly met. In *Northern Cal. Cartpenters Regional Council,* it was held that Cal. Civ. Proc. Code § 425.17 applied because the Plaintiffs did not seek any special recovery. *N. Cal. Carpenters Reg'l Council v. Warmington Hercules Assocs*., 124 Cal. App. 4th 296, 299-300 (2004). Similar to this case, the plaintiffs in *N. Cal. Carpenters Regional Council* brought claims for violation of wage and hour laws. *Ibid.* The court found that even though plaintiffs would benefit from the bringing of this case, that since they did not receive any special benefits that the rest of the class was not afforded, Cal. Civ. Proc. Code § 425.17 was applicable. Plaintiff's case is factually more similar to *Northern Cal. Cartpenters Regional Council* than *Blanchard*. In *Blanchard,* the plaintiff was seeking an additional personal benefit, as plaintiffs sought personal relief for themselves in the form of accounting and restitution. *Blanchard v. DIRECTV, Inc.*, 123 Cal. App. 4th 903, 915-916 (2004). In the present case, Plaintiff does not seek any special recovery; she *only* seeks the same kind of recovery afforded to every other Class Member. Therefore, like the court did in *Northern Cal. Cartpenters Regional Council,* this Court should hold that Cal. Civ. Proc. Code § 425.17 applies.

The enforcement of this action would in fact enforce an important right affecting the public interest and would confer a significant benefit upon the class. The Supreme Court of California has ruled that the payment of rightfully owed wages is an important public interest. "It has long been recognized that wages are not ordinary debts, that they may be preferred over other claims, and that, because of the economic position of the average worker and, in particular, his dependence on wages for the necessities of life for himself and his family, it is essential to public welfare that he receive his pay when it is due. An employer who knows that wages are due, has ability to pay them, and still refuses to pay them, acts against good morals and fair dealing, and necessarily intentionally does an act which prejudices the rights of his employee."

*Kerr's Catering Serv. v. Dep't of Indus. Rels*., 57 Cal. 2d 319, 326 (1962). This important interest includes misclassifying employees as contractors. See Cal. Lab. Code § 226.8; 2011 Cal. Legis. Serv. Ch. 706 (S.B. 459); and The Senate Daily Journal for the 2011-2012 Regular Session, pages 2490-2491 [Senator Ellen M. Corbett Stating "SB 459 strives to reduce the incidence of misclassification of employees as independent contractors by creating consequences for employers who willfully misclassify and for those consultants who intentionally advise them to do so. Toward that end, SB 459 creates new civil and administrative penalties and other remedies for the willful misclassification of workers as independent contractors."] Therefore, the enforcement of the claims found within Plaintiff's wage and hour class action complaint would enforce an important public right.

Next, private enforcement is necessary. Without the private enforcement of these statutes, employees within the adult entertainment industry will continue to be misclassified and will continue to be exploited.

Plaintiff also stands to lose far more than to gain. The resolution of this case shall have far reaching implications, even beyond the members of this class. The resolution of this case could determine how *everyone* in the adult entertainment industry, not just Class Members, are classified. Plaintiff stands to gain less non-pecuniary benefits from the resolution of this case, as she no longer works in the adult entertainment industry, therefore the resolution of this case will not affect her as much as other individuals currently in the adult entertainment industry. She cannot be properly classified in an industry she no longer works in.

Furthermore, Plaintiff stands to gain less than Class Members when factoring pecuniary considerations. Plaintiff is well known within the adult film industry and was well compensated. By Defendants' own admission, she was paid far better than her cohorts. *See* Dkt. #33 Pages 11-13. The amount of monies she personally will recover will therefore be significantly less than lesser known and less successful Class Members. Meanwhile, should Plaintiff lose this case she stands to be liable for

thousands of dollars of costs. This case is also highly publicized, being reported in multiple media outlets. Plaintiff herself stands alone to be scrutinized by the media and public at large should she lose this case. Therefore, she is undoubtedly exposed to more losses than what she will potentially gain in this case. Plaintiff is simply interested in seeing justice done and individuals within the adult entertainment industry be paid the wages they are properly owed, to end the exploitation adult entertainers suffer and the empower these often voiceless and maligned individuals.

## V.   DEFENDANTS ARE SUBJECT TO SANCTIONS

### A. CAL. CIV. PROC. CODE § 425.16 ENTITLED PLAINTIFF TO ATTORNEYS FEES

Abuse of Cal. Civ. Proc. Code § 425.16 is rampant. In fact, the purpose of the legislature enacting Cal. Civ. Proc. Code § 425.17 is to curb the abuse of Cal. Civ. Proc. Code § 425.17 and encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. Cal. Civ. Proc. Code § 425.16 provides that if a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion. "Frivolous," in the context of the statute authorizing an award of attorney fees for filing a frivolous anti-SLAPP motion, means that any reasonable attorney would agree the motion was totally devoid of merit. *City of Rocklin v. Legacy Fam. Adventures-Rocklin, LLC*, 86 Cal. App. 5th 713, 726-727 (2022). This motion is entirely frivolous and is not only mean to harass Plaintiff, but to abuse Cal. Civ. Proc. Code § 425.16 (g) and delay discovery. Throughout the entirety of this case, Defendants have filed motion after motion with the sole intent of delaying their participation in the discovery process. Defendants intend to delay discovery for as long as possible to subject Plaintiff and Class Members to a trial by surprise and deprive them of a fair and meritorious trial.

