1
2
3
4
5
6

**KANE LAW FIRM**
Brad S. Kane (SBN 151547)
bkane@kanelaw.la
Eric Clopper (SBN 346031)
eclopper@kanelaw.la
1154 S. Crescent Heights. Blvd.
Los Angeles, CA 90035Tel: (323) 697-9840
Fax: (323) 571-3579

7
8
9

Attorneys for Defendants
VXN GROUP LLC; STRIKE 3 HOLDINGS, LLC;
GENERAL MEDIA SYSTEMS, LLC; and
MIKE MILLER

10
11
12

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

13
14
15
16

MACKENZIE ANNE THOMA,
a.k.a. KENZIE ANNE, an
individual and on behalf of all
others similarly situated,

          Plaintiff,

17    v.

18
19
20
21
22
23
24

VXN GROUP LLC, a Delaware
limited liability company; STRIKE
3 HOLDINGS, LLC, a Delaware
limited liability company;
GENERAL MEDIA SYSTEMS,
LLC, a Delaware limited liability
company; MIKE MILLER, an
individual; and DOES 1 to 100,
inclusive,

          Defendants.

Case No. **2:23–cv–04901 WLH (AGRx)**

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF STRIKE 3 HOLDINGS, LLC'S, GENERAL MEDIA SYSTEMS, LLC's, AND MIKE MILLER'S REPLY BRIEF IN SUPPORT OF THEIR SPECIAL MOTION TO STRIKE (ANTI-SLAPP) PURSUANT TO C.C.P. § 425.16**

Date:          January 5, 2024
Time:          11:30 am or later
Courtroom:      9B

[*Filed concurrently with Reply Brief in Support of Motion to Strike (Anti-SLAPP); and Opposition to Plaintiff's Request for Judicial Notice and Objection to the Declaration of Sarah Cohen*]
Complaint Filed:  April 20, 2023
Removed:      June 21, 2023

25
26
27
28

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF
DEFENDANTS' ANTI-SLAPP REPLY BRIEF

KANE LAW FIRM
1154 Crescent Heights Blvd.
Los Angeles, CA 90035

**TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, in accordance with Federal Rule of Evidence 201, Defendants Strike 3 Holdings, LLC, General Media Systems, LLC, and Mike Miller (collectively, the "Anti-SLAPP Defendants") will, and hereby do, request the Court to take judicial notice of the following:

1.    **Exhibit A**, which is a true and correct copy[1] of the Bibiyan Law Firm's ("BLF")'s March 22, 2023 "Plaintiff's Notice of Motion and Motion for Preliminary Approval of Class and Representative Action Settlement…" in *Juarez v. Calmet Services, Inc.*, Los Angeles Superior Court Case No. 21STCV33668.

2.    **Exhibit B**, which is a true and correct copy of the Court's October 31, 2023 Order granting BLF's proposed settlement, marked as **Ex. A**, entitling the lead plaintiff a $7,500.00 enhancement, in *Juarez v. Calmet Services, Inc.*, Los Angeles Superior Court Case No. 21STCV33668.

3.    **Exhibit C**, which is a true and correct copy[2] of the Court's August 17, 2023 Order granting the BLF's requested $5,000 to $10,000 enhancements to the

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

[1] Defendants' counsel added a highlight on page 28 to draw the reader's attention to the relevant section in the Anti-Slapp Defendants' Reply Brief.

[2] Defendants' counsel added a highlight on page 3 to draw the reader's attention to the relevant section in the Anti-Slapp Defendants' Reply Brief.

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' ANTI-SLAPP REPLY BRIEF

plaintiffs in *Hines v. Constellis Integrated Rist Mgmt. Serv.'s*, Los Angeles Superior Court Case No. 20STCV26962.

4.    **Exhibit D**, which is a true and correct copy of the Court's December 14, 2023 Minute Order in the Plaintiff's remanded Los Angeles Superior Court Case, No. 23STCV08761. In this Order, the Court related and consolidated the Plaintiff's remanded Unfair Competition Law ("UCL") action with the Plaintiff's separate Private Attorney General Act ("PAGA") action, LASC No. 23STCV16142, and took all motions off calendar until preliminary issues of fact are resolved in this Court to conserve judicial resources and avoid collateral estoppel issues.

Dated: December 22, 2023

Respectfully submitted,

KANE LAW FIRM

By: */s/ Brad S. Kane*

Brad Kane
Eric Clopper
Attorneys for Defendants
VXN Group LLC; Strike 3 Holdings,
LLC; General Media Systems, LLC;
and Mike Miller

**KANE LAW FIRM**
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

2

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF
DEFENDANTS' ANTI-SLAPP REPLY BRIEF

Exhibit A

Electronically FILED by Superior Court of California, County of Los Angeles on 03/22/2023 04:48 PM David W. Slayton, Executive Officer/Clerk of Court, by G. Carini,Deputy Clerk

**BIBIYAN LAW GROUP, P.C.**
David D. Bibiyan (SBN 287811)
*david@tomorrowlaw.com*
Vedang J. Patel (SBN 328647)
*vedang@tomorrowlaw.com*
Iona Levin (SBN 294657)
*iona@tomorrowlaw.com*
8484 Wilshire Boulevard, Suite 500
Beverly Hills, California 90211
Tel: (310) 438-5555; Fax: (310) 300-1705

Attorneys for Plaintiff, GENARO JUAREZ,
on behalf of himself and all others similarly situated and aggrieved

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES - SPRING STREET COURTHOUSE

| | |
|---|---|
| GENARO JUAREZ, an individual, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CALMET SERVICES, INC., a California corporation; CALMET PROPERTIES, LLC, a California limited liability company; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.: 21STCV33668<br><br>[Assigned to the Hon. Kenneth R. Freeman in Dept. 14]<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION FOR SETTLEMENT PURPOSES ONLY; DECLARATIONS OF DAVID D. BIBIYAN, VEDANG J. PATEL, AND PLAINTIFF IN SUPPORT THEREOF**<br><br>HEARING INFORMATION:<br>⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯<br><br>DATE:     September 12, 2023<br>TIME:     10:00 a.m.<br>DEPT:     14 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

     **PLEASE TAKE NOTICE** that on September 12, 2023 at 10:00 a.m., or as soon thereafter as they may be heard in Department 14 of the Superior Court of the State of California for the County of Los Angeles, Spring Street Courthouse, plaintiff Genaro Juarez ("Plaintiff") on behalf of himself and all others similarly situated and aggrieved, will and hereby does move for this Court for entry of an Order:

    1.    Preliminarily certifying the following settlement class ("Settlement Class" or "Settlement Class Members or "Class Members") for the purpose of settlement only: all current and former non-exempt, hourly-paid employees who worked in California for Calmet Services, Inc., and Calmet Properties, LLC, (collectively, "Defendants") at any time during the period from September 13, 2017 through April 1, 2022 ("Class Period").

    2.    Preliminarily approving the representative Plaintiff as Class Representative.

    3.    Preliminary approving David D. Bibiyan of Bibiyan Law Group, P.C., as Class Counsel.

    4.    Preliminarily approving the settlement claims under the terms set forth in the Joint Stipulation re: Class Action and Representative Action Settlement ("Settlement," "Agreement" or "Settlement Agreement").[1]

    5.    Preliminarily approving payment of the Gross Settlement Amount of $650,000.00, which is subject to escalation pursuant to the Settlement Agreement.

    6.    Approving the form and content of the Class Notice submitted herewith.

    7.    Appointing ILYM Group, Inc. ("ILYM") to administer the Settlement, including distribution of the Class Notice, as set forth in the Settlement Agreement.

    8.    Preliminarily approving the payment of $9,650.00 for settlement administration to ILYM from the Gross Settlement Amount.

    9.    Preliminarily approving service award of $7,500.00 to Plaintiff in consideration for Plaintiff's extensive efforts in prosecuting this case.

---

[1] A true and correct copy of the Settlement Agreement is attached with its exhibit(s) as Exhibit 1 to the Declaration of Vedang J. Patel ("Patel Decl.") for the Court's convenience.

PLAINTIFF'S NOTICE AND MOTION FOR PRELIMINARY APPROVAL AND PROVISIONAL CLASS CERTIFICATION: DECLS. IN SUPPORT THEREOF

10.    Preliminarily approving payment of reasonable attorneys' fees to Class Counsel in the amount of thirty-five (35%) of the Gross Settlement Amount which, unless escalated pursuant to the Settlement Agreement, amounts to $227,500.00.

11.    Preliminarily approving reimbursement of Class Counsel's costs in an amount, according to proof, not to exceed $25,000.00.

12.    Preliminarily approving PAGA penalties in the amount of $20,000.00, seventy-five percent (75%) or $15,000.00 of which will be paid to the Labor and Workforce Development Agency ("LWDA") out of the Gross Settlement Amount, and twenty-five percent (25%) or $5,000.00 of which will be distributed to Aggrieved Employees, defined as Class Members working for Defendants during the period from September 13, 2020 through April 1, 2022 ("PAGA Period") as non-exempt, hourly-paid employees in California; and

13.    Entering an Order preliminarily approving the Settlement consistent with the terms of the Settlement Agreement.

Good cause exists for granting this Motion in that the proposed settlement is fair, reasonable, and adequate.

This Motion will be based on this Notice of Motion, the Memorandum of Points and Authorities filed herewith, the Declarations of David D. Bibiyan, Vedang J. Patel, and Plaintiff, , exhibits attached thereto, arguments of counsel and upon such other materials contained in the file and pleadings of this action.


Dated: March 22, 2023                    BIBIYAN LAW GROUP, P.C.


                                         _Vedang J. Patel_
                                         _____
                                         DAVID D. BIBIYAN
                                         VEDANG J. PATEL
                                         IONA LEVIN
                                         Attorneys for Plaintiff, GENARO JUAREZ, on
                                         behalf of himself and all others similarly situated
                                         and aggrieved

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff Genaro Juarez ("Plaintiff"), on behalf of himself and all others similarly situated and aggrieved, hereby applies for preliminary approval of the proposed Joint Stipulation re: Class Action and Representative Action Settlement ("Settlement," "Agreement" or "Settlement Agreement") upon the terms and conditions set forth in the Settlement Agreement, attached to the Declaration of Vedang J. Patel as Exhibit "1."

On September 13, 2021, Plaintiff filed with the LWDA and served on Defendants a notice under Labor Code section 2699.3 stating Plaintiff intended to serve as a proxy of the LWDA to recover civil penalties on behalf of Aggrieved Employees for various Labor Code violations. ("PAGA Notice").

Also, on September 13, 2021, Plaintiff filed a putative wage-and-hour class action alleging that, during the Class Period, Defendants, as it pertains to Class Members: (1) failed to pay overtime wages; (2) failed to pay minimum wages; (3) failed to provide meal periods or compensation in lieu thereof; (4) failed to provide rest periods or compensation in lieu thereof; (5) failed to pay all wages due upon separation from employment; (6) failed to timely pay wages; (7) failed to pay vested vacation time; (8) failed to issue accurate and compliant wage statements; and (9) engaged in unfair competition (the "Class Action").

On or about November 12, 2021, Defendants removed the Class Action to the Central District of California, asserting that federal preemption applied by virtue of Collective Bargaining Agreements ("CBAs") governing the claims. Plaintiff filed a Motion for Remand, which was denied on the basis that Plaintiff's overtime claim is preempted by Section 301 of the Labor Management Relations Act ("LMRA"). Defendants filed a Motion for Judgment on the Pleadings, which the Court converted into a Rule 56 Motion for Summary Judgment ("Summary Judgment Motion"). As part of the Summary Judgment Motion, Defendants contended that they were entitled to a judgment on Plaintiff's overtime pay, meal periods, timely wages under Labor Code section 204, and vested vacation pay under Labor Code section 227.3, by virtue of LMRA preemption. Defendants also argued that the wage statement and waiting time penalty claims are derivative of the overtime claim

1    and thus preempted, as well.

