**BIBIYAN LAW GROUP, P.C.**
David D. Bibiyan (SBN 287811)
*david@tomorrowlaw.com*
Jeffrey D. Klein (SBN 297296)
*jeff@tomorrowlaw.com*
Sarah H. Cohen (SBN 330700)
*sarah@tomorrowlaw.com*
8484 Wilshire Boulevard, Suite 500
Beverly Hills, California 90211
Tel: (310) 438-5555; Fax: (310) 300-1705

Attorneys for Plaintiff MACKENZIE ANNE THOMA, a.k.a KENZIE ANNE

# IN THE UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MACKENZIE ANNE THOMA, a.k.a KENZIE ANNE, on behalf of herself and all others similarly situated employees,<br><br>Plaintiffs,<br><br>v.<br><br>VXN GROUP LLC, a Delaware limited liability company; STRIKE 3 HOLDINGS, LLC, a Delaware limited liability company; GENERAL MEDIA SYSTEMS, LLC, a Delaware limited liability company; MIKE MILLER, an individual; and DOES 1 to 100, inclusive,<br><br>Defendants, | CASE NO.: 2:23-cv-04901-WLH<br><br>[*Assigned to the Hon. Wesley L. Hsu*]<br><br>**JOINT RULE 26(f) REPORT**<br><br>Date: February 9, 2024<br>Time: 1:00pm<br><br>Trial Date: None Set |

Plaintiff Mackenzie Anne Thoma ("Plaintiff"), an individual and on behalf of all others similarly situated, and Defendants VXN GROUP, LLC; STRIKE 3

Law Offices of
BIBIYAN LAW GROUP
A Professional Corporation
1801 Century Park East, Suite 2600
Los Angeles, CA 90067-2328
(310) 438-5555

1
PARTIES' JOINT RULE 26(f) REPORT AND DISCOVERY PLAN

HOLDINGS, LLC; GENERAL MEDIA SYSTEMS, LLC; and MIKE MILLER ("Defendants") (hereby referred to collectively as "the Parties"), by and through their counsel, submit the following Joint Report regarding the results of their conference:[1]

## I. FEDERAL RULE OF CIVIL PROCEDURE RULE 26(f) DISCOVERY PLAN

### A. Statement of the Case

#### 1. Plaintiff's Position

Plaintiff contends that Defendants have policies and/or practices that caused, and continue to cause, Plaintiff and putative class members, at times, to fail to receive all overtime and minimum wages owed to them by Defendants. These policies include misclassifying Plaintiff and putative class members as independent contractors when in actuality they are employees. Plaintiff also contends that Defendants failed at times to make available to non-exempt employees timely, uninterrupted 30-minute meal periods for every five (5) hours of work, and paid, timely, uninterrupted rest periods every four (4) hours or major fraction thereof, and, that Defendants, in those instances, failed to provide compensation in lieu thereof to Plaintiff and putative class members. Plaintiff also contends that Plaintiff and employees were not paid for all wages earned at every single hour spent under the control of Defendants.

Plaintiff further alleges that, as a result of these unlawful practices, they and other non-exempt employees were, at times, either issued inaccurate wages statements or not furnished any wage statements whatsoever, and, at times, were not compensated for all wages due immediately upon termination or within 72 hours of resignation, and were not indemnified for work-related expenses  Plaintiff also contends that Defendants' above-referenced acts and/or omissions, at times, provided

---

[1] The parties drafted this joint report based on the Court's January 5, 2024 Tentative Ruling. To the extent this Court's ultimate ruling differs, the parties reserve the right to supplement or modify their positions.

them with an unfair advantage over other businesses that complied with California's wage-and-hour laws.

### 2. Defendants' Position

On April 20, 2023, Plaintiff filed this putative class action alleging 9 Labor Code violations in the *adult film industry*[2] and a derivative claim under the Unfair Competition Law ("UCL"). On June 21, 2023, Defendants removed this action to the Central District Court of California, Case No.: 2:23-cv-04901 WLH (AGRx) ("Federal Class Action").

