UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MACKENZIE ANNE THOMA, a.k.a. KENZIE ANNE, an individual and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VXN GROUP LLC, a Delaware limited liability company; STRIKE 3 HOLDINGS, LLC, a Delaware limited liability company; GENERAL MEDIA SYSTEMS, LLC, a Delaware limited liability company; MIKE MILLER, an individual; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 2:23-cv-04901-WLH-AGR<br><br>**ORDER RE MOTION TO DISMISS [33] AND MOTION TO STRIKE [38]** |

Defendants VXN Group LLC ("VXN"), Strike 3 Holdings, LLC ("Strike 3"), General Media Systems, LLC ("General Media"), and Mike Miller (collectively, "Defendants") filed a Motion to Dismiss the First Amended Complaint. ("Motion to Dismiss," Docket No. 33). Strike 3, General Media, and Mike Miller (collectively, "Anti-SLAPP Defendants") also filed a Motion to Strike pursuant to California Code of Civil Procedure section 425.16. ("Anti-SLAPP Motion," Docket No. 38). For the

reasons set forth below, the Motion to Dismiss is **GRANTED** in part and **DENIED** in part. The Anti-SLAPP Motion is **DENIED**.

I. BACKGROUND

   A. **Procedural History**

Plaintiff Mackenzie Anne Thoma ("Plaintiff") filed this action in California Superior Court on April 20, 2023, on behalf of herself and others similarly situated. (*See generally* Notice of Removal, Docket No. 1). Plaintiff alleged in the original complaint that Defendants were jointly liable for violating various sections of the California Labor Code and California's Unfair Competition Law ("UCL, Cal. Bus. & Prof. Code § 17200, *et seq.*) by failing to, *inter alia*, pay minimum and overtime wages, provide meal periods and rest periods, furnish accurate wage statements, pay for vested vacation time, and timely pay final wages at termination. (*Id.*). Plaintiff alleged that "[f]or at least three (3) years prior to the filing of this action and continuing to the present, Defendants have, at times, failed to pay Plaintiff and Class Members, or some of them, the full amount of their wages owed to them upon termination and/or resignation," including "overtime wages, minimum wages, premium wages, and vacation pay pursuant to Labor Code section 227.3." (*Id.* ¶ 26). Plaintiff also sought penalties from Defendants for misclassifying her and other class members as independent contractors. (*Id.* ¶ 6; 113(I)).

Defendants removed the action to federal court pursuant to the Class Action Fairness Act ("CAFA"), codified in relevant part at 28 U.S.C. §§ 1332, 1441(a), 1446, and 1453. Defendants then filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Mot. to Dismiss, Docket No. 9). While Defendants' motion to dismiss was still pending, Plaintiff filed a motion to remand the action to state court. (Mot. to Remand, Docket No. 13). The Court severed the tenth UCL claim for unpaid wages and remanded it to state court, but otherwise denied the motion to remand. (Order, Docket No. 23 at 9−10). The Court granted the motion to dismiss with leave to amend. (*Id.* at 14).

1  Plaintiff then filed a First Amended Complaint. ("FAC," Docket No. 26).
2  Defendants moved to dismiss the FAC. ("Motion to Dismiss," Docket No. 33).[1]
3  Three defendants—Strike 3, General Media, and Mike Miller (collectively, the "Anti-
4  SLAPP Defendants")—also moved to strike allegations in the FAC pursuant to
5  California Code of Civil Procedure section 425.16.

### B.  Factual Background[2]

Plaintiff is an adult film actor and model. (FAC, Docket No. 26 ¶¶ 7, 8). The FAC alleges that Defendants cause their employees—including Plaintiff and the putative class—to follow policies that violate California wage and hour laws. (*Id.* ¶ 19). Plaintiff claims that Defendants (VXN, Mike Miller, Strike 3, and General Media) should be liable—either jointly or directly (*see id.* ¶ 22(A)−(F))—for the alleged violations of California's labor code. (*Id.* at 17−32).

