Deleted: <object><object><object><object>¶

**BIBIYAN LAW GROUP, P.C.**
David D. Bibiyan (Cal. Bar No. 287811)
*david@tomorrowlaw.com*
Jeffrey D. Klein (Cal. Bar No. 297296)
*jeff@tomorrowlaw.com*
Sarah H. Cohen (Cal. Bar No. 330700)
*sarah@tomorrowlaw.com*
8484 Wilshire Boulevard, Suite 500
Beverly Hills, California 90211
Telephone: (310) 438-5555
Facsimile: (310) 300-1705

Attorneys for Plaintiff, MACKENZIE ANNE THOMA and
on behalf of herself and all others similarly situated

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MACKENZIE ANNE THOMA, a.k.a. KENZIE ANNE, an individual and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> VXN GROUP LLC, a Delaware limited liability company; STRIKE 3 HOLDINGS, LLC, a Delaware limited liability company; GENERAL MEDIA SYSTEMS, LLC, a Delaware limited liability company; MIKE MILLER, an individual; and DOES 1 through 100, inclusive, <br><br> Defendants. | CASE NO.: 2:23-cv-04901-WLH (AGRx) <br><br> [Assigned for all purposes to the Hon. Wesley L. Hsu] <br><br> **SECOND AMENDED CLASS ACTION COMPLAINT FOR:** <br><br> 1. FAILURE TO PAY OVERTIME WAGES; <br><br> 2. FAILURE TO PAY MINIMUM WAGES; <br><br> 3. FAILURE TO PROVIDE MEAL PERIODS; <br><br> 4. FAILURE TO PROVIDE REST PERIODS; <br><br> 5. WAITING TIME PENALTIES; <br><br> 6. WAGE STATEMENT VIOLATIONS; |

Deleted: FIRST

Deleted: FIRST

Deleted: →

Deleted: <object>

Law Offices of
BIBIYAN LAW GROUP
A Professional Corporation
8484 Wilshire Boulevard, Suite 500
Beverly Hills, California 90211
(310) 438-5555

7. FAILURE TO INDEMNIFY;

**DEMAND FOR JURY TRIAL**

[Amount in Controversy Exceeds $25,000.00]

COMES NOW plaintiff MACKENZIE ANNE THOMA, famously known as "KENZIE ANNE" on behalf of herself and all others similarly situated, and alleges as follows:

## <u>INTRODUCTION</u>

1.    This is a Class Action brought pursuant to Code of Civil Procedure section 382.  It's brought by Plaintiff MACKENZIE ANNE THOMA, known in the adult film industry as "KENZIE ANNE" (hereinafter "Plaintiff" or "Ms. Thoma").  It is brought against VXN GROUP LLC, ("VXN GROUP"), STRIKE 3 HOLDINGS, LLC ("STRIKE 3"), GENERAL MEDIA SYSTEMS, LLC ("GENERAL MEDIA") and VXN GROUP's Executive Director, MIKE MILLER (collectively, "VIXEN MEDIA GROUP").

2.      As further set out below, VIXEN MEDIA GROUP runs a powerful, lucrative, and well-known adult film production company which many, if not all, adult film models perform for at some point in their careers due to its unique role in providing upscale adult film products in the industry.

3.      VIXEN MEDIA GROUP requires its performers and models to enter into "performance agreements" in order to perform services on their behalf.  Ms. Thoma had to sign one such agreement.  That agreement requires that she appear nude and semi-nude and perform "multiple, explicit sexual acts" with or without sexual aids. Separate from performing in adult films, Ms. Thoma was also required to model for Defendants. For example, Ms. Thoma would frequent "The Glass House" in Joshua Tree, California where a photographer would take modeling photos of Ms. Thoma who would don outfits specifically chosen by VIXEN MEDIA GROUP and during a set schedule set by VIXEN MEDIA GROUP. There were many occasions where the modeling took place on days and times where no adult scenes were performed. Vixen Media Group reserves the right to choose VIXEN MEDIA GROUP's Media Group's director.   The hours include nights, weekends, and holidays, with filming sessions that may take as long as ten hours.  During the term of the agreement, Ms. Thoma must "maintain" her "physical appearance", including Vixen Media Group's "reasonable personal grooming requests".  If she wanted to change her physical appearance, including, for instance, obtaining a tattoo or piercing, she first needed VIXEN MEDIA GROUP's written permission.  Even after the Agreement expired Ms. Thoma was required to provide additional services if VIXEN MEDIA GROUP required them.  She must agree to promote VIXEN MEDIA GROUP's websites and brands on her social media to the best of her abilities, at VIXEN MEDIA GROUP's direction, and under their guidelines and recommendations.

4.      Moreover, when Ms. Thoma merely requested her personnel file from VIXEN MEDIA GROUP, VIXEN MEDIA GROUP threatened to sue Ms. Thoma

1. due to purported losses in connection with two medical infections, one of which it
2. alleges were caused by an "unauthorized plastic surgery" (all allegations that Ms.
3. Thoma denies).

4.     5.     _Yet despite exercising control over every aspect of Ms. Thoma's body,_
5. _including with whom she has sexual intercourse, whether she may pierce her ear,_
6. _obtain a cosmetic surgery, or even miss time for an infection, Vixen Media Group_
7. _contends that it lacks sufficient control over Ms. Thoma to be her employer and thus_
8. _decline to provide Ms. Thoma with the pay and benefits afforded to California_
9. _employees._

10.     6.     Thus, Ms. Thoma brings this class action on behalf of herself and all
11. others with deemed to be "independent contractors" of VXN GROUP, STRIKE 3,
12. GENERAL MEDIA, their respective parents, subsidiaries and/or affiliated companies
13. within the State of California ("VIXEN MEDIA GROUP"). The Action is brought
14. against VXN GROUP's Executive Producer, MIKE MILLER ("MILLER"). Herein,
15. VIXEN MEDIA GROUP, MILLER, and DOES 1 through 100, as further defined
16. below, shall be referred to as "Defendants".

17. <div align="center">**PARTIES**</div>
18.     **A.   Plaintiff**

19.     7.     Plaintiff Ms. Thoma, a resident of the State of California, is a decorated
20. and well-known adult film actress who performs under the stage name "Kenzie
21. Anne". She has been named "Pet of the Year" by Penthouse magazine and shortly
22. before the filing of this Complaint appeared on the cover of Hustler magazine.

23.     8.     Before beginning her adult acting and modeling career, she modeled and
24. participated in photo shoots for various clothing brands and adult magazines, such as
25. Wet Seal, Free People, Carbon38, Playboy Plus, and Eats Channel. In November of
26. 2020, she signed a contract with Defendants, known widely as "Vixen Media Group",
27. with her entry into the adult film industry occurring on or around April 30, 2021.
28. Between November 2020 through approximately September of 2022, Ms. Thoma

Deleted: <object><object><object><object>

performed in Defendants' movies and modeled at their direction.

**B.** **Defendants**

9. Plaintiff is informed and believes that defendants VXN GROUP, STRIKE 3, and GENERAL MEDIA are limited liability companies organized and existing under the laws of the State of Delaware and doing business in the County of Los Angeles, State of California.

10. VIXEN MEDIA GROUP is the creator of adult motion pictures and photographs distributed for commercial sale through various distribution outlets and platforms. It was founded in 2014 by French entrepreneur and director Greg Lansky along with partners Steven Matthyssen and Mike Miller with the goal of creating higher-quality videos that would be considered more "artistic" than the normal realm of adult video content. While Greg Lansky sold his stake in VIXEN MEDIA GROUP in January of 2020, it still owns and operates at least seven online adult film sites, including Vixen, Tushy, Blacked, Blacked Raw, Tushy Raw, Deeper and Slayed.

