1            UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3         HONORABLE WESLEY L. HSU, U.S. DISTRICT JUDGE

4

5    MACKENZIE ANNE THOMA, a.k.a.        )
     KENZIE ANNE, on behalf of herself   )
6    and all others similarly situated   ) CASE NO.
     employees,                          ) 23-CV-04901-WLH
7                                        )
                      Plaintiffs,        )
8                                        )
            vs.                          )
9                                        )
     VXN GROUP LLC, a Delaware limited   )
10   liability company; STRIKE 3        )
     HOLDINGS, LLC, a Delaware limited   )
11   liability company; GENERAL MEDIA    )
     SYSTEMS, LLC, a Delaware limited    )
12   liability company; MIKE MILLER, an  )
     individual; and DOES 1 to 100,      )
13   inclusive,                          )
                                        )
14                    Defendants.        )
     _____)
15

16

17           REPORTER'S TRANSCRIPT OF PROCEEDINGS

18              FRIDAY, JANUARY 5, 2024

19                  10:01 A.M.

20             LOS ANGELES, CALIFORNIA

21

22

23   _____

24        MAREA WOOLRICH, CSR 12698, CCRR
          FEDERAL OFFICIAL COURT REPORTER
          350 WEST FIRST STREET, SUITE 4311
25        LOS ANGELES, CALIFORNIA 90012
              mareawoolrich@aol.com

UNITED STATES DISTRICT COURT

1                    **APPEARANCES OF COUNSEL:**

2

3    **FOR PLAINTIFF:**

4        BIBIYAN LAW GROUP, P.C.
         By:  Sarah H. Cohen
5        8484 Wilshire Boulevard, Suite 500
         Beverly Hills, CA 90211
6        (310) 438-5555

7

8    **FOR DEFENDANTS:**

9        KANE LAW FIRM
         By:  Brad S. Kane
         By:  Eric Clopper
10       1154 S. Crescent Heights Boulevard
         Los Angeles, CA 90035
11       (323) 697-9840

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

```
 1              LOS ANGELES, CALIFORNIA; FRIDAY, JANUARY 5, 2024

 2                          10:01 A.M.

 3                            -oOo-

 4

 5              THE COURTROOM DEPUTY:  Calling Item No. 2,

 6   LA 23-CV-4901, Mackenzie Anne Thoma versus VXN Group LLC,

 7   et al.

 8              Counsel, please state appearances starting with

 9   plaintiff.

10              MS. COHEN:  Good morning.  Sarah Cohen appearing on

11   behalf of plaintiff.

12              MR. KANE:  Good morning, Your Honor.  Brad Kane and

13   Eric Clopper appearing on behalf of defendants.

14              THE COURT:  All right.  Good morning to all of you.

15              The matter is on calendar for a motion to dismiss

16   and a motion to strike under the Anti-SLAPP statute in

17   California state law.  We issued late last night a tentative in

18   the case which I assume both sides have had the opportunity to

19   review.  It's my understanding that both sides wish to have

20   oral argument anyway.

21              So Mr. Clopper?

22              MR. CLOPPER:  Yes.

23              THE COURT:  Or Mr. Kane?

24              MR. KANE:  Yes.  Thank you, Your Honor.

25              And thank you for the very well-reasoned tentative
```

1  ruling.  I wanted to just bring a few points to the Court's

2  attention.

3        With regard to the Anti-SLAPP, we are in sort of the

4  unique situation where the Anti-SLAPP defendants don't have

5  direct claims against them.  This Court had dismissed the joint

6  liability allegations from the original Complaint, added

7  constitutionally protected activities to substantiate those

8  allegations.

9        And, you know, my reading -- obviously your reading

10 matters more than mine.  But reading *Park* and *Manlin*, if we are

11 looking at what the wrongdoing is, it would be their

12 inequitable conduct in controlling these entities from which

13 their liability would arise.  And so I would ask the Court to

14 take a second look at that to see if it passes muster.

15       Otherwise, we might end up in a situation where you

16 could never have an Anti-SLAPP against joint liability

17 allegations because they are not the cause of action

18 themselves.  They are the type of claim, as it were, that

19 piggybacks on something else.  So I'm not sure how you could

20 get an Anti-SLAPP on those otherwise.  That's my first point.

