**KANE LAW FIRM**
Brad S. Kane (SBN 151547)
bkane@kanelaw.la
Eric Clopper (SBN 346031)
eclopper@kanelaw.la
1154 S. Crescent Heights. Blvd.
Los Angeles, CA 90035
Tel:  (323) 697-9840
Fax: (323) 571-3579

Trey Brown (SBN 314469)
trey.brown@vixenmediagroup.com
11337 Ventura Blvd.
Studio City, CA 91604

Attorneys for Defendants
VXN GROUP LLC; STRIKE 3 HOLDINGS, LLC;
GENERAL MEDIA SYSTEMS, LLC; and
MIKE MILLER

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| MACKENZIE ANNE THOMA, a.k.a. KENZIE ANNE, an individual and on behalf of all others similarly situated,<br><br>        Plaintiff,<br>v.<br><br>VXN GROUP LLC, a Delaware limited liability company; STRIKE 3 HOLDINGS, LLC, a Delaware limited liability company; GENERAL MEDIA SYSTEMS, LLC, a Delaware limited liability company; MIKE MILLER, an individual; and DOES 1 to 100, inclusive,<br><br>        Defendants. | Case No. **2:23–cv–04901 WLH (AGRx)**<br><br>**DECLARATION OF BRAD S. KANE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Date:         April 26, 2024<br>Time:         1:30 pm or later<br>Courtroom:    9B<br><br>[*Filed concurrently with Defendants' Notice of Motion and Motion to Dismiss Plaintiff's Second Amended Complaint; [Proposed] Order*]<br><br>Complaint Filed:   April 20, 2023<br>Removed:              June 21, 2023 |

DECLARATION OF BRAD S. KANE IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

I, Brad S. Kane, hereby declare as follows:

1.    I am an attorney licensed to practice law in the State of California since 1990, the State of Alaska since 1991 and Washington State since 2003. I am the owner of the Kane Law Firm ("KLF"), and counsel for Defendants VXN Group LLC ("VXN"), Strike 3 Holdings, LLC ("Strike 3"), General Media Systems, LLC ("General Media"), and Mike Miller ("Miller") (collectively, "Defendants").  I am personally familiar with, and, if called upon, could and would testify to the facts contained herein from my personal knowledge.

2.    On March 7, 2024, pursuant to Local Rule 7-3, I and my senior associate, Eric Clopper ("Clopper"), thoroughly met and conferred with Plaintiff's counsel Sarah Cohen ("Cohen") and Rafael Yedoyan ("Yedoyan") on March 7, 2024, regarding the new allegations in Plaintiff's SAC and the grounds upon which Defendants would move to dismiss them.

3.    During our March 7, 2024 meet and confer, the parties discussed at length Plaintiff's anticipated new allegations in the SAC based on: (i) the Court's February 16, 2024 ruling; and (ii) issues successfully raised in Defendants' Motion to Dismiss Plaintiff's First Amended Complaint.

4.    Also during our March 7, 2024 meet and confer, both sides discussed the outstanding pleading issues to be resolved by this Court, including: (i) Plaintiff's alter ego allegations; (ii) Plaintiff's failure to meet the *Landers* standard to state a minimum wage claim; (iii) Plaintiff's new claim that she never received wage statements, which directly contradict allegations in both the Complaint and the FAC; and (iv) Plaintiff's failure to plead one example when Defendants refused to provide a necessary work-related reimbursement pursuant to this Court's order dismissing the FAC. Clopper and I were unable to reach any agreements with Cohen and Yedoyan during this meeting. On March 20, 2024, Clopper emailed

---

1

DECLARATION OF BRAD S. KANE IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Cohen and Yedoyan to try and meet and confer once more prior to Defendants' filing this motion, but neither Cohen nor Yedoyan responded to Clopper's email.

5.       Attached as **Exhibit 1** is a true and correct copy of the Complaint Plaintiff filed against Defendants in Los Angeles Superior Court on July 11, 2023, under the Private Attorneys' General Act in the Superior Court of California for the County of Los Angeles, entitled *Mackenzie Anne Thoma, a.k.a. Kenzie Anne v. VXN Group LLC; Strike 3 Holdings, LLC; General Media Systems, LLC; Mike Miller; and DOES 1 through 100, inclusive*, Case No. 23STCV16142.

6.       Attached as **Exhibit 2** is a true and correct copy of the transcript prepared by Court Reporter Marea Woolrich of this Court's January 5, 2024 hearing on Defendants' Motion to Dismiss Plaintiff's First Amended Complaint and Anti-SLAPP motion.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 22, 2024 at Los Angeles, California.

*/s/ Brad S. Kane*
Brad S. Kane

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

DECLARATION OF BRAD S. KANE IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Exhibit 1

Electronically FILED by
Superior Court of California,
County of Los Angeles
7/11/2023 12:25 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By E. Galicia, Deputy Clerk

**BIBIYAN LAW GROUP, P.C.**
David D. Bibiyan (SBN 287811)
*david@tomorrowlaw.com*
Jeffrey D. Klein (Cal. Bar No. 297296)
*jeff@tomorrowlaw.com*
Sarah H. Cohen (Cal. Bar No. 330700)
*sarah@tomorrowlaw.com*
8484 Wilshire Boulevard, Suite 500
Beverly Hills, California 90211
Tel: (310) 438-5555; Fax: (310) 300-1705

Attorneys for Plaintiff, MACKENZIE ANNE THOMA,
as an aggrieved employee, and on behalf of all other
aggrieved employees

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| MACKENZIE ANNE THOMA, a.k.a. KENZIE ANNE, as an aggrieved employee, and on behalf of all other aggrieved employees under the Labor Code Private Attorneys' General Act of 2004, <br><br> Plaintiff, <br><br> v. <br><br> VXN GROUP LLC, a Delaware limited liability company; STRIKE 3 HOLDINGS, LLC, a Delaware limited liability company; GENERAL MEDIA SYSTEMS, LLC, a Delaware limited liability company; MIKE MILLER, an individual; and DOES 1 through 100, inclusive, <br><br> Defendants. | CASE NO.: 23STCV16142 <br><br> **REPRESENTATIVE ACTION** <br><br> **COMPLAINT UNDER THE LABOR CODE PRIVATE ATTORNEYS' GENERAL ACT OF 2004 FOR CIVIL PENALTIES UNDER LABOR CODE SECTIONS 210, 226.3, 226.8, 558, 1174.5, 1197.1 and 2699** <br><br> **DEMAND FOR JURY TRIAL** <br><br> [Amount in Controversy Greater Than $25,000.00] |

Plaintiff MACKENZIE ANNE THOMA, as an aggrieved employee, and on behalf of all other aggrieved employees under the Labor Code Private Attorneys' General Act of 2004, alleges as follows:

## JURISDICTION AND VENUE

1.       This is a representative action, pursuant to the Labor Code Private Attorneys General Act of 2004, codified at Labor Code section 2698, *et seq.* ("PAGA"), against VXN GROUP LLC, ("VXN GROUP"), STRIKE 3 HOLDINGS, LLC ("STRIKE 3"), GENERAL MEDIA SYSTEMS, LLC ("GENERAL MEDIA") and VXN GROUP's Executive Director, MIKE MILLER (collectively, "Vixen Media Group"). (collectively, and with DOES 1 through 100, as further defined below, "Defendants"), as a proxy of the Labor and Workforce Development Agency of the State of California ("LWDA"), on behalf of Plaintiff and all other current and former non-exempt employees of Defendants working within the Civil Penalty Period, as further defined herein, and, as it pertains to the alleged claims for failure to comply with Labor Code section 6409.6, Labor Code section 2810.5, Labor Code section 203, Labor Code section 226, Labor Code section 226.8, Labor Code section 246, *et seq.*, Labor Code section 432, Labor Code section 1198.5, Labor Code section 2802, restraints on competition, whistleblowing and freedom of speech on behalf of all employees of Defendants working within the Civil Penalty Period (collectively, "Aggrieved Employees").

2.       Jurisdiction exists in the Superior Court of the State of California pursuant to Code of Civil Procedure section 410.10.

3.       Venue is proper in Los Angeles County, California pursuant to Code of Civil Procedure sections 392, et seq. because, among other things, Los Angeles County is where the causes of action complained of herein arose; the county in which the employment relationship began; the county in which performance of the employment contract, or part of it, between Plaintiff and Defendants was due to be performed; the county in which the employment contract, or part of it, between Plaintiff and Defendants was actually performed; and the county in which Defendants, or some of them, reside.  Moreover, the unlawful acts alleged herein have a direct effect on Plaintiff and Aggrieved Employees in Los Angeles County, and because Defendants employ numerous Aggrieved Employees in Los Angeles County.

