David D. Bibiyan (SBN 287811)
*david@tomorrowlaw.com*
Jeffrey D. Klein (SBN 297296)
*jeff@tomorrowlaw.com*
Sarah H. Cohen (SBN 330700)
*sarah@tomorrowlaw.com*
**BIBIYAN LAW GROUP, P.C.**
1460 Westwood Blvd.
Los Angeles, California 90024
Tel: (310) 438-5555; Fax: (310) 300-1705

Attorneys for Plaintiff, MACKENZIE ANNE THOMA,
and on behalf of herself and all others similarly situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MACKENZIE ANNE THOMA, a.k.a. KENZIE ANNE, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VXN GROUP LLC, a Delaware limited liability company; STRIKE 3 HOLDINGS, LLC, a Delaware limited liability company; GENERAL MEDIA SYSTEMS, LLC, a Delaware limited liability company; MIKE MILLER, an individual; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO: 2:23-cv-04901-WLH (AGRx)<br><br>[*Assigned for all purposes to the Hon. Wesley L. Hsu*]<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT AND CLASS CLAIMS**<br><br>**HEARING INFORMATION**<br>DATE:    April 26, 2024<br>TIME:    1:30pm or later.<br>COURTRM:  9B<br><br>[*Filed concurrently with the Declaration of Sarah H. Cohen*] |

# **TABLE OF CONTENTS**

**I.    INTRODUCTION**………………..……………………………………1

**II.   LEGAL STANDARDS**………………..……………………………2

    **A. Fed. R. Civ. P. 12(b)(6)**…………..……………..………..……2

    **B. Pleading Standards**………………..…………………………3

**III.  LEGAL ARGUMENT**………………..……………………………5

    **A. DEFENDANTS FILED THEIR MOTION IN**
    **VIOLATION OF THE FEDERAL RULES OF CIVIL**
    **PROCEDURES AND IT SHOULD THEREFORE BE**
    **DISMISSED**………………..……………………………..…….5

       1. **Defendant Failed to Comply With Local**
       **Rule 7-3**………………..…………………………..…..5

    **B. DEFENDANTS FAIL TO PROVE ON THE MERITS**
    **THAT ANY OF PLAINTIFF'S CLAIMS ARE SUBJECT**
    **TO DISMISSAL**………………..……………………………7

       1. **Plaintiff Adequately Asserts Claims Against**
       **Defendants STRIKE 3, GMS, and MILLER**
       **under Alter Ego and Other Theories of Liability**…………...7

         a.  MILLER is directly liable for the wrongful  actions
         pleaded in the SAC under Labor
         Code Section 558.1…………………………………….7

         b.  All defendants are liable under joint employer
         and general joint liability theories…………………..8

           i.  As to MILLER…………………………………..9

           ii.  As to STRIKE 3………………………………10

           iii.  As to GMS……………………………………12

         c.  Plaintiff adequately pleaded enough facts to state
         alter-ego liability…………………………………....12

**2. Plaintiff Properly Claims That She And Class Members Were Not Paid Minimum Wages**………...………15

**3. Plaintiff Is Not Required to Provide Inaccurate Wage Statements For Her Wage Statement Ciolation Cause of Action**………………………………………………………17

**4. Plaintiff Properly Pleaded Enough Facts To Substantiate Her Claim That She And Class Members Were Not Reimbursed For Work Related Expenses**……………………………………………………....17

