**BIBIYAN LAW GROUP, P.C.**
David D. Bibiyan (SBN 287811)
david@tomorrowlaw.com
Jeffrey D. Klein (SBN 297296)
jeff@tomorrowlaw.com
Sarah H. Cohen (SBN 330700)
sarah@tomorrowlaw.com
Rafael Yedoyan (SBN 351499)
rafael@tomorrowlaw.com
1460 Westwood Blvd
Los Angeles, California 90024
Tel: (310) 438-5555; Fax: (310) 300-1705

Attorneys for Plaintiffs, MACKENZIE ANNE THOMA, as an individual and on behalf of other similarly situated persons

# UNITED STATES DISTRICT COURT

# CALIFORNIA CENTRAL DISTRICT

| | |
|---|---|
| MACKENZIE ANNE THOMA, a.k.a KENZIE ANNE, individually and on behalf of all similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>VXN GROUP, LLC., a Delaware limited liability company; STRIKE 3 HOLDINGS, LLC., a Delaware limited liability company; GENERAL MEDIA SYSTEMS, LLC., a Delaware limited liability company; MIKE MILLER, an individual; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.: 2:23-cv-04901 WLH (AGRx)<br><br>**PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**<br><br>DATE: JULY 9, 2024<br>TIME: 11:00AM<br>JUDGE: HON. ALICIA G. ROSENBERG |

Plaintiff MACKENZIE ANNE THOMA ("Plaintiff" or "Ms. Thoma") hereby submits the following Motion for Protective Order:

Law Offices of
BIBIYAN LAW GROUP
A Professional Corporation
1460 Westwood Blvd
Los Angeles, California 90024
(310) 438-5555

MOTION FOR PROTECTIVE ORDER

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

On May 22, 2024, Defendants served Plaintiff with a notice of subpoena on Mainboard, LLC. Plaintiff, fearing that her right to privacy is being breached by these subpoena requests, hereby submits this Motion for Protective Order, pursuant to this court's orders.

## II.    STATEMENT OF FACTS

On May 22, 2024, Defendants served Plaintiff with a Notice of Intent to Serve Subpoena on Mainboard, LLC ("MAINBOARD"). On May 24, 2024, the Parties had an initial meet and confer to discuss the narrowing of the requests in Defendants' subpoena requests. **Declaration of Rafael Yedoyan (Yedoyan Decl.) ¶2.** This meet and confer was fruitless. The Parties had a second meet and confer on May 31, 2024 to discuss, among other items, the potential narrowing of the requests in Defendants' subpoena. **Yedoyan Decl. ¶3.**  This meet and confer was once again fruitless. On June 11, 2024, the Parties came before this honorable court to discuss Defendants' subpoena requests. Here, the court issued its minute order asking Plaintiff to submit briefing on a Protective Order for the subpoena requests No. 2-3, 6-7, 9-10 served on MAINBOARD.

## III.   LEGAL ARGUMENT

### A. Standards For A Motion For Protective Order

"A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending…" 22 CFR § 26(c).  The relevant standard for purposes of Rule 26(c) is whether "'good cause' exists to protect th[e] information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002). This standard is lower than the typical burden a party must show for sealing documents. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006). For good cause to exist under Rule

26(c), "the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips v. G.M. Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002).

### B. Good Cause Exists For The Granting Of A Protective Order For Subpoena Requests Nos. 2-3, 6-7, and 9-10

Privacy is a chief consideration for the courts when considering a parties' interests in relation to a third-party subpoena. See *United States v. Nixon*, 418 U.S. 683, 708 (1974). "Even when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must then be a 'careful balancing' of the 'compelling public need' for discovery against the 'fundamental right of privacy.'" *Artis v. Deere & Co.*, 276 F.R.D. 348, 352-353 (N.D. Cal. 2011). Also, "federal courts recognize a right of privacy implicit" for discovery. *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 342 F.R.D. 461, 498 (C.D. Cal. 2022).

