**KANE LAW FIRM**
Brad S. Kane (SBN 151547)
bkane@kanelaw.la
1154 S. Crescent Heights. Blvd.
Los Angeles, CA 90035
Tel: (323) 697-9840
Fax: (323) 571-3579
Trey Brown (SBN 314469)
trey.brown@vixenmediagroup.com
11337 Ventura Blvd.
Studio City, CA 91604
Attorneys for Defendants
VXN GROUP LLC and MIKE MILLER

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| MACKENZIE ANNE THOMA, a.k.a. KENZIE ANNE, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VXN GROUP LLC, a Delaware limited liability company; MIKE MILLER, an individual,<br><br>Defendants. | Case No. **2:23–cv–04901 WLH (AGRx)**<br><br>**MOTION TO OVERRULE RYAN MURPHY'S CLAIM OF PRIVILEGE AND COMPEL PRODUCTION OF DOCUMENTS [DISCOVERY MATTER]**<br><br>Date: October 15, 2024, 10:00 AM |

**MOTION TO OVERRULE RYAN MURPHY'S CLAIM OF PRIVILEGE, COMPEL PRODUCTION OF DOCUMENTS [DISCOVERY MATTER]**

Pursuant to Fed. R. Civ. P. 45(d)(2)(B)(i), Rule 45(g), and the Court's inherent powers, Defendants VXN Group LLC and Mike Miller ("Defendants") hereby respectfully move for entry of an order (1) overruling nonparty Ryan Murphy's objection that his text messages are attorney-client privileged; (2) and compelling Mr. Murphy to produce the withheld materials.

## I. INTRODUCTION

Ryan Murphy (a.k.a. "Ryan Kona") is a third-party witness and Plaintiff's former adult film talent agent. As her agent, Murphy was the main liaison between Plaintiff and Defendants. His communications, testimony and documents are crucial to the two dispositive issues in this case: (i) whether Plaintiff is exempt as a professional actor under Wage Order 12, and (ii) whether Plaintiff was misclassified as an independent contractor. [**Order**, **Dkt. 66** at 8]. Despite knowing this, Plaintiff's counsel has obstructed Defendants from receiving relevant documents from Mr. Murphy.

On August 22, 2024, after several IDCs, the Court allowed Defendants to move to compel Murphy's communications in his privilege log and ordered him to produce any outstanding documents. [**Order**, **Dkt. 100**, at 3-4]. Initially, Murphy denied the existence of messages but later produced a privilege log for text messages with Plaintiff, citing attorney-client privilege. However, the privilege does not apply to communications between non-attorneys, especially before Murphy has legal representation. Murphy also testified that he gave Plaintiff's counsel an archive of his Instagram account in July, which included deleted whistle-blowing statements about this lawsuit. To date, Plaintiff's counsel still has not produced the archive.

1

In a recent deposition, Plaintiff's former accountant testified that Plaintiff's counsel tried to bully him into non-compliance with Defendants' subpoenas by threat of incarceration. He also stated that Plaintiff personally asked him not to comply because it would hurt her case. In light of these developments, Defendants move to compel Murphy to produce withheld documents.

## II.   BACKGROUND

In September 2023, Murphy was fired from Plaintiff's former agency, Motley Models ("Agency").[1] About two months later, disgruntled over his termination, Murphy began making cryptic posts about the Agency on Instagram. *See <**Exhibit A**, Supplemental Responses of Ryan Murphy (Excerpts) at 4-6>.* His frustration peaked in January of 2024 during the AVN Awards, and he took to Instagram as a whistle blower, revealing what he knew about the Agency. He specifically targeted Sid Vision,[2] a former silent partner of Motley who was responsible for his termination. Murphy claimed that Vision convinced Plaintiff to bring this lawsuit due to a "personal vendetta" against Defendants. *Id.* Murphy also alleged that Vision boasted about introducing Plaintiff to her lawyers ("Bibiyan Law Group" or "BLG") in this case.[3] *Id.* In April 2024, Mr. Murphy deleted those posts.

