# EXHIBIT A

# Supplemental Responses of Ryan Murphy (Excerpts)

benefit this document provides. This request is irrelevant as to Phase I discovery which is limited to two threshold issues related to Plaintiff's individual claims; (i) whether Plaintiff is an independent contractor or employee; and (ii) whether Plaintiff falls under the professional actor exemptions of IWC Wage Order 12. Respondent objects to this request as all of the information requested is not reasonably accessible to him because of undue burden or cost.

Notwithstanding said objections, Respondent states as follows: Respondent will produce all non-privileged documents within his possession, custody, and control.

**REQUEST NO. 9**

Produce all COMMUNICATIONS between YOU and ANY PERSON RELATING TO THIS MATTER.

**RESPONSE TO REQUEST NO. 9:**

Respondent objects to this request. Respondent objects to this request as it breaches his reasonable expectation of privacy, and his privacy rights outweigh the probative value this information may provide to Defendants. Respondent objects to this request to the extent it seeks privileged work product. Respondent objects to this request to the extent it seeks information that is protected by attorney-client privilege. Respondent objects to this request as it is unreasonably overbroad and is unlimited in time and/or scope. Respondent objects to this request as it is overbroad and is not proportionate to the needs of the case. Respondent objects to this response as the burden or expense in the production of these documents far outweighs the likely benefit this document provides. This request is irrelevant as to Phase I discovery which is limited to two threshold issues related to Plaintiff's individual claims; (i) whether Plaintiff is an independent contractor or employee; and (ii) whether Plaintiff falls under the professional actor exemptions of IWC Wage Order 12. Respondent objects to this request as all of the information requested is not reasonably accessible to him because of undue burden or cost.

RESPONDENT RYAN MURPHY'S SUPPLEMENTAL RESPONSES



8484 Wilshire Blvd., Suite 500
Beverly Hills, California, 90211
310.438.5555 T
310.300.1705 F
www.employmentlawyerla.com

May 29, 2024

**<u>VIA U.S. MAIL</u>**

Ryan Gerona Murphy;
3908 Camryn Holly St.
Las Vegas, NV 89129

       Re:    *Mackenzie Anne Thoma v. VXN Group LLC, et al.*
              <u>Central District of California, Case No. 2:23-CV-04901-WLH</u>

Dear Mr. Murphy:

      Please be advised that our firm, Bibiyan Law Group, P.C., represents Plaintiff Mackenzie Anne Thoma ("Plaintiff") in the above-referenced action.  It is our understanding that VXN Group LLC ("Defendant") has subpoenaed documents from your company subject to privacy interests of Plaintiff and a third party arising under the United States Constitution and the California Constitution.  Please note that counsel for Plaintiff intends to file a Motion to Quash to prevent their disclosure.

      Under Code of Civil Procedure Section 1987.1 and Federal Rules of Civil Procedure Rule 45, when a Motion to Quash has been filed, the custodian of records and the deposition officer are prevented from producing records until the court orders their production.  Disobedience (*i.e.*, producing records prior to the resolution of this issue) may be punishable by civil liability and court sanctions, including, in some instances, contempt of court.

      The custodian of records must thus comply with its legal obligation not to release the requested records until the Court rules on Plaintiff's Motion to Quash, or the parties issue a joint statement regarding if and to what extent to comply with the subpoena.

      Best regards.

                   Very truly yours,

                   BIBIYAN LAW GROUP, P.C.

                   */s/ Sarah H. Cohen*
                   Sarah H. Cohen

cc: Brad Krane, bkane@kanelaw.la; Trey Brown, trey.brown@vixenmediagroup.com;
 tb@dorado.law, Counsel for Defendants; (via e-mail only).

**22**
Nov

Apperently legal notices and letters can't be sent to new owners of a company when The Secretary of State Office can't identify any

**23**
Jan

There are some things I am going to say today...

Let's start with the personal stuff.

Sid Visions and PFA owe me 18k...

In September when I was let go after the supposed sale of the agency, Sid Visions and Kristen Kaye got on the phone with me. I was told by Sid that I was going to be kept on the payroll until things die down due to the false accounts about me and if I'm being honest, flat out lies.

Sid offered to put something in writing so I knew he wasn't going to screw me. As soon as I got off the phone I texted Sid with a proposal of payment which he said was doable...

I was told by Sid that since it was a Friday that the lawyers will have something written up by Monday realistically. When Monday came and went with nothing in my inbox I questioned Sid about it. I was told by him "Don't worry, you don't fuck me, I won't fuck you"

I did recieve a payment that week and was told by Sid, "See, I'm a man of my word"

That was the only payment that I recieved...

Sid and Charly have a long history of shadiness which many in the industry have already knew (I will share more details on that later on today) so I knew I wasn't going to be brought back but since him as the self proclaimed CEO of this new agency offering what I took as a severance payment, I desperately needed

I have a family and a son starting college and those close to me in this industry knew that I was only working to support them

This started a long downward serial for me not just financially but my mental health. Many people that have been close to me knows how much I was an advocate of mental health and the biggest reason is because I suffer from mental illness myself. With the false statements made about me, the death threats I was receiving and hitting rock bottom with my finances all the progress that achieved over the years to maintain my mental health was destroyed to the point I made a failed attempted on my life

I never came into this industry because I wanted to take physical advantage of Talent like some agents and that's why I was never inappropriate with any if you. Where I knew there was lines and boundaries and wouldn't ever dare to cross those. I found an opportunity to give my family a better life then we had before and for a small moment, I did. I also wanted to try to protect you from predators that were always lurking and shit shooters who wanted to disvalue your brand for your profit. When it all fell apart, I felt I failed in both

For those who danced on the grave of my career almost had the opportunity to do it for real. But I'm glad I'm still here because my kids do need me and I do have more to offer this world and I'm doing my damn hardest to get my life back on track and I will continue to do so for the three most important people in my life. The rest of the day I will expose the true nature of who PFA is really ran by and their history in this industry.

Next up, Sid Visions and Charly Summers...

