**KANE LAW FIRM**
Brad S. Kane (SBN 151547)
bkane@kanelaw.la
1154 S. Crescent Heights. Blvd.
Los Angeles, CA 90035
Tel:  (323) 697-9840
Fax: (323) 571-3579
Trey Brown (SBN 314469)
trey.brown@vixenmediagroup.com
11337 Ventura Blvd.
Studio City, CA 91604
Attorneys for Defendants
VXN GROUP LLC and MIKE MILLER

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| MACKENZIE ANNE THOMA, a.k.a. KENZIE ANNE, an individual and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>VXN GROUP LLC, a Delaware limited liability company; MIKE MILLER, an individual,<br><br>      Defendants. | Case No. **2:23–cv–04901 WLH (AGRx)**<br><br>**REPLY IN SUPPORT OF MOTION TO OVERRULE RYAN MURPHY'S CLAIM OF PRIVILEGE AND COMPEL PRODUCTION OF DOCUMENTS**<br><br>**[DISCOVERY MATTER]** |

**REPLY IN SUPPORT OF
MOTION TO OVERRULE RYAN MURPHY'S CLAIM OF
PRIVILEGE AND COMPEL PRODUCTION OF DOCUMENTS**

Defendants VXN Group LLC and Mike Miller ("Defendants") hereby respectfully submit the following Reply in Support of its Motion to Overrule Ryan Murphy's Claim of Privilege and Compel Production of Documents ("Motion").

## I. INTRODUCTION

Rather than respond to the obvious fraud on the Court or even *address* the frivolous claim of privilege inducing Defendants' Motion, Plaintiff offers the sweeping conclusion that this is all run-of-the-mill litigation misconduct. Plaintiff's counsel fails to defend their client, Ryan Murphy's ("Murphy") privilege log whatsoever. Instead, Plaintiff argues the Motion is moot because Plaintiff offered to "lift the privilege," despite lacking any basis to assert privilege to begin with.

The tone and focus of Plaintiff's Opposition [**Dkt. 107**] suggests an unapologetic concession to the allegations in Defendants' Motion, and implies Plaintiff is not taking this seriously. Plaintiff's counsel's ("BLG") refusal to address and failure to explain their misconduct supports the allegations in Defendants' Motion and belies their feigned interest in "judicial economy" [*Id.*, at 7:8]. Aside from conclusory statements and contrived objections, Plaintiff offers little to refute the Motion's contention that in their efforts to resist discovery, BLG misrepresented to the Court that "all responsive documents had been produced" by their client, Ryan Murphy ("Murphy") [**Dkt. 107-1**, at ¶15]. Not only does Murphy's untimely production of three text messages confirm that his claim of attorney-client privilege was a sham, but it also suggests that Murphy is *still withholding responsive materials*.

Although BLG claimed to have produced "all such" allegedly privileged messages on the date of the Opposition's filing on September 24th [*Id.*, at ¶ 31], a cursory glance revealed significant gaps and outright cutoffs of the communications. Only after Defendants pointed out these obvious defects did BLG

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

provide Murphy's *fourth* supplemental response on September 26th. The failure of BLG to contest that Murphy's privilege claim was *prima facie* defective, their continued failure to comply with discovery in good faith, and, more importantly, to comply with the Court's express order to complete production [**Dkt. 100**] underscore the necessity behind Defendants' Motion.

## II. BACKGROUND

### A. Murphy's Communications with Plaintiff

Issues over Murphy's discovery responses have existed for as long as his involvement in this matter. In Defendant's subpoena to Murphy,[1] Request No. 8 asked for all communications between Murphy and Plaintiff relating to this lawsuit. *See* **Exhibit I**, Excerpts of Murphy's June 7, 2024 Discovery Responses. Murphy originally responded that "Respondent cannot produce any requested documentation as he is either no longer personally in possession of the requested documentation or has never been in possession of the requested documents." ***Id.***

Over a month later, on July 17, Murphy's supplemental responses claimed that he was "no longer in possession" of responsive communications regarding Plaintiff because he conveniently deleted *all* his text messages incident to acquiring a new cell phone in March of 2024. *See* **Exhibit J**, Excerpts of Murphy's Supp. Responses. At his deposition, Murphy represented that following service of Defendants' subpoena, he initiated a *phone call* with Plaintiff regarding the subpoena. *See* **Exhibit K**, Excerpts of Murphy Deposition (Tr. 16:7–24).

