**KANE LAW FIRM**
Brad S. Kane (SBN 151547)
bkane@kanelaw.la
1154 S. Crescent Heights. Blvd.
Los Angeles, CA 90035
Tel:  (323) 697-9840
Fax: (323) 571-3579

Trey Brown (SBN 314469)
trey.brown@vixenmediagroup.com
11337 Ventura Blvd.
Studio City, CA 91604

Attorneys for Defendants
VXN GROUP LLC and
MIKE MILLER

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| MACKENZIE ANNE THOMA, a.k.a. KENZIE ANNE, an individual and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>VXN GROUP LLC, a Delaware limited liability company; STRIKE 3 HOLDINGS, LLC, a Delaware limited liability company; MIKE MILLER, an individual; and DOES 1 to 100, inclusive,<br><br>        Defendants. | Case No. **2:23–cv–04901 WLH (AGRx)**<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUCIATION**<br><br>Date:            January 3, 2025<br>Time:            11:00 am or later<br>Courtroom:    9B<br><br>Complaint Filed:    April 20, 2023<br>Removed:            June 21, 2023 |

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF, MACKENZIE ANNE THOMA, AND HER ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on January 3, 2025, at 11:00 am or as soon thereafter as the matter may be heard before the Honorable Wesley L. Hsu, Defendants VXN Group, LLC ("VXN") and Mike Miller ("Miller") (collectively, "Defendants") will and hereby do move for an order dismissing dismissing MACKENZIE ANNE THOMA's ("Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 56 and the Court's Bifurcation Order [Dkt. 66 at 8],

## MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

Defendants VXN Group, LLC ("VXN") and Mike Miller ("Miller") (collectively, "Defendants") Defendants respectfully request that the Court find that:

(i)   Plaintiff falls under the professional actor exemption of IWC Wage Order 12, since she played a specific character with speaking lines and featured role in each VXN movie. As a result, Defendants are entitled judgment on Plaintiff's remaining claims for overtime, wage statements, meal and rest periods, and waiting time penalties (to the extent based on overtime); and

(ii)  under the *Borello* test, Plaintiff is an independent contractor as a matter of law. As a result, Defendants are entitled judgment on Plaintiff's remaining claims.

Under Local Rule 7-3, Defendants' counsel Brad Kane and Trey Brown and Plaintiff's counsel Sarah Cohen thoroughly discussed the substance and potential resolution of the filed motion by videoconference on October 31, 2024.

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

1    Declaration of Trey Brown in support of Defendants' Motion ("Brown Decl."),

2    ¶__.

3        Defendants' Motion is supported by the attached memorandum of points and

4    authorities filed in support of this motion, on all the pleadings and papers in this

5    action, and on any oral argument entertained by the Court during the hearing on

6    this matter.

7

8    Dated: November 12, 2024            Respectfully submitted,

9

10                           KANE LAW FIRM

11   By:   */s/ Brad S. Kane*

12                          Brad S. Kane
                            Trey Brown
13                          Attorneys for Defendants
                            VXN Group LLC; Strike 3
14                          Holdings, LLC; General Media
                            Systems, LLC; and Mike Miller
15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KANE LAW FIRM**
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

iii

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

## Table of Contents

I.    INTRODUCTION ..................................................................................1

II.   LEGAL STANDARD ..........................................................................1

III.  STATEMENT OF FACTS ...................................................................1

IV.   ANALYSIS ..........................................................................................7

   A.   Summary Judgment Should be Granted on Plaintiff's Claims because She
is Exempt as a Professional Actor ........................................................7

     1.   Wage Order 12 Governs Plaintiff's Claims .............................8

     2.   Professional Actors Are Exempt from Overtime ....................8

     3.   The PA Exemption Is Not Time Limited .................................9

     4.   Photographs Are Part of Motion Picture Production .............12

   B.   Plaintiff Was an Independent Contractor ..........................................14

     1.   Borello Governs Plaintiff's Employment Status ...................14

     2.   The Control Factor Favors an Independent Contractor Designation. ......15

     3.   Plaintiff Was Engaged In a Distinct Occupation and Business..............20

     4.   Plaintiff Is Engaged In A Skilled Profession.........................21

     5.   Plaintiff Was Paid On a Per-Scene Basis ..............................21

     6.   The Instrumentalities And Tools Factor is Neutral. ..............22

     7.   The Part-of-Regular Business Factor Is Neutral. ..................23

     8.   Both Plaintiff and VXN Understood and Relied on Plaintiff's Status as
an Independent Contractor. ........................................................23

V. CONCLUSION ...................................................................................25

MOTION FOR SUMMARY JUDGMENT

1

# TABLE OF AUTHORITIES

## Federal Cases

Alberty-Velez v, Corporacion de Puerto Rico Para La Difusion Publica, 361 F.3d
1, 9 (1st Cir. 2004) --------------------------------------------------------------------21

Alberty–Velez v. Corporacion de Puerto Rico Para La Difusion Publica, 361 F.3d
1, 9 (1st Cir. 2004) --------------------------------------------------------------------19

Alberty-Velez v. Corporacion de Puerto Rico Para La Difusion Publica, 361 F.3d.
1, 8 (1st Cir. 2004) --------------------------------------------------------------------22

Alberty-Velez v. Corporacion de Puerto Rico Para La Difusion Publica, 361 F.3d.
1, 8 (1st Cir. 2004) --------------------------------------------------------------------22

Alexander v. FedEx Ground Package System, Inc., 765 F.3d 981, 990 (9th Cir.
2014)--------------------------------------------------------------------------------------19

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) --------------------------- 1

Bowerman v. Field Asset Servs., Inc., 60 F.4th 459, 472 (9th Cir. 2023) ---------14

Bowerman v. Field Asset Servs., Inc., 2013 WL 6057043, at *2–3 (N.D. Cal.
2013)--------------------------------------------------------------------------------------24

Campbell v. PricewaterhouseCoopers, LLP, 642 F.3d 820, 828 (9th Cir. 2011) -10

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) ------------------------------------ 1

Cotter v. Lyft, Inc., 60 F. Supp. 3d, 1067, 1074–75 (N.D. Cal. 2015) -------------21

Cotter v. Lyft, Inc., 60 F. Supp. 3d 1067, 1077 (N.D. Cal. 2015) -------------------15

Desimone v. Allstate Ins. Co., 2000 WL 1811385, at *14–15 (N.D. Cal. 2000) -19

Desimone v. Allstate Ins. Co., 2000 WL 1811385, at *16 (N.D. Cal. 2000)------24

Desimone v. Allstate Ins. Co., 2000 WL 1811385, at *13 (N.D. Cal. 2000)------17

Flaaen v. Principal Life Ins. Co., 2017 WL 4286358, at *5 (W.D. Wash. Sept. 27,
2017)--------------------------------------------------------------------------------------- 9

Garcia v. Google, Inc., 786 F.3d 733, 742 (9th Cir. 2015) ---------------------------18

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

ii

MOTION FOR SUMMARY JUDGMENT

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

Haitayan v. 7-Eleven, Inc, 2021 WL 4078727, at *14–15 (C.D. Cal. Sept. 8,
2021)------------------------------------------------------------------------------21

Haitayan v. 7-Eleven, Inc., 2021 WL 4078727 at *14 (C.D. Cal. Sept. 8, 2021)-24

Harper v. Wallingford, 877 F.2d 728, 731 (9th Cir. 1989) --------------------------- 1

Harris v. Vector Mktng. Corp., 656 F.Supp.2d 1128, 1139 (N.D. Cal. 2009) ----21

Hennighan v. Insphere Ins. Sols., Inc., 38 F. Supp. 3d 1083, 1098 (N.D. Cal.
2014)------------------------------------------------------------------------------16

