**KANE LAW FIRM**
Brad S. Kane (SBN 151547)
bkane@kanelaw.la
1154 S. Crescent Heights. Blvd.
Los Angeles, CA 90035
Tel: (323) 697-9840
Fax: (323) 571-3579

Trey Brown (SBN 314469)
trey.brown@vixenmediagroup.com
11337 Ventura Blvd.
Studio City, CA 91604

Attorneys for Defendants
VXN GROUP LLC and
MIKE MILLER

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| MACKENZIE ANNE THOMA, a.k.a. KENZIE ANNE, an individual and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>v.<br><br>VXN GROUP LLC, a Delaware limited liability company; STRIKE 3 HOLDINGS, LLC, a Delaware limited liability company; MIKE MILLER, an individual; and DOES 1 to 100, inclusive,<br><br>            Defendants. | Case No. **2:23–cv–04901 WLH (AGRx)**<br><br>**STATEMENT OF UNCONTROVERTED FACTS**<br><br>Date:           January 3, 2025<br>Time:           11:00 am or later<br>Courtroom:      9B<br><br>Complaint Filed:   April 20, 2023<br>Removed:           June 21, 2023 |

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

*(side margin)* KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

| No. | Uncontroverted Facts | Supporting Evidence |
|---|---|---|
| **Plaintiff is a Professional Actor** | | |
| 1 | VXN's movies have commercial distribution through online subscriptions to its branded websites, DVDs, third-party distributors, cable television and via international distribution channels. | Declaration of Emilie Kennedy ("Kennedy Dec.") ¶ 6 |
| 2 | All its movies are registered as motion pictures with the United States Copyright Office. It's still phtographs are not registered separately. | Kennedy Dec. ¶ 4, Ex. A |
| 3 | VXN's unique cinematic films have won many awards. | Kennedy Dec. ¶ 8 |
| 4 | VXN employs a film production team, a post-production team, a marketing team, a production accountant, and in-house film and entertainment lawyers. | Declaration of Basia Lew ("Lew Dec") ¶ 4 |
| 5 | VXN's workers compensation insurance provider classifies it as a "motion picture production company". | Declaration of Belen Burditte ("Burditte Dec.") ¶ 6 |

| 6 | VXN's "type of business" listed on the California Secretary of State Statement of Information is as "film production" | Kennedy Dec ¶ 7 |
|---|---|---|
| 7 | VXN owns state of the art motion picture production equipment. | Lew Dec. ¶ 7. |
| 8 | VXN routinely rents film locations, props, obtains film industry permits and licenses music for its films | Lew Dec. ¶ 7. |
| 9 | During motion picture productions, VXN directors or photographers take "stills" which are photographs of actors in its movies in character in various positions. | Lew Dec. ¶ 8 |
| 10 | The stills enable the actors to rehearse the scene and determine which sex scenes feel comfortable with each of the actors and the director for the films. | Lew Dec. ¶ 9 |

| | | |
|---|---|---|
| 11 | The stills are used later as covers for DVDs, thumbnails for the website and for advertising, marketing, and social media purposes to promote the movies, the actors, and the websites. | Lew Dec. ¶¶ 10-12, Ex. D-F. |
| 12 | The stills are never individually nor commercially sold separate from the movie and are only included on the websites as bonus content for subscribers with the correlating movie | Kennedy Dec. ¶ 4 |
| 13 | Taking stills on VXN's production sets accounts for only a small a small portion of the time spent making the motion picture and is dependant on the creative direction of the actors and director as they prepare to film the movie. | Lew Dec. ¶ 13, Ex. G |
| 14 | VXN contracted with Plaintiff to act in VXN's films from December 2020 to November 2022. | Declaration of Trey Brown, ("Brown Dec") ¶ 3 |
| 15 | Plaintiff starred in 18 motion pictures for VXN. | Kennedy Dec. ¶ 9 |

