**KANE LAW FIRM**
Brad S. Kane (SBN 151547)
bkane@kanelaw.la
1154 S. Crescent Heights. Blvd.
Los Angeles, CA 90035
Tel: (323) 697-9840
Fax: (323) 571-3579

Trey Brown (SBN 314469)
trey.brown@vixenmediagroup.com
11337 Ventura Blvd.
Studio City, CA 91604

*Attorneys for Defendants*
VXN GROUP LLC and MIKE MILLER

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

MACKENZIE ANNE THOMA, a.k.a. KENZIE ANNE, an individual and on behalf of all others similarly situated,

Plaintiff,

v.

VXN GROUP LLC, a Delaware limited liability company; MIKE MILLER, an individual; and DOES 1 to 100, inclusive,

Defendants.

Case No. **2:23–cv–04901 WLH (AGRx)**

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO RULE 37(e) AND THE COURT'S INHERENT POWER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: January 3, 2025
Time: 1:30 p.m.
Courtroom: Courtroom 9B

Complaint Filed: April 20, 2023
Removed: June 21, 2023

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF, MACKENZIE ANNE THOMA, AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that upon January 3, 2025 at 1:30 p.m. or as soon thereafter as the matter may be heard before the Honorable Wesley L. Hsu, Defendants VXN Group LLC ("VXN") and Mike Miller ("Miller") (collectively, "Defendants") will and hereby do move for sanctions against Plaintiff MACKENZIE ANNE THOMA ("Plaintiff" or "Thoma") pursuant to Fed. R. Civ. P. 37(e) and the Court's inherent power.

Dated: November 12, 2024 By: */s/ Brad S. Kane*
Brad Kane

2
MOTION FOR SANCTIONS PURSUANT TO RULE 37(e) AND THE COURT'S INHERENT POWER

**KANE LAW FIRM**
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

## MOTION FOR SANCTIONS

Pursuant to Fed. R. Civ. P. 37(e) and the Court's inherent power, Defendants hereby move for sanctions against Plaintiff for multiple discovery abuses discussed herein. Defendants' motion is based on this notice of motion and motion, the attached memorandum of points and authorities filed in support of this motion, the declaration of Trey Brown and exhibits attached thereto; all the pleadings and papers in this action, and any oral argument entertained by the Court during the hearing on this matter.

Dated: November 12, 2024 By: */s/ Brad S. Kane*
Brad Kane

3

MOTION FOR SANCTIONS PURSUANT TO RULE 37(e) AND THE COURT'S INHERENT POWER

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

**TABLE OF CONTENTS**

I. INTRODUCTION .......... 1
II. FACTS .......... 1
A. Plaintiff Anticipated Litigation as Early as December 2022 .......... 1
B. Motley Models, A Nucleus of Evidence, Collapsed in Scandal .......... 2
C. Plaintiff and BLG Strongarmed Murphy .......... 3
D. BLG Raised Patently Baseless Objections to Murphy's Subpoena and Made False Proffers to Produce Evidence .......... 4
E. BLG Fabricated a Death Threat to Delay Murphy's Deposition .......... 6
F. Murphy Erased All His Cell Phone Data .......... 6
G. BLG Fraudulently Claimed Attorney-Client Privilege Over Withheld Messages .......... 7
H. Plaintiff Filed a Deceptive Motion for a Protective Order .......... 8
I. Plaintiff Produced Zero Materials in Response to Defendants' Requests for Production .......... 8
J. BGL Threatened Lerner Not to Comply with Defendants' Subpoena .......... 8
K. Plaintiff Withheld Evidence that She Took Tax Deductions as An Independent Contactor .......... 9
III. STANDARD .......... 10
IV. ARGUMENT .......... 11
A. Plaintiff Has Spoliated ESI .......... 11
1. Plaintiff's Duty to Preserve Attached Long Before the ESI Was Destroyed .......... 11
2. Plaintiff Failed to Preserve Her ESI and Failed to Timely Inform Third Parties to Preserve Their ESI .......... 12

3. The Deleted ESI Is Irreplaceable .......... 14

4. Plaintiff Intended to Deprive Defendant of the ESI .......... 14

B. Plaintiff's Additional Discovery Misconduct Is Sanctionable Pursuant to the Court's Inherent Power .......... 16

C. Plaintiff's Spoliation and Other Abuses Warrant Terminating Sanctions .......... 18

1. The Public Interest Is Not Advanced by Meritless Claims Which Also Impedes the Court's Ability to Manage Its Docket .......... 19

2. Defendants Have Been Prejudiced by the Loss of and Interference with Evidence .......... 19

3. Plaintiff Has No Intent on Litigating Her Claims on the Merits .......... 20

4. Lesser Sanctions Would Not Right Plaintiff's Wrongs .......... 21

V. CONCLUSION .......... 22

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

# TABLE OF AUTHORITIES

## CASES

*Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*,
No. 12-6972, 2015 WL 12732433 (C.D. Cal. Dec. 14, 2015)............... 21, 22, 23

*Am. Unites for Kids v. Rousseau*,
985 F.3d 1075 (9th Cir. 2021) ........................................................ 11, 18

*Anheuser-Busch, Inc. v. Nat. Beverage Distributors*,
69 F.3d 337 (9th Cir. 1995) ........................................................ 6, 20, 23

*Aramark Mgmt., LLC v. Borgquist*,
No. 18-1888, 2021 WL 864067 (C.D. Cal. Jan. 27, 2021).................... 12, 15, 17

*Bauer v. Hill*,
No. 22-868, 2023 WL 6373857 (C.D. Cal. Aug. 4, 2023) ............................... 18

*Bilokumsky v. Tod*,
263 U.S. 149, 44 S. Ct. 54, 68 L. Ed. 221 (1923).......................................... 17

*Bistrian v. Levi*,
448 F. Supp. 3d 454 (E.D. Pa. 2020)............................................................ 15

*ConsumerDirect, Inc. v. Pentius, LLC*,
No. 21-1968, 2023 WL 8876198 (C.D. Cal. Sept. 21, 2023)................ 12, 18, 19

*Cyntegra, Inc. v. Idexx Lab'ys, Inc.*,
No.6-4170, 2007 WL 5193736 (C.D. Cal. Sept. 21, 2007)......................... 13, 17

*Desert Palace, Inc. v. Costa*,
539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003).................................. 16

*Engalla v. Permanente Med. Group, Inc.*,
15 Cal.4th 951 (1997)..................................................................................... 13

*Fink v. Gomez*,
239 F.3d 989 (9th Cir. 2001) ...................................................................*passim*

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

*Gay v. Parsons*,
No. 16-5998, 2024 WL 4224893 (N.D. Cal. Sept. 17, 2024)............................13

*Gelazela v. Santa Ana Police Dep't*,
No. 21-1126, 2024 WL 1136338 (C.D. Cal. Feb. 16, 2024).............................16

