# EXHIBIT B

```
                    UNITED STATES DISTRICT COURT
                   CENTRAL DISTRICT OF CALIFORNIA
                   (WESTERN DIVISION - LOS ANGELES)



MACKENZIE ANNE THOMA,          ) CASE NO: 2:23-cv-04901-WLH-AGRx
                               )
           Plaintiff,          )              CIVIL
                               )
    vs.                        )        Los Angeles, California
                               )
VXN GROUP, LLC, ET AL,         )      Tuesday, October 15, 2024
                               )
           Defendants.         )      (10:12 a.m. to 10:32 a.m.)


                             HEARING RE:

        MOTION TO OVERRULE RYAN MURPHY'S CLAIM OF PRIVILEGE
          AND COMPEL PRODUCTION OF DOCUMENTS [DKT.NO.105]


             BEFORE THE HONORABLE ALICIA G. ROSENBERG,
                   UNITED STATES MAGISTRATE JUDGE




APPEARANCES:              SEE PAGE 2


Court Reporter:           Recorded; CourtSmart


Courtroom Deputy:         K. Lozada


Transcribed by:           Exceptional Reporting Services, Inc.
                          P.O. Box 8365
                          Corpus Christi, TX 78468
                          361 949-2988




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.
```

**APPEARANCES**:

For Plaintiff:                SARAH H. COHEN, ESQ.
                              Bibiyan Law Group
                              1460 Westwood Boulevard
                              Los Angeles, CA 90024
                              310-438-5555


For Defendants:               TREY D. BROWN, ESQ.
                              11337 Ventura Boulevard
                              Studio City, CA 91604
                              432-296-9120

                              BRAD S. KANE, ESQ.
                              1154 S. Crescent Heights Boulevard
                              Los Angeles, CA 90035
                              323-697-9840

3

1  **Los Angeles, California; Tuesday, October 15, 2024; 10:12 a.m.**

2  **(Call to Order)**

3  **THE CLERK:** Calling Item Number 1, Case Number CV-23-

4  4901-WLH-AGR, *Mackenzie Anne Thoma versus VXN Group, LLC,*

5  *et al.*

6  Counsel, can you please state your appearances for

7  the record.

8  **MS. COHEN:** Good morning, Your Honor. Sarah Cohen

9  appearing on behalf of Plaintiff.

10  **MR. KING:** Good morning, Your Honor. Brad Kane

11  appearing on behalf of Defendants.

12  **MR. BROWN:** Good morning, Your Honor. Trey Brown

13  appearing on behalf of Defendants.

14  **THE COURT:** Okay. So I just have a few questions. I

15  just wanted to make sure first from the defense side, do you

16  agree that the text messages on the privilege log were

17  produced?

18  **MR. KING:** They were produced, yes, Your Honor.

19  **THE COURT:** Okay. All right.

20  **MR. BROWN:** Well, Your Honor, one thing on that.

21  They were produced albeit from two separate phones. The first

22  set of text messages were produced apparently from Ryan

23  Murphy's. And they were incomplete therefore we required -- we

24  had to follow up with Plaintiff's counsel to get the rest of

25  the messages that were hidden on the first production. The

**EXCEPTIONAL REPORTING SERVICES, INC**

1  second production of the text messages were screenshots from
2  the Plaintiff's phone.  So they were from two separate sources.
3         **THE COURT:**  Okay, all right.
4         So then the next had to do with request -- Document
5  Request Number 8.  So on this I wasn't as clear.
6         Request Number 8 asks for the communications between
7  Plaintiff and Ryan Murphy.  So what I thought was that the
8  documents were produced except for what was on the privilege
9  log and then they were ultimately produced.
10         So now for Ms. Cohen, is my understanding correct?
11  Are there any documents being withheld in response to Document
12  Request 8?
13         **MS. COHEN:**  Not any more, Your Honor, because we
14  produced them.  And they were produced by -- from two different
15  sources and that's because the ones from Mr. Murphy himself
16  were cutoff and he could not get the full versions.  So I went
17  to our client to go ahead and get the full versions to make
18  sure that defense counsel had everything they asked for.  And
19  we did lift the privilege on those.
20         And so to answer your question, Your Honor, there are
21  no further documents in response to Request Number 8 that are
22  being withheld or haven't been produced otherwise or covered
23  under any kind of privilege.
24         **THE COURT:**  Okay.  So then I guess the last issue is
25  Request Number 32 which asks for the data from I think this was