What highlights how frivolous this motion is the fact that the cases purported

by Defendants to show the causes of action arise out of protected activities blatantly defeats their own points, as mentioned above. Any reasonable attorney who does even the most basic of research on this matter would understand how ludicrous it is to bring an anti-SLAPP motion for wage and hour claims. Anti-SLAPP law at this point in time is not some new obscure legal theory in California Courts. There are a bevy of cases that discuss when anti-SLAPP motion is proper and applicable. The vast and overwhelming case law on this matter clearly indicates that bringing anti-SLAPP in this situation is completely inappropriate. This is evidenced by the bare arguments provided by Defendants showing that the causes of action arise out of protected activities. The weakness of their arguments is further highlighted by the fact that the few cases outlined by Defendants actually *defeat* their own arguments. Any reasonable attorney who researches this issue for more than a few hours would understand that this motion has no merit. It is therefore clear that any reasonable attorney would find this Anti-SLAPP Motion frivolous.

Another factor indicating this motion is entirely frivolous is the fact that it is untimely. As was described above, this Anti-SLAPP Motion was filed well after the 60-day time limit prescribed by Cal. Civ. Proc. Code § 425.16. The same facts that Defendants allege caused the claims in this case to arise out of protected activities were pleaded when Plaintiff first filed her complaint in April 2023. Yet, as a last-ditch effort to delay the proceedings in this case once again, Defendants filed this erroneous and frivolous lawsuit.

To further highlight Defendants' underhanded and frivolous tactics, Defendant STRIKE 3 is known to file dozens of frivolous lawsuits against individual defendants to blackmail them with false copyright claims. Declaration of Sarah H. Cohen ("Cohen Decl.") ¶2, **Exhibits 1 and 2** of Plaintiff's concurrently filed Request for Judicial Notice. Defendant STRIKE 3 threatens individuals with exposing them as porn watchers to the general public and with massive monetary repercussions, even though most of these lawsuits are entirely meritless. On any given day, Defendant

STRIKE 3 files up to 60 of these frivolous suits, with nearly 12,000 lawsuits clogging dozens of courts' dockets. Defendant STRIKE 3 generates approximately $20 million dollars per year from these frivolous lawsuits. These suits are intended to do nothing except intimidate and blackmail individuals into paying Defendant STRIKE 3 money. Cohen Decl. ¶ 3, **Exhibits 1 and 2.**

These tactics have earned the ire of many different District Court Judges. For example, the honorable Judge Otis Wright stated that Defendant STRIKE 3's tactics are an "extortion scheme." Cohen Decl. ¶ 4, **Exhibit 2.** The Honorable Judge Royce C. Lamberth of the United States District Court For The District Of Columbia described Defendant STRIKE 3 as a "**copyright troll**" in a recent opinion. Cohen Decl. ¶ 4, **Exhibit 1.** Judge Lamberth went on to state that if anyone stands up to Defendant STRIKE 3's disgusting tactics, that the "**troll cuts and runs under the bridge.**" Cohen Decl. ¶ 6, **Exhibit 1.** In fact, Judge Lamberth states Defendant STRIKE 3 does not take these claims to full litigation and only intends to settle them at the earliest opportunity because Defendant STRIKE 3 fear courts will "**disrupt their rinse-wash-and-repeat approach**." Cohen Decl. ¶ 7, **Exhibit 1.** Twenty-two of the forty cases filed in The D.C District Courts have been voluntarily dismissed by Defendant STRIKE 3. Cohen Decl. ¶ 8, **Exhibit 1.** In his opinion, Judge Lamberth refused to grant Defendant STRIKE 3's ex parte motion because all of their lawsuits "**smack with extortion**." Cohen Decl. ¶ 9, **Exhibit 1.** It is entirely clear that STRIKE 3 has an unfortunate history of taking advantage of the legal system and has no intent of respecting the purpose of the courtroom; to ensure justice is properly and equitably dispensed. This motion is yet another example of the frivolous tactics employed by Defendant STRIKE 3 and should therefore be punished to discourage such underhanded tactics. As such, this motion is entirely frivolous and exposes Defendants to attorney's fees.

As a result of Defendants' frivolous anti-SLAPP motion, Plaintiff's Counsel spent twelve and one half (12.5) hours preparing Plaintiff's Opposition to Defendants'

PLAINTIFF'S OPPOSITION TO DEFENDANTS' ANTI-SLAPP MOTION

anti-SLAPP motion, and anticipates spending another three (3) hours preparing for and appearing at the hearing on the instant anti-SLAPP Motion, for a total of $8,137.50 in attorney's fees.   Cohen Decl., ¶ 10, 11. Plaintiff's counsel also anticipates incurring $282.95 in costs in order to file the instant Motion.  Cohen Decl., ¶ 12.   Plaintiff therefore requests the Court award sanctions against Defendants STRIKE 3, MILLER, and GMS and their counsel of record Brad Kane in the amount of $8,420.45.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Anti-SLAPP Motion in its entirety and sanction Defendants STRIKE 3, MILLER, and GMS and their counsel of record Brad Kane in the amount of $8,420.45.

Dated:  December 15, 2023          BIBIYAN LAW GROUP, P.C.

/s/ Sarah Cohen
_____
DAVID D. BIBIYAN
JEFFREY D. KLEIN
SARAH H. COHEN
Attorneys for Plaintiff, MACKENZIE ANNE THOMA, and on behalf of herself and all others similarly situated