2       The Summary Judgment Motion was granted in part and denied in part. The Court ruled that

3    the LMRA preempted the overtime claim, meal break claim, and failure to timely pay wages under

4    Labor Code section 204 claim, and granted judgment against Plaintiff on those issues. The Court

5    remanded the remaining minimum wage claim, rest break claim, vacation claim under Labor Code

6    section 227.3, claims for waiting time penalties, wage statement violations, and unfair competition

7    back to the State Court in which it was filed.

8       On November 17, 2021, after sixty-five (65) days had passed since Plaintiff filed and served

9    the PAGA Notice, without any action by the LWDA with respect to the alleged Labor Code

10   violations, Plaintiff filed a separate representative action seeking PAGA civil penalties against

11   Defendants for the Labor Code violations alleged in the PAGA Notice (the "PAGA Action").

12      Thereafter, the Parties exchanged formal and informal discovery and attended a mediation,

13   in which Plaintiff was provided with, among other things: (1) a sampling of time and payroll records

14   for one third (1/3) of the estimated 191 putative class members; (2) hire dates, termination dates and

15   final rates of pay for one-third (1/3) of putative class members; (3) contact information for all

16   putative class members; (4) Plaintiff's complete personnel file; (4) samples of paper logs used by

17   putative class members effectuating work duties outside of Defendants' facilities; (5) Defendant

18   Calmet Services' 2017 and 2018 employee handbooks; and (6) a collective bargaining agreement

19   ("CBA") dated October 1, 2017 through September 30, 2022 ("2017 CBA").

20      On October 5, 2022, the Parties participated in a full-day mediation before Mark Rudy,

21   Esquire, a well-regarded mediator experienced in mediating complex labor and employment

22   matters. With the aid of the mediator's evaluation and proposal, the Parties reached the Settlement

23   to resolve the Action. As part of the Agreement, the Parties agreed to stipulate to Plaintiff filing a

24   First Amended Complaint in the Class Action, and dismiss the PAGA Action without prejudice,

25   thereby effectively consolidating the Class Action and PAGA Action, as further set out below

26   (hereinafter, the "Action"). The stipulation is filed concurrently with this motion.

27      The Parties had strong positions at mediation regarding the certifiability of Plaintiff's

28   claims, the merits thereof, the manageability of a trial, and the likelihood of recovering civil

penalties for aggrieved employees. Nevertheless, the Parties concluded, after considering the sharply disputed factual and legal issues involved in this Litigation, the risks associated with further prosecution, and the substantial benefits to be received pursuant to the compromise and settlement of the Action as set forth in the Settlement Agreement, that settlement on the terms set forth herein is in the best interest of Plaintiff, putative class members, aggrieved employees, and Defendants, and is fair, reasonable, and adequate.

## II.  THE SETTLEMENT

Subject to Court approval pursuant to Code of Civil Procedure section 382 and California Rules of Court, rule 3.679, *et seq*., the Parties have agreed to settle the Action by agreement upon the terms and conditions, and for the consideration set forth in the Settlement Agreement, a copy of which is attached to the Declaration of Vedang J. Patel as Exhibit "1" thereto. A summary of the terms of the settlement are as follows:

Defendants will stipulate, for purpose of this settlement only, as follows:

- Certification of a class ("Settlement Class," "Settlement Class Members" or "Class Members") defined as: all current and former non-exempt, hourly-paid employees who worked in California for Calmet Services, Inc., and Calmet Properties, LLC, (collectively, "Defendants") at any time during the period from September 13, 2017 through April 1, 2022 ("Class Period").

- Defendants will pay $650,000.00[2] ("Gross Settlement Amount") to resolve the matter.

- Defendants will pay the employer's share of taxes separate and apart from the Gross Settlement Amount.

- This is a non-reversionary settlement.

---

[2] The Gross Settlement amount is based on Defendants' representation that there are no more than 32,000 Workweeks worked during the Class Period. In the event that it is determined that the number of Workweeks worked by Class Members during the Class Period increases by more than 10%, or 3,200 Workweeks, then the Gross Settlement Amount shall be increased proportionally by the Workweeks in excess of 35,200 Workweeks multiplied by the Workweek Value. The Workweek Value shall be calculated by dividing the originally agreed-upon Gross Settlement Amount ($650,000.00) by 32,000, which amounts to a Workweek Value of $20.31. Thus, for example, should there be 36,000 Workweeks in the Class Period, then the Gross Settlement Amount shall be increased by $16,248.00. ((36,000 Workweeks – 35,200 Workweeks) x $20.31 per Workweek.).

- Class Members will be paid their *pro rata* share of the class action settlement based on the total number of Workweeks[3] worked during the Class Period.

- The Settlement Administration costs, estimated not to exceed $9,650.00, will be paid out of the Gross Settlement Amount.

- Class Counsel, comprised of David D. Bibiyan and Jeffrey C. Bils of Bibiyan Law Group, P.C., will apply for, and Defendants will not oppose, attorneys' fees of up to thirty-five percent (35%) of the Gross Settlement Amount, which, unless escalated pursuant to the Settlement Agreement, amounts to $227,500.00, and actual costs, not to exceed $25,000.00, all of which will be paid out of the Gross Settlement Amount.

- Class Counsel will apply for, and Defendants will not oppose, a service award of $7,500.00 for the Class Representative, which will be paid out of the Gross Settlement Amount.

- The "PAGA Period" means the period from September 13, 2020 through the end of the Class Period.

- "Aggrieved Employees" means Class Members working for Defendants during the PAGA Period as non-exempt, hourly-paid employees in California.

- Defendants have agreed to pay $20,000.00 as PAGA penalties, seventy-five percent (75%) or $15,000.00 of which will be paid to the LWDA out of the Gross Settlement Amount, and twenty-five percent (25%) or $5,000.00 of which will be distributed to Aggrieved Employees.

- Checks to Class Members and Aggrieved Employees shall remain valid and negotiable for one hundred eighty (180) calendar days after the date of their issuance. Within seven (7) calendar days after expiration of the 180-day period,

---

[3] "Workweeks" means the number of weeks that a Settlement Class Member was employed by and worked for the Defendants in a non-exempt, hourly-paid position during the Class Period in California, based on hire dates, re-hire dates (as applicable), and termination dates (as applicable).

PLAINTIFF'S NOTICE AND MOTION FOR PRELIMINARY APPROVAL AND PROVISIONAL CLASS CERTIFICATION: DECLS. IN SUPPORT THEREOF

checks for such payments shall be canceled and funds associated with such checks shall be transmitted to the California Unclaimed Property Fund.

## III.    THE TWO-STEP APPROVAL PROCESS

Any settlement of class litigation must be reviewed and approved by the Court. This is done in two steps: (1) an early (preliminary) review by the trial court; and (2) a final review after notice has been distributed to the class members for their comment or objections. The Manual for Complex Litigation Second states at section 30.44:

> A two-step process is followed when considering class settlements… if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representative or segments of the class, and falls within the range of possible approval, then the court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement.

(*Id.* at § 10 (1985).)

Thus, the preliminary approval of the trial court is simply a conditional finding that the settlement appears to be within the range of the acceptable settlements. As class action Professor Herbert B. Newberg comments, "[t]he strength of the findings made by a judge at a preliminary hearing or conference concerning a tentative settlement proposal may vary. The court may find that the settlement proposal contains some merit, is within the range of reasonableness required for a settlement offer or is presumptively valid subject only to any objections that may be raised at a final hearing." (4 Conte & Newberg, Newberg on Class Actions ["Newberg on Class Actions"], § 11.26 (4th Ed. 2002).)

The procedures for submission of a proposed settlement for preliminary approval is discussed at section 11.24 through 11.26 of Newberg on Class Actions. Newberg observes at section 11.24:

> When the parties to an action reach a monetary settlement, they will usually prepare and execute a joint stipulation of settlement, which is submitted to the court for preliminary approval.  The stipulation should set forth the central terms of the agreement, including but not limited to, the amount of the settlement, form of payment, manner of determining the effective date of settlement, and any recapture clause.

The Settlement Agreement in this case is fair, reasonable and in the best interest of Class

8

1    Members.

2    IV.    **THE PRESUMPTION OF FAIRNESS**

3    Courts presume the absence of fraud or collusion in the negotiation of a settlement unless

4    evidence to the contrary is offered. In short, there is a presumption that the negotiations were

5    conducted in good faith. (Newberg on Class Actions, § 11.51; *In re Volkswagen "Clean Diesel"*

6    *Marketing, Sales Practices, and Products Liability Litigation* (N.D. Cal. May 17, 2017) No. 16-

7    cv-00295, 2017 WL 2214655, quoting *United States v. Oregon* (9th Cir. 1990) 913 F.2d 576, 580.)

8    Courts do not substitute their judgment for that of the proponents, particularly where, as here,

9    settlement has been reached with the participation of experienced counsel familiar with the

10    litigation. (*Hammon v. Barry* (D.D.C. 1990) 752 F.Supp. 1087, 1093, citing Newberg on Class

11    Actions, § 11.44, p. 457 and *Steinberg v. Carey* (S.D.N.Y. 1979) 470 F.Supp. 471; *In re Ikon*

12    *Office Solutions, Inc. Securities Litigation* (E.D. Pa. 2002) 209 F.R.D. 94, 104, citing *Sommers v.*

13    *Abraham Lincoln Federal Savings & Loan Association* (E.D. Pa. 1978) 79 F.R.D. 571, 576.)

14    While the recommendations of counsel proposing the settlement are not conclusive, the Court

15    can properly take them into account, particularly where, as here, they have been involved in litigation

16    for some period of time, appear to be competent, have experience with this type of litigation, and

17    have obtained substantial data from the opposing party. (*See* Newberg on Class Actions, § 11.47.)

18    In this Litigation, the Settlement was reached after discussions between Class Counsel,

19    extensive factual and legal research, formal and informal discovery, an exchange of data points, time

20    and payroll records, a review and analysis of time and payroll records with Plaintiff and expert

21    consultants, preparation of damages analyses with the aid of expert consultants, and a full-day

22    mediation session with a mediator experienced in mediating complex labor and employment matters.

23    The Settlement that has been reached, subject to this Court's approval, is the product of substantial

24    effort and expense by the Parties and their counsel. The settlement amount is, of course, a

25    compromise figure. However, counsels for the Parties are satisfied that this figure is reasonable in

26    light of the risks and expense of continued litigation.

27    / / /

28    / / /

PLAINTIFF'S NOTICE AND MOTION FOR PRELIMINARY APPROVAL AND PROVISIONAL CLASS
CERTIFICATION: DECLS. IN SUPPORT THEREOF

V.    **SETTLEMENT AGREEMENT AND ACCOMPANYING DOCUMENTS**

A notice of settlement of a class action "must contain an explanation of the proposed settlement and procedures for class members to follow in filing written objections to it and in arranging to appear at the settlement hearing and state any objections to the proposed settlement." (Cal. Rules of Court, rule 3.769, subd. (f).)

Attached to the Declaration of Vedang J. Patel as Exhibit "1" thereto is the Settlement Agreement between the Parties. Attached to the Settlement Agreement as internal Exhibit "A" is the proposed Notice of Class Action Settlement ("Class Notice") to be distributed to Class Members in English and Spanish. The proposed Class Notice satisfies these requirements.

The Parties respectfully request that this Court approve the above-referenced Class Notice and dissemination of the Class Notice to the Class Members, consistent with the manner and timing as set forth in the Settlement Agreement. The Parties have agreed to use ILYM Group, Inc. ("ILYM"), an experienced Settlement Administrator, to administer the settlement. The Parties have further agreed that the administration costs will be paid out of the Gross Settlement Amount. It is requested that the Court appoint ILYM to serve as the Settlement Administrator.