On July 11, 2023, Plaintiff filed a *related* state action alleging that Defendants violated identical Labor Code violations under the California Private Attorney General Act ("PAGA") without filing the required Notice of Related Case. To conserve judicial resources, Defendants requested Plaintiff consolidate her identical claims in one case or stay the state court actions pending resolution of the Federal Class Action to: (i) conserve the Court and the parties' scarce resources; and (ii) prevent conflicting and inconsistent rulings. Plaintiff refused to do so.

On August 30, 2023, this Court: (i) granted Defendants' motion to dismiss, with leave to amend; and (ii) granted, in part, Plaintiff's motion to remand, remanding only her UCL claim back to state court.

During a December 14, 2023 hearing in Los Angeles County Superior Court, based on considerations of comity between state and federal courts, Judge Carolyn Kuhl, overseeing the remanded UCL claim, related Plaintiff's UCL action with Plaintiff's PAGA action, took all pending motions off calendar, and stayed both state court actions. Judge Kuhl set a May 2, 2024 non-appearance case review, indicating

---

[2] Plaintiff's FAC alleges:

> In November of 2020, [Plaintiff] signed a contract with Defendants, known widely as "Vixen Media Group", with her entry into the *adult film industry* occurring on or around April 30, 2021.

[**Dkt. 26 at 4:25-27**] (Emphasis added.)

that this Court's factual determinations may have preclusive effect on Plaintiff's state actions. After Plaintiff vigorously objected to this procedure, Judge Kuhl authorized Plaintiff to file a motion for relief from stay, which has not been filed to date.

On January 5, 2024, the Court held oral argument on: (i) the Anti-SLAPP Defendants' Motion to Dismiss; and (ii) Defendants' Motion to Dismiss the FAC. During oral argument, the Court commented it would not address the application of Wage Order No. 12-2001 regulating the "Motion Picture Industry" ("Wage Order 12") without discovery, while acknowledging the "likely outcome" that Wage Order 12 would apply.

As a result, Defendants' position is that to conserve judicial and party resources, this Court should decide two preliminary issues prior to broader discovery related to liability, damages, and class certification. Specifically, Defendants request this Court limit phase I discovery and motion practice to the issues of: (i) whether Plaintiff is properly classified as an employee or independent contractor; and (ii) whether application of Wage Order 12 bars Plaintiff's remaining claims.

### B. Legal Issues

#### 1. Plaintiff's Position

Plaintiff contends that Defendants misclassified Plaintiff and putative class members as independent contractors when in actuality they were non-exempt employees. Defendants exerted a level of control over Plaintiff and putative class members such that an employee-employer relationship was formed.

Plaintiff also contends that Plaintiff and employees do not fall under the professional actor's exemption in Wage Order 12. Plaintiff and putative class members spent most of their time as employees for Defendants as models, modeling, not acting, for the shoots controlled and undertaken by Defendants.

#### 2. Defendants' Position

Two preliminary issues will likely dictate the outcome of this case and the two related and stayed state court actions. First, is Plaintiff properly classified as an

employee or independent contractor? If Plaintiff was an independent contractor (using her loan out company for purposes of obtaining tax advantages)[3] or estopped from asserting that she is an employee, then Plaintiff's class action (and related state court actions) would be dismissed.

Second, even assuming Plaintiff was employed as a *professional actor*, Wage Order 12 bars Plaintiff's remaining claims. Specifically, Wage Order 12 exempts employers of professional actors from overtime, meal periods, rest periods and wage statement requirements. To argue that Plaintiff's employment was governed by Wage Order 4-2001 Regulating Professional, Technical, Clerical Mechanical and Similar Occupations ("Wage Order 4"), Plaintiff ignores the following three established and dispositive legal principles:

    (i)    an occupational order [only applies] when the business at issues is not covered by another industry order;
    (ii)   the main purpose of the business, not the job duties of the employee, determines which wage order applies in any given case;
    (iii)  for Plaintiff's modeling to be under a separate wage order, Plaintiff must prove her modeling was: (a) under separately organized management at all levels; and (b) operated for different business purposes.