VXN employed Plaintiff and the putative class. (*See id.* ¶ 19 (referring to VXN's employees)). VXN, together with the other Defendants, required its actors and models to sign performance agreements and conform with workplace policies that allegedly violated California wage and hour laws. (*Id.* ¶ 3). Namely, Plaintiff alleges that while employed by VXN, she and putative class members were misclassified as independent contractors, (*id.* ¶ 38), never compensated for overtime payments, (*id.* ¶ 65), not paid minimum wage, (*id.* ¶ 81), denied meal breaks as they were constantly "on duty," (*id.* ¶ 87), "never provided with Code compliant rest break periods," (*id.* ¶ 100), not paid all wages due and owing upon termination, (*id.* ¶ 110), "at times" denied accurate wage statements, (*id.* ¶ 119), denied timely pay, (*id.* ¶ 127), and not

---

[1] The Court granted Defendants' request for an extension of their response deadline and deemed the Motion to Dismiss to be timely filed. (Order, Docket No. 36). As a result, Plaintiff's arguments that Defendants' meet and confer efforts were untimely, (Opp'n, Docket No. 35 at 6−7), are moot.
[2] The Court takes the First Amended Complaint's allegations to be true for purposes of this Order.

reimbursed for work-related expenses including grooming and fitting costs. (*Id.* ¶ 133).

Miller is the "founder, principal, and the Executive Producer of VXN [Group]." (*Id.* ¶ 12). He played "an active role in the enforcement and creation of the policies and procedures set in place by VXN [Group]," according to the FAC. (*Id.*). Specifically, the FAC alleges Miller "is engaged in the decisions to hire Plaintiff" and the putative class members, to terminate their contracts, and to decide their compensation. (*Id.* ¶ 18). Miller "directly created the policies and procedures put forth by VXN…" and often "reprimanded Plaintiff and [the putative class] for not complying with VXN Group's policies and procedures." (*Id.*) He was also allegedly "physically present during many modeling shoots and on filming days and had a direct role in directing the scenes and choosing outfits…" (*Id.* ¶ 12).

Strike 3, the FAC claims, "serves as the parent company for VXN [Group]," and "owns, distributes, and produces pornographic films, images, and materials created" by the same. (*Id.* ¶ 13). Strike 3 is also "the copyright holder" of VXN's films, photographs, "and other materials." (*Id.*). Strike 3, the FAC says, "maintains a level of control over VXN [Group] and its employees…where the policies and procedures of VXN Group" are truly the policies and procedures of Strike 3 as well. (*Id.* ¶ 19). Strike 3 allegedly "exercise[s] control over VXN Group and Miller," and "thus exercises control over…hiring, firing, compensation, performance supervision, discipline, and enforcement of workplace rules." (*Id.*).

General Media "is an application computer software company that distributes the films, photographs, and other materials" produced by Defendants. (*Id.* ¶ 14). General Media, Plaintiff claims, exercises control over VXN because VXN "cannot distribute its films without the express consent of General Media," and so General Media is "jointly and severally liable for the wrongful actions undertaken by VXN Group." (*Id.* ¶ 20).

///

## II. DISCUSSION

As set forth below, the Anti-SLAPP Motion is **DENIED**. The Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

### A. Anti-SLAPP Motion Standard

Under California's "anti-SLAPP" law,[3] (Cal. Code Civ. Proc. § 425.16), defendants may move to strike "actions… that masquerade as ordinary lawsuits but are intended to deter ordinary people from exercising their political or legal rights or to punish them for doing so." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013) (quotations omitted). "The anti-SLAPP statute does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." *Baral v. Schnitt*, 1 Cal. 5th 376, 384 (2016) (emphases in original).

Deciding an anti-SLAPP motion involves two steps. *See, e.g.*, *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002). First, the court must determine "whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Id.*; *see also Yuga Labs, Inc. v. Ripps*, No. 22-56199, 2023 WL 7123786, at *1 (9th Cir. Oct. 30, 2023) ("First, the defendant must 'make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech'") (quoting *Jordan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1188 (9th Cir. 2017)). Protected activity includes "conduct in furtherance of the exercise of…the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Civ. Proc. Code § 425.16(e)(4). When determining whether a cause of action "aris[es] from" the protected activity, "'[t]he critical consideration is whether the cause of

---

[3] The "SLAPP" in anti-SLAPP stands for "strategic lawsuit against public participation." *See, e.g.*, *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism*, 4 Cal. 5th 637, 639 (2018).

action is *based on* the defendant's protected free speech or petitioning activity.'" *Jordan-Benel*, 859 F.3d at 1191 (quoting *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002)) (emphasis in original); *see also Bonni v. St. Joseph Health Syst.*, 11 Cal. 5th 995, 1012 (2021) ("[A]ssertions that are 'merely incidental' or 'collateral' are not subject to section 425.16.").