11. VIXEN MEDIA GROUP has won many major awards in the adult-film industry, including an XBIZ Award as recently in 2022 for Studio of the Year.

12. Plaintiff is informed and believes and based thereon alleges that defendant MILLER is, and at all times relevant hereto was, an individual residing in California, as well as a founder, principal, and the Executive Producer of VXN GROUP, and DOES 1 through 50, as further defined below. Plaintiff is further informed and believes and based thereon alleges that MILLER violated, or caused to be violated, the above-referenced and below-referenced Labor Code provisions in violation of Labor Code section 558.1. Furthermore, Plaintiff is informed and believes and based thereon alleges that MILLER plays an active role in the enforcement and creation of the policies and procedures set in place by VXN GROUP. MILLER directly created the policies that led to the violations alleged herein and had direct control over the wages and working conditions of Plaintiff and Class Members. Specifically, MILLER was involved in the decision-making process to intentionally

Deleted: In fact, MILLER was physically present during many modeling shoots and on filming days and had a direct role in directing the scenes and choosing outfits, for example.

Deleted: FIRST

Deleted: *<object><object><object><object>*

misclassify Plaintiff and Class Members as independent contractors rather than employees. MILLER also controlled working conditions of Plaintiff and Class Members. Specifically, MILLER played a direct role in dictating the outfits to be donned by Plaintiff and Class Members on set, what modifications to their bodies could be made, what shoots Plaintiff and Class Members would attend, what hours Plaintiff and Class Members would work, and whether Plaintiff and Class Members would be allowed to return and participate in more shoots. In fact, MILLER was physically present during many modeling shoots and on filming days and had a direct role in directing the scenes and choosing outfits Plaintiff and Class Members would wear. For example, MILLER personally invited Plaintiff to Joshua Tree for a modeling shoot and was a decision-maker as to whether she would be paid for this shoot. MILLER was present during this trip and played a part in denying Plaintiff her meal and rest breaks afforded under California law. MILLER directly controlled and decided which Class Member would be designated as a "Vixen Angel," the highest honor an employee for Defendants could earn. Indeed, the policies and procedures put in place that ensured Plaintiff and Class Members were misclassified and therefore were not paid proper overtime wages, minimum wages, meal period premiums, rest period premiums, waiting time penalties, and reimbursements were directly put in place and enforced by MILLER. Given MILLER's role with VIXEN MEDIA GROUP and the hand he had in not only the policies and procedures that led to the harm highlighted herein, but also the Class Members themselves, an inequitable result would undoubtedly follow if MILLER is not held liable alongside VXN GROUP.

13.     Plaintiff is informed and believes STRIKE 3 serves as the parent company for VXN GROUP. STRIKE 3 owns, distributes, and produces pornographic films, images, and materials created by VXN GROUP. STRIKE 3 was and is at all relevant times herein the copyright holder for VXN GROUP and the various films, photographs, and other materials produced by VXN GROUP. Thus, Plaintiff is informed and believes and based thereon alleges that VXN GROUP played a direct

Deleted: FIRST

role in controlling the wages and working conditions of Plaintiff and putative class members. In fact, VXN GROUP cannot operate without the copyrights and connections held and owned by STRIKE 3. STRIKE 3's level of control over VXN GROUP is so great, in fact, that VXN GROUP cannot act without the express consent of STRIKE 3. Given that STRIKE 3 is the true owner of all the copyrights, photographs, and films used by VXN GROUP, VXN GROUP could only use these materials with the express consent of STRIKE 3. As such, there is no doubt VXN GROUP is not only a subsidiary for STRIKE 3, but also acts as a general agent for STRIKE 3. Furthermore, given the level of control STRIKE 3 has over VXN GROUP and VXN GROUP could not operate without the use of the copyrights and materials owned by STRIKE 3, there is such a unity of interest between the two that it would be wholly inequitable if STRIKE 3 is not held liable for the actions of VXN GROUP.

14.     GENERAL MEDIA is an application computer software company that distributes the films, photographs, and other materials produced by VIXEN MEDIA GROUP. GENERAL MEDIA is a key part of the VIXEN MEDIA GROUP and is another subsidiary of VIXEN MEDIA GROUP whose wrongful actions contributed to the damages suffered by Plaintiff and Class Members. Thus, Plaintiff is informed and believes and based thereon alleges that GENERAL MEDIA played a direct role in controlling the working conditions of Plaintiff and Class Members.

15.     The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants sued herein as DOES 1 through 100, inclusive, are currently unknown to Plaintiff, who therefore sues defendants by such fictitious names under Code of Civil Procedure section 474. Plaintiff is informed and believes and based thereon alleges that each of the defendants designated herein as DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of the defendants designated hereinafter as DOES when such identities become known. Plaintiff Is informed and believes, and based thereon alleges, that

Deleted: <object><object><object><object>¶

Deleted: working conditions of Plaintiff and putative class members....

Deleted: VXN GROUP

Deleted: FIRST

Deleted: *<object><object><object><object>*¶

each defendant acted in all respects pertinent to this action, as the agent of the other defendant(s), carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each defendant are legally attributable to the other defendants. Whenever, heretofore or hereinafter, reference is made to "Defendants," it shall include VXN GROUP, STRIKE 3, GENERAL MEDIA, MILLER and any of their parent, subsidiary, or affiliated companies within the State of California, as well as DOES 1 through 50 identified herein.

## **JOINT LIABILITY ALLEGATIONS**

16. Plaintiff is informed and believes and based thereon alleges that all the times mentioned herein, each of the Defendants was the agent, principal, employee, employer, representative, joint venture or co-conspirator of each of the other defendants, either actually or ostensibly, and in doing the things alleged herein acted within the course and scope of such agency, employment, joint venture, and conspiracy.

17. All of the acts and conduct described herein of each and every corporate defendant was duly authorized, ordered, and directed by the respective and collective defendant corporate employers, and the officers and management-level employees of said corporate employers. In addition thereto, said corporate employers participated in the aforementioned acts and conduct of their said employees, agents, and representatives, and each of them; and upon completion of the aforesaid acts and conduct of said corporate employees, agents, and representatives, the defendant corporation respectively and collectively ratified, accepted the benefits of, condoned, lauded, acquiesced, authorized, and otherwise approved of each and all of the said acts and conduct of the aforementioned corporate employees, agents and representatives.

18. Plaintiff is further informed and believes and based thereon alleges that MILLER violated, or caused to be violated, the above-referenced and below-referenced Labor Code provisions in violation of Labor Code section 558.1. Plaintiff

Deleted: FIRST

Deleted: <object><object><object><object>¶

is informed and believes that Miller is engaged in the decisions to hire Plaintiff and Class Members, to terminate the contracts of Plaintiff and Class Members, and to determine their compensation. Plaintiff is further informed and believes that MILLER directly created the policies and procedures put forth by VXN GROUP. Also, Plaintiff is informed and believes that MILLER played an active role in the enforcement of those policies and procedures, supervises the performance of Plaintiff and Class Members, and has the ability to discipline them, as he was often present on set and reprimanded Plaintiff and Class Members for not complying with VXN GROUP's policies and procedures. MILLER directly created the policies that led to the violations alleged herein and had direct control over the wages and working conditions of Plaintiff and Class Members. Specifically, MILLER was involved in the decision-making process to intentionally misclassify Plaintiff and Class Members as independent contractors rather than employees. MILLER also controlled working conditions of Plaintiff and Class Members. Specifically, MILLER played a direct role in dictating the outfits to be donned by Plaintiff and Class Members on set, what modifications to their bodies could be made, what shoots Plaintiff and Class Members would attend, what hours Plaintiff and Class Members would work, and whether Plaintiff and Class Members would be allowed to return and participate in more shoots. In fact, MILLER was physically present during many modeling shoots and on filming days and had a direct role in directing the scenes and choosing outfits Plaintiff and Class Members would wear. For example, MILLER personally invited Plaintiff to Joshua Tree for a modeling shoot and was a decision-maker as to whether she would be paid for this shoot. MILLER was present during this trip and played a part in denying Plaintiff her meal and rest breaks afforded under California law. MILLER directly controlled and decided which Class Member would be designated as a "Vixen Angel," the highest honor an employee for Defendants could earn. Indeed, the policies and procedures put in place that ensured Plaintiff and Class Members were misclassified and therefore were not paid proper overtime wages, minimum wages,