21       The second point, Your Honor, is --

22       THE COURT:  I guess -- well, let me stop you for a

23 second though.

24       MR. KANE:  Sure.

25       THE COURT:  I'm not 100 percent sure I agree with

```
 1    you because I -- it seems to me that the -- the underlying
 2    conduct -- like setting aside the joint liability issue for a
 3    second.  The underlying conduct that's alleged in Amended
 4    Complaint is not, in my view, constitutionally protected
 5    activity.
 6              I realize that there's -- in this particular
 7    situation, there's not a clear line because obviously
 8    filmmaking is in and of itself constitutionally protected
 9    activity, and I don't dispute that.
10              But I also don't think that it is so broad that
11    anything that has to do with the filmmaking also makes it
12    constitutionally protected activity.
13              And in my view, the specific allegations that are
14    made in this case are not of the type that go to -- directly to
15    the filmmaking as opposed to the allegation that they are at
16    the end of the day employers and that they have obligations as
17    employers to do certain things and they didn't meet those
18    requirements.
19              MR. KANE:  Well, Your Honor, the reason why VXN
20    didn't file an Anti-SLAPP is because we agree that payment of
21    wages is not in the constitutionally protected -- even if it's
22    making film.
23              THE COURT:  Right.
24              MR. KANE:  We agree with that.  That law is clear
25    there.  The question becomes narrower when someone else who
```

1    didn't -- isn't their direct employer, you know, and their only

2    involvement is filmmaking.  Do -- are they entitled to

3    constitutional protection or protection of the Anti-SLAPP?  And

4    I would say the answer is yes because that's their only

5    connection to the case is their constitutionally protected

6    activity.  And there would be no other way to get at it.

7             And, in fact, when you look at the types of

8    activities that you use to create joint liability, whether it's

9    Labor Code Section 588.1, it requires personal involvement in

10   the decision-making.  There's some wrongful activity that they

11   should have done, or there's some inequitable fraud or

12   injustice if you are doing, you know, piercing the corporate

13   veil, alter ego.  I think that is how it ties into the

14   Anti-SLAPP because it does arise there.

15            THE COURT:  Okay.  I just want to make sure I play

16   this out entirely in my head.  So if Company A is making a film

17   and they bring in Individual B to do something like --

18   Individual B is not an employee, but they come in or whatever,

19   and it's like bringing Spielberg in to consult; right?

20   Individual B comes in and says everyone has to wear this

21   costume in this scene.  Cause of action -- you agree cause of

22   action lies against Company A, but you are saying Individual B

23   has an Anti-SLAPP?

24            MR. KANE:  Individual B has an Anti-SLAPP

25   because their only involvement that's alleged is

1    constitutionally protected activity.

2              THE COURT:  I see.  Because all that Individual B is

3    doing is creating expression?

4              MR. KANE:  Correct.

5              THE COURT:  Okay.  I understand.

6              MR. KANE:  Thank you, Your Honor.

7              The other points that I wanted to bring up have to

8    do with the motion to dismiss.  And, you know, I understand the

9    Court's decision that it is very early to decide whether or not

10   Ms. Thoma is a professional actress in this and -- because I

11   understand it's an affirmative defense.  And I ask that the

12   Court take a look at paragraph 8 of the First Amended Complaint

13   which says at line 25 on page 4, "In November of 2020, she

14   signed a contract with defendants known as VXN Media Group with

15   her entry into the adult" --

16             (Reporter clarification.)

17             MR. KANE:  I'm sorry.  When I get anxious, I talk

18   fast.

19             "In November of 2020, she signed a contract with

20   defendants known as VXN Media Group with her entry into the

21   adult film industry occurring on or about April 30" -- Let me

22   try -- "In November 2020, she signed a contract with defendants

23   known widely as VXN Media Group, with her entry into the adult

24   film industry occurring on or about April 30, 2021," which is

25   the, you know, only contract mentioned which is entering her

1 into the adult film industry.