4.      Plaintiff is an "aggrieved employee" under PAGA, as Plaintiff was employed by Defendants during the applicable statutory period and suffered one or more of the Labor Code violations set forth herein.  Accordingly, Plaintiff seeks to recover civil penalties, as the term "civil penalty" is defined under *ZB N.A. v. Superior Court* (2019) 8 Cal.5th 175, under the Labor Code Private Attorneys General Act of 2004, codified at Labor Code section 2698, *et seq.* ("PAGA") plus reasonable attorneys' fees and costs, for Plaintiff and all other aggrieved current and former employees of Defendants during the Civil Penalty Period.

5.      Specifically, Plaintiff seeks to recover PAGA civil penalties through a representative action permitted by PAGA and the California Supreme Court in, among other authorities, *Arias v. Superior Court* (2009) 46 Cal.4th 969.  According to the same authorities, class certification of the PAGA allegations described herein is not required.

6.      During the period beginning one (1) year preceding the provision of notice to the LWDA regarding the herein-described Labor Code violations (the "Civil Penalty Period"), Defendants violated, *inter alia*, Labor Code sections 98.6, 201, 202, 203, 204, 210, 226, 226.3, 226.7, 226.8, 227.3, 246, 2802, 432, 510, 512, 558, 1174, 1174.5, 1194, 1197, 1197.1, 1198.5, 2699, 2802, 2810.5, 6409.2 among others.

7.      Labor Code section 2699, subdivisions (a) and (g), authorizes aggrieved employees such as Plaintiff, on behalf of Plaintiff and all other aggrieved current and former employees within the statutory period, to bring a civil action to recover civil penalties pursuant to the procedures specified in Labor Code section 2699.3.

8.      On April 17, 2023, Plaintiff provided written notice pursuant to Labor Code section 2699.3 online and by certified mail, with return receipt requested, of Defendants' violation of various, including the herein-described, provisions of the Labor Code, to the LWDA, as well as by certified mail, with return receipt requested to Defendants, and each of them.

9.      Pursuant to Labor Code section 2699.3, subdivision (a)(2)(A), the LWDA did not provide notice of its intention to investigate Defendants' alleged violations within sixty-five (65) calendar days of the April 17, 2023 postmarked date of the herein-described notice sent by Plaintiff to the LWDA and Defendants.

1

**PAGA REPRESENTATIVE ALLEGATIONS**

2   10.    At all relevant times mentioned herein, Defendants had and have a policy or practice

3   of failing to pay overtime wages to Plaintiff and other Aggrieved Employees in the State of

4   California in violation of California state wage and hour laws as a result of, without limitation,

5   Plaintiff and other Aggrieved Employees working over eight (8) hours per day, forty (40) hours per

6   week, and/or seven (7) straight workdays in a workweek without paying them proper overtime

7   wages, as a result of, without limitation, willful misclassification. Consequently, Employee is

8   informed and believes, and based thereon alleges, that Employer violated Labor Code sections 510,

9   1194, and applicable Wage Orders based on its practice of providing total compensation that is less

10  than the required legal overtime compensation for the overtime worked, to the detriment of Plaintiff

11  and other Aggrieved Employees.

12   11.    At all relevant times mentioned herein, Defendants had and have a practice or policy

13  of failing to compensate Plaintiff and other Aggrieved Employees with minimum wages for all hours

14  worked or otherwise under Defendants' control. As such, Plaintiff is informed and believes, and

15  based thereon alleges, that Employer violated, without limitation, Labor Code sections 221, 223,

16  1197, 1182.12, and applicable Wage Orders based on its continued failure to pay minimum wages

17  for all hours worked, entitling Plaintiff and other aggrieved employees to actual and liquidated

18  damages under, without limitation, Labor Code sections 1194 and 1194.2.  Employer would also be

19  liable for civil penalties pursuant to Labor Code sections 558, 1197.1, and 2699.

20   12.    At all relevant times mentioned herein, Defendants had and have a policy or practice

21  of failing to provide Plaintiff and other Aggrieved Employees a thirty (30) minute uninterrupted,

22  timely, and complete meal period for days on which the employee worked in excess of five (5) and

23  ten (10) hours per day without being afforded uninterrupted, timely, and complete 30-minute meal

24  periods or compensation in lieu thereof including, without limitation, by interrupting meal periods;

25  not providing timely meal periods; failing to provide first and second meal periods; providing short

26  meal periods; requiring that employees carry cellular telephones or walkie-talkies during meal

27  periods; not permitting employees to leave the premises; otherwise requiring on-duty/on-call meal

28

4

periods; and/or auto-deducting meal periods that could not be auto-deducted by law or during which employees worked, as required by California wage and hour laws.

13.    At all relevant times mentioned herein, Defendants had and have a policy or practice of failing to provide Plaintiff and other Aggrieved Employees paid, uninterrupted, timely, and complete rest periods of at least ten (10) minutes per four (4) hours worked or major fractions thereof, or compensation in lieu thereof, including, without limitation, by failing to provide rest periods all together; requiring that they be bundled together and/or with meal periods; interrupting them; requiring that employees carry cellular telephones or walkie-talkies during rest periods not providing them in a timely fashion; and not permitting employees to leave the premises; and/or otherwise requiring on-duty/on-call rest periods, as required by California wage and hour laws.

14.    At all relevant times mentioned herein, Defendants had and have a policy or practice of failing to comply with Labor Code section 226, subdivision (a) by intentionally failing to furnish Plaintiff and other Aggrieved Employees with itemized wage statements that accurately reflect gross wages earned; total hours worked by the employee; net wages earned; all deductions; all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee; the legal name of the employer and/or the name and address of the legal entity securing the employer's services if the employer is a farm labor contractor; and other such information as required by Labor Code section 226, subdivision (a).

15.    At all relevant times mentioned herein, Defendants had and have a policy or practice of failing to comply with Labor Code section 226, subdivision (a) by intentionally failing to furnish Plaintiff and other Aggrieved Employees with documents signed to obtain or hold employment under Labor Code section 432, personnel records under Labor Code section 1198.5, and time records under Labor Code section 1174, making it difficult for Plaintiff and other Aggrieved Employees to calculate their unpaid wages and/or premium payments, to the detriment of Plaintiff and other Aggrieved Employees.

16.    At all relevant times mentioned herein, Defendants had and have a policy or practice of failing to timely pay Plaintiff and other Aggrieved Employees, among other wages, all wages owed as a result of Defendants' practice or policy of failing to pay, among other wages, overtime

wages, minimum wages, premium wages, paid time off and vacation time owed as required by Labor Code sections 201, 202, and 203.

17.     At all relevant times herein, Defendants had and have a policy or practice of failing to pay Plaintiff and Aggrieved Employees their paid time off and vacation time owed upon separation of employment as wages at their final rate of pay in violation of Labor Code section 227.3 and applicable Wage Orders.

18.     At all relevant times mentioned herein, Defendants have had a policy or practice of failing and refusing, and continue to fail and refuse, to reimburse employees, including, without limitation, Plaintiff and other Aggrieved Employees, with their costs incurred, in direct consequence of the discharge of their duties, or of their obedience to the directions of Defendants, as required by Labor Code section 2802, and other statutory and common law offenses.  As a result, Employer are liable to reimburse Employee and other aggrieved employees for these costs incurred in furtherance of work duties.  In addition, Defendants would be liable for civil penalties pursuant to Labor Code sections 558 and 2699.

19.     At all relevant times mentioned herein, Defendants have had a policy or practice of failing to comply with the notice requirements of Labor Code section 2810.5 (*i.e.*, the Wage Theft Protection Act of 2011) by, among other things, failing to provide Plaintiff and other Aggrieved Employees with the rates of pay and overtime rates of pay applicable to their employment; allowances claimed as part of the minimum wage; the regular payday designated by Defendants; the name, address, and telephone number of the workers' compensation insurance carrier; information regarding paid sick leave; and other pertinent information required to be disclosed by Defendants under Labor Code section 2810.5.

20.     At all relevant times mentioned herein, Defendants have had a policy or practice of failing to pay Plaintiff and Aggrieved Employees their wages in accordance with Labor Code Section 204, which requires that: "[l]abor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month."

REPRESENTATIVE ACTION COMPLAINT

21.    At all relevant times mentioned herein, Defendants had and have a policy or practice of preventing Plaintiff and/or Aggrieved Employees from using or disclosing the skills, knowledge and experience they obtained at Defendants for purposes of competing with Defendants, including, without limitation, preventing Employees from disclosing their wages in negotiating a new job with a prospective employer, and from disclosing who else works at Defendants and under what circumstances that they might be receptive to an offer from a rival employer.  Plaintiff is informed and believes that this policy and/or practice violates Business and Professions Code sections 17200, 16600 and 16700, and, by virtue thereof, various provisions of the Labor Code, including Labor Code sections 232, 232.5, and 1197.5, subdivision (k).