**IV.   CONCLUSION**………...…………………………………………...21

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

# **TABLE OF AUTHORITIES**

## **Statutory Authority and Local Rules**

Fed. R. Civ. P. 15(a)(3)……………………………………………………..1

Local Rule 7-3……………………………………………………………….1, 5

Fed. R. Civ. Proc. 12(b)(6)……………………………………………........2, 3, 6

Fed. R. Civ. P. 12(d)………………………………………………………..3

Fed. R. Civ. P. 15(a)…………………………………..…………………..5

Labor Code Section 558.1……………………………..…………..7, 8, 10

Labor Code Section 226……………………………………………………17

## **Case Authority**

*Angiano v. Anheuser-Busch InBev Worldwide, Inc.*,

     532 F.Supp.3d 911, 916 (C.D. Cal. 2021) …………………………..……2

*Bell Atl. Corp. v. Twombly*,

     550 U.S. 544, 555 (2007) ……………………………..……..……2, 3, 4

*Love v. Marriott Hotel Servs., Inc.*,

     40 F.4th 1043, 1045 (9th Cir. 2022)……………………….…………….3

*Enesco Corp. v. Price/Costco Inc.*,

     146 F.3d 1083, 1085 (9th Cir. 1998) …………………………………….3

*Massey v. Banning Unif. Sch. Dist.*,

     256 F.Supp.2d 1090, 1092 (C.D. Cal. 2003) …………….…..…..……...3

*Levine v. Diamanthuset, Inc.*,

     950 F.2d 1478, 1483 (9th Cir. 1991)…………………………………….3

*McGary v. City of Portland*,

     386 F.3d 1259, 1270 (9th Cir. 2004) …………………………………….4

*Wyshak v. City Nat. Bank*,

     607 F.2d 824, 827 (9th Cir. 1979)………………………..……………...4

*Durham v. Prudential Ins. Co. of Am.*, 236

     F.Supp.3d 1140, 1150 (C.D. Cal. 2017).  …………………………….….4

*Frame v. City of Arlington*,

     657 F.3d 215 (5th Cir. 2011) ……………………………………………4

*Ashcroft v. Iqbal*,

     556 U.S. 662, 675-679 (2009)…………………………………….5, 10, 11, 14

*Impress Communications v. UnumProvident Corp.*,

     335 F.Supp.2d 1053 (C.D. Cal. 2003) …………………………………….5

*Foman v. Davis,*

     371 U.S. 178, 182 (1962)…………………………….…………………5

*DeSoto v. Yellow Freight Sys., Inc.*,

     957 F.2d. 655, 658 (9th Cir. 1992)…………………………………….5

*Tri-Valley CAREs v. U.S. Dep't of Energy*,

     671 F.3d 1113, 1131 (9th Cir. 2012)………………………………....5

*Burke v. Basil*,

     2021 WL 5993524, at *1 (C.D. Cal. Oct. 20, 2021) …………….………..5

*Morales v. K. Chocolatier Inc.*,

     2022 WL 19829446, at *2 (C.D. Cal. Oct. 31, 2022)……………….……..5

*Alcatel-Lucent USA, Inc. v. Dugdale Commc'ns, Inc.*,

     2009 WL 3346784, at *3-4 (C.D. Cal. Oct. 13, 2009) …………….……..5

*Pina v. Lewis*,

     717 Fed. App'x 739, 740 (9th Cir. 2018). ……………………………6

*St. Myers v. Dignity Health*,

     44 Cal. App. 5th 301, 311 (2019)………………………..…….…..8

*Vernon v. State of California*,

     116 Cal. App. 4th 114, 126 (2004). …………………………….....8

*Medina v. Equilon Enterprises, LLC*,

     68 Cal. App. 5th 868, 879 (2021)………………………...……..8, 9

*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*,

     1 Cal. 3d 586, 595 (1970)……………………………….………...9,10

*Parker v. Country Oaks Partners, LLC*,

     2023 WL 3149330, at *3 (C.D. Cal. Mar. 22, 2023)………………….……12

*Leek v. Cooper*,

     194 Cal. App. 4th 399, 415 (2011). …………………..……………………..13

*Landers v. Quality Commc'ns, Inc*.

     771 F.3d 638, 644 (9th Cir. 2014)…………………….………...15, 17

*Conservation Force v. Salazar*,

     646 F.3d 1240, 1240-1241 (9th Cir. 2011)…………………..…………...16

*Thai v. Int'l Bus. Machines Corp.*,

     93 Cal. App. 5th 364, 370 (Oct. 11, 2023)………………….…………18

*Stuart v. RadioShack Corp.*,

     641 F. Supp. 2d 901 (N.D. Cal. 2009)……………..…………………..18

*Arroyo v. Int'l Paper Co.*,

     611 F. Supp. 3d 824 (N.D. Cal. 2020)……………..……………….……18

*Gattuso v. Harte-Hanks Shoppers, Inc.*,

     42 Cal. 4th 554 (2007)……………..………………………………18, 20

*Edwards v. Arthur Andersen LLP*,

     44 Cal. 4th 937, 189 P.3d 285, 952 (2008)………………..……………..18

*Grissom v. Vons Companies, Inc.*,

     1 Cal. App. 4th 52, 59-60 (1991)……………….……..………………..18

*Ellsworth v. Schneider Nat'l Carriers, Inc.*,

     No. 220CV01699SBSPX, 2020 WL 8773059 (C.D. Cal. Dec. 11, 2020)…..19

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

Plaintiff Mackenzie Anne Thoma ("Plaintiff" or "Ms. Thoma") hereby submits the following opposition to defendants VXN Group LLC ("VXN"); Strike 3 Holdings, LLC ("STRIKE 3"); General Media Systems, LLC ("GMS"); and Mike Miller ("MILLER" and collectively with VXN, STRIKE 3, and GMS, "Defendants") Motion to Dismiss Plaintiff's Second Amended Complaint and Class Claims (the "Motion").

Defendants' Motion utterly fails to provide any legitimate reasons as to why Plaintiff's Second Amended Complaint ("SAC") should be dismissed. Rather, this is another attempt by Defendants to wrongfully delay the litigation of this case. Indeed, from Defendants' baseless Anti-SLAPP motion to the three motions to dismiss, Defendants are doing everything in their power to avoid discovery and earnest litigation of this action.

Each and every argument provided by Defendants fail on several different bases. First and foremost, Defendants failed to comply with Local Rule 7-3, requiring that counsel meet and confer at least seven (7) days prior to filing any motion in this Court. Furthermore, under Fed. R. Civ. P. 15(a)(3), a party has 14 days to file a responsive pleading to an amended complaint after that party was served with said complaint. Plaintiff filed and served her Second Amended Complaint on March 8, 2024, as such Defendants were required to meet and confer *on or before* March 15, 2024 regarding any inadequacies in the SAC, which Defendants failed to do. *See* **Declaration of Sarah H. Cohen (Decl. of Cohen) ¶2**. ***This is the third time that Defendants have failed to properly meet and confer with Plaintiff in a timely fashion regarding a motion to dismiss.*** Indeed, Defendants' have shown a blatant disregard to the rules of this court and decorum that is rightfully expected between attorneys. As such, this motion should be dismissed in its entirety.

Further, looking past the Motion's procedural defects, Defendants fail to show that any of Plaintiff's claims should be dismissed on their merits. First and foremost, Plaintiff has pleaded sufficient facts in the SAC to plead alter ego liability, joint liability, and direct liability. The courts tentative ruling on February 16, 2024 **granted leave to amend** on these theories, and Plaintiff added the requisite facts that are known to her at this time that would allow her to hold Defendants STRIKE 3, GMS, and MILLER jointly liable, directly liable, and liable under an alter ego theory.

Similarly, Plaintiff was **not** required by this court to provide an exemplar of a wage statement that was inconsistent with California law, rather Plaintiff simply clarified that she never received any wage statements whatsoever. Finally, Plaintiff has pleaded more than enough facts to sustain her Second Cause of Action and Seventh Cause of Action.

Plaintiff requests that the Court deny Defendants' Motion in its entirety. Alternatively, to the extent that her Complaint does not already sufficiently allege any of the claims asserted herein, Plaintiff requests that the Court grant her leave to amend.