"A reasonable expectation of privacy exists when 1) the individual has sought to preserve something as private, and 2) the person's expectation of privacy is one that society is prepared to recognize as reasonable." *United States v. Cannon*, 264 F.3d 875, 879 (9th Cir. 2001); *United States v. Vasquez*, 706 F. Supp. 2d 1015, 1021 (C.D. Cal. 2010). Courts within the Ninth Circuit have repeatedly held that parties have a reasonable expectation of privacy for information sent through the internet because "the mere act of accessing a network does not in itself extinguish privacy expectations, nor does the fact that others may have occasional access to the computer." *United States v. Heckenkamp*, 482 F.3d 1142, 1146-1147 (9th Cir. 2007) [*Heckenkamp*]. Parties having private conversations online, be they telephone conversations or in a chat room, have a reasonable expectation of privacy until they surrender this right. *United States v. Meek*, 366 F.3d 705, 711-712 (9th Cir. 2004). Indeed, California particularly provides for immense protections of internet-based

communications. See *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027-1028 (C.D. Cal. 2023); See Also Cal. Penal Code § 632.7.

The Supreme Court of the United States held that a party has a reasonable expectation of privacy for their personal information electronically held by a third party. See *Carpenter v. United States*, 585 U.S. 296, 309 (2018). The Ninth Circuit in *Heckenkamp* found that a reasonable expectation of privacy could potentially be chilled if the network provides some sort of warning about the disclosure of certain private information. Yet, MAINBOARD's privacy policy never states that the information requested by Defendants is disclosable. **Yedoyan Decl. ¶4**. As such, there is no argument that MAINBOARD in any way extinguished Plaintiff's reasonable expectation to privacy as to the information requested by the subpoena. Finally, individuals have a legally recognized privacy interest in their personal financial information. *Look v. Penovatz*, 34 Cal. App. 5th 61, 73 (2019).

Requests No. 2-3, 6-7, and 9-10 all ask for information that Plaintiff had a reasonable and cognizable interest of privacy in. Should a protective order not be granted for the following requests, then Plaintiff stands to have her confidential financial information be disclosed to the public, her private dealings and personal conversations be revealed to the public, and her home address revealed to the public.

i.   Request No. 2

Subpoena Request No. 2 asks MAINBOARD to "Produce all TALENT ACCOUNTING DATA submitted by any of the RELEVANT USERS on the MAINBOARD PLATFORM that RELATES to PLAINTIFF." "TALENT ACCOUNTING DATA" is defined as "all accounting data submitted to or generated by the MAINBOARD PRODUCT relating to payments due, payment received, invoices generated, invoices distributed, invoices received, and any financial reports cataloguing such payments or invoices."

This request would require MAINBOARD to produce private information that Plaintiff undoubtedly had a reasonable expectation of privacy for. Plaintiff, and

everyone else who uses MAINBOARD, used the platform with the expectation that their dealings on the platform would not become public information and used MAINBOARD as a way of preserving their privacy. Had Plaintiff not wanted to keep this information private, she would have made these deals through a public forum, such as Instagram or Facebook. All of the dealings Plaintiff would have with the "relevant users" are completely and totally private, and this request therefore asks MAINBOARD to provide information that should remain private.

Additionally, as the court stated in *Look,* individuals have a legally recognized privacy interest in their financial information. The documentation this request asks MAINBOARD to produce includes invoices and financial reports that relate directly to Plaintiff. In other words, this request asks MAINBOARD to produce and publicize private financial documentation that Plaintiff intends to keep private.

Finally, these invoices and reports will include private information relating to where Plaintiff lives. Without the granting of this protective order, Plaintiff's address will become fully available to the public, which places her at great risk and breaches her expectation to privacy.

ii.   Request No. 3

Subpoena Request No. 3 asks MAINBOARD to "Produce all TALENT BOOKING DATA submitted by any of the RELEVANT USERS on the MAINBOARD PLATFORM that RELATES to PLAINTIFF." "TALENT BOOKING DATA" is defined as "any information that contains, reflects, references, or catalogues work engagements solicited, received, accepted, or denied by a user or on behalf of a user using the MAINBOARD PLATFORM, including scheduled of such work engagements, and any Documents that contains, reflects, or references any Talent Booking Data."

This request would require MAINBOARD to produce private information that Plaintiff undoubtedly had a reasonable expectation of privacy for. Plaintiff, by using MAINBOARD, did not want all of her private business dealings to become widely

known to the public. Plaintiff's private business dealings that occurred on the platform, such as the individuals she would negotiate with and make deals with, were intended by Plaintiff to remain private. This is especially true given the intimate nature of the adult entertainment industry. Should this information become public, it could very well serve to harm Plaintiff's reputation.

### iii. Request No. 6

Subpoena Request No. 6 asks MAINBOARD to "Produce all DOCUMENTS that state the dates and times any of the RELEVANT USERS submitted TALENT BOOKING DATA that RELATES to PLAINTIFF."