---

[1] Murphy was fired after owner Dave Bacon (a.k.a. Dave Rock) was discovered illegally recording Motley's client through hidden cameras in bathrooms of his house. This was detailed in the recent decision *Doshi v. Twice Baked Media*, TAC-52887, Department of Labor Standards and Enforcement, State of California (April 30, 2024), available at: *https://www.dir.ca.gov/DLSE/tac/20240430%20Doshi%20v.%20Twice%20Baked%20Media%20decision%20vF%20(signed).pdf*

[2] Vision's real name is Sidney Millspaugh IV. He is an IT executive from Florida who moved to Los Angeles during Covid so that his wife, adult film actress Charly Summers, could pursue her adult film career.

[3] Specifically, Mr. Murphy stated: "One of the main issues between Vixen and Motley was the class action labor lawsuit filed by Kenzie Anne. Vixen's suspicions were correct that Motley has something to do with it as Sid Visions

Defendants noticed subpoenas for Murphy on May 24, 2024 and personally served him on May 29, 2024, commanding him to attend a deposition as well as produce documents by June 24. *See <**Exhibit B**, Notice of Intent to Serve Subpoena>*. Among others, Request No. 8 asked him to "[p]roduce all COMMUNICATIONS between YOU and PLAINTIFF RELATING TO THIS MATTER." *Id.* at 10. Additionally, Request No. 32 asked for an archive of his Instagram account. *Id.* at 17.

For reasons that may only become clear upon resolution of the Motion, this subpoena distressed Plaintiff. On May 29, BLG sent a letter to Murphy instructing him not to comply with Defendants' subpoena, threatening "civil liability, court sanctions" and "contempt of court." *See <**Exhibit A** at 3>*. Plaintiff initially petitioned the Court to quash the Murphy subpoenas (as well as subpoenas served on Instagram and Mainboard, LLC). *See* [**Dkt. 67**]; [**Dkt. 69**, at 3–4]. However, on June 4, the Court ruled that "Plaintiff has not shown that she has standing to object to the subpoena" concerning Murphy's public Instagram messages. [**Order**, **Dkt. 71**, at 2]. This did not end BLG's involvement; instead, after initially advising Murphy not to respond to the subpoena, they engaged him as a client.[4]

On June 7, Plaintiff's counsel responded on Murphy's behalf with identical boilerplate objections, including attorney-client privilege, for *every* document

---

was the man who introduced Kenzie to her lawyer and bragged about how he convinced her to do this." *Id.*

[4] This seemed unusual given Murphy's public adverse statements regarding the lawsuit and BLG. *See* CA ST RPC Rule 4.3(a–b). Additionally, the DLSE ruled that the Agency owed commissions to all its clients, meaning Murphy may be liable to Plaintiff for improper fees. *See Doshi v. Twice Baked Media*, TAC-52887, *supra* n.1, at 7:18, 15 ("Separately, [Murphy] billed the production companies for booking fees based on Doshi's shoots….The inclusion of booking fees violated Labor Code § 1700.24, breached Motley's fiduciary duty to Doshi…").

**KANE LAW FIRM**
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

1. request. In response to Request No. 8, Murphy claimed that he either no longer had the requested documents or never possessed them. No privilege log was attached. After another IDC, the Court urged BLG "to go over possession, custody or control over sources of electronic documents that may be responsive to the subpoena." [**Dkt. 74**, at 2]. Despite this, Murphy, through BLG, failed to supplement his discovery and refused to attend his deposition.[5] *See generally* [**Dkt. 86**]. On July 3, after a *third* IDC, the Court ordered Murphy to supplement his responses "and *complete* his production of responsive documents" by July 17. *See* [**Order**, **Dkt. 88**, at 1] (emphasis added). The Court further required BLG to disclose in writing the general steps taken to search for responsive documents. *Id.* However, on July 17, Murphy served supplemental responses but produced no additional material, maintaining the same boilerplate objections and stating he "*will produce* all non-privileged documents within his possession, custody, and control." <**Exhibit A**, *Murphy Supp. Resp.* at 1> (emphasis added). Again, no privilege log was included, leading to a fourth IDC with the Court. *See* [**Dkt. 94**].