One of the main issues

Sid biggest issue with Vixen



Sid Visions lies and manipulation ripped everything from me but I shouldn't be surprised, this is what he is known for. This is the man who him and Dave used to send Charly out to hang out with girls in order to gain intel on them or others in the industry including their agents so it won't be a shock to anyone that he is involved in the Porn Crush website

One of the main issues between Vixen and Motley was the class action labor lawsuit filed by Kenzie Anne. Vixen suspicions were correct that Motley had something to do with it as Sid Visions was the man who introduced Kenzie to her lawyer and bragged about how he convinced her to do this. Now he and PFA wants to try and play nice with them again is extremely hypocritical. But that's not all with Sid attempting to disparage VMG and other companies...

Sid biggest issue with Vixen was that they refused to book Charly. While circumstances of this is complicated, it became a personal vendetta with them. Sid would make claims that CIA and interpol were investigating VMG overseas activity involving their shooter and Agent Julia and made it his goal to take Vixen down. Him and Charly always wanted to be in the know regardless of it was a rumor or fact and try to use that against everyone which many of you may have been victim of.

**24 Jan**

...confessed to me in September that he knew the rumored videos that Dave was taking were true and he knew all the way back in May and that's the reason why Charly wanted taken off the site. I live in Las Vegas and only step foot in the "Motley Manor" maybe 4 times total in a year and everyone who knows me knows that my time there is short and I go straight back home so honestly, I had no clue what Dave was doing or doing to others behind closed doors...

Maybe it was because he knew that my morals never truly aligned with him and he attempted to pull the vail over my eyes for that reason or he his personal life was so fucked up that he only allowed Sid to know since possibly they are on the same wave length when it comes to the dark side of things??? That unfortunately is an answer we will never know,but what I do know is, if Sid was so offend about what Dave was possibly doing, then why would he continue to work with him and be at his house at almost a daily basis? If Sid truly knew about Dave's dark side then he is the one who is complicit in Dave Rock's actions.

I believe Sid and Charly came into this industry in hopes that they would want to bring a hostile takeover not just of Motley but of the whole industry. Sid always talks about how he would want to buy out other agencies starting with Hussie and already mentioned his personal vendetta against Vixen in his hopes to one day own it. Both Sid and Charly used a lot of people's trust only to stab them in the back when the time was right. Dave bought into this and if the rumors are true, they are still best buddies to this day.

Motley Models is still in existence just using PFA as a new name without having it has a DBA under their license. There is no bill of sale in public records that the agency was ever sold. There is no evidence of new ownership so who owns it? From all legal standpoints it is still Dave. People aren't stupid so why are they continuing this ruse???

**25 Jan**

When Porn Crush first launched Dave told me that Sid is running the site and this was confirmed by Sid directly to me in September. Since then I've heard rumors he may actually own the site. I don't know if that is actually true but maybe Austin King needs to clear this up and address why someone with character issues such as Sid is involved with him

**The irony of Sid rebranding Motley Models into the name Performer's First is that Sid is never about any Performer with the exception of his wife Charley. Sid refused to let any model out of their contract after the fake sale of Motley Models. He eventually caved to the pressure of one of his employees to do so but prior to he was ready to fire off threats using Dave Rock's lawyer Richard Freeman**

The crazy thing and where the red flags came up for me was if the company was sold and there are new owners, then why are the contracts valid? And why is Sid using Dave's lawyer name in an attempt to possibly go after these models that were willing to fight Twice Baked Media Dba Motley Models on their possible invalid contracts?

**26 Jan** Dave bought the Manor with the help of Sid's money, it soon became clear and evident that I was only working to maintain Dave's lifestyle. With Dave and Sid working together my job became more difficult especially after Dan left and he fired all the help I had, I was doing everything on my own booking 60+ models without incentives and for the work I was doing, being completely underpaid…

In the beginning of last year, Dave and Sid cut my salary by 25% just because Dave couldn't financially be Dave Rock anymore. He was still acting like Hugh Hefner and only caring about his brand while I was the only one working on the front line making it more difficult to take care of my family. I wasn't out there flexing at events and parties or trying to living in a mansion. I was only living a modest life in a very modest house driving an average car while Dave flossed around LA.

Many of you may have been hounded and harassed to give Dave money for many of his and Sid's grifts. Whether it be for parties that would only benefit Dave or for his house or many other numerous things he beg for that was honestly just an opportunity for him to keep up with this Brand he wanted to create for himself instead of the agency that I helped build.

Dave was Jekyll and Hyde a lot with me. Acting like he cared and my opinion matter and other times mostly during end of 2022 and 2023 tore me down. He held my job over my head, gaslit me and would make threats in regards to my career. I pleaded with Sid that they needed to take account of my mental health but dealing with two narcissists, it feel on deaf ears.

**27 Jan** Sid and Charly make an attempt to use my words against and to belittle my struggles with mental illness as they have done to many in the past including mocking those who want to get help and save their own lives be telling people they are locked away in the looney bin. They have no empathy towards others and will fake like they do until it's time to betray you.

I almost made a choice that would have destroyed the closest people in my life and it's something that I can never forgive myself for but I here now and will always be there for them. There is help, there are people who care even when it seems the whole world is against you. Sometimes all it takes is a phone call. Do not others toxic behavior tear you down. There is always hope…

There is so much more I can say to fill a book or better yet a screenplay but I will go back to my regular IG nonsense after today. I wanted to thank those that have reached out and to those that have listened. It's been a struggle over the last four months but I'm picking up the pieces and moving on. Maybe I can use this opportunity to find fulfillment in a different industry or maybe I attempt to repair the burnt bridges and do my own thing in this one the way that I always wanted to do it??? You never know as the door is wide open now.