Then, at Plaintiff's deposition on August 13, Plaintiff contradicted Murphy, testifying that the discussion occurred over text message. *See* **Exhibit L**, Thoma Depo. (Tr. 110:12–111:19). Only after their clients' contradictions belied Murphy's ruse did Plaintiff's counsel produce the patently frivolous privilege log on August 22.

---

[1] Defendant's subpoena to Murphy was served on May 29, 2024.

2

### B. Murphy's Instagram Archive

Among more targeted discovery, which the record shows Murphy and his counsel can no longer be trusted with, Request No. 32 in Defendants' subpoena asked for: "In native format, produce all data for the INSTAGRAM ACCOUNT. Data for the INSTAGRAM ACCOUNT can be obtained by using the instructions under the header 'Downloading a copy of your information on Instagram' at: https://help.instagram.com/181231772500920. Please produce this information in HTML format." *See* [**Dkt. 105-1**, Exh. B at 17].

Among boilerplate objections, Murphy's again responded that he "cannot produce any requested documentation as he is either no longer personally in possession of the requested documentation or has never been in possession of the requested documents." **Exh. I**. This was evasive and, as obviated by later discovery, false.

Over a month later, on July 17, Murphy produced supplemental responses repeating that he is "either no longer personally in possession of the requested documentation or has never been in possession of the requested documents." **Exh. J**. But this was also plainly false. Indeed, it was contradicted by his supplemental responses which, several times, averred that he "searched his Instagram account archive." *See* **Exh. J**.

The Court held an IDC on July 19 in which Murphy now claims it "specifically refused to order Plaintiff's counsel to produce" the Instagram archive. [**Dkt. 107**, at 3]. During that conference, counsel could not state "with certainty" whether Murphy had even searched his Instagram archive. *See* [**Dkt. 107-1**, at p.10 (Tr. 15:16–21)]. As a result, the Court could not rule on the more general discovery disputes without this "predicate step," and informed counsel "to at least make sure that the download was searched for responsive documents." *See id.* at p.11–12 (Tr. 16:24–17:3); *see also id.* at p.13 (Tr. 18:1–5) ("[Y]ou at least know what my concern was, whether the material was searched for responsive documents[.]").

The following day, July 20, Murphy issued *second* supplemental responses, which, in response to Request Nos. 8,[2] 9,[3] and 32,[4] stated that Murphy "**will produce all non-privileged documents within his possession, custody, and control.**" See **Exhibit K**, Excerpts of Murphy's Second Supp. Responses. His privilege log (produced on August 22, long after the archive was downloaded), however, only listed three communications that Murphy has since produced. No other claims for privilege for any other data from his Instagram archive or the archive itself were evidenced on Murphy's privilege log.

Also conveniently truncated from Murphy's exhibit, Mr. Kane explained that Defendants knew that Murphy's production was incomplete because Mr. Kane had sent Murphy a message on Instagram that had not been produced. *See* **Exhibit L**, Excerpts of Aug. 22 IDC Hearing (Tr. 50:3–52:8). Attempting to excuse Murphy's blatant omission, Ms. Cohen stated that "my position is, Mr. Kane's communications with [Murphy] are not responsive to any of these requests." *Id.* at 51:9–11. In response, this Court informed Ms. Cohen that her interpretation of what constituted a "responsive" communication was not viable, and that Murphy's withholding of an obviously responsive document was "outrageously ridiculous". *Id.* at 51:19, 53:22–54:3. Indeed, the Court's reaction *goes to the very heart* of the concern inducing Defendants' Motion – *if Plaintiff's concept of "responsive" excludes communications that are obviously so, it is apparent that Plaintiff's counsel cannot be trusted to competently fulfill basic discovery obligations*.

Thus, the Court expressly ordered that Murphy "**shall complete** his production of documents by August 30, 2024. If Mr. Murphy does not have any additional documents to produce, then counsel shall so advise defense counsel."

---

[2] Seeking communications between Murphy and Plaintiff regarding this lawsuit.
[3] Seeking communications between Murphy and any individual regarding this lawsuit.
[4] Seeking Murphy's Instagram archive.

[**Dkt. 100**]. And yet, in light of the evidence against Murphy, and counsel's willingness to recklessly designate evidence as non-responsive or privileged, counsel's insistence that Murphy has fully complied is meaningless. Specifically, on September 24, Murphy produced the three supposedly privileged, albeit incomplete, communications. Beyond showing a disturbing trend of Plaintiff intimidating witnesses, the communications were also incomplete and cutoff, requiring further discovery efforts by Defendants. On September 26, in response to Defendants' demand for unobscured copies, BLG served a fourth supplemental production.