Hennighan v. Insphere Ins. Sols., Inc., 38 F. Supp. 3d 1083, 1102 (N.D. Cal.
2014)------------------------------------------------------------------------------20

Herrera v. Zumiez, Inc., 953 F.3d 1063, 1070 (9th Cir. 2020)----------------------- 8

Hill v. Walmart Inc., 32 F.4th 811, 821 (9th Cir. 2022) -------------------------12

Hoffman v. Cap. Cities/ABC, Inc., 255 F.3d 1180, 1182–83 (9th Cir. 2001)-----13

Jules Jordan Video, Inc. v. 144942 Canada Inc., 617 F.3d 1146, 1154 (9th Cir.
2010)------------------------------------------------------------------------------13

Ladore v. Ecolab Inc., 2013 WL 12246340, at *4 (C.D. Cal. Jan. 22, 2013) -----12

Lawson v. Grubhub, Inc., 302 F.Supp.3d 1071, 1084 (N.D. Cal. 2018) -----------17

Lawson v. Grubhub, Inc., 665 F.Supp.3d 1108, 1116 (N.D. Cal. 2023) -----------20

Lockhart v. Cnty. of Los Angeles, 2007 WL 9627609, at *6 (C.D. Cal. Oct. 16,
2007)------------------------------------------------------------------------------10

Ortolivo v. Precision Dynamics Int'l, LLC, 2023 WL 7440249 at *7 (N.D. Cal.
Nov. 9, 2023)--------------------------------------------------------------------20

Ortolivo v. Precision Dynamics Int'l, LLC, 2023 WL 7440249, at *5 (N.D. Cal.
Nov. 9, 2023)--------------------------------------------------------------------18

Owino v. CoreCivic, Inc., 2018 WL 2193644, at *5 (S.D. Cal. May 14, 2018) --11

Poland v. United States Att'y Gen., 2012 WL 13001837, at *11 (C.D. Cal. 2012)
------------------------------------------------------------------------------17

Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985) 1

Ruiz v. Affinity Logistics Corp., 654 F.3d 1093, 1101 (9th Cir. 2014) -----------19

iii

Salazar v. McDonald's Corp., 2017 WL 950986, at *3 (N.D. Cal. Mar. 10, 2017)

-------------------------------------------------------------------------11

Salter v. Quality Carriers, Inc., 2021 WL 5049054 (C.D. Cal. 2021) -------------15

Smith v. Montoro, 648 F.2d 602, 607 (9th Cir. 1981)-------------------------------14

Sportsman v. A Place for Rover, Inc., 537 F. Supp. 3d 1081, 1099 (N.D. Cal.

2021)-------------------------------------------------------------------------20

Tieberg v. Unemployment Ins. App. Bd., 2 Cal.3d 943, 953–54 (1970)-----------23

Troester v. Starbucks Corp., 5 Cal. 5th 829, 839, 421 P.3d 1114, 1119 (2018) --- 8

United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ---------------------------- 1

Urena v. Earthgrains Dist., 2017 WL 4786108 * 5-6 (S.D. Cal. 2017) ------------17

Federal Statutes

17 U.S.C. § 106(5) ----------------------------------------------------------------13

Federal Rules

Fed. R. Civ. P. 56(c)--------------------------------------------------------------- 1

Federal Treatises

F. Jay Dougherty, Not A Spike Lee Joint? Issues in the Authorship of Motion

Pictures Under U.S. Copyright Law, 49 UCLA L. REV. 225, 228 (2001) -----17

California Cases

Antelope Valley Press v. Poizner, 162 Cal.App.4th 839, 855 -----------------------21

Arnold v. Mut. of Omaha Ins. Co., 135 Cal.Rptr.3d 213, 221 (Cal. App. 2011) -15

Ashdown v. Dep't of Emp., 135 Cal.App.2d 291, 300-------------------------------- 9

Ayala v. Antelope Valley Newspapers, Inc., 59 Cal.4th 522, 531 (2014) ---------16

Beaumont–Jacques v. Farmers Group, Inc., 217 Cal.App.4th 1138, 1145 (2013)24

Cash v. Winn, 205 Cal.App.4th 1285, 1299-------------------------------------------12

City of San Jose v. Superior Ct., 5 Cal.4th 47, 55-------------------------------------11

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

iv

1

2

Estrada v. FedEx Ground Package Sys., Inc, 154 Cal.App.4th 1, 12 (Ct. App.

2007)----------------------------------------------------------------------------22

Garcia v. Border Transp. Grp., LLC, 28 Cal.App.5th 558, 571–72 (Ct. App. 2018)

-------------------------------------------------------------------------15

Garcia v. Border Transp. Grp., LLC, 28 Cal.App.5th 558, 570–71 (Ct. App. 2018)

-------------------------------------------------------------------------14

Hennighan v. Insphere Ins, Sols., Inc., 38 F.Supp.3d 1083, 1104 (N.D. Cal. 2014)

-------------------------------------------------------------------------22

Miles v. City of Los Angeles, 56 Cal.App.5th 728, 737 (2020) ---------------------- 8

Mission Ins. Co. v. Workers' Comp. Appeals Bd., 123 Cal.App.3d 211, 221-22

(Ct. App. 1981) -------------------------------------------------------------18

Mission Ins. Co. v. Workers' Comp. Appeals Bd., 123 Cal.App.3d 211, 224 (Ct.

Appeal 1981)---------------------------------------------------------------20

Missions Ins. Co. v. Workers' Comp. Appeals Bd., 123 Cal.App.3d 211, 226 (Ct.

Appeal 1981)---------------------------------------------------------------24

Missions Ins. Co. v. Workers' Comp. Appeals Bd., 123 Cal.App.3d 211, 224 (Ct.

Appeal 1981)---------------------------------------------------------------24

Morales v. 22nd Dist. Agric. Ass'n, 25 Cal.App.5th 85, 97 (2018)----------------10

Rodriguez v. E.M.E., Inc., 246 Cal.App.4th 1027, 1034 ----------------------------10

S.G. Borello & Sons, Inc. v. Dep't of Indus. Rels., 48 Cal.3d 341 (1989) --------14

S.G. Borello & Sons, Inc. v. Dep't of Indus. Rels., 48 Cal.3d 341, 353 (1989)---23

S.G. Borello & Sons, Inc. v. Dep't of Indus. Rels., 48 Cal.3d 341, 355 (1989)---22

S.G. Borello & Sons, Inc. v. Dep't of Indus. Rels., 48 Cal.3d 341, 350 (1989)---15

S.G. Borello & Sons, Inc. v. Dep't of Indus. Rels., 48 Cal.3d 341, 408–09 (1989)

-------------------------------------------------------------------------23

State Comp. Ins. Fund v. Brown, 32 Cal.App.4th 188, 202 --------------------------17

Tieberg v. Unemployment Ins. App. Bd., 2 Cal.3d 943, 949 (1970) --------------16

**KANE LAW FIRM**
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

v

MOTION FOR SUMMARY JUDGMENT

## California Statutes

Cal. Lab. C. § 203-------------------------------------------------------------------14

Cal. Lab. C. § 2776(a)(7) ------------------------------------------------------19

## California Regulations

Cal. Code Regs. tit. 8, § 11120 -------------------------------------------------- 8

Cal. Code Regs. tit. 8, § 11120(1)(C) ---------------------------------------- 8

## New Jersey Cases

Pukowsky v. Caruso, 312 N.J. Super. 171, 183–84 (App. Div. 1998) -------------25

MOTION FOR SUMMARY JUDGMENT

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendants seek summary judgment against Plaintiff's remaining claims based on: (i) Plaintiff falls under the professional actor exemption of IWC Wage Order 12 ("IWC 12"), since she played a specific character with speaking lines and featured role in each VXN movie; and (ii) under the *Borello* test, Plaintiff is an independent contractor as a matter of law.