| 16 | In each movie Plaintiff played a specific character with speaking lines and a featured role. | Kennedy Dec. ¶ 4 |
|----|------------------------------------------------------------------------------------------------|------------------|
| 17 | Plaintiff often chose the actors she would perform with, her director, and collaborated on the film's concept. | Brown Dec. ¶ 18 |
| 18 | While VXN provided Plaintiff with wardrobe, intimacy aids, and makeup in collaboration with Plaintiff, Plaintiff retained and exercised her right to approve each item | Brown Dec. ¶ 19 |
| 19 | Her VXN showcase that ultimately was cancelled included an extensive script, 7 days of planned shooting, dozens of extra-players, and expensive locations. | Lew Dec. Ex. C |
| 20 | According to Plaintiff's IMDB, she has been an actress in over 50 films and television shows | Brown Dec. ¶ 5, Murphy Dep. 70:9-20, Exhibit 1 |

| | | |
|---|---|---|
| 21 | She has received SAG credit and is eligible to be a member (but declined because she didn't like the health care) | Brown Dec. ¶ 4, Thoma Dep 84: 7-13 |
| 22 | During the years that Plaintiff appeared in Defendants' films, she was either nominated for or won 11 awards in the industry for her appearance in motion pictures, all of which involved professional acting, and four of which involved professionally acting in VXN's films. | Kennedy Dec. ¶ 11 |
| 23 | VXN asked Plaintiff to post stills on her social media so her fans would know she is acting in Defendants' films | Lew Deposition, p. 104-106 |
| 24 | The Vixen Angel Showcase was to announce to the industry and the world that Plaintiff was a star. | Kennedy Dec. ¶ 12. |
| 25 | When asked why Plaintiff transitioned from a model to an adult actress she stated: "I was interested in having an appearance more relevant." | Brown Dec.¶ 4 Ex. G Thoma Dep. 23:20-21 |

| 26 | Plaintiff's talent agent Ryan Murphy admitted Plaintiff considered herself a "professional actress". | Kona Depo 67-19-20. |
|---|---|---|
| 27 | The "professional actor" exemption was adopted in 1957. | Brown Dec., ¶ Legislative Intent Service Inc. p. 3. |
| 28 | There was discussion of the difficulty of defining an "extra player" as distinguished from an "actor" or "actress" despite the fact that the distinction is well known to those in the industry." | Brown Dec. ¶ Legislative Intent Service Inc. p. 15. |

**Plaintiff is an Independent Contractor**

| 29 | Plaintiff's relationship with VXN was governed by two contracts, with each contract amended by an addendum (collectively, the "Agreements"). | Brown Dec., ¶ 3 |
|---|---|---|
| 30 | Plaintiff's talent agents negotiated her contracts. | Brown Dec., ¶ 5, Ex. G Thoma Dep. 88:14–90:20. |

| 31 | The term of the first contract began on November 11, 2020 and renewed for 6 months upon Plaintiff's completion of each scene | Brown Dec., ¶ 3 |
|---|---|---|
| 32 | In April of 2021, Plaintiff's talent agent renegotiated the first contract so that it terminated on August 28th, 2021. | Brown Dec., ¶ 3 |
| 33 | Upon the expiry of the first contract, Plaintiff and VXN entered a second contract with a 12-month term ending on August 29, 2022. | Brown Dec. ¶ 3, Ex. E |
| 34 | In June 2022, the parties amended the second contract by extending the term to December 31, 2023 | Brown Dec. ¶ 3, Ex. C |
| 35 | The Agreements explicitly state that Plaintiff is an independent contractor and that she will not be deemed an employee of VXN | Brown Dec. ¶ 3, Ex. E |

| 36 | The Agreements provided for VXN to pay Plaintiff on a per-scene basis | Brown Dec. ¶ 3, Ex. E |
|---|---|---|
| 37 | Before each scene, Plaintiff submitted a form W-9 to VXN. | Brown Dec. ¶ 25, Lew Dep. 132:2–7 |
| 38 | The W-9s submitted by Plaintiff indicated various payees, including Plaintiff herself, Kenzieland LLC, and Lola March LLC. | Brown Dec. ¶ 23 |
| 39 | VXN paid Plaintiff the relevant contractual amount following the completion of each scene | Burditte Dec. ¶ 19. |
| 40 | VXN issued Plaintiff form 1099s reflecting her gross compensation for the 2020, 2021, and 2022 tax years | Burditte Dec. Ex. B |