*Haeger v. Goodyear Tire & Rubber Co.*,
813 F.3d 1233 (9th Cir. 2016)..........................................................11, 19

*Herrera v. City of Palmdale*,
No. 16-09453, 2024 WL 3498863 (C.D. Cal. July 16, 2024)............................21

*Hous. Rts. Ctr. v. Sterling*,
No. 3-859, 2005 WL 3320739 (C.D. Cal. Mar. 2, 2005)..................................14

*Jones v. Riot Hosp. Grp. LLC*,
95 F.4th 730 (9th Cir. 2024)..........................................................*passim*

*Laub v. Horbaczewski*,
No. 17-6210, 2020 WL 9066078 (C.D. Cal. July 22, 2020).............................16

*Leon v. IDX Sys. Corp.*,
464 F.3d 951 (9th Cir. 2006)..........................................................*passim*

*Matthew Enter. v. Chrysler Grp. LLC*,
No. 13-4235, 2016 WL 2957133 (N.D. Cal. May 23, 2016)............................14

*McBride v. Moore*,
No. 23-2904, 2024 WL 1136429 (C.D. Cal. Feb. 23, 2024).............................11

*Morehead v. City of Oxnard*,
No. 21-7689, 2023 WL 8143973 (C.D. Cal. Oct. 4, 2023)...............................15

*Nat.-Immunogenics Corp. v. Newport Trial Grp.*,
No. 15-2034, 2016 WL 11520757 (C.D. Cal. June 16, 2016)......................11, 17

*Owens v. Wesco Aircraft Hardware Corp.*,
No. 19-6097, 2020 WL 6114916 (C.D. Cal. Apr. 6, 2020)..................................7

**KANE LAW FIRM**
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

*Ramos v. Swatzell*,
No. 12-1089, 2017 WL 2857523 (C.D. Cal. June 5, 2017) ... 13

*RG Abrams Ins. v. L. Offs. of C.R. Abrams*,
No. 21-194, 2022 WL 2199029 (C.D. Cal. Feb. 9, 2022) ... 11, 13, 19

*Sanders v. Los Angeles Cnty.*,
No. 15-907, 2019 WL 12831725 (C.D. Cal. Aug. 1, 2019) ... 12

*Sedie v. U.S. Postal Serv.*,
No. 8-4417, 2009 WL 4021666 (N.D. Cal. Nov. 19, 2009) ... 10

*Spencer v. Lunada Bay Boys*,
No. 16-2129, 2017 WL 10518023 (C.D. Cal. Dec. 13, 2017) ... 12

*Su v. L & Y Food, Inc.*,
No. 24-36, 2024 WL 1632955 (C.D. Cal. Apr. 12, 2024) ... 18

*Tonkin v. Heckler*,
734 F.2d 1388 (9th Cir. 1984) ... 11

*Trendsettah USA Inc. v. Swisher Int'l Inc.*,
No. 14-1664, 2023 WL 6370927 (C.D. Cal. Aug. 24, 2023) ... 19

*United States v. Chen*,
99 F.3d 1495 (9th Cir. 1996) ... 7

*Woods v. Scissons*,
No. 17-8038, 2019 WL 3816727 (D. Ariz. Aug. 14, 2019) ... 13

*Zambrano v. Tustin*,
885 F.2d 1473 (9th Cir. 1989) ... 20

**RULES**

Fed. R. Civ. P. 26(b)(5) ... 7

Fed. R. Civ. P. 30(c)(1) ... 10

Fed. R. Civ. P. 37 ... 20

Fed. R. Civ. P. 37(e) ... 2, 1, 12, 24

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

Fed. R. Civ. P. 37(e)(2) .......... 17, 20, 24

Fed. Rs. Civ. P. 37(e)(2)(A), (C) .......... 11, 16

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

9

MOTION FOR SANCTIONS PURSUANT TO RULE 37(e) AND THE COURT'S INHERENT POWER

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

# MEMORANDUM OF POINT AND AUTHORITIES

## I. INTRODUCTION

Terminating sanctions are warranted against Plaintiff, because Plaintiff and her counsel, Bibiyan Law Group ("BLG") have intentionally failed to:

(i) preserve and produce Plaintiff's own ESI despite her duty to do so.
(ii) make reasonable efforts to preserve ESI in the possession of Plaintiff's agents and third-party vendors; and
(iii) notify Defendants of Plaintiff's inability to preserve ESI or the risk of loss of ESI, so Defendants can take remedial action.

Their intentional misconduct is demonstrated by:

(i) concealment of texts between Plaintiff and her former talent agent, Ryan Murphy ("Murphy") so they could *not* be used in their depositions;
(ii) after the existence of the texts were discovered during their depositions, BLG claimed that it simply forgot a privilege log was necessary and then asserted the attorney client privilege applied to texts between non-attorney;
(iii) after forcing Defendants to file a motion to compel, BLG withdraw that frivolous assertion of privilege;
(iv) when Defendants asked for legible copies of the texts, Murphy were screenshots *from Plaintiffs' phone*; and
(v) misleading statements and threats were made to Plaintiff's agents to deter compliance with subpoenas.

Such intentional misconduct warrants terminating sanctions.

## II. FACTS

### A. Despite Defendants' January 2023 Preservation Demand and Plaintiff Filing Her April 2023 Complaint, Plaintiff Neither Preserved Any Records Nor Requested Her Agents Do So.

On December 21, 2022, Plaintiff's counsel, Sarah Cohen ("Cohen") sent a letter warning VXN Group, LLC ("VXN") of Plaintiff's "potential civil claims . . . arising out of her employment[.]" [**Ex. D**]. That letter pointed out VXN's "obligation to preserve any and all evidentiary items relating to Ms. Thoma's employment." *Id.*

On January 11, 2023, Defendants demanded Plaintiff and her counsel to preserve her evidence relating to her claims, specifically referencing "*all communications with Motley Models*," Plaintiff's talent agency:

> [Defendants] must insist that Ms. Thoma preserve all documents, communications, *texts*, emails, social media posts, voicemails, and any other documents or information in her possession, custody, or control relating to her performance of services for VXN and the cancellation of any scheduled shoots. The preserved evidence must include . . . *all communications with Motley Models*. The preserved evidence must also include all electronically stored information (ESI) from computers, tablets, smart phones, and any other data source, as well as paper and other hard copies of documents and other materials.

[**Ex. E**] (emphasis added).

From around 2021 to 2023, Motley Models represented Plaintiff. *Murphy Depo.* at (Tr. 63:9–23). Motley Models' employee Ryan Murphy represented Plaintiff in her bookings with VXN, while working for. Murphy Depo. at (Tr. 48:17-13, 40:23-41:1)

On April 20, 2023, Plaintiff filed her state court complaint. [**Dkt**. **9-**1, at 97], On June 21, 2023, Defendants removed her complaint to this Court. [**Dkt. 1**].