5

1   Mr. Murphy's Instagram account.  So on that one, again, not
2   clear.
3            It looks as though the second supplemental response
4   said that Mr. Murphy will produce all non-privileged documents
5   within his possession custody and control.  But then I didn't
6   understand from the briefing whether the Instagram account was
7   ever produced.
8            **MR. KING:**  Your Honor, it was not produced.
9            **MS. COHEN:**  There was never an order.
10           **MR. KING:**  But what we have gone through a number of
11  times is Plaintiff's counsel has done a very poor job of
12  arguing what is responsive or not responsive.  Here --
13           **THE COURT:**  I don't want to get into that yet because
14  the response to the document request says that all non-
15  privileged documents will be produced.
16           **MR. KING:**  Exactly.
17           **THE COURT:**  So why -- what is the dispute then?  My
18  question is to Ms. Cohen.  If that's what the response is then
19  why wasn't the Instagram account produced?
20           **MS. COHEN:**  Your Honor, to refresh the Court's
21  memory, what the agreement here was and in result of previous
22  IDCs is that the Court agreed that Defendants are not entitled
23  to everything that shows up on the Instagram archive, only
24  documents that are responsive to the other requests in the
25  subpoena.

1           What the Instagram archive request is essentially
2   requesting is everything that comes up in my client's Instagram
3   archive, whether it relates to the case or not, even if it's a
4   discussion with his mother, for example, about what time he's
5   coming to dinner should be produced.  That's what Defendants
6   are after.
7           So what we agreed to at the end of the IDCs was that
8   my client and I would check the Instagram archive for any
9   documents that are responsive to the other requests in the
10  subpoena.  Communications between certain people,
11  communications about the case, communications about the January
12  24th Instagram story.  And that was confirmed on multiple
13  occasions that we have produced everything responsive to the
14  other requests.
15          **THE COURT:**  Okay.  So then it isn't -- so then the
16  issue then is what in the Instagram -- was anything produced
17  out of the Instagram account?
18          **MS. COHEN:**  There were additional documents that were
19  produced from the Instagram archive.  I think we're on our
20  fourth supplemental responses now.  And I confirmed in an email
21  with defense counsel -- it's attached to my opposition motion -
22  - that everything responsive has been produced.  I attached the
23  communication to defense counsel.
24          **THE COURT:**  Okay.
25          **MS. COHEN:**  The only outstanding issue were these

1  text messages but what Defendants are doing are they're trying
2  to use the history of the issues with the text messages and
3  accuse me of underhanded tactics and withholding documents to
4  say that Plaintiff's counsel can't be trusted and therefore now
5  they get the whole --
6          **THE COURT:** Right.  No, I don't want to get into that
7  but I'm just looking at -- okay so first they start with the
8  response which didn't contain the modifications I guess.  So
9  then I wasn't sure where we were.  But if we are now talking
10 about Phase One discovery then as I saw your response to
11 defense counsel that responsive documents had been produced so
12 but I don't have a notion -- I don't have an idea of what that
13 was.
14         So you're saying that January 2024 posting and
15 postings about that posting were produced?
16         **MS. COHEN:** Yes, yes.  We went through everything and
17 confirmed that everything responsive to not only that posting
18 but all of the other I believe 35 requests in the subpoena.  We
19 compared those to what came up in the Instagram archive and
20 produced what was responsive.
21         **THE COURT:** Okay.  So any communications, let's say,
22 with Plaintiff about the work she was doing or the nature of
23 the work she was doing, has --
24         **MS. COHEN:** Well those didn't exist in the Instagram
25 archive.  Those -- those were explained in other responses that

1  anything that would have been a communication with Plaintiff
2  about that is contained on his work devices.  That was part of
3  our supplemental responses where we explained that he got a new
4  phone from AT&T as part of the trade-in process.  He had to
5  wipe everything.  In addition --
6         **THE COURT:**  I saw that.
7         **MS. COHEN:**  -- he no longer has access to his work
8  emails.  There was nothing in the Instagram archive.  And then
9  we discovered that the text messages between them which were
10 initially privileged which has now been lifted.  So I'm not
11 quite sure why we're here, Your Honor.
12        **THE COURT:**  Okay.  So let me hear then from defense
13 counsel on Request 32 which seems to be the last issue.
14        **MR. KING:**  Yes, Your Honor, thank you.
15              It seems like the only thing that we've gotten from
16 the Instagram archives were actually things that we pointed out
17 to Plaintiffs that they should have produced, which were the
18 postings and my communications with Mr. Murphy.  And every time
19 we seem to go through this process, they say they've done
20 something thorough and then I say, "Oh, well here's something
21 else that should have been produced that was in your client's
22 possession, custody" -- "Oh, okay, well now we'll do a
23 supplemental response on that and now we're done."  And then I
24 say, "Okay, well here's another document."  "Oh, okay, well now
25 we'll do that."