VI.    **THE SETTLEMENT IS FAIR AND REASONABLE BASED UPON OBJECTIVE EVIDENCE**

A.    **The Settlement was Negotiated at Arm's-Length and is not Collusive**

The Settlement that has been reached, subject to this Court's approval, is a product of substantial efforts by the Parties and their counsel. The Settlement was reached after extensive factual and legal investigation and research; formal discovery; substantial negotiation regarding the scope of informal discovery; an exchange of documents and information that included review of time and pay records, and analysis thereof with the aid of Plaintiff and expert consultants; an analysis of shifts and Workweeks worked by Class Members in the Class Period, analysis of the number of pay periods and number of Aggrieved Employees in the PAGA Period for calculating PAGA penalties, number of Class Members eligible for wage statement penalties and waiting time penalties; analysis of Plaintiff's employment records; extensive correspondence and communication between counsel; a review of pleadings, evidence and rulings in similar actions litigated elsewhere

10

in the state; a review of similar cases in the same industry elsewhere in the country; and preparation for and attendance at a full-day session of mediation, followed by further negotiations to finalize the terms and conditions of the general settlement parameters agreed to by the Parties. The settlement amount is a compromise figure. It considered the risks related to certifiability, liability, and manageability.

Class Counsel assert that the wage and hour claims, and the claims for resulting penalties would be certified. On the other hand, Class Counsel understand from the mediator and the mediation process that Defendants argued that Plaintiff cannot meet the requirements of class certification because any wage discrepancies are not the product of an overarching policy that was uniformly applied; that Class Members were paid for all hours under Defendants' control, or otherwise suffered or permitted to work by Defendants; that rest periods were authorized and/or permitted; that Defendants' rest period policies were compliant; that Defendants did not deter Class Members from taking rest periods and that Defendants thus provided all pay owed to Class Members by separation of employment and issued accurate wage statements to Class Members. Defendants further contend that class certification would not be warranted because individual liability issues predominate over any class-wide allegations.

While Plaintiff believes in the chance of success of certifying the claims, Plaintiff recognized the potential risk, expense and complexity posed by further litigation. Moreover, litigating Plaintiff's claims in this Litigation—claims that involve 191 Class Members during the Class Period—would require substantial preparation and discovery, and ultimately would involve the deposition and presentation of numerous more witnesses (including Class Members and expert witnesses), as well as the consideration, preparation and analysis of expert reports. Therefore, should litigation have progressed any further, there would have been significant expense incurred by each side (above and beyond the expense already incurred).

In light of the sharply contested legal and factual issues, the risks of continued litigation and the substantial benefits to Class Members under the Settlement, the terms and conditions of this class settlement are fair and reasonable to all sides.

/ / /

PLAINTIFF'S NOTICE AND MOTION FOR PRELIMINARY APPROVAL AND PROVISIONAL CLASS CERTIFICATION: DECLS. IN SUPPORT THEREOF

**B.    <u>The Settlement Amount is Well Within Range of Reasonableness</u>**

The settlement amount reached in this case provides significant recovery to Class Members and Aggrieved Employees, and easily falls within the range of reasonableness. Based on documents and information provided by Defendants, Class Counsel understand there was approximately a total of 32,000 Workweeks.

**1.    Unpaid Minimum Wages for Failure to Pay Off-the-Clock Work**

Class Counsel advanced theories at mediation that Defendants failed to pay all minimum wages due to Plaintiff and Class Members because Defendants failed to accurately record all time worked by Plaintiff and Class Members, and required Plaintiff and Class Members to perform off-the-clock work. Specifically, Defendants failed to pay all minimum wages due to Plaintiff and Class Members because: (1) Defendants required Plaintiff and Class Members to attend to pre-shift company meetings without pay, Plaintiff and Class Members were required to wait in line to clock in for their shifts, and were subject to temperature checks for COVID-19 screening off-the-clock; and (2) Defendants rounded off the time entries to the detriment of Plaintiff and Class Members.

**a.    Off-the-Clock Work**

Class Counsel theorized, based on narrative evidence of Plaintiff, that Defendants failed to pay all minimum wages due to Plaintiff and Class Members because Plaintiff and Class Members spent time off-the-clock under Defendant's control, including, without limitation, attending to mandatory pre-shift company meetings, undergoing temperature checks for COVID-19 screening during COVID-19 pandemic, and waiting in line to clock in for their shifts, all without pay. Class Counsel understand, based on narrative evidence of Plaintiff and Class Members, that there were approximately 80 to 100 Class Members who would be working within the same shift, and all waiting in line to undergo temperature checks for COVID-19 screening during COVID-19 pandemic and to clock in for their shifts. Class Counsel theorized that this was due to an insufficient number of thermometers and timeclocks as Defendants provided only one (1) thermometer and one (1) timeclock in their facility. Moreover, Class Counsel theorized, based on the narrative evidence of Plaintiff and Class Members that, that once or twice a month

PLAINTIFF'S NOTICE AND MOTION FOR PRELIMINARY APPROVAL AND PROVISIONAL CLASS CERTIFICATION: DECLS. IN SUPPORT THEREOF

1  Defendants required Class Members to attend to pre-shift company meetings, without pay, to
2  discuss objectives and tasks.

3       Based on the foregoing, Class Counsel advanced a theory at mediation that Plaintiff and
4  Class Members worked off-the-clock for approximately 14 minutes for each shift during the Class
5  Period. Class Counsel understand, based on time and payroll records produced by Defendants that
6  there were approximately 165,457 shifts during the Class Period and Class Members had an
7  average hourly rate of pay of $22.99. Thus, one calculation performed by Class Counsel at
8  mediation resulted in **Defendant's exposure for unpaid off-the-clock work in the amount of**
9  **$874,887** (165,457 shifts x .23 hour x $22.99).

10      Class Counsel understand from the mediator and the mediation process that Defendants
11  make the following defenses in connection with this claim: Defendants contend that their policies
12  specifically prohibit off-the-clock work. Defendants contend that it did not require Class Members
13  to work off-the-clock and, rather, they were paid for all time suffered or permitted to work.
14  Defendants assert that it provided a sufficient number of timeclocks at its facility, and Class
15  Members would not have been required to wait in line before their shifts. Defendants further contend
16  that temperature checks and COVID health screens were not compensable time pursuant to *Frlekin*
17  *v. Apple Inc.* (2020) 8 Cal.5th 1038 because a Court must consider whether the time spent is for the
18  benefit of the employee or the employer, and that the temperature checks were being performed for
19  the safety of employees, not for the benefit of Defendants.  Defendant contend that the time it took
20  to go through Covid-19 protocols was *de minimis* and that temperature checks were only in place
21  during a portion of the Class Period.   Moreover, Defendants contend that any allegations that Class
22  Members were required to wait in line or otherwise be under Defendants' control off-the-clock
23  would necessitate an individualized inquiry into when and why, making this claim not subject to
24  class treatment and any trial in this Litigation unmanageable. Finally, Defendants contend that,
25  because most shifts worked by Class Members during the Class Period were over eight (8) hours,
26  the off-the-clock work detailed above resulted in a failure to pay overtime pay, which was already
27  decided upon in Federal Court against Plaintiff, and not failure to pay minimum wages. Thus,
28  Defendants contend that no damages can be recovered here, and, even if, *arguendo*, they could, an

estimate of 14 minutes unpaid for every single shift worked by Class Members during the Class Period is a wild exaggeration of time spent working off-the-clock if *any* such time was spent.

### b. Detrimental Rounding

Class Counsel theorized that Defendants rounded Class Members' time worked to their detriment. Class Counsel theorized, based on the time and pay records produced by Defendants and expert analysis thereof, that Defendants ultimately underpaid Class Members by 176.9 hours, and that Class Members had an average hourly rate of pay of $22.99. Thus, one calculation performed by Class Counsel at mediation resulted in **Defendants' exposure for detrimental rounding in the amount of $8,134** (176.9 hours x $22.99/hour x 2 in liquidated damages).

Class Counsel understands from the mediator and mediation process that Defendants defend that their rounding practice was neutral on its face as it resulted in roughly equal amounts of overpaid and underpaid shifts. Thus, Defendants took the position that its rounding practice was legal and results in no damages.

### 2. Recovery of Damages for Non-Compliant Rest Periods

Class Counsel theorized at mediation, based on relevant documents produced by Defendants and narrative evidence of Plaintiff and Class Members, that Defendants' rest period policies and practices throughout the Class Period were non-compliant. Defendants' employee handbooks and CBAs did not state when rest periods may be taken, did not state whether rest periods may just be taken by the employees or should be authorized by their respective supervisors, did not state whether rest periods must be recorded and how these must be recorded; did not state that employees can leave the premises during rest periods; and did not state that the rest periods are duty-free and uninterrupted. On the other hand, the 2017 and 2018 employee handbooks state that "rest periods are paid and hourly employees should not clock out for a rest period."

Class Counsel theorized at mediation, based on narrative evidence of Plaintiff and Class Members, that, in practice, Defendants' rest periods were also non-compliant. Class Counsel theorized, based on narrative evidence of Plaintiff and Class Members, that many rest periods were not provided because supervisors would instruct Class Members not to take rests due to the heavy workload that had to be completed within their shifts. Class Counsel understand, based on narrative

evidence of Plaintiff and Class Members that Class Members who were not working within Defendants' facility were required by Defendants to mark down in logs that they were afforded with timely, full and uninterrupted rest periods, though that was not the case.

Class Counsel theorized, based on time and payroll records produced by Defendants and expert analysis thereof, that there were 164,762 shifts over 3.5 hours worked by Class Members during the Class Period. Notably, a review of payroll records produced by Defendants reflects that no rest period premiums were ever issued during the Class Period.

Thus, one calculation performed by Class Counsel at mediation resulted in, assuming a 40% violation rate for rest-eligible shifts, **Defendants' exposure for failure to provide compliant rest periods in a conservative amount of $1,515,131** (164,762 shifts x .40 violation rate x $22.99/hour).

### 3.    Wage Statement Violations

Class Counsel theorized that Class Members are entitled to recover penalties for Defendants' alleged failure to issue compliant wage statements under Labor Code section 226, subdivision (e), for the derivative impact of the failure to pay all wages owed on providing accurate information on wage statements. Specifically, Class Counsel theorized that penalties are owed under Labor Code section 226 due to, at minimum, Defendants': (1) failure to pay wages for all hours worked; and (2) failure to pay premium wages. A non-exempt employee suffering injury as a result of a knowing and intentional failure by an employer to comply with Labor Code section 226, subdivision (a), is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period.

Class Counsel understand from the data provided by Defendants that there were 13,398 pay periods during the relevant statutory time period for Class Members. If, in fact, Class Members worked every off-the-clock every shift as set forth above, and no rest premiums were paid, every wage statement would thus, Class Counsel theorized, violate Labor Code section 226. Thus, **Defendants' maximum exposure for wage statement violations would be $1,339,800** (13,398 pay periods x $100/pay period.)

Class Counsel understand from the mediator and the mediation process that Defendants make the following defenses in connection with this claim: Defendants contend that the wage statements issued to the employees fully complied with Labor Code section 226. Defendants contend that because they believe no wages are unpaid that, thus, there can be no derivative penalties.

At the time of mediation, Defendants further defended that even if there were, *arguendo*, derivative penalties, that Plaintiff suffered no injury, citing *Maldonado v. Epsilon Plastics, Inc.* (2018) 22 Cal.App.5th 1308 [*Maldonado*]. In that case, the Court noted that "inaccurate wage statements alone do not justify penalties; the plaintiffs must establish injury flowing from the inaccuracy." The Court therein rejected the position of plaintiffs in that matter that "*any* failure to pay overtime at the appropriate rate *also* generates a wage statement injury justifying the imposition of wage statements…" At the time of mediation, Defendants further cited *Naranjo v. Spectrum Security Services, Inc.* (2019) 40 Cal.App.5th 444 [*Naranjo*] for the proposition that no derivative wage statement violation exists for failure to pay for meal and rest period premiums.

Defendants once again defended that no unpaid wages are owed as Defendants did not fail to pay for all hours worked. Defendants also point out that Class Counsel's calculation neither takes into account that the first pay period merits only a $50 instead of a $100 violation rate. At the time of mediation, Defendants further defended that no waiting time penalties are owed for unpaid premium under *Naranjo*.