**C.**   **Parties, Evidence, etc.:**

1.   Plaintiff's Position

    A. *Parties*

Plaintiff believes that the Complaint properly names Defendants. Defendants suggest that Defendants STRIKE 3 HOLDINGS, GENERAL MEDIA SYSTEMS,

---

[3] "A loan-out corporation is a legal fiction employed for the financial benefit of successful artists and entertainers. It is a duly organized corporation, typically wholly owned by an artist, the sole function of which is to 'loan out' the services of the artist-owner to producers and other potential employers." Aaron J. Moss & Kenneth Basin, *Copyright Termination and Loan–Out Corporations: Reconciling Practice and Policy,* 3 Harv. J. Sports & Ent. L. 55, 72 (2012). The form offers "limited personal liability and beneficial tax treatment." *Id. Boxxoi v. Emi Group, Ltd.*, 811 F.3d 1144, 1147 (9th Cir. 2016).

5

LLC, and MIKE MILLER are improperly named. Plaintiff reserves the right to add any potential additional parties as new information becomes available.

### B. *Time and Payroll Records*

It is vital that Plaintiff obtain discovery of Defendants' time and payroll records to support the filing of Plaintiff's Motion for Class Certification ("MCC"). First, matching of time and payroll records are essential for Plaintiff to certify a class in connection with their allegations that Plaintiff and similarly situated employees experienced underpaid minimum and overtime wages. Second, matching time and payroll records are essential to certify a class in connection with Plaintiff's allegations that Plaintiff and similarly situated employees were not provided with compliant lunch periods and/or compensation in lieu thereof. Finally, Plaintiff requires the production of wage statements to show that Plaintiff and similarly situated employees were not provided with accurate, itemized wage statements.

### C. *Personnel Files*

It is crucial for Plaintiff to be able to review class members' personnel files to support the MCC.

### D. *Declarations from Putative Class Members*

It is imperative that Plaintiff contact putative class members and obtain declaration testimony to support the allegations in Plaintiff's operative pleading that Defendants' practices resulted in failure to provide wages, including the allegation in Plaintiff's Complaint that employees were routinely permitted, engaged, or suffered to work off-the-clock, particularly through lunch periods in violation of California law. Plaintiff will request the names and contact information for putative class members so that she may contact them and obtain declarations to support her claims that Defendants' practices alleged by Plaintiff are typical of those experienced by Plaintiff, common to all putative class members, that numerosity is met, etc. Plaintiff believes the information can be provided promptly using, at most, a protective order if Defendant prefer. Plaintiff is also amenable to utilizing a *Belaire-West* opt-out

notice procedure, but this would significantly extend the amount of time necessary to prepare for the filing of a MCC, and thus Plaintiff would request additional time for the MCC filing should the *Belaire-West* procedure be utilized.

### E. *Written Policies*

Plaintiff will serve written discovery for Defendants' wage-and-hour policies in effect during the Class Period. This information is crucial in order to show that Plaintiff and putative class members were in fact misclassified.

### F. *Expert Declaration(s)*

It will likely take an expert weeks, at minimum, to review all the information provided to determine, for instance, if failure to pay premium wages for non-complaint meal periods, as alleged in Plaintiff's complaint, occurred systematically. The analysis will likely include how many lunch periods taken were under thirty minutes in length and how much under thirty minutes (*i.e.,* how often was the lunch taken 9 minutes in length and how often was it 29 minutes in length.) The analysis will likely include how often lunches were taken after the fifth hour of work and tenth hour of work. It will include an analysis of how many shifts are above 5 hours in length, 6 hours in length, 10 hours in length, and 12 hours in length (*i.e.*, to determine how much lunch periods should have been taken pursuant to California Labor Code section 512 and taking into account potential arguments that lunch periods were waived by employees). And, of course, there may be other issues in the information provided that may require amendment of the pleadings and further written discovery and/or interaction with putative class members.

In addition, due to formatting of documents provided or based on unexpected findings, interactive efforts between Plaintiff's counsel and the expert(s) is often necessary, which can be lengthy. And, finally, when the analysis is completed, it will take time for the expert(s) to provide declaration testimony to be included with the MCC.