If the court finds the defendant has made such a showing, it proceeds to the second step: determining "whether the plaintiff has demonstrated a probability of prevailing on the claim." *Equilon*, 29 Cal. 4th at 67. When a defendant brings an anti-SLAPP motion "challeng[ing] only the legal sufficiency of a claim," as here, a court on the second step of the anti-SLAPP analysis "should apply the Federal Rule of Civil Procedure 12(b)(6) standard" for a motion to dismiss "and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).

### B. Anti-SLAPP Motion Analysis

#### i. Timeliness

As a preliminary matter, the Court finds that the Anti-SLAPP Motion is timely. An anti-SLAPP motion that attacks the legal sufficiency of a complaint must be brought within sixty-days of service of the complaint. *Hasso v. City of San Diego*, No. 19-cv-368-TWR-DEB, 2021 WL 4226142, at *4 (S.D. Cal. Sept. 16, 2021) (citing Cal. Civ. Proc. Code § 425.16(f)) (noting that this rule is applicable in federal court where, as here, the anti-SLAPP motion challenges the legal sufficiency of the complaint). The California Supreme Court has held that an anti-SLAPP motion may be brought "'against an amended complaint if it could not have been brought earlier.'" *Id.* (quoting *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism*, 4 Cal. 5th 637, 645 (2018)).

Plaintiff argues that the Anti-SLAPP Defendants' Anti-SLAPP Motion is untimely because the FAC did not add any new claims, but the California Supreme Court has held that an amended complaint restarts the 60-day clock not only in the

case of new causes of action that could not previously have been the target of an anti-SLAPP motion, but also where an amended complaint "adds new allegations that make previously pleaded causes of action subject to an anti-SLAPP motion." *Newport Harbor*, 4 Cal. 5th at 645. The latter is the case here—the FAC added new allegations that revealed for the first time that Plaintiff sought to hold Defendants liable for actions arguably protected by the anti-SLAPP statute. (FAC ¶¶ 12−24 (expanding on the allegations related to the Anti-SLAPP Defendants)); *see Hasso*, 2021 WL 4226142, at *4 (finding an anti-SLAPP motion timely when it addressed statements in an amended complaint that were "not attributed" to the moving defendant in a prior complaint). As a result, the Court finds the Anti-SLAPP Motion to be timely, as it was filed within 60-days of the FAC.

                            *ii.*     *Anti-SLAPP First Prong*

       The Court now proceeds to the substantive anti-SLAPP analysis. For the reasons stated below, the Court **DENIES** the Anti-SLAPP Motion. Here, the Anti-SLAPP Defendants argue that their production of adult movies forms the basis of their joint liability in the FAC and therefore represents "conduct from which a claim arises" that is in furtherance of speech in the public interest. (Anti-SLAPP Mot., Docket No. 38 at 11−12). For instance, Anti-SLAPP Defendants argue that Plaintiff's FAC alleges that Miller is jointly liable for failure to pay Plaintiff and the putative class for labor code violations because he exercised control in "directing and choosing wardrobe" in the adult films, an action in furtherance of movie-making, which the Anti-SLAPP Defendants say is speech connected to a public issue. (*Id.* at 15). The Anti-SLAPP Defendants also argue that General Media and Strike 3's creative role in the production of the films constitutes conduct in furtherance of speech in the public interest protected by the anti-SLAPP statutes. (Anti-SLAPP Mot., Docket No. 38 at 13−15).

       While the Court agrees that the production of movies is conduct in furtherance of speech, *ITN Flix, LLC v. Hinojosa*, No. 2:14-cv-08797, 2019 WL 3562669, at *4