Deleted:

Deleted: FIRST

<b>Deleted:</b> <object><object><object><object>

1    meal period premiums, rest period premiums, waiting time penalties, and
2    reimbursements were directly put in place and enforced by MILLER. Given
3    MILLER's role with VIXEN MEDIA GROUP and the hand he had in not only the
4    policies and procedures that led to the harm highlighted herein, but also the Class
5    Members themselves, an inequitable result would undoubtedly follow if MILLER is
6    not held liable alongside VXN GROUP.

7       19.    Plaintiff is informed and believes that STRIKE 3, as the parent company
8    and owner of the copyright for VXN GROUP and therefore the true owner of the
9    films, photos, and other materials created by VXN GROUP, maintains a level of
10   control over VXN GROUP and its employees (including Plaintiff and Class
11   Members) where the policies and procedures of VXN GROUP are truly the policies
12   and procedures of STRIKE 3 as well. Indeed, Plaintiff is informed and believes and
13   based thereon alleges that STRIKE 3, by exercising control over VXN GROUP and
14   MILLER, thus exercises control over Plaintiff and Class Members in terms of hiring,
15   firing, compensation, performance supervision, discipline, and enforcement of
16   workplace rules. In fact, VXN GROUP cannot operate without the copyrights and
17   materials held and owned by STRIKE 3. STRIKE 3's level of control over VXN
18   GROUP is so great, in fact, that VXN GROUP cannot act nor pass policies without
19   the express consent of STRIKE 3. Given that STRIKE 3 is the true owner of all the
20   copyrights, photographs, and films used by VXN GROUP, VXN GROUP could only
21   use these materials with the express consent of STRIKE 3. As such, there is no doubt
22   VXN GROUP is not only a subsidiary of STRIKE 3, but also acts as a general agent
23   for STRIKE 3. Furthermore, given the level of control STRIKE 3 has over VXN
24   GROUP and VXN GROUP could not operate without the use of the copyrights and
25   materials owned by STRIKE 3, there is such a unity of interest between the two that
26   it would be wholly inequitable if STRIKE 3 is not held liable for the actions alleged
27   herein. As such, and particularly given the economic reality of the situation and the
28   level of control exercised over VXN GROUP and MILLER, STRIKE 3 is jointly and

<b>Deleted:</b> FIRST

severally liable for the wrongful actions undertaken by VXN GROUP.

20.     Plaintiff is informed and believes that GENERAL MEDIA was the main distributor for the films, photographs, and other materials produced by VXN GROUP and STRIKE 3. GENERAL MEDIA is a subsidiary of VIXEN MEDIA GROUP and serves as another key instrument in the wrongful actions committed against Plaintiff and Class Members. The level of control GENERAL MEDIA possessed over VXN GROUP is such that VXN GROUP cannot distribute its films without the express consent of GENEERAL MEDIA. Plaintiff is informed and believes that GENERAL MEDIA is nothing more than a shell company in the greater VIXEN MEDIA GROUP which exists only to circumvent liability. Given these facts, there is such a unity of interest between GENERAL MEDIA and the other Defendants that it would be wholly inequitable in every sense of the word to not hold GENERAL MEDIA equally liable for the violations alleged herein. As such, GENERAL MEDIA is jointly and severally liable for the wrongful actions undertaken by VXN GROUP.

21.     Plaintiff is informed and believes, and based thereon alleges, that there exists such a unity of interest and ownership between Defendants, and each of them, that their individuality and separateness have ceased to exist.

22.     Plaintiff is informed and believes, and based thereon alleges that despite the formation of the purported corporate existence of VXN GROUP, STRIKE 3, GENERAL MEDIA, and DOES 1 through 50, inclusive (the "Alter Ego Defendants"), they, and each of them, are one and the same with MILLER and DOES 51 through 100 ("Individual Defendants"), and each of them, due to, but not limited to, the following reasons:

A.     The Alter Ego Defendants are completely dominated and controlled by the Individual Defendants who personally committed the wrongful and illegal acts and violated the laws as set forth in this Complaint, and who has hidden and currently hide behind the Alter Ego Defendants to perpetrate frauds, circumvent statutes, or accomplish some other

Deleted: *<object><object><object><object>*¶

wrongful or inequitable purpose;

B.  The Individual Defendants derive actual and significant monetary benefits by and through the Alter Ego Defendants' unlawful conduct, and by using the Alter Ego Defendants as the funding source for the Individual Defendants' own personal expenditures;

C.  Plaintiff is informed and believes and thereon alleges that the Individual Defendants and the Alter Ego Defendants, while really one and the same, were segregated to appear as though separate and distinct for purposes of perpetrating a fraud, circumventing a statute, or accomplishing some other wrongful or inequitable purpose;

D.  Plaintiff is informed and believes and thereon alleges that the business affairs of the Individual Defendants and the Alter Ego Defendants are, and at all relevant times mentioned herein were, so mixed and intermingled that the same cannot reasonably be segregated, and the same are inextricable confusion.  The Alter Ego Defendants are, and at all relevant times mentioned herein were, used by the Individual Defendants as mere shells and conduits for the conduct of certain of their, and each of their affairs.  The Alter Ego Defendants are, and at all relevant times mentioned herein were, the alter egos of the Individual Defendants;

E.  The recognition of the separate existence of the Individual Defendants and the Alter Ego Defendants would promote injustice insofar that it would permit defendants to insulate themselves from liability to Plaintiff for violations of the Civil Code, Labor Code, and other statutory violations.  The corporate existence of these defendants should thus be disregarded in equity and for the ends of justice because such disregard is necessary to avoid fraud and injustice to Plaintiff herein;

F.  Accordingly, the Alter Ego Defendants constitute the alter ego of the

Deleted: FIRST

Deleted: *<object><object><object><object>*¶

Individual Defendants (and vice versa), and the fiction of their separate corporate existence must be disregarded;

23.    As a result of the aforementioned facts, Plaintiff is informed and believes, and based thereon alleges that Defendants, and each of them, are joint employers.

## JURISDICTION

24.    This Court has determined it has jurisdiction over this action under 28 U.S.C Section 1331.

## FACTUAL BACKGROUND

25.    For at least four (4) years prior to the filing of this action and continuing to the present, Defendants have, at times, failed to pay overtime wages to Plaintiff and Class Members, or some of them, in violation of California state wage and hour laws as a result of, without limitation, Plaintiff and Class Members working over eight (8) hours per day, forty (40) hours per week, and seven consecutive work days in a work week without being properly compensated for hours worked in excess of (8) hours per day in a work day, forty (40) hours per week in a work week, and/or hours worked on the seventh consecutive work day in a work week by, among other things, failing to accurately track and/or pay for all minutes actually worked at the proper overtime rate of pay to the detriment of Plaintiff and Class Members.