2          And we have cited in our brief the *Wamboldt* case

3 which has a two-step analysis in order to have the incidental

4 work be under a different wage order.  And my request would be,

5 number one, that, if you -- since you've given them leave to

6 amend, if they could address the *Wamboldt* requirements with --

7 so we know if there's going to be evidence of this.

8          And then we can also have narrowly focused discovery

9 just on that so we don't have a huge number of subsidiary

10 issues because we will plan on filing a motion for summary

11 judgment.

12          The other piece I wanted to mention with regard to

13 that is both the 9th Circuit and the California courts are

14 clear on what is a professional.  It's somebody who does an

15 activity for remunerations opposed to a mere pastime.  And

16 that's *First California Bank v. Federal Insurance Company*, 983

17 F.2d 1076, 9th Circuit, 1992.  And that quotes a California

18 case, *Hollingsworth v. Commercial Insurance Company,* 208

19 Cal.App.3d 800 at 807, 1998.

20          And the reason why that is significant is this case

21 is about pay.  She's not paid.  So clearly she's seeking

22 remuneration for what she's done on the screen.  And she says

23 that she starred in these films.  The only other definition in

24 wage order 12 is it doesn't define professional actor, is it

25 defines, you know, what is an extra.  And those are people who,

```
 1   you know, passingly appear.  I don't think there's any question
 2   that she is an award winning actress, starred in the films, was
 3   seeking pay for it.
 4         So the question really in my mind would be going
 5   forward can she meet the Wamboldt test because she very likely,
 6   if not compellingly, is a professional actress.
 7         THE COURT:  I mean, I'm not -- I don't mean to
 8   suggest that I'm disputing what looks like a probable outcome
 9   in the case.  What I'm saying is all -- I think all I'm saying
10   is that at the Complaint stage, just in the four corners of the
11   Complaint, it's sort of difficult for me to reach that
12   conclusion.
13         MR. KANE:  Thank you, Your Honor.
14         My one ask, if I may --
15         THE COURT:  Sure.
16         MR. KANE:  -- and you are free to reject it because
17   you are the Court, is if they could be instructed to address
18   that issue in the next Complaint so we have notice because my
19   understanding is we will probably be unlikely to demur again on
20   this ground.  So we need to then probably focus -- or we'll
21   have a scheduling conference and order figuring out how we are
22   going to address it further.
23         Thank you, Your Honor.
24         THE COURT:  Thank you.
25         Okay.  Ms. Cohen?
```

1          MS. COHEN:  Thank you, Your Honor.  Good morning and

2     also happy new year.

3          THE COURT:  Happy new year.

4          MS. COHEN:  Just to touch on the Anti-SLAPP

5     issues -- Your Honor, thank you again for the detailed

6     tentative -- I think the Court has it right, and we've made it

7     clear in our pleadings that the only activity that was -- it

8     wasn't -- the only activity was not just the expression of free

9     speech; right?  What underpins these claims is the violation of

10    the wage and hour laws.

11         Just because it might be triggered or it might

12    be incidental to it doesn't satisfy the Anti-SLAPP standards.

13    So --

14         THE COURT:  I don't think Mr. Kane would disagree

15    with you on that.  What about this argument that fine, the wage

16    claims, there's nothing Anti-SLAPP about that.  But as to

17    these, you know, arguably one step removed defendants that were

18    not her employer, that the individual -- I can't remember the

19    individual defendant's name who came on and made a wardrobe

20    choice.  Why isn't that protected activity?

21         MS. COHEN:  Right.  Well, that may be protected

22    activity, but we have other factors here.  So that's, I think,

23    where the disconnect is, is that we are not only alleging that

24    Strike 3, Mike Miller, and GMS had involvement in the

25    production and the dissemination, the advertising of the film.

1  That's undisputed.  We've agreed with that.

2         What also happened though was the support for our

3  joint liability and agency type theories is that all of those

4  entities, all of those defendants were also involved in

5  controlling the wages and the working conditions of plaintiff

6  and the putative class members.  So when it comes to

7  deciding we are going to -- for example, classify them as

8  independent contractors instead of employees, each defendant

9  named in the -- in this lawsuit had a direct role in making

10  that decision.