22.    Defendants had and have a policy or practice of preventing Plaintiff and/or other Aggrieved Employees from disclosing violations of state and federal law, either within Defendants to their managers or outside to private attorneys or government officials, among others, in violation of Business and Professions Code section 17200, and, thus, in violation of Labor Code section 1102.5.

23.    Plaintiff, in Plaintiff's representative capacity, seeks civil penalties under Labor Code sections 210, 226.3, 226.8, 558, 1174.5, 1197.1, and 2699 for the herein-described acts, which violate the California Labor Code as described above, including on behalf of Plaintiff and other Aggrieved Employees pursuant to PAGA.

## PARTIES

### A.    Plaintiff

24.    Plaintiff Ms. Thoma, a resident of the State of California, is a decorated and well-known adult film actress and model who performs under the stage name "Kenzie Anne".   She has been named "Pet of the Year" by Penthouse magazine and shortly before the filing of this Complaint appeared on the cover of Hustler magazine.

25.    Before beginning her acting career, she modeled and participated in photo shoots for various clothing brands and adult magazines, such as Wet Seal, Free People, Carbon38, Playboy Plus, and Eats Channel.  In November of 2020, she signed a contract with Defendants, known widely as "Vixen Media Group", with her entry into the adult film industry occurring on or around April

30, 2021. Between November 2020 through approximately September of 2022, Ms. Thoma performed in Defendants' movies and modeled at their direction.

**B.    Defendants**

26. Plaintiff is informed and believes that defendants VXN GROUP, STRIKE 3, and GENERAL MEDIA are limited liability companies organized and existing under the laws of the State of Delaware and doing business in the County of Los Angeles, State of California.

27. VIXEN MEDIA GROUP is the creator of adult motion pictures and photographs distributed for commercial sale through various distribution outlets and platforms. It was founded in 2014 by French entrepreneur and director Greg Lansky along with partners Steven Matthyssen and Mike Miller with the goal of creating higher-quality videos that would be considered more "artistic" than the normal realm of adult video content. While Greg Lansky sold his stake in VIXEN MEDIA GROUP in January of 2020, it still owns and operates at least seven online adult film sites, including Vixen, Tushy, Blacked, Blacked Raw, Tushy Raw, Deeper and Slayed.

28. VIXEN MEDIA GROUP has won many major awards in the adult-film industry, including an XBIZ Award as recently in 2022 for Studio of the Year.

29. Plaintiff is informed and believes and based thereon alleges that defendant MILLER is, and at all times relevant hereto was, an individual residing in California, as well as a founder, principal, and the Executive Producer of VXN GROUP, and DOES 1 through 50, as further defined below. Plaintiff is further informed and believes and based thereon alleges that MILLER violated, or caused to be violated, the above-referenced and below-referenced Labor Code provisions in violation of Labor Code section 558.1.

30. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants sued herein as DOES 1 through 100, inclusive, are currently unknown to Plaintiff, who therefore sues defendants by such fictitious names under Code of Civil Procedure section 474. Plaintiff is informed and believes and based thereon alleges that each of the defendants designated herein as DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of the defendants designated hereinafter as DOES when such identities become known. Plaintiff is

REPRESENTATIVE ACTION COMPLAINT

informed and believes, and based thereon alleges, that each defendant acted in all respects pertinent to this action, as the agent of the other defendant(s), carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each defendant are legally attributable to the other defendants.  Whenever, heretofore or hereinafter, reference is made to "Defendants," it shall include VXN GROUP, STRIKE 3, GENERAL MEDIA, MILLER, and any of their parent, subsidiary, or affiliated companies within the State of California, as well as DOES 1 through 100 identified herein.

## JOINT LIABILITY ALLEGATIONS

31.    Plaintiff is informed and believes, and based thereon alleges, that at all times mentioned herein, each of the defendants was the agent, principal, employee, employer, representative, joint venture or co-conspirator of each of the other defendants, either actually or ostensibly, and in doing the things alleged herein acted within the course and scope of such agency, employment, joint venture, and conspiracy.

32.    All of the acts and conduct described herein of each and every corporate defendant was duly authorized, ordered, and directed by the respective and collective defendant corporate employers, and the officers and management-level employees of said corporate employers.  In addition thereto, said corporate employers participated in the aforementioned acts and conduct of their said employees, agents, and representatives, and each of them; and upon completion of the aforesaid acts and conduct of said corporate employees, agents, and representatives, the defendant corporation respectively and collectively ratified, accepted the benefits of, condoned, lauded, acquiesced, authorized, and otherwise approved of each and all of the said acts and conduct of the aforementioned corporate employees, agents and representatives.

33.    Plaintiff is informed and believes, and based thereon alleges, that despite the formation of the purported corporate existence of VXN GROUP, STRIKE 3, GENERAL MEDIA, MILLER , and DOES 1 through 50, inclusive (the "Alter Ego Defendants"), they, and each of them, are one and the same with DOES 51 through 100 ("Individual Defendants"), and each of them, due to, but not limited to, the following reasons:

a.  The Alter Ego Defendants are completely dominated and controlled by the

Individual Defendants who personally committed the wrongful and illegal acts and violated the laws as set forth in this Complaint, and who have hidden and currently hide behind the Alter Ego Defendants to perpetrate frauds, circumvent statutes, or accomplish some other wrongful or inequitable purpose;

b.   The Individual Defendants derive actual and significant monetary benefits by and through the Alter Ego Defendants' unlawful conduct, and by using the Alter Ego Defendants as the funding source for the Individual Defendants' own personal expenditures;

c.   Plaintiff is informed and believes, and thereon alleges, that the Individual Defendants and the Alter Ego Defendants, while really one and the same, were segregated to appear as though separate and distinct for purposes of perpetrating a fraud, circumventing a statute, or accomplishing some other wrongful or inequitable purpose;

d.   Plaintiff is informed and believes, and thereon alleges, that the business affairs of the Individual Defendants and the Alter Ego Defendants are, and at all relevant times mentioned herein were, so mixed and intermingled that the same cannot reasonably be segregated, and the same are inextricable confusion.  The Alter Ego Defendants are, and at all relevant times mentioned herein were, used by the Individual Defendants as mere shells and conduits for the conduct of certain of their, and each of their affairs.  The Alter Ego Defendants are, and at all relevant times mentioned herein were, the alter egos of the Individual Defendants;

e.   The recognition of the separate existence of the Individual Defendants from the Alter Ego Defendants would promote injustice insofar that it would permit these defendants to insulate themselves from liability to Plaintiff for violations to the Civil Code, Government Code, and other statutory violations.  The corporate existence of these defendants should thus be disregarded in equity and for the ends of justice because such disregard is necessary to avoid fraud and injustice to Plaintiff herein;

f.   Accordingly, the Alter Ego Defendants constitute the alter ego of the Individual Defendants (and vice versa), and the fiction of their separate corporate existence must be disregarded.

34.   As a result of the aforementioned facts, Plaintiff is informed and believes, and based

10

thereon alleges that Defendants, and each of them, are joint employers.

## FIRST CAUSE OF ACTION

**(Civil Penalties Under the Private Attorneys' General Act (2004) – Against All Defendants)**

35.     Plaintiff re-alleges and incorporates by reference all of the allegations set forth in the preceding paragraphs as though fully set forth hereat.

### Civil Penalties Under Labor Code § 210

36.     At all relevant times herein, Labor Code section 204, requires and required that: "[l]abor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month."

37.     At all relevant times herein, Labor Code section 210, subdivision (a) states and stated that "[i]n addition to, and entirely independent and apart from, any other penalty provided in this article, every person who fails to pay the wages of each employee as provided in Sections 201.3, 204, 204b, 204.1, 205, 205.5, shall be subject to a civil penalty as follows: (1) For any initial violation, one hundred dollars ($100) for each failure to pay each employee" and "(2) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld."

38.     At all relevant times herein, Defendants have had a consistent policy or practice of failing to pay Plaintiff and/or Aggrieved Employees during their employment on a timely basis as per Labor Code section 204.  Thus, pursuant to Labor Code section 210, Plaintiff and other Aggrieved Employees are entitled to recover civil penalties for Defendants' violations of Labor Code section 204, in the amount of one hundred dollars ($100) for each Aggrieved Employee for each initial violation per employee, and two hundred dollars ($200) for each Aggrieved Employee for each subsequent violation in connection with each payment that was made in violation of Labor Code section 204.

### Civil Penalties Under Labor Code § 226.3

39.     Defendants had and have a policy or practice of failing to comply with Labor Code

11

section 226, subdivision (a) by intentionally failing to furnish Plaintiff and Aggrieved Employees with itemized wage statements that accurately reflect gross wages earned; total hours worked; net wages earned; the name and address of each employer with whom they have been placed to work; all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate; the legal name of the employer and/or the name and address of the legal entity securing the employer's services if the employer is a farm labor contractor; and other such information as required by Labor Code section 226, subdivision (a).