## II.   LEGAL STANDARDS

### A.   Fed. R. Civ. P. 12(b)(6)

A plaintiff in federal court is required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While the Federal Rules of Civil Procedure ("FRCP") allow a district court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." Fed. R. Civ. P. 12(b)(6), 8(e). With this principle in mind, "[t]he Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6)[,]" and applies "a powerful presumption against rejecting pleadings for failure to state a claim." *Angiano v. Anheuser-Busch InBev Worldwide, Inc.*, 532 F.Supp.3d 911, 916 (C.D. Cal. 2021). It is thus enough to withstand dismissal that a pleading "give[s] the defendant fair notice of what the …

claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("*Twombly*") (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

On a motion to dismiss a complaint for failure to state a claim under FRCP 12(b)(6), the court must assume as true all allegations contained in the complaint, "construing the pleadings in the light most favorable to … the nonmoving party." *Love v. Marriott Hotel Servs., Inc.*, 40 F.4th 1043, 1045 (9th Cir. 2022). Indeed, a district court's order of dismissal will be affirmed "only if it is clear that no relief could be granted under any set of facts that could be provided consistent with the allegations." *Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083, 1085 (9th Cir. 1998). "It need not appear that plaintiff can obtain the specific relief demanded as long as the court can ascertain from the face of the complaint that *some* relief can be granted." *Massey v. Banning Unif. Sch. Dist.*, 256 F.Supp.2d 1090, 1092 (C.D. Cal. 2003) (quoting *Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1104 (D.C. Cir. 1985)).

## B. <u>Pleading Standards</u>

The purpose of sufficiently pled claims is "to give the defendant fair notice of what the… claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. While factual allegations challenged under FRCP 12(b)(6) must not be speculative, the federal rules do "not requir[e] heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 547; *accord*. *Ashcroft v. Iqbal*, 556 U.S. 662, 662 (2009).

Furthermore, in ruling on a 12(b)(6) motion, a court cannot generally consider material outside of the complaint. *See Levine v. Diamanthuset, Inc.,* 950 F.2d 1478, 1483 (9th Cir. 1991). If matters or factual allegations outside the pleadings are considered, the motion should instead be treated as a motion for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Thus, dismissal is especially disfavored in cases where the complaint sets forth a legal theory "that can

best be assessed after factual development." *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004) (internal quotes omitted).

Nevertheless, if the "plaintiffs … have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, *supra*, 550 U.S. at 570. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556. Even a request for an improper remedy for a claim is not grounds for dismissal so long as the court can ascertain from the face of the complaint that *some* relief can be granted. *See Massey*, *supra*, 256 F. Supp. 2d at 1092.

With respect to affirmative defenses, it is the defendant, *not* the plaintiff, asserting the defense that carries the burden of sufficiently pleading, so as to provide plaintiff with "fair notice of the defense." *Wyshak v. City Nat. Bank*, 607 F.2d 824, 827 (9th Cir. 1979). On a motion to dismiss, a defendant must "establish the affirmative defense through either facts that the plaintiff had pleaded or facts that are subject to judicial notice." *Durham v. Prudential Ins. Co. of Am.*, 236 F.Supp.3d 1140, 1150 (C.D. Cal. 2017). Thus, for example, a plaintiff is not required to plead *any* facts or allegations rebutting a defendant's proposed affirmative defense to survive a motion to dismiss. *See, e.g.*, *Frame v. City of Arlington*, 657 F.3d 215, 239-40 (5th Cir. 2011) ("[A] plaintiff is not required to allege that his claims were filed within the applicable statute of limitations.")

Ultimately, a Plaintiff is not expected to plead facts that are currently plausibly not known to him. The *Twombly-Iqbal* standard is clear; a Plaintiff must plead facts that could "plausibly" lead the court to an inference that liability attaches. *Ashcroft v. Iqbal*, 556 U.S. 662, 675-679 (2009).   The complaint **need not specifically state facts,** rather it is wholly sufficient to plead enough facts to have the court plausibly **infer** that liability attaches. *Ibid.* Indeed, although there is not an exact science as to what constitutes "plausible pleadings," a court must "draw on its judicial experience

1  and common sense" to make a plausible inference as to whether liability attaches.
2  *Ibid.*

3  Lastly, the court must also decide whether to grant the plaintiff leave to amend.
4  *Impress Commc'n v. UnumProvident Corp.*, 335 F. Supp. 2d 1053, 1062 (C.D. Cal.
5  2003). A court should "freely give" leave to amend when there is no undue delay, bad
6  faith, dilatory motives on the part of the movant, undue prejudice to the opposing
7  party by virtue of the amendment, or futility of the amendment. Fed. R. Civ. P. 15(a);
8  *Foman v. Davis,* 371 U.S. 178, 182 (1962). Generally, leave to amend is denied only
9  when it is clear the deficiencies of the complaint cannot be cured by amendment.
10 *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d. 655, 658 (9th Cir. 1992).

11 ## III.  LEGAL ARGUMENT

12 ## A. DEFENDANTS FILED THEIR MOTION IN VIOLATION OF
13 ## THE FEDERAL RULES OF CIVIL PROCEDURES

14 Defendants failed to meet and confer with Plaintiff within the time required by
15 LR 7-3. *See* Dkt. #9, p.3. Defendants *alone* are responsible for this blatant violation
16 of the Local Rules. "Denial of a motion as the result of a failure to comply with local
17 rules is well within a district court's discretion." *Tri-Valley CAREs v. U.S. Dep't of*
18 *Energy*, 671 F.3d 1113, 1131 (9th Cir. 2012); *Burke v. Basil*, 2021 WL 5993524, at
19 *1 (C.D. Cal. Oct. 20, 2021) (denying motion where moving party failed to attach
20 copies of alleged meet-and-confer correspondence). "In particular, it is within the
21 court's discretion to refuse to consider a motion based on a party's noncompliance
22 with Local Rule 7-3." *Morales v. K. Chocolatier Inc.*, 2022 WL 19829446, at *2 (C.D.
23 Cal. Oct. 31, 2022). Compliance with the Local Rules is mandatory *regardless* of
24 whatever other filing deadlines a party may be required to satisfy. *See Alcatel-Lucent*
25 *USA, Inc. v. Dugdale Commc'ns, Inc.*, 2009 WL 3346784, at *3-4 (C.D. Cal. Oct. 13,
26 2009) (denying motion to dismiss for defendant's failure to comply with Local Rules
27 meet-and-confer requirement where "Defendant waited until the last possible moment
28 to challenge a complaint of which it was clearly on notice").