Once again, this request would require MAINBOARD to produce private information that Plaintiff undoubtedly had a reasonable expectation of privacy for. This request would require MAINBOARD to produce documents that include the names of people Plaintiff worked with, companies she negotiated with, and other private information that Plaintiff expected to remain private. Additionally, these documents would likely include invoices and other documentation that not only contain private financial information, but also would include her private address, as invoices and financial reports would include the dates and times "talent booking data" would be submitted.

Additionally, Plaintiff had a reasonable expectation of privacy that the work she procured on MAINBOARD was to remain private at all times, yet this request asks MAINBOARD to produce this information for the general public to see. This request would required MAINBOARD to disclose documents that indicated the people, companies, and types of projects Plaintiff would work on/with. Given the sensitive nature of the adult entertainment industry, this information, if revealed to the public, would cause Plaintiff shame, harm, and embarrassment.

///

///

///

iv. Request No. 7

Subpoena Request No. 7 asks MAINBOARD to "Produce all DOCUMENTS that state the dates and times any of the RELEVANT USERS submitted TALENT ACCOUNTING DATA that RELATES to PLAINTIFF."

Once again, the phrase "documents" can be broadly construed to include a number of different items. Invoices and other financial reports will include, at a minimum, the dates the "relevant users" submitted the talent accounting data. Additionally, as discussed for Request No. 2, "talent accounting data" includes sensitive documents such as invoices and financial reports. These invoices and financial reports will have the dates they were submitted written on them, and therefore they are documents that would need to be produced under this request. Such documentation, when produced, breaches Plaintiff's expectation of privacy as to her financial information and other sensitive information they may contain, such as her home address.

Additionally, Plaintiff had a reasonable expectation of privacy that the work she procured on MAINBOARD was to always remain private, yet this request asks MAINBOARD to produce this information for the general public to see. This is improper and would cause Plaintiff irreparable harm.

v. Request No. 9

Subpoena Request No. 9 asks MAINBOARD to "Produce all COMMUNICATIONS that RELATE to TALENT BOOKING DATA issued by any of the RELEVANT USERS in connection with PLAINTIFF."

This request should be subject to the protective order on several grounds. First, in asking for all "communications," this request implicitly asks for private conversations the "relevant users" had with Plaintiff herself, including private messages. As discussed, when using MAINBOARD, Plaintiff had a reasonable expectation of privacy. These messages were intended to remain private between herself and the other "relevant users." As such, the disclosure of these

communications to the public at large would undoubtedly impede Plaintiff's reasonable expectation of privacy.

Furthermore, the conversations had with Plaintiff, particularly regarding which people and companies to work with, is a sensitive topic given the nature of the adult entertainment industry. Should this information be revealed to the public, Plaintiff stands to suffer from shame, embarrassment, and harm. Finally, "communication" is broadly defined to include a plethora of documentation, including items such as invoices and financial reports. These documents, as discussed above, contain private information that should not be disclosed to the public at large.

### vi. Request No. 10

Subpoena Request No. 10 asks MAINBOARD to "Produce all COMMUNICATIONS that RELATE to TALENT ACCOUNTING DATA issued by any of the RELEVANT USERS in connection with PLAINTIFF."

This request, for the reasons described for Request No. 9, asks MAINBOARD to reveal confidential communications. These communications, for example, would reveal how much she would be paid for each shoot. This is problematic for several reasons. It would reveal how much money she would be paid to sleep with certain adult entertainers, how much certain types of shoots would pay, and a plethora of other potentially embarrassing information that should remain private. Should this information be revealed to the general public, Plaintiff stands to be embarrassed and suffer harm.

For the reasons explained above, Plaintiff has good cause in requesting these documents to remain private and have a protective order guard these documents, should MAINBOARD produce them. Otherwise, Plaintiff stands to suffer from embarrassment and be harmed.

///

///

///

IV. **CONCLUSION**

Based on all of the foregoing, Plaintiff humbly requests that this honorable Court grant Plaintiff's Motion to Protective Order.

Dated: June 18, 2024

BIBIYAN LAW GROUP, P.C.

*/s/ Rafael Yedoyan*
DAVID D. BIBIYAN
JEFFREY D. KLEIN
SARAH H. COHEN
RAFAEL YEDOYAN
Attorneys for Plaintiff, MACKENZIE ANNE THOMA, individually and on behalf of other similarly situated persons