Finally, on July 20, Mr. Murphy produced his *second* supplemental responses. He maintained the same objections (without producing a privilege log) while producing a single screenshot evidencing a download of his Instagram archive without actually producing the archive itself. *See* <**Exhibit D**, *Murphy's*

---

[5] Murphy's deposition was originally scheduled for June 28. BLG represented "on or about June 24," a month after service of Plaintiff's subpoena, that Murphy claimed "representatives of Defendants made death threats *to him*," which allegedly took place on May 9, 2024. [**Dkt. 86**, at 3–4] (emphasis added). However, during his deposition, Murphy clarified that the incident occurred "roughly around the middle to end of 2022." <**Exhibit C**, *Murphy Deposition Transcript (Excerpts)* at 19:3–6>. Dave Rock and Sid Visions, whom Murphy described as "clearly a liar," *id.* 136:2–3, told Murphy a VXN representative had threatened him. *See id.* at 20:6–10. This hearsay is the sole basis of his refusal to attend his original deposition.

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

*Second Supplemental Responses (Excerpts)>; see also* [**Dkt. 94**] (ordering Mr. Murphy to respond to Request No. 32).

Just two days later, on July 22, the parties sat for the rescheduled deposition, which the Court had to personally schedule at the United States District Court for the District of Nevada. [**Dkt. 88**]. Murphy testified that he purchased a new phone in March 2024 and conveniently lost all communications on his old phone. But, he admitted he had texted with Plaintiff a "handful" of times this year. *See* <**Exhibit C,** Murphy *Depo. Tr.* 73:16–18; 104:6–107:8>. Despite this admission and Defendants' July 30 conferral requesting Mr. Murphy supplement his discovery, nothing was produced. *See* [**Dkt. 99**, at 5]. And on August 16, Mr. Murphy's counsel conceded that she was "unable to confirm whether any supplementals will be provided prior to the IDC." *See id.* 5–6.

Thus, on August 19, counsel sought the Court's assistance yet again for a fifth IDC on this matter. *See* [**Dkt. 98**]. Counsel for Mr. Murphy averred that he was still "diligently working on providing supplemental responses," and that his counsel had only "became aware (at the Ryan Murphy deposition and Plaintiff's deposition conducted on July 22, 2024 and August 13, 2024, respectively) that a privilege log is required."[6] [**Dkt. 99**, at 3].

---

[6] Counsel's representations are questionable since the withheld communications may involve BLG's unethical solicitation of Murphy for its financial gain. *Cf.* CA ST RPC Rule 7.3(a). This is particularly concerning because the solicitation might be driven by the firm's "pecuniary gain," as it has requested recovery of its fees if it prevails in the litigation. *See* [**Dkt. 53**, at Prayer M]. The communication may also violate CA ST RPC Rule 4.3(b) because BLF is now using attorney-client privilege to block Defendants from otherwise discoverable information. BLG's conflict of interest is evident, as Defendants' sought Murphy's testimony partly due to public statements about possible misconduct by BLG. Providing legal advice to Murphy, and then shielding those communications under attorney-client privilege appears to directly contradict California's ethical rules.

Finally, on August 21–*eighty-nine days* after Defendants' subpoena was served and *fifty-eight days* after Murphy was required to respond–Murphy produced a privilege log for some of his text messages. *See* <**Exhibit E**, Murphy's Privilege Log>. In three instances, he claims attorney-client privilege for "Text Message[s] between Plaintiff and Ryan Murphy[.]" *See id.* However, no attorney is identified in any of these messages. The first message occurred before his subpoena was noticed and served, meaning BLG is claiming privilege for communications that took place before they would have even considered representing him.

The Court has authorized that "Defendants may file a motion to compel documents listed on the privilege log[.]"[**Order**, **Dkt. 100**, at 3]. The Court has also ordered "that Mr. Murphy shall complete his production of documents by August 30, 2024. If Mr. Murphy does not have any additional documents to produce, then counsel shall so advise defense counsel." *Id.* at 4. On that date, he produced a single Instagram message that was brought to his attention at his July 22 deposition. *See* <**Exhibit F**, Murphy Instagram Message with Brad Kane>. The new production, however, did not contain all responsive materials. *Cf.* [**Dkt. 99**, at 5]. Importantly, it failed to include the Instagram archive and the "privileged" text messages.