988



# EXHIBIT B

# Notice of Intent to Serve Subpoena on Ryan Murphy

**KANE LAW FIRM**
Brad S. Kane (SBN 151547)
bkane@kanelaw.la
1154 S. Crescent Heights. Blvd.
Los Angeles, CA 90035
Tel:  (323) 697-9840
Fax: (323) 571-3579

Trey Brown (SBN 314469)
trey.brown@vixenmediagroup.com
11337 Ventura Blvd.
Studio City, CA 91604

Attorneys for Defendants
VXN GROUP LLC; STRIKE 3 HOLDINGS, LLC;
GENERAL MEDIA SYSTEMS, LLC; and
MIKE MILLER

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| MACKENZIE ANNE THOMA, a.k.a. KENZIE ANNE, an individual and on behalf of all others similarly situated, | Case No. **2:23–cv–04901 WLH (AGRx)** |
| Plaintiff, | **NOTICE OF INTENT TO SERVE SUBPOENA** |
| v. | |
| VXN GROUP LLC, a Delaware limited liability company; STRIKE 3 HOLDINGS, LLC, a Delaware limited liability company; GENERAL MEDIA SYSTEMS, LLC, a Delaware limited liability company; MIKE MILLER, an individual; and DOES 1 to 100, inclusive, | |
| Defendants. | |

PLEASE TAKE NOTICE that on May 24, 2024, Defendant VXN GROUP, LLC, by and through undersigned counsel, will cause the attached subpoena to be served via process server on Ryan Gerona Murphy.

Respectfully submitted,

By:  */s/ Brad S. Kane*
      Brad Kane
      Trey Brown
      Attorneys for Defendants
      VXN Group LLC; Strike 3
      Holdings, LLC; General Media
      Systems, LLC; and Mike Miller

**KANE LAW FIRM**
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

1

2

### CERTIFICATE OF SERVICE

3

        I hereby certify that on May 24, 2024, a true and correct copy of the

4

foregoing document was served via email to the following recipients:

5

        David D. Bibiyan

6

        *david@tomorrowlaw.com*
        Jeffrey D. Klein

7

        *jeff@tomorrowlaw.com*

8

        Sarah H. Cohen
        *sarah@tomorrowlaw.com*

9

        Rafael Yedoyan

10

        *rafael@tomorrowlaw.com*
        Wesley Gonzales

11

        *wesley@tomorrowlaw.com*

12

13

14

Dated: May 24, 2024            By:    */s/ Brad Kane*

15

                                      Brad S. Kane

16

17

18

19

20

21

22

23

24

25

26

27

28

**KANE LAW FIRM**
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

| | | |
|---|---|---|
| _____ | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| _____ | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: _____

*(Name of person to whom this subpoena is directed)*

❑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: | Date and Time: |
|---|---|
| | |

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

*CLERK OF COURT*

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____ , who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

EXH-B-004

ATTACHMENT "A" to SUBPOENA

## I.    DEFINITIONS

1.      "And," "or" and "and/or" and any other conjunctions or disjunctions used herein shall be read both conjunctively and disjunctively so as to require the production of all Documents (as hereinafter defined) responsive to all or any part of each particular request.

2.      "Any," "each," "every," and "all" shall be read to be inclusive and to require the production of each and every Document and/or Communication (hereinafter defined) responsive to the particular request.

3.      "APPLEBAUM" means the individual named Chris Applebaum a.k.a. "Halston".

4.      "BLF" means the Bibiyan Law Firm, including its agents, representatives, or any person acting on its behalf.

5.      "COMMUNICATION" means any disclosure, transfer, or exchange of information, expression, or opinion, however made, including oral, graphic, written, or electronic transmittal of information, including any Document that contains, reflects, or references any Communication.

6.      "DEFENDANTS" means VXN GROUP, LLC, GENERAL MEDIA SYSTEMS, LLC, STRIKE 3 HOLDINGS, LLC, and MIKE MILLER, and each of them, including their agents, employees, representatives, or anyone acting on its behalf.

7.      "DOCUMENT(S)" shall mean the original or exact copies of any tangible written, typed, printed or other form of recorded or graphic matter of every kind or description, however produced or reproduced, whether mechanically or electronically recorded, draft, final, original, reproduction, signed or unsigned, regardless of whether approved, signed, sent, received, redrafted, or executed, and whether handwritten, typed, printed, photostated, duplicated, carbon or otherwise copies or produced in any other manner whatsoever. Without limiting the generality

ATTACHMENT "A" to SUBPOENA

of the foregoing, "documents" shall include correspondence, letters, memoranda, memoranda for files, reports, graphs, hard drives, discs, printouts, computer files, back-up tapes, hard disks, litigation data bases and other data compilations from which information can be obtained. Copies of documents which are not identical duplications of the originals, or which contain additions to or deletions from the originals, or copies of documents which are identical duplications of the originals if the originals are not available, shall be considered separate documents.

8.      "ENGAGEMENT" means any contract or agreement to perform services, whether written or implied, and any arrangement to perform services arising out of such contract or agreement.

9.      "INCLUDING" means including, but not limited to.

10.     "INSTAGRAM ACCOUNT" means the account situated on the social media platform Instagram that operates or operated under the username "RGMURPHLV" listed under the URL: https://www.instagram.com/rgmurphlv [last accessed on May 13, 2024].

11.     "KING" means the individual named Jason King a.k.a. "Austin King".

12.     "LOAN OUT COMPANIES" means any entity through which PLAINTIFF provided services, including but not limited to corporations, limited liability companies, or other business entities, including but not limited to Kenzieland LLC and Lola March LLC.

13.     "MOTLEY" means Twice Baked Media, Inc. d/b/a Motley Models.

14.     "PERFORMERS FIRST AGENCY" means the agency referenced in the January 24, 2024 Instagram post by YOU described as "PFA" found at https://www.performersfirst.com/.

15.     "PERSON" means any natural person, firm, partnership, association, joint venture, corporation, governmental entity or agency, or other organization or legal or business entity, without any limitation, or any party (including agents or employees) to this litigation.

ATTACHMENT "A" to SUBPOENA

16.    "PLAINTIFF" means Mackenzie Anne Thoma a.k.a Kenzie Anne, including her agents, representatives, anyone acting on her behalf, and any business entity through which Mackenzie Anne Thoma provided services, including the LOAN OUT COMPANIES.

17.    "PORN CRUSH" means www.porncrush.com.

18.    "RELATES" or "RELATING TO" shall mean directly or indirectly, refer to, reflect, describe, pertain to, arise out of or in connection with, or in any way legally, logically, or factually connected with the matter discussed.

19.    "ROCK" means the individual named David Clifford Bacon II a.k.a. "Dave Rock".

20.    "SUMMER" means the individual performing under the screen name "Charly Summer".[1]

21.    "SUPRO" means the individual named Todd Gillman a.k.a. "Todd Supro".