Murphy has had multiple opportunities to produce responsive–more targeted discovery–and has chosen to evade discovery, withhold evidence, and make false proffers. This would be wrong in any context, but here, his conduct clearly violates the Court's August 30th Order. Production of the full Instagram archive is the only remedy to Murphy's and counsel's repeated infractions and contumaciousness.

## III. ANALYSIS

### A. The Motion is Not Moot

While it is true that Murphy has abandoned his claim of privilege, the issue in presented in Defendants' Motion remains ongoing. An issue "is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969) (citation omitted). "In deciding mootness, 'the question is whether there can be any effective relief.'" *Antablin v. Motion Picture Costumers, Loc. No. 705*, No. 21-56349, 2023 WL 1462839, at *2 (9th Cir. Feb. 2, 2023) (citation omitted). Thus, an issue is only moot "when 'there is no reasonable expectation' that the alleged violation will recur." *See id.* (citation omitted).

Federal Rule of Civil Procedure 37(a)(5)(A) provides that when a discovery motion is granted, or if the discovery at issue is provided only after the filing of a

motion, the court generally "must" order the opposing party or counsel to pay "the movant's reasonable expenses incurred in making the motion, including attorney's fees." An opposing party may avoid such an award only if its position was "substantially justified" or "other circumstances make an award of expenses unjust." *See* Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii). "The district court has great latitude in imposing sanctions under" Rule 37. *Lew v. Kona Hosp.*, 754 F.2d 1420, 1425 (9th Cir. 1985).

In her Opposition, Plaintiff failed to contest, an effectively concedes, that Murphy's claim of privilege was not "substantially justified." Murphy claims that "[i]n good faith and in the interest of judicial economy," he "agreed to lift the privilege associated with the text messages between Plaintiff and Murphy." [**Dkt. 107**, at 7]. Yet, Plaintiff had myriad opportunities to proscribe Defendant's Motion. Plaintiff could have duly provided Murphy and Plaintiff's communications (i) as part of Murphy's original discovery responses; (ii) as part of Murphy's supplemental discovery responses; (iii) as part of Plaintiff's discovery responses;[5] or (iv) immediately following the Court's granting Defendants permission to file this motion. Instead, Plaintiff vexatiously designated the communications as privileged, produced a facially defective privilege log, and waited until after Defendant's Motion was filed to provide the communications. In any event, Defendants did not know–nor could they know–that Murphy would produce incomplete documents following the filing of the Motion requiring further efforts to obtain the discovery. As a result, even if the Court finds that issues related to Murphy's privilege log have been obviated by Plaintiff's delayed production, the

---

[5] In response to Defendant's mirrored request served upon Plaintiff for communications between Plaintiff and Murphy regarding this matter, Plaintiff failed to produce a single document and did not submit a related privilege log.

Court should grant Defendants leave to file a motion for an award of costs and fees associated with the filing of the Motion.

### B. Plaintiff's Confidentiality Designation is Frivolous

The Parties' Stipulated Protective Order requires any confidentiality designation must be limited "to specific material that qualifies under the appropriate standards." [**Dkt. 91**, at ¶ 5.1]. Although BLG withdrew its frivolous attorney client privilege objections, BLG seeks to hide the contents of Plaintiff's incriminating texts from the Court. On September 24, 2024, BLG finally produced the incriminating texts, but marked them "confidential." BLG's frivolous designation increases the costs of litigation and conceals: (i) *BLG's promised "effort to protect" Murphy by "shut[ting] down all the subpoenas"*; and (ii) statements by Murphy that contradict his deposition testimony. [Brown Dec. ] If the existing record is not sufficient for the Court to order the production of Murphy's Instagram archive, then Defendants request that the hearing on the Motion be postposed to allow Defendants to comply with Local Rule 79-5, so the Court can read the texts.

### C. Defendants' Motion Is Timely and Does Not Excuse Murphy's Defiance of the Court's Order

Murphy can try to hide behind as many technicalities as he can cite, the fact remains that he is in contempt of the Court's Order. "A federal court has at its disposal an array of means to enforce its orders," *Degen v. United States*, 517 U.S. 820, 827 (1996), including "inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders.'" *United States v. W.R. Grace*, 526 F.3d 499, 509 (9th Cir. 2008) (citations omitted). Regardless, Defendants have substantially complied with the Court's procedures.