### II.    LEGAL STANDARD

Summary judgment is proper if the evidence before the court "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  The court must examine all summary judgment evidence in the light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). Nevertheless, it is the nonmoving party's obligation to produce factual predicates from which an inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987). "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

### III.    STATEMENT OF FACTS

VXN is a motion picture production company, UF 5, 6, producing movies for commercial distribution through online subscriptions to its branded websites, DVDs, third-party distributors, cable television and via international distribution

1

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

channels. UF 1. All its movies are registered as motion pictures with the United States Copyright Office. UF 2. Additionally, its unique cinematic films have won many awards. UF 3.

VXN employs a film production team, a post-production team, a marketing team, a production accountant, and in-house film and entertainment lawyers. UF 4. VXN owns state of the art motion picture production equipment. UF 7. It also routinely rents film locations, props, obtains film industry permits and licenses music for its films UF 8.

During motion picture productions, VXN directors or photographers take "stills" which are photographs of actors in its movies in character in various positions. UF 9. The stills enable the actors to rehearse the scene and determine which sex positions feel comfortable with each of the actors and works visually for the directors of the films. UF 10. The stills are used later as covers for DVDs, thumbnails for the website and for advertising, marketing, and social media purposes to promote the movies, the actors, and the websites. UF 11. The stills are never individually nor commercially sold separate from the movie and are only included on the websites as bonus content for subscribers with the correlating movie. UF 12. The stills are also not separately registered with the United States Copyright Office. UF 2. Taking stills on VXN's production sets usually takes about an hour to two hours, depending on the creative direction of the actors and director as they prepare to film the movie. UF 13.

VXN contracted with Plaintiff a "decorated and well-known adult film actress who performs under the stage name "Kenzie Anne." to act in VXN's films from December 2020 to November 2022. UF 14 [**Dkt. 53**, at ¶ 7]. During that time, Plaintiff starred in 18 motion pictures for VXN. UF 15. Plaintiff was paid for each film production. UF 39. In each movie Plaintiff played a specific character with speaking lines and a featured role. UF 16. She often chose the

MOTION FOR SUMMARY JUDGMENT

actors she would perform with, her director, and collaborated on the film's concept.  UF 17 . While VXN provided Plaintiff with wardrobe, intimacy aids, and makeup in collaboration with Plaintiff, Plaintiff retained and exercised her right to approve each item. UF 18. Her VXN showcase that was cancelled because of her staph infection included an extensive script, 7 days of planned shooting, dozens of extra-players, and expensive locations. UF 19.

According to Plaintiff's IMDB, she has been an actress in over 50 films and television shows.  UF 20.  She has received SAG credit and is eligible to be a member (but declined because she didn't like the health care).[1]  UF 21.  She has stated publicly that she shot over 300 scenes in the adult film industry since 2020. UF 22. During the years that Plaintiff appeared in Defendants' films, she was either nominated for or won awards in the industry for professional acting in motion pictures, including four films she starred in for VXN. UF 23.   Plaintiff's talent agent Ryan Murphy admitted Plaintiff considered herself a "professional actress". UF 26.

Plaintiff's relationship with VXN was governed by two contracts, with each contract amended by an addendum (collectively, the "Agreements"). UF 29. Plaintiff's talent agents negotiated her contracts. UF 30. The term of the first contract began on November 11, 2020 and renewed for 6 months upon Plaintiff's completion of each scene. UF 31. In April of 2021, Plaintiff's talent agent renegotiated the first contract so that it terminated on August 28, 2021. UF 32. Upon the expiry of the first contract, Plaintiff and VXN entered a second contract with a 12-month term ending on August 29, 2022. UF 33. In June 2022, the parties amended the second contract by extending the term to December 31, 2023.

---

[1] "Sag" refers to SAG-AFTRA, the union for professional actors. *See Sheen v. Screen Actors Guild*, 2012 WL 2360923, at *2 (C.D. Cal. Mar. 28, 2012) ("Defendant SAG is a labor organization . . . whose membership comprises over 120,000 professional actors.").

MOTION FOR SUMMARY JUDGMENT

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

1    UF 34. The Agreements explicitly state that Plaintiff is an independent contractor

2    and that she will not be deemed an employee of VXN. UF 35.

3        The Agreements provided for VXN to pay Plaintiff on a per-scene basis.

4    UF 36. Before each scene, Plaintiff submitted a form W-9 to VXN. UF 37. The

5    W-9s submitted by Plaintiff indicated various payees, including Plaintiff herself,

6    Kenzieland LLC, and Lola March LLC. UF 38. VXN paid Plaintiff the relevant

7    contractual amount following the completion of each scene. UF 39. VXN issued

8    Plaintiff form 1099s reflecting her gross compensation for the 2020, 2021, and

9    2022 tax years. UF 40. Plaintiff never received a Form W-2 from VXN. UF 41.

10        The Agreements required Plaintiff to "maintain [her] physical appearance"

11    and to "submit to the reasonable personal grooming requests of [VXN], as such

12    may be considered a norm in the adult film industry." UF 42. The purpose of

13    these requirements was to allow VXN to properly plan ahead for film shoots. UF

14    43 Another purpose was to ensure the safety of other performers, including

15    against infectious diseases and other complications from cosmetic surgery. UF

16    44.

17        Plaintiff had complete discretion as to what days she worked for VXN. UF

18    45. To schedule Plaintiff for a film shoot, VXN's casting director asked

19    Plaintiff's agent for Plaintiff's available dates or proposed dates for her agent to

20    accept or decline on Plaintiff's behalf. UF 46. Plaintiff's agent testified that if

21    Plaintiff was not available, VXN had no power to force her appearance. UF 47.

22    Plaintiff was free to decline a proposed date for any reason or no reason. UF 48.

23        Plaintiff's Agreements provided for mutual approval by Plaintiff and VXN

24    over the director and cast members for each scene. UF 50. In practice, Plaintiff

25    had the right to decline a scene if she didn't want to work with a certain director

26    or cast member. UF 51. Prior to most of her scenes, VXN provided Plaintiff with

27    a script for her review. UF 52. If she did not approve of the script, Plaintiff was

28    free to suggest changes to the director, or decline the scene altogether. UF 53.

MOTION FOR SUMMARY JUDGMENT

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

**KANE LAW FIRM**
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

Plaintiff had a preexisting relationship with a director, Chris Applebaum, and suggested him to direct her first VXN scene. UF 54. Applebaum and Plaintiff jointly proposed, and VXN accepted, Plaintiff's preferred co-stars for her first scene. *Id.* Applebaum characterized Plaintiff's engagement with VXN as a "collaboration" and expressed excitement that Plaintiff's and VXN's "brands are aligned[.]" UF 55. Applebaum worked with VXN staff to plan the creative elements of Plaintiff's first scene. UF 56.  VXN did not provide Plaintiff with any training or documents instructing her on how to perform. UF 57. VXN never requested or forced Plaintiff to reshoot a scene due to due to dissatisfaction with her performance. UF 58.

The Agreements have identical for-cause termination provisions and define "Cause" to include Plaintiff's "uncured material breach" and "unreasonable unavailability." *Id*. The Agreements provided Plaintiff with the opportunity to cure a breach. *Id*. In a Notice of Termination dated September 28, 2022 ("Termination Notice"), VXN terminated Plaintiff's contract on a for-cause basis, citing her "unreasonable unavailability." UF 61. The Termination Notice noted that (i) in June of 2022, Plaintiff cancelled "just days before" a scheduled scene; (ii) in August of 2022, Plaintiff again cancelled "just days before" a scheduled scene, causing VXN to incur losses; and (iii) VXN was terminating "to avoid incurring additional damages" due to Plaintiff's "failure to appear on scheduled shoot dates". Id.