| 41 | Plaintiff never received a Form W-2 from VXN. | Brown Dec. ¶ 24 |
|----|-----------------------------------------------|-----------------|
| 42 | The Agreements required Plaintiff to "maintain [her] physical appearance" and to "submit to the reasonable personal grooming requests of [VXN], as such may be considered a norm in the adult film industry." | Brown Dec ¶ 3 Exs. B, D at ¶ 7.2. |
| 43 | The purpose of these requirements was to allow VXN to properly plan ahead for film shoots. | Brown Dec. ¶ 22, Mosny Dep 57:22–25. |
| 44 | Another purpose was to ensure the safety of other performers, including against infectious diseases and other complications from cosmetic surgery. | Brown Dec. ¶ 22, Mosny Dep 141:22–146:24; [VXN #016975–76 (Moz-Kenzie Texts)] |
| 45 | Plaintiff had complete discretion as to what days she worked for VXN. | Brown Dec. ¶ 4 Ex. G Thoma Dep 154:2–4. |

| 46 | To schedule Plaintiff for a film shoot, VXN's casting director asked Plaintiff's agent for Plaintiff's available dates or proposed dates for her agent to accept or decline on Plaintiff's behalf | Brown Dec. ¶ 5 Ex H. Murphy Dep. 48:7–13, 87:10–22, 172:17–21; ¶ 22 Mosny Dep at 52:3–53:2. |
|---|---|---|
| 47 | Plaintiff's agent testified that if Plaintiff was not available, VXN had no power to force her appearance. | Brown Dec. ¶ 5 Ex H Murphy Dep 96:4–7, 104:1–14 |
| 48 | Plaintiff was free to decline a proposed date for any reason or no reason. | Brown Dec. ¶ 5 Ex H Murphy Dep. at 68:13–69:23. |
| 49 | Plaintiff's contract provided for mutual approval by Plaintiff and VXN over the director and castmembers for each scene. | Brown Dec. ¶ 3 Ex B and D |
| 50 | Plaintiff had the right to decline a scene if she didn't want to work with a certain director or castmember | Brown Dec. ¶ 5 Ex G Murphy Dep. 68:12–69:13 |

| 51 | Prior to most of her scenes, VXN provided Plaintiff with a script for her review. | Kennedy Dec. ¶ 5, Ex. B |
|---|---|---|
| 52 | If she didn't approve of the script, Plaintiff was free to suggest changes to the director, or decline the scene altogether | Brown Dec. ¶ 4 Thoma Dep., at 96:3–19; Murpy Dep. 69:15–20. |
| 53 | Plaintiff had a preexisting relationship with a director, Chris Applebaum, and suggested him to direct her first scene. | Brown Dec. ¶ 4 Thoma Dep. 58:4–60:1, 93:5–7 |
| 54 | Applebaum and Plaintiff jointly proposed, and VXN accepted, Plaintiff's preferred co-stars for her first scene. | Brown Dec. ¶ 4 Thoma Dep. 93:9–23; [VXN #017306–09(Talent Picks Email)]. |
| 55 | Applebaum characterized Plaintiff's engagement with VXN as a "collaboration" and expressed excitement that Plaintiff's and VXN's "brands are aligned[.]" | Brown Dec. ¶ [VXN 017358 Kenzie Anne x Vixen Collab-Intro Welcom Email_Redacted.pdf]. |

| 56 | Applebaum worked with VXN staff to plan the creative elements of Plaintiff's first scene. | Brown Dec. ¶ [VXN #017147–50 12.7.2020 EMAIL-VXN STYLING_Kenzie x Vixen_Redacted.pdf]. |
|----|----|----|
| 57 | VXN did not provide Plaintiff with any training or documents instructing her on how to perform. | Brown Dec. ¶ 4 Ex G Thoma Dep 95:13–19 |
| 58 | VXN never requested or forced Plaintiff to reshoot a scene due to due to dissatisfaction with her performance. | Brown Dec. ¶ 4 Thoma Dep. 96:20–97:15. |
| 59 | The Agreements have identical for-cause termination provisions and define "Cause" to include Plaintiff's "uncured material breach" and "unreasonable unavailability." | *Id* |
| 60 | The Agreements provided Plaintiff with the opportunity to cure a breach | *Id.* |