On July 16, 2024, Defendants requested Plaintiff produce all communications between Plaintiff and Murphy relating to this action. *See* [**Ex. Q**] (Request for Production No. 32).

On September 9, 2024, Murphy produced the only communications between Plaintiff and Murphy starting on May 22, 2024, state in pertinent part:

> Plaintiff: I just got off the phone with my lawyer and they said to communicate with you not to . . . delete anything in the next 6 months
> Murphy: It's already been deleted . . . .

[**Ex. G**]. *To date, Plaintiff produced no documents, not even a preservation letter.* Brown Decl., at ¶ 28.

**B. Despite Access to Motley Models' Portfolio Pad Data, Plaintiff Failed To Preserve It Before Its March 2024 Deletion.**

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

Motley Models used "Portfolio Pad" software owned and provided by Mainboard, LLC ("Mainboard") to calendar, notify, and track performers' engagements.[1] *Murphy Depo.* at (Tr. 97:7–18). Portfolio Pad data would show where Plaintiff worked, what she did and how she was compensated, as well as more granular details such as scheduling conflicts, all material relevant to whether she was an independent contractor. Significantly, when information was entered into Portfolio Pad, Plaintiff received notifications and could access it in Portfolio Pad. *Id.* at (Tr. 99:6–20); *Thoma Depo.* at (Tr. 109:5–9).

Around September 2023, allegations came to light that Motley Model's owner David Bacon II a.k.a. Dave Rock ("Rock") surreptitiously videotaped clients at the "Motley Manor." *See Murphy Depo.* at (Tr. 29:10–25, 65:5-14). Motley Models maintained its Portfolio Pad account until February 29, 2024, at which point Motley Models terminated its subscription, causing the data to be permanently deleted thirty days later. *See* [**Ex. H**].

**C. Plaintiff and BLG Threaten Murphy, While Promising To Shutdown The Subpoenas.**

On May 16, 2024, the Court granted Defendants' Motion to Bifurcate Discovery authorizing Phase I discovery for next 120 days. [**Dkt. 66**] On May 22, 2024, Plaintiff texted Murphy not to delete anything (which he already had). *Supra*. Murphy also shot back, "I'm tired of threats . . . ." [**Ex. G**] (May 22, 2024 text message)

On May 29, 2024, Murphy was served with Defendants' subpoena. [**Ex. J**]. The same day, Cohen sent Murphy a letter stating that "producing records prior to the resolution of [a motion to quash] may be punishable by civil liability and court sanctions, including, in some instances, contempt of court." [**Ex. K**]. On May 31,

---

[1] Plaintiff also challenged Defendants' subpoena on Mainboard, the owner of Portfolio Pad. The Court overruled Plaintiff's these objections. [**Dkt. 74**, at 3–4]; *see also* [**Dkt. 89**, at ¶¶ 3–4] (overruling later objections to subpoena).

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

2024, Plaintiff texted Murphy that her "legal team" is "trying to shut down all these subpoenas . . . They just wanted to get on a phone call with w u" [**Ex. G**] (May 31, 2024 text message)

On June 4, 2024, based on *her* right to privacy, Plaintiff sought to challenge Defendants subpoena to Meta Platforms, Inc. ("Meta"). *See* [**Dkt. 71** at 1]. The Magistrate held Plaintiff lacked standing to challenge the Meta subpoena, which did not seek private communications. [**Dkt. 71**, at 2]. It seemed like Defendants would be able to review the data from Murphy's Instagram account.[2]

On June 11, 2024, Cohen informed the Magistrate that BLG now "represent[ed] third party Mr. Murphy for the limited purpose of responding to [his] subpoena[.]" [**Dkt. 74**, at 2]. BLG's *pro bono* representation of Murphy, *see Murphy Depo.* at (Tr. 11:3–19), was used to obstruct discovery.

### D. BLG Raised Baseless Objections and Made False Proffers to Obstruct Discovery

BLG and Murphy originally responded to Defendants' subpoena on June 7, 2024, with the same boilerplate, copy-and-paste objections to each request:

> Respondent cannot produce any requested documentation as he is either no longer personally in possession of the requested documentation or has never been in possession of the requested documents.

*See* [**Ex. L**].

Conferrals and informal conferences followed. Reviewing the discrepancies at the June 11 hearing, the Magistrate warned "Counsel for Mr. Murphy . . . to go over possession, custody or control over sources of electronic documents that may be responsive to the subpoena." *See* [**Dkt. 74**, at 2]. On July 3, 2024, the Magistrate

[2] Plaintiff's objection effectively stalled discovery, and Meta Platforms responded to Defendant's subpoena on August 18, 2024, with just weeks left to Phase One discovery. *See* [**Ex. M**]. Meta Platforms raised boilerplate objections and, for portions of the discovery, instructed that Defendants "must direct [their] request to the user." *See id.* This left Murphy, and hence, BLG, in the driver's seat with respect to producing evidence from Murphy's Instagram account.

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

ordered: (i) Murphy to "serve supplemental responses to the document requests and complete his production of responsive documents" five days before his deposition, and (ii) BLG to "disclose in writing the general steps taken to search for responsive documents."[3] [**Dkt. 88**, at ¶ 1].

On July 17, 2024, Murphy produced supplemental responses repeating the same objections and responses, but this time appending BLG's May 29 Letter to Murphy as well as Murphy's Instagram story: all data the Defendants already possessed and used to demonstrate the inadequacy of the responses. [**Ex. N**].

At the July 19, 2024 discovery conference, Cohen could not state "with certainty" whether Murphy had searched his Instagram archive. *See* [**Dkt. 107-1**, at p.10 (Tr. 15:16–21)]. Again, Defendants' counsel pointed out Murphy's responses were incomplete as there existed yet another responsive document not produced. [**Ex. U**] at (Tr. 3:18–4:3, 11:2–7). As a result, Counsel for Murphy consented to revisit his responses. *See* [**Dkt. 94**].

The next day, July 20, Murphy supplemented his responses to include the "missing" document flagged at the hearing, as well as a proof of download of his Instagram Archive.[4] *See* [**Ex. O**]. BLG also represented that Murphy "*will produce* all non-privileged documents within his possession, custody, and control" with respect to his Instagram Archive, communications with Plaintiff and others regarding the litigation, and communications with Visions regarding his vendetta, *id.* (Requests Nos. 8, 9, 23, 24, 25, 32) (emphasis added); *see also Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 354 (9th Cir. 1995) (collecting cases) ("This court has squarely rejected the notion that a failure to comply with

[3] At his July 22, 2024 deposition, Murphy admitted that he "felt no reason" to download his Instagram Archive at this point and that it was "very unlikely" that he did. *Murphy Depo.* at (Tr. 14:4–10).