1          It is at this point, you know, we don't mind if a

2     third party goes through it.  We don't have to have it.  But we

3     have little to no confidence in this and this is highlighted by

4     the fact that Plaintiff's counsel does not deny.

5          She makes a lot of accusations but the accountant,

6     Mr. Lerner, was threatened with jail.  And his -- and his or

7     Plaintiff told him not to comply because it would hurt her

8     case.  These types of actions merit further scrutiny by the

9     Court and call into question the voracity.

10         For example, Plaintiff had the text messages but

11    didn't make a privilege log when she did her production, right?

12    But now only because we've tracked things down and it was in

13    her deposition that she had texts with Mr. Murphy after they

14    did the phone, then we find out, "Oh, well if that's true then

15    there must be text messages."  So now we get a privilege log

16    that is absolutely not privileged, just to make us work harder

17    and another obstacle.  And once we do this, hours later it's,

18    "Oh, well we'll withdraw this and we'll give it to you."  There

19    is a pattern.

20         And what it says in the text messages is, "We're

21    going to do everything we can to shut this down."  And that --

22    and we're happy to show you the text messages.  They were

23    marked "privileged" so we couldn't file it, there wasn't enough

24    time for us to do that but it shows you things that are very

25    important here, Your Honor.

1       Mr. Sid Vision (phonetic), who was the subject of the
2  post, saying he did all of these malevolent things, in
3  deposition, Mr. Murphy says, "I don't know why he said that, I
4  don't remember" and he wasn't involved.  But in the text
5  messages, Mr. Murphy says, "It was -- I don't know why they're
6  asking me, it was Dave, Sid and Todd."  So if we had had those
7  text messages when we had his deposition, it would have come
8  very differently.
9       And so we keep getting pulling the thread, finding
10 more things that have been hidden from us.  And when we --
11        **THE COURT:**  Well the thing is, you know, I take your
12 point, I understand what you're saying, but the only thing is
13 that because of this, the phased discovery, I don't think that
14 there's anything else for us to do under the circumstances in
15 this phase.  So it may be if there is a later phase then we can
16 address issues about whether the entire Instagram account gets
17 produced or whether only -- because it seems to me that if
18 Instagram could be anything, could be family, could be whatever
19 and then wouldn't be relevant to this case.  But I don't see
20 that there's anything for us to do at this phase.  I think
21 we're done.  From what I'm hearing I think everything that
22 would be responsive to this Phase One, from the text messages,
23 Request 8 and Request 32, have been completed.
24        And but specifically if there's -- I mean this issue
25 about what was posted in 2024, you know, lends some light on

1   the origins of the suit maybe, but I'm not sure how useful
2   that's going to be in terms of the Phase One issues.  So that's
3   why I say I think we've done as much as we can do in terms of
4   this --
5           **MR. KING:**  Your Honor --
6           **THE COURT:**  -- of this Phase One discovery.
7           **MR. KING:**  -- if I may?
8           The real issue here is that Mr. Murphy was
9   Ms. Thoma's agent.  And as her agent, her statements are
10  binding on the principal.  And what we have been denied here is
11  access to information that he had that actually makes these
12  statements credible that he was denied.
13          And in his statements he says he's tired of the
14  threats.  Well, the threats from who?  It wasn't Mr. Moz's
15  (phonetic) threats.  These were threats he's complaining of
16  from their side, from the Motley Model side.  And we didn't --
17  we were deprived of an opportunity to explore that.
18          And so I think at a minimum, we should be allowed to
19  have another short remote deposition with Mr. Murphy to discuss
20  these text messages that we were never privileged, were in the
21  knowledge of their client and should have been produced.  I
22  think that as a minimum is fair.
23          If you wanted to do what is just, we would have a
24  third party at Plaintiff's expense review this because it
25  boggles my mind that Mr. Murphy, during the Avianne Awards, is