Class Counsel note that California Supreme Court recently overruled the California Court of Appeal's decision in *Naranjo* and ruled that employer can be liable for derivative wage statement violations for failure to pay meal and rest period premiums (*See Naranjo v. Spectrum Security Services, Inc.* (2022) 13 Cal. 5th 93, [509, P.3d 956, 969]). Class Counsel further note that, to the extent *Maldonado* is still good law after the Court's ruling in *Naranjo*, the Court in *Maldonado* suggests that failure to account for all time worked may, in fact, constitute an injury, and thus does not find the defense meritorious as to Class Counsel's argument.

However, Class Counsel also understand the risks inherent in this claim should Plaintiff's failure to pay wages claims not be certified. Class Counsel also had to factor in, and did factor in,

the risk that a Court would find there was no injury to Class Members even if the wage statements were inaccurate or that Defendants' conduct was not intentional, both of which are requirements of Labor Code section 226 before penalties can issue. Class Counsel also note that the calculation used does not take into account the first pay period violation only being $50 and the fact that all Class Members did not work all pay periods and therefore do not qualify for the maximum penalty of $4,000 as calculated in Plaintiff's exposure model used at mediation.

### 4.    Waiting Time Penalties

Pursuant to Labor Code sections 201, 202 and 203, each employee in the relevant statutory period (*i.e.*, three years before the filing of the initial Complaint) is entitled to 30 days' worth of wages as waiting time penalty for not being paid all wages due upon separation of employment. Class Counsel theorized at mediation, based on relevant documents provided by Defendants, that, under Labor Code section 203, Defendants are liable to pay each Class Member, who was terminated during the relevant statutory period, a full 30-day worth of wages as waiting time penalty for failure to pay wages for off-the-clock work, failure to pay compensation in lieu of compliant rest periods, and failure to timely pay all wages due at the time of termination or resignation.

Based on relevant documents provided by Defendants, there were approximately 64 Class Members who were terminated or resigned during the relevant statutory period. Class Counsel understand from these documents that, after termination or resignation, Class Members received their last wages belatedly. Class Counsel theorized that this this widespread practice of Defendants results in their systematic and direct violation of Labor Code sections 201, 202 and 203.

Thus, one calculation performed at mediation by Class Counsel resulted in **Defendants' maximum exposure for waiting time penalties to be $353,126** (64 Class Members terminated from Defendants x 8 hours x 30 days x $22.99/hour).

Class Counsel understand from the mediator and the mediation process that Defendants contend that there is no credence to Plaintiff's off-the-clock theory and that, thus, no waiting time penalties are owed based on that theory. Defendants further defend that failure to pay premium pay is not a basis for waiting time penalties to issue, citing *Naranjo* again. Finally, Defendants

contend that their actions were not "willful" and that, thus, waiting time penalties cannot be awarded. Thus, Defendants argue that no waiting time penalties are owed.

### 5.     Unpaid Vested Vacation Time

Class Counsel had initially theorized Defendants failed to pay all accrued vacation for Class Members upon separation from employment.  However, after investigation and discovery, Class Counsel did not attribute a significant amount in damages to this claim at mediation.

### 7.     PAGA Penalties

Class Counsel understand from the time and payroll data provided by Defendants that there were 13,398 pay periods in the PAGA Period. Plaintiff's claims in the Action under PAGA are substantially similar to those described herein, except Class Counsel also advanced a theory that Defendant failed to comply with the notice requirements of Labor Code Section 2810.5.

PAGA penalties include penalties for initial violations and subsequent violations. Defendants contend that only initial violation rates may be used instead of the subsequent violation rates initially used by Class Counsel. Specifically, Defendants contend that until "notified that it is violating a Labor Code provision… the employer cannot be presumed to be aware that its continuing underpayment of employees is a "violation" subject to penalties." (*Amaral v. Cintas Corp. No. 2* [*Amaral*] (2008) 163 Cal. App. 4th 1157, 1209.) Thus, Defendants contend that subsequent violations in the PAGA context means not just later in time but following notice to the employer that it is in violation of the Labor Code. With this in mind and because Class Counsel through investigation and discovery did not come to the conclusion that Defendants at any time was notified by any governmental entity that they violated any Labor Code sections presented in the PAGA Notice and PAGA claims, Class Counsel adjusted the exposure model for Defendants to include only initial violation rates.

While Class Counsel are informed and believe that reasonable minds differ with regard to calculation of PAGA penalties, Class Counsel believe it is reasonable to calculate Defendants' maximum exposure in PAGA penalties as follows:

a.     <u>Overtime Violations</u>: Labor Code section 558 prescribes penalties of $50 for an initial violation and $100 for each subsequent violation. Using the initial pay period rate for all

18

violations, and a violation every single pay period for every single non-exempt employee in the PAGA Period, this amounts to a maximum exposure of $669,900 (13,398 pay periods x $50).

///

///

b.    <u>Minimum Wage Violations</u>: Labor Code section 1197.1 prescribes penalties of $100 for an initial violation and $250 for each subsequent violation. Using the initial pay period rate for all violations and a violation every single pay period for every single Aggrieved Employee in the PAGA Period, this amounts to a maximum exposure of $1,339,800 (13,398 pay periods x $100).

c.    <u>Meal Period Violations</u>: Labor Code section 558 prescribes penalties of $50 for an initial violation and $100 for each subsequent violation. Using the initial pay period rate for all violations and a violation every single pay period for every single non-exempt employee in the PAGA Period, this amounts to a maximum exposure of $669,900 (13,398 pay periods x $50).

d.    <u>Rest Period Violations</u>: Labor Code section 558 prescribes penalties of $50 for an initial violation and $100 for each subsequent violation. Using the initial pay period rate for all violations and a violation every single pay period for every single non-exempt employee in the PAGA Period, this amounts to a maximum exposure of $669,900 (13,398 pay periods x $50).

e.    <u>Waiting Time Penalties</u>: Labor Code section 2699 prescribes penalties of $100 for an initial violation and $200 for each subsequent violation. Because this violation is merited only at separation of employment, a 100% violation rate would likely include just one violation per employee. The data produced by Defendants indicate that there are 64 Aggrieved Employees whose employment was separated during the PAGA Period. This amounts to a maximum exposure of $6,400 (64 Aggrieved Employees x $100).

f.    <u>Wage Statement Violations</u>: According to *Gunther v. Alaska Airlines, Inc.* (2021) 287 Cal.Rptr.3d 229, in this instance, Labor Code section 2699 would be the appropriate penalty for wage statement violations that are inaccurate, which prescribes penalties of $100 for an initial violation and $200 for each subsequent violation (*Id.* at 247-248). Using the initial pay period rate for all violations and a violation every single pay period for every single Aggrieved Employee in

1    the PAGA Period, this amounts to a maximum exposure of $1,339,800 (13,398 pay periods x
2    $100).

3        g.    Failure to Provide Notice under 2810.5: Upon hire, Defendants must provide each
4    Aggrieved Employee a notice under Labor Code section 2810.5 with the information set out under
5    that Labor Code section. Labor Code section 2699 prescribes penalties of $100 for an initial
6    violation and $200 for each subsequent violation. Class Counsel understands Defendants to
7    concede that no such notices were provided. There were, according to the data provided by
8    Defendants, approximately 180 Aggrieved Employees hired during the PAGA Period. This
9    amounts to a maximum exposure, using the initial violation rate, of $18,000. (180 Aggrieved
10   Employees x $100.).

11       h.    Failure to Pay Vested Vacation Time: Labor Code section 2699 prescribes penalties
12   of $100 for an initial violation and $200 for each subsequent violation. Using the initial pay period
13   rate for all violations, and a violation every single pay period for every single non-exempt
14   employee in the Settlement Period, this amounts to a maximum exposure of $1,339,800 (13,398
15   pay periods x $100).

16       i.    Conclusion: In sum, Class Counsel calculated Defendants' total maximum
17   exposure for PAGA violations if the Court were to find a 100% violation rate for every Aggrieved
18   Employee every pay period and not exercise its discretion to reduce any of those penalties to be
19   $6,053,500.

20       Class Counsel understand from the mediator and the mediation process that Defendants
21   argued the following in connection with this claim: Defendants contend that no PAGA penalties
22   are likely to be awarded and, even if they were, the maximum exposure calculated by Class
23   Counsel is vastly overstated. First, Defendants defend that PAGA penalties cannot and should not
24   be stacked and that, even if they could, very few Courts have ever exercised discretion to stack
25   them. Second, Defendants assert that individualized issues predominate the PAGA claims, making
26   the claims unmanageable for trial pursuant to *Wesson v. Staples the Office Superstore, LLC* (2021)
27   68 Cal.App.5th 746. Third, Defendants deny that a violation for each pay period can be
28   established. Defendants state that because the PAGA penalties rely upon substantially similar

20

allegations made in the Action, they are subject to the same defenses and, thus, for the same reason, Defendants believe there will be no damages collectible in the class action and no PAGA penalties would be awarded. Fourth, Defendants contend that a Court is unlikely to exercise its discretion to award civil penalties under PAGA where, as here, there is no conduct shown by Plaintiff that would show any Labor Code violation by Defendants is knowing and intentional that would justify PAGA penalties. Defendants insist that this is especially true in this Action where class action damages are available to Class Members, rendering an award of PAGA penalties in addition to class action damages an unjust, arbitrary, oppressive or confiscatory double recovery. Thus, Defendants contend that the Court cannot, should not and will not exercise its discretion to award any penalties under PAGA.

Class Counsel maintains that it is possible to recover the subsequent violation rate for penalties, that stacking is permissible, and that there is no manageability requirement under PAGA (citing *Estrada v. Royalty Carpet Mills, Inc.*). Class Counsel also understand the risks inherent should the Court not exercise its discretion to grant any PAGA penalties, in addition to potential issues on the merits, trial manageability, and issues the possibility that the Court does not use permit stacking of penalties or permit the use of the subsequent violation rate when providing penalties. As such, Class Counsel believe a 90% discount of this claim to be reasonable, resulting in a valuation of **$605,350** as a reasonable estimate of the likelihood of what Plaintiff may recover at trial for PAGA penalties ($6,053,500 x .10).

### 8. Conclusion

When including derivative penalties, such as waiting time penalties, wage statement violations, and discretionary PAGA penalties, Class Counsel theorized Defendants' maximum exposure to be approximately **$4,696,428**. However, this maximum exposure did not take into account all of Defendants' defenses, including, without limitation, that: (1) Defendants' policies regarding tasks performed off-the-clock, the claim is not certifiable and does not lend itself to a manageable trial; (2) not all Class Members performed tasks off-the-clock every shift and thus the damages attributed to this line item are excessive; (3) in light of Defendants' policies regarding meal period, the claim is not certifiable and does not lend itself to a manageable trial; (4) in light

of purported meal period waivers; (5) in light of Defendants' policies regarding rest period, the claim is not certifiable and does not lend itself to a manageable trial; (5) Plaintiffs' claims for wage statement and waiting time penalties are derivative of the above-referenced claims and if those fail, these would fail too; (6) if *Naranjo* was upheld, there would be no derivative wage statement and waiting time penalties for failure to provide premium pay, thus creating an even greater risk that derivative penalties never issue; (7) Defendants' failure to pay wages was not willful and that, thus, no waiting time penalties or wage statement violations are owed; (8) no injury was suffered by Class Members and, thus, no wage statement violations are owed; (9) Plaintiffs' calculation of its exposure for PAGA penalties is excessive and unrealistic as it assumes that the Court will permit the stacking of eight penalties and find that there was a violation every pay period against each Aggrieved Employee in connection with every theory without any reduction whatsoever of the maximum penalties sought; and (10) the Court will exercise its discretion to grant PAGA penalties at all in light of the fact that damages are available in connection with Plaintiffs' class claims, thus creating double the liability for the same violations for Defendants.

In all, Class Counsel obtained a Gross Settlement Amount of **$650,000**. Particularly in light of the risks involving obstacles to class certification, all issues and risks related to liability, the issues with manageability at trial, the discretionary nature of PAGA penalties, and considering the case law regarding fair, reasonable and adequate settlements, Class Counsel strongly believe that the settlement reached is fair, reasonable and adequate, and in the best interest of Class Members.