### G. *Shoot Information*

Plaintiff will also require information for all of the shoots performed by Defendants. For example, Plaintiff will require to know if the shoots were mainly photographic or filmed, required to know if there were acting coaches on set, if there were actual directors giving employees lines, the amount of lines Plaintiff and putative class members were expected to read, and if directors coached Plaintiff and putative class members in scenes. This information is crucial in determining whether Wage Order 12 and the professional actors exemption applies.

### H. *Person(s) Most Knowledgeable Deposition(s)*

Once Plaintiff receives written policies, time and payroll documents, expert analysis, and Declarations from putative class members, it will be vital for Plaintiff to depose the Person(s) Most Knowledgeable on certain categories for Defendant.

### 2. Defendants' Position

#### A. *Parties*

The only properly named Defendant is VXN Group, LLC ("VXN"), and that the Court's January 5, 2024 Tentative Ruling properly dismissed the other three defendants.

#### B. *Evidence Required in Phase I of Discovery.*

During the January 5, 2024 hearing, the Court appeared receptive to a phased approach to discovery given the *likely outcome* that Wage Order 12 applies. Specifically, Defendants request this Court limit phase I discovery and motion practice to the issues of whether: (i) Plaintiff properly classified as an employee or independent contractor; and (ii) even if Plaintiff is an employee, does Wage Order 12 bar Plaintiff's remaining claims.

A phased approach would lessen the burden on parties by avoiding the need to produce the massive amount of documentary evidence requested by Plaintiff until the second or class certification phase. Significantly, VXN produces a new film nearly every business day and complying with Plaintiff's documentary requests would cost hundreds of thousands of dollars given VXN has produced approximately 1,000 films

during the class period and continues to produce about 1 film per business day. VXN anticipates that gathering the documentation sought by Plaintiff for all persons who performed film-related services would cost VXN hundreds of thousands of dollars before considering redaction costs to protect third party privacy.

Similarly, a phased approach would lessen the burden on the Court by obviating the need to decide discovery-related motions for document production that may ultimately be irrelevant and unnecessary. Further, Plaintiff should not be permitted to seek discovery on claims that are no longer at issue.

To answer the two preliminary questions, Defendants propose that the first phase of discovery be limited to the following areas:

   i. Documents and communications exchanged between: (i) Plaintiff, her representatives, and loan out companies;

   ii. Documents and communications related to Plaintiff's direction of payment and compensation to herself or affiliated entities;

   iii. Documents and communications related to whether Plaintiff's modeling for VXN was: (a) under separately organized management at all levels; and (b) operated for different business purposes.

   iv. Plaintiff's and third-party depositions regarding the preliminary issues.

### C. Evidence Required in Phase II of Discovery.

The Phase II discovery imposes severe burdens on Defendants to produce and redact essentially all documents related to the production of over 1,000 films. Worse, given the death threats, stalkers and other issues faced by adult performers, professional actors could face significant risk and harm, as well as harassment to themselves and their families, if their true identities are disclosed. Indeed, Defendants' male professional actors who have performed in movies featuring interracial casting have faced actual and serious death threats. If their true names and addresses become known to the public, they will very likely become targets. Defendants do not want any of its professional actors to face harm from this lawsuit.

Finally, if the Court wishes additional briefing on these issues, Defendants will file appropriate motions for protective orders.

### F. Insurance

1. Plaintiff's Position

Plaintiff is not aware of any relevant insurance policy.

2. Defendants' Position

Defendants are not aware of any relevant insurance policy.

### G. Manual for Complex Litigation

1. Plaintiff's Position

Plaintiff believes a manual for complex litigation is unnecessary at this time.

2. Defendant's Position

Defendants believe a manual for complex litigation is unnecessary at this time.

### H. Motions

1. Plaintiff's and Defendants' Position

There currently no pending motions. However, the Parties are waiting for this Court's final ruling on Defendants' Anti-SLAPP and Motion to Dismiss Plaintiff's First Amended Complaint.

### I. DISPOSITIVE MOTIONS

1. Plaintiff's Position

Plaintiff does not anticipate filing any dispositive motions at this time.