(C.D. Cal. Aug. 6, 2019) ("[T]he creation, production, and distribution of entertainment such as…film are activities in furtherance of the exercise of the right of free speech…"), "it is not enough for Defendants to simply state they engaged in allegedly protected speech that is relevant to Plaintiff's claim to prevail on their anti-SLAPP motion." *Yuga Labs*, *Inc. v. Ripps*, No. CV 22-4355-JFW-JEM, 2022 WL 18024480, at *8 (C.D. Cal. Dec. 16, 2022), *aff'd* 2023 WL 7123786 (9th Cir. Oct. 30, 2023) (quoting *Jordan-Benel*, 859 F.3d at 1190 ("[E]ven if a defendant engages in free speech activity that is relevant to a claim, that does not necessarily mean such activity is the basis for the claim.")); *see also Park v. Bd. of Trustees of Cal. State Univ.*, 2 Cal. 5th 1057, 1067 (2017) (explaining that an overly broad interpretation of the anti-SLAPP statute would permit "any employer…to claim its conduct was protected and thereby shift the burden of proof to the employee" to demonstrate the likelihood of success on the merits). The causes of action here arise from alleged wage and hour violations, and Defendants' roles in creating and enforcing polices that allegedly caused the violations, not protected conduct. (*See, e.g.*, FAC, Docket No. 26 ¶ 18 (alleging that Miller played "an active role" in the enforcement and creation of the policies and procedures set in place by VXN); *id.* ¶ 19 (alleging that Strike 3 "exercises control over…hiring, firing, compensation, performance, supervision, discipline, and enforcement of workplace rules"); *id.* ¶ 20 (alleging that General Media's ability to prevent the distribution of VXN's content absent its "express consent" permits it to exercise control over VXN's workplace policies)). To the extent some allegations that support joint liability mention arguably protected conduct, (*see, e.g.*, *id.* ¶ 12 (describing Miller's role in "directing the scenes" and "choosing outfits")), those allegations are "merely collateral to, or evidence that may be probative of, [Plaintiff's] theories of liability" and so fall outside the anti-SLAPP statute's protections. *Area 51 Prods., Inc. v. City of Alameda*, 20 Cal. App. 5th 581, 598 (2018) (*cited with approval in Bonni*, 11 Cal. 5th at 1068). Because of the Court's reasoning here, it need not go on to determine whether the Anti-SLAPP

8

1  Defendants have shown that the speech furthered by their conduct is connected with a
2  "public issue," or whether there is a probability of success on the merits. The Anti-
3  SLAPP Motion stumbles on the first step of the analysis and the Court **DENIES** it.[4]

4  **C.   Motion to Dismiss Standard**

5  To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient
6  factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
7  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550
8  U.S. 544, 570 (2007)). The complaint need not include detailed factual allegations but
9  must provide more than a "formulaic recitation of the elements of a cause of action."
10 *Id.* "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a
11 cognizable legal theory or sufficient facts to support a cognizable legal theory."
12 *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citing
13 *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

14 The court must construe the complaint in the light most favorable to the
15 plaintiff and take its non-conclusory allegations as true. *Boquist v. Courtney*, 32 F.4th
16 764, 773 (9th Cir. 2022). The court is not required, however, to accept as true legal
17 conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555 ("[A] plaintiff's
18 obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than
19 labels and conclusions…"). Pursuant to Fed. R. Civ. P. 15(a)(2), when a motion to
20 dismiss is granted, courts should "freely give leave [to amend] when justice so
21 requires."

22 **D.   Motion to Dismiss Standard**

23 The Court **GRANTS** the Motion to Dismiss in part and **DENIES** it in part, as
24 detailed below.

25 ///
26 ///

---

[4] Because the Court finds that the anti-SLAPP Motion was not frivolous, it **DENIES** Plaintiff's Motion for Sanctions. (Opp'n to Anti-SLAPP, Docket No. 40 at 18−19).

### i. *First, Third, Fourth, and Sixth Causes of Action*

Defendants move to dismiss Plaintiff's claims for overtime wages violations (first cause of action), meal period violations (third cause of action), rest period violations (fourth cause of action), and wage statement violations (sixth cause of action) because, Defendants argue, Plaintiff's status as a professional actor rather than as a model exempts her from the protections of the labor regulations undergirding those claims. (Mot. to Dismiss, Docket No. 33 at 1–2). As the Court explained in a prior order, however, the Court cannot say "[b]ased on the spare allegations in the Complaint" that, as a matter of law, Thoma is a professional actor rather than a model and therefore exempt from overtime, meal period, and rest period provisions under Industrial Welfare Commission ("IWC") Wage Order No. 12-2001. (Order, Docket No. 23 at 12 n.7). The same goes for the First Amended Complaint. Defendants' argument that it is "implausibl[e]" that Plaintiff worked as a model "'around 75 percent of the time'" (Mot. to Dismiss, Docket No. 33 at 8 (quoting FAC, Docket No. 26 ¶ 34)), is also not persuasive at the motion to dismiss stage, where Plaintiff's well-pled allegations are taken as true. *Boquist*, 32 F.4th at 773. The Motion to Dismiss the first, third, and fourth causes of action is therefore **DENIED**.