26.    For at least four (4) years prior to the filing of this Action and continuing to the present, Defendants have, at times, failed to pay minimum wages to Plaintiff and Class Members, or some of them, in violation of California state wage and hour laws as a result of, among other things, at times, failing to accurately track and/or pay for all hours actually worked at their regular rate of pay that is above the minimum wage to the detriment of Plaintiff and Class Members.

27.    For at least four (4) years prior to the filing of this Action and continuing to the present, Defendants have, at times, failed to provide Plaintiff and Class Members, or some of them, full, timely thirty (30) minute uninterrupted meal period

Deleted: FIRST

Deleted: <object><object><object><object>¶

for days on which they worked more than five (5) hours in a work day and a second

thirty (30) minute uninterrupted meal period for days on which they worked in excess

of ten (10) hours in a work day, and failing to provide compensation for such

unprovided meal periods as required by California wage and hour laws.

28.     For at least four (4) years prior to the filing of this action and continuing

to the present, Defendants have, at times, failed to authorize and permit Plaintiff and

Class Members, or some of them, to take rest periods of at least ten (10) minutes per

four (4) hours worked or major fraction thereof and failed to provide compensation

for such unprovided rest periods as required by California wage and hour laws.

29.     For at least three (3) years prior to the filing of this action and continuing

to the present, Defendants have, at times, failed to pay Plaintiff and Class Members,

or some of them, the full amount of their wages owed to them upon termination and/or

resignation as required by Labor Code sections 201 and 202, including for, without

limitation, failing to pay overtime wages, minimum wages, and premium wages

30.     For at least one (1) year prior to the filing of this Action and continuing

to the present, Defendants have failed to furnish Plaintiff and other Class Members

with **any** itemized wage statements that accurately reflect gross wages earned; total

hours worked; net wages earned; all applicable hourly rates in effect during the pay

period and the corresponding number of hours worked at each hourly rate; and other

such information as required by Labor Code section 226, subdivision (a).  As a result

thereof, Defendants have further failed to furnish employees with an accurate

calculation of gross and gross wages earned, as well as gross and net wages paid.

31.     For at least one (1) year prior to the filing of this Action and continuing

to the present, Defendants have, at times, failed to furnish other Class Members, or

some of them, with itemized wage statements that accurately reflect gross wages

earned; total hours worked; net wages earned; all applicable hourly rates in effect

during the pay period and the corresponding number of hours worked at each hourly

rate; and other such information as required by Labor Code section 226, subdivision

Deleted: Plaintiff and

Deleted: FIRST

Deleted: <object><object><object><object>¶

(a). As a result thereof, Defendants have further failed to furnish employees with an accurate calculation of gross and gross wages earned, as well as gross and net wages paid.

32. For at least one (1) year prior to the filing of this action and continuing to the present, Defendants have failed to pay Plaintiff and Class Members, or some of them, the full amount of their wages for labor performed in a timely fashion as required under Labor Code section 204.

Deleted: , at times,

33. For at least three (3) years prior to the filing of this action and continuing to the present, Defendants have failed to indemnify Class Members, or some of them, for work-related expenses.

Deleted: , at times,

34. Plaintiff and Class Members provided a wide array of services for Defendants. These services included, but were not limited to, appearing nude and semi-nude and performing "multiple, explicit sexual acts" with or without sexual aids for Defendants and modeling for Defendants for various different projects.

Deleted:

35. Plaintiff and Class Members would, on average, spend around 75% of their time modeling for Defendants and 25% of their time on set for filming for Defendants.

Deleted: percent
Deleted: percent

36. Defendants would require Plaintiff and Class Members to be on set from ten (10) to sixteen (16) hours in a single day *at least* twice a month. This time did not include the time spent preparing for their modeling shoots and films, such as rehearsing lines, obtaining spray tans, preparing necessary documentation required by Defendants, time spent on professional manicures, and time spent getting fitted for outfits for the shoots, among other things that were required by Defendants.

37. Plaintiff and Class Members would spend *at least* three to four hours (3-4) per day going to various locations for "fittings" of outfits were required by Defendants to be worn while on set. There would be *at least* one fitting per shoot. Plaintiff and Class Members were never compensated for the time spent on these fittings.

Deleted: FIRST

Deleted: *<object><object><object><object>*

38. Plaintiff and Class Members would be required to take a Sexually Transmitted Disease (STD) tests by Defendants for every shoot. This would take Plaintiff and Class Members *at least* thirty (30) minutes per test. The time spent taking these tests was never compensated by Defendants.

39. During the time Plaintiff and Class Members worked for Defendants, Defendants misclassified Plaintiff and Class Members as independent contractors.

40. During the time Plaintiff and Class Members starred in films and modeled for Defendants, Defendants exhibited a shocking level of control over the personal autonomy possessed by Plaintiff and Class Members. For example, Plaintiff and Class Members were required to sign documentation that stated Plaintiff and Class Members were not allowed to obtain piercings, tattoos, partake in cosmetic surgery, or even paint their nails a different color without the express consent of Defendants. Should Plaintiff and Class Members not comply with Defendants' orders, they would have shoots canceled and face other consequences.

41. On one occasion, Plaintiff received a cosmetic injection. When Defendants learned of this injection, Defendants canceled a scheduled shoot that Plaintiff was set to partake in.

42. On another occasion, in or around Spring 2022, Plaintiff injured her buttocks as a result of an infection. Defendants believed that Plaintiff had cosmetic surgery done on her buttocks, and as a result of this misguided belief, Defendants refused to pay Plaintiff for a modeling shoot she already participated in and refused to release any photos taken from that shoot.

43. On another occasion, Plaintiff was infected with Monkey Pox. Defendants were fully aware of Plaintiff's ailment, yet they still demanded her to work for Defendants on that day. When Plaintiff refused to work, Defendants informed Plaintiff that there she would face consequences for this refusal.

44. Plaintiff, on her own behalf and on behalf of Class Members, brings this action pursuant to, including but not limited to, Labor Code sections 200, 201, 202,

Deleted: FIRST

Deleted: *&lt;object&gt;&lt;object&gt;&lt;object&gt;&lt;object&gt;*

203, 204, 226, 226.7, 226.8, 404, 510, 512, 558.1, 1194, 1194.2, 1197, 2802, *et al.*, and California Code of Regulations, Title 8, section 11040, seeking overtime wages, minimum wages, payment of premium wages for missed meal and rest periods, failure to pay timely wages, waiting time penalties, wage statement penalties, failure to indemnify work-related expenses, other such provisions of California law, and reasonable attorneys' fees and costs.

## CLASS ACTION ALLEGATIONS

45.     Plaintiff brings this action on behalf of Plaintiff and Class Members as a class action pursuant to Code of Civil Procedure section 382.  Plaintiff seeks to represent a class of all current and former non-exempt employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class (collectively referred to as "Class Members").

46.     Plaintiff reserves the right under California Rule of Court rule 3.765, subdivision (b) to amend or modify the class description with greater specificity, further divide the defined class into subclasses, and to further specify or limit the issues for which certification is sought.

47.     This action has been brought and may properly be maintained as a class action under the provisions of Code of Civil Procedure section 382 because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

### A.     Numerosity

48.     The potential Class Members as defined are so numerous that joinder of all the members of the Class is impracticable. While the precise number of Class Members has not been determined yet, Plaintiff is informed and believes that there are over seventy-five (75) Class Members employed by Defendants within the State of California.