11         And you know, that's something that I also plan to

12  touch on in terms of the joint liability arguments to come.

13  But that's I think what needs to be clear to the Court, is that

14  the only activity is not just protected activity, the free

15  speech, the advertising, the dissemination, the creation, the

16  production by any means.  Each party named here, each defendant

17  named here had a direct role in making a decision as to how we

18  are going to classify plaintiff and putative class members.

19  You know, our argument here is they were misclassified as

20  independent contractors.  They should have been employees.

21         In addition to that, decisions were made as to, for

22  example, what expenses they were going to incur to upkeep

23  their, you know, personal hygiene, the color of their nails,

24  the -- how tan they could have their skin.  Just down to just

25  really personal issues were completely controlled.

1    And each defendant had a role in that.  They all

2    worked in tandem with each other to make sure that, you know,

3    everything was uniform pretty much and how the performers were

4    going to perform, what they were going to look like on screen,

5    how they were going to be paid most importantly or not paid.

6    And so I just want the Court to understand that

7    there's different aspects to this, not just the protected

8    activity which, again, we are not disputing that exists, but

9    there's another layer to it.

10    THE COURT:  Okay.  Understood.  Next?

11    MS. COHEN:  Yes, Your Honor.

12    So I just would like clarification moving over to

13    the motion to dismiss -- and I apologize that I have my laptop.

14    I wasn't able to get to a printer when the tentative came out.

15    THE COURT:  No, that's --

16    MS. COHEN:  So, Your Honor, I think in the most

17    respectful way possible, that there might be a confusion as to

18    our overtime claim and our minimum wage claim.  So it looks

19    like in the tentative, Your Honor, it went by a standard.  The

20    minimum wage claim was analyzed by the Court under a standard

21    for overtime in terms of plaintiff having to adequately plead

22    that she worked at least 40 hours -- or more than 40 hours a

23    week and wasn't paid overtime.  And I'm just a little bit

24    confused because our minimum wage claim is actually based on

25    the failure to actually pay wages entirely.

 1          So there's an example which is paragraph 36 of

 2   Plaintiff's First Amended Complaint where we actually say that

 3   plaintiff and putative class members were never paid, for

 4   example, for time going to fittings.  And the there's plenty of

 5   other examples in Plaintiff's Complaint that adequately allege

 6   that plaintiff and putative class members performed work that

 7   went entirely unpaid.  And this was on days --

 8          THE COURT:  Can you just list for me the other

 9   paragraphs you are referring to there?

10          MS. COHEN:  I was doing my best to get them together

11   for you before this hearing.  I pulled 36 as an example.  I do

12   think it's in that area of Plaintiff's First Amended Complaint.

13   Let me just scroll if I can find examples.

14          But just off the top of my head, Your Honor, there

15   was travel time that plaintiff and putative class members had

16   to do to go and get manicures and pedicures, for example, and

17   also get bleaching done.  They were not paid at all for that

18   travel time.  As you know from the Complaint, Your Honor, there

19   were actually -- these preparations that they had to make for

20   personal -- I want to say hygiene, but I think there's another

21   word for it, but I think you understand what I mean, Your

22   Honor.

23          They were done on days where there wasn't the flat

24   rate that was paid for the actual filming or shooting.  These

25   were done on completely off days, maybe a day before, a couple

1    of days before, Your Honor, to actually -- so there's time

2    that's entirely unpaid which is the basis of our minimum -- one

3    of the bases of our minimum wage claims.

4            So I just would like further understanding from the

5    Court as to how that connects with having to allege that

6    plaintiff and putative class members worked over 40 hours a

7    week.  And we're happy to amend further if that's still

8    something the Court requires.

9            THE COURT:  Let me think about that.  I guess the

10   way I viewed it is that minimum wage requires some sort of

11   allegation in terms of total hours; right?  So if they got

12   paid -- just a hypothetical, if they get paid a thousand

13   dollars to do something, if you are saying that they should

14   have been hourly instead of given that independent contractor

15   payment amount, there still has to be some allegation in the

16   Complaint that says the total number of hours they worked

17   multiplied by minimum wage was greater than a thousand dollars;

18   right?