40.     Labor Code section 226.3 states that "[a]ny employer who violates subdivision (a) of Section 226 shall be subject to a civil penalty in the amount of two hundred fifty dollars ($250) per employee per violation in an initial citation and one thousand dollars ($1,000) per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage deduction statement or fails to keep the records required in subdivision (a) of Section 226."

41.     Labor Code section 226.3 further provides that "[t]he civil penalties provided for in this section are in addition to any other penalty provided by law."

42.     Plaintiff is informed and believes, and based thereon alleges, that Defendants had and have a policy or practice of failing to furnish non-exempt employees, including, without limitation, Plaintiff, with itemized wage statements that accurately reflect gross wages earned; total hours worked; net wages earned; all deductions; all applicable hourly rates in effect and the corresponding number of hours worked at each hourly rate in effect during the pay period; the legal name of the employer and/or the name and address of the legal entity securing the employer's services if the employer is a farm labor contractor; and other such information as required by Labor Code section 226, subdivision (a).

43.     Pursuant to Labor Code section 226.3, Plaintiff and other Aggrieved Employees are entitled to recover civil penalties for Defendants' violation of Labor Code section 226, subdivision (a) in the amount of two hundred fifty dollars ($250) for each Aggrieved Employee per pay period for the initial violation, and one thousand dollars ($1,000) for each Aggrieved Employee per pay period for each subsequent violation.

///

REPRESENTATIVE ACTION COMPLAINT

Civil Penalties Under Labor Code § 226.8

44.     Plaintiff re-alleges and incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth hereat.

45.     Plaintiff is informed and believes that Defendants had and have a policy or practice of failing to comply with Labor Code section 226.8 as Defendants willfully misclassified Plaintiff and other aggrieved employees as independent contractors.

46.     Labor Code section 226.8(b) states: "If the Labor and Workforce Development Agency or a court issues a determination that a person or employer has engaged in any of the enumerated violations of subdivision (a), the person or employer shall be subject to a civil penalty of not less than five thousand dollars ($5,000) and not more than fifteen thousand dollars ($15,000) for each violation, in addition to any other penalties or fines permitted by law."

47.     Labor Code section 226.8(c) states: "If the Labor and Workforce Development Agency or a court issues a determination that a person or employer has engaged in any of the enumerated violations of subdivision (a) and the person or employer has engaged in or is engaging in a pattern or practice of these violations, the person or employer shall be subject to a civil penalty of not less than ten thousand dollars ($10,000) and not more than twenty-five thousand dollars ($25,000) for each violation, in addition to any other penalties or fines permitted by law."

48.     Thus, pursuant to Labor Code section 226.8, Plaintiff and other Aggrieved Employees she seeks to represent are entitled to recover civil penalties for Defendants' violation of Labor Code section 226.8, subdivision (a) in the amount specified in Labor Code sections 226.8, subdivisions (b) and (c).

Violation of Labor Code § 558

49.     Pursuant to Labor Code section 558, subdivision (a): "Any employer or other person acting on behalf of an employer who violates, or causes to be violated . . . any provision regulating hours and days of work in any of the Industrial Welfare Commission" shall be subject to a civil penalty as follows:

(1)     For any initial violation, fifty dollars ($50) for each underpaid employee and for each pay period for which the employee was underpaid in addition to an amount sufficient

13

to recover underpaid wages;

(2)    For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages;

(3)    Wages recovered pursuant to this section shall be paid to the affected employee."

50.    Plaintiff is informed and believes, and based thereon alleges, that Defendants, and each of them, violated, or caused to be violated, the Labor Code sections described herein, including causing Plaintiff and other Aggrieved Employees not to: be paid with the rates of pay and overtime rates of pay applicable to their employment, allowances claimed as part of the minimum wage, the regular payday designated by employer, the name of the employer, including any "doing business as" names used, the name, address, and telephone number of the workers' compensation insurance carrier, information regarding paid sick leave, and other pertinent information.

51.    As a direct and proximate result of the herein-described Labor Code violations, pursuant to Labor Code section 558, Plaintiff and other Aggrieved Employees are entitled to recover civil penalties for Defendants' herein-described Labor Code violations in the amount fifty dollars ($50) for each Aggrieved Employee per pay period for the initial violation, and one hundred dollars ($100) for each Aggrieved Employee per pay period for each subsequent violation.

<u>Violation of Labor Code § 1174.5</u>

52.    At all times mentioned herein, Labor Code section 1174, subdivision (b) has required every person employing labor in California to "[a]llow any member of the commission or the employees of the Division of Labor Standards Enforcement free access to the place of business or employment of the person to secure any information or make any investigation that they are authorized by this chapter to ascertain or make.  The commission may inspect or make excerpts, relating to the employment of employees, from the books, reports, contracts, payrolls, documents, or papers of the person."

53.    At all times mentioned herein, Labor Code section 1174, subdivision (c) has required every person employing labor in California to "[k]eep a record showing the names and addresses of all employees employed and the ages of all minors."

14

54.     At all times mentioned herein, Labor Code section 1174, subdivision (d) has required every person employing labor in California to "[k]eep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and applicable piece rate paid to, employees employed at the respective plants or establishments.  These records shall be kept in accordance with rules established for this purpose by the commission, but in any case, shall be kept on file for not less than three years.  An employer shall not prohibit an employee from maintaining a personal record of hours worked, or, if paid on a piece-rate basis, piece-rate units earned."

55.     Pursuant to Labor Code section 1174.5, "[a]ny person employing labor who willfully fails to maintain the records required by subdivision (c) of [Labor Code] Section 1174 or accurate and complete records required by subdivision (d) of [Labor Code] Section 1174, or to allow any member of the commission or employees of the division to inspect records pursuant to subdivision (b) of [Labor Code] Section 1174, shall be subject to a civil penalty of five hundred dollars ($500).

56.     Plaintiff is informed and believes, and based thereon alleges, that Defendants have willfully failed to keep adequate or accurate time records including wage statements and similar payroll documents under Labor Code section 226, documents signed to obtain or hold employment under Labor Code section 432, personnel records under Labor Code section 1198.5, and time records under Labor Code section 1174.

57.     As a direct and proximate result of the herein-described Labor Code violations, pursuant to Labor Code section 1174.5, Plaintiff and other Aggrieved Employees are entitled to recover civil penalties for Defendants' herein-described Labor Code violations in the amount of five hundred dollars ($500) per violation per Aggrieved Employee.

<u>Violation of Labor Code § 1197.1</u>

58.     Pursuant to Labor Code section 1197.1, subdivision (a): "Any employer or other person acting either individually or as an officer, agent, or employee of another person, who pays or causes to be paid to any employee a wage less than the minimum fixed by an applicable state or local law, or by an order of the commission shall be subject to a civil penalty, restitution of wages,

15

liquidated damages payable to the employee, and any applicable penalties imposed pursuant to Section 203 as follows:

> (1)    For any initial violation that is intentionally committed, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee is underpaid.  This amount shall be in addition to an amount sufficient to recover underpaid wages, liquidated damages pursuant to Section 1194.2, and any applicable penalties imposed pursuant to Section 203.

> (2)    For each subsequent violation for the same specific offense, two hundred fifty dollars ($250) for each underpaid employee for each pay period for which the employee is underpaid regardless of whether the initial violation is intentionally committed.  This amount shall be in addition to an amount sufficient to recover underpaid wages, liquidated damages pursuant to Section 1194.2, and any applicable penalties imposed pursuant to Section 203.

> (3)    Wages, liquidated damages, and any applicable penalties imposed pursuant to Section 203, recovered pursuant to this section shall be paid to the affected employee."

59.    Plaintiff is informed and believes, and based thereon alleges, that Defendants caused Plaintiff and Aggrieved Employees not to be paid minimum wages as a result of Defendants, without limitation, routinely failing to pay Plaintiff or other Aggrieved Employees' minimum wages for all hours worked or otherwise under Defendants' control due to, without limitation, routinely failing to accurately track and/or pay for all hours actually worked; detrimental rounding or manipulation of time entries; paying straight pay instead of overtime or otherwise failing to pay overtime hours at the proper overtime rate of pay; engaging, suffering, or permitting employees to work off the clock, entitling Plaintiff and other aggrieved Employees to actual and liquidated damages.

60.    As a direct and proximate result of the herein-described Labor Code violations, pursuant to Labor Code section 1197.1, Plaintiff and other Aggrieved Employees are entitled to recover civil penalties for Defendants' herein-described Labor Code violations in the amount one hundred dollars ($100) for each Aggrieved Employee per pay period for the initial violation, and

16

two hundred and fifty dollars ($250) for each Aggrieved Employee per pay period for each subsequent violation.