Defendants were required to meet and confer no later than March 15, 2024 regarding this motion to dismiss. Yet, Defendants did not request to meet and confer regarding this Motion until March 20, 2024, ***two days*** before this Motion was due. **Decl. of Cohen ¶ 2, Ex. A**. Instead, Defendants claim they met and conferred with Plaintiff on March 7, 2024, one day before the SAC was even served. This shows that Defendants are abusing the judicial process and Federal Rule 12(b)(6), as they decided to file a motion to dismiss ***before they were served with the SAC itself.*** The Parties cannot meet and confer about a document that has not yet been filed nor served. Regardless, despite Defendants' untimeliness, in good faith Plaintiff agreed to engage in a meet and confer which occurred on April 3, 2024. **Decl. of Cohen ¶ 3, Ex. B.**

This is not the first time Defendants have failed to meet and confer in compliance with the Local Rules. Defendants failed to timely meet and confer when they filed their first motion to dismiss, their second motion to dismiss, and several other motions they filed. See *Dkt #11,* pp 5-7. This utter disregard for Local Rules is quickly developing into an unbecoming habit for Defendants. As such, to stifle this ill-suited habit, this Court should dismiss this Motion in its entirety. The Court should not permit Defendants to profit from this blatant corner-cutting and complete disregard for Local Rules. Indeed, the Court may choose in its sound discretion to dismiss the Motion altogether on this basis. *See Pina v. Lewis*, 717 Fed. App'x 739, 740 (9th Cir. 2018).

///
///
///
///
///
///
///
///

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**B. DEFENDANTS FAIL TO PROVE ON THE MERITS THAT ANY OF PLAINTIFF'S CLAIMS ARE SUBJECT TO DISMISSAL**

    **1. Plaintiff Adequately Asserts Claims Against Defendants STRIKE 3, GMS, and MILLER under Alter Ego and Other Theories of Liability.**

        a. MILLER is directly liable for the wrongful actions pleaded in the SAC under Labor Code Section 558.1.

Labor Code Section 558.1 (a) states that "any employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, **may be held liable as the employer**..." Additionally, Labor Code Section 558.1 (b) states that "for purposes of this section, the term 'other person acting on behalf of an employer' is limited to a natural person who is an **owner, director, officer**, or managing agent of the employer." The SAC pleads that MILLER is an employer, as is defined under Labor Code Section 558.1. Plaintiff states that "MILLER… a **founder, principal**, and the Executive producer of VXN GROUP." Dkt. #53 ¶ 12.

Plaintiff also states that it was MILLER's direct actions that violations alleged in Plaintiff's SAC. Plaintiff pleads "MILLER plays an active role in the **enforcement and creation of the policies and procedures** set in place by VXN GROUP. MILLER **directly created the policies that led to the violations alleged herein** and had direct control over the wages and working conditions of Plaintiff and Class Members." Docket #53 ¶ 12. Plaintiff even states *more specific* facts when she pleads that:

Specifically, MILLER was involved in the decision-making process to intentionally misclassify Plaintiff and Class Members as independent contractors rather than employees. MILLER also controlled working conditions of Plaintiff and Class Members. Specifically, MILLER played a

7

direct role in dictating the outfits to be donned by Plaintiff and Class Members on set, what modifications to their bodies could be made, what shoots Plaintiff and Class Members would attend, what hours Plaintiff and Class Members would work, and whether Plaintiff and Class Members would be allowed to return and participate in more shoots. In fact, MILLER was physically present during many modeling shoots and on filming days and had a direct role in directing the scenes and choosing outfits Plaintiff and Class Members would wear.

*See* Docket #53 ¶18.

As such, there is no doubt that MILLER is liable for the violations alleged in the SAC pursuant to Labor Code Section 558.1

<blockquote>b.  Defendants are liable under joint employer and general joint liability theories.</blockquote>

Additionally, Plaintiff also pleads all Defendants are jointly liable under the theories of general joint and several liability as well as joint employer liability. No one factor is decisive in determining whether an organization is a joint employer, but rather the precise contours of an employment relationship can only be established by a careful factual inquiry. *St. Myers v. Dignity Health*, 44 Cal. App. 5th 301, 311 (2019). The most important factor to consider for the determination of joint employer liability is the extent of the defendant's right to control the means and manner of the workers' performance, and the level of control the defendant asserts over the employee's access to employment opportunities. *Vernon v. State of California*, 116 Cal. App. 4th 114, 126 (2004).

Also, a person or entity can be a joint employer without exercising direct control over employee; if the putative joint employer instead exercises enough control over the intermediary entity to indirectly dictate the wages, hours, or working conditions of the employee, that is a sufficient showing of joint employment. *Medina v. Equilon Enterprises, LLC*, 68 Cal. App. 5th 868, 879 (2021). Furthermore, when a

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

director or officer participates in a tortious act on behalf of the corporation, they can be held liable for those actions. *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 595 (1970) ("*Haidinger*"). Finally, all applicable Wage Orders have the same definition for the term employer, as "employer" is defined to be any person who "directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, <u>or</u> working conditions of any person."