On September 10, 2024, Defendant's counsel deposed Plaintiff's former accountant Larry Lerner of Artist Business Management Group, Inc. *See* <**Exhibit G**, Declaration of Trey Brown>. Mr. Lerner has been a licensed tax professional for over 40 years in the State of California. *Id*. Mr. Lerner testified that Plaintiff's counsel sent him a letter, similar to the one BLG sent to Murphy, ordering him to not comply with the subpoena. *Id*. *See* <**Exhibit H**, August 23 BLG Letter to Larry Lerner>. Plaintiff's counsel then contacted him and attempted to bully him into non-compliance. Specifically, he stated that Plaintiff's counsel told him that he could be jailed if he complied with Defendants'

6

subpoena. *Id*. Mr. Lerner also stated that Plaintiff herself called him after he received the subpoena and begged him not to comply because *it would harm her case*. *Id*. Given Mr. Lerner's testimony that Plaintiff and BLG made efforts to suppress evidence, Defendants now move to compel Mr. Murphy's text messages and Instagram archive.

### III.   STANDARD

"[O]n notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i); *see also id.* 37(a)(2). "The court, in ruling on the motion, 'must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.'" *Brewster v. City of Los Angeles*, No. 14-2257, 2019 WL 6620505, at *2 (C.D. Cal. Sept. 5, 2019) (quoting Fed. R. Civ. P. 45(d)(2)(B)(ii)).

A nonparty "withholding subpoenaed information under a claim that it is privileged . . . must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents [or] communications . . . in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2); *see id.* 26(b)(5). "In other words, a party claiming attorney-client privilege . . . must identify specific information and communications that are privileged and the grounds supporting invocation of the privilege for each allegedly privileged piece of evidence – blanket assertions of either theory are 'extremely disfavored.'" *Immigrant Defs. L. Ctr. v. U.S. Dep't of Homeland Sec.*, No. 21-395, 2023 WL 8135746, at *1 (C.D. Cal. Oct. 30, 2023) (collecting cases). "The party asserting the attorney-client privilege has the burden of establishing the existence of the attorney-client relationship and the privileged nature of the communication." *Owens v. Wesco Aircraft Hardware Corp.*, No. 19-6097, 2020 WL 6114916, at *1 (C.D. Cal. Apr. 6, 2020) (citing *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010)).

## IV. ANALYSIS

### A. The Privilege Log is *Prima Facie* Defective

Murphy should be compelled to produce the contents of text messages in his privilege log because the log only lists communications between Plaintiff and Murphy. The privilege log does not list a single attorney that was involved in the communications.

The attorney-client privilege does not cover communications between two nonlawyers. "The attorney client privilege applies to communications *between lawyers and their clients . . . .*" See *Owens v. Wesco Aircraft Hardware Corp.*, No. 19-6097, 2020 WL 6114916, at *2 (C.D. Cal. Apr. 6, 2020) (quoting *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996)) (emphasis added). "The Ninth Circuit applies an eight-part test for the attorney client privilege: '(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.'" *Id.* at *1 (quoting *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009)); *see* Fed. R. Evid. 501.

According to Murphy's own words, the withheld material only consists of "Text Message[s] between Plaintiff and Ryan Murphy[.]" <***Exhibit E***, Privilege Log>. However, "[t]he attorney client privilege does not apply here because the communications at issue were made between a non-attorney[s.]" See *Park v. Cas Enterprises, Inc.*, No. 8- 385, 2009 WL 3565293, at *3 (S.D. Cal. Oct. 27, 2009); *see also Iroquois Master Fund, Ltd. v. Glob. ePoint, Inc.*, No. 8-7761, 2018 WL 6929337, at *12 (C.D. Cal. Jan. 9, 2018) (noting, *inter alia*, that a privilege log must identify "the attorney and client involved") (citations omitted).