22.    "THIS MATTER" means this lawsuit, Mackenzie Anne Thoma a.k.a. Kenzie Anne v. VXN Group, LLC, Strike 3 Holdings, LLC, General Media Systems, LLC and Mike Miller, No. 2:23-cv-04901-WLH (AGRx) (Central District of California).

23.    "YOU" or "YOUR" refers to Ryan Gerona Murphy, a.k.a. Ryan Kona.

24.    "VISION" means the individual named Sidney Sanderson Millspaugh IV, a.k.a. "Sid Visions" a.k.a. "Sid Vision."

25.    The words "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope hereof any responses to interrogatories, documents, or communications, which might otherwise be construed to be outside the scope hereof.

---

[1] To the extent YOU require SUMMER's real name for identification purposes, Defendant will provide such identifying information after the entry of an applicable Protective Order.

ATTACHMENT "A" to SUBPOENA

## II.      INSTRUCTIONS

1.      If your response to a request is that you do not have possession, custody, or control of a document or communication, please identify who likely has control of the document and its location.

2.      In the event that any information requested is withheld on the basis of a claim of privilege, state the ground(s) of the privilege claimed with sufficient particularity to evaluate the claim, and, if any documents are claimed to be privileged, set forth the author, all recipients, number of pages, attachments or appendices, present custodian, and a general description (e.g., "letter" or "memorandum") of the document.

3.      Any information not provided on the basis that the disclosure would be burdensome or oppressive should be identified by stating the approximate number of documents to be produced, the approximate number of person-hours to be incurred in the identification, and the estimated cost of responding to the request. This will make it possible to further narrow any request and potentially identify a reasonable alternative or limitation, and Defendants will meet and confer on that matter.

4.      Each copy or duplicate of a document bearing initials, stamps, comments or notations of any character which are not part of the original text shall be considered a separate document. Additionally, all drafts (whether typed, handwritten or otherwise) made or prepared in connection with any document shall be considered a separate document.

5.      Documents kept in an electronic or digital format should be produced with all metadata and delivered in their original format or in a manner agreed to by counsel.

6.      Emails must identify all recipients and include attachments, previous threads, and forwards.

ATTACHMENT "A" to SUBPOENA

7.      The singular of any noun includes the plural.

8.      Unless otherwise directed, these requests ask for discoverable materials from

November 11, 2020 to the present.


**III.    DOCUMENTS TO BE PRODUCED**

**REQUEST NO. 1.** Produce all COMMUNICATIONS between YOU and any PERSON

regarding PLAINTIFF's ENGAGEMENTS with DEFENDANTS.

**RESPONSE**:




**REQUEST NO. 2.** Produce all COMMUNICATIONS between YOU and VISION

RELATING TO PLAINTIFF's ENGAGEMENTS with DEFENDANTS.

**RESPONSE**:




**REQUEST NO. 3.** Produce all COMMUNICATIONS between YOU and ROCK

RELATING TO PLAINTIFF's ENGAGEMENTS with DEFENDANTS.

**RESPONSE**:




**REQUEST NO. 4.** Produce all COMMUNICATIONS between YOU and SUPRO

RELATING TO PLAINTIFF's ENGAGEMENTS with DEFENDANTS.

**RESPONSE**:

ATTACHMENT "A" to SUBPOENA

**REQUEST NO. 5.** Produce all COMMUNICATIONS between YOU and APPLEBAUM RELATING TO PLAINTIFF's ENGAGEMENTS with DEFENDANT.

**RESPONSE**:

**REQUEST NO. 6**. Produce all COMMUNICATIONS between YOU and PLAINTIFF RELATING TO PLAINTIFF's ENGAGEMENTS with DEFENDANT.

**RESPONSE:**

**REQUEST NO. 7.** Produce all COMMUNICATIONS between YOU and VISION RELATING TO THIS MATTER.

**RESPONSE**:

**REQUEST NO. 8**. Produce all COMMUNICATIONS between YOU and PLAINTIFF RELATING TO THIS MATTER.

**RESPONSE**:

ATTACHMENT "A" to SUBPOENA

**REQUEST NO. 9.** Produce all COMMUNICATIONS between YOU and ANY

PERSON RELATING TO THIS MATTER.

**RESPONSE**:

**REQUEST NO. 10.** Produce all DOCUMENTS RELATING TO YOUR contractual

relationship with PLAINTIFF, INCLUDING any agreement to serve as an agent for

PLAINTIFF, and any agreement providing for commissions payable to YOU in connection

with PLAINTIFF.

**RESPONSE**:

**REQUEST NO. 11.** Produce all DOCUMENTS RELATING TO any commissions

payable to YOU in connection with PLAINTIFF's ENGAGEMENTS with DEFENDANTS,

INCLUDING any negotiable instruments (e.g., check), invoices, tax forms, or accounting

statements reflecting such payments.

**RESPONSE**:

**REQUEST NO. 12.** Produce all DOCUMENTS RELATING TO any payments between

PLAINTIFF and YOU in connection with DEFENDANTS, INCLUDING any negotiable

instruments (e.g., check), invoices, tax forms, or accounting statements reflecting such

payments.

ATTACHMENT "A" to SUBPOENA

**RESPONSE**:

**REQUEST NO. 13.** Produce all DOCUMENTS RELATING TO any payments between LOAN OUT COMPANIES and YOU in connection with DEFENDANTS, INCLUDING any negotiable instruments (e.g., check), invoices, tax forms, or accounting statements reflecting such payments.

**RESPONSE**:

**REQUEST NO. 14**. Produce all COMMUNICATIONS between YOU and PLAINTIFF relating to PLAINTIFF's status as an independent contractor or employee in connection with DEFENDANTS.

**RESPONSE**:

**REQUEST NO. 15**. Produce all COMMUNICATIONS between YOU and PLAINTIFF relating to PLAINTIFF's status as an independent contractor or employee in connection with any PERSON.

**RESPONSE**:

ATTACHMENT "A" to SUBPOENA

**REQUEST NO. 16**. Produce all DOCUMENTS that reference PLAINTIFF'S LOAN OUT COMPANIES, INCLUDING contracts, agreements, correspondence, invoices, payment records, and financial statements related to any services provided by PLAINTIFF through her LOAN OUT COMPANIES.