First, there have been extensive conferrals and hearings on the issues – of the seven Minute Orders issued by this Court following an IDC, four concern Murphy's discovery responses. *See* [**Dkt. Nos. 74, 88, 94, and 100**].

Murphy also takes cover behind the July 19 IDC in which the Court, in his words, "refused to order the entirety of Mr. Murphy's Instagram archive be produced . . . ." [**Dkt. 107**, at 7]. This is a facile point. The Court simply did not address that issue because counsel could not even assure the Court that Murphy had downloaded the archive. *See* [**Dkt. 107-1**, at 15:16]. Not in the July 19 IDC nor anywhere else has the Court held that Murphy's Instagram archive is not discoverable. *Cf. Hickman v. Taylor,* 329 U.S. 495, 507 (1947) ("No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case.").

Indeed, after that IDC, Murphy informed Defendants that he "will produce all non-privileged documents within his possession, custody, and control." *See* **Exh. K**. It appears, however, that this proffer was a stratagem to run out the clock. In any event, the Court later issued its express Order that Murphy "shall complete his production of documents by August 30, 2024." [**Dkt. 100**]. He merely contends that he does not have to produce this material because the discovery deadline has passed. An Order of the Court cannot be so readily ignored or so quickly dispensed.

### D. Plaintiff's Discovery Misconduct Calls for the Court's Intervention

It is no secret that the parties have disputed discovery throughout this matter. What has come to light recently, however, is Plaintiff's pattern of attempts to influence witnesses potentially adverse to her claim. This can be seen in the recently produced communications by Murphy, *supra*, and also came up in the deposition of Plaintiff's former accountant, Larry Lerner. One instance may be an anecdote, but two instances is a pattern.

Mr. Lerner testified that Plaintiff's counsel, "tried to bully me into telling me that I would be jailed if I complied with the request for -- for documents." **Exhibit M**, Lerner Deposition (Tr. 7:12–14); *see also id.* at 56:15–20. Plaintiff and counsel naturally deny this. They claim that Counsel's letter to Mr. Lerner regarding a

motion to quash that was never filed simply and "neutrally explained the legal obligations for custodians of records." *See* [**Dkt. 107**, at 9]. But the record reveals an influence campaign designed to disrupt Mr. Lerner's testimony.

It starts with counsel's August 23rd letter to Mr. Lerner, which states that "*when a Motion to Quash has been filed*," Mr. Lerner cannot comply with the subpoena, and if he does, that "may be punishable by civil liability and court sanctions, including, in some instances, contempt of court." [**Dkt. 105-1**, at 52] (emphasis added). Mr. Lerner was right to "have no trust in [this] information," [**Dkt. 107-1**, at 44], as Counsel's authority is, at best, flimsy. "It is well established that a party's objection does not relieve a third-party witness of its obligation to comply with a Subpoena." *Pac. Coast Surgical Ctr., L.P. v. Scottsdale Ins. Co.*, No. 18-3904, 2019 WL 4267764, at *6 (C.D. Cal. July 31, 2019), *aff'd*, 823 F. App'x 551 (9th Cir. 2020) (citing *Moon v SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. Dec. 7, 2005)).

She first cites the California Code of Civil Procedure Section 1987.1, which has no valence in federal court, *see Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), and, in any event, does not mention sanctions. This is most likely an artifact from the firm's form letters. Second, Federal Rules of Civil Procedure Rule 45 holds the opposite of what was represented to Mr. Lerner: "The court . . . may hold in contempt a person who, having been served, *fails without adequate excuse to obey the subpoena or an order related to it*." Fed. R. Civ. P. 45(g) (emphasis added); *see id.* 45(e)(2) (describing procedure for withholding material or disputing protected materials after they have been produced). Thus, Mr. Lerner's statement–that "when and if I receive a release from the court we will comply"–is a more accurate encapsulation of the law than Counsel's letter. *See* [**Dkt. 107-1**, at 44].

Indeed, federal courts have routinely held that "commanding a non-party to ignore the subpoena of their adversary constitutes bad faith and is sanctionable." *Moses v. Am. Apparel Retail, Inc.*, No. 13-2753, 2015 WL 4665968, at *13 (W.D.