Prior to contracting with VXN, Plaintiff was independently established and earned "roughly $50,000 per month" in adult entertainment through camming, i.e., streaming live video of herself engaged in erotic activity over various websites. UF 63. Plaintiff utilized several different streaming platforms to exploit her camming content, including Streamates.com, OnlyFans.com, and Chaturbate.com. UF *64.*

Before contracting with VXN, Plaintiff also launched a website entitled

MOTION FOR SUMMARY JUDGMENT

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

"Kenzieland" where she sold access to self-produced pornographic films. UF 65. A news article featuring an interview of Plaintiff regarding her career described Kenzieland as an "elaborate website featuring solo masturbation scenes along with hookups between [Plaintiff] and established talent . . . ." UF 66. In the same article, Plaintiff described Kenzieland as "my porn channel. It's my favorite project. It's my baby. I want it displayed everywhere." UF 67. Plaintiff formally incorporated Kenzieland LLC as a Wyoming limited liability company on April 30, 2021. UF 68. Plaintiff testified that prior to that date, she personally ran "Kenzieland, my business, without an LLC". UF 69. Plaintiff agreed that Kenzieland was an active endeavor prior to its formal incorporation. UF 70.

Plaintiff hired Applebaum to shoot and facilitate the editing of her adult film concepts. UF 71. Plaintiff performed creative director and executive producer duties on all Kenzieland films. UF 72. In that capacity, she had control over storylines, scripts, and filming locations, in addition to booking talent and performing. UF 73. Plaintiff cast well-known professional adult film actors to appear in Kenzieland films. UF 74. Plaintiff did not obtain written agreements with Kenzieland actors, nor did she pay them any money or wages in exchange for their acting services. UF 75. Revenue generated by the films was used to pay production crew hired by Plaintiff. UF 76. In 2021, while under contract with Defendants, Plaintiff produced and released at least 23 films on Kenzieland.com. UF 77.

Prior to and during her contract with VXN, Plaintiff actively marketed Kenzieland to the public. UF 78 Plaintiff advertised and promoted her business by creating dedicated Kenzieland profiles on Instagram and Twitter and posting content on both the Kenzieland profiles and her personal profiles to attract potential customers to Kenzieland.com. UF 79. While under contract with VXN, Plaintiff also provided acting services to numerous other mainstream and adult film studios. UF 80. For example, in 2021, Plaintiff appeared in at least 14

MOTION FOR SUMMARY JUDGMENT

separate films for studios other than VXN, including Cherry Pimps, Jules Jordan, Penthouse, Playboy, and Brazzers. UF 81. Plaintiff testified that 2022 was her most active year performing in adult films. UF 82. In 2022, Plaintiff appeared in five films released by VXN, whereas she appeared in no fewer than 68 films for other studios. UF 83

In addition to Kenzieland LLC, Plaintiff formed Lola March LLC in January 2022. UF 84. Plaintiff formed Lola March LLC expressly to file her taxes as an independent contractor. UF 85. Plaintiff took business deductions related to Lola March LLC on her taxes. UF 86. In her personal tax filings for each of 2020, 2021, and 2022, Plaintiff identified as self-employed and filed a Schedule C (Form 1040 – Profit or Loss from Business) as a sole proprietor. UF 87. Plaintiff did not declare any W-2 employee income from any of the studios for which she performed in 2021 or 2022. UF 88.

## IV.  ANALYSIS

### A.    Summary Judgment Should be Granted on Plaintiff's Claims

MOTION FOR SUMMARY JUDGMENT

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

**because She is Exempt as a Professional Actor**

    ***1.***     *Wage Order 12 Governs Plaintiff's Claims*

IWC 12 governs the Motion Picture Industry. *See* Cal. Code Regs. tit. 8, § 11120 ("This order shall apply to all persons employed in the motion picture industry."). "'Motion Picture Industry' means any industry, business, or establishment operated for the purpose of motion picture or television film production." *Id.*

"California's 'wage orders are to be accorded the same dignity as statutes.'" *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1070 (9th Cir. 2020). IWC 12 governs Plaintiff's claims because the purpose of Defendants' business is to create motion pictures. UF 1. "[T]he 'main purpose of the business, not the job duties of the employee, determines which wage order applies in any given case." *Miles v. City of Los Angeles*, 56 Cal.App.5th 728, 737 (2020). "The primary function of the employer is to be the determining factor in establishing the proper IWC order applicable to the employees." *Id.*

    ***2.***     *Professional Actors Are Exempt from Overtime*

IWC 12 exempts professional actors from its overtime, wage statement, and meal and rest break period requirements. ("PA exemption"). *See* Cal. Code Regs. tit. 8, § 11120(1)(C).[2] "Professional actor" is undefined because the legislature considered the term "well known to those in the industry." UF 27. The PA exemption was designed to distinguish featured actors from extra-players,

---

[2] "Although the California Labor Code added overtime requirements in 1999, the Code expressly retained all exemptions within valid wage orders in effect before 1997." *Lujano v. Piedmont Airlines, Inc.*, 2024 WL 2873627, at *5 (C.D. Cal. May 16, 2024) (citing Cal. Lab. Code § 515(b)). The "professional actor" exemption was adopted in 1957. *See* UF 28.

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

8

MOTION FOR SUMMARY JUDGMENT

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

who receive more protections.  UF 28[3] *Ashdown v. Dep't of Emp.*, 135 Cal.App.2d 291, 300, 287 P.2d 176, 182 (1955) ("[W]ork as an extra . . . is not suitable work for an actress . . . whose work has been confined to spoken parts.") In other contexts, courts have defined it simply as a person who is paid to act. *Flaaen v. Principal Life Ins*. Co., 2017 WL 4286358, at *5 (W.D. Wash. Sept. 27, 2017) ("His participation is unpaid. He is not seeking to work as a professional actor.") Plaintiff qualifies as a professional actor because, among the many reasons stated in Section III, she was paid to act in VXN's motion pictures and was always given a feature role and speaking lines.  UF 16

### 3.    *The PA Exemption Is Not Time Limited*

Plaintiff's contention that she spent "75%" of her time taking still photographs on set and is therefore a model rather than a "professional actor" is both implausible and irrelevant. First, evidence shows that still photos only encompassed a small portion of the time that Plaintiff was on set. UF 13 Second, the exemption does not require that an actor's duties be spent "acting" for a specific time to meet the exemption.

IWC 12 contains several exemptions. For example, the "public employee exemption"[4] in IWC12(1)(B) is straight forward and without limitation while the

---

[3] The Legislative Text states: "There was discussion of the difficulty of defining an "extra player" as distinguished from an "actor" or "actress" despite the fact that the distinction is well known to those in the industry." *Id*. "[E]xtra-players" are defined as "any person employed by an employer in the production of motion pictures to perform any work, including but not limited to that of a general extra, stand-in, photographic double, sports player, silent bit, or dress extra; or as extras employed in dancing, skating, swimming, diving, riding, driving, or singing; or as extras employed to perform any other actions, gestures, facial expressions, or pantomime." Cal. Code Regs. tit. 8, § 11120.
[4] The Public Employee exemption states: "(B) Except as provided in Sections 1, 2, 4, 10, and 20, the provisions of this order shall not apply to any employees directly employed by the State or any political subdivision thereof, including any city, county, or special district." Cal. Code Regs. tit. 8, § 11120

MOTION FOR SUMMARY JUDGMENT

"professional exemption" at § 12(1)(A)(3)(a)–(i) includes "a veritable hotbed . . . about the employee's actual job duties and whether those duties meet the requirements." *Campbell v. PricewaterhouseCoopers, LLP*, 642 F.3d 820, 828 (9th Cir. 2011).