| 61 | In a Notice of Termination dated September 28, 2022 ("Termination Notice"), VXN terminated Plaintiff's contract on a for-cause basis, citing her "unreasonable unavailability." | Brown Dec. ¶ 15 Mosny Dep Ex. 6. |
|---|---|---|
| 62 | The Termination Notice noted that (i) in June of 2022, Plaintiff cancelled "just days before" a scheduled scene; (ii) in August of 2022, Plaintiff again cancelled "just days before" a scheduled scene, causing VXN to incur losses; and (iii) VXN was terminating "to avoid incurring additional damages" due to Plaintiff's "failure to appear on scheduled shoot dates" | Brown Dec. ¶ 15 Mosny Dep Ex. 6. |
| 63 | Prior to contracting with VXN, Plaintiff was independently established and earned "roughly $50,000 per month" in adult entertainment through camming, i.e., streaming live video of herself engaged in erotic activity over various websites. | Brown Dec. ¶ 4 Thoma Dep, 17:24–18:2; Ex. 5, at p.10–11; Thoma Depo, at 19:14, Ex. 5, at p.10. |
| 64 | Plaintiff utilized several different streaming platforms to exploit her camming content, including Streamates.com, OnlyFans.com, and Chaturbate.com | Brown Dec. ¶ 4, Thoma Dep 18:3–25. |
| 65 | Before contracting with VXN, Plaintiff also launched a website entitled "Kenzieland" where she sold access to self-produced pornographic films. | Brown Dec. ¶ 4 Thoma Dep 63:14–16; 68:4–13, Ex. 5 at 12–13 |

| 66 | A news article featuring an interview of Plaintiff regarding her career described Kenzieland as an "elaborate website featuring solo masturbation scenes along with hookups between [Plaintiff] and established talent . . .." | Brown Dec. ¶ 4 Thoma Dep, Ex. 5 at 20. |
|---|---|---|
| 67 | In the same article, Plaintiff described Kenzieland as "my porn channel. It's my favorite project. It's my baby. I want it displayed everywhere." | Brown Dec. ¶ 4 Thoma Dep Ex. 5 at 20. |
| 68 | Plaintiff formally incorporated Kenzieland LLC as a Wyoming limited liability company on April 30, 2021. | Brown Decl., at ¶ __, Ex. __. |
| 69 | Plaintiff testified that prior to that date, she personally ran "Kenzieland, my business, without an LLC". | Brown Dec. ¶ 4 Thoma Dep 151:23. |
| 70 | Plaintiff agreed that Kenzieland was an active endeavor prior to its formal incorporation | Brown Dec. ¶ 4 Thoma Dep 62:1–11. |

| 71 | Plaintiff hired Applebaum to shoot and facilitate the editing of her adult film concepts | Brown Dec. ¶ 4 Thoma Dep 62:21–22. |
|---|---|---|
| 72 | Plaintiff performed creative director and executive producer duties on all Kenzieland films | Brown Dec. ¶ 4 Thoma Dep at 65:9–25 |
| 73 | In that capacity, she had control over storylines, scripts, and filming locations, in addition to booking talent and performing. | Brown Dec. ¶ 4 Thoma Dep, Ex. 4 at p.5. |
| 74 | Plaintiff cast well-known professional adult film actors to appear in Kenzieland films. | Brown Dec. ¶ 4 Thoma Dep 72:14–18, 73:12–21, 74:9–11. |
| 75 | Plaintiff did not obtain written agreements with Kenzieland actors, nor did she pay them any money or wages in exchange for their acting services | Brown Dec. ¶ 4 Thoma Dep 70:14–71:4 |