[4] The receipt shows that the archive was requested on July 19, 2024, as well as July 20, 2024. [**Ex. O**]. Despite representing throughout his responses that he "searched his . . . personal emails," *see id.*, he later admitted that this was not true. *Murphy Depo.* at (Tr. 103:1–17).

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

the rules of discovery is purged by belated compliance."). By the close of discovery, Murphy only produced documents that Defendants previously pointed out that Murphy should have produced, since Defendants already had them. *See* Decl. Brown, at ¶ 27; *see also* [**Dkt. 105**].

**E. BLG Delayed Murphy's Deposition with Inaccurate Representations About a Death Threat**

On June 24, 2024, BLG emailed Defendants that an unnamed VXN representative called Murphy and made a death threat in May 2024, and to protect Murphy's safety his June 28, 2024 deposition would have to be rescheduled. *See* Ex. R; *see also* [**Dkt. 86**]. The alleged "threat," however, was unsubstantiated and BLG refused to produce any support. *See* Decl. Brown, at ¶ 23. Without objecting, making counsel available for a meeting and confer, filing a motion to quash or for a protective order, Murphy skipped his scheduled deposition. *See id.* at ¶ 24, [**Ex. R**].

When brought to the Court's attention, the Magistrate ordered Murphy to sit for an in-person deposition on July 22, 2024, nearly a month later. [**Dkt. 88**, at ¶ 2]. Contrary to BLG's representations, Murphy testified that "towards the end of 2022" Rock and Visions told him over a phone call that death threats were made towards Murphy. *Murphy Depo.* at (Tr.18:22–21:11). This was not an emergency that justified ignoring Defendants' subpoena without even meeting and conferring.

**F. Murphy Erased All His Cell Phone Data**

Plaintiff's May 22, 2024 text message instructing Murphy not to delete anything for six months is Plaintiff's only known preservation effort. Murphy testified that in March 2024, he "got a new phone," "chose not to retain [his] messages," and deleted all of the device's data. *See Murphy Depo.* at (Tr. 106:12–107:8). Plaintiff still has not produced any communications between her and Murphy though neither deny that they texted. *Cf. id.* at (Tr. 103:18–105:25).

**G. Belatedly BLG Frivolously Asserted Attorney-Client Privilege To Hide The Concealed Texts**

Although not produced prior to Murphy or Plaintiff's deposition or listed in a privilege log, Murphy testified that texts between Plaintiff and Murphy *after* he received his new phone existed. *See id.* To cover that omission, Cohen averred to the Magistrate that Cohen only "recently became aware . . . that a privilege log is required," to support a claim for privilege. *See* [**Dkt. 99**, at 3]; *see also* Fed. R. Civ. P. 26(b)(5). On August 22, 2024, BLG produced a privilege log listing three communications. [**Ex. P**]. BLG claimed that the attorney client privilege shields all three "Text Message[s] between Plaintiff and Ryan Murphy[.]" *See id. United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) ("The attorney client privilege applies to communications *between lawyers and their clients*[.]") (emphasis added). The Magistrate authorized Defendants to compel production of the communications, [**Dkt. 100**, at 3], and they did. [**Dkt. 105**].

After Defendants filed the motion, BLG waived the privilege on September 17–after the close of Phase One discovery–and Murphy produced partially illegible texts. *See* [**Dkt. 107-1**, p. 36]; [**Ex. F**]. For reasons unknown, "Murphy no longer ha[d] the complete text messages listed on the privilege log." [**Dkt. 110**, at 2 n.2]. Instead, Murphy produced more legible screenshots of the texts *from Plaintiff's phone*, *id.*; [**Ex. G**], calling into question why Plaintiff's failed to produce them or provide a privilege log.

Based on Plaintiff's May 22, 2024 texts with Murphy, Plaintiff and BLG *knew* from the start of discovery that Murphy had destroyed this data, yet never informed Defendants until *after* their depositions. Plaintiff's concealed failure to take reasonable efforts to preserve evidence caused Defendants and the Magistrate to waste significant time and resources.

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

**H. Plaintiff Filed a Deceptive Motion for a Protective Order**

Despite the fact that Plaintiff failed to instruct Motley Models and Mainboard to preserve documents related to Plaintiff's claims (or download copies or check to see if they had been deleted), she nevertheless moved on June 19, 2024 for a Protective Order to prevent Mainboard from responding to Defendants' subpoena. [**Dkt. 80**]. The Magistrate had also ordered the parties confer on a protective order, *see* [**Dkt. 71**, at 3], which they did. *See* [**Ex. R**]. In fact, Defendants consented to stipulate to a protective order, [**Dkt. 84-1**, at ¶¶3–4], yet Plaintiff filed the motion anyway. *See* [**Dkt. 79**].

The Court denied her motion. [**Dkt. 89**, at ¶ 2].[5] The stipulated protective order was entered on July 17, 2024, *see* [**Dkts. 91, 92**] Yet, despite designating the *entire* transcript of Plaintiff's accountant, Larry Lerner ("Lerner"), "confidential," *Lerner Depo.* at (Tr. 11:6–8), Cohen failed to confer on or seal those confidential documents. *Cf.* [**Dkt. 107-1**, at pp. 46–52].

**I. Plaintiff Produced Zero Materials in Response to Defendants' Requests for Production**

*To date, Plaintiff failed to produce a single document in response to discovery*. *See* Decl. Brown, at ¶ 28. Phase One focused on critical predicates to her claims: whether she was a "professional actor" and whether she is an independent contractor. [**Dkt. 66**, at 8]. Defendants served various Requests for Production targeted at those issues, but Plaintiff produced nothing. *See* [**Ex. Q**].

**J. BGL Threatened Lerner With Jail If He Complied with Defendants' Subpoena**

After Plaintiff disclosed in her deposition the identity of her former accountant, Lerner, *Thoma Depo.* at (Tr. 76:9–19), Defendants' promptly subpoenaed Lerner for unproduced financial records. *See* [**Dkt. 103**]. The

[5] "The presentation to the Court of frivolous motions . . . subjects the offender at the discretion of the Court to the sanctions of L.R. 83-7." L.R. 11-9

Magistrate overruled Plaintiff's challenge to the subpoena as "without merit," explaining that it was particularly appropriate since Mainboard no longer possessed relevant financial data. *See* [**Dkt. 104**, at 2].

Lerner testified that BLG, "tried to bully me into telling me that I would be jailed if I complied with the request for . . . documents."[6] *Lerner Depo.* at (Tr. 7:12–14); *see also id.* at 56:15–20. On August 23, Cohen sent Lerner a letter–like the one sent to Murphy–warning him not to comply with the subpoena pending the resolution of a motion to quash. [**Dkt. 105-1**, at 52]. But no such motion was filed, and after the Court denied Plaintiff's challenge to the subpoena on August 29, 2024 [**Dkt. 104**, at 2], Cohen failed to relay that ruling to Lerner. *Lerner Depo.* at (Tr. 80:4–12).