1  going to post these things -- which are quite inflammatory --
2  and I'm the only person?  The only one that sends him a direct
3  message about it?  It's highly improbable.  And so that's why
4  we're asking for an independent third party to do a review.  I
5  think those things, if done in sequence, could be very useful
6  and are highly relevant to Phase One because she's going to
7  rely upon statements made by Mr. Murphy in his deposition.  And
8  if he's responding under threats and recanting testimony or his
9  text messages because of those threats, we're entitled to know.
10             **THE COURT:**  Well, for the -- perhaps for that I would
11 need to see the text messages.  That's a different question in
12 order to see whether -- Because I understand what you're saying
13 it goes to credibility and so that could conceivably be within
14 Phase One discovery.  But then that discovery cutoff has passed
15 and so the issue is really what is available here.
16             So I need to look at this to see whether we may need
17 to get the district judge's take on whether he would extend the
18 deadline for purposes of, for example, this proposed
19 deposition.  But I need to look back at his order to see if
20 that's within my power because as I recall, the deadline for
21 Phase One discovery has passed.  And so I think you are left
22 with the record that you have.  I don't think I can entertain
23 this unless you get relief from the district judge to permit
24 additional discovery to be taken.
25             **MS. COHEN:**  And Your Honor, in addition --

1          **MR. KING:**  Your Honor --

2          **MS. COHEN:**  -- to that --

3          **THE COURT:**  I'm sorry.  It's for Mr. Kane first on this point.

5          **MR. KING:**  Your Honor, we aren't prepared this morning because we could not file it without doing it under seal.  Mr. Brown has them available if we're allowed to share screen and we can show you the text messages if that would assist you.

10         **THE COURT:**  No, I think the issue is what my authority is at this point.  I wanted to make sure that the issues that we had addressed beforehand, before the discovery cutoff for Phase One had been addressed because there is authority in the Ninth Circuit that one can enforce one's own orders even after the discovery deadline because that was challenged I think even from a district judge's perspective and I believe that was my recollection of the Ninth Circuit's decision on that.

19              But in terms of new discovery -- so let's say a second deposition of Mr. Murphy -- I think my view, looking at the district judge's order is that you would need relief from the district judge to take further discovery on Phase One.  That's -- minimum.  I can deal with discovery disputes but I cannot change the district judge's schedule.

25         **MR. KING:**  If I could get some clarity, Your Honor,

1  because we're happy to move ex parte for relief.

2  　　　　　The question would be is that -- I understand this as
3  to Mr. Murphy, questioning him on the things that were not
4  properly produced.

5  　　　　　The other thing is as they were -- as Mr. Murphy was
6  previously ordered to complete his production regarding Request
7  32, that would seem to be an order that was not fulfilled or
8  there's strong evidence or inference that it was not fulfilled.
9  Therefore is that something that we need to also request in the
10 ex parte application?

11 　　　　　**THE COURT:** I would say so because the Plaintiff's
12 representation in the papers to you before the papers and then
13 to me again here today is that the Request 32 was completed
14 with respect to Phase One discovery. So whatever was
15 responsive in the Instagram account, whatever was supposed to
16 be produced regarding the Phase One discovery has been
17 produced. So if there's something further that you are going
18 to ask for, you would need to seek relief from the district
19 judge.

20 　　　　　**MR. KING:** Okay. And then to empower you to hold the
21 hearing on that because you're handling the discovery matters.
22 So in other words --

23 　　　　　**THE COURT:** Yeah I mean --

24 　　　　　**MR. KING:** Okay, got it.

25 　　　　　**THE COURT:** -- a discovery dispute I can handle but a

15

1  change in the schedule set by the district judge has to be
2  addressed to the district judge.  I don't have the authority to
3  change his discovery cutoff date, for example.
4          **MR. KING:**  Understood, Your Honor.
5          **THE COURT:**  And so you would need to make a showing
6  in front of him that this additional work should be done.  I
7  mean I think it's good cause or something in the (inaudible) 16
8  so I'm not going to say what it is -- I don't know what he's
9  going to require you to show.
10         All I'm saying is I think without his extension of
11 the deadline, I do not have any authority to order Phase One
12 discovery after Phase One -- after the Phase One cutoff is
13 completed.  And no one has sought relief from the district
14 judge to conduct anything further.
15         **MR. KING:**  Thank you, Your Honor.  We will do that.
16         **THE COURT:**  Yeah.  And I think one of the things that
17 you would need to address is whether this additional discovery
18 is related to Phase One.
19         **MR. KING:**  Yes, Your Honor.
20         **THE COURT:**  Okay.  All right.  I think we have taken
21 care of all of my questions.  I'm just going to go through them
22 here just to make sure all of my notes ... Yeah.  I think we've
23 covered everything.
24         All right.  Thank you very much everyone.
25         **MS. COHEN:**  Thank you, Your Honor.

      **MR. KING:** Thank you, Your Honor.

(Proceeding adjourned at 10:32 a.m.)

### CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                                November 21, 2024
      Signed                                                                              Dated

*TONI HUDSON, TRANSCRIBER*