Moreover, $20,000 of the Gross Settlement Amount was attributed to PAGA penalties. This allocation was decided mutually by the Parties and the mutual decision was based on: (1) the fact that damages are available for the failure to pay wage claims while only penalties are available for the PAGA claims; (2) the risk that the Court may exercise its discretion to decline to stack PAGA penalties; (3) the risk that the Court may exercise its discretion to not award the full amount of PAGA penalties available; and (4) the risk that the Court may decline to award any PAGA

PLAINTIFF'S NOTICE AND MOTION FOR PRELIMINARY APPROVAL AND PROVISIONAL CLASS CERTIFICATION: DECLS. IN SUPPORT THEREOF

1  penalties at all in light of the fact that damages are available for Class Members and it may find
2  any further liability against Defendants unnecessarily punitive.

3  ## VII.    THE PROPOSED ATTORNEYS' FEES AND COSTS ARE REASONABLE

4      Class Counsel seek an attorneys' fees award of thirty-five percent (35%) of the Gross
5  Settlement Amount, which, unless escalated pursuant to the Agreement, would amount to
6  $227,500.00. Class Counsel also seek reimbursement of costs not to exceed $25,000.00. The
7  requested fees fall well within the historical range of attorney's fees awards under the common fund
8  theory, which is generally from 25% to 50%. The requested fee is fair compensation for undertaking
9  complex, risky, expensive and time-consuming litigation on a contingent fee basis. Indeed, extensive
10 investigation was done before and after litigation began with the help of Plaintiff and consultants that
11 included detailed review of time and payroll records; months of negotiations between opposing
12 counsel, as well as discussion of diametrically opposed viewpoints regarding the certifiability of
13 Plaintiff's claims, the merits of Plaintiff's claims, the manageability of those claims at a class action
14 or representative action trial, including what settlement terms would be just and proper. Moreover,
15 significant expense was expended, including filing fees, the utilization of forensic consultants to help
16 analyze time and payroll records, time spent with Plaintiff by telephone, as well as attending a full-
17 day mediation session to try to resolve the Litigation, among other things.

18     The California Supreme Court has recently expressly recognized that the awarding of a
19 percentage of the "common fund" created as a result of the settlement is an appropriate method for
20 the calculation of an attorneys' fees award in a class action. (*Laffitte v. Robert Half Intern. Inc.*
21 (2016) 1 Cal.5th 480, 503-504.)

22     The purpose of the common fund/percentage approach is to "spread litigation costs
23 proportionally among all the beneficiaries so that the active beneficiary does not bear the entire
24 burden alone." (*Vincent v. Hughes Air West, Inc.* (9th Cir. 1977) 557 F.2d 759, 769; *accord Laffitte*
25 *v. Robert Half Intern. Inc.* (2016) 1 Cal.5th 480, 489.) In *Quinn v. State of California* (1995) 15
26 Cal.3d 162, the California Supreme Court stated that "one who expends attorneys' fees in winning
27 a suit which creates a fund from which others derive benefits may require those passive beneficiaries
28 to bear a fair share of the litigation costs." (*Id.* at 167.) Similarly, in *City and County of San Francisco*

*v. Sweet* (1995) 12 Cal.4th 105, the California Supreme Court recognized that the common fund doctrine has been applied "consistently in California when an action brought by one party creates a fund in which other persons are entitled to share." (*Id.* at 110.) The reasons for applying the common fund doctrine further include:

/ / /

> "…fairness to the successful litigant, who might otherwise receive no benefit because his recovery might be consumed by the expenses; correlative prevention of an unfair advantage to the others who are entitled to share in the fund and who should bear their share of the burden of its recovery; encouragement of the attorney for the successful litigant, who will be more willing to undertake and diligently prosecute proper litigation for the protection or recovery of the fund if he is assured that he will be properly and directly compensated should his efforts be successful."

(*Id.*)

The "lodestar method," which focuses on the amount of work done, is the alternative method for determining attorney fee awards. (*Lafitte v. Robert Half Intern Inc.* (2016) 1 Cal.5th 480, 489.) Several courts have expressed frustration with the alternative "lodestar" approach for deciding fee awards, which usually involves wading through voluminous and often indecipherable time records. Commenting on the lodestar approach, Chief Judge Marilyn Hall Patel wrote in *In re Activision Securities Litigation* (N.D. Cal 1989) 723 F. Supp. 1373:

> "This court is compelled to ask, 'Is this process necessary?' Under a cost-benefit analysis, the answer would be a resounding, 'No!' Not only do the *Lindy Kerr-Johnson* analyses consume an undue amount of court time with little resulting advantage to anyone, but in fact, it may be to the detriment of the class members. They are forced to wait until the court has done a thorough, conscientious analysis of the attorneys' fee petition. Or, class members may suffer a further diminution of their fund when a special master is retained and paid from the fund. Most important, however, is the effect the process has on the litigation and the timing of settlement. Where attorneys must depend on a lodestar approach, there is little incentive to arrive at an early settlement."

(*Id.* at 1375.)

The percentage approach is preferable to the lodestar because: (1) it aligns the interests of class counsel and absent class members; (2) it encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable, settlement; and (3) it reduces the demands on judicial resources. (*Id.* at 1378-79.)

This was reaffirmed in 2016 by the California Supreme Court, as well. The California Supreme Court noted that "[c]urrently, all the circuit courts either mandate or allow their district courts to use the percentage method in common fund cases; none require sole use of the lodestar method." (*Lafitte v. Robert Half Intern Inc.* (2016) 1 Cal.5th 480, 493, citations omitted.) It further noted that "the Third Circuit itself holds that while both methods of calculating a fee may be used, the percentage-of-recovery method is generally favored in common fund cases because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure." (*Id.*, citing *In re Rite Aid Corp. Securities Litigation* (3rd Cir. 2005) 396 F.3d 294, 300, quotations omitted.) And, as the California Supreme Court stated, "[m]ost state courts to consider the question in recent decades have also concluded the percentage method of calculating a fee award is either preferred or within the trial court's discretion in a common fund case." (*Id.*at 494.)

The California Supreme Court noted that even "[t]he American Law Institute has also endorsed the percentage method's use in common fund cases, with the lodestar method reserved mainly for awards under fee shifting statutes where the percentage method cannot be applied or would be unfair due to specific circumstances of the case. (*Id.*, citing ALI, Principles of the Law of Aggregate Litigation (2010) § 3.13.) It continued:

> "Although many courts in common-fund cases permit use of either a percentage-of-the-fund approach or a lodestar (number of hours multiplied by a reasonable hourly rate), most courts and commentators now believe that the percentage method is superior.  Critics of the lodestar method note, for example, the difficulty in applying the method and cite the undesirable incentives created by that approach—i.e., a financial incentive to extend the litigation so that the attorneys can accrue additional hours (and thus, additional fees).  Moreover, some courts and commentators have criticized the lodestar method because it gives counsel less of an incentive to maximize the recovery of the class."

(*Id.*, citing ALI, Principles of the Law of Aggregate Litigation (2010) § 3.13, com. b.)

While the percentage method has been generally approved in common fund cases, courts have sought to ensure the percentage fee is reasonable…" (*Id.* at 495, citations omitted.) Notably, one-third of the common fund was the exact amount requested by class counsel in *Lafitte v. Robert Half Intern. Inc.* (2016) 1 Cal.5th 480.  (*Id.* at 486.) In that case, the trial court rejected the one-third common fund award and was reversed by the California Supreme Court who determined that the

25

1  trial court erred by not approving one-third of the common fund as class counsel's attorneys' fees

2  award. (*See Laffitte v. Robert Half Intern. Inc.* (2016) 1 Cal.5th 480, 485-486, 506.)

3        This is also in line with attorney fee awards historically awarded in common fund cases.

4  Specifically, historically, courts have awarded percentage fees in the range of 20% to 50%,

5  depending on the circumstances of the case. (Newberg on Class Actions, § 14.03; *In re Activision*

6  *Securities Litigation* (N.D. Cal. 1989) 723 F.Supp. 1373, 1378.) According to Newberg on Class

7  Actions, "[n]o general rule can be articulated on what is a reasonable percentage of a common fund."

8  Usually, 50% of the fund is the upper limit on a reasonable fee award from a common fund in order

9  to assure that the fees do not consume a disproportionate part of the recovery obtained for the class,

10  although somewhat larger percentages are not unprecedented." (Newberg on Class Actions, § 14.03.)

11  Newberg on Class Actions further notes: "achievement of a substantial recovery with modest hours

12  expended should not be penalized but should be rewarded for considerations of time saved by

13  superior services performed." (*Id.* at § 14.01, p. 14-10:14-11.)

14        Class Counsel have borne and continue to bear the entire risks and costs of litigation

15  associated with this class action and representative action on a purely contingency basis. The factual

16  and legal issues posed in this case were evolving and difficult. Class Counsel has easily already

17  expended hundreds of hours on this matter, including:

18        • The investigation of the matter, including meeting with Plaintiff, reviewing

19          policies, Plaintiff's time and pay records, Plaintiff's personnel file and exploring

20          Defendants' corporate structure;

21        • Filing and serving initial pleadings in the Class Action, as well as the First

22          Amended Complaint in the Action;

23        • Filing and serving of the PAGA Notice;

24        • Compliance with prerequisites in connection with Plaintiff's cause of action

25          under PAGA;

26        • Filing and serving a separate PAGA Action;

27

28

PLAINTIFF'S NOTICE AND MOTION FOR PRELIMINARY APPROVAL AND PROVISIONAL CLASS
CERTIFICATION: DECLS. IN SUPPORT THEREOF

- Preparing notices, meeting and conferring with counsel for Defendants to prepare joint reports and discussing the matter in big picture early on in the Litigation;

- Preparation of a Motion to Remand in Federal Court;

- Opposing Defendants' Motion for Summary Judgment;

- Discussing the potential merits of mediation, as well as negotiating the parameters thereof and the informal discovery to be exchanged beforehand, which involved various iterations of written correspondence back and forth and several telephone discussions between counsel regarding the potential scope of discovery, as well as the scope of the pleadings;

- Creating a questionnaire and obtaining responses from Class Members to the questionnaire;

- Obtaining and reviewing formal and informal discovery;

- Working with opposing counsel and consultants for the receipt of a representative sampling and analyzing the same with the aid of expert consultants and Plaintiff to perform analyses of liability and exposure;

- Selecting a mediator and mediation date;

- Preparation of a mediation brief and damages model for use at the mediation session;

- Attendance at the mediation session;

- Negotiating, finalizing and fully executing the Settlement Agreement;

- Communicating with Plaintiff who requested updates or other information regarding this matter; and

- Preparing the instant motion for preliminary approval.

Moreover, based on Class Counsel's experience in wage and hour class action litigation, Class Counsel is very likely to be called upon, after the Class Notice has been sent, to expend substantial amounts of additional time to help Class Members understand the terms of the proposed settlement, and to assist Class Members in the preparation and documentation of their claims. It is

27

also likely that, even after final approval of the settlement has been granted, Class Counsel will be called upon to expend additional amounts of time in the presentation and resolution of contests and disputes relating to Class Members' claims under the terms of the proposed settlement, as to the amounts of individual claims and perhaps other individual issues. Finally, Class Counsel will have to work with the Settlement Administrator to submit a report to this Court regarding the distribution plan pursuant to Code of Civil Procedure section 384 along with a proposed judgment, which will require further time and costs to be expended.

Thus, the Court should preliminarily approve the requested attorneys' fees and costs, which are justified by the results achieved, the complexity of the issues, the difficulty of the case and the great risks undertaken by Class Counsel. The requested attorneys' fees will not be opposed by Defendants and are well within established guidelines.