2. Defendants' Position

Defendants anticipate filing motions for summary judgment or adjudication on: (i) whether Plaintiff was an employee or independent contractor; and (ii) whether Wage Order 12 applies.

Defendants propose filing their Phase I summary judgement/adjudication motions on or before July 1, 2024.

### J. Status of Discovery

1. Plaintiff's Position

The Parties have not yet propounded discovery. Plaintiff intends to propound written discovery requests, notice depositions, and engage in expert discovery.

2. Defendants' Position

The Parties have not yet propounded discovery in this action.[4] Defendants contend that phased discovery that is, at first, limited to potentially dispositive issues will reduce the burden on the Court and the Parties.

**K.      Discovery Plan, Rule 26(f)(3)(A)-(F)**

1. Plaintiff's Position

a) What Changes Should Be Made to Timing, Form, or Requirement of Disclosures Under Rule 26(a)

The Parties will provide initial disclosures following the deadline set forth in Fed. Rule Civ. P. 26(f)(1).

b) Subjects of Discovery

Plaintiff will propound discovery requests into areas related to Class Member contact information, time and attendance records, wage statements, as well as Defendants' policy and procedures in relation to the wage and hour claims at-issue in Plaintiff's case, including but not limited to, policies and procedures pertaining to unpaid wages, non-provision of meal and rest periods, and failure to provide accurate wage statements. Discovery will also be made into Defendants' defenses to Plaintiff's claims, including Defendants' claim that they had procedures compliant with the California Labor Code. Plaintiff will also provide discovery requests to inquire into Defendants' claim that Wage Order 12 and the professional actors' exemption in Wage order 12 apply in this case. The above is not an exhaustive list of the discovery Plaintiff will undertake.

///

---

[4] Plaintiff has propounded a massive amount of discovery in the stayed PAGA action.

c) Phases of Discovery

Plaintiff does not believe that discovery needs to be conducted in phases. To the extent that Court would order phased discovery, Plaintiff proposes that phase one discovery should focus on issues related to class certification, and phase two will focus on merits discovery.

d) Changes on Limitations to Discovery

Plaintiff does not propose any changes to discovery limits at this time.

2. Defendant's Position

a) What Changes Should Be Made to Timing, Form, or Requirement of Disclosures Under Rule 26(a)

Defendants believe that the initial disclosures should be made in phases to avoid unnecessary cost and expense. Phase I disclosures should be limited to whether: (i) Plaintiff was properly classified as an employee or independent contractor; and (ii) even if Plaintiff is an employee, does Wage Order 12 bar Plaintiff's remaining claims. Phase I discovery should conclude on July 1, 2024.

Two weeks after the Phase I summary judgment motions are decided by the Court, Phase II initial disclosures would address all remaining issues including class certification.

b) Subjects of Discovery

Defendants believe that the subjects of phase I discovery should be limited to whether: (i) Plaintiff properly classified as an employee or independent contractor; and (ii) even if Plaintiff is an employee, does Wage Order 12 bar Plaintiff's remaining claims.

c) Phases of Discovery

Discovery should be phased. Phase I should be narrowly focused on whether: (i) Plaintiff is an employee or independent contractor; and (ii) whether Wage Order 12 or 4 applies. The answers to these preliminary questions will determine the scope of subsequent phases of discovery and how class certification will proceed, if

at all.

Phase II of discovery should begin two weeks after the Court decides the Phase I summary judgment/adjudication motions.

### d) Changes on Limitations to Discovery

Defendants propose limiting discovery, so that it occurs in the phases outlined above.

**L.     Expert Discovery**

1. Plaintiff's Position:

Plaintiff believes disclosures under Fed. Rule Civ. P. 26(a)(2) should be completed by the deadlines set forth in the Federal Rules of Civil Procedure, and/or per the above detailed schedule.

2. Defendants' Position

Provided that the Court orders discovery take place in phases as outlined above, Defendants believe disclosures under Fed. Rule Civ. P. 26(a)(2) should be completed in each phase by the deadlines set forth in the Federal Rules of Civil Procedure.