Though Defendants' arguments as to Plaintiff's alleged status as a professional actor were not persuasive, the Defendants also moved to dismiss the sixth cause of action for wage statement inaccuracies on the alternative ground[5] that Plaintiff, to date, has not pled facts showing a factual exemplar of any inaccurate wage statement. (Mot. to Dismiss, Docket No. 33 at 14–15); *Hines v. Constellis Integrated Risk Management Servs.*, No. CV 20-6782-PA-PLA, 2020 WL 5764400, at *6 (C.D. Cal. Sept. 25, 2020). The Court agrees that the sixth cause of action's allegations in the FAC are too "'conclusory to put Defendants on notice of any wrongdoing, and fail to

---

[5] The Court need not address the final ground on which Defendants move to dismiss the sixth claim—because it is derivative of other allegedly deficient claims—in light of the Court's reasoning in this section.

10

state a claim as a matter of law.'" *Hines*, 2020 WL 5764400, at *6 (quoting *Soratorio v. Tesoro Ref. & Mktg. Co., LLC*, No. CV 17-1554-MWF-RAO, 2017 WL 1520416, at *5−6 (C.D. Cal. Apr. 26, 2017); (*see, e.g.*, FAC, Docket No. 26 ¶ 118 (noting Defendants' alleged failure "at times[] to furnish Plaintiff and Class Members with accurate itemized statements," a recitation of the elements)).

Plaintiff argues that it cannot plead facts showing an exemplar of an inaccurate wage statement because Plaintiff "and class members did not receive proper itemized wage statements *at all*." (Opp'n to Mot. to Dismiss, Docket No. 35 at 13−14 (emphasis in original))). The Court looks to the FAC, however, not the opposition brief's characterization of the FAC, for purposes of the motion to dismiss. The FAC does not provide that class members never received any wage statements "at all"; instead, it says that class members and Plaintiff "at times" received inaccurate wage statements—wage statements that Plaintiff does not describe in the FAC sufficiently to survive the notice pleading standard. (FAC, Docket No. 26 ¶¶ 117−19). Defendants Motion to Dismiss Plaintiffs' conclusory sixth cause of action is therefore **GRANTED** and the sixth cause of action is **DISMISSED** with leave to amend.

      ii. *Second Cause of Action*

Defendants also move to dismiss Plaintiff's minimum wage claim (second cause of action) because, Defendants argue, Plaintiff again failed to plead facts showing her entitlement to, and her failure to receive, minimum wage. (Mot. to Dismiss, Docket No. 33 at 11−13). The Court previously held that the Complaint did not meet the standard articulated in *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 645 (9th Cir. 2014) ("[I]n order to survive a motion to dismiss, a plaintiff asserting a claim to overtime payments must allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek.").[6] Though Plaintiff added details regarding her minimum wage

---

[6] The claims in *Landers* were brought under the Fair Labor Standards Act, but courts

allegations, (*see, e.g.*, FAC ¶¶ 71−72), the FAC still fails to allege that Plaintiff herself "worked more than forty hours in a given workweek without being compensated…" *Landers*, 771 F.3d at 645. Accordingly, the Motion to Dismiss the second cause of action is **GRANTED** and the second cause of action is **DISMISSED** with leave to amend.[7]

### iii. Fifth and Seventh Causes of Action

Defendants also move to dismiss the fifth cause of action (waiting time penalties) and the seventh cause of action (failure to timely pay wages during employment) because they are derivative of the first through fourth causes of action, which Defendants had argued should be dismissed. (Mot. to Dismiss, Docket No. 33 at 14 (citing Order, Docket No. 23)). Because the Court declined to dismiss the first, third, and fourth causes of action, however, the Court declines to dismiss the fifth and seventh causes of action on this basis.

The Defendants separately moved to dismiss the seventh cause of action (failure to pay timely wages), however, because, Defendants argue, "there is no private right of action for Plaintiff's Labor Code § 204 claim." (*Id.* at 15). The Court need not determine whether Defendants' argument has substantive merit because Plaintiff failed to address the argument in its opposition brief and therefore is deemed to have consented to dismissal on this basis. *See, e.g.*, *Salcedo v. Nissan North Am., Inc.*, No. CV 22-4152-GW-MAR, 2023 WL 332761, at *8 (C.D. Cal. Jan. 18, 2023) (collecting cases). The Court therefore **GRANTS** the Motion to Dismiss the seventh cause of

---

in this circuit have repeatedly held that the same pleading standards apply to claims under the Labor Code. *See, e.g.*, *Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1007 n.3 (N.D. Cal. 2016) (collecting cases and stating that the reasoning in *Landers* applies "especially" to "overtime and wage claims because the language of the FLSA and Labor Code provisions is strikingly similar").