49.     Accounting for employee turnover during the relevant periods

Deleted: FIRST

Deleted: *<object><object><object><object>*¶

necessarily increases this number. Plaintiff alleges Defendants' employment records would provide information as to the number and location of all Class Members. Joinder of all members of the proposed Class is not practicable.

**B.    Commonality**

50.    There are questions of law and fact common to Class Members. These common questions include, but are not limited to:

A.    Did Defendants violate Labor Code sections 510 and 1194 by failing to pay all hours worked at a proper overtime rate of pay?

B.    Did Defendants violate Labor Code sections 510, 1194 and 1197 by failing to pay for all other time worked at the employee's regular rate of pay and a rate of pay that is greater than the applicable minimum wage?

C.    Did Defendants violate Labor Code section 512 by not authorizing or permitting Class Members to take compliant meal periods?

D.    Did Defendants violate Labor Code section 226.7 by not providing Class Members with additional wages for missed or interrupted meal periods?

E.    Did Defendants violate applicable Wage Orders by not authorizing or permitting Class Members to take compliant rest periods?

F.    Did Defendants violate Labor Code section 226.7 by not providing Class Members with additional wages for missed rest periods?

G.    Did Defendants violate Labor Code sections 201 and 202 by failing to pay Class Members upon termination or resignation all wages earned?

H.    Are Defendants liable to Class Members for waiting time penalties under Labor Code section 203?

I.    Did Defendants violate Labor Code section 226, subdivision (a) by not furnishing Class Members with accurate wage statements?

J.    Did Defendants violate Labor Code section 226.8 by willfully classifying Class Members as independent contractors?

K.    Did Defendants fail to indemnify Class Members for all necessary

Deleted: <#>Did Defendants fail to pay Class Members in a timely fashion as required under Labor Code section 204?¶

Deleted: FIRST

Deleted: <object><object><object><object>¶

expenditures or losses incurred in direct consequence of the discharge of their duties or by obedience to the directions of Defendants as required under Labor Code section 2802?

L. Did Defendants fail to return deposits made by Class Members with accrued interest thereon as required under Labor Code section 404?

M. Did Defendants violate the Unfair Competition Law, Business and Professions Code section 17200, *et seq.*, by their unlawful practices as alleged herein?

N. Are Class Members entitled to restitution of wages under Business and Professions Code section 17203?

O. Are Class Members entitled to costs and attorneys' fees?

P. Are Class Members entitled to interest?

**C.     Typicality**

51.     The claims of Plaintiff herein alleged are typical of those claims which could be alleged by any Class Members, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions.  Plaintiff and Class Members sustained injuries and damages arising out of and caused by Defendants' common course of conduct in violation of laws and regulations that have the force and effect of law and statutes as alleged herein.

**D.     Adequacy of Representation**

52.     Plaintiff will fairly and adequately represent and protect the interest of Class Members.  Counsel who represents Plaintiff is competent and experienced in litigating wage and hour class actions.

**E.     Superiority of Class Action**

53.     A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all Class Members is not practicable, and questions of law and fact common to Class Members predominate over any questions affecting only individual Class Members.  Class Members, as

Deleted: FIRST

Deleted: <object><object><object><object>¶

further described therein, have been damaged and are entitled to recovery by reason of Defendants' policies and/or practices that have resulted in the violation of the Labor Code at times, as set out herein.

54. Class action treatment will allow Class Members to litigate their claims in a manner that is most efficient and economical for the parties and the judicial system. Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## FIRST CAUSE OF ACTION

**(Failure to Pay Overtime Wages – Against All Defendants)**

55. Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth hereat.

56. At all relevant times, Plaintiff and Class Members were employees or former employees of Defendants covered by Labor Code sections 510, 1194 and 1199, as well as applicable Wage Orders.

57. At all times relevant to this Complaint, Labor Code section 510 was in effect and provided: "(a) Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of forty hours in any one workweek . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee."

58. At all times relevant to this Complaint, Labor Code section 510 further provided that "[a]ny work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay."

59. Four (4) years prior to the filing of the Complaint in this Action through the present, Plaintiff and Class Members, at times, worked for Defendants during shifts that consisted of more than eight (8) hours in a workday and/or more than forty hours in a workweek, and/or seven (7) consecutive workdays in a workweek, without

Deleted: FIRST

Deleted: *&lt;object&gt;&lt;object&gt;&lt;object&gt;&lt;object&gt;*¶

being paid overtime wages for all hours worked as a result of, including but not limited to, Defendants failing to accurately track and/or pay for all hours actually worked at the proper overtime rate of pay to the detriment of Plaintiff and Class Members.

60. Accordingly, by requiring Plaintiff and Class Members to, at times, work greater than eight (8) hours per workday, forty (40) hours per workweek, and/or seven (7) straight workdays without properly compensating overtime wages at the proper overtime rate of pay, Defendants, on occasion, willfully violated the provisions of the Labor Code, among others, sections 510, 1194, and applicable IWC Wage Orders, and California law.

61. Plaintiff and Class Members would partake in *at least* two (2) shoots per month for Defendants where they would model and star in movies for Defendants. These shoots would last ten (10) to sixteen (16) hours. Before arriving to shoots, Plaintiff and Class members were required to ensure their hair and bodies were prepared for the shoots. These preparations include, but are not limited to, exfoliating Plaintiff and Class Members' bodies and blow-drying hair. In total, this preparation would take *no less than* thirty (30) minutes.

62. In addition to these shoots, Plaintiff and Class Members were required to go to "fittings," where they would be required to try on costumes for the various scenes Plaintiff and Class Members would model and star in. Plaintiff and Class members were required to attend *at least* one (1) fitting per shoot outside of the days Plaintiff and Class members were required to be on set. It would take Plaintiff and Class Members *at least* one and one-half (1.5) hours to drive to these <u>mandatory</u> fittings. These fittings would take three-four (3-4) hours. Furthermore, before every shoot, Plaintiff and Class Members were required to take STD tests. Plaintiff and Class Members were not paid for the hours spent taking the test. These tests would take *at the very least* thirty (30) minutes.

63. Plaintiff and Class Members were also required to have a manicure and

Deleted: FIRST

Deleted: *<object><object><object><object>¶*

pedicure *at least* once per shoot by Defendants. These manicures and pedicures would occur on days Plaintiff and Class Members would not be on set for shoots and on days they had fittings. Plaintiff and Class Members would drive *at least* forty-five (45) minutes to attend their <u>mandatory</u> manicure and pedicure appointments. These appointments would last *at least* one (1) hour.

64.     When required to go on set for a shoot, Plaintiff and Class Members would be on set for at least ten (10) hours. While on set, Plaintiff and Class Members would spent approximately 75 percent of their time modeling and 25 percent of their starring in films for Defendants.

65.     Even when Plaintiff and Class Members were not actively filming or modeling, they were required to be on set and work by completing hair and makeup, working on their wardrobe, partaking in rehearsals, and speaking to coworkers for work related activities among other work-related activities. Plaintiff and Class Members were expected to work for the entire shoot without any rest.

66.     During the entire time Plaintiff and Class Members were employed by Defendants, they were never compensated additional overtime payment for the more than ten (10) hours spent on set.

67.     As a result of the unlawful acts of Defendants, Plaintiff and Class Members have been deprived of overtime wages and double time wages in amounts to be determined at trial, and are entitled to recovery, plus interest and penalties thereon, attorneys' fees and costs, pursuant to Labor Code section 1194 and 1199, Code of Civil Procedure section 1021.5 and 1032, and Civil Code section 3287.

## SECOND CAUSE OF ACTION

### (Failure to Pay Minimum Wages – Against All Defendants)

68.     Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth hereat.