19           MS. COHEN:  I don't think so, Your Honor.  I think,

20   you know, the big issue here, Your Honor, and why, you know,

21   respectfully it's not proper to have this analysis at the

22   pleading stage is because this is mainly going to damages.  I

23   mean, we are dealing with plaintiff and a putative class that

24   were paid on a flat-rate basis.

25           And to force plaintiff at this stage to actually

1   break down those calculations now looking at, you know, the

2   entire class period and breaking down specific days where work

3   was performed, work was not performed, compensated by the

4   improper flat rate or uncompensated, I think there's an issue

5   that should be -- that's a factual issue that would be better

6   developed later down the line once we can do discovery and also

7   maybe even an issue that better at the damages stage.

8          But I think at the pleading stage, Your Honor, stage

9   and even with the *Twombly* plausible standard, it's plausible

10  that minimum wage wasn't paid because we sufficiently alleged

11  that there was work performed that went entirely unpaid.  And

12  this is on days where the flat rate wasn't being earned,

13  non-shooting or filming or photograph for the modeling days

14  completely separate from the shoots, Your Honor.

15          THE COURT:  Okay.  Thank you.

16          MS. COHEN:  And I apologize, Your Honor.  Let me

17  just see what else I have.

18          Right, Your Honor, and so the inaccurate wage

19  statements, I think what the issue -- I think the issue here

20  can be resolved.  So respectfully, Your Honor, if there's any

21  possible way that the Court, you know, could give leave to

22  amend on this, I think I know what the issue is.

23          So first of all, the case that was relied on -- and

24  I'm trying to find the name.  I apologize -- it doesn't

25  actually require that you give a factual exemplar of an

1   inaccurate wage statement.  I think that in that case it was

2   just a factor of not having a factual exemplar because the

3   plaintiff in that case had actually alleged that they received

4   an inaccurate wage statement.

5          Here it's a little bit different.  So I don't think

6   that case would apply in that sense in that because plaintiff

7   and the putative class members were misclassified, they were

8   never furnished with wage statements.

9          THE COURT:  There were no wage statements.

10         MS. COHEN:  No wage statements.  So if there's any

11  way the Court would give leave to amend so that we could

12  clarify that it's about no wage statements, not inaccurate wage

13  statements, we are willing to drop that from the Complaint

14  about inaccurate wage statements.  This is about no wage

15  statements.  Labor Code 226 requires employees to receive wage

16  statements.  There were none.  How can we prove a negative?

17  Plaintiff and putative class members never received wage

18  statements because they were misclassified as independent

19  contractors.

20         And one suggestion I have, Your Honor, I think what

21  the issue here is the factual exemplar -- actually that was on

22  another issue.  Just strike that.  Sorry, Your Honor.

23         Okay.  So moving on from there, the business expense

24  claim.  So here I'm not -- I just need clarification from the

25  Court as to why the Court is taking the position that plaintiff

1    is required under the law to actually request reimbursement;

2    right?  The law is different.  California law states that, if

3    the employer knew or had reason to know, that, you know, an

4    employee was incurring business expenses, they have an

5    obligation to reimburse those business expenses.

6           And as you know already from this case, the

7    plaintiff and putative class members had very specific

8    contracts as to how they -- personal grooming.  That's the word

9    I was looking for earlier, Your Honor -- as to what they needed

10   to do to upkeep their personal grooming in terms of the color

11   of their nails and piercings, the anal bleaching, for example,

12   the color of their hair, any plastic surgery.  I mean, these

13   were things that had to be upkept and done on the terms of all

14   of the defendants; right?

15          So defendants -- it's reasonable to presume,

16   Your Honor, that defendants knew that these expenses were being

17   incurred.  And the law doesn't require that plaintiff actually

18   request reimbursement.  And I think, again, this is something

19   that we can cure by amending the Complaint because I think

20   where the confusion is is that we state in our First Amended

21   Complaint that defendants have refused and continue to fail to

22   refuse to reimburse the business expenses.  And so I think

23   that's maybe giving the impression that plaintiff at one point

24   requested reimbursement and it was refused.  And so I think

25   that's what's causing the confusion.