<u>Civil Penalties Under Labor Code § 2699</u>

61.     Pursuant to Labor Code section 2699, subdivision (a), notwithstanding any other provision of law, any provision of the Labor Code that provides for a civil penalty to be assessed and collected by the LWDA or any of its departments, divisions, commissions, boards, agencies or employees for a violation of the Labor Code may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Labor Code section 2699.3.

62.     Pursuant to Labor Code section 2699, subdivision (f), for all provisions of the Labor Code except those for which a civil penalty is specifically provided, the established civil penalty for a violation of those provisions is as follows: if, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

63.     Plaintiff is informed and believes, and based thereon alleges that Defendants, and each of them, violated the Labor Code sections described herein, including, without limitation, for the failure to: pay the rates of pay and overtime rates of pay applicable to their employment, allowances claimed as part of the minimum wage, the regular payday designated by Defendants, the name of the employer, including "doing business as" names used, the name, address, and telephone number of the workers' compensation insurance carrier, information regarding paid sick leave, and other pertinent information required to be disclosed by Defendants under Labor Code section 2810.5, failing to provide Plaintiff and other Aggrieved Employees with the amount of paid sick leave required to be provided pursuant to California and local laws.

64.     Moreover, Plaintiff and other Aggrieved Employees within the State of California whom he seeks to represent are entitled to an award of reasonable attorneys' fees and costs in connection with their herein-described claims for civil penalties.

///

17
REPRESENTATIVE ACTION COMPLAINT

**REQUEST FOR JURY TRIAL**

65.      Plaintiff hereby requests a trial by jury.

**PRAYER**

**WHEREFORE**, on behalf of Plaintiff and Aggrieved Employees, Plaintiff prays for judgment against Defendants as follows:

A.      An award of civil penalties pursuant to Labor Code sections 210, 226.3, 226.8, 558, 1174.5, 1197.1, and 2699;

B.      An award of reasonable attorneys' fees and costs pursuant to Labor Code sections 210, 226.3, 558, 1174.5, 1197.1, and 2699;

C.      Pre-judgment and post-judgment interest;

D.      For costs of suit incurred herein; and

E.      Such other and further relief as the Court deems just and proper.

Dated: July 11, 2023                      BIBIYAN LAW GROUP, P.C.


                                          BY:  /s/ Sarah H. Cohen
                                               DAVID D. BIBIYAN
                                               JEFFREY D. KLEIN
                                               SARAH H. COHEN
                                          Attorneys for Plaintiff MACKENZIE ANNE
                                          THOMA, as an aggrieved employee, and on
                                          behalf of all other aggrieved employees under
                                          the Labor Code Private Attorneys' General
                                          Act of 2004,

REPRESENTATIVE ACTION COMPLAINT

Exhibit 2

1          UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3        HONORABLE WESLEY L. HSU, U.S. DISTRICT JUDGE

4

5   MACKENZIE ANNE THOMA, a.k.a.          )
    KENZIE ANNE, on behalf of herself     )
6   and all others similarly situated     ) CASE NO.
    employees,                            ) 23-CV-04901-WLH
7                                         )
                    Plaintiffs,           )
8                                         )
            vs.                           )
9                                         )
    VXN GROUP LLC, a Delaware limited     )
10  liability company; STRIKE 3           )
    HOLDINGS, LLC, a Delaware limited     )
11  liability company; GENERAL MEDIA      )
    SYSTEMS, LLC, a Delaware limited      )
12  liability company; MIKE MILLER, an    )
    individual; and DOES 1 to 100,        )
13  inclusive,                            )
                                          )
14                  Defendants.           )
    _____)

15

16

17        REPORTER'S TRANSCRIPT OF PROCEEDINGS

18            FRIDAY, JANUARY 5, 2024

19                 10:01 A.M.

20          LOS ANGELES, CALIFORNIA

21

22

23   _____

        MAREA WOOLRICH, CSR 12698, CCRR
24      FEDERAL OFFICIAL COURT REPORTER
        350 WEST FIRST STREET, SUITE 4311
25      LOS ANGELES, CALIFORNIA 90012
            mareawoolrich@aol.com


            UNITED STATES DISTRICT COURT

1                      **APPEARANCES OF COUNSEL:**

2

3    **FOR PLAINTIFF:**

4        BIBIYAN LAW GROUP, P.C.
         By:  Sarah H. Cohen
5        8484 Wilshire Boulevard, Suite 500
         Beverly Hills, CA 90211
6        (310) 438-5555

7

8    **FOR DEFENDANTS:**

9        KANE LAW FIRM
         By:  Brad S. Kane
         By:  Eric Clopper
10       1154 S. Crescent Heights Boulevard
         Los Angeles, CA 90035
11       (323) 697-9840

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

1          LOS ANGELES, CALIFORNIA; FRIDAY, JANUARY 5, 2024

2                         10:01 A.M.

3                          -oOo-

4

5          THE COURTROOM DEPUTY:  Calling Item No. 2,

6    LA 23-CV-4901, Mackenzie Anne Thoma versus VXN Group LLC,

7    et al.

8          Counsel, please state appearances starting with

9    plaintiff.

10          MS. COHEN:  Good morning.  Sarah Cohen appearing on

11   behalf of plaintiff.

12          MR. KANE:  Good morning, Your Honor.  Brad Kane and

13   Eric Clopper appearing on behalf of defendants.

14          THE COURT:  All right.  Good morning to all of you.

15          The matter is on calendar for a motion to dismiss

16   and a motion to strike under the Anti-SLAPP statute in

17   California state law.  We issued late last night a tentative in

18   the case which I assume both sides have had the opportunity to

19   review.  It's my understanding that both sides wish to have

20   oral argument anyway.

21          So Mr. Clopper?

22          MR. CLOPPER:  Yes.

23          THE COURT:  Or Mr. Kane?

24          MR. KANE:  Yes.  Thank you, Your Honor.

25          And thank you for the very well-reasoned tentative

1    ruling.  I wanted to just bring a few points to the Court's

2    attention.

3          With regard to the Anti-SLAPP, we are in sort of the

4    unique situation where the Anti-SLAPP defendants don't have

5    direct claims against them.  This Court had dismissed the joint

6    liability allegations from the original Complaint, added

7    constitutionally protected activities to substantiate those

8    allegations.

9          And, you know, my reading -- obviously your reading

10   matters more than mine.  But reading *Park* and *Manlin*, if we are

11   looking at what the wrongdoing is, it would be their

12   inequitable conduct in controlling these entities from which

13   their liability would arise.  And so I would ask the Court to

14   take a second look at that to see if it passes muster.

15         Otherwise, we might end up in a situation where you

16   could never have an Anti-SLAPP against joint liability

17   allegations because they are not the cause of action

18   themselves.  They are the type of claim, as it were, that

19   piggybacks on something else.  So I'm not sure how you could

20   get an Anti-SLAPP on those otherwise.  That's my first point.

21         The second point, Your Honor, is --

22         THE COURT:  I guess -- well, let me stop you for a

23   second though.

24         MR. KANE:  Sure.

25         THE COURT:  I'm not 100 percent sure I agree with

1  you because I -- it seems to me that the -- the underlying

2  conduct -- like setting aside the joint liability issue for a

3  second.  The underlying conduct that's alleged in Amended

4  Complaint is not, in my view, constitutionally protected

5  activity.

6         I realize that there's -- in this particular

7  situation, there's not a clear line because obviously

8  filmmaking is in and of itself constitutionally protected

9  activity, and I don't dispute that.

10         But I also don't think that it is so broad that

11 anything that has to do with the filmmaking also makes it

12 constitutionally protected activity.

13         And in my view, the specific allegations that are

14 made in this case are not of the type that go to -- directly to

15 the filmmaking as opposed to the allegation that they are at

16 the end of the day employers and that they have obligations as

17 employers to do certain things and they didn't meet those

18 requirements.

19         MR. KANE:  Well, Your Honor, the reason why VXN

20 didn't file an Anti-SLAPP is because we agree that payment of

21 wages is not in the constitutionally protected -- even if it's

22 making film.

23         THE COURT:  Right.

24         MR. KANE:  We agree with that.  That law is clear

25 there.  The question becomes narrower when someone else who

1    didn't -- isn't their direct employer, you know, and their only

2    involvement is filmmaking.  Do -- are they entitled to

3    constitutional protection or protection of the Anti-SLAPP?  And

4    I would say the answer is yes because that's their only

5    connection to the case is their constitutionally protected

6    activity.  And there would be no other way to get at it.