### i.  As to MILLER

Plaintiff pleaded that MILLER was the founder, principal, and executive producer for Defendant VXN Group. *See* Docket #53 ¶12. Plaintiff then not only states that MILLER created and controlled the policies and procedures that led to the violations alleged in the SAC, but even gives **specific** examples as to when this happened. Plaintiff expanded upon her experience at Joshua Tree, stating:

> MILLER personally invited Plaintiff to Joshua Tree for a modeling shoot and was a decision-maker as to whether she would be paid for this shoot. MILLER was present during this trip and played a part in denying Plaintiff her meal and rest breaks afforded under California law. MILLER directly controlled and decided which Class Member would be designated as a 'Vixen Angel,' the highest honor an employee for Defendants could earn.

> *See* Docket #53 ¶ 18.

Plaintiff also states that "MILLER was involved in the decision-making process to intentionally misclassify Plaintiff and Class Members as independent contractors rather than employees." *See* Docket #53 ¶ 18. Plaintiff **cannot** be expected to know the exact specifics of the inner workings of VXN GROUP. Plaintiff can only plead the facts that are readily and plausibly known to her; that MILLER is the principal and owner of the VXN GROUP, that MILLER had a direct role in the creation of the policies and procedures that led to the violations pleaded in the SAC, that MILLER invited her to Joshua Tree and played an active role in denying her meal and rest breaks, and that MILLER himself was among the chief decision makers in

9

misclassifying Plaintiff and other Putative Class Members. Plaintiff pleaded and alleged each and every one of these facts in the SAC. *See* Docket #53 ¶ 12 and 18. As such, per *Iqbal,* should the court apply its judicial experience to these **specifically pleaded facts that must be accepted as true**, it can reasonably infer that MILLER can be held liable under not only Labor Code Section 558.1, but also under all applicable Wage Orders and *Haidinger.*

ii.  As to STRIKE 3

Plaintiff pleads that STRIKE 3 is the parent company of VXN GROUP and is the true owner of the copyrights of the pornographic materials used by VXN GROUP. *See* Docket #53 ¶s 13 and 19. Without these copyrights, there is no Vixen, there is no Tushy, there is no Blacked, and **the brands that VXN GROUP manages could not operate**. Under the California law, the standard for joint employer is clear. All applicable Wage Orders state that an employer is anyone "who directly ***or indirectly***, or through an agent or any other person, employs or exercises control over ***the wages***, hours, or working conditions of any person." Similarly, *Medina* clearly states that an employer need not exercise direct control over an employer, rather ***exercising enough control*** over an intermediary entity (in this case VXN GROUP) to ***indirectly*** dictate the wages, hours, or working conditions of the employee, that is a sufficient showing of joint employment.

Plaintiff pleads clearly that "STRIKE 3's level of control over VXN GROUP is so great, in fact, that VXN GROUP cannot act without the express consent of STRIKE 3." Docket #53 ¶ 13. **This single line is the legal framework of joint liability under California law.** If this is all Plaintiff pleaded, then under *Twombly* and *Iqbal,* the complaint would be insufficient to substantiate a claim. However, **this is not all Plaintiff pleads.** In addition to the legal framework highlighted, Plaintiff states **specific facts** that implicate STRIKE 3's liability in this action. Plaintiff pleads:

STRIKE 3 owns, distributes, and produces pornographic films, images, and materials created by VXN GROUP. STRIKE 3 was and is at all relevant times

10

herein the copyright holder for VXN GROUP and the various films, photographs, and other materials produced by VXN GROUP.

Docket #53 ¶ 13.

Plaintiff then states

In fact, **VXN GROUP cannot operate without the copyrights and connections held and owned by STRIKE 3**. STRIKE 3's level of control over VXN GROUP is so great, in fact, that VXN GROUP cannot act without the express consent of STRIKE 3. **Given that STRIKE 3 is the true owner of all the copyrights, photographs, and films used by VXN GROUP, VXN GROUP could only use these materials with the express consent of STRIKE 3.**

Docket #53 ¶ 13.

These statements are more than just legal frameworks and recitations of the elements of joint employer liability; **they are facts that connect the legal framework stated by Plaintiff to the imputed liability pleaded in the SAC**. The acts that indicate the animus connecting the legal framework pleaded to the imputed liability of STRIKE 3 are the facts that plainly state that **as a result of** STRIKE 3's ownership of the copyrights used by VXN GROUP and by being a subsidiary of STRIKE 3, VXN GROUP could not operate independently and **could not pass the policies and procedures causing the violations highlighted in the complaint without the ratification and consent of Defendants.** Thus, the facts pleaded are sufficient to impute STRIKE 3 as a defendant in this action. Once again, **Plaintiff cannot be expected to plead facts that are not plausibly known to her. Per *Iqbal*, Plaintiff need only pled enough specific facts that would allow this court, after applying its judicial experience and common sense, to reasonably infer STRIKE 3 is liable for the violations pleaded.**

///

///

iii.   As to GMS

Finally, Plaintiff adequately pleaded sufficient facts to implicate liability upon GMS. Plaintiff states that not only is GMS a subsidiary of the greater Vixen Media Group, but through its role as the sole distributor of the films, photographs and materials produced by VXN, it exerts a level of control over VXN where it controls the work conditions of employees. *See* Docket #53 ¶14. This is especially true considering Plaintiff pleaded that the materials produced by Defendants could <u>only</u> be released through the express consent of GMS. *See* Docket #53 ¶ 20. Once again, **<u>the legal framework and legal conclusion stated by Plaintiff is that</u>** "The level of control GENERAL MEDIA possessed over VXN GROUP is such that VXN GROUP cannot distribute its films without the express consent of GENERAL MEDIA." Docket #53 ¶ 20. If this was all that was pled, then Plaintiff's allegations would undoubtedly be considered vague and conclusory. Yet, Plaintiff expands upon this legal conclusion and states that "that GENERAL MEDIA was the main distributor for the films, photographs, and other materials produced by VXN GROUP and STRIKE 3." *See* Docket #53 ¶ 14 and 20.