"[T]here is no explanation of why or how the asserted privilege applies," *Estate of Antonio Thomas v. County of Sacramento*, No. 20-903, 2021 WL

4992923, at *1 (E.D. Cal. Oct. 27, 2021), and thus Murphy has not "carried [his] burden to establish the applicability" of the attorney-client privilege. *See Immigrant Defs. L. Ctr. v. U.S. Dep't of Homeland Sec.*, No. 21-395, 2023 WL 8135746, at *2 (C.D. Cal. Oct. 30, 2023) (citation omitted).

### B. Defendants Seek Murphy's Text Messages to Determine Whether Plaintiff or Plaintiff's Counsel Influenced his Testimony

"A defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Loop AI Labs Inc. v. Gatti*, No. 15-CV-00798-HSG, 2017 WL 934599, at *10 (N.D. Cal. Mar. 9, 2017), aff'd, 742 F. App'x 286 (9th Cir. 2018). BLG was not able to influence Mr. Lerner's testimony or suppress his document production because Mr. Lerner is a sophisticated licensed accountant and understood his obligations under the law.  However, Murphy is unemployed and desperately wants a job and needs money.[7]  "A lawyer commits misconduct in interviewing a witness ("fault" in the civil context) when that lawyer knows, or should know, that the lawyer is encouraging a witness to place his or her own interests, problems, concerns, fears, biases, and the like ahead of telling the truth. This is the essence of 'improper influence' or 'undue influence' given the facts and circumstances of this case." *Stanley v. Wong*, No. CIV S-95-1500 FCDGGH, 2006 WL 1523128, at *8 (E.D. Cal. May 31, 2006).

Defendants seek to compel Murphy's documents in order to determine if Plaintiff and BLG influenced Murphy to withhold evidence that may hurt Plaintiff's case. "Any lawyer in a civil proceeding may commission investigations and query the critical witnesses in the case. But, as pointed out by petitioner at hearing, the lawyer should not deal with the witnesses in such a manner as will

---

[7] On August 13, 2024, Mr. Murphy created a "go fund me" to help his family avoid eviction: https://www.gofundme.com/f/help-a-las-vegas-family-avoid-eviction

9

coerce or unduly influence a witness' recall of events. Concepts of obstruction of justice apply to civil proceedings." *Id.* at *6. Defendants sought Murphy's testimony not only for Instagram posts but also because he was the primary liaison between Plaintiff and Defendants. Murphy handled Plaintiff's payment information, requested reimbursements, communicated her availability, and relayed the details of each movie shoot. If Murphy's testimony or document production has been improperly influenced, it may impact the integrity of the case and judicial process.

Murphy has not only disobeyed Plaintiff's subpoena to produce documents, which "is itself a court order," *Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 n.5 (9th Cir. 1983), but ignored multiple orders expressly directing him to comply with the subpoena. "Absent a stay, all orders . . . of courts must be complied with promptly." *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983) (internal quotation marks and citation omitted).

## V.  CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court (1) overrule Murphy's attorney-client privilege objection; (2) compel Murphy to produce the withheld text messages; (3) compel Murphy to produce his Instagram Archive account; (5) compel Murphy to produce any other documents he has withheld.

Dated: September 13, 2024           Respectfully submitted,
                                    KANE LAW FIRM

                                By: */s/ Brad S. Kane*
                                    Brad Kane
                                    Trey Brown
                                    Attorneys for Defendants
                                    VXN Group LLC and Mike Miller

10

**CERTIFICATE OF SERVICE**

I hereby certify that on September 13, 2024, a true and correct copy of the foregoing document was served via email to the following recipients:

David D. Bibiyan
*david@tomorrowlaw.com*
Jeffrey D. Klein
*jeff@tomorrowlaw.com*
Sarah H. Cohen
*sarah@tomorrowlaw.com*
Jason Rothman
*jason@tomorrowlaw.com*
Rafael Yedoyan
*rafael@tomorrowlaw.com*

Dated: September 13, 2024        By:    */s/ Trey Brown*
                                        Trey Brown