**RESPONSE**:

**REQUEST NO. 17**. Produce all DOCUMENTS between YOU and MOTLEY relating to PLAINTIFF.

**RESPONSE**:

**REQUEST NO. 18**. Produce all DOCUMENTS between YOU and MOTLEY relating to DEFENDANTS.

**RESPONSE**:

**REQUEST NO. 19.** Produce all COMMUNICATIONS between YOU and MOTLEY relating to PLAINTIFF's status as an independent contractor or employee in connection with DEFENDANTS.

**RESPONSE**:

ATTACHMENT "A" to SUBPOENA

**REQUEST NO. 20**. Produce all COMMUNICATIONS between YOU and ROCK relating to PLAINTIFF's status as an independent contractor or employee in connection with DEFENDANTS.

**RESPONSE**:

**REQUEST NO. 21**. Produce all COMMUNICATIONS between YOU and VISION relating to PLAINTIFF's status as an independent contractor or employee in connection with DEFENDANTS.

**RESPONSE**:

**REQUEST NO. 22**. Produce all COMMUNICATIONS between YOU and VISION relating to the statement posted on your Instagram story on January 24, 2024 where VISION said to you "Don't worry, you don't fuck me, I won't fuck you."

**RESPONSE**:

**REQUEST NO. 23.** Produce all COMMUNICATIONS relating to "Vixen [sic] suspicions were correct that Motley had something to do with [THIS MATTER] as Sid Visions was the man who introduced Kenzie to her lawyer and bragged about how he convinced her to do this" as stated in your January 24, 2024 Instagram story.

**RESPONSE**:

ATTACHMENT "A" to SUBPOENA

**REQUEST NO. 24.** Produce all COMMUNICATIONS relating to "Sid [sic] biggest issue with Vixen was that they refused to book Charly. While circumstances of this is complicated, it became a personal vendetta with them. Sid would make claims that CIA and Interpol were investigating VMG overseas activity involving their shooter and Agent Julia and made it his goal to take Vixen down. Him and Charly always wanted to be in the know regardless of [sic] it was a rumor or fact and try to use that against everyone which many of you may have been victim of" as stated in your January 24, 2024 Instagram story.

**RESPONSE**:

**REQUEST NO. 25.** Produce all COMMUNICATIONS indicating VISION had a personal vendetta against DEFENDANTS, as stated in your January 24, 2024 Instagram story.

**RESPONSE**:

**REQUEST NO. 26.** Produce all COMMUNICATIONS indicating VISION and SUMMER "have a long history of shadiness" as stated in your January, 24, 2024 Instagram story.

**RESPONSE**:

ATTACHMENT "A" to SUBPOENA

**REQUEST NO. 27**. Produce all COMMUNICATIONS relating to "when Porn Crush first launched Dave told me that Sid is running the site and this was confirmed by Sid directly to me in September.  Since then I've heard rumors he may actually own the site.  I don't know if that is actually true but maybe Austin King needs to clear this up and address why someone with character issues such as Sid is involved with him" as stated in your January, 24, 2024 Instagram story.

**RESPONSE**:

**REQUEST NO. 28**. Produce all COMMUNICATIONS relating to VISION'S character issues.

**RESPONSE**:

**REQUEST NO. 29**. Produce all COMMUNICATIONS between YOU and KING relating to DEFENDANTS.

**RESPONSE**:

**REQUEST NO. 30**. Produce all COMMUNICATIONS between YOU and SUMMER relating to DEFENDANTS.

**RESPONSE**:

EXH-B-016

ATTACHMENT "A" to SUBPOENA

**REQUEST NO. 31**. Produce all COMMUNICATIONS between YOU and BLF relating to DEFENDANTS.

**RESPONSE**:

**REQUEST NO. 32**. In native format, produce all data for the INSTAGRAM ACCOUNT. Data for the INSTAGRAM ACCOUNT can be obtained by using the instructions under the header "Downloading a copy of your information on Instagram" at: https://help.instagram.com/181231772500920. Please produce this information in HTML format.

**RESPONSE**:

**REQUEST NO. 33**. Produce all COMMUNICATIONS between YOU and VISION relating to any social media posts issued by YOU through the INSTAGRAM ACCOUNT.

**RESPONSE**:

**REQUEST NO. 34**. Produce all COMMUNICATIONS between YOU and PLAINTIFF relating to any social media posts issued by YOU through the INSTAGRAM ACCOUNT.

**RESPONSE**:

ATTACHMENT "A" to SUBPOENA

**REQUEST NO. 35**. Produce all COMMUNICATIONS between YOU and ROCK relating to any social media posts issued by YOU through the INSTAGRAM ACCOUNT.

**RESPONSE**:

**REQUEST NO. 36**. Produce all COMMUNICATIONS between YOU and SUMMER relating to any social media posts issued by YOU through the INSTAGRAM ACCOUNT.

**RESPONSE**:

**REQUEST NO. 37**. Produce all COMMUNICATIONS between YOU and SUPRO relating to any social media posts issued by YOU through the INSTAGRAM ACCOUNT.

**RESPONSE**:

**REQUEST NO. 38**. Produce all COMMUNICATIONS between YOU and PERFORMERS FIRST AGENCY relating to any social media posts issued by YOU through the INSTAGRAM ACCOUNT.

**RESPONSE**:

ATTACHMENT "A" to SUBPOENA

**REQUEST NO. 39**. Produce all DOCUMENTS RELATING TO any payment of money or other consideration to YOU from any PERSON in connection with the editing, removal, relocation, archiving, or deletion of any post on the INSTAGRAM ACCOUNT.

**RESPONSE**:

EXH-B-019

# EXHIBIT C

# Transcript of July 22, 2024 Ryan Murphy Deposition (Excerpts)

1      of work.

2          Q.    Um-hum.

3          A.    You know, things got really sour for, I

4      don't know, whatever reason it did, roughly around

5      the middle to end of 2022.  You know, I was hearing

6      some things, not directly.  Mike wasn't reaching out

7      to me.  I wasn't really understanding why.  Dave

8      Rock claimed that VXN only wanted to do business

9      with him, being Dave Rock, and was not having any,

10     like, personal conversations with Mike outside of

11     the standard booking questions, and most of the time

12     that was going through Dan Declan in regards to

13     booking models for VXN.