9

Tenn. Aug. 6, 2015). *See e.g., Price v. Trans Union, LLC*, 846 F.Supp.2d 788, 794 (E.D. Pa. 2012) (Finding that "Nowhere in [Rule 45] is it contemplated that the adversary of the party seeking the information may advise, no matter the reasons, the person commanded by the subpoena to produce the information to ignore the subpoena's command" and finding sanctions appropriate for such action.).

During his deposition, Counsel tried to cover their tracks by pointing the finger at Mr. Lerner, accusing him of blackmail and extortion because he stated that "[i]f [Plaintiff] wishes my assistance she will need to clear up her balance with our firm." *See id.*; **Exh. M** (Tr. 60:15–61:15). But as Mr. Lerner explained, this simply meant that he would not "go out of [his] way," "defy a court order," or spend money on a lawyer. *Id.* (Tr. 63:14–64:23). Counsel's insinuation of criminal misconduct, was just a means to badger and harass the witness, and another means of intimidation. *See Sedie v. U.S. Postal Serv.*, No. 8-4417, 2009 WL 4021666, at *1 (N.D. Cal. Nov. 19, 2009) ("As officers of the court, counsel are expected to conduct themselves in a professional manner during a deposition . . . that simulates the dignified and serious atmosphere of the courtroom. * * * [A]ccusations of wrongdoing against witnesses and attorneys have no place in a deposition.").

Of course, Counsel's letter only mentions that Plaintiff only "intend[ed]" to file such a motion, as one was never filed in this case. Instead, Plaintiff requests a motion for a protective order on August 29, [**Dkt. 103**], which the Court denied that same day. [**Dkt. 104**]. Plaintiff's counsel, however, never informed Mr. Lerner that this relief was denied. See **Exh. M** (Tr. 80:4–12). Finally, though the timing is unclear, Plaintiff herself called Mr. Lerner and complained "that it would harm [her] case if [Mr. Lerner] complied with" the subpoena. *See id.* (Tr. 8:8–11); *see also id.* at (Tr. 75:14–18) (paraphrasing Plaintiff as stating "Oh, I know that you were served with some documents, but make sure that you don't give them what they asked for because it would harm my case."). None of this demonstrates an

attempt to work out Plaintiff's privacy concerns, but rather an attempt to thwart discovery.

This is why a Court order compelling discovery has become so necessary. Of the two non-party witnesses involved in this matter, both have claimed to be threaten by Plaintiff. While Mr. Lerner, who proceeded without representation, has complied with Defendants' subpoena, Murphy, who is represented by the same counsel as the Plaintiff,[6] has defied even the most reasonable discovery request. Given his history of evasions, rolling production, and outright falsities, the only remedy to ensure that Defendants have complete and accurate responses is for this Court to compel Murphy to produce the full Instagram archive, just as he said he would.[7] *Supra.*

## IV. CONCLUSION

For the reasons stated above, Defendants respectfully requests the Court OVERRULE Murphy's claim of attorney-client privilege in any of his communications between him and Plaintiff, and COMPEL him to produce complete, unobstructed copies of and all other previously undisclosed communications between him and Plaintiff. Defendants further respectfully request the Court COMPEL Murphy to produce his Instagram archive. In addition,

---

[6] To the best of Defendants' knowledge, the Bibiyan Law Group, is representing Murphy *pro bono*. Murphy has at least conceded that he was not paying the firm and that he was unaware of who was paying for their services. *See* **Exh. K** (Tr. 11:3–19).

[7] In the unlikely event the Instagram archive contains privileged materials, Murphy is not without recourse. He may, under Rule 26(b)(5)(B), Murphy "may notify any party that received the information of the claim and the basis for it," and the parties must confer to resolve the claim.

Defendants respectfully request leave to file a motion for costs and fees incurred in the preparation of the Motion.

Dated: October 1, 2024

Respectfully submitted,
KANE LAW FIRM

By: */s/ Brad S. Kane*
Brad Kane
Trey Brown
Attorneys for Defendants
VXN Group LLC and Mike Miller

12

**CERTIFICATE OF SERVICE**

I hereby certify that on October 10, 2024, a true and correct copy of the foregoing document filed using the CA/EMCF System available to the following persons:

David D. Bibiyan
*david@tomorrowlaw.com*
Jeffrey D. Klein
*jeff@tomorrowlaw.com*
Sarah H. Cohen
*sarah@tomorrowlaw.com*
Jason Rothman
*jason@tomorrowlaw.com*
Rafael Yedoyan
*rafael@tomorrowlaw.com*

Dated: October 1, 2024          By:    */s/ Trey Brown*
                                       Trey Brown