In contrast to the executive, administrative, and professional exemptions ("general exemptions") in Section 1(A) of IWC 12, the legislature did not impose a "primarily"[5] engaged requirement to be exempt as a professional actor. All it states is: "(C) Except as provided in Sections 1, 2, 4, 10, and 20, the provisions of this order shall not apply to professional actors." *Id* at 1(C). The language of the "professional actor" exemption is almost identical to the public employee exemption before it in 1(B). Courts have interpreted the "public employee" exemption as a blanket exemption. *Lockhart v. Cnty. of Los Angeles*, 2007 WL 9627609, at *6 (C.D. Cal. Oct. 16, 2007) ("Had the IWC intended to act contrary to its policy of a blanket exemption and create coverage of some public employees who otherwise do not fall within the wage orders, it presumably would have done so more explicitly"); *Morales v. 22nd Dist. Agric. Ass'n*, 25 Cal.App.5th 85, 97 (2018) (public employees were exempt regardless of the purpose of their work).

IWC 12 lists the PA Exemption on its own, aligning its language only with other blanket exemptions. It purposefully excluded "professional actor" from the general exemptions in 1(A) because the legislature did not intend for the limitations in 1(A) to apply. "Judicial construction that renders any part of the wage order meaningless or inoperative should be avoided." *Rodriguez v. E.M.E.,*

---

[5] "Primarily" is defined in IWC12 (M) ("'Primarily' as used in Section 1, Applicability, means more than one-half the employee's work time."). Cal. Code Regs. tit. 8, § 11120.

MOTION FOR SUMMARY JUDGMENT

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

*Inc.*, 246 Cal.App.4th 1027, 1034, 201 Cal. Rptr. 3d 337, 343 (2016). If the "professional actor" exemption is read to have requirements from other exemptions, it would swallow the exemption, rendering it meaningless. *City of San Jose v. Superior Ct.*, 5 Cal.4th 47, 55, 850 P.2d 621 (1993) ("If the City's interpretation were correct, the exception provided by subdivision (b)(2) would swallow the rule . . . . thus rendering that part of subdivision (a) virtually meaningless. We ordinarily reject interpretations that render particular terms of a statute mere surplusage.").

If the legislature intended actors to be exempt only when acting for a certain amount of time, it would have so specified.[6] "[The] legislature says in a statute what it means and means in a statute what it says there.' If the statutory text is unambiguous, *the inquiry ends there*." *Owino v. CoreCivic, Inc.*, 2018 WL 2193644, at *5 (S.D. Cal. May 14, 2018) (citing *BedRoc Ltd., LLC v. United States,* 541 U.S. 176, 183 (2004)) (emphasis added).

"The rules of statutory construction provide that [u]nder the guise of construction, a court should not rewrite the law, [nor] add to it what has been omitted." *Salazar v. McDonald's Corp.*, 2017 WL 950986, at *3 (N.D. Cal. Mar. 10, 2017), *aff'd*, 939 F.3d 1051 (9th Cir. 2019). Analyzing the professional actor exemption based on limitations written in other exemptions would "materially affect its operation so as to make it conform to a presumed intention not expressed or otherwise apparent in the law." *Id.*

The PA exemption applies automatically, regardless of the amount of time an actor spends being photographed. *Lockhart v. Cnty. of Los Angeles*, 2007 WL 9627609, at *7 (C.D. Cal. Oct. 16, 2007). This is because of the unique nature of

---

[6] For example, IWC 10, explicitly qualifies "motion picture projectionist" as "[e]mployees whose duties are <u>*exclusively*</u> those" in order for an overtime exemption to apply. Cal. Code Regs. tit. 8, § 11100 (3)(G) (emphasis added).

MOTION FOR SUMMARY JUDGMENT

the acting profession. By definition, actors portray various roles–they might drive a car, play a nurse saving a life, or act as a lawyer in court. But these portrayals do not make them subject to wage order requirements for those professions, even if they need to study the roles. Likewise, an actor may write a biography, catalog performance history, and answer interview questions, yet such activities do not make them a secretary nor a journalist.

### 4. *Photographs Are Part of Motion Picture Production*

An actor does not become a model simply because photographs are taken of her on film sets. *See Cash v. Winn*, 205 Cal.App.4th 1285, 1299, 140 Cal. Rptr. 3d 867, 877 (2012) (personal attendant did not fall outside the exemption when engaging in health care related tasks); *Ladore v. Ecolab Inc.,* 2013 WL 12246340, at *4 (C.D. Cal. Jan. 22, 2013) (exterminator did not become a "driver" under regulations because he drove to a job site - the task was incidental to his duties).

Plaintiff continued to be a professional actor while photographed because she was only photographed as the subject of VXN's movies. In contrast, when a retailer hires a model, it creates a superficial association between the model and its retail goods. Those photos showcase the retailers' goods, not the model herself. *See Hill v. Walmart Inc*., 32 F.4th 811, 821 (9th Cir. 2022). VXN would not use a photo of a random model on the cover of its movies – it always uses a photo of a featured actor in the movie.[7]

Photographs of Plaintiff were only taken by VXN for the common motion picture industry purposes of: (1) creating motion pictures[8]; UF 9 (2) displaying

---

[7] Indeed, Plaintiff may have a claim against VXN if VXN used a photo of someone else to advertise her movies. *Smith v. Montoro*, 648 F.2d 602, 607 (9th Cir. 1981) (finding actor had a claim because movie advertisements advance an actor's career).

[8] *See Bloom v. Make-Up Artists & Hairstylists Loc*. 706, No. CV 99-3408-AHM, 1999 WL 909817, at *2 (C.D. Cal. Aug. 18, 1999). ("These photographs are

MOTION FOR SUMMARY JUDGMENT

motion pictures (i.e. on DVD covers)[9]; UF 10 (3) advertising the motion pictures[10]; UF 11 and (4) marketing Plaintiff as a professional actor for the dual purpose of promoting Plaintiff's acting career and drawing fans to the movies she is in.[11] *Id.* All the photographs are extensions of the motion picture production process. *See Jules Jordan Video, Inc. v. 144942 Canada Inc*., 617 F.3d 1146, 1154 (9th Cir. 2010) ("[T]he covers of the DVDs are likely component parts of the copyrighted DVD[.]") (citing Nimmer on Copyright § 2.04); *Triangle Publ'ns, Inc. v. Knight–Ridder Newspapers, Inc.,* 445 F.Supp. 875 (S.D. Fla. 1978) (cover considered copyrightable component part and copyright of underlying work extends to cover); *see also* 17 U.S.C. § 106(5) (including "individual images of a motion picture or other audiovisual work" under the display right).

Still photos from motion pictures are often considered iconic and connect the actor to the movie. *See Hoffman v. Cap. Cities/ABC, Inc*., 255 F.3d 1180, 1182–83 (9th Cir. 2001) (describing a "memorable" still of Dustin Hoffman in the movie Tootsie). Plaintiff posted stills on her social media so her fans would know she is acting in Defendants' films. The Vixen Angel Showcase was to shine a spotlight on Plaintiff as a professional actor. This was Plaintiff's intention

---

commonly referred to in the industry as 'continuity photographs,' used by hair and make-up artists in an ongoing production to replicate an actor's look from week to week.").

[9] *See Jules Jordan*, 617 F.3d at 1154.

[10] *Morgan Creek Prods., Inc. v. Cap. Cities/ABC, Inc*., 1991 WL 352619, at *1 (C.D. Cal. Oct. 28, 1991) ("Plaintiff's advertising campaign for YOUNG GUNS included a widely distributed poster featuring a photograph of the six young protagonists in costume with the film's title.")