| | | |
|---|---|---|
| 76 | Revenue generated by the films was used to pay production crew hired by Plaintiff. | Brown Dec. ¶ 4 Thoma Dep 68:14–69:3. |
| 77 | In 2021, while under contract with Defendants, Plaintiff produced and released at least 23 films on Kenzieland.com. | Brown Dec. ¶ 4 Thoma Dep 69:4–14, 70:7–8; Ex. 1. |
| 78 | Prior to and during her contract with VXN, Plaintiff actively marketed Kenzieland to the public. | Brown Dec. ¶ 4 Thoma Dep 62:15 |
| 79 | Plaintiff advertised and promoted her business by creating dedicated Kenzieland profiles on Instagram and Twitter and posting content on both the Kenzieland profiles and her personal profiles to attract potential customers to Kenzieland.com. | Id. 86:1–25. |
| 80 | While under contract with VXN, Plaintiff also provided acting services to numerous other mainstream and adult film studios | Id. at 79:8–17, Murphy Depo, at 44:18–48:6, 57:1–7, 109:22–110:5, 175:18–23, Ex. 1. |

| 81 | For example, in 2021, Plaintiff appeared in at least 14 separate films for studios other than VXN, including Cherry Pimps, Jules Jordan, Penthouse, Playboy, and Brazzers. | Brown Decl. at ¶ 22 |
|---|---|---|
| 82 | Plaintiff testified that 2022 was her most active year performing in adult films. | Brown Dec. ¶ 4 Thoma Dep 79:8–80:9. |
| 83 | In 2022, Plaintiff appeared in 5 films released by VXN, whereas she appeared in no fewer than 68 films for other studios | Brown Decl. at ¶ 22 |
| 84 | In addition to Kenzieland LLC, Plaintiff formed Lola March LLC in January 2022 | Brown Decl., ¶ 23 |
| 85 | Plaintiff formed Lola March LLC expressly to file her taxes as an independent contractor. | Brown Dec. ¶ 4 Thoma Dep 127:15–17. |

| 86 | Plaintiff took business deductions related to Lola March LLC on her taxes. | Id. at 128:5–17. |
|---|---|---|
| 87 | In her personal tax filings for each of 2020, 2021, and 2022, Plaintiff identified as self-employed and filed a Schedule C (Form 1040 – Profit or Loss from Business) as a sole proprietor | Brown Decl. ¶ 12 |
| 88 | Plaintiff did not declare any W-2 employee income from any of the studios for which she performed in 2021 or 2022. | Brown Decl., at ¶ 10 Ex. Q Lerner Depo, at 39:1–11. |
| 89 | On her 2020 Schedule C, Plaintiff claimed $149,867 in gross income, and claimed $124,000 in business deductions, including $50,400 for business rent, $25,000 for "props and wardrobe," $3,600 for supplies, and $7,200 for insurance. | Brown Dec. ¶ 12 |
| 90 | On her 2021 Schedule C, Plaintiff claimed $317,665 in gross income, and claimed $250,055 in business deductions, including $59,200 for business rent, $30,590 for "props and wardobe," $59,900 for "appearance," and $28,710 for supplies. | Brown Dec. ¶ 13 |

| 91 | On her 2022 Schedule C, Plaintiff claimed $318,689 in gross income, and claimed $228,428 in business deductions, including $54,000 in business rent, $17,070 for "props and wardobe," $16,800 for "appearance," and $66,379 for "production." | Brown Dec. ¶ 14 |
|---|---|---|
| 92 | All payments Plaintiff received, either individually or through an LLC, were treated the same for tax purposes | Brown Dec. ¶ 10 Lerner Dep 25:3–15. |
| 93 | Likewise, all Plaintiff's business expenses, whether incurred as a sole proprietor or through an LLC presented on a single return | Id. at 45:7–13. |
| 94 | VXN's Casting Director testified, "all the things tend to revolve around the appearance of your principal actress." | Brown Dec. ¶ 22 Mosny Dep at 57:22–25). |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Brad Kane
Trey Brown
Attorneys for Defendants
VXN Group LLC; Strike 3 Holdings,
LLC; General Media Systems, LLC;
and Mike Miller

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains no more than 25 pages exclusive of tables of contents and authorities in the compliance with the local rules.

Dated: November 12, 2024        By:    /s/ Brad S. Kane
                                        Brad Kane

## CERTIFICATE OF SERVICE

I, Brad S. Kane, hereby certify that this document has been filed on November 12, 2024, through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: November 12, 2024        By:    /s/ Brad S. Kane
                                        Brad Kane

**KANE LAW FIRM**
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

MOTION FOR SUMMARY JUDGMENT