Aware of the subpoena, Plaintiff herself pleaded with Lerner to "make sure that you don't give them what they asked for because it would harm [her] case." *See id.* (Tr. 8:8–11); *see also id.* at (Tr. 75:14–18) Nevertheless, Lerner produced relevant materials and attended the deposition, only to have Cohen accuse him of blackmail and extortion.[7] *Lerner Depo.* at (Tr 60:5–65:1).

**K. Plaintiff Sought To Conceal that She Took Tax Deductions as An Independent Contactor**

Among Plaintiff and her agents, Lerner was the only one who complied with their discovery obligations. He revealed that Plaintiff deducted her apartment rent as work-related expenses from her income. *See* [**Ex. S**]; *Lerner Depo.*, at (Tr.

---

[6] There have been other unexplained problems with witnesses. Since discovery commenced, Visions has–in Murphy's words–"disappeared." *Murphy Depo.* at (Tr. 168:12–15). Defendants retained additional counsel to attempt to locate and serve Visions with a subpoena, *see* [**Dkt. 76**], but to no avail. Another witness, Oscar Hernandez, another operator at Motley Models and its successor, was served with a subpoena but failed to attend his deposition. Decl. Brown, at ¶ 26.

[7] *See Sedie v. U.S. Postal Serv.*, No. 8-4417, 2009 WL 4021666, at *1 (N.D. Cal. Nov. 19, 2009) ("counsel are expected to conduct themselves in a professional manner during a deposition . . . that simulates the dignified and serious atmosphere of the courtroom. * * * [A]ccusations of wrongdoing against witnesses and attorneys have no place in a deposition."); *see also* Fed. R. Civ. P. 30(c)(1).

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

37:14–42:4). This is a tax benefit afforded to independent contractors, not employees. *Cf. Tonkin v. Heckler*, 734 F.2d 1388, 1389 (9th Cir. 1984).

## III. STANDARD

"If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court," "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may . . . presume that the lost information was unfavorable to the party," or "dismiss the action or enter a default judgment." Fed. Rs. Civ. P. 37(e)(2)(A), (C). "The party seeking sanctions must establish these facts by a preponderance of the evidence." *McBride v. Moore*, No. 23-2904, 2024 WL 1136429, at *2 (C.D. Cal. Feb. 23, 2024) (citation omitted).

Additionally, "[i]ndependent of the Federal Rules of Civil Procedure and Local Rules, federal courts have the inherent power to 'levy sanctions in response to abusive litigation practices.'"[8] *Nat.-Immunogenics Corp. v. Newport Trial Grp.*, No. 15-2034, 2016 WL 11520757, at *2 (C.D. Cal. June 16, 2016) (citations omitted). "To impose a sanction pursuant to the court's inherent authority, the court 'must find either: (1) a willful violation of a court order; or (2) bad faith.'" *ConsumerDirect, Inc. v. Pentius, LLC*, No. 21-1968, 2023 WL 8876198, at *6 (C.D. Cal. Sept. 21, 2023) (quoting *Rousseau*, 985 F.3d at 1090).

[8] "A court's inherent power 'is not limited by overlapping statutes or rules." *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, No. 21-194, 2022 WL 2199029, at *5 (C.D. Cal. Feb. 9, 2022) (quoting *Haeger v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233, 1243 (9th Cir. 2016)). "Although it is preferable that courts use—and first consider—the range of federal rules and statutes dealing with misconduct and abuse of the judicial system, 'courts may rely upon their inherent powers to sanction bad-faith conduct even where such statutes and rules are in place.'" *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021) (citations omitted).

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

## IV. ARGUMENT

### A. Plaintiff Has Spoliated ESI

Plaintiff spoliated ESI–namely the data on her own electronic devices, in Portfolio Pad and Murphy's cell phone–in violation of Rule 37(e). "A party must preserve evidence it knows or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence." *Sanders v. Los Angeles Cnty.*, No. 15-907, 2019 WL 12831725, at *2 (C.D. Cal. Aug. 1, 2019) (citation omitted). "Spoliation occurs when a party destroys, significantly alters, or fails to preserve evidence after its duty to preserve arose." *Aramark Mgmt., LLC v. Borgquist*, No. 18-1888, 2021 WL 864067, at *4 (C.D. Cal. Jan. 27, 2021), *report and recommendation adopted*, No. 18-1888, 2021 WL 863746 (C.D. Cal. Mar. 8, 2021) (citation omitted). There is no doubt that Plaintiff: (i) failed to preserve critical data and metadata; and (ii) actively obstructed discovery of data perceived as harmful to her case.

#### 1. Plaintiff's Duty to Preserve Attached Long Before the ESI Was Destroyed

"The common-law duty to preserve continues to apply even under Rule 37(e)." *Spencer v. Lunada Bay Boys*, No. 16-2129, 2017 WL 10518023, at *5 (C.D. Cal. Dec. 13, 2017), *report and recommendation adopted*, No. 16-2129S, 2018 WL 839862 (C.D. Cal. Feb. 12, 2018), *aff'd*, 806 F. App'x 564 (9th Cir. 2020) (citation omitted). "A party must preserve evidence it knows or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence." *Id.* (citation omitted).

This duty is not limited to evidence within a party's immediate possession. "[C]ourts have extended the affirmative duty to preserve evidence to instances when that evidence is not directly within the party's custody or control so long as the party has access to, or indirect control over, such evidence." *Cyntegra, Inc. v.*

*Idexx Lab'ys, Inc.*, No.6-4170, 2007 WL 5193736, at *5 (C.D. Cal. Sept. 21, 2007), *aff'd*, 322 F. App'x 569 (9th Cir. 2009) (collecting cases).

Additionally, if there is a *significant relationship* between the third-party and Plaintiff, then "[a] non-party's spoliation of evidence may be imputed to a party who did not engage in spoliation." *See Ramos v. Swatzell*, No. 12-1089, 2017 WL 2857523, at *6 (C.D. Cal. June 5, 2017), *report and recommendation adopted*, No. 12-1089, 2017 WL 2841695 (C.D. Cal. June 30, 2017); *see Woods v. Scissons*, No. 17-8038, 2019 WL 3816727, at *6 (D. Ariz. Aug. 14, 2019) ("leaving [Defendants] without a remedy here for the destruction of relevant evidence would be an unjust result"). Here, the *significant relationship* is the fiduciary relationship between a licensed talent agency and its client, the Plaintiff. *See William Morris Endeavor Entertainment v. Writers Guild of America, West*, 2020 WL 2559491 *8 (CD Cal April 27, 2020) (recognizing talent agents have a fiduciary to their clients).