## VIII.   THE REQUESTED ENHANCEMENT AWARD TO THE NAMED PLAINTIFF AND CLASS REPRESENTATIVE IS REASONABLE

Plaintiff is entitled to an enhanced award for his service as class representative, for answering extensive questions by Class Counsel, for being available and answering questions during mediation, for the risks in being the named plaintiff and for providing Defendants with a more expansive release of claims, including a waiver based upon California Civil Code section 1542, in exchange for the enhancement award. Defendants do not oppose the requested enhancement to Plaintiff.  Class Counsel can attest that Plaintiff devoted a great deal of time assisting Class Counsel in this case, communicated with counsel very frequently and was a very valuable participant in the strategy for and success of the mediation. Plaintiff risked intrusive discovery and the payment of employer costs. In the experience of Class Counsel, the typical enhancement award in wage and hour class actions ranges from approximately $10,000.00 to $25,000.00, although some awards are higher. In contrast, Class Counsel seek an extremely limited enhancement of $7,500.00 to Plaintiff, for his service, which is commensurate to the time and effort he has put forth in the prosecution of this matter.

/ / /

/ / /

## IX.    CONDITIONAL CERTIFICATION FOR SETTLEMENT PURPOSES

### A.    The Class should be Preliminarily Certified

In California, there are two certification prerequisites: (1) the existence of an "ascertainable class;" and (2) "a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented." (*Sotelo v. MediaNews Group, Inc.* (2012) 207 Cal.App.4th 639, 647.) In addition, as set forth above, California courts utilize the procedures prescribed by the Federal Rules of Civil Procedure in class actions filed in California. (*Schneider v. Vennard* (1986) 183 Cal.App.3d 1340, 1345-46; *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 695; *Vasquez v. Sup. Ct.* (1971) 4 Cal.3d 800.) Indeed, to certify a class, the party advocating class treatment must demonstrate: (1) a numerous class; (2) predominant common questions of law or fact; (3) class representatives with claims or defenses typical of the class; and (4) class representatives who can adequately represent the class." (*Williams v. Sup. Ct.* (2013) 221 Cal.App.4th 1353, citing *Brinker Restaurant Corp. v. Sup. Ct.* (2012) 53 Cal.4th 1004, 1021.)

Each of the criteria for class certification is satisfied in this instance:

**1.    Ascertainability** – "Ascertainability" is a due process requirement that ensures it is possible to decide who will be bound by the judgment (*res judica* effect). The determination is made by examining the class definition and the size of the class. One may also examine the means available to identify class members, but this is not the exclusive test. (*Noel v. Thrifty Payless, Inc.* (2019) 7 Cal.5th 955, 980-981.)

Here, the Class Members definition (*i.e.*, all current and former non-exempt and hourly-paid employees who worked in California for Defendants at any time during the Class Period) is derived from the operative complaint, which complains of alleged violations of Labor Code sections that are chiefly and, in some instances, solely applicable to non-exempt and hourly-paid employees. There is no difficulty ascertaining who is a Class Member based on the above-described definition as it is readily apparent to all involved who is a non-exempt and hourly-paid employees who worked in California for Defendants during the Class Period based solely from Defendants' payroll records, which amounts to approximately 191 persons. Thus, the Settlement Class is certainly ascertainable.

/ / /

2.    **Numerosity** – According to the California Supreme Court, a putative class is sufficiently numerous to achieve the numerosity requirement if their joinder is impracticable and thus substantial benefits accrue both to litigants and the courts if the action proceeds as a class action. (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435, 446.) Numerosity is presumed satisfied if there are forty (40) putative class members. (*Miri v. Dillon* (E.D. MI 2013) 292 F.R.D. 454, 461.) However, as few as 10 class members have been found sufficient. (*See, e.g., Bowles v. Sup. Ct.* (1955) 44 Cal.2d 574.)

Class Counsel understand from the documents provided that Defendants identified at least 191 Class Members. That is sufficiently numerous to establish the numerosity requirement.

3.    **Commonality** – California law also requires that "questions of law or fact common to the class [be] substantially similar and predominate over the questions affecting the individual members." (*In re Steroid Hormone Product Cases* (2010) 181 Cal.App.4th 145, 153.) Common issues predominate when they would be "the principal issues in any individual action, both in terms of time to be expended in their proof and of their importance." (*Vasquez v. Sup. Ct.* (1971) 4 Cal.3d 800, 810; *see also Hatashi v. First American Home Buyers Protection Corp.* (2014) 223 Cal.App.4th 1454, 1462-1463.) Common questions need only be "sufficiently pervasive to permit adjudication in a class action rather than in a multiplicity of suits." (*Vasquez v. Sup. Ct.* (1971) 4 Cal.3d 800, 810.) Commonality is easily satisfied if there is one issue common to class members. (*Hanlon v. Chrysler Corp.* (9th Cir. 1988) 150 F.3d 1011, 1019.)

This Litigation is brought to resolve common issues that include, without limitation: (1) whether Defendants failed to pay for all hours worked; (2) whether Defendants failed to authorize or permit Class Members to take compliant rest periods; (3) whether Defendants failed to provide Class Members with additional wages for missed rest periods; (4) whether Defendants failed to pay Class Members upon termination or resignation all wages earned; (5) whether Defendant are liable to Class Members for waiting time penalties; (6) whether Defendants failed to furnish Class Members with accurate wage statements; (7) whether Defendants failed to provide Class Members with compensation at their final rate of pay for vested paid vacation time; and (8) whether Defendants' engaged in unfair competition.

**4.    Typicality** – Typicality requires only that the named plaintiff's interests in the action be significantly similar to those of other class members. (*Williams v. Sup. Ct.* (2013) 221 Cal.App.4th 1353, citing *Brinker Restaurant Corp. v. Sup. Ct.* (2012) 53 Cal.4th 1004, 1021.) A representative plaintiff's claims are typical if they arise from the same event, practice, or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theories. (*Miller v. Woods* (1983) 16 Cal.App.3d 862, 874; *accord In re Broadwing, Inc. ERISA Litigation* (S.D. OH. 2006) 252 F.R.D. 369, 377, citing *In re Am. Med. Sys.* (6th Cir. 1996) 75 F.3d 1069, 1079, quot. Newberg on Class Actions, § 3-13 at 3-76.) Indeed, when the same underlying conduct affects the named plaintiffs and the class sought to be represented, the typicality requirement is met irrespective of any varying fact patterns that may underlie individual claims. (*See Daniels v. Centennial Group, Inc.* (1993) 16 Cal.App.4th 467, 473 [named plaintiff's interests must only be significantly similar to other class members].)

As the court in *B.W.I. Custom Kitchen v. Owens-Illinois, Inc.* (1987) 191 Cal.App.3d 1341, explained:

> [I]t has never been the law in California that the class representative must have ***identical*** interests with the class members.  The only requirements are that common questions of law and fact ***predominate*** and that the class representative be ***similarly*** situated.

(*Id.* at 1347, citations omitted, emphasis in original.)

Plaintiff's claims are typical of those of other Class Members as Plaintiff: (1) is a non-exempt, hourly-paid employee like other Class Members; (2) complains of not being paid for all time under Defendants' control or suffered and/or permitted to work for Defendants; (3) complains of not receiving premium pay for non-compliant meal periods; among others.

Accordingly, Plaintiff's claims are typical of those of the Class Members.

**5.    Adequacy of Representation** - To maintain a class action, the representative plaintiff must adequately protect the interests of the class. (*Williams v. Sup. Ct.* (2013) 221 Cal.App.4th 1353, citing *Brinker Restaurant Corp. v. Sup. Ct.* (2012) 53 Cal.4th 1004, 1021.) Adequacy of representation consists of two components. First, there must be no disabling conflicts of interest between the class representatives and the class. Second, the class representative must be

represented by counsel who are competent and experienced in the kind of litigation to be undertaken. (*See McGhee v. Bank of Am.* (1976) 60 Cal.App.3d 442, 450; *accord In re Juniper Networks, Inc. Securities Litigation* (N.D. Cal. 2009) 264 F.R.D. 584, 590.)

Both criteria are met in this instance:

### (i)    No Disabling Conflict of Interest Exists Between the Class Representative and the Class

No conflicts, disabling or otherwise, exists between Plaintiff and Class Members because Plaintiff alleges to have been damaged by the same alleged conduct of Defendants (*i.e.*, Plaintiff classified as a non-exempt employee, hourly paid employee, not paid premium pay, etc.) and thus have the incentive to fairly represent all Class Members' claims to achieve the maximum possible recovery. Moreover, Plaintiff's goals have been realized via redress for employees whose wage and hour rights were violated.

### (ii)    Class Counsel are Experienced Class Action Attorneys

As set forth in the Declarations of Class Counsel, Class Counsel in this matter consist of experienced class action attorneys, have been appointed as class counsel in other class actions and have a successful "track record" in litigating class actions. After a thorough investigation and settlement discussions, the Parties arrived at terms that they viewed was in the best interest of both the Class Members and the Parties. Should the Court refuse to grant preliminary approval of this Settlement, many of the Class Members may be denied any recourse for Defendants' alleged violations.

**6.    Superiority of Class Action** – Also relevant to the Court's certification decision is whether a class action is the superior method of adjudication. (*Brinker Restaurant Corp. v. Sup. Ct.* (2012) 53 Cal.4th 1004, 1021.)

In that vein, "[t]his state has a public policy which encourages the use of the class action device." (*ABM Industries Overtime Cases* (2017) 19 Cal.App.5th 277, 299, citing *Sav-On Drug Stores, Inc. v. Sup. Ct.* (2004) 34 Cal.4th 319, 240) Indeed, "with respect to the superiority of the class action mechanism … courts regularly certify class actions to resolve wage and hour claims." (*Id.* at 300.) "In this arena the class action mechanism allows claims of many individuals to be

32

resolved at the same time, eliminates the possibility of repetitious litigation and affords small

claimants with a method of obtaining redress for claims which otherwise would be too insufficient

to warrant individual litigation." (*Ibid.*) Moreover, Plaintiff contends that the issues slated for

contest are primarily common issues involving common evidence. Plaintiff contends that it would

not be efficient or fair to relegate these complaints to multiple trials." (*Ibid.*, citing *Bufil v. Dollar

Financial Group, Inc.* (2008) 162 Cal.App.4th 1193, 1208; *see Brinker Restaurant Corp. v. Sup.

Ct.* (2012) 53 Cal.4th 1004, 1034.)

> "Indeed, as the California Supreme Court elaborated in *Brinker Restaurant Corp. v. Sup. Ct.* (2012) 53 Cal.4th 1004, 'a theory of liability that an employer has a uniform policy and that that policy measured against wage order requirements, allegedly violates the law – is by its nature a common question entirely suited for class treatment. [Citation.] In the general case to prematurely resolve such disputes, conclude a uniform policy complies with the law, and thereafter reject class certification … places defendants in jeopardy of multiple class actions, with one after another dismissed until one trial court concludes there *is* some basis for liability and in that case approves class certification. [Citation.] It is far better from a fairness perspective to determine class certification independent of threshold questions disposing of the merits, and thus permit defendants who prevail on those merits, equally with those who lose on the merits, to obtain the preclusive benefits of such victories against an entire class and not just a named plaintiff.'

(*ABM Industries Overtime Cases* (2017) 19 Cal.App.5th 277, 300, quot. *Brinker Restaurant Corp.

v. Sup. Ct.* (2012) 53 Cal.4th 1004, 1034.) The Court further noted that:

> "California courts consider 'pattern and practice evidence, statistical evidence, sampling evidence, expert testimony, and other indicators of a defendant's centralized practices in order to evaluate whether common behavior towards similarly situated plaintiffs make class certification appropriate. [Citation.] Other relevant factors include 'whether the class approach would serve to deter and redress alleged wrongdoing.' [Citation.] Moreover, in the wage and hour context, '[w]e have recognized that retaining one's employment while bringing formal legal action against one's employer is not 'a viable option for many employees,' 'and thus a class action may be appropriate as a current employee who individually sues his or her employer is at greater risk of retaliation.' [Citations.] And …our high court noted that class actions may be particularly useful for immigrant workers with limited English language skills, as illegal employer conduct might otherwise escape their attention.'"