**M.     Settlement Conference/ Alternative Dispute Resolution ("ADR")**

1. Plaintiff's Position

Plaintiff is agreeable to private mediation as the preferred ADR procedure so long as Defendants agree to exchange the informal discovery necessary for a meaningful mediation.

2. Defendants' Position

Defendants are amendable to a private mediation once the two preliminary issues are decided: (i) whether Plaintiff was properly classified as an employee or independent contractor; and (ii) even if Plaintiff is an employee, does Wage Order 12 bar Plaintiff's remaining claims.

Defendants are also amenable to a private arbitration via ADR if the Parties' previous agreements to arbitrate this dispute are enforceable.

///

**N.     Trial Estimate**

1. Plaintiff's Position

Plaintiff believes that it is premature to estimate the trial length at this time, as Plaintiff intends to first file the MCC. To the extent a trial estimate is necessary at this time, Plaintiff estimates 10-15 days, with trial by jury. Plaintiff estimates calling no less than ten witnesses. The estimated length of time is appropriate for a class action wage and hour case, which involves the testimony of numerous witnesses.

2. Defendants' Position

Defendants agree that it is premature to estimate the trial length without first addressing the preliminary issues. For trial on the preliminary issues, in the event the Court denies Defendants' motions for summary judgment/adjudication, Defendants estimate that a jury trial may take 5 days, and a bench trial may take 3 days, although it is difficult to estimate the scope of the factual issues to be decided at trial at this time.

**O.     Trial Counsel**

1. Plaintiff's Trial Counsel

   1. Jeffrey D. Klein
   2. David D. Bibiyan
   3. Sarah H. Cohen

2. Defendants' Trial Counsel

   1. Brad Kane
   2. Eric Clopper
   3. Trey Brown

**P.     Magistrate Judge**

1. Plaintiff's Position:

Plaintiff does not consent to a magistrate judge at this time.

2. Defendants' position

Defendants do not consent to a magistrate judge at this time.

**Q.     Independent Expert or Master**

1. Plaintiff's Position

Plaintiff does not believe that it is necessary for the Court to appoint a master pursuant to Rule 53 or an independent scientific expert.

2. Defendants' Position

Defendants do not believe that it is necessary for the Court to appoint a master pursuant to Rule 53 or an independent scientific expert.

**R.     Schedule Worksheet**

1. Plaintiff's Schedule Worksheet

Plaintiff sent Defendants a Worksheet Schedule. The Parties are generally agreeable to all dates in the Worksheet. However, Plaintiff is opposed to Defendants proposed phased discovery schedule.

2. Defendants' Schedule Worksheet

Defendants agree to the overall dates on the scheduling worksheet. Within the existing scheduling worksheet, Defendants propose:

(i)     Phase I initial disclosures are due two weeks after the Court enters the scheduling order;

(ii)    Phase I discovery concludes on July 1, 2024; and

(iii)   Phase I summary judgment/ adjudication motions must be filed on or before July 1, 2024.

Two weeks after the Court rules on the Phase I dispositive motions, Phase II initial disclosures are due and Phase II discovery opens.

**S.     Class Actions**

1. Plaintiff's Position

Plaintiff will file a MCC, and request that any deadline for the filling of a MCC should be set for at least one year from the date of the Scheduling Conference. However, if the Parties decide to attend private mediation, then the deadline for filing the MCC should instead be set one year from the date of the mediation.

Plaintiff proposes that the opposition should be filed three weeks after the filing of the MCC, with the reply to be filed two weeks after the filing of the opposition.

2. Defendants' Position

Defendants agree that the time for filing Plaintiff's Motion for Class Certification ("MCC") should be at least one year from the issuance of the scheduling order. Further, Defendants' Opposition Brief should be due 6 weeks after Plaintiff's MCC, and Plaintiff's Reply Brief should be due 4 weeks after Defendants' Opposition.

**T.    Other Issues**

**1.** Plaintiff's Position:

None at this time.

2. Defendants' Position

None at this time.

Dated:  January 26, 2024           BIBIYAN LAW GROUP, P.C.