[7] In reaching this decision, the Court considered only the four corners of the FAC, and declined to consider other evidence of Plaintiff's rate of pay as it is immaterial to this motion to dismiss. (Mot. to Dismiss, Docket No. 33 at 12 (citing Decl. in support of Notice of Removal, Docket No. 1-2 ¶ 7)).

action without leave to amend but **DENIES** the Motion to Dismiss the fifth cause of action for the reasons noted in the prior paragraph.

### iv. Eighth Cause of Action

Defendants also move to dismiss the eighth cause of action for failure to indemnify. Plaintiff still fails to plead facts showing that she is entitled to reimbursement of work expenses. (Order, Docket No. 23 at 12−13). Plaintiff pled new details in the FAC that elaborate on the items for which Plaintiff alleges she should be reimbursed. (FAC, Docket No. 26 ¶ 133−35). The FAC still fails to plead, however, non-conclusory facts showing that Plaintiff sought reimbursement, stating only that "Defendants failed and refused, and still fail and refuse…to reimburse Plaintiff and Class Members." (*Id.* ¶ 136); *see, e.g.*, *Ellsworth v. Schneider Nat'l Carriers, Inc.*, No. 220CV01699SBSPX, 2020 WL 8773059, at *9 (C.D. Cal. Dec. 11, 2020) (Plaintiff is "expected to allege—if he unsuccessfully sought reimbursement for necessary shoes" because "he would know"). Because Plaintiff's counsel represented at the hearing that Plaintiff can plead facts to cure these deficiencies, the Court **GRANTS** the Motion to Dismiss the eighth cause of action with leave to amend.

### v. Joint Liability

Finally, Defendants move to dismiss Strike 3, General Media, and Mike Miller from the suit because Plaintiff failed to plead facts showing joint liability, either under an alter ego theory or joint employer theory. (Reply re: Mot. to Dismiss, Docket No. 37 at 11). The Court agrees. The alter ego allegations that Plaintiff added to the FAC remain conclusory, (*see, e.g.*, FAC, Docket No. 26 ¶¶ 12, 13, 18−20), and so the Court **GRANTS** the Motion to Dismiss claims that rely on an alter ego theory of joint liability for the same reasons as stated in its prior Order (Docket No. 23 at 11) (citing *Ovation Toys Co. v. Only Hearts Club*, 675 F. App'x 721, 724 (9th Cir. 2017)), with leave to amend. In opposition to Defendants' Motion to Dismiss the alter ego allegations, Plaintiff points to the same conclusory allegations that the Court already dismissed. (Opp'n, Docket No. 35 at 18−19 (pointing to FAC, Docket No.

26 ¶¶ 18(A)-(E))).[8]  If Plaintiff has facts showing alter ego liability, she should plead them.  *See, e.g.*, *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) ("A district court's discretion to deny leave to amend is particularly broad where the [party] has previously amended.").

The Court also **GRANTS** the Motion to Dismiss claims against Defendants Strike 3, General Media, and Mike Miller that rest on a joint employer or direct theory of liability.  (*See* Opp'n, Docket No. 25 at 16 ("Ms. Thoma does not only claim joint liability based upon the alter ego doctrine.  Rather, Ms. Thoma also claims all Defendants are jointly liable under the theories of general joint and several liability as well as joint employer liability.").  Plaintiff has pleaded only conclusory allegations regarding Strike 3's, General Media's and Mike Miller's involvement in the alleged wage and hour violation that are insufficient to meet Rule 8's notice requirement.  (*See, e.g.*, FAC, Docket No. 37 ¶ 12, 18) (alleging that Miller "played an active role in enforcement of" workplace policies)).

### III.  CONCLUSION

The Anti-SLAPP Motion is **DENIED.**  The Motion to Dismiss is **GRANTED** in part and **DENIED** in part, as set forth herein.  Plaintiff's amended complaint, and a redline of the new amended complaint against the FAC, is due within 21 days of the entry of this order.

Dated:  February 16, 2024

                                        HON. WESLEY L. HSU
                                        UNITED STATES DISTRICT JUDGE

---

[8] Paragraph 18 in the FAC does not contain sub-sections (A)-(E).  (Reply re Mot. to Dismiss, Docket No. 37 at 12 (noting that Plaintiff's citation to ¶¶ 18(A)-(E) in opposition to the Motion to Dismiss was apparently "an error caused by Plaintiff's haste copying from her prior Opposition which cited to the original complaint.")). The Court believes that Plaintiff intended to cite to the allegations at FAC, Docket No. 26 ¶¶ 22(A)-(E), allegations that merely recite the legal requirements for alter ego liability and remain unchanged from the last iteration of the complaint.