69.     At all relevant times, Plaintiff and Class Members were employees or former employees of Defendants covered by Labor Code sections 1197, 1199 and

Deleted: FIRST

Deleted: *&lt;object&gt;&lt;object&gt;&lt;object&gt;&lt;object&gt;*¶

1  applicable Wage Orders.

2  70.     Pursuant to Labor Code section 1197 and applicable Wage Orders,

3  Plaintiff and Class Members were entitled to receive minimum wages for all hours

4  worked or otherwise under Defendants' control.

5  71.     For four (4) years prior to the filing of the Complaint in this Action

6  through the present, Defendants failed, at times, to accurately track and/or pay for all

7  hours actually worked at their regular rate of pay that is above the minimum wage to

8  the detriment of Plaintiff and Class Members.

9  72.     Plaintiff and Class Members would partake in *at least* two (2) shoots per

10  month for Defendants where they would model and star in movies for Defendants.

11  These shoots would last ten (10) to sixteen (16) hours. Before arriving to shoots,

12  Plaintiff and Class members were required to ensure their hair and bodies were

13  prepared for the shoots. These preparations include, but are not limited to, exfoliating

14  Plaintiff and Class Members' bodies and blow-drying hair. In total, this preparation

15  would take no less than thirty (30) minutes.

16  73.     In addition to these shoots, Plaintiff and Class Members were required

17  to go to "fittings," where they would be required to try on costumes for the various

18  scenes Plaintiff and Class Members would model and star in. Plaintiff and Class

19  members were also required to attend *at least* one (1) fitting for wardrobe per shoot

20  outside of the days Plaintiff and Class members were required to be on set. It would

21  take Plaintiff and Class Members *at least* one and one-half (1.5) hours to drive to

22  these mandatory fittings. These fittings would take three-four (3-4) hours.

23  Furthermore, before every shoot, Plaintiff and Class Members were required to take

24  STD tests. Plaintiff and Class Members were not paid for the hours spent taking the

25  test. These tests would take *at the very least* thirty (30) minutes.

26  74.     Plaintiff and Class Members were also required to have a manicure and

27  pedicure at least once per shoot by Defendants. These manicures and pedicures would

28  occur on days Plaintiff and Class Members would not be on set for shoots and on days

Deleted: FIRST

Deleted: <object><object><object><object>¶

they had fittings. Plaintiff and Class Members would drive at least forty five (45) minutes to attend their mandatory manicure and pedicure appointments. These appointments would last at least one (1) hour.

75. When required to go on set for a shoot, Plaintiff and Class Members would be on set for at least ten (10) hours. While on set, Plaintiff and Class Members would spent approximately 75 percent of their time modeling and 25 percent of their acting for Defendants.

76. Even when Plaintiff and Class Members were not actively filming or modeling, they were required to be on set and work by completing hair and makeup, working on their wardrobe, partaking in rehearsals, and speaking to coworkers for work related activities among other work-related activities.

77. During the entire time Plaintiff and Class Members were employed by Defendants, they were never compensated additional overtime or doubletime payments for the more than ten (10) hours spent on set.

Deleted: payment

78. During the entire time Plaintiff and Class Members were employed by Defendants, they were never compensated for overtime hours worked when employees would work more than eight (8) hours per day or forty (40) hours per week.

79. Furthermore, Plaintiff and Class Members were required to do additional work before arriving on set. This work included completing mandatory paperwork for Defendants, doing hair and makeup, preparing outfits, preparing for anal scenes, and going over scripts and plotlines of films. These activities would take several hours in addition to their normal duties on set. Plaintiff and Class Members were never compensated for these additional hours or overtime hours worked while on set resulting in time worked that was entirely uncompensated thus violating California minimum wage requirements.

80. Furthermore, Plaintiff and Class Members were not compensated for the hours spent going to fittings and for the time spent taking the mandatory tests for Defendants. In total, there were *at least* 4.5 hours every two weeks that Plaintiff and

Deleted: FIRST

Deleted: <object><object><object><object>

Class Members were not compensated for whatsoever.

81.     Plaintiff and Class members would regularly work more than eight (8) hours per day and/or forty (40) hours per workweek and were never paid overtime wages for this work.

82.     Plaintiff and Class Members were paid on a job-by-job basis as they were misclassified as independent contractors. Plaintiff and Class Member did not have the hours they worked adequately tracked. As a result, the payment received by Plaintiff and Class Members fell far below minimum wage requirements in the state of California, when factoring the unpaid hours mentioned above and Defendants' failure to pay Plaintiff and Class Members overtime wages.

83.     As a result of Defendants' unlawful conduct, Plaintiff and Class Members have suffered damages in an amount, subject to proof, to the extent they were not paid minimum wages for all hours worked or otherwise due.

84.     Pursuant to Labor Code sections 218.6, 1194, 1194.2, Code of Civil Procedure sections 1021.5 and 1032, and Civil Code section 3287, Plaintiff and Class Members are entitled to recover the full amount of unpaid minimum wages, interest and penalties thereon, liquidated damages, reasonable attorneys' fees and costs of suit.

### THIRD CAUSE OF ACTION

**(Failure to Provide Meal Periods – Against All Defendants)**

85.     Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth hereat.

86.     At all relevant times, Plaintiff and Class Members were employees or former employees of Defendants covered by Labor Code section 512 and applicable Wage Orders.

87.     Pursuant to Labor Code section 512 and applicable Wage Orders, no employer shall employ an employee for a work period of more than five (5) hours without a timely meal break of not less than thirty (30) minutes in which the employee is relieved of all of his or her duties.  Furthermore, no employer shall employ an

Deleted: FIRST

Deleted: *<object><object><object><object>*

employee for a work period of more than ten (10) hours per day without providing the employee with a second timely meal period of not less than thirty (30) minutes in which the employee is relieved of all of his or her duties.

88.     Pursuant to Labor Code section 226.7, if an employer fails to provide an employee with a meal period as provided in the applicable Wage Order of the Industrial Welfare Commission, the employer shall pay the employee one (1) additional hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

89.     For four (4) years prior to the filing of the Complaint in this Action through the present, Plaintiff and Class Members were, at times, not provided complete, timely 30-minute, duty-free uninterrupted meal periods every five hours of work without waiving the right to take them, as permitted.  Moreover, at times, Defendants failed to provide one (1) additional hour of pay at the Class Member's regular rate of compensation on the occasions that Class Members were not provided compliant meal periods.

90.     While on set, Plaintiff and Class Members would regularly work more than ten (10) hours in a day. Plaintiff and Class Members were never afforded a full uninterrupted 30-minute meal break on these days. Plaintiff and Class Members were required to be on duty, whether it was for - without limitation - active filming, rehearsing lines, having their hair and makeup be done, or handling wardrobe.

91.     Furthermore, since Plaintiff and Class Members would regularly work more than ten (10) hours per day for Defendants, they were entitled to a second uninterrupted 30-minute meal break. However, Plaintiff and Class Members were *never* afforded a second meal break in compliance with California law.

92.     For example, on one occasion, Plaintiff was required to drive to the Glass House in Joshua Tree for a shoot to be crowned as a "Vixen Angel." This shoot lasted more than 12 hours. Plaintiff was never afforded a *single* uninterrupted meal period on this day, let alone the second uninterrupted meal period as required by California

Deleted: FIRST

Deleted: *<object><object><object><object>*

law.

93.     As another example, on another occasion, Plaintiff attended a shooting in the Simi Valley area for one of Defendants' brands, "Deeper." Once again, Plaintiff was on set for more than 12 hours. Here, Plaintiff was not given a *single* uninterrupted meal break, let alone the second uninterrupted meal period as required by California law.