1          THE COURT:  Well, I don't know that it's confusion.

2     There is a -- the case that I cite from one of my colleagues

3     back in 2020 suggests to me the language in the *Ellsworth* case

4     suggests to me that the plaintiff does have some duty to say

5     that they sought reimbursement.  And the quote is "expected to

6     allege if he unsuccessfully sought reimbursement for necessary

7     shoes."

8          And that's sort of part and parcel.  I mean, how are

9     the defendants supposed to be aware of an expense?  Granted,

10    assume for the sake of argument that -- because we are at the

11    pleading stage, that they knew that the contract required

12    certain personal grooming.  But they don't have any idea how

13    much it costs each one of those, you know, sessions, you know,

14    just pick one, costs for the plaintiff to go and have done.

15    How are they supposed to know how much they are going to

16    reimburse for or reimbursement the is requested for?

17         MS. COHEN:  I appreciate, Your Honor.  But I

18    think -- I haven't had a chance to review the entire case.  But

19    I think in the *Ellsworth* case, I think maybe that there were --

20    I reviewed it briefly.  There were facts there that suggested

21    that a request for reimbursement was made and then it wasn't

22    alleged in the Complaint.  It was something like that.

23         But I think the bottom line here is that it's -- I

24    just think that it would be improper to entirely dismiss that

25    claim at the pleading stage because we do allege that business

1    expenses were incurred.  We amended the Complaint to add

2    specific business expenses with amounts on there; right?

3             And I understand and appreciate the Court's point,

4    well, how much would defendants know to reimburse?  I don't

5    think that that should be a determining factor of whether the

6    claim is entirely dismissed or not.  I think the main factor to

7    consider is that it's plausible at the pleading stage that the

8    defendants knew that these expenses were being incurred.  They

9    see them on the set.  I mean, they have to check.  Defendants

10   have to actually check that plaintiff and putative class

11   members have complied with the personal grooming requirements

12   before they go on camera whether it's for photographs or

13   whether it's for videos.

14            So I think that we adequately plead here that

15   defendants knew or had reason to know that business expenses

16   were being incurred.  And in addition to that, defendants knew

17   or had reason to know they weren't reimbursing them.  I think

18   defendants are in the best possible position to know whether

19   they are reimbursing for business expenses.

20            THE COURT:  Yes.  That I understand, yes.

21            MS. COHEN:  Right.

22            THE COURT:  Sure.

23            MS. COHEN:  But if there's additional detail that

24   the Court would like, we can work on it.  I would just, you

25   know, respectfully request that we are given leave to amend on

```
 1   that.
 2          THE COURT:  Okay.
 3          MS. COHEN:  On that cause of action, Your Honor.
 4   Thank you.
 5          And I guess my last point to cover would be the
 6   joint liability issues.  So going back to when I was
 7   discussing the Anti-SLAPP, Your Honor, we are working on a
 8   plausible standard; right?  And so what we have added to the
 9   First Amended Complaint I think brings this just beyond
10   conclusory allegations.
11          For example, with Mike Miller, we give specific
12   examples as -- and detail Mike Miller's involvement being
13   the -- the -- the founder -- one of the co-founders, the
14   principal, one of the executives.  I mean, what we are alleging
15   here I think makes it clear that Mike Miller is not just, you
16   know, on set directing, for example.  Mike Miller is actually
17   behind the scenes making decisions with the other defendants as
18   to how plaintiff and putative class members will be paid and
19   exactly what's involved in -- in -- in performing; right?
20          And so it's direct control over the -- over the
21   wages and the working conditions of plaintiff and the putative
22   class members.  And the same goes for Strike 3 as well in terms
23   of the policies and procedures of the company; right?
24          And again, Your Honor, the main thing here is the
25   misclassification; right?  Strike 3, GMS, Mike Miller, VXN,
```

```
 1    they all worked at one to say right, this is going to be the
 2    nature of our business.  This is how we are paying our
 3    employees.  This is how they are going to perform.  This is how
 4    they are going to look on set.  It's everyone making the
 5    decision together.  And I think that the First Amended
 6    Complaint adequately pleads that in terms of breaking down each
 7    defendant's involvement.
 8            THE COURT:  Well, okay.  So leaving aside Mr. Miller
 9    who I think I understand what you mean in terms of his personal
10    involvement in those decisions, what did Strike 3 as an entity
11    do with respect to those decisions that you are talking about
12    right now?
13            MS. COHEN:  So I believe that Strike 3 was the --
14    not only the copyright holder, Your Honor, but also was
15    involved in the development of the film as well.  And I'd say,
16    you know --
17            THE COURT:  What does that mean, the development of
18    the film?
19            MS. COHEN:  Well, in making decisions as to the
20    production; right?  When are we going to release it.  How are
21    we going to release it.
22            And again, Your Honor, there's -- I wanted to pull
23    it up for you, Your Honor, but at this stage, at the pleading
24    stage, it's -- I just -- it's defendants that are going to be
25    in possession of this information; right?  So Plaintiff's
```