7            And, in fact, when you look at the types of

8    activities that you use to create joint liability, whether it's

9    Labor Code Section 588.1, it requires personal involvement in

10   the decision-making.  There's some wrongful activity that they

11   should have done, or there's some inequitable fraud or

12   injustice if you are doing, you know, piercing the corporate

13   veil, alter ego.  I think that is how it ties into the

14   Anti-SLAPP because it does arise there.

15           THE COURT:  Okay.  I just want to make sure I play

16   this out entirely in my head.  So if Company A is making a film

17   and they bring in Individual B to do something like --

18   Individual B is not an employee, but they come in or whatever,

19   and it's like bringing Spielberg in to consult; right?

20   Individual B comes in and says everyone has to wear this

21   costume in this scene.  Cause of action -- you agree cause of

22   action lies against Company A, but you are saying Individual B

23   has an Anti-SLAPP?

24           MR. KANE:  Individual B has an Anti-SLAPP

25   because their only involvement that's alleged is

1    constitutionally protected activity.

2          THE COURT:  I see.  Because all that Individual B is

3    doing is creating expression?

4          MR. KANE:  Correct.

5          THE COURT:  Okay.  I understand.

6          MR. KANE:  Thank you, Your Honor.

7          The other points that I wanted to bring up have to

8    do with the motion to dismiss.  And, you know, I understand the

9    Court's decision that it is very early to decide whether or not

10   Ms. Thoma is a professional actress in this and -- because I

11   understand it's an affirmative defense.  And I ask that the

12   Court take a look at paragraph 8 of the First Amended Complaint

13   which says at line 25 on page 4, "In November of 2020, she

14   signed a contract with defendants known as VXN Media Group with

15   her entry into the adult" --

16          (Reporter clarification.)

17          MR. KANE:  I'm sorry.  When I get anxious, I talk

18   fast.

19          "In November of 2020, she signed a contract with

20   defendants known as VXN Media Group with her entry into the

21   adult film industry occurring on or about April 30" -- Let me

22   try -- "In November 2020, she signed a contract with defendants

23   known widely as VXN Media Group, with her entry into the adult

24   film industry occurring on or about April 30, 2021," which is

25   the, you know, only contract mentioned which is entering her

1  into the adult film industry.

2         And we have cited in our brief the *Wamboldt* case

3  which has a two-step analysis in order to have the incidental

4  work be under a different wage order.  And my request would be,

5  number one, that, if you -- since you've given them leave to

6  amend, if they could address the *Wamboldt* requirements with --

7  so we know if there's going to be evidence of this.

8         And then we can also have narrowly focused discovery

9  just on that so we don't have a huge number of subsidiary

10  issues because we will plan on filing a motion for summary

11  judgment.

12         The other piece I wanted to mention with regard to

13  that is both the 9th Circuit and the California courts are

14  clear on what is a professional.  It's somebody who does an

15  activity for remunerations opposed to a mere pastime.  And

16  that's *First California Bank v. Federal Insurance Company*, 983

17  F.2d 1076, 9th Circuit, 1992.  And that quotes a California

18  case, *Hollingsworth v. Commercial Insurance Company,* 208

19  Cal.App.3d 800 at 807, 1998.

20         And the reason why that is significant is this case

21  is about pay.  She's not paid.  So clearly she's seeking

22  remuneration for what she's done on the screen.  And she says

23  that she starred in these films.  The only other definition in

24  wage order 12 is it doesn't define professional actor, is it

25  defines, you know, what is an extra.  And those are people who,

1  you know, passingly appear.  I don't think there's any question

2  that she is an award winning actress, starred in the films, was

3  seeking pay for it.

4       So the question really in my mind would be going

5  forward can she meet the *Wamboldt* test because she very likely,

6  if not compellingly, is a professional actress.

7       THE COURT:  I mean, I'm not -- I don't mean to

8  suggest that I'm disputing what looks like a probable outcome

9  in the case.  What I'm saying is all -- I think all I'm saying

10  is that at the Complaint stage, just in the four corners of the

11  Complaint, it's sort of difficult for me to reach that

12  conclusion.

13       MR. KANE:  Thank you, Your Honor.

14       My one ask, if I may --

15       THE COURT:  Sure.

16       MR. KANE:  -- and you are free to reject it because

17  you are the Court, is if they could be instructed to address

18  that issue in the next Complaint so we have notice because my

19  understanding is we will probably be unlikely to demur again on

20  this ground.  So we need to then probably focus -- or we'll

21  have a scheduling conference and order figuring out how we are

22  going to address it further.

23       Thank you, Your Honor.

24       THE COURT:  Thank you.

25       Okay.  Ms. Cohen?

1          MS. COHEN:  Thank you, Your Honor.  Good morning and

2     also happy new year.

3          THE COURT:  Happy new year.

4          MS. COHEN:  Just to touch on the Anti-SLAPP

5     issues -- Your Honor, thank you again for the detailed

6     tentative -- I think the Court has it right, and we've made it

7     clear in our pleadings that the only activity that was -- it

8     wasn't -- the only activity was not just the expression of free

9     speech; right?  What underpins these claims is the violation of

10    the wage and hour laws.

11         Just because it might be triggered or it might

12    be incidental to it doesn't satisfy the Anti-SLAPP standards.

13    So --

14         THE COURT:  I don't think Mr. Kane would disagree

15    with you on that.  What about this argument that fine, the wage

16    claims, there's nothing Anti-SLAPP about that.  But as to

17    these, you know, arguably one step removed defendants that were

18    not her employer, that the individual -- I can't remember the

19    individual defendant's name who came on and made a wardrobe

20    choice.  Why isn't that protected activity?

21         MS. COHEN:  Right.  Well, that may be protected

22    activity, but we have other factors here.  So that's, I think,

23    where the disconnect is, is that we are not only alleging that

24    Strike 3, Mike Miller, and GMS had involvement in the

25    production and the dissemination, the advertising of the film.

```
 1   That's undisputed.  We've agreed with that.
 2         What also happened though was the support for our
 3   joint liability and agency type theories is that all of those
 4   entities, all of those defendants were also involved in
 5   controlling the wages and the working conditions of plaintiff
 6   and the putative class members.  So when it comes to
 7   deciding we are going to -- for example, classify them as
 8   independent contractors instead of employees, each defendant
 9   named in the -- in this lawsuit had a direct role in making
10   that decision.
11         And you know, that's something that I also plan to
12   touch on in terms of the joint liability arguments to come.
13   But that's I think what needs to be clear to the Court, is that
14   the only activity is not just protected activity, the free
15   speech, the advertising, the dissemination, the creation, the
16   production by any means.  Each party named here, each defendant
17   named here had a direct role in making a decision as to how we
18   are going to classify plaintiff and putative class members.
19   You know, our argument here is they were misclassified as
20   independent contractors.  They should have been employees.
21         In addition to that, decisions were made as to, for
22   example, what expenses they were going to incur to upkeep
23   their, you know, personal hygiene, the color of their nails,
24   the -- how tan they could have their skin.  Just down to just
25   really personal issues were completely controlled.
```

1          And each defendant had a role in that.  They all

2     worked in tandem with each other to make sure that, you know,

3     everything was uniform pretty much and how the performers were

4     going to perform, what they were going to look like on screen,

5     how they were going to be paid most importantly or not paid.

6          And so I just want the Court to understand that

7     there's different aspects to this, not just the protected

8     activity which, again, we are not disputing that exists, but

9     there's another layer to it.

10          THE COURT:  Okay.  Understood.  Next?

11          MS. COHEN:  Yes, Your Honor.

12          So I just would like clarification moving over to

13     the motion to dismiss -- and I apologize that I have my laptop.

14     I wasn't able to get to a printer when the tentative came out.

15          THE COURT:  No, that's --

16          MS. COHEN:  So, Your Honor, I think in the most

17     respectful way possible, that there might be a confusion as to

18     our overtime claim and our minimum wage claim.  So it looks

19     like in the tentative, Your Honor, it went by a standard.  The

20     minimum wage claim was analyzed by the Court under a standard

21     for overtime in terms of plaintiff having to adequately plead

22     that she worked at least 40 hours -- or more than 40 hours a

23     week and wasn't paid overtime.  And I'm just a little bit

24     confused because our minimum wage claim is actually based on

25     the failure to actually pay wages entirely.

1          So there's an example which is paragraph 36 of

2    Plaintiff's First Amended Complaint where we actually say that

3    plaintiff and putative class members were never paid, for

4    example, for time going to fittings.  And the there's plenty of

5    other examples in Plaintiff's Complaint that adequately allege

6    that plaintiff and putative class members performed work that

7    went entirely unpaid.  And this was on days --

8          THE COURT:  Can you just list for me the other

9    paragraphs you are referring to there?

10          MS. COHEN:  I was doing my best to get them together

11   for you before this hearing.  I pulled 36 as an example.  I do

12   think it's in that area of Plaintiff's First Amended Complaint.