c.   Plaintiff adequately pleaded enough facts for alter-ego liability

Moreover, Plaintiff's alter ego allegations are sufficient to pass scrutiny at this early stage of litigation. "At the motion to dismiss stage, the pleading requirements for alleging an alter ego theory are 'not strict.'" *Parker v. Country Oaks Partners, LLC*, 2023 WL 3149330, at *3 (C.D. Cal. Mar. 22, 2023) (quoting *Unichappell Music, Inc. v. Modrock Prod., LLC*, 2015 WL 546059, at *4 (C.D. Cal. Feb. 10, 2015)). "Because the most damning evidence of the 'unity of interest and identity' is often in the hands of the corporation and its principals and can be found nowhere else, it is sufficient for a plaintiff to plead only two or three of the factors showing unity of interest or identity to withstand a motion to dismiss." *Ibid*. (cleaned up). "To recover on an alter ego theory, a plaintiff need not use the words "alter ego" in the pleadings,

but must allege sufficient facts to show a unity of interest and ownership, and an unjust result if the corporation is treated as the sole actor." *Leek v. Cooper*, 194 Cal. App. 4th 399, 415 (2011).

Plaintiff clearly alleges that a unity of interest between the parties exists and that an inequitable result would occur if the Defendants are not treated as alter egos of one another. First, as to MILLER, a clear unity of interest exists. He is the owner and principal of VXN GROUP. Docket #53 ¶18. MILLER made all of policy decisions and policy enforcements for VXN GROUP. Docket #53 ¶18. MILLER decided who would become a Vixen Angel, the greatest honor an employee for VXN GROUP could be given. Docket #53 ¶ 18. Again, Plaintiff cannot be expected to fully know and plead the inner workings of Defendants' organization. As such, it would be impossible to specifically plead the confidential financial specificities that would indicate a more specific unity of interest between MILLER and VXN GROUP. **These are facts that are to be determined after discovery takes place.** What is apparent, however, is that MILLER is the owner and principle of VXN GROUP and exerts power and control over VXN GROUP to the extent that there is a very real unity of interest. It would therefore go against the very concept of justice to not hold MILLER equally liable for the violation pleaded within the SAC as VXN GROUP during the pleading stage before the parties properly conduct discovery.

The same is true for STRIKE 3. Again, Defendants wrongfully claim Plaintiff only pleads illusory and conclusive facts as to the alter-ego doctrine for STRIKE 3. This is, of course, untrue. Plaintiff does state a legal framework and recitation of the elements for the alter ego doctrine by pleading "there is such a unity of interest between the two that it would be wholly inequitable if STRIKE 3 is not held liable for the actions alleged herein." Docket #53 ¶19. However, Plaintiff plead specific facts as well.

A unity of interest between the parties exists because VXN GROUP is able to freely use the copyrights owned by STRIKE 3. For all intents and purposes, VXN

13

GROUP **could not survive without STRIKE 3.** Plaintiff states exactly this; "VXN GROUP could not operate without the use of the copyrights and materials owned by STRIKE 3." Docket #53 ¶ 19. Again, Plaintiff cannot plead facts not plausibly known to her. Therefore, Plaintiff could not plead the financial specificities at this time to show a more specific unity of interest between the parties.

Plaintiff could only plead what is known to her, that VXN GROUP is a subsidiary of STRIKE 3 and that STRIKE 3 owns all of the copyrights used by VXN GROUP. These two **specifically pleaded facts** show that there is at the very least an indication of a unity of interest between STRIKE 3 and VXN GROUP. Once again, *Iqbal* is clear, Plaintiff **need not specifically plead facts that indicate alter ego liability applies**. What Plaintiff must do is plead *enough* facts that the court, **using common sense and its judicial experience,** could plausibly infer alter ego liability exists. Given that VXN GROUP is a subsidiary of STRIKE 3 and VXN GROUP could not exist without the use of the copyrights owned by STRIKE 3, it is entirely plausible that VXN GROUP and STRIKE 3 are alter egos, and it would be a massive disservice of justice to dismiss STRIKE 3 at this time.

The same applies to GMS. Not only did Plaintiff provide the general legal framework for alter-ego liability by pleading "there is such a unity of interest between GENERAL MEDIA and the other Defendants that it would be wholly inequitable in every sense of the word to not hold GENERAL MEDIA equally liable for the violations alleged herein." Docket #53 ¶ 20. Plaintiff also alleges that GMS "The level of control GENERAL MEDIA possessed over VXN GROUP is such that VXN GROUP cannot distribute its films without the express consent of GENEERAL MEDIA. Plaintiff is informed and believes that GENERAL MEDIA is nothing more than a shell company in the greater VIXEN MEDIA GROUP **which exists only to circumvent liability**." Docket #53 ¶ 20. Again, these facts are as specific as Plaintiff knows at this point in time. The facts pleaded within the SAC are more than sufficient for a plausible inference that GMS is yet another alter ego of VXN GROUP.

### 2.   Plaintiff Properly Claims That She And Class Members Were Not Paid Minimum Wages

Defendants allege that the second cause of action fails because Plaintiff did not plead sufficient facts to show that she did not receive overtime wages. First and foremost, Plaintiff *did* plead sufficient facts. "[F]actual allegations regarding the number of overtime hours worked are not required to state a plausible claim." *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 644 (9th Cir. 2014). Rather, "a plaintiff asserting a claim to overtime payments must allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek." *Id* at 644-645. Additionally, while *Landers* did find that by stating an employee "regularly" worked over forty hours in a week is insufficient, it is "not by a large margin." *Id* at 642. *Landers* indicated that stating the type of unpaid work being completed is likely sufficient to remedy this issue. *Ibid.* Finally, *Landers* indicated that by providing an estimate of the number of hours an employee would work in a given week, this would strengthen the unpaid minimum wage and unpaid overtime claims. *Ibid* at 642-644.