14          You know, due to the non-contact of

15     everything, you know, I wasn't aware of a lot of

16     situations happening.  Apparently Mike was extremely

17     upset with me over an incident, I believe roughly

18     around late 2022 before the expo, the AE Expo, and

19     the AVN awards in 2023, in which there was a model

20     who was supposed to be signing directly for them and

21     we agreed upon that and I thought and everything was

22     good to go.

23          I was told -- when I wasn't getting any

24     correspondence with Mike Moz in regards to the

25     details of this, I was told by Dave Rock to book her

Page 19

```
 1    with somebody else, and which I did.  Apparently,
 2    she -- somebody within VXN reached out to her and
 3    told her about the VXN signing and what they were
 4    doing for that.  She informed them that she was with
 5    somebody else.
 6            I then received a phone call from Dave Rock
 7    with Sid Vision on the phone stating that Mike went
 8    nuclear on him, sent pointed death threats towards
 9    me, and was very serious about the situation,
10    apparently screaming and yelling at Dave about this.
11            You know, we attempted to make it right.
12    We did make it right.  You know, told the model that
13    she was back with VXN.  It was a clear
14    misunderstanding of the situation.  I was clearly
15    thrown under the bus for this, which happened a lot
16    at Motley Models.  And, you know, they decided not
17    to book her anyways for this appearance.  So that
18    was that.
19            The threats were significant to the point
20    in which Dave Rock hired security to be my shadow at
21    the expo to incur [verbatim] that nothing was going
22    to happen.  Mike Moz would also make threats towards
23    other people.  You know, I just wanted to --
24        Q.   Thank you.  I appreciate --
25        A.   That's why it was significant, because he
```

Page 20

```
 1      said before.
 2            I understand that you were a booker for
 3      Motley Models.
 4            A.   Um-hum.
 5            Q.   So whatever you did in that role was under
 6      Motley Models.
 7            Did you ever book any engagement for Kenzie
 8      Anne outside your work at Motley Models?
 9            A.   No.
10            Q.   Okay.
11            When you were representing Kenzie Anne, and
12      I understand you are friends -- are you still
13      friends?
14            A.   I believe so, yes.
15            Q.   Okay.
16            How did she communicate with you in that
17      time?
18            A.   Phone, text.
19            Q.   Okay.
20            And did she ever express any opinions to
21      you about her time working with VXN?  Did she like
22      it, not like it?
23            A.   You know, initially when we first started,
24      she wanted to be with VXN and that was already
25      happening.  And she was very excited when they did
```

Page 73

1          And so do you keep in touch with any of the

2     models -- I'm sorry -- any of the talent from Motley

3     Models since you left there?

4          A.   Very, very, small few.

5          Q.   Okay.

6               And how do you communicate with them?

7          A.   You know, I rarely communicate with

8     anybody.  But phone call, text.

9          Q.   Okay.

10              So you would expect that that sort of stuff

11    would be in your text messages?

12         A.   I mean -- but, yeah, we don't talk about

13    work.  We don't talk about -- you know, the people

14    that I talk with are my friends and, like I said,

15    maybe three at this point, and we just -- you know,

16    we talk about life; we talk about how things are

17    going, maybe make plans to see each other.  You

18    know, that's how it works.

19         Q.   Okay.

20              Is Kenzie one of those people?

21         A.   Not really directly as much as we used to,

22    no.

23         Q.   Well, how many times have you communicated

24    with Kenzie this year?

25         A.   Maybe less than a handful.

                                              Page 104

1          Q.    Okay.

2                Since the time that you talked to her about

3      the subpoena, have you communicated with her?

4          A.    Yeah.  I've communicated with her at AVN,

5      you know, but she wasn't in town, so...

6          Q.    Right.

7                Well, AVN was in January --

8          A.    Yeah.

9          Q.    -- right?

10         A.    Yeah.

11         Q.    Okay.  So there's then.

12               And then the subpoena was in May.

13         A.    Okay.

14         Q.    So have you communicated with her since

15     then?

16         A.    Since the subpoena?

17         Q.    Yeah.

18         A.    Not outside of what I already told you, no.

19         Q.    All right.

20               Have you texted with her since March?

21         A.    She asked a simple question, non any of

22     this related, and, you know, I gave an answer.  She

23     asked how things were doing and I told her, and

24     that's about it.  And that was the end of the

25     conversation.

                                      Page 105

1       Q.   Okay.

2            And you said that you have not communicated

3       with any of the people associated with Motley

4       Models --

5       A.   Correct.

6       Q.   -- since --

7       A.   Since I left there.

8       Q.   Okay.

9       A.   Yeah.

10      Q.   Let's talk about your phone for a minute.

11      A.   Okay.

12      Q.   I understand that in March of this year

13      something happened to your phone?

14      A.   I got a new phone.  Typically what will

15      happen in regards to the data transfer over that

16      phone, it will ask me to -- if I want to retain my

17      messages or not retain my messages.  I chose not to

18      retain my messages.  I wanted -- as stated many

19      times -- wanted to be fully removed from this

20      industry.  Those that were in contact with me could

21      remain in contact with me, my number is the same.

22      But I had no reason to look back on anything adult

23      industry-related wise and nor did I care to ever go

24      back there.

25      Q.   Okay.

                                          Page 106

1           What kind of phone did you have before?

2      A.    It was a Samsung Galaxy 23.

3      Q.    What is the new phone?

4      A.    24.

5      Q.    Okay.

6           So you made an intentional choice to wipe

7      all that out?

8      A.    Yeah.

9      Q.    Okay.

10          Let's look at 009 on Exhibit 2.  This is

11     November 2021.  And it says, "Sir, do you have

12     Kenzie December availability?"  And you say, "Pretty

13     open.  What dates are you thinking?"

14          And it seems like she's available, right?

15     A.    Yes.

16     Q.    Okay.

17          The next one, it's on 10, third one down,

18     it says, "Copy.  Working on it.  Please soft hold

19     day for me."

20          What is a soft hold day?

21     A.    It means just to hold it until they can get

22     confirmation.  Basically I just hold that date on

23     the calendar on my end before giving it out to them.