[11] *Ericson v. Playgirl, Inc*., 73 Cal. App. 3d 850, 852, 140 Cal. Rptr. 921, 922 (Ct. App. 1977) ("The breach of contract arose from the following circumstances: plaintiff John Ericson, in order to boost his career as an actor, agreed that defendant Playgirl, Inc. could publish without compensation as the centerfold of its January 1974 issue of Playgirl photographs of Ericson posing naked at Lion Country Safari.").

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

entering the industry.[12] It is part of the motion picture process and benefits Plaintiff as a professional actor. "[Professional actors] are built, in part, through being prominently featured in popular films and by receiving appropriate recognition in film credits and advertising." *Smith v. Montoro*, 648 F.2d 602, 607 (9th Cir. 1981). Because Plaintiff was photographed with VXN only in her capacity as a professional actor, as part of the movie making process, the professional actor exemption should apply to Plaintiff's claims.

**B.    Plaintiff Was an Independent Contractor**

**1.    *Borello Governs Plaintiff's Employment Status***

If Plaintiff were a VXN employee, IWC 12's PA Exemption would apply entitling VXN to summary adjudication on Plaintiff's claims for overtime, wage statements, plus meal and rest periods. Any portion of her waiting time penalty claim based on overtime would also be subject to summary adjudication. However, to the extent her claim involves unpaid regular wages, it arises not from the wage order, but from a Labor Code provision cited in Section 203.[13]

California's worker classifications tests hinge on whether claims are rooted in a wage order or derived solely from the Labor Code. The ABC test applies to wage order-based claims, while the test from *S.G. Borello & Sons, Inc. v. Dep't of Indus. Rels.*, 48 Cal.3d 341 (1989), applies outside of the wage order context. *See Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 472 (9th Cir. 2023) (holding that *Borello* non-wage order claims); *see also Garcia v. Border Transp. Grp., LLC*, 28 Cal.App.5th 558, 570–71 (Ct. App. 2018)) (applying *Borello* to non-wage order claims).

---

[12] When asked why Plaintiff transitioned from a model to an adult actress she stated: "I was interested in having an appearance more relevant." UF ___

[13] "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.6, 201.8, 201.9, 202, and 205.5 . . . ." Cal. Lab. C. § 203.

MOTION FOR SUMMARY JUDGMENT

Plaintiff asserts her waiting time penalty claim under Labor Code §§ 201, 202, and 203, *not* a wage order. [**Dkt. 53** at ¶ 112–117]. IWC 12 does not address final wage payments or waiting time penalties. *Cf. Salter v. Quality Carriers, Inc.*, 2021 WL 5049054 (C.D. Cal. 2021) (finding *Borello* applicable to waiting time penalty claims as Wage Order No. 9 does impose such penalties); *Garcia*, 28 Cal.App.5th at 571–72 (waiting time penalties are not covered by wage orders and are governed by *Borello*). Thus, the *Borello* test applies to determine Plaintiff's employment classification.

Under *Borello*, "the principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." 48 Cal.3d 341, 350. Additional factors include: (a) the right to discharge at will, without cause; (b) whether the worker operates a distinct occupation or business; (c) the level of supervision exercised by the principal; (d) the skill required in the occupation; (d) which party provides the tools, equipment, and workspace; (e) the length of the engagement; (f) the method of payment, whether by the time or by the job; (g) whether the work is part of the principal's regular business; and (h) whether the parties intended an independent contractor relationship. *Id*.

"All factors need not point in one direction for a court to rule as a matter of law about a worker's proper classification." *Cotter v. Lyft, Inc.,* 60 F. Supp. 3d 1067, 1077 (N.D. Cal. 2015); *Arnold v. Mut. of Omaha Ins. Co.*, 135 Cal.Rptr.3d 213, 221 (Cal. App. 2011) (noting that, even if all factors are not aligned, "summary judgment is nevertheless proper" when the factors are "considered as a whole" to establish an individual as an independent contractor).

### 2. *The Control Factor Favors an Independent Contractor Designation.*

"[W]here an employer is more concerned with the quality of the result

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

rather than the manner in which the work is done, that is evidence of an independent-contractor relationship." *See Hennighan v. Insphere Ins. Sols., Inc.*, 38 F. Supp. 3d 1083, 1098 (N.D. Cal. 2014), *aff'd*, 650 F. App'x 500 (9th Cir. 2016) (citing *Missions Ins. Co. v. Workers' Comp. Appeals Bd.*, 123 Cal.App.3d 211, 224 (Ct. App. 1981). Conversely, an employer-employee relationship exists when the employer has the right to direct both *how* the work is done *and* its result. *Id.* "But this rule requires that the right to exercise complete or authoritative control, rather than mere suggestion as to detail, must be shown." *Id.* Here, the evidence shows that Defendants controlled only the results of Plaintiff's services as a professional actress, not the manner or means of her performance.

### i.   *Plaintiff Was Not Subject to "At-Will" Discharge.*

Plaintiff's Agreements allowed termination only "for Cause." UF 59. The right to terminate at-will without cause constitutes "[s]trong evidence in support of an employment relationship." *Tieberg v. Unemployment Ins. App. Bd.*, 2 Cal.3d 943, 949 (1970). Under the Agreements, "Cause" included Plaintiff's "*uncured material breach*" and "unreasonable unavailability." UF 5**9**. The opportunity to cure contradicts at-will termination and is strong evidence of an independent contractor relationship. *See Ayala* v. *Antelope Valley Newspapers, Inc*., 59 Cal.4th 522, 531 (2014) (the "strongest evidence of the right to control" is the hirer's ability to discharge without cause, as termination power is a means of control). Here, Plaintiff was free to make her own creative choices without fear of reprisal. VXN's termination of Plaintiff was due to repeated failures to meet specific contractual commitments, not an attempt to control her performance. The Termination Notice referenced a "material breach" arising from *two* last-minute cancellations, which caused VXN significant losses due to unrecoverable production costs. UF 62. VXN's willingness to reschedule in the first instance shows Plaintiff's discretion over availability and participation, supporting an

MOTION FOR SUMMARY JUDGMENT

independent contractor designation. *See Urena v. Earthgrains Dist.*, 2017 WL 4786108 * 5-6 (S.D. Cal. 2017) (contractual "right to cure" "is consistent with an independent contractor relationship").

### ii.   *Plaintiff Controlled Her Own Work Schedule.*

Plaintiff had full control over whether and when to perform for VXN. VXN scheduled work dates through Plaintiff's agents, and if her agent indicated she was unavailable, VXN had no ability to command her appearance. *See Lawson v. Grubhub, Inc.*, 302 F.Supp.3d 1071, 1084 (N.D. Cal. 2018) (delivery driver deemed independent contractor partly due to "complete control of his work schedule"); *State Comp. Ins. Fund v. Brown*, 32 Cal.App.4th 188, 202 (truck drivers held as independent contractors where they were "entirely free to accept or reject an assignment without reprisal."). The Agreements did not mandate a minimum number of scenes, allowing Plaintiff to accept as many or few as she chose. *See Desimone v. Allstate Ins. Co.*, 2000 WL 1811385, at *13 (N.D. Cal. 2000) (insurance agents considered independent contractors where they "exercise[d] discretion as to which promotions to participate in or whether to participate at all.").