Plaintiff's duty arose as early as December 21, 2022, when Plaintiff anticipated litigation, *see RG Abrams Ins.*, 342 F.R.D. at 504 (citation omitted) ("[A] duty to preserve ESI can arise far in advance of the formal retention of a lawyer or the filing of a lawsuit."); was cemented on January 11, 2023, when VXN sent Plaintiff a litigation hold letter, *Gay v. Parsons*, No. 16-5998, 2024 WL 4224893, at *3 (N.D. Cal. Sept. 17, 2024) ("A party's duty to preserve evidence arises when they receive a formal request to preserve such evidence.") (collecting cases) and certainly attached by April 20, 2023, when Plaintiff filed her Complaint.

**2. Plaintiff Failed to Preserve Her ESI and Failed to Timely Inform Her Agents to Preserve Their ESI**

Plaintiff breached her duty by failing to preserve ESI in her possession and by waiting over a year to notify her agents to preserve their ESI. Specifically, Plaintiff failed to preserve: (i) her electronic communications relating to her work with VXN, including email notifications from Portfolio Pad; (ii) the information

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

accessible to her in Portfolio Pad; (iii) her communications with her agents, including her texts and emails with Murphy; and (iv) her business records. Plaintiff belatedly providing legible copies of the May 2024 texts to Murphy for Murphy does not fix the problem as "production of some evidence does not excuse destruction of other relevant evidence." *See Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 736 (9th Cir. 2024).

*Preservation of ESI is a joint responsibility of Plaintiff and BLG*. "[I]t is *not* sufficient to notify all [affected persons] of a litigation hold and expect that the party will then retain and produce all relevant information. *Counsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched*." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) (emphasis added).

Moreover, both Plaintiff and BLG knew that Motley Model and Mainboard's ESI was critical to the issues of whether Plaintiff was an independent contractor, or if an employee, then an exempt professional actor. Yet, no action was taken to collect or preserve the ESI. Worse, given Plaintiff's failure to produce any documents, the only reasonable inference is that Plaintiff and BLG actively: (i) destroyed Plaintiff's ownESI; and (ii) hindered discovery from Murphy, Motley Models, Mainboard and her accountant.

Finally, Plaintiff and BLG took no action to preserve Murphy's data between January 2023 and May 2024 and attempted to conceal their failure to take affirmative action to preserve the data. Murphy's data that would have illuminated Plaintiff's schedules, requests, and conflicts. Yet, neither Murphy nor Plaintiff preserved their communications. Since "this litigation and the relevance of the [ESI] were foreseeable" Plaintiff, a "sophisticated litigant" with able counsel, breached her duty "to intervene to prevent the overwriting of the [ESI]." *See Bistrian v. Levi*, 448 F. Supp. 3d 454, 474 (E.D. Pa. 2020) (citation omitted).

**KANE LAW FIRM**
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

### 3. The Deleted ESI Is Irreplaceable

As a result of Plaintiff's and BLG's misconduct, there is now no means to "replace" the destroyed evidence. Mainboard has confirmed that the data from Portfolio Pad has been permanently erased, *see* Ex. H, and neither Murphy nor Plaintiff have backed up that ESI. Murphy has also confirmed that the data from his phone has been deleted, and, again, neither he nor Plaintiff has saved responsive communications. "Further discovery would not replace the missing [ESI] because the only entities that had control over the recordings deleted them." *See Morehead v. City of Oxnard*, No. 21-7689, 2023 WL 8143973, at *9 (C.D. Cal. Oct. 4, 2023) (citation omitted). Finally, all efforts to subpoena other persons associated with Motley Models have failed. Decl. Brown, at ¶ 26. Despite painstaking efforts by Defendants to locate any remnants of this data, it is gone forever.[9]

### 4. Plaintiff Intended to Deprive Defendant of the ESI

Plaintiff's spoliation cannot be attributed to mistake. *Cf. Aramark Mgmt.*, 2021 WL 864067 at *6 (citations omitted) ("The Advisory Committee notes indicate that negligent or even grossly negligent behavior is insufficient to support sanctions under Rule 37(e)(2)."). "Rule 37(e) does not define 'intent,' but in context, the word is most naturally understood as involving the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *Jones*, 95 F.4th at 735 (citations omitted).

"Because intent can rarely be shown directly, a district court may consider circumstantial evidence in determining whether a party acted with the intent required for Rule 37(e)(2) sanctions." *Id.* "'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct

[9] Rule 37(e)(2) does not require a showing of prejudice,[9] *Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 736 (9th Cir. 2024), though this is required for lesser sanctions under Rule 37(e)(1). Prejudice is nonetheless covered in Section IV.C.2.

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

evidence.'" *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) (citation omitted).

"Intent may be inferred if a party is on notice that documents were potentially relevant and fails to take measures to preserve relevant evidence, or otherwise seeks to keep incriminating facts out of evidence." *Gelazela v. Santa Ana Police Dep't*, No. 21-1126, 2024 WL 1136338, at *2 (C.D. Cal. Feb. 16, 2024) (citation omitted); *Jones*, 95 F.4th at 735 (citing *Laub v. Horbaczewski*, No. 17-6210, 2020 WL 9066078, at *6 (C.D. Cal. July 22, 2020)) ("Relevant considerations include the timing of destruction, affirmative steps taken to delete evidence, and selective preservation.").

Here. the Court need look no further than Plaintiff's original December 21, 2022 letter to VXN. Not only did she command VXN to preserve *its* ESI or risk sanctions, she acknowledged that third-parties "may be in possession of such items and/or any other evidence relating to [Plaintiff]'s employment with [VXN]."[10] Ex. D. VXN told her to do the same, *see* Ex. E, yet Plaintiff did nothing in anticipation of her own litigation.

Worse, when Murphy expressly told her that data had not been preserved, rather than be candid with Defendants about the missing data, Plaintiff *concealed* this fact. *Cf. Bilokumsky v. Tod*, 263 U.S. 149, 153–54 (1923) ("[S]ilence is often evidence of the most persuasive character[.]"). Even more illuminating of intent are: (i) Plaintiff's plea to her accountant not to comply with a subpoena, because it

[10] Plaintiff's knew the importance of the evidence as demonstrated by her state court Requests for Production served on Defendants. *See*, *e.g.*, [**Ex. T**] (RFP No. 9: "Copies of any and all work schedules for Plaintiff during her employment with [VXN].") (RFP No. 44: "Any and all DOCUMENTS, including e-mails, regarding Plaintiff's HOURS WORKED during her employment with YOU."); (RFP No. 108: "Any and all DOCUMENTS that indicate AGGRIEVED EMPLOYEES were allowed to perform work for compensation for other individuals or entities in YOUR INDUSTRY during the RELEVANT TIME PERIOD.").