(*ABM Industries Overtime Cases* (2017) 19 Cal.App.5th 277, 300, citations omitted.)

The California Supreme Court has also noted that where individual suits are not brought by

putative class members that this indicates that they have little interest in personally controlling their

claims." (*Dynamex Operations West, Inc. v. Sup. Ct.* (2018) 4 Cal.5th 903, 924.) The Court should also consider that "consolidating all the claims before a single court would be desirable because it would allow for consistent rulings with respect to all the class members' claims." (*Ibid.*)

This wage and hour class action is a superior vehicle for resolution of the issues it seeks to resolve. It deals with common issues that are most efficiently adjudicated together, including: (1) whether Defendants failed to pay for all hours worked; (2) whether Defendants failed to authorize or permit Class Members to take compliant rest periods; (3) whether Defendants failed to provide Class Members with additional wages for missed rest periods; (4) whether Defendants failed to pay Class Members upon termination or resignation all wages earned; (5) whether Defendant are liable to Class Members for waiting time penalties; (6) whether Defendants failed to furnish Class Members with accurate wage statements; (7) whether Defendants failed to provide Class Members with compensation at their final rate of pay for vested paid vacation time; and (8) whether Defendants' engaged in unfair competition.

Moreover, with approximately 191 Class Members, presentation of all of them before this Court may be problematic, impractical, and burdensome on the Court. On the contrary, a class action allows claims of many individuals to be resolved at the same time, eliminates the possibility of repetitious litigation, and affords small claimants with a method of obtaining redress for claims which otherwise would be too insufficient to warrant individual litigation. It is also brought by a former employee who is not at the greater risk of retaliation than current employees who are less likely to seek such redress for themselves. In addition, Class Counsel is not aware of any other action against Defendants brought on an individual basis, which signals that Class Members have little interest in personally controlling their claims. Moreover, a class action would eradicate the concern of inconsistent rulings regarding the wage and hour issues brought as part of this class action.

**7. Conclusion –** Thus, because this class action meets all criteria for certification and a lesser standard of scrutiny applies when evaluating these criteria for settlement purposes, it should be certified for purposes of effectuating this settlement. (*Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 664, 654 ["[i]f the statutory criteria are satisfied, a trial court is under a duty to certify the class and is vested with no discretion to deny certification based upon

34

other considerations"]; *Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1800, 1807, n. 19, citations omitted [there is a "lesser standard of scrutiny for settlement cases"].

## X.    CONCLUSION

The proposed Settlement Agreement is fair, adequate, and reasonable. It will result in substantial payments to Class Members; it is non-collusive; and it was achieved as the result of informed, extensive, and arm's-length negotiations conducted by counsel for respective parties who are experienced in wage and hour class action litigation.

For the foregoing reasons, the Parties respectfully request that the Court grant preliminary approval of the proposed settlement, sign the proposed Order, approve, and authorize mailing of the proposed Class Notice submitted herewith, and set a date for the final approval hearing.


Dated: March 22, 2023                          BIBIYAN LAW GROUP, P.C.


                                                *Vedang J. Patel*
                                               _____
                                               DAVID D. BIBIYAN
                                               VEDANG J. PATEL
                                               IONA LEVIN
                                               Attorneys for Plaintiff, GENARO JUAREZ, on
                                               behalf of himself and all others similarly situated
                                               and aggrieved

1

## PROOF OF SERVICE

2

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

4
I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my mailing address is 8484 Wilshire Boulevard, Suite 500, Beverly Hills, California 90211.

5

6

7

8

9
On March 22, 2023, I caused a true and correct copy of the foregoing document(s) described as **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT AND PROVISIONAL CLASS CERTIFICATION FOR SETTLEMENT PURPOSES ONLY; DECLARATIONS OF DAVID D. BIBIYAN, VEDANG J. PATEL, PLAINTIFF IN SUPPORT THEREOF; AND** [PROPOSED] **ORDER** to be served by electronic transmission via email to the parties and/or counsel set forth in the below service list:

10

11

12
Anthony C. Oceguera
Anthony.Oceguera@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH, LLP
2020 West El Camino Avenue, Suite 700
Sacramento, CA 95833

13

14
**Attorney for Defendants Calmet Services, Inc., and Calmet Properties, LLC**

15

16
I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

17
Executed on March 22, 2023, at Beverly Hills, California.

18

19
*/s/ Jennifer Echeverria*
Jennifer Echeverria

20

21

22

23

24

25

26

27

28

Law Offices of
BIBIYAN LAW GROUP
A Professional Corporation
8484 Wilshire Blvd, Suite 500
Beverly Hills, California 90211
(310) 438-5555

Exhibit B

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Spring Street Courthouse, Department 14

**21STCV33668**                                                      October 31, 2023
**GENARO JUAREZ vs CALMET SERVICES, INC., et al.**                    10:00 AM

Judge: Honorable Kenneth R. Freeman          CSR: None
Judicial Assistant: I. Arellanes             ERM: None
Courtroom Assistant: C. Gomez                Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s): Anthony C. Oceguera (via LACC)

Other Appearance Notes: For Plaintiff(s): Iona Levin (via LACC);

**NATURE OF PROCEEDINGS:** Hearing on Motion for Preliminary Approval of Settlement

The matter is called for hearing.

The Court has read and considered all documents in connection to the above entitled motion.

The Court and counsel confer regarding the motion.

The Plaintiff's Notice of Motion and Motion for Preliminary Approval of Class and Representative Action Settlement and Provisional Class Certification for Settlement Purposes Only filed by Genaro Juarez on 03/22/2023 is Granted. The granting of the motion is contingent upon the parties submitting the exemplar of the amended notice reflecting changes within ten (10) days.

Counsel is to submit forthwith a [Proposed] Order containing a calendar of events leading up to the final approval hearing and is to call the courtroom to obtain a final approval hearing date.

Notice is deemed waived.

---

Exhibit C

Electronically Received 05/30/2023 05:47 PM

1
2
3
4
5
6
7
8

**BIBIYAN LAW GROUP, P.C.**
David D. Bibiyan (SBN 287811)
*david@tomorrowlaw.com*
Diego Aviles (SBN 315533)
*diego@tomorrowlaw.com*
Vedang J. Patel (SBN 328647)
*vedang@tomorrowlaw.com*
Iona Levin (SBN 294657)
*iona@tomorrowlaw.com*
8484 Wilshire Boulevard, Suite 500
Beverly Hills, California 90211
Tel: (310) 438-5555; Fax: (310) 300-1705

Attorneys for Plaintiffs, on behalf of themselves
and all others similarly situated and aggrieved

**FILED**
Superior Court of California
County of Los Angeles

**08/17/2023**

David W. Slayton, Executive Officer / Clerk of Court

By: _____ T. Le _____ Deputy

9

10        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11    **FOR THE COUNTY OF LOS ANGELES – SPRING STREET COURTHOUSE**

12

13    DELVIN HINES, on behalf of himself and all
      others aggrieved,

14

15                    Plaintiff,

16                    v.

17    CONSTELLIS INTEGRATED RISK
      MANAGEMENT SERVICES, a Delaware
18    corporation; CENTERRA SERVICES
      INTERNATIONAL, INC., a Delaware
19    corporation; CENTERRA GROUP, LLC, a
      forfeited Delaware limited liability company;
20    MICHAEL CHANDLESS, an individual; and
      DOES 1 through 100, inclusive,
21

22

23                    Defendants.

24

|  |  |
|---|---|
| CASE NO.: 20STCV26962 | |
| [Assigned to the Hon. Christopher K. Lui in Dept. 76] | |
| [~~PROPOSED~~] **ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION AND REPRESENTATIVE ACTION SETTLEMENT AND CERTIFYING CLASS FOR SETTLEMENT PURPOSES ONLY** | |

25        This Court, having considered the Motion of plaintiffs Delvin Hines, Gerald Francel, Robert

26    Andrews, Steven Cueto, Eric Fleming, Robert Franco, Tracie Grove, Joshua Mcmichael, Leticia

27    Falcon, Viet Truong, Carlos Ulloa, and Daniel Lange (collectively, the "Plaintiffs") for Preliminary

28    Approval of the Class Action and Representative Action Settlement and Provisional Class

                                            1

Certification for Settlement Purposes Only ("Motion for Preliminary Approval"), the Declarations of David D. Bibiyan, Vedang J. Patel, Plaintiffs, and Jodey Lawrence, the Joint Stipulation re: Class Action and Representative Action Settlement (the "Settlement," "Settlement Agreement" or "Agreement"), the Notice of Proposed Class Action Settlement and Date for Final Approval Hearing ("Class Notice"), and other documents submitted in support of the Motion for Preliminary Approval, hereby **ORDERS, ADJUDGES AND DECREES THAT:**

1.    The definitions set out in the Settlement Agreement are incorporated by reference into this Order; all terms defined therein shall have the same meaning in this Order.

2.    The Court certifies the following settlement class ("Settlement Class," "Settlement Class Members" or "Class Members") for the purpose of settlement only: all current and former non-exempt, hourly-paid employees who worked in California for defendant Centerra Services International, Inc. ("CSI"), at any time during the period from May 28, 2016 through the earlier of: (1) 90 days after execution of the Agreement; or (2) the date the Court grants preliminary approval ("Class Period"), but expressly excludes anyone other than the Plaintiffs who, prior to the conclusion of the Class Period, has filed their own legal action alleging the same or similar claims as pled in the Action, although any excluded individuals may still be Aggrieved Employees under the terms of the Settlement Agreement and if so, such individuals will still be entitled to share in a pro-rata portion of the PAGA Payment and be bound to the PAGA releases in the Agreement. For any Settlement Class Members who worked for defendant Centerra Group, LLC ("CG"), that are part of the settlement class in *Duley v. Centerra Group, LLC* filed in Los Angeles County Superior Court, Case No. 19STCV31908 ("*Duley*") as defined therein, the Settlement shall have no effect on their rights to participate in and receive any settlement proceeds in *Duley* for which they might be eligible under the terms of the *Duley* settlement.

3.    The Court preliminarily appoints named plaintiffs Delvin Hines, Gerald Francel, Robert Andrews, Steven Cueto, Eric Fleming, Robert Franco, Tracie Grove, Joshua McMichael, Leticia Falcon, Viet Truong, Carlos Ulloa, and Daniel Lange as Class Representatives, and David D. Bibiyan and Diego Aviles of Bibiyan Law Group, P.C., as Class Counsel.

4.    The Court preliminarily approves the proposed class settlement upon the terms and

1    conditions set forth in the Settlement Agreement. The Court finds, on a preliminary basis, that the

2    settlement appears to be within the range of reasonableness of settlement that could ultimately be

3    given final approval by the Court. It appears to the Court on a preliminary basis that the settlement

4    amount is fair, adequate, and reasonable as to all potential class members when balanced against the

5    probable outcome of further litigation relating to liability and damages issues. It further appears that

6    extensive and costly investigation and research has been conducted such that counsel for the parties

7    at this time are reasonably able to evaluate their respective positions. It further appears to the Court

8    that the settlement at this time will avoid substantial additional costs to all parties, as well as the

9    delay and risks that would be presented by the further prosecution of the Action. It further appears

10   that the settlement has been reached as the result of intensive, non-collusive and arms-length

11   negotiations utilizing an experienced third-party neutral.

12       5.    The First Amended Complaint ("FAC"), attached to the Settlement Agreement as

13   Exhibit "A," is deemed filed on the date this order is signed.  The FAC is the "Operative Complaint"

14   in this Action. Defendants are deemed to generally deny all the allegations set forth in the FAC

15   pending final approval of the Settlement, without any need to file a separate answer to the FAC.

16       6.    The Court approves, as to form and content, the Class Notice that has been submitted

17   herewith.

18       7.    The Court directs the mailing of the Class Notice by first-class regular U.S. mail to

19   the Class Members in accordance with the procedures set forth in the Settlement Agreement. The

20   Court finds that dissemination of the Class Notice set forth in the Settlement Agreement complies

21   with the requirements of law and appears to be the best notice practicable under the circumstances.