                                   By:    /s/ Sarah H. Cohen
                                          David D. Bibiyan
                                          Jeffrey D. Klein
                                          Sarah H. Cohen
                                          Rafael Yedoyan
                                          Attorneys for Plaintiff Mackenzie Anne
                                          Thoma, individually and on behalf of
                                          all similarly situated employees

[SIGNATURES CONTINUED ON FOLLOWING PAGE]

Dated: January 26, 2024

By:   <u>*/s/Eric Clopper*</u>
      Brad S. Kane
      Eric Clopper
      Trey Brown
      Attorneys for Defendants VXN GROUP, LLC; STRIKE 3 HOLDINGS, LLC; GENERAL MEDIA SYSTEMS, LLC; and MIKE MILLER

JUDGE WESLEY L. HSU

## SCHEDULE OF PRETRIAL AND TRIAL DATES WORKSHEET
## FOR CLASS ACTIONS

*Please complete this worksheet jointly and file it with your Joint Rule 26(f) Report.*
*The Court ORDERS the parties to make every effort to agree on dates.*

| Case No. | Case Name: | | |
|---|---|---|---|
| **Trial and Final Pretrial Conference Dates** | | **Parties' Joint Date mm/dd/yyyy** | **Court Order** |
| Check one: ☐ Jury Trial or ☐ Court Trial ☐ Magistrate Judge (**_Tuesday_** at 9:00 a.m., within 18 months of Scheduling Conference) Estimated Duration:     Days | | | Jury Trial Court Trial |
| Final Pretrial Conference ("FPTC") [L.R. 16] (**_Friday_** at 3:00 p.m., at least 18 days before trial) | | | |
| **Event** [1] **Note:** Hearings shall be on **_Fridays_** at 1:30pm Other dates can be any day of the week | **Weeks Before FPTC**[2] | **Parties' Joint Date mm/dd/yyyy** | **Court Order** |
| Last Date to Hear Motion to Amend Pleadings / Add Parties [Friday] | | | |
| Last Date to Hear Motion for Class Certification [Friday] | 28 | | |
| Fact Discovery Cut-Off (No later than deadline for filing dispositive motion) | 18 | | |
| Expert Disclosure (Initial) | 16 | | |
| Expert Disclosure (Rebuttal) | 14 | | |
| Expert Discovery Cut-Off | 14 | | |
| Last Date to Hear Motions<br>• Rule 56 Motion due at least 6 weeks before hearing;<br>• Opposition due 2 weeks after motion is filed before hearing;<br>• Reply due 1 week after Opposition is filed | 12 | | |
| Last Date to Hear *Daubert* Motions | 8 | | |
| Deadline to Complete Settlement Conference [L.R. 16-15] *Select* one:  1. Magistrate Judge *(with Court approval)* 2. Court's Mediation Panel 3. Private Mediation | 5 | | 1. Mag. J. 2. Panel 3. Private |
| **Trial Filings (first round)**<br>• Motions *In Limine* (except *Daubert*)<br>• Memoranda of Contentions of Fact and Law [L.R. 16-4]<br>• Witness Lists [L.R. 16-5]<br>• Joint Exhibit List [L.R. 16-6.1]<br>• Joint Status Report Regarding Settlement<br>• Proposed Findings of Fact and Conclusions of Law [L.R. 52] (court trial only)<br>• Declarations containing Direct Testimony, if ordered (court trial only) | 4 | | |
| **Trial Filings (second round)**<br>• Oppositions to Motions in Limine<br>• Joint Proposed Final Pretrial Conference Order [L.R. 16-7]<br>• Joint/Agreed Proposed Jury Instructions (jury trial only)<br>• Disputed Proposed Jury Instructions (jury trial only)<br>• Joint Proposed Verdict Forms (jury trial only)<br>• Joint Proposed Statement of the Case (jury trial only)<br>• Proposed Additional Voir Dire Questions, if any (jury trial only)<br>• Evidentiary Objections to Declarations. of Direct Testimony (court trial only) | 2 | | |

1  Once issued, this "schedule may be modified only for good cause and with the judge's consent."
Fed. R. Civ. P. 16(b)(4).

2 The numbers below represent the Court's recommended timeline.