94.     These violations were a daily occurrence for Plaintiff and Class Members. They were forced to endure these abhorrent work conditions *every single day* they provided work for Defendants. Indeed, not a single day Plaintiff and Class Members worked for Defendants was free of any sort of meal period violation. At a bare minimum, therefore, Plaintiff and Class members suffered two to four (2-4) unique meal break violations per month.

95.     By their failure to provide Plaintiff and Class Members compliant meal periods as contemplated by Labor Code section 512, among other California authorities, and failing, at times, to provide compensation for such unprovided meal periods, as alleged above, Defendants willfully violated the provisions of Labor Code section 512 and applicable Wage Orders.

96.     As a result of Defendants' unlawful conduct, Plaintiff and Class Members have suffered damages in an amount, subject to proof, to the extent they were not paid additional pay owed for missed, untimely, interrupted, incomplete and/or on-duty meal periods.

97.     Plaintiff and Class Members are entitled to recover the full amount of their unpaid additional pay for unprovided compliant meal periods, in amounts to be determined at trial, plus interest and penalties thereon, attorneys' fees, and costs, under Labor Code sections 226 and 226.7, Code of Civil Procedure sections 1021.5 and 1032, and Civil Code section 3287.

///

///

Deleted: FIRST

## **FOURTH CAUSE OF ACTION**

### **(Failure to Provide Rest Periods – Against All Defendants)**

98.     Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth hereat.

99.     At all relevant times, Plaintiff and Class Members were employees or former employees of Defendants covered by applicable Wage Orders.

100.    California law and applicable Wage Orders require that employers "authorize and permit" employees to take ten (10) minute rest periods in about the middle of each four (4) hour work period "or major fraction thereof."  Accordingly, employees who work shifts of three and-a-half (3 ½) to six (6) hours must be provided ten (10) minutes of paid rest period, employees who work shifts of more than six (6) and up to ten (10) hours must be provided with twenty (20) minutes of paid rest period, and employees who work shifts of more than ten (10) hours must be provided thirty (30) minutes of paid rest period.

101.    Pursuant to Labor Code section 226.7, if an employer fails to provide an employee with a meal period or rest period as provided in the applicable Wage Order of the Industrial Welfare Commission, the employer shall pay the employee one (1) additional hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided.

102.    For four (4) years prior to the filing of the Complaint in this Action through the present, Plaintiff and Class Members were, at times, not authorized or permitted to take complete, timely 10-minute, duty-free uninterrupted rest periods every four (4) hours of work or major fraction thereof.   Moreover, at times, Defendants failed to provide one (1) additional hour of pay at the Class Member's regular rate of compensation on the occasions that Class Members were not authorized or permitted to take compliant rest periods.

103.    Plaintiff and Class Members were never provided with Code compliant rest break periods. Defendants never ensured and never permitted Plaintiff and Class

Deleted: *<object><object><object><object>*¶

Members to take rest periods as required by California law. Even when Defendants did permit Plaintiff and Class Members to go on "a break", these "breaks" were always interrupted. Further, Plaintiff and Class Members' "breaks" were always on duty, whether it was to be on call to continue shooting for a scene, sitting for hair and makeup, discussing wardrobe, talking to supervisors and coworkers about their upcoming scenes, or preparing paperwork required by Defendants. These issues occurred every single time Plaintiff and Class Members worked for Defendants. As a result, Defendants violated Plaintiff and Class Members right to an uninterrupted rest period *at least* once every two weeks.

104.     For example, on one occasion, Plaintiff was required to drive to the Glass House in Joshua Tree for a shoot to be crowned as a "Vixen Angel." This shoot lasted more than 12 hours. Plaintiff was never afforded a *single* uninterrupted rest period on this day, let alone the several other uninterrupted rest periods as required by California law.

105.     As another example, on another occasion, Plaintiff attended a shooting in the Simi Valley area for one of Defendants' brands, "Deeper." Once again, Plaintiff was on set for more than 12 hours. Here, Plaintiff was not given a *single* uninterrupted rest break, let alone the several other uninterrupted rest periods as required by California law.

106.     These violations were a daily occurrence for Plaintiff and Class Members. They were forced to endure these abhorrent work conditions *every single day* they provided work for Defendants. Indeed, not a single day Plaintiff and Class Members worked for Defendants was free of any sort of rest period violation. At a bare minimum, therefore, Plaintiff and Class members suffered two rest break violations per month.

107.     By their failure, at times, to authorize and permit Plaintiff and Class Members to take rest periods contemplated by California law, and one (1) additional hour of pay at the employee's regular rate of compensation for such unprovided rest

Deleted: FIRST

Deleted: *<object><object><object><object>*

periods, as alleged above, Defendants willfully violated the provisions of Labor Code section 226.7 and applicable Wage Orders.

108.     As a result of Defendants' unlawful conduct, Plaintiff and Class Members have suffered damages in an amount, subject to proof, to the extent they were not paid additional pay owed for rest periods that they were not authorized or permitted to take.

109.     Plaintiff and Class Members are entitled to recover the full amount of their unpaid additional pay for unprovided compliant rest periods, in amounts to be determined at trial, plus interest and penalties thereon, attorneys' fees, and costs, under Labor Code sections 226 and 226.7, Code of Civil Procedure sections 1021.5 and 1032, and Civil Code section 3287.

## FIFTH CAUSE OF ACTION

**(Failure to Pay All Wages Due Upon Termination – Against All Defendants)**

110.     Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth hereat.

111.     At all relevant times, Plaintiff and Class Members were employees or former employees of Defendants covered by Labor Code sections 201, 202 and 203, as well as applicable Wage Orders.

112.     Pursuant to Labor Code sections 201 and 202, Plaintiff and Class Members were entitled upon termination to timely payment of all wages earned and unpaid prior to termination.  Discharged Class Members were entitled to payment of all wages earned and unpaid prior to discharge immediately upon termination.  Class Members who resigned were entitled to payment of all wages earned and unpaid prior to resignation within 72 hours after giving notice of resignation or, if they gave 72 hours previous notice, they were entitled to payment of all wages earned and unpaid at the time of resignation.

113.     Plaintiff is informed and believes, and based thereon alleges, that in the three (3) years before the filing of the Complaint in this Action through the present,

Deleted: FIRST

Deleted: *<object><object><object><object>*

Defendants, due to the failure, at times, to provide overtime wages mentioned above, failed to pay Plaintiff and Class Members all wages earned prior to resignation or termination in accordance with Labor Code sections 201 or 202.

114.    Plaintiff is informed and believes Defendants' failure, at times, to pay Plaintiff and Class Members all wages earned prior to termination or resignation in accordance with Labor Code sections 201 and 202 was willful.  Defendants had the ability to pay all wages earned by Plaintiff and Class Members at the time of termination in accordance with Labor Code sections 201 and 202, but intentionally adopted policies or practices incompatible with the requirements of Labor Code sections 201 and 202 resulting in the failure, at times, to pay all wages earned prior to termination or resignation.

115.    Pursuant to Labor Code section 203, Plaintiff and Class Members are entitled to waiting time penalties from the date their earned and unpaid wages were due, upon termination or resignation, until paid, up to a maximum of thirty (30) days.

116.    As a result of Defendants' unlawful conduct, Plaintiff and Class Members have suffered damages in an amount subject to proof, to the extent they were not paid for all wages earned prior to termination or resignation.

117.    Pursuant to Labor Code section 203 and 218.6, Code of Civil Procedure sections 1021.5 and 1032, and Civil Code section 3287, Plaintiff and Class Members are entitled to recover waiting time penalties, interest, and their costs of suit, as well.