1   Complaint alleges that in a nutshell they worked as one, they

2   worked in tandem, they all had direct control over the wages

3   and working conditions of plaintiff and the putative class;

4   right?

5           But I think anything deeper and further into that,

6   that's something that's more proper for once we -- to develop

7   once we've had a chance to conduct discovery; right?  It's

8   unlikely that any plaintiff or putative class members are going

9   to have that information.  That's something that we need to

10  discover through the discovery process which we have been

11  trying for a while to get to, Your Honor, but are faced with

12  these motions which, you know, that's just litigation,

13  Your Honor.

14          But, you know, I think what the Court might be

15  looking for is something that's proper past the pleading stage.

16  I think what we've pled --

17          THE COURT:  Maybe.  But also maybe not.  I mean,

18  because the same would be true if I dismiss Strike 3 now and

19  there's discovery as to Mr. Miller and to the surviving

20  defendant that shows that Strike 3 made some specific decision.

21  You know, there's an -- you know, you find in an e-mail where

22  Strike 3 says these people are all independent contractors.

23  They are never to be classified as wage earners.  You could

24  presumably then amend because now you have -- now you have the

25  evidence to make the allegation.

1        I think that there -- to me there has to be

2   something a little more concrete even at this stage as to what

3   Strike 3 did specifically, what decision did Strike 3 make,

4   what decree or resolution or order did Strike 3 make that, you

5   know, brings them into the purview of the lawsuit.

6        MS. COHEN:  Right.  And we do have that in our First

7   Amended Complaint, Your Honor.  And we did add details.  I'm

8   just trying to get to it for you.  I believe it's --

9        THE COURT:  Take your time.  Just tell me what the

10  paragraph number is.

11       MS. COHEN:  Yes.  It starts at 9 and moving down.

12  So we go through -- at paragraph 10 we go through VXN Media

13  Group and describe their involvement.  Moving down to 14, we

14  cover General Media, and I think we are getting to Strike 3.

15  Under joint liability maybe?  I apologize, Your Honor, that I

16  didn't have this ready for you.

17       THE COURT:  Okay.

18       MS. COHEN:  I apologize, Your Honor.  I don't want

19  to keep the Court waiting.  But I think, you know, my main

20  point Your Honor, is that what we have alleged in the Complaint

21  as to how Strike 3, Miller, GMS, and VXN all have pretty much

22  acted as one all together behind the scenes to actually decide

23  how the wages and the working conditions have direct control

24  over the wages and working conditions that we've met the

25  pleading standard.

1    And we did cite case law that states -- and I'm

2  trying to switch over between my documents to find it for

3  you -- which supports the notion that allegations that need

4  further factual development are not proper for dismissal.  And

5  something like the connection between these defendants, which

6  is kept pretty secretive, is something that's -- needs further

7  factual development.

8    And, you know, plaintiff and putative class members,

9  they have the right to conduct discovery as to how everything

10  was working behind the scenes.  But for pleadings standard

11  purposes, Your Honor, we -- we plead facts to support that the

12  joint employer allegations and the alter ego allegations.  It's

13  just -- it's a prime example of something that's pretty much

14  mainly in defendants' knowledge and suitable for further

15  factual development.