13   Let me just scroll if I can find examples.

14          But just off the top of my head, Your Honor, there

15   was travel time that plaintiff and putative class members had

16   to do to go and get manicures and pedicures, for example, and

17   also get bleaching done.  They were not paid at all for that

18   travel time.  As you know from the Complaint, Your Honor, there

19   were actually -- these preparations that they had to make for

20   personal -- I want to say hygiene, but I think there's another

21   word for it, but I think you understand what I mean, Your

22   Honor.

23          They were done on days where there wasn't the flat

24   rate that was paid for the actual filming or shooting.  These

25   were done on completely off days, maybe a day before, a couple

```
1    of days before, Your Honor, to actually -- so there's time

2    that's entirely unpaid which is the basis of our minimum -- one

3    of the bases of our minimum wage claims.

4            So I just would like further understanding from the

5    Court as to how that connects with having to allege that

6    plaintiff and putative class members worked over 40 hours a

7    week.  And we're happy to amend further if that's still

8    something the Court requires.

9            THE COURT:  Let me think about that.  I guess the

10   way I viewed it is that minimum wage requires some sort of

11   allegation in terms of total hours; right?  So if they got

12   paid -- just a hypothetical, if they get paid a thousand

13   dollars to do something, if you are saying that they should

14   have been hourly instead of given that independent contractor

15   payment amount, there still has to be some allegation in the

16   Complaint that says the total number of hours they worked

17   multiplied by minimum wage was greater than a thousand dollars;

18   right?

19           MS. COHEN:  I don't think so, Your Honor.  I think,

20   you know, the big issue here, Your Honor, and why, you know,

21   respectfully it's not proper to have this analysis at the

22   pleading stage is because this is mainly going to damages.  I

23   mean, we are dealing with plaintiff and a putative class that

24   were paid on a flat-rate basis.

25           And to force plaintiff at this stage to actually
```

1  break down those calculations now looking at, you know, the

2  entire class period and breaking down specific days where work

3  was performed, work was not performed, compensated by the

4  improper flat rate or uncompensated, I think there's an issue

5  that should be -- that's a factual issue that would be better

6  developed later down the line once we can do discovery and also

7  maybe even an issue that better at the damages stage.

8         But I think at the pleading stage, Your Honor, stage

9  and even with the *Twombly* plausible standard, it's plausible

10  that minimum wage wasn't paid because we sufficiently alleged

11  that there was work performed that went entirely unpaid.  And

12  this is on days where the flat rate wasn't being earned,

13  non-shooting or filming or photograph for the modeling days

14  completely separate from the shoots, Your Honor.

15         THE COURT:  Okay.  Thank you.

16         MS. COHEN:  And I apologize, Your Honor.  Let me

17  just see what else I have.

18         Right, Your Honor, and so the inaccurate wage

19  statements, I think what the issue -- I think the issue here

20  can be resolved.  So respectfully, Your Honor, if there's any

21  possible way that the Court, you know, could give leave to

22  amend on this, I think I know what the issue is.

23         So first of all, the case that was relied on -- and

24  I'm trying to find the name.  I apologize -- it doesn't

25  actually require that you give a factual exemplar of an

1    inaccurate wage statement.  I think that in that case it was

2    just a factor of not having a factual exemplar because the

3    plaintiff in that case had actually alleged that they received

4    an inaccurate wage statement.

5           Here it's a little bit different.  So I don't think

6    that case would apply in that sense in that because plaintiff

7    and the putative class members were misclassified, they were

8    never furnished with wage statements.

9           THE COURT:  There were no wage statements.

10          MS. COHEN:  No wage statements.  So if there's any

11   way the Court would give leave to amend so that we could

12   clarify that it's about no wage statements, not inaccurate wage

13   statements, we are willing to drop that from the Complaint

14   about inaccurate wage statements.  This is about no wage

15   statements.  Labor Code 226 requires employees to receive wage

16   statements.  There were none.  How can we prove a negative?

17   Plaintiff and putative class members never received wage

18   statements because they were misclassified as independent

19   contractors.

20          And one suggestion I have, Your Honor, I think what

21   the issue here is the factual exemplar -- actually that was on

22   another issue.  Just strike that.  Sorry, Your Honor.

23          Okay.  So moving on from there, the business expense

24   claim.  So here I'm not -- I just need clarification from the

25   Court as to why the Court is taking the position that plaintiff

```
 1   is required under the law to actually request reimbursement;
 2   right?  The law is different.  California law states that, if
 3   the employer knew or had reason to know, that, you know, an
 4   employee was incurring business expenses, they have an
 5   obligation to reimburse those business expenses.
 6           And as you know already from this case, the
 7   plaintiff and putative class members had very specific
 8   contracts as to how they -- personal grooming.  That's the word
 9   I was looking for earlier, Your Honor -- as to what they needed
10   to do to upkeep their personal grooming in terms of the color
11   of their nails and piercings, the anal bleaching, for example,
12   the color of their hair, any plastic surgery.  I mean, these
13   were things that had to be upkept and done on the terms of all
14   of the defendants; right?
15           So defendants -- it's reasonable to presume,
16   Your Honor, that defendants knew that these expenses were being
17   incurred.  And the law doesn't require that plaintiff actually
18   request reimbursement.  And I think, again, this is something
19   that we can cure by amending the Complaint because I think
20   where the confusion is is that we state in our First Amended
21   Complaint that defendants have refused and continue to fail to
22   refuse to reimburse the business expenses.  And so I think
23   that's maybe giving the impression that plaintiff at one point
24   requested reimbursement and it was refused.  And so I think
25   that's what's causing the confusion.
```

 1           THE COURT:  Well, I don't know that it's confusion.

 2    There is a -- the case that I cite from one of my colleagues

 3    back in 2020 suggests to me the language in the *Ellsworth* case

 4    suggests to me that the plaintiff does have some duty to say

 5    that they sought reimbursement.  And the quote is "expected to

 6    allege if he unsuccessfully sought reimbursement for necessary

 7    shoes."

 8           And that's sort of part and parcel.  I mean, how are

 9    the defendants supposed to be aware of an expense?  Granted,

10    assume for the sake of argument that -- because we are at the

11    pleading stage, that they knew that the contract required

12    certain personal grooming.  But they don't have any idea how

13    much it costs each one of those, you know, sessions, you know,

14    just pick one, costs for the plaintiff to go and have done.

15    How are they supposed to know how much they are going to

16    reimburse for or reimbursement the is requested for?

17           MS. COHEN:  I appreciate, Your Honor.  But I

18    think -- I haven't had a chance to review the entire case.  But

19    I think in the *Ellsworth* case, I think maybe that there were --

20    I reviewed it briefly.  There were facts there that suggested

21    that a request for reimbursement was made and then it wasn't

22    alleged in the Complaint.  It was something like that.

23           But I think the bottom line here is that it's -- I

24    just think that it would be improper to entirely dismiss that

25    claim at the pleading stage because we do allege that business

1    expenses were incurred.  We amended the Complaint to add

2    specific business expenses with amounts on there; right?

3            And I understand and appreciate the Court's point,

4    well, how much would defendants know to reimburse?  I don't

5    think that that should be a determining factor of whether the

6    claim is entirely dismissed or not.  I think the main factor to

7    consider is that it's plausible at the pleading stage that the

8    defendants knew that these expenses were being incurred.  They

9    see them on the set.  I mean, they have to check.  Defendants

10   have to actually check that plaintiff and putative class

11   members have complied with the personal grooming requirements

12   before they go on camera whether it's for photographs or

13   whether it's for videos.

14           So I think that we adequately plead here that

15   defendants knew or had reason to know that business expenses

16   were being incurred.  And in addition to that, defendants knew

17   or had reason to know they weren't reimbursing them.  I think

18   defendants are in the best possible position to know whether

19   they are reimbursing for business expenses.

20           THE COURT:  Yes.  That I understand, yes.

21           MS. COHEN:  Right.

22           THE COURT:  Sure.

23           MS. COHEN:  But if there's additional detail that

24   the Court would like, we can work on it.  I would just, you

25   know, respectfully request that we are given leave to amend on

 1   that.

 2              THE COURT:  Okay.

 3              MS. COHEN:  On that cause of action, Your Honor.

 4   Thank you.

 5              And I guess my last point to cover would be the

 6   joint liability issues.  So going back to when I was

 7   discussing the Anti-SLAPP, Your Honor, we are working on a

 8   plausible standard; right?  And so what we have added to the

 9   First Amended Complaint I think brings this just beyond

10   conclusory allegations.

11              For example, with Mike Miller, we give specific

12   examples as -- and detail Mike Miller's involvement being

13   the -- the -- the founder -- one of the co-founders, the

14   principal, one of the executives.  I mean, what we are alleging

15   here I think makes it clear that Mike Miller is not just, you

16   know, on set directing, for example.  Mike Miller is actually

17   behind the scenes making decisions with the other defendants as

18   to how plaintiff and putative class members will be paid and

19   exactly what's involved in -- in -- in performing; right?