First, Plaintiff *does* specifically identify a week where she was not paid minimum wages and overtime pay; **every single week where she had a shoot.** Plaintiff first alleges in Paragraph 72 of the SAC that she went to at least two shoots per month. Docket #53 ¶ 72. She then pleads in Paragraph 75 of the SAC that "when required to go on set for a shoot, Plaintiff and Class Members would be on set for at least ten (10) hours." Docket #53 ¶ 52. Finally, in Paragraph 77 of the SAC, Plaintiff states that "**during the entire time Plaintiff and Class Members were employed by Defendants**, they were never compensated additional overtime or doubletime payments for the more than ten (10) hours spent on set." Docket #53 ¶ 77. Plaintiff then states that "**During the entire time Plaintiff and Class Members were employed by Defendants**, they were never compensated for overtime hours worked when employees would work more than eight (8) hours per day or forty (40) hours

15

per week." Docket #53 ¶ 78. Plaintiff identifies **her entire employment** as times when she was not compensated for her minimum wage and overtime hours. **It is clearly pled that Plaintiff was *never* paid overtime or minimum wages.**

Dismissing this claim would **not** serve the purpose of a Motion to Dismiss. Courts have been clear, motions to dismiss should not be used as weapons to circumvent liability, rather they should be used to test the sufficiency of a complaint. *Conservation Force v. Salazar*, 646 F.3d 1240, 1240-1241 (9th Cir. 2011). When a plaintiff pleads specific facts, that there was ***never*** a single workweek where they were paid minimum wages and overtime in such clear words as is the case here, it would be unconscionable to dismiss the claim simply because Plaintiff did not list a specific date. This is especially true considering all allegations in the SAC are to be taken as true. Dismissing this claim would only allow Defendants to circumvent liability based on a narrow reading of a single case and deprive Plaintiff and potentially hundreds, if not more, putative class members of having their matters heard in a fair and meritorious day in court.

However, if this does not convince the court, Plaintiff does, in fact, identify specific shoots that Plaintiff was not compensated properly for. Plaintiff identifies two specific shoots, one where she went to Joshua Tree and one in Simi Valley. Docket #53 ¶ 3, 12, 92, 93, and 105. Plaintiff states that she worked for than 12 hours in these shoots. When read in conjunction with Paragraphs 72, 75, 77, and 78, which state she was not paid for minimum wages and overtime pay every single time she was in a shoot, Plaintiff undoubtedly identified two specific instances, and in turn two specific workweeks, where she was not paid minimum wages and overtime. Indeed, **nowhere in *Landers* does it state the plaintiff must identify specific dates she was not paid minimum wages or overtime,** all that is said is Plaintiff must specifically identify workweeks where she was not paid minimum wages.

Plaintiff even states, in detail, exactly what work she was required to do without compensation. Docket #53 ¶71-74 and 79. Finally, Plaintiff provides an

16

estimate of the number of hours of work she was not paid for, 4.5 hours every two weeks. Docket #53 ¶ 80. Therefore, for the reasons highlighted above, Plaintiff has undoubtedly sufficiently pleaded all requisite facts to show she, and her fellow putative class members, were not properly paid minimum wages for all hours they worked.

### 3. Plaintiff Is Not Required to Provide Inaccurate Wage Statements For Her Wage Statement Violation Cause Of Action

Labor Code section 226 not only requires an employer to provide *accurate* wage statements, but it requires an employer to provide wage statements in general. Plaintiff alleges that she and class members did not receive proper itemized wage statements *at all* as they were misclassified as independent contractors. *See* Docket #53 ¶ 121. **Plaintiff cannot be expected to provide an exemplar of something she was never furnished**.

Defendants allege that Plaintiff claims are inconsistent with what was pleaded previously. While it is true Plaintiff cannot plead facts that are "**directly** contradictory" to a previous complaint, Plaintiff did no such thing. In fact, the claims in the FAC that were plead still exist. *See* Docket #53 ¶ 122. The SAC simply complies with this Court's recommendation in its order, clarifying that while *some* class members did receive wage statements, Plaintiff herself and many other putative class members encompassed by the class definition never received any wage statements.

### 4. Plaintiff Properly Pleaded Enough Facts To Substantiate Her Claim That She And Class Members Were Not Reimbursed For Work Related Expenses

The elements of a failure-to-reimburse cause of action are: (1) the employee made expenditures or incurred losses; (2) the expenditures or losses were incurred in

---

17

direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (3) the expenditures or losses were necessary. *Thai v. Int'l Bus. Machines Corp.,* 93 Cal. App. 5th 364, 370 (Oct. 11, 2023). California District Courts have **regularly held that there is no duty to affirmatively request reimbursements**. See *Stuart v. RadioShack Corp*., 641 F. Supp. 2d 901 (N.D. Cal. 2009); See Also *Arroyo v. Int'l Paper Co*., 611 F. Supp. 3d 824 (N.D. Cal. 2020) (holding that "[A]n employee's failure to submit a request for reimbursement does not waive his or her rights under Section 2802. Rather, when the employer knows or has reason to know that the employee has incurred an expense, then it has the duty to exercise due diligence and take any and all reasonable steps to ensure that the employee is paid for the expense.")

Indeed, in the California Supreme Court case *Gattuso v. Harte-Hanks Shoppers, Inc*., 42 Cal. 4th 554 (2007), the Supreme Court held that a fair interpretation of California Labor Code Section 2802 which produces a "practical and workable result" focuses on whether the employer ***knows or has reason to know*** that the employee has incurred reimbursable expense. *Gattuso v. Harte-Hanks Shoppers, Inc*., 42 Cal. 4th 554, 567 (2007). This is because requiring an employee to know when they are entitled to reimbursement and actually asking their employer for reimbursement will not meet the intention of Labor Code Section 2802. Labor Code Section 2802 is intended to ensure that an employee will be compensated for all work-related expenses incurred as a requirement of their job. See *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 189 P.3d 285, 952 (2008) [holding "California has a strong public policy that favors the indemnification (and defense) of employees by their employers for claims and liabilities resulting from the employees' acts within the course and scope of their employment"], see also *Grissom v. Vons Companies, Inc*., 1 Cal. App. 4th 52, 59-60 (1991) [holding "**obvious purpose of which (Labor Code Section 2802) is to protect employees from suffering expenses in direct consequence of doing their jobs**."]