24     Q.    Okay.

25          And you mentioned earlier that she had

                                        Page 107

1          Q.   Do you think Sid was paranoid?

2          A.   I mean, I don't know.  I mean, the guy was

3     clearly a liar.  But I don't know.

4          Q.   Okay.

5               Do you have -- in your experience, did Sid

6     fuck over other people?

7          A.   In my experiences, I don't know.  I know

8     that Sid was very much only looking out for Charly

9     and Charly alone, being his wife.  You know, for him

10    to, you know, intentionally roll over other people,

11    I know he would love to do that.  I just don't know

12    if he was ever successful doing so.

13         Q.   Okay.

14              Do you believe that he had a master plan to

15    try and take over VXN?

16         A.   I know he had a master plan to try to take

17    over the industry, yeah, but it was ridiculous and I

18    always thought it was ridiculous.

19         Q.   What was his master plan?

20         A.   His master plan was to just, you know --

21    and we'll get to it in the stories.

22         Q.   Okay.

23         A.   You know, his master plan was to start out

24    by buying other agencies and, you know, having

25    Motley be the only control even though that he was

                                   Page 136

# EXHIBIT D

# Ryan Murphy's Second Supplemental Responses (Excerpts)

**BIBIYAN LAW GROUP, P.C.**
David D. Bibiyan (SBN 287811)
*david@tomorrowlaw.com*
Jeffrey D. Klein (SBN 297296)
*jeff@tomorrowlaw.com*
Sarah H. Cohen (SBN 330700)
*sarah@tomorrowlaw.com*
Rafael Yedoyan (SBN 351499)
*rafael@tomorrowlaw.com*
1460 Westwood Blvd.
Los Angeles, California 90024
Tel: (310) 438-5555; Fax: (310) 300-1705

Attorneys for Respondent RYAN MURPHY

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MACKENZIE ANNE THOMA, a.k.a. KENZIE ANNE, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VXN GROUP LLC, a Delaware limited liability company; STRIKE 3 HOLDINGS, LLC, a Delaware limited liability company; GENERAL MEDIA SYSTEMS, LLC, a Delaware limited liability company; MIKE MILLER, an individual; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.: 2:23-cv-04901-WLH (AGRx)<br><br>[*Assigned to the Hon. Wesley L. Hsu*]<br><br>**RESPONDENT RYAN MURPHY'S SECOND SUPPLEMENTAL RESPONSES TO DEFENDANTS' SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION** |

EXH-D-001

← 

# Available downloads

You'll have 4 days to download files to your device. We recommend downloading your files on a desktop device for the best viewing experience.

 **11/11/20 – 07/19/24 specific information download**
rgmurphlv
Instagram
Expires on Jul 23, 2024
27 MB

| Download | Delete |
|---|---|

# In progress

 **01/01/04 – 07/20/24 available information download**
rgmurphlv
Instagram
Requested Jul 20, 2024

| Cancel |
|---|

Your download or transfer won't include information that someone else shared, like another person's photos that you're tagged in. Learn more

MURPHY0005

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 1460 Westwood Blvd., Los Angeles, CA 90024.

On July 20, 2024, I caused a true and correct copy of the foregoing document(s) described as **RESPONDENT RYAN MURPHY'S SECOND SUPPLEMENTAL RESPONSES TO DEFENDANTS' SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION** to be served by electronic transmission to the below referenced electronic e-mail address as follows: The above document(s) were served on the interested parties in this action as follows: *BY ELECTRONIC MAIL: I am readily familiar with our office's practice of electronic mail transmitted by electronic mail transmission and that the transmission was reported as complete and delivered, and without error.*

Brad S. Kane
Kane Law Firm
bkane@kanelaw.la
Attorneys for Defendant, Vixen Media Group

Christian Waugh
cwaugh@waugh.legal
Attorneys for Defendant, Vixen Media Group

Trey Brown
trey.brown@vixenmediagroup.com
In House Counsel -Vixen Media Group

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on July 20, 2024 at Los Angeles, California.

*/s/ Sarah H. Cohen*
Sarah H. Cohen

# EXHIBIT E

# RYAN MURPHY'S PRIVILEGE LOG

**BIBIYAN LAW GROUP, P.C.**
David D. Bibiyan (Cal. Bar No. 287811)
*david@tomorrowlaw.com*
Jeffrey D. Klein (Cal. Bar No. 297296)
*jeff@tomorrowlaw.com*
Sarah H. Cohen (Cal. Bar No. 330700)
*sarah@tomorrowlaw.com*
Rafael Yedoyan (Cal. Bar No. 351499)
*rafael@tomorrowlaw.com*
Jason Rothman (Cal. Bar No. 304961)
*jason@tomorrowlaw.com*
1460 Westwood Blvd.
Los Angeles, California 90024
Telephone: (310) 438-5555
Facsimile: (310) 300-1705

Attorneys for Plaintiff, MACKENZIE ANNE THOMA,
on behalf of herself and all others similarly situated

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MACKENZIE ANNE THOMA, a.k.a. KENZIE ANNE, an individual and on behalf of all others similarly situated, | CASE NO.: No. 2:23–cv 04901WLH (AGRx) |
| Plaintiff, | **RYAN MURPHY'S PRIVILEGE LOG** |
| v. | |
| VXN GROUP LLC, a Delaware limited liability company; MIKE MILLER, an individual; and DOES 1 through 100, inclusive, | |
| Defendants. | |

| Batestamp (documents not produced) | Date(s) | Type(s) | Description | Basis |
|---|---|---|---|---|
| MURPHY0006 | May 22, 2024 | Text Message | Text Message between Plaintiff and Ryan Murphy | Attorney-Client Privilege |
| MURPHY0007 | May 29, 2024 | Text Message | Text Message between Plaintiff and Ryan Murphy | Attorney-Client Privilege |
| MURPHY0008 | May 31, 2024 | Text Message | Text Message between Plaintiff and Ryan Murphy | Attorney-Client Privilege |

Dated:  August 21, 2024          BIBIYAN LAW GROUP, P.C.


By:  */s/ Sarah H. Cohen*
DAVID D. BIBIYAN
JEFFREY D. KLEIN
SARAH H. COHEN
JASON ROTHMAN
RAFAEL YEDOYAN
Attorneys for Plaintiff MACKENZIE ANNE THOMA, on behalf of herself and all others similarly situated

**RYAN MURPHY'S PRIVILEGE LOG**

## **PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 1460 Westwood Blvd., Los Angeles, CA 90024.

On August 21, 2024, I caused a true and correct copy of the foregoing document(s) described as **RYAN MURPHY'S PRIVILEGE LOG** to be served by electronic transmission to the below referenced electronic e-mail address as follows: The above document(s) were served on the interested parties in this action as follows: *BY ELECTRONIC MAIL: I am readily familiar with our office's practice of electronic mail transmitted by electronic mail transmission and that the transmission was reported as complete and delivered, and without error.*

Brad S. Kane
Kane Law Firm
bkane@kanelaw.la
Attorneys for Defendant, Vixen Media Group

Christian Waugh
cwaugh@waugh.legal
Attorneys for Defendant, Vixen Media Group

Trey Brown
trey.brown@vixenmediagroup.com
In House Counsel -Vixen Media Group

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on August 21, 2024 at Los Angeles, California.

*/s/ Sarah H. Cohen*
Sarah H. Cohen

# EXHIBIT F

# MURPHY INSTAGRAM MESSAGE WITH BRAD KANE





EXH-F-000001



# EXHIBIT G

# Declaration of Trey Brown

**KANE LAW FIRM**
Brad S. Kane (SBN 151547)
bkane@kanelaw.la
1154 S. Crescent Heights. Blvd.
Los Angeles, CA 90035
Tel: (323) 697-9840
Fax: (323) 571-3579

Trey Brown (SBN 314469)
trey.brown@vixenmediagroup.com
11337 Ventura Blvd.
Studio City, CA 91604

*Attorneys for Defendants*
VXN GROUP LLC and MIKE MILLER

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| MACKENZIE ANNE THOMA, a.k.a. KENZIE ANNE, an individual and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>VXN GROUP LLC, a Delaware limited liability company; MIKE MILLER, an individual; and DOES 1 to 100, inclusive,<br><br>          Defendants. | Case No. **2:23–cv–04901 WLH (AGRx)**<br><br>**DECLARATION OF TREY BROWN IN SUPPORT OF DEFENDANTS' MOTION TO OVERRULE RYAN MURPHY'S CLAIM OF PRIVILEGE AND COMPEL PRODUCTION OF DOCUMENTS**<br><br>Complaint Filed:  April 20, 2023<br>Removed:          June 21, 2023 |

*KANE LAW FIRM*
*1154 S. Crescent Heights Blvd.*
*Los Angeles, CA 90035*

DECLARATION OF TREY BROWN

EXH-G-001

I, Trey Brown, hereby declare as follows:

1.    I am an attorney licensed to practice law in the State of California. I am In-House counsel for Defendant VXN Group, LLC ("VXN"), as well as an attorney of record for VXN and Defendant Mike Miller in this matter. I am personally familiar with, and, if called upon, could and would testify to the facts contained herein from my personal knowledge.

2.    On September 10, 2024, I deposed Plaintiff Mackenzie Anne Thoma's former accountant, Mr. Larry Lerner of Artists Business Management Group, Inc. Mr. Lerner indicated that he began Artists Business Management Group in 1989 and has been a licensed tax professional in California for nearly 40 years.

3.    During the deposition, I asked Mr. Lerner if, prior to the deposition, he had any contact with attorneys from the Bibiyan Law Group ("BLG"). Mr. Lerner indicated that he had received a letter from BLG instructing him not to comply with Defendants' subpoena to produce documents. Attached to the Motion which this Declaration Supports, as *Exhibit I* is a true and correct copy of BLG's letter to Mr. Lerner.

4.    Mr. Lerner further testified that prior to the deposition, he had received a phone call from Plaintiff's counsel Sarah Cohen. Recounting this phone conversation, Mr. Lerner testified that Cohen had attempted to "bully" him into not complying with the subpoena and told Mr. Lerner he could be sent to jail if he complied with Defendants' subpoena.

5.    Mr. Lerner also testified that prior to the deposition, Plaintiff Thoma called Mr. Lerner and begged him not to comply because "it would harm her case."

1
DECLARATION OF TREY BROWN

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 13, 2024 at Los Angeles, California.

*/s/ Trey Brown*

Trey Brown

DECLARATION OF TREY BROWN

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

EXH-G-003

# EXHIBIT H

## August 23, 2024 BLG Letter to Larry Lerner



1460 Westwood Blvd
Los Angeles, CA 90024
310.438.5555 T
310.300.1705 F
www.tomorrowlaw.com

August 23, 2024

**VIA E-MAIL & U.S. MAIL**

Artists Business Management Group, Inc.;
 c/o Larry Lerner
5950 Canoga Ave., Suite 417
Woodland Hills, CA 91367
larry@abmginc.com

      Re:    *Mackenzie Anne Thoma v. VXN Group LLC, et al.*
               <u>Central District of California, Case No. 2:23-CV-04901-WLH</u>

Dear Mr. Lerner:

      Please be advised that our firm, Bibiyan Law Group, P.C., represents Plaintiff Mackenzie Anne Thoma ("Plaintiff") in the above-referenced action.  It is our understanding that VXN Group LLC ("Defendant") has subpoenaed documents from your company subject to privacy interests of Plaintiff arising under the United States Constitution and the California Constitution.  Please note that counsel for Plaintiff intends to file a Motion to Quash to prevent their disclosure. The parties' meet and confer efforts are ongoing regarding Defendant's willingness to either narrow the scope or withdraw the subpoena.

      Under Code of Civil Procedure Section 1987.1 and Federal Rules of Civil Procedure Rule 45, when a Motion to Quash has been filed, the custodian of records and the deposition officer are prevented from producing records until the court orders their production.  Disobedience (*i.e.*, producing records prior to the resolution of this issue) may be punishable by civil liability and court sanctions, including, in some instances, contempt of court.

      The custodian of records must thus comply with its legal obligation not to release the requested records until the Court rules on Plaintiff's Motion to Quash, or the parties issue a joint statement regarding if and to what extent to comply with the subpoena.

               Very truly yours,

               BIBIYAN LAW GROUP, P.C.

               */s/ Sarah H. Cohen*
               Sarah H. Cohen