### iii.   *Defendants' Control Was Results-Oriented.*

The control factor must be evaluated in light of the nature of the work and the relationship between the parties. *See*, *Poland v. United States Att'y Gen.*, 2012 WL 13001837, at *11 (C.D. Cal. 2012) ("[A]ny control exercised" must be "considered in light of the work performed and the industry at issue.") (quoting *Alberty–Velez v. Corporacion de Puerto Rico Para La Difusion Publica*, 361 F.3d 1, 9 (1st Cir. 2004). Film production, as "one of the most collaborative types of [creative] works," involves contributions from various parties: directors, costumers, and, of course, actors. *See* F. Jay Dougherty, *Not A Spike Lee Joint? Issues in the Authorship of Motion Pictures Under U.S. Copyright Law*, 49 UCLA L. REV. 225, 228 (2001); *cf. Garcia v. Google, Inc*., 786 F.3d 733, 742

MOTION FOR SUMMARY JUDGMENT

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

(9th Cir. 2015) (discussing creative contributions of casts). Though creative collaborations entail some degree of oversight, Plaintiff retained control over her performances. VXN only maintained its "right to control the results" of her performances, not "the means by work is accomplished." *See Ortolivo v. Precision Dynamics Int'l, LLC,* 2023 WL 7440249, at *5 (N.D. Cal. Nov. 9, 2023) (quoting *Bowerman*, 60 F.4th 459). Under California law, "the right to control results" encompasses "the right to inspect, the right to make suggestions or recommendations as to details of the work, [and] the right to prescribe alterations or deviations," none of which "chang[e] the relationship from that of owner and independent contractor." *Ortolivo*, 2023 WL 7440249 at *5 (citations omitted); *see Mission Ins. Co*., 123 Cal.App.3d 211, 221–22 (security technician was not an employee merely because company "prescribed performance standards").

Plaintiff's hyperbole that Defendants controlled "every aspect" of her body and performance [**Dkt. 53**, at ¶5] is refuted by evidence. Her Agreements are "silent on how [she] is to perform [her] role." *Cf. Ortolivo*, 2023 WL 7440249 at *5. Plaintiff's performances were her creative domain–outside of typical collaboration with directors and crew, VXN did not train or provide documents instructing her performance. If unsatisfied with her performance, VXN could not compel Plaintiff to return to work, and never attempted to do so. UF 58.

Moreover, appearance requirements in the Agreements merely reflect Defendants' control over the final product, *i.e.*, *Plaintiff's recorded on-screen appearance*. Requirements to "maintain [her] physical appearance" and comply with "reasonable personal grooming requests" are quality control measures to ensure films meet VXN's standards. As VXN's Casting Director testified, "all the things tend to revolve around the appearance of your principal actress." UF 94. Outside of the film industry, strict appearance standards may indicate control

MOTION FOR SUMMARY JUDGMENT

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

beyond that necessary to achieve results. For example, a dress code for delivery drivers bears no logical relation to the "timely and professional delivery of packages" and thus may indicate employment. *See, e.g., Alexander v. FedEx Ground Package System, Inc*., 765 F.3d 981, 990 (9th Cir. 2014); *Ruiz v. Affinity Logistics Corp*., 654 F.3d 1093, 1101 (9th Cir. 2014) (finding requisite control where the company managed "every exquisite detail" of the drivers' appearance, down to the "color of their socks and the style of their hair"). Here, however, appearance requirements logically relate to the end-product of Plaintiff's services. Films involve substantial investment and planning, and producers rely on continuity of an actor's appearance to fulfill their creative vision. Interpreting continuity of appearance as excessive control would, in the context of film production, "result in all actors being classified as employees, regardless of other aspects of the relationship." *Alberty–Velez*, 361 F.3d 1, at 9.

        *iv.*    *Exclusivity Does Not Convert Plaintiff into an Employee.*

Plaintiff was free "to provide similar services [to other businesses] and maintain a clientele" of her own during the term of the Agreements. *Cf.* Cal. Lab. Code § 2776(a)(7). The 2021 Agreement explicitly stated that Plaintiff's services were non-exclusive. UF 80. While VXN retained a first-right-of-refusal for Plaintiff's first anal scene, this did not restrict her from performing similar services elsewhere. *Id.* The 2020 Agreement limited Plaintiff's services to VXN exclusively, but only as to VXN's *direct* competitors. UF 32. This restriction did not prevent Plaintiff from working for non-competing entities or pursuing her own business activities.  Plaintiff was, in fact, able to–and did–perform similar services on other platforms, including Kenzieland.com, during the 2020 Agreement term. UF 65. *See Desimone*, 2000 WL 1811385, at *14–15 (insurance agents deemed independent contractors despite being "captive agents" barred from working for competitors without approval, as they could "engage in any

MOTION FOR SUMMARY JUDGMENT

other non-competing business… subject to certain restrictions”); *Mission Ins. Co.*, 123 Cal.App.3d at 224 (restriction on performing services for other companies deemed “of little significance” as plaintiff “was not prohibited from engaging in any other kind of business or commercial activity”).

### 3. Plaintiff Was Engaged In a Distinct Occupation and Business

A worker’s engagement in a distinct occupation or business supports independent contractor status. *Hennighan,* 38 F. Supp. 3d at 1102. Defendants need only “present evidence that [Plaintiff] established a business independent of her relationship with [Defendants].” *Sportsman v. A Place for Rover, Inc*., 537 F. Supp. 3d 1081, 1099 (N.D. Cal. 2021).

Before and during her work with Defendants, Plaintiff independently operated a successful adult entertainment business centered on her on-screen performances, the same services she provided to VXN. UF 65. She claimed to have earned  up to $50,000 per month through these ventures before contracting with VXN. Plaintiff’s website, “Kenzieland,” sold access to adult films that she both produced and starred in, often alongside established actors. As executive producer, Plaintiff hired and coordinated actors, production, and post-production. While under contract with VXN, she released at least 23 titles on Kenzieland, actively marketing her brand through her website and social media, entirely independent of VXN.

Plaintiff did not just perform on other platforms, *cf. Lawson v. Grubhub, Inc.*, 665 F.Supp.3d 1108, 1116 (N.D. Cal. 2023), she offered her services to various producers. In 2021, she appeared in at least 14 films for other studios, while in 2022, she starred in 5 VXN films and at least 68 for other studios. Although she did not use traditional advertisements, she promoted her services through agents, publications, and social media before, during, and “after the parties’ relationship ended.” *See Ortolivo*, 2023 WL 7440249 at *7 UF 64.

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

MOTION FOR SUMMARY JUDGMENT

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

Moreover, Plaintiff's business was directly competitive with Defendants', as her website featured titles with established talent–a hallmark of her indepdnent, competitive business. *See Haitayan v. 7-Eleven, Inc,* 2021 WL 4078727, at *14–15 (C.D. Cal. Sept. 8, 2021), *aff'd sub nom.*, 2022 WL 17547805 (9th Cir. Dec. 9, 2022) (holding that Plaintiffs were independent contractors as a matter of law where "[s]ome Plaintiffs own or owned competitive businesses", and "held themselves out as business owners").

### 4.    *Plaintiff Is Engaged In A Skilled Profession.*

"[C]ourts should apply the [*Borello*] test with an eye towards the purposes those statutes were meant to serve, and the type of person they were meant to protect", i.e. "unskilled, lower-wage employees–and the corresponding ability of employers to dictate the terms and conditions of the work." *Cotter*, 60 F. Supp. 3d at 1074–75. This means "[w]here no special skill is required of a worker, that fact supports a conclusion that the worker is an employee instead of an independent contractor." *Harris v. Vector Mktng. Corp.*, 656 F.Supp.2d 1128, 1139 (N.D. Cal. 2009).

Here, Plaintiff is the *opposite* of an unskilled lower worker, who must accept the terms and conditions dictated by an employer. Her talent agency negotiated and re-negotiated her Agreements. As a "decorated and well-known adult film actress," Plaintiff appeared in over 50 films and television shows, while earning hundreds of thousands of dollars per year. *see Alberty-Velez,* 361 F.3d 1, at 7 ("[A] television actress is a skilled position requiring talent and training not available on-the-job."); *cf. Antelope Valley Press v. Poizner*, 162 Cal.App.4th 839, 855 ("Delivering papers requires no particular skill.").

### 5.    *Plaintiff Was Paid On a Per-Scene Basis*

Payment by the hour indicates an employment relationship, while payment by the job supports an independent contractor relationship. *Hennighan*, 38

MOTION FOR SUMMARY JUDGMENT

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

F.Supp.3d at 1104. Here, VXN paid Plaintiff a contractually negotiated rate per scene following the completion of each scene, regardless of the time required for filming. *see Alberty-Velez,* 361 F.3d. 1 at 8 (television actress "received a lump sum fee for each episode. Her compensation was based on completing the filming, not the time consumed."); *cf. Estrada v. FedEx Ground Package Sys., Inc*, 154 Cal.App.4th 1, 12 (Ct. App. 2007) (finding that drivers paid a weekly rate, rather than by the job weighed in favor of employee status). Since the Agreements did not specify a minimum number of scenes, Plaintiff had full control over the Agreements' total value–she could accept as many or as few scenes as she wished. *See Borello*, 48 Cal.3d 341, at 355 (citing an "alleged employee's opportunity for profit or loss" as a secondary factor).

**6.      *The Instrumentalities And Tools Factor is Neutral.***

Courts must assess which tools are essential Plaintiff's specific duties, rather than all equipment needed for a collaborative project. *See*, e.g., *Alberty-Velez*, 361 F.3d 1, at 8 ("Others provided equipment for filming and producing the show, but these were not the primary tools that Alberty used to perform her particular function. If we accepted this argument, independent contractors could never work on collaborative projects because other individuals often provide the equipment required for different aspects of the collaboration."). For Plaintiff's acting services, the relevant "tools" for a control analysis are those used to produce her on-camera appearance, such as wardrobe, makeup, and intimacy aids.

Yet, VXN's ownership and provision of tools holds little significance, as Plaintiff maintained substantial control to select co-actors, her director, and collaborating on the film's concept. Thus, the provision of wardrobe, makeup, and intimacy aids was a results-oriented collaboration to fulfill VXN and Plaintiff's shared vision. Even if the inquiry were narrowed to control via tool provision, Plaintiff retained and exercised the right to approve VXN-provided

**MOTION FOR SUMMARY JUDGMENT**

wardrobe, intimacy aids, and makeup. Finally, the relatively minor value of these tools does not indicate control. *See Tieberg*, 2 Cal.3d 943, 953–54 ("[T]he factor of ownership of tools is of little importance where the service to be performed is an intellectual endeavor.").

### 7. The Part-of-Regular Business Factor Is Neutral.

This factor aims to clarify the control dynamic between putative employees and employers. Defendants do not dispute that Plaintiff's services are integral to their business. However, the significance of this factor is reduced when the work performed is a professional service. *See Borello*, 48 Cal.3d 341, 408–09 ("The modern tendency is to find employment when the work being done is an integral part of the regular business of the employer, and when the worker, relative to the employer, does not furnish an independent business or professional service.") (internal citations omitted). Here, Plaintiff provided a professional service to Defendants. Unlike the farmworkers in *Borello*, Plaintiff was not reliant on Defendants "for [her] subsistence and livelihood." *Id.* at 358. Plaintiff marketed her services through professional representatives and operated her own businesses. Thus, while Plaintiff's work was integral to Defendants' business, in the context of the relationship as a whole, this factor has limited relevance to the core issue of the degree of control Defendants exercised over Plaintiff. *See Borello*, 48 Cal.3d at 353 (holding that the independent contractor test must be applied with consideration of "the remedial purpose of the statute, the class of persons intended to be protected, and the relative bargaining positions of the parties").

### 8. Both Plaintiff and VXN Understood and Relied on Plaintiff's Status as an Independent Contractor.

Although the label placed by the parties is not dispositive , an agreement "expressly stating that the relationship created is that of independent contractor

MOTION FOR SUMMARY JUDGMENT

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

should not be lightly disregarded when both parties have performed under the contract and relied on its provisions." *Missions Ins. Co.*, 123 Cal.App.3d at 226. Here, the Agreements, as negotiated by Plaintiff's agents, explicitly state that Plaintiff and VXN were entering into an independent contractor relationship.

Plaintiff's pattern of tax filings indicates that her agents negotiated for her services to be provided as an independent contractor in part because she sought the tax benefits of operating as a business. *See Beaumont–Jacques v. Farmers Group, Inc.*, 217 Cal.App.4th 1138, 1145 (2013) (summary judgment granted where plaintiff identified as self-employed in tax returns and deducted business expenses); *Missions Ins. Co.*, 123 Cal.App.3d 211, 224 (finding plaintiff, who identified as self-employed on tax returns, an independent contractor as a matter of law); *see also Bowerman v. Field Asset Servs., Inc.*, 2013 WL 6057043, at *2–3 (N.D. Cal. 2013) (self-employment taxes and Schedule Cs relevant to "misclassification issues"); *Desimone*, 2000 WL 1811385, at *16 (filing taxes as an independent contractor weighed in favor independent contractor classification).

In her 2020, 2021, and 2022 tax filings, Plaintiff identified as self-employed and filed a Schedule C (Form 1040 – Profit or Loss from Business) as a sole proprietor, *but did not declare any W-2 employee income from any adult film studios.* All payments received, either personally or through an LLC, were treated uniformly for tax purposes, with all business expenses, whether as a sole proprietor or through an LLC, presented on a single return. Each Schedule C filed reported six-figure in gross income and six-figure business deductions, including thousands in business rent, "props and wardrobe," "appearance", and supplies. *See Haitayan*, 2021 WL 4078727 at *14 ("A plaintiff who exercises discretion by 'deducting . . . costs as a business expense in her personal tax returns, and, identifying herself as self-employed in those returns,' is more likely to be an

MOTION FOR SUMMARY JUDGMENT

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

independent contractor.") (quoting *Beaumont–Jacques v. Farmers Group, Inc.*, 217 Cal.App.4th 1138, 1145 (June 12, 2013). The Court should not permit Plaintiff to play both sides—claiming the tax advantages of an independent contractor while asserting employee status merely as a vehicle for her grievances. *See Pukowsky v. Caruso*, 312 N.J. Super. 171, 183–84 (App. Div. 1998) ("When it suited her advantage for tax purposes, plaintiff claimed to be an independent contractor, yet she claimed to be an "employee" when it was to her advantage to maintain a lawsuit. Judicial estoppel may not be applicable to bar her complaint, but our courts have looked askance at such dichotomy.").

## V. CONCLUSION

For the foregoing reasons, the Court should grant Summary Judgment or Summary Adjudication to Defendants.

Dated: November 12, 2024

Respectfully submitted,
KANE LAW FIRM

By:  */s/ Brad S. Kane*

Brad Kane
Trey Brown
Attorneys for Defendants
VXN Group LLC; Strike 3 Holdings, LLC; General Media Systems, LLC; and Mike Miller

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains no more than 25 pages exclusive of tables of contents and authorities in the compliance with the local rules.

**KANE LAW FIRM**
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

Dated: November 12, 2024       By:    /s/ Brad S. Kane
_____
                                        Brad Kane

## CERTIFICATE OF SERVICE

I, Brad S. Kane, hereby certify that this document has been filed on November 12, 2024, through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: November 12, 2024       By:    /s/ Brad S. Kane
_____
                                        Brad Kane

**KANE LAW FIRM**
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

MOTION FOR SUMMARY JUDGMENT