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

would hurt her case; and (ii) BLG's threat of jail to her accountant if he complied with the subpoena.

Finally, "[p]laintiff cannot bypass [her] duty by abandoning [her] documents to a third-party and claiming lack of control." *Cyntegra, Inc*, 2007 WL 5193736 at *5. "A contractual relationship with a third-party entity provides, at a minimum, an obligation to make reasonable inquiry of the third party entity for the data at issue." *Id.* (collecting cases). "Plaintiff had sufficient, albeit indirect, control to preserve evidence, and by failing to do so, violated an affirmative duty." The offense is all the worse with Plaintiff's failure to preserve her own ESI. This shows that Plaintiff spoliated ESI "in order to prevent [Defendants] from using them as evidence in the litigation[.]" *See Aramark Mgmt.*, 2021 WL 864067 at *13. Thus, Plaintiff has violated Rule 37(e)(2) and sanctions are warranted.

**B. Plaintiff's Additional Discovery Misconduct Is Sanctionable Pursuant to the Court's Inherent Power**

"The court's inherent power to impose sanctions for abusive litigation practices extends to a 'broad range of willful improper conduct.'" *Nat.-Immunogenics Corp.*, 2016 WL 11520757 at *2 (quoting *Fink*, 239 F.3d at 992). "[S]anctions are available if the court specifically finds bad faith or conduct tantamount to bad faith" which includes "a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink*, 239 F.3d at 993; *see Rousseau*, 985 F.3d at 1090 (citation omitted) ("Bad faith may also be found in the conduct of the litigation").

"A party acts for an 'improper purpose' when it 'attempt[s] to influence or manipulate proceedings . . . in order to gain tactical advantage.'" *Pentius*, 2023 WL 8876198 at *6 (quoting *Fink*, 239 F.3d at 994). There are several instances of such manipulation. When viewed as a hole, the most severe sanctions are warranted.

First, Plaintiff's and counsel's threats to witnesses are particularly egregious. Courts review such acts under the criminal witness tampering standard which criminalizes anyone who "knowingly uses intimidation, threats, . . . or attempts to do so . . . with intent to (1) influence, delay, or prevent the testimony of any person in an official proceeding; (2) cause or induce any person to' withhold testimony or documents, evade legal proceedings, or be absent from an official proceeding. *See Bauer v. Hill*, No. 22-868, 2023 WL 6373857, at *4 (C.D. Cal. Aug. 4, 2023) (quoting 18 U.S.C. § 1512(b)). Even if "no evidence or testimony was lost because of [the threats]," it may nonetheless "constitute[] sanctionable conduct." *See id.* at *7 (sanctioning party); *see also Su v. L & Y Food, Inc.*, No. 24-36, 2024 WL 1632955, at *11 (C.D. Cal. Apr. 12, 2024).

Plaintiff threatened both Murphy and Lerner. While Lerner complied with his discovery obligations despite the threats, Murphy was cowed and with BLG's "guidance" failed to note the withheld documents in a privilege log multiple times, asserted frivolous objections, and refused to produce his text messages with Plaintiff until a motion to compel was filed.

Second, Plaintiff obstructed discovery by "delay[ing] or disrupt[ing] the litigation[.]" *See*, *e.g.*, *Pentius*, 2023 WL 8876198 at *6 (quoting *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006)). Mischaracterizing a purported death threat relayed by Motley Models employees 18 months earlier as a recent death threat from a VXN employee to justify refusing to appear for his deposition.

Similarly, BLG responded to his subpoena with baseless objections and rolling, piecemeal production. *Cf. RG Abrams Ins.*, 2022 WL 2199029 at *6 (citation omitted) (noting "bad faith has been found" where "a party's failure to produce documents despite their Rule 26 and 34 obligations," and where the party made "misrepresentations in the context of the discovery disputes"). These omissions and inaccuracies were never corrected on their own; always requiring

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

some conferral and often some motion from Defendants. *Pentius*, 2023 WL 8876198 at *6 (quoting *Haeger v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233, 1245–46 (9th Cir. 2016) ("Engaging in a scheme to intentionally mischaracterize evidence through misleading or inaccurate discovery responses or the failure to correct the false impressions created' is tantamount to bad faith.").

Finally, Plaintiff filed unsupported motions and objections to discovery. *See Trendsettah USA Inc. v. Swisher Int'l Inc.*, No. 14-1664, 2023 WL 6370927, at *6 (C.D. Cal. Aug. 24, 2023) (quoting *Fink*, 239 F.3d at 992) (noting "sanctions are justified if" a party "acted 'for an improper purpose—even if the act consists of making a truthful statement or a non-frivolous argument or objection'"). This resulted in countless, often fruitless, conferrals, several motions and responses over discovery disputes, *see* [**Dkts. 79, 103**], and no less than *eight* informal discovery conferences with the Magistrate. *See* [**Dkts. 71, 74, 88, 89, 94, 100, 104, 110**].

This is a pattern of delays and deceptions appears intended to hide the spoilation of ESI. Plaintiff's violations are bad faith or tantamount thereto–an offense to the Court's "absolute need . . . to maintain order and preserve the dignity of the court," *see Zambrano v. Tustin*, 885 F.2d 1473, 1478 (9th Cir. 1989) (citation omitted)–and thus, sanctionable pursuant to the Court's inherent power.

### C. Plaintiff's Spoliation and Other Abuses Warrant Terminating Sanctions

The Ninth Circuit has recently explained that terminating sanctions under Rule 37(e)(2) need not satisfy the five-factor test for terminating sanctions articulated in *Anheuser-Busch*. *See Jones*, 95 F.4th, at 735. All that is required is "that the Rule 37(e) prerequisites are met." *Id.* (citing Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment). But since the Motion comprises *both* Plaintiff's spoliation of ESI *and* other discovery abuses, Defendants present the traditional analysis. Thus, the Court must weigh:

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.

*Anheuser-Busch*, 69 F.3d at 348 (citation omitted). "While the district court need not make explicit findings regarding each of these factors, a finding of 'willfulness, fault, or bad faith' is required for dismissal to be proper. *Leon*, 464 F.3d at 958 (citations omitted).

**1. The Public Interest Is Not Advanced by Meritless Claims Impeding the Court's Ability to Manage Its Docket**

Taking the first two factors together, Plaintiff's "litigation misconduct . . . has 'greatly impeded the resolution of the case by obscuring the factual predicate of the case[.]'" *Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, No. 12-6972, 2015 WL 12732433, at *27 (C.D. Cal. Dec. 14, 2015) (quoting *Leon*, 464 F.3d at 959 n. 5). "The public and this Court have an interest in securing the just, speedy and inexpensive determination of all actions[.]" *Id.* (citation omitted). "[T]he Court cannot manage its docket without Plaintiff['s] compliance." *Herrera v. City of Palmdale*, No. 16-09453, 2024 WL 3498863, at *4 (C.D. Cal. July 16, 2024). Defendants "expended a substantial amount of time and resources obtaining discovery" *see Am. Rena Int'l Corp.*, 2015 WL 12732433 at *28, only to uncover that most of the evidence has gone missing, permanently. Thus, Plaintiff's "obstructive conduct poses a genuine threat to the expeditious resolution of this litigation and the Court's need to manage its docket." *Id.* (citations omitted).

**2. Defendants Have Been Prejudiced by the Loss of and Interference with Evidence**

The prejudice to Defendants has been immense. They enter summary judgment with no ESI produced by Plaintiff. This is ESI that "would 'likely be at the heart of [Defendants'] defense were [the files] available.'" *See Leon*, 464 F.3d

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

at 960 (citation omitted). Additionally, BLG's representation of Murphy–which required several supplements to discovery–and Plaintiff's threats have corrupted third-party discovery.

"In examining this factor, courts consider whether the party's misconduct make it impossible for a court to be confident that the parties will ever have access to the true facts." *Am. Rena Int'l Corp.*, 2015 WL 12732433 at *28 (collecting cases) (internal quotations omitted). This includes whether Plaintiff's "actions impaired [Defendants,] threatened to interfere with the rightful decision of the case," or "forced [Defendants] to rely on incomplete and spotty evidence[.]" *See Leon*, 464 F.3d at 959 (citations omitted). In the case of the ESI missing from Portfolio Pad and Murphy's communications, the prejudice from their absence is apparent.

Plaintiff's and BLG's improper influence over Murphy and interference with other witnesses and failures to preserve evidence indicate that if the evidence were available, it would not favor her. Defendants "have been severely prejudiced by [Plaintiff's] misconduct and . . . they would be further prejudiced by the significant costs that would be required to litigate against parties who exhibit little, if any, regard for the integrity of the judicial process." *See Am. Rena Int'l Corp.*, 2015 WL 12732433 at *30.

**3. Plaintiff Has No Intent on Litigating Her Claims on the Merits**

Ordinarily, "the public policy favoring disposition of cases on their merits" weighs "against dismissal," although, "standing alone, 'is not sufficient to outweigh the other four factors.'" *Leon*, 464 F.3d at 960–61 (citation omitted). Here, however, Plaintiff's claims are so thoroughly undermined by her discovery abuses, that it can hardly be said that the case is being litigated on its merits.

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

### 4. Lesser Sanctions Would Not Right Plaintiff's Wrongs

Anything less than terminating sanctions would not fully address Defendant's abuses. Under the traditional analysis, the Court must consider "(1) whether the district court explicitly discussed the feasibility of less drastic sanctions and explained why such alternate sanctions would be inappropriate; (2) whether the district court implemented alternative sanctions before ordering dismissal; and (3) whether the district court warned the party of the possibility of dismissal before ordering dismissal." *Anheuser–Busch,* 69 F.3d at 352 (citation omitted).

"It is well settled that dismissal is warranted where, as here, a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings[.]" *See Anheuser-Busch*, 69 F.3d at 348 (citation omitted). "'[L]ess drastic sanctions are not useful' because a ruling excluding evidence would be 'futile,' and fashioning a jury instruction that creates a presumption in favor of [Defendants] 'would leave Defendants equally helpless to rebut any material that Plaintiff might use to overcome the presumption.'" *See Leon*, 464 F.3d at 960.

The Court has already attempted to move litigation forward using a lighter touch: first warning Plaintiff not to submit baseless claims, *see* [**Dkt. 23**, at 13], and later compelling BLG to complete Murphy's responses to discovery. *See* [**Dkt. 88**, at 1]. While "an explicit warning is not always necessary," *Anheuser-Busch*, 69 F.3d at 353, these did not prevent Plaintiff from spoliating evidence, concealing that fact, and threatening witnesses. Her "obstructive misconduct has severely damaged the integrity of this litigation, and the court seriously doubts whether alternative sanctions will deter [Plaintiff] from further misconduct." *Am. Rena Int'l Corp.*, 2015 WL 12732433 at *31 (citation omitted).

"A party may not grossly abuse the judicial process and then expect to be allowed to litigate the merits of their case until they have exhausted graduated sanctions." *Id.* (citation omitted). Dismissing this case will not only spare

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

Defendants any more expensive abuses, but will vindicate the sanctity of the legal system, sending a strong signal to BLG–a repeat litigant–that willful spoliation of ESI and gross discovery misconduct will not be tolerated.

In conjunction with, or in the alternative to the above, Defendants respectfully requests the Court weigh these considerations to determine whether an admonishment, an adverse inference, *cf.* Fed. R. Civ. P. 37(e), and particularly an award of Defendants' costs and fees are appropriate remedies. "[A]n assessment of attorney's fees is undoubtedly within a court's inherent powers[.]" *Mark Indus., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 733 (9th Cir. 1995) Here, where Plaintiff's discovery strategy was to make Defendant hemorrhage expenses, recovery of these costs and fees would "vindicate[] judicial authority" over the orderly prosecution of claims, "and mak[e] the prevailing party whole for expenses caused by [their] opponent's [misbehavior]." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1108–09 (9th Cir. 2002), *as amended* (Feb. 20, 2002) Accordingly, Defendants respectfully request the Court also order Plaintiff and BLG to pay Defendants' costs and fees associated with defending against Plaintiff's claims. *Cf. Mitchell v. Corelogic, Inc.*, 424 F. Supp. 3d 815, 821 (C.D. Cal. 2019) (awarding sanctions and allowing party to "submit a full accounting of all fees and costs" related to misconduct).

## V. **CONCLUSION**

For the foregoing reasons, the Court should put an end to these abuses by issuing terminating sanctions and dismissing the action with prejudice.

Dated: November 13, 2024 Respectfully submitted,

KANE LAW FIRM

By: */s/ Brad S. Kane*

Brad Kane
Trey Brown
Attorney for Defendants
VXN Group LLC and Mike Miller

**KANE LAW FIRM**
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

23

MOTION FOR SANCTIONS PURSUANT TO RULE 37(e) AND THE COURT'S INHERENT POWER

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,996 words, which complies with the word limit of L.R. 11-6.1.

Dated: November 13, 2023 By: */s/ Brad S. Kane*
Brad Kane

## CERTIFICATE OF SERVICE

I, Brad S. Kane, hereby certify that this document has been filed on November 13, 2024, through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: November 12, 2024 By: */s/ Brad S. Kane*
Brad Kane

## CERTIFICATE OF COMPLIANCE WITH L.R. 7-3

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on October 31, 2024.

Dated: November 13, 2024 By: */s/ Brad S. Kane*
Brad Kane