22       8.    The Court hereby preliminarily approves the definition and disposition of the Gross

23   Settlement Amount of $1,025,000.00, which is inclusive of: attorneys' fees of up to thirty-five

24   percent (35%) of the Gross Settlement Amount, which, if not escalated pursuant to the Settlement

25   Agreement, amounts to $358,750.00, in addition to actual costs incurred of up to $50,000.00;

26   enhancement award of up to $10,000.00 to plaintiff Delvin Hines and $5,000.00 each to plaintiffs

27   Gerald Francel, Robert Andrews, Steven Cuoto, Eric Fleming, Robert Franco, Tracie Grove, Joshua

28   McMichael, Leticia Falcon, Viet Truong, Carlos Ulloa and Daniel Lange; costs of settlement

administration of no more than $7,950.00; and Private Attorneys' General Act of 2004 ("PAGA") penalties in the amount of $100,000.00, of which $75,000.00 (75%) will be paid to the Labor and Workforce Development Agency ("LWDA") and $25,000.00 (25%) to "Aggrieved Employees," defined as all non-exempt, hourly-paid employees of defendant CSI in California who received wages for hours worked during the period from May 11, 2019 through the earlier of: (1) 90 days after execution of the Agreement; or (2) the date the Court grants preliminary approval ("PAGA Period").

9.      The Gross Settlement Amount expressly excludes Employer Taxes, which will be paid separately and apart by Defendants on the wages portion of the Gross Settlement Amount.

10.     Within ten (10) business days following the occurrence of the Effective Date of the Settlement, Defendants shall remit payment of the Gross Settlement Amount (as the same may be escalated pursuant to the Agreement) and Employer Taxes to the Settlement Administrator pursuant to Internal Revenue Code section 1.468B-1 for deposit in an interest-bearing qualified settlement account ("QSA") with an FDIC insured banking institution, for distribution in accordance with the Agreement and the Court's Orders and subject to the conditions described in the Agreement.

11.     Class Member's "Workweek" shall mean the number of weeks that a Settlement Class Member or Aggrieved Employee (as applicable) was employed by and was paid wages for hours worked for defendant CSI in a non-exempt, hourly-paid position during the Class Period or PAGA Period (as applicable) in California, based on hire dates, re-hire dates (as applicable), and termination dates (as applicable).

12.     The Gross Settlement Amount is based on Defendants' representation that there were no more than 20,498 Workweeks worked through the mediation date. In the event that it is determined that the number of Workweeks worked by Class Members during the Class Period increases by more than 10%, or 2,050 Workweeks, then the Gross Settlement Amount shall be increased by one percent (1%) for every one percent (1%) increase in Workweeks over the 10% threshold. Thus, for example, if the number of Workweeks worked during the Class Period increases by 12%, or 2,460 Workweeks, for a total of 22,958 Workweeks (20,498 Workweeks + 2,460 Workweeks), then the Gross Settlement Amount shall be increased by 2%, or $20,500.00

4

($1,025,000.00 x .02), for an increased Gross Settlement Amount of $1,045,500.00 ($1,025,000.00 + $20,500.00).

13.    The Court deems Phoenix Settlement Administrators ("Phoenix" or "Settlement Administrator"), the Settlement Administrator, and payment of administrative costs, not to exceed $7,950.00, out of the Gross Settlement Amount for services to be rendered by Phoenix on behalf of the class.

14.    Within seven (7) calendar days after the Response Deadline, or soon thereafter, the Settlement Administrator shall provide counsel for the Parties with a declaration attesting to the completion of the notice process, including the number of attempts to obtain valid mailing addresses for and re-sending of any returned Class Notices, as well as the identities, number of, and copies of all Requests for Exclusion and Objections received by the Settlement Administrator, if any.

15.    Within twenty (20) business days after the Preliminary Approval Date, Defendants' Counsel shall provide the Settlement Administrator with information with respect to each Settlement Class Member and/or Aggrieved Employee, including his or her: (1) name; (2) last known address(es) currently in Defendants' possession, custody, or control; (3) last known telephone number(s) currently in Defendants' possession, custody, or control; (4) last known Social Security Number(s) in Defendants' possession, custody, or control; (5) the dates of employment (*i.e.*, hire dates, and, if applicable, re-hire date(s) and/or separation date(s)) for each Settlement Class Member and/or Aggrieved Employee; and (6) the Workweeks for each Settlement Class Member for the Class Period and Workweeks for each Aggrieved Employee for the PAGA Period, respectively ("Class List").

16.    The Settlement Administrator shall perform an address search using the United States Postal Service National Change of Address ("NCOA") database and update the addresses contained on the Class List with the newly-found addresses, if any.

17.    Within seven (7) calendar days, or soon thereafter, of receiving the Class List from Defendant, the Settlement Administrator shall mail the Class Notice in English and Spanish to the Settlement Class Members via first-class regular U.S. Mail using the most current mailing address information available.

18.     "Response Deadline" means the deadline for Settlement Class Members to mail any Requests for Exclusion, Objections, or Workweek Disputes to the Settlement Administrator, which is forty-five (45) calendar days from the date that the Class Notice is first mailed in English and Spanish by the Settlement Administrator, unless a Class Member's notice is re-mailed.  In such an instance, the Response Deadline shall be fifteen (15) calendar days from the re-mailing, or forty-five (45) calendar days from the date of the initial mailing, whichever is later, in which to postmark a Request for Exclusion, Workweek Dispute or Objection.  The date of the postmark shall be the exclusive means for determining whether a Request for Exclusion, Objection, or Workweek Dispute was submitted by the Response Deadline.

19.     Any Settlement Class Member may request exclusion from (*i.e.*, to "opt out" of) the Class Settlement by mailing a written request to be excluded from the Class Settlement ("Request for Exclusion") to the Settlement Administrator, postmarked on or before the Response Deadline. To be valid, a Request for Exclusion must be timely submitted and must include the following in writing: (1) the Class Member's name; (2) the Class Member's Social Security Number; (3) the Class Member's signature; and (4) a statement that the Class Member seeks to be excluded from the Settlement Class using the same or any other language standing for the proposition the Class Member seeks to be excluded from the Settlement Class: "Please exclude me from the Settlement Class in the *Hines v. Constellis Integrated Risk Management Services, et al.* matter.  I understand that by requesting exclusion, I will not participate in the class settlement and will not receive any money from the class settlement."

20.     Any Settlement Class Member who does not opt out of the Settlement Class by submitting a timely and valid Request for Exclusion will be bound by all terms of the Settlement, including those pertaining to the Class Released Claims, as well as any Judgment that may be entered by the Court if Final Approval of the Class Settlement is granted.

21.     Participating Class Members may object only to the Class Settlement; neither Participating Class Members nor PAGA Aggrieved Employees may object to the PAGA settlement. In order for any Settlement Class Member to object to this Class Settlement in writing, or any term of it, he or she must do so by mailing a written objection to the Settlement Administrator at the

1  address provided on the Class Notice, with such objection postmarked no later than the Response

2  Deadline.

3      22.     Settlement Class Members need not object in writing to be heard at the Final

4  Approval Hearing; they may object or comment in person at the hearing at their own expense.

5      23.     A Settlement Class Member cannot submit both a Request for Exclusion and an

6  objection. If a Settlement Class Member submits an Objection and a Request for Exclusion, the

7  Request for Exclusion will control and the Objection will be overruled.

8      24.     All papers filed in support of final approval, including supporting documents for

9  attorneys' fees and costs, shall be filed by _____.

10      25.     A Final Fairness and Approval Hearing shall be held with the Court on

11  _____ at ___:___ ___.m in Department 76 of the above-entitled Court to determine:

12  (1) whether the proposed settlement is fair, reasonable and adequate, and should be finally approved

13  by the Court; (2) the amount of attorneys' fees and costs to be awarded to Class Counsel; (3) the

14  amount of service award to the Class Representative; (4) the amount to be paid to the Settlement

15  Administrator; and (5) the amount to be apportioned to PAGA and/or paid to the LWDA and

16  Aggrieved Employees.

17      26.     Within seven (7) calendar days after payment of the full Gross Settlement Amount

18  and Employer Taxes by Defendants, or as soon thereafter as practicable, the Settlement

19  Administrator shall distribute Payments from the QSA for: (1) the Service Award to Plaintiffs as

20  approved by the Court; (2) the Attorneys' Fees and Cost Award to be paid to Class Counsel, as

21  approved by the Court; (3) the Settlement Administrator Costs, as approved the Court; (4) the

22  LWDA Payment, as approved by the Court; and (5) Individual PAGA Payments as approved by the

23  Court. The balance remaining shall constitute the Net Settlement Amount from which Individual

24  Settlement Payments shall be made to Participating Class Members, less applicable taxes and

25  withholdings.

26  / / /

27  / / /

28  / / /

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION AND
REPRESENTATIVE ACTION SETTLEMENT

27.    Any checks from this distribution shall remain valid and negotiable for one hundred eighty (180) calendar days after the date of their issuance. After expiration of the 180-day period, checks for such payments shall be cancelled and funds associated with such checks shall be transmitted to the California Controller's Office Unclaimed Property Fund, thereby leaving no "unpaid residue," subject to the requirements of California Code of Civil Procedure Section 384.

**IT IS SO ORDERED.**

Dated: _____08/17/2023_____

Christopher K. Lui / Judge

Judge of the Superior Court

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION AND REPRESENTATIVE ACTION SETTLEMENT

Exhibit D

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Spring Street Courthouse, Department 12

**23STCV08761**                                            December 14, 2023
**MACKENZIE ANNE THOMA vs VXN GROUP LLC, et al.**                          1:45 PM

Judge: Honorable Carolyn B. Kuhl          CSR: Celinda Aligada CSR# 13724
Judicial Assistant: L. M'Greene           ERM: None
Courtroom Assistant: M.Miro               Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Sarah Hannah Cohen LACourtConnect

For Defendant(s): Brad S Kane LACourtConnect

**NATURE OF PROCEEDINGS:** Order to Show Cause Re: Why this Court has Jurisdiction to Proceed; Initial Status Conference

The matter is called for hearing.

Pursuant to Government Code sections 68086, 70044, California Rules of Court, rule 2.956, and the stipulation of appearing parties, Celinda Aligada CSR# 13724, certified shorthand reporter is appointed as an official Court reporter pro tempore in these proceedings, and is ordered to comply with the terms of the Court Reporter Agreement. The Order is signed and filed this date.

The Court signs and files the Order re: Authorizing Electronic Service for Case Anywhere this date and a conformed copy is provided to Plaintiff's counsel via e-mail.

If there are unresolved issues, a JOINT request for Court guidance shall be posted on the electronic service message board.

The Court requires a pre-motion conference prior to any motion being filed. A joint request may be posted on the message board.

The Court will allow plaintiff to file a Motion to Lift the Stay.

The Court stays the case in it's entirety pending determination in Federal Court of the claims pending there.

A Joint Status Report re: Status of Federal Case is to be filed by 4/29/2024.

Non-Appearance Case Review re: Filing of the Joint Status Report re: Status of Federal Case is scheduled for 05/02/2024 at 04:30 PM in Department 12 at Spring Street Courthouse.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Spring Street Courthouse, Department 12

**23STCV08761**                                                                December 14, 2023
**MACKENZIE ANNE THOMA vs VXN GROUP LLC, et al.**                               1:45 PM


Judge: Honorable Carolyn B. Kuhl              CSR: Celinda Aligada CSR# 13724
Judicial Assistant: L. M'Greene               ERM: None
Courtroom Assistant: M.Miro                   Deputy Sheriff: None

---

The Court finds that the following cases, 23STCV08761 and 23STCV16142, are related within the meaning of California Rules of Court, rule 3.300(a). 23STCV08761 is the lead case. For good cause shown, said cases are assigned to Judge Carolyn B. Kuhl in Department 12 at Spring Street Courthouse for all purposes.

Plaintiff is to provide notice.