## SIXTH CAUSE OF ACTION

**(Failure to Provide Accurate Wage Statements – Against All Defendants)**

118.    Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth hereat.

119.    At all relevant times, Plaintiff and Class Members were employees or former employees of Defendants covered by Labor Code section 226, as well as applicable Wage Orders.

120.    Pursuant to Labor Code section 226, subdivision (a), Plaintiff and Class

Deleted: FIRST

Deleted: &lt;object&gt;&lt;object&gt;&lt;object&gt;&lt;object&gt;¶

Members were entitled to receive, semi-monthly or at the time of each payment of wages, an accurate itemized statement that accurately reflects, among other things, gross wages earned; total hours worked; net wages earned; all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate; and the name and address of the legal entity that is the employer; among other things.

121.     Plaintiff is informed and believes, and based thereon alleges, that in the one (1) year before the filing of the Complaint in this Action through the present, Defendants failed to comply with Labor Code section 226, subdivision (a) by adopting policies and practices that resulted in their failure to furnish Plaintiff and some Class Members with any itemized statements that accurately reflect, among other things, gross wages earned; total hours worked; net wages earned; all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate; and the name and address of the legal entity that is the employer; among other things whatsoever.

122.     Plaintiff is informed and believes, and based thereon alleges, that in the one (1) year before the filing of the Complaint in this Action through the present, Defendants failed to comply with Labor Code section 226, subdivision (a) by adopting policies and practices that resulted in their failure, at times, to furnish other Class Members with accurate itemized statements that accurately reflect, among other things, gross wages earned; total hours worked; net wages earned; all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate; and the name and address of the legal entity that is the employer; among other things.

123.     Defendants' failure to provide Plaintiff with any wage statements whatsoever was knowing, intentional, and willful.  Defendants had the ability to provide Plaintiff and some Class Members with accurate wage statements, but willfully failed to provide any wage statements.

Deleted: , at times,

Deleted: accurate

Deleted: , at times,

Deleted: and Class Members

Deleted: accurate

Deleted: the other

Deleted: , at times,

Deleted: provided

Deleted: that Defendants knew were not accurate.

Deleted: FIRST

124.    As a result of Defendants' unlawful conduct, Plaintiff and Class Members have suffered injury.  The absence of Class Members' wage statements has delayed timely challenge to Defendants' unlawful pay practices; requires discovery and mathematical computations to determine the amount of wages owed; causes difficulty and expense in attempting to reconstruct time and pay records; and led to submission of inaccurate information about wages and amounts deducted from wages to state and federal governmental agencies, among other things.

125.    Pursuant to Labor Code section 226, subdivision (e), Plaintiff and Class Members are entitled to recover $50 for the initial pay period during the period in which violation of Labor Code section 226 occurred and $100 for each violation of Labor Code section 226 in a subsequent pay period, not to exceed an aggregate $4,000.00 per employee.

126.    Pursuant to Labor Code sections 226, subdivisions (e) and (g), Code of Civil Procedure section 1032, Civil Code section 3287, Plaintiff and Class Members are entitled to recover the full amount of penalties due under Labor Code section 226, subdivision (e), reasonable attorneys' fees, and costs of suit.

## SEVENTH CAUSE OF ACTION

### (Violation of Labor Code § 2802 – Against All Defendants)

127.    Plaintiff realleges and incorporate by reference all of the allegations contained in the preceding paragraphs as though fully set forth hereat.

128.    At all relevant times, Plaintiff and Class Members were employees or former employees of Defendants covered by Labor Code section 2802 and applicable Wage Orders.

129.    Labor Code section 2802, subdivision (a) provides that "an employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . ."

130.    For three (3) years prior to the filing of the Complaint in this Action through the present, Defendants required Plaintiff and Class Members, or some of

33

<b>Deleted:</b> <object><object><object><object>¶

them, to incur, at times, necessary expenditures or losses in direct consequence of the discharge of their duties or at the obedience to the directions of Defendants that included, without limitation: using cellular phones for work-related purposes; for mileage going to locations for the mandatory fittings; for mileage for driving to and from mandatory manicure and pedicure appointments; for manicure costs; for pedicure costs; preparing hair and body for scenes; and for costs related to preparing for anal scenes, such as bleaching.

131.     The manicures and pedicures would cost a total of $180. Bleaching for anal scenes would cost a *minimum* of $100.

132.     Plaintiff and Class members would drive *at least* 10 miles to arrive at the mandatory fitting locations and *at least* 6 miles to and from the mandatory manicure and pedicure appointments.

133.     Plaintiff is informed and believes, and based thereon alleges, the costs incurred by Plaintiff and Class Members were a mandatory part of their work duties and thus Defendants knew or should have known Plaintiff and Class Members were incurring these costs without reimbursement. Defendants undoubtedly had constructive knowledge of the expenses incurred by Plaintiff and Class Members for work related purposes.

134.     During that time period, Plaintiff is informed and believes, and based thereon alleges that despite Defendants' knowledge of the costs being incurred by Plaintiff and Class Members, that Defendants failed to and refused to reimburse for the costs that Plaintiff and Class Members were mandated to incur.

<b>Deleted:</b> , and still fail and refuse, at times,

<b>Deleted:</b> for those losses and/or expenditures.

135.     As a result of Defendants' unlawful conduct, Plaintiff and Class Members have suffered damages in an amount subject to proof, to the extent they were not reimbursed for the herein-described losses and/or expenditures.

136.     Pursuant to Labor Code section 2802, Code of Civil Procedure sections 1021.5 and 1032, and Civil Code section 3287, Plaintiff and Class Members are entitled to recover reimbursement for their herein-described losses and/or

<b>Deleted:</b> FIRST

expenditures, reasonable attorneys' fees and costs of suit.

## DEMAND FOR JURY TRIAL

137.     Plaintiff demands a trial by jury on all causes of action contained herein.

## PRAYER

WHEREFORE, on behalf of Plaintiff and Class Members, Plaintiff prays for judgment against Defendants as follows:

A.     An order certifying this case as a Class Action;

B.     An Order appointing Plaintiff as Class representative and appointing Plaintiff's counsel as class counsel;

C.     Damages for all wages earned and owed, including minimum, and overtime wages, under Labor Code sections 510, 558.1, 1194, 1197 and 1199;

D.     Liquidated damages pursuant to Labor Code sections 558.1 and 1194.2;

E.     Damages for unpaid premium wages from missed meal and rest periods under, among other Labor Code sections, 512, 558.1 and 226.7;

F.     Penalties for inaccurate wage statements under Labor Code sections 226, subdivision (e) and 558.1;

G.     Waiting time penalties under Labor Code sections 203 and 558.1;

H.     Damages under Labor Code sections 2802 and 558.1;

I.     Damages under Labor Code section 404;

J.     Preliminary and permanent injunctions prohibiting Defendants from further violating the California Labor Code and requiring the establishment of appropriate and effective means to prevent future violations;

K.     Restitution of wages and benefits due which were acquired by means of any unfair business practice, according to proof;

L.     Prejudgment and post-judgment interest at the maximum rate allowed

by law;

M. For attorneys' fees in prosecuting this action;

N. For costs of suit incurred herein; and

O. For such other and further relief as the Court deems just and proper.

Dated: March 8, 2024          BIBIYAN LAW GROUP, P.C.


BY: /s/ Sarah H. Cohen
DAVID D. BIBIYAN
JEFFREY D. KLEIN
SARAH H. COHEN
Attorneys for Plaintiff MACKENZIE ANNE
THOMA on behalf of herself and all others
similarly situated

Deleted: *<object><object><object><object>*