16    Thank you.

17    THE COURT:  Okay.

18    MS. COHEN:  I think I covered everything.

19    THE COURT:  Okay.  Thank you very much.

20    MS. COHEN:  Thank you, Your Honor.

21    THE COURT:  Mr. Kane?

22    MR. KANE:  Yes.  Thank you.

23    First off, you know, one of the problems with this

24  case are the pleadings, and as we initially discussed, many of

25  them are boilerplate, and it's hard to understand which is why

1    we made these motions.

2           And, you know, my understanding from the Complaint

3    is they were paid by the job; right?  That's pretty clear.  And

4    now it's changing into some other arrangement which, if you

5    allow them to amend, we are going to challenge as a sham

6    pleading because it's the same thing with the exemplars.  Well,

7    you didn't give it to us, they weren't accurate, but now we

8    lost, so now we want to change our theory again.  And I think

9    the Court's tentative should stand as is.

10          And I will just go back to in closing, the things

11   that plaintiff's counsel has pointed to are all the things that

12   are the constitutionally protected activities, but none of it

13   says -- like, for example, Mike Miller.  Well, he was involved

14   with creating policies and procedures.  What does that mean?

15   They don't allege he did anything wrong.  They don't allege

16   that he did this.

17          So I think the Court's tentative should stand, and I

18   think we should narrowly focus the case on the issue of whether

19   or not Wage Order 12 applies.  And if Wage Order 12 does not

20   apply, then we can address some of these other issues.  But

21   otherwise it's going to spiral because in the state court

22   actions -- they had two:  The one you remanded.  They filed a

23   PAGA action.  We got them related and the judge, Judge Kuhl,

24   stayed that case, both of them.  Took everything off calendar

25   and said we are going to, as a matter of comity, follow this

1   Court's lead.  And so we will be reporting back.

2          So if we can narrowly focus what we are doing, I

3   think we can get through this much quicker.  Their proposal is

4   let's make everything and make it as expensive as possible for

5   the defendants who have done nothing wrong, and there's no

6   indication that they wouldn't have ability to pay --

7          THE COURT:  I don't think Ms. Cohen agrees with you

8   about they've done nothing wrong.

9          MR. KANE:  She is a worthy opponent, and we

10  vehemently disagree on the facts and the law.  Thank you.

11         THE COURT:  Okay.  All right.  The matter is taken

12  under submission.

13         Ms. Cohen, I'm going to order you to within a week

14  from today, please file a redlined copy of the Complaint as

15  against the First Amended Complaint so that I can see clearly

16  the changes that were made between the two.

17         We've done one by hand, but I'm not 100 percent

18  confident in its accuracy.  So if you could file one, that

19  would be appreciated.

20         MS. COHEN:  Of course, Your Honor.  I apologize that

21  an attempt to do it by hand, anyone had to go through that.  A

22  simple contact to us we would have had a redlined Complaint

23  with the Court within ten minutes.

24         THE COURT:  No problem.

25         MS. COHEN:  Maybe less.

1            THE COURT:  All right.  Please file that by next

2    Friday so we can look at that before we issue the order.  Okay?

3            MS. COHEN:  Thank you, Your Honor.

4            MR. KANE:  Thank you, Your Honor.

5            MR. CLOPPER:  Thank you, Your Honor.

6            THE COURTROOM DEPUTY:  All rise.

7            (At 10:39 a.m. the proceedings adjourned.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

1          **CERTIFICATE OF OFFICIAL REPORTER**

2

3

4

5          I, MAREA WOOLRICH, FEDERAL OFFICIAL REALTIME

6    COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT

7    FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY

8    THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE

9    THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

10   STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

11   ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT

12   IS IN CONFORMANCE WITH THE REGULATION OF THE JUDICIAL

13   CONFERENCE OF THE UNITED STATES.

14

15

16                    DATED THIS  20TH  DAY OF MARCH, 2024.

17

18

19               /S/ MAREA WOOLRICH

20               _____
                 MAREA WOOLRICH, CSR NO. 12698, CCRR
21               FEDERAL OFFICIAL COURT REPORTER

22

23

24

25

**UNITED STATES DISTRICT COURT**