20              And so it's direct control over the -- over the

21   wages and the working conditions of plaintiff and the putative

22   class members.  And the same goes for Strike 3 as well in terms

23   of the policies and procedures of the company; right?

24              And again, Your Honor, the main thing here is the

25   misclassification; right?  Strike 3, GMS, Mike Miller, VXN,

they all worked at one to say right, this is going to be the
nature of our business.  This is how we are paying our
employees.  This is how they are going to perform.  This is how
they are going to look on set.  It's everyone making the
decision together.  And I think that the First Amended
Complaint adequately pleads that in terms of breaking down each
defendant's involvement.

THE COURT:  Well, okay.  So leaving aside Mr. Miller
who I think I understand what you mean in terms of his personal
involvement in those decisions, what did Strike 3 as an entity
do with respect to those decisions that you are talking about
right now?

MS. COHEN:  So I believe that Strike 3 was the --
not only the copyright holder, Your Honor, but also was
involved in the development of the film as well.  And I'd say,
you know --

THE COURT:  What does that mean, the development of
the film?

MS. COHEN:  Well, in making decisions as to the
production; right?  When are we going to release it.  How are
we going to release it.

And again, Your Honor, there's -- I wanted to pull
it up for you, Your Honor, but at this stage, at the pleading
stage, it's -- I just -- it's defendants that are going to be
in possession of this information; right?  So Plaintiff's

1    Complaint alleges that in a nutshell they worked as one, they

2    worked in tandem, they all had direct control over the wages

3    and working conditions of plaintiff and the putative class;

4    right?

5         But I think anything deeper and further into that,

6    that's something that's more proper for once we -- to develop

7    once we've had a chance to conduct discovery; right?  It's

8    unlikely that any plaintiff or putative class members are going

9    to have that information.  That's something that we need to

10   discover through the discovery process which we have been

11   trying for a while to get to, Your Honor, but are faced with

12   these motions which, you know, that's just litigation,

13   Your Honor.

14        But, you know, I think what the Court might be

15   looking for is something that's proper past the pleading stage.

16   I think what we've pled --

17        THE COURT:  Maybe.  But also maybe not.  I mean,

18   because the same would be true if I dismiss Strike 3 now and

19   there's discovery as to Mr. Miller and to the surviving

20   defendant that shows that Strike 3 made some specific decision.

21   You know, there's an -- you know, you find in an e-mail where

22   Strike 3 says these people are all independent contractors.

23   They are never to be classified as wage earners.  You could

24   presumably then amend because now you have -- now you have the

25   evidence to make the allegation.

 1           I think that there -- to me there has to be
 2    something a little more concrete even at this stage as to what
 3    Strike 3 did specifically, what decision did Strike 3 make,
 4    what decree or resolution or order did Strike 3 make that, you
 5    know, brings them into the purview of the lawsuit.
 6           MS. COHEN:  Right.  And we do have that in our First
 7    Amended Complaint, Your Honor.  And we did add details.  I'm
 8    just trying to get to it for you.  I believe it's --
 9           THE COURT:  Take your time.  Just tell me what the
10    paragraph number is.
11           MS. COHEN:  Yes.  It starts at 9 and moving down.
12    So we go through -- at paragraph 10 we go through VXN Media
13    Group and describe their involvement.  Moving down to 14, we
14    cover General Media, and I think we are getting to Strike 3.
15    Under joint liability maybe?  I apologize, Your Honor, that I
16    didn't have this ready for you.
17           THE COURT:  Okay.
18           MS. COHEN:  I apologize, Your Honor.  I don't want
19    to keep the Court waiting.  But I think, you know, my main
20    point Your Honor, is that what we have alleged in the Complaint
21    as to how Strike 3, Miller, GMS, and VXN all have pretty much
22    acted as one all together behind the scenes to actually decide
23    how the wages and the working conditions have direct control
24    over the wages and working conditions that we've met the
25    pleading standard.

1          And we did cite case law that states -- and I'm

2  trying to switch over between my documents to find it for

3  you -- which supports the notion that allegations that need

4  further factual development are not proper for dismissal.  And

5  something like the connection between these defendants, which

6  is kept pretty secretive, is something that's -- needs further

7  factual development.

8          And, you know, plaintiff and putative class members,

9  they have the right to conduct discovery as to how everything

10  was working behind the scenes.  But for pleadings standard

11  purposes, Your Honor, we -- we plead facts to support that the

12  joint employer allegations and the alter ego allegations.  It's

13  just -- it's a prime example of something that's pretty much

14  mainly in defendants' knowledge and suitable for further

15  factual development.

16          Thank you.

17          THE COURT:  Okay.

18          MS. COHEN:  I think I covered everything.

19          THE COURT:  Okay.  Thank you very much.

20          MS. COHEN:  Thank you, Your Honor.

21          THE COURT:  Mr. Kane?

22          MR. KANE:  Yes.  Thank you.

23          First off, you know, one of the problems with this

24  case are the pleadings, and as we initially discussed, many of

25  them are boilerplate, and it's hard to understand which is why

1    we made these motions.

2              And, you know, my understanding from the Complaint

3    is they were paid by the job; right?  That's pretty clear.  And

4    now it's changing into some other arrangement which, if you

5    allow them to amend, we are going to challenge as a sham

6    pleading because it's the same thing with the exemplars.  Well,

7    you didn't give it to us, they weren't accurate, but now we

8    lost, so now we want to change our theory again.  And I think

9    the Court's tentative should stand as is.

10             And I will just go back to in closing, the things

11   that plaintiff's counsel has pointed to are all the things that

12   are the constitutionally protected activities, but none of it

13   says -- like, for example, Mike Miller.  Well, he was involved

14   with creating policies and procedures.  What does that mean?

15   They don't allege he did anything wrong.  They don't allege

16   that he did this.

17             So I think the Court's tentative should stand, and I

18   think we should narrowly focus the case on the issue of whether

19   or not Wage Order 12 applies.  And if Wage Order 12 does not

20   apply, then we can address some of these other issues.  But

21   otherwise it's going to spiral because in the state court

22   actions -- they had two:  The one you remanded.  They filed a

23   PAGA action.  We got them related and the judge, Judge Kuhl,

24   stayed that case, both of them.  Took everything off calendar

25   and said we are going to, as a matter of comity, follow this

1    Court's lead.  And so we will be reporting back.

2            So if we can narrowly focus what we are doing, I

3    think we can get through this much quicker.  Their proposal is

4    let's make everything and make it as expensive as possible for

5    the defendants who have done nothing wrong, and there's no

6    indication that they wouldn't have ability to pay --

7            THE COURT:  I don't think Ms. Cohen agrees with you

8    about they've done nothing wrong.

9            MR. KANE:  She is a worthy opponent, and we

10   vehemently disagree on the facts and the law.  Thank you.

11           THE COURT:  Okay.  All right.  The matter is taken

12   under submission.

13           Ms. Cohen, I'm going to order you to within a week

14   from today, please file a redlined copy of the Complaint as

15   against the First Amended Complaint so that I can see clearly

16   the changes that were made between the two.

17           We've done one by hand, but I'm not 100 percent

18   confident in its accuracy.  So if you could file one, that

19   would be appreciated.

20           MS. COHEN:  Of course, Your Honor.  I apologize that

21   an attempt to do it by hand, anyone had to go through that.  A

22   simple contact to us we would have had a redlined Complaint

23   with the Court within ten minutes.

24           THE COURT:  No problem.

25           MS. COHEN:  Maybe less.

1                  THE COURT:  All right.  Please file that by next

2     Friday so we can look at that before we issue the order.  Okay?

3                  MS. COHEN:  Thank you, Your Honor.

4                  MR. KANE:  Thank you, Your Honor.

5                  MR. CLOPPER:  Thank you, Your Honor.

6                  THE COURTROOM DEPUTY:  All rise.

7                  (At 10:39 a.m. the proceedings adjourned.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

1       **CERTIFICATE OF OFFICIAL REPORTER**

2

3

4

5               I, MAREA WOOLRICH, FEDERAL OFFICIAL REALTIME

6    COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT

7    FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY

8    THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE

9    THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

10   STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

11   ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT

12   IS IN CONFORMANCE WITH THE REGULATION OF THE JUDICIAL

13   CONFERENCE OF THE UNITED STATES.

14

15

16               DATED THIS  20TH  DAY OF MARCH, 2024.

17

18

19               /S/ MAREA WOOLRICH

20               _____
                 MAREA WOOLRICH, CSR NO. 12698, CCRR
21               FEDERAL OFFICIAL COURT REPORTER

22

23

24

25

**UNITED STATES DISTRICT COURT**