Although *Ellsworth v. Schneider Nat'l Carriers, Inc*., No. 220CV01699SBSPX, 2020 WL 8773059 (C.D. Cal. Dec. 11, 2020) does seem to indicate that a plaintiff may be "expected" to plead if he sought reimbursement, it does not explicitly state as much. There is only a vague and illusory reference that an employee may be "expected" to state that he sought and failed to be reimbursed for some work related costs. *Ellsworth v. Schneider Nat'l Carriers, Inc*., No. 220CV01699SBSPX, 2020 WL 8773059 at 9 (C.D. Cal. Dec. 11, 2020).

Even if the court finds that *Ellsworth* does in fact state that the employee must plead he sought reimbursement, *Ellsworth* would be the minority and deviates from the vast majority of California case law indicating the opposite. Additionally, there is a key difference between *Ellsworth* and Plaintiff's action. In *Ellsworth,* the plaintiff knew that he was entitled to reimbursement. However, in this action, as was stated previously, Plaintiff and other class members were **intentionally** misclassified as independent contractors. Under California law, an independent contractor is not entitled to reimbursements under Labor Code Section 2802. Meaning that **Plaintiff was wholly unaware that she was entitled to reimbursement under Labor Code Section 2802.** This, therefore, begs the question; how would an employee that is intentionally misclassified, who does not know she is even entitled to reimbursement, request reimbursement? Indeed, ruling here that Plaintiff was required to affirmatively required to request reimbursement would only serve as an incentive for companies in the future to misclassify their employees as independent contractors to avoid Labor Code Section 2802 and punishes Plaintiff for being a laywoman who was withheld her rights at law.

To address this courts concern as to how Defendants would know how much to reimburse Plaintiff and putative class members without reimbursement being requested, the court should turn to *Gattuso.* In *Gattuso,* the court held that since the employer knew the distance an employee would be required to drive, that even if the employee did not request the reimbursement, ***the employer had the duty to calculate***

19

1   ***the distance that was driven and give an appropriate reimbursement based on the***

2   ***employer's knowledge.*** *Gattuso v. Harte-Hanks Shoppers, Inc*., 42 Cal. 4th 554, 567

3   at 571 (2007). Indeed, Defendants were the ones who required employees to get their

4   manicures done, drive to various locations, get anal bleaching, use their personal cell

5   phones for work related purposes, and incur other such costs. Docket #53 ¶130.

6       Defendants could have inquired as to how much these expenses would cost,

7   give employees a stipend to pay for these expenses, or, as is the case in *Gattuso,* pay

8   employees a lump sum of cash based on their knowledge of the costs of these

9   expenses. *Id.* at 571-573. Additionally, since this action is still in the pleading stage,

10  everything alleged in the SAC must be taken as true. Since this is the case, the only

11  reason Plaintiff would not know she was entitled to reimbursement is because

12  Defendants intentionally misclassified her. Therefore, the knowledge of how much to

13  reimburse Plaintiff is owed is irrelevant, as it was only because of Defendants'

14  wrongful actions that Plaintiff did not know she could request reimbursements under

15  Labor Code Section 2802.

16      As to the costs themselves, Plaintiff sufficiently pleads each specific costs. First

17  cell phones. Again, the complaint must be read as a whole and facts that allow the

18  court to make a plausible inference, using common sense and judicial experience, that

19  liability attaches. Plaintiff would not work in a specific location. Plaintiff would not

20  see anyone who worked for Defendants daily and would only communicate with them

21  via cellphone conversations when away from the shoot locations. As such, there are

22  no specific facts to be plead about the usage of cell phones.

23      As for the manicures, pedicures, hair, makeup, and anal bleaching, these were

24  all required by Defendants as conditions of employment. Dockets #53 ¶s 2, 130-134.

25  These are not simple dress code requirements; these are mandatory modifications to

26  an individual's body that were required for shoots.

27      Plaintiff was not required to get these manicures, pedicures, and other

28  appointments as a part of some dress code. Rather, Defendants required she incur

these costs so she could have a more appealing appearance and thus have more people purchase the photos and films produced by Defendants, and therefore make more money. Defendants directly benefitted from Plaintiff incurring these mandatory costs. Indeed, "maintaining her physical appearance" was a requirement of the job. Docket #53 ¶ 3. If she did not comply with Defendants requests, she would be terminated. Docket #53 ¶ 3. As such, there is no doubt that these "grooming requests" are requirements of continuing her work with Defendants.

Additionally, Defendants mischaracterize Plaintiff's complaint. Plaintiff never stated that while working for Defendants she was working for other adult companies. Any of the requests made to Plaintiff about incurring costs related to her appearance were done exclusively for the benefit of Defendants and was a condition of continued employment with Defendants. As such, these costs should be fully reimbursable.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion in its entirety. Further, the Motion fails to establish on the merits that any of Plaintiff's claims are legally deficient and thus dismissal must be denied. In the alternative, to the extent that the Court is inclined to grant dismissal as to any of her claims, Plaintiff asks that the Court grant her leave to amend.


Dated:  April 5, 2024                         BIBIYAN LAW GROUP, P.C.


                                              /s/ Sarah Cohen
                                              DAVID D. BIBIYAN
                                              JEFFREY D. KLEIN
                                              SARAH H. COHEN
                                              Attorneys for Plaintiff, MACKENZIE ANNE
                                              THOMA, and on behalf of herself and all
                                              others similarly situated

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS