**KANE LAW FIRM**
Brad S. Kane (SBN 151547)
*bkane@kanelaw.la*
1154 S. Crescent Heights. Blvd.
Los Angeles, CA 90035
Tel: (323) 697-9840; Fax: (323) 571-3579

Trey Brown (SBN 314469)
*trey.brown@vixenmediagroup.com*
11271 Ventura Blvd. #717
Studio City, CA 91604

*Attorneys for Defendants*
VXN GROUP LLC and MIKE MILLER

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| MACKENZIE ANNE THOMA, a.k.a. KENZIE ANNE, an individual and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> VXN GROUP, LLC, a Delaware limited liability company; MIKE MILLER, an individual; and DOES 1 to 100, inclusive, <br><br> Defendants. | Case No. **2:23–cv–04901 WLH (AGRx)** <br><br> **REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br><br> Date: February 28, 2025 <br> Time: 11:00 a.m. <br> Courtroom: 9B |

REPLY BRIEF REGARDING DEFENDANTS' MSJ

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

# TABLE OF CONTENTS

**TABLE OF CONTENTS**......................................................................................ii

**I.     INTRODUCTION** ..................................................................................1

**II.    ARGUMENT**..........................................................................................2

    **A.    Plaintiff is Exempt as a Professional Actor**.....................................2

        1.   VXN's Primary Purpose is to make Motion Pictures   2

        2.   Plaintiff Wrongly Interprets the Exemption   3

        3.   Plaintiff was a Professional Actor for VXN   4

    **B.    Summary Judgment Should be Granted Because Plaintiff is an Independent Contractor**........................................................................6

        1.   Borello Governs Plaintiff's Employment Status   6

        2.   Plaintiff Does Not Seriously Dispute that the Appearance Requirements were Results-Oriented   7

        3.   Plaintiff Fails to Raise a Genuine Dispute That Plaintiff Could Only be Terminated For-Cause   7

        4.   Plaintiff Was Free to Engage in Separate Business Ventures   8

        5.   Plaintiff Fails to Materially Dispute the Tools & Instrumentalities Factor   9

        6.   Plaintiff Fails to Credibly Dispute That She Was Engaged in a Distinct Occupation   9

        7.   The Agreements were not Limitless   10

        8.   Defendants Did Not Force Plaintiff to Form Loan Out Companies   10

**III.   CONCLUSION** .....................................................................................10

## I. INTRODUCTION

As a preliminary matter, Plaintiff does not dispute that: (1) VXN's films are widely distributed (JAF 2); (2) VXN's films have won many awards (JAF 10); (3) Plaintiff won awards for her performances in VXN's films (JAF 29); (4) Plaintiff's agent testified that all his clients, including Plaintiff, considered themselves professional actors (JAF 34); and (5) still photography is integral to VXN's filmmaking process (JAF 19, 20). Yet, Plaintiff disputes that VXN produces motion pictures and that she played a featured role in its films (JAF 1, 6). Similarly, Plaintiff disputes that VXN takes still photographs as part of the filmmaking process (JAF 8), yet admits they are used to "determine the visual look of the movie" and "for advertising and marketing purposes" (JAF 19, 20).

Plaintiff also does not dispute that: (6) she was paid per scene (JAF 42); (7) VXN's appearance requirements were related to production planning and actor safety (JAF 48, 49); and (8) she produced and marketed her own adult film website before and during her time with VXN (JAF 71, 74, 75, 82). Yet, Plaintiff disputes being paid a contractual rate per scene (JAF 5), claims VXN's appearance requirements reflect arbitrary control, and denies being engaged in a distinct occupation despite declaring self-employment on her tax returns.

Summary judgment is proper when the evidence shows "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if evidence allows a reasonable factfinder to resolve the issue in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted" as genuine. Id. at 249. Plaintiff's admissions reveal her disputes are based on irrelevant minutiae or

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

are speciously stated to obscure Defendants' basic facts. Finally, Plaintiff introduces evidence not disclosed during discovery to confuse the proceedings.[1]

## II.     ARGUMENT

### A.     Plaintiff is Exempt as a Professional Actor

Plaintiff urges this Court to liberally construe IWC 12 to exclude her from the PA Exemption, but "this principle does not provide [courts] with the authority to rewrite applicable legislation." *Salazar v. McDonald's Corp.*, 2017 WL 950986, at *3 (N.D. Cal. Mar. 10, 2017). Importantly, "the principle of liberal construction cannot be used as a pretext to create a liability against a person where none exists or appears to have been intended." *Messenger Courier Assn. of Americas v. California Unemployment Ins. Appeals Bd.*, 175 Cal.App.4th 1074, 1093 (2009).

#### 1.     VXN's Primary Purpose is to make Motion Pictures

Since its inception, VXN has been a motion picture production company. (JAF 14). Plaintiff's complaints describe VXN as an "well-known adult film production company." [**Dkt.** 26 ¶ 2]. Plaintiff's acknowledgment that Defendants' motion pictures "are extremely successful" and "have won many awards" [**Dkt.** 133-1 at 35] confirms that understanding.  To now claim otherwise is bad faith.

Plaintiff's reliance on *Miles* supports that VXN is a motion picture production company. *Miles* held that incidental activities do not redefine a business's primary purpose: "To hold that incidental activities bring the [city] within [a non-applicable wage order] would read the word 'purpose' right out of the order." *Miles v. City of Los Angeles*, 56 Cal. App. 5th 728, 737 (2020).

---

[1] For example, Plaintiff failed to produce JAE Exs. 54-60 during discovery.

2
REPLY BRIEF REGARDING DEFENDANTS' MSJ

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

KANE LAW FIRM
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

Similarly, Plaintiff's role being photographed was part of her job as a professional actor, enabling VXN to create, market and sell its movies.

A motion picture company selling merchandise tied to a "successful" and award-winning brand remains a motion picture production company. "It is common practice in the entertainment industry to exploit commercially the popularity of well-known motion picture and television personalities and characters in connection with a wide range of merchandise, and the public has come to expect such exploitation." *Universal City Studios, Inc. v. J.A.R. Sales, Inc.*, No. 82-4892, 1982 WL 1279, at *5 (C.D. Cal. 1982); *Lions Gate Ent. Inc. v. TD Ameritrade Holding Corporaiton*, 2016 WL 4134495, at *1 (C.D. Cal. 2016) (Dirty dancing movie sold merchandise); *Experience Hendrix, L.L.C. v. HendrixLicensing.com, LTD*, 766 F. Supp. 2d 1122, 1147 (W.D. Wash. 2011) ("[C]onsumers young and old are accustomed to assuming a licensing link between [merchandise] and the associated movie or television program.")

### 2. **Plaintiff Wrongly Interprets the Exemption**

Nothing in IWC 12 or its history supports Plaintiff's claim that the PA exemption is part of the "professional exemption." Plaintiff's interpretation renders the PA Exemption meaningless. If "the relevant 'legislative history' shows that plaintiff's reading of the statutes would restrict their evident meaning, disregard the Legislature's intent, defeat the overall statutory framework, and extend coverage to those for whom it obviously was not intended, adopting that reading 'would [impermissibly] rewrite the statute[s] in the guise of [liberally] construing' " them." *Skidgel v. California Unemployment Ins. Appeals Bd.*, 12 Cal. 5th 1, 23–24 (2021) (internal citations omitted).

Prior to adopting the words "professional actor," the IWC exempted anyone who "act[s], sing[s], dance[s] or otherwise perform[s]." JAE, Ex. 9, p 201.

3
REPLY BRIEF REGARDING DEFENDANTS' MSJ

The adoption of "professional actor" did not distinguish between actor and professional, it simply retained the prior definition while distinguishing between professional actors and extra players –background actors without comparable pay, fame, or recognition.

Plaintiff argues the PA exemption is not redundant within a "professional exemption" because it includes extra protections like minimum wage. However, when "professional actor" exemption was added in 1957, the provision read: "this Order shall not apply to professional actors or actresses, nor shall Sections 4 through 12 apply to women employed in administrative, executive, or professional capacities." *Id*. The language would have been redundant if the PA Exemption were part of the "professional capacities" exemption. Further, the minimum wage provision wasn't added until 2000. *Id* at 202. Plaintiff does not claim she was an "extra" in VXN's films but argues she was a model because VXN took photographs. However, it makes sense for VXN to photograph Plaintiff as the star in its movies. "[T]he categorization of a particular task as exempt or nonexempt will depend not only on the nature of the task, but also on the purpose for which it was being performed on a given occasion." *Wellons v. PNS Stores, Inc*., 2022 WL 16902199, at *10 (S.D. Cal. Nov. 10, 2022).

### 3.     **Plaintiff was a Professional Actor for VXN**

Courts consistently recognize adult film stars as professional actors. *See, e.g., Michaels v. Internet Ent. Grp., Inc*., 5 F. Supp. 2d 823, 840 (C.D. Cal. 1998) ("Lee is a professional actor. She has played roles involving sex"); *People v. Freeman*, 46 Cal. 3d 419, 429 (1988) (Payment of acting fees legal to person who has sex on camera); *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 893 (9th Cir. 2016) (Discussing a world-famous pornographic actress). Plaintiff remains a professional actor even if she had sex on camera or if VXN did not

4
REPLY BRIEF REGARDING DEFENDANTS' MSJ

providing acting classes. "An actor's skill or talent may range anywhere from that of a regular cast member on 'Baywatch' to that of a Shakespearean actor...No distinction is drawn between serious actors and bad actors, no assessment is made of the aesthetic value of their performance or of the message they seek to present." *Harrell v. Diamond A Ent., Inc.,* 992 F. Supp. 1343, 1356 (M.D. Fla. 1997). If anything, the lack of any such training is indicative of Plaintiff's independent contractor status.

Plaintiff's declaration stating, "I had not performed any acting in a professional setting prior to or during my time working with Defendants." JAE, Ex. 71 ¶ 3. This falls under the sham affidavit doctrine.[2] At the same time she worked for VXN, she acted in HBO's Euphoria, which is why she was eligible for SAG-AFTRA membership. *Id.*, Ex. 28, p.84:1-25; Ex. 29 p.67:18-25.

Plaintiff also argues she was a model based on VXN's documents. But the adult film industry often uses "model" in contracts for adult film actors. *Molloy v. RK Netmedia, Inc.*, 2009 WL 10669608, at *2 (C.D. Cal. 2009) ("Prior to signing the exclusive performance agreement, Molloy signed a contract ("Model Release") on January 25, 2007, which concerned her performance that day in a production filmed in Woodland Hills, California."). Testimony confirms that VXN's use of "model" was "legacy language from a previous owner" and unrelated to commercial photography sales. *See* JAE, Ex. 8 p. 81, 11-17.

Ultimately, what Plaintiff actually did–not what the Agreements state–controls. *United Parcel Serv. Wage & Hour Cases*, 190 Cal.App.4th 1001, 1014-105 (2010) ("Any employee's classification as exempt must be based on a review

---

[2] Defendants will file a separate motion to strike on this basis.

5
REPLY BRIEF REGARDING DEFENDANTS' MSJ

of the actual job duties performed by that employee…the regulations identify job duties, not job titles").

### B. Summary Judgment Should be Granted Because Plaintiff is an Independent Contractor

#### 1. Borello Governs Plaintiff's Employment Status

Plaintiff's professional actor status exempts her from Wage Order 12's overtime, wage statement, meal, and rest period requirements. Thus, any remaining claims arising under the Labor Code are analyzed under *Borello*, not the ABC test. Nevertheless, Plaintiff disregards the established distinction between wage-order and Labor Code based claims. *See, e.g., Bowerman v. Field Asset Services, Inc.*, 60 F.4th 459, 471–72 (9th Cir. 2023) (*Borello* applied to reimbursement claims under Labor Code § 2802); *Cal. Trucking Ass'n v. Su*, 903 F.3d 953, 959 n.4 (9th Cir. 2018) (*Borello* applies outside wage-order contexts); *Salter v. Quality Carriers, Inc.*, 2021 WL 5049054, at *7 (C.D. Cal. 2021) (*Borello* applies to wage statement and waiting time penalty claims that arose under the Labor Code, not a wage order). Plaintiff incorrectly relies on *Gonzalez v. San Gabriel Transit*, Inc., 40 Cal.App.5th 1131 (2019), which applied the ABC test only to Labor Code claims *rooted in* wage orders, leaving other claims to *Borello*.

None of Plaintiff's citations support the assertion that courts classify motion picture actors as employees. *Tieberg v. Unemployment Ins. Appeals Bd.*, 2 Cal.3d 943 (1970) (writers); *Schaller v. Indus. Acc. Com.*, 11 Cal.2d 46 (1938) (trapeze artist); and *Durae v. Indus. Acc. Com.*, 206 Cal.App.2d 691 (1962) (rodeo stunt performer). Further, *Schaller* and *Durae* did not hold the performers were employees as a matter of law, only that a commission's prior findings were reasonable. *Durae*, 206 Cal.App.2d 691, at 701; *Schaller*, 11 Cal.2d 46, at 51.

6
REPLY BRIEF REGARDING DEFENDANTS' MSJ

## 2. Plaintiff Does Not Seriously Dispute that the Appearance Requirements were Results-Oriented

Plaintiff conflates industry-standard quality control with employer-like control. Courts assess control in the context of industry norms. *See, Poland v. United States Att'y Gen.*, 2012 WL 13001837, at *11. In creative fields like film production, collaborative input is inherent. *See, Alberty-Velez v. Corporacion de Puerto Rico Para La Difusion Publica*, 361 F.3d 1, 9 (1st Cir. 2004).

Appearance requirements in Plaintiff's Agreements reflect control over results, not methods. Such standards ensure continuity and quality, akin to a "right to inspect" or "prescribe alterations," which do not establish employee status. *See, Ortolivo v. Precision Dynamics Int'l*, LLC, 2023 WL 7440249, at *5 (N.D. Cal. 2023). In film production, continuity of appearance serves artistic and contractual objectives, not pervasive day-to-day control. *Cf. Alexander v. FedEx Ground Package System, Inc*., 765 F.3d 981, 990 (9th Cir. 2014). Indeed, Plaintiff does not dispute that these requirements facilitated planning and ensured safety during production. (JAF 48-49).

## 3. Plaintiff Fails to Raise a Genuine Dispute That Plaintiff Could Only be Terminated For-Cause

Plaintiff incorrectly asserts that the Agreements' "for cause" provisions allow termination "whenever [Defendants] wished." Termination expressly required "cause," such as uncured material breach, unreasonable availability, or failure to meet agreed standards—criteria far from at-will termination. The right-to-cure distinguishes these Agreements from at-will employment. See, e.g., Joint Appendix of Evidence, Vol. II, Ex. 23 at ¶¶ 7.1, 7.2 (termination allowed only if breach is unresolved within 48 hours). See, *Urena v. Earthgrains Dist*., 2017 WL 4786108, at *5-6 (S.D. Cal. 2017). The "subjective artistic expectations" clause,

7
REPLY BRIEF REGARDING DEFENDANTS' MSJ

typical in creative industries, does not negate good faith obligations. Plaintiff misapplies *Cotran v. Rollins Hudig Hall Int'l, Inc.*, 17 Cal.4th 93 (1998), which addressed wrongful termination, concluding only that "good cause" does not permit termination for arbitrary or capricious reasons unrelated to business goals. Here, the Agreements' discretion to maintain "subjective artistic expectations" reflects the artistic standards required of producers, not arbitrary control. Finally, Plaintiff offers no evidence those subjective standards were applied in bad faith.

### 4. Plaintiff Was Free to Engage in Separate Business Ventures

Plaintiff fails to dispute the that Agreements allowed her to engage with other businesses and her ventures. Instead, she asserts that her inability to "hire others to complete work for her" establishes employee status. However, personal performance is inherent to acting services.

Plaintiff also misunderstands the applicability of *Desimone* and *Mission Ins. Co.*, highlighting industry differences while ignoring the principles of exclusivity and control. Both cases affirm that exclusivity clauses do not inherently create employment relationships. *See, Desimone v. Allstate Ins. Co.*, 2000 WL 1811385, at *14–15 (N.D. Cal. 2000); *Mission Ins. Co. v. Workers' Comp. Appeals Bd.*, 123 Cal.App.3d 211, 224 (1981). In *Desimone*, independent contractor status was upheld despite restrictions on working for competitors, as individuals could engage in non-competing ventures. Similarly, *Mission Ins. Co.* emphasized that limited restrictions supported independent contractor status.

Here, Plaintiff's Agreements reflect these principles. The 2020 Agreement restricted work for competitors but permitted non-competing ventures. *See*, JAE, Vol. II, Ex. 23 at ¶ 7.1. The 2021 Agreement was entirely non-exclusive. *See*, Id., Ex. 26 at ¶ 7.1.

8
REPLY BRIEF REGARDING DEFENDANTS' MSJ

### 5. Plaintiff Fails to Materially Dispute the Tools & Instrumentalities Factor

Plaintiff's argument that Defendants' provision of tools and locations indicates control lacks proper context. In film production, courts assess whether provided tools are essential to the worker's specific duties, not the entire project. *See, Alberty-Velez*, 361 F.3d 1, at 8. Here, wardrobe, makeup, and intimacy aids were incidental to production and not Plaintiff's primary acting tools.

Ownership of these tools is irrelevant to the control analysis. Plaintiff retained great autonomy over the creative elements of her work. (JAF 54–64). Moreover, the tools' minor value relative to the intellectual and creative nature of her role diminishes their relevance. *See, Tieberg*, 2 Cal.3d 943, at 953–54. Similarly, determining shoot locations is part of production logistics, not control over performance methods. Film locations must be centrally coordinated to accommodate crew, talent, and artistic objectives. These factors reflect results-oriented collaboration, consistent with an independent contractor relationship.

### 6. Plaintiff Fails to Credibly Dispute That She Was Engaged in a Distinct Occupation

Plaintiff's claim that she "didn't perform for any entity aside from Defendants" is plainly contradicted by her own deposition testimony and her agent's testimony. (JAF 83). Her attempt to label the Agreements' exclusivity provisions as a "non-compete" is also inaccurate. The Agreements only limited certain competitive conduct during their terms and imposed no restrictions on her business activities afterward.

Indeed, Plaintiff did perform for other studios, and produced and released numerous films on her own website (JAF 71, 75, 81). Indeed, Plaintiff's tax

9
REPLY BRIEF REGARDING DEFENDANTS' MSJ

returns indicate that she received payment as an independent contractor from numerous entities during the contract period.

### 7. The Agreements were not Limitless

Plaintiff's claim that the Agreements permitted Defendants to limitlessly order Plaintiff to work is absurd – the Agreements merely highlight that revisions may be necessary to complete a film. This is standard across the motion picture industry and in no way creates a "limitless" term. Plaintiff's hypothetical scenarios are not evidence.

### 8. Defendants Did Not Force Plaintiff to Form Loan Out Companies

Plaintiff's claim that VXN forced her to form a loan-out company to receive payment is false, illogical and based on inadmissible hearsay elicited by her attorneys ("Did Vixen require you to maintain an LLC to get paid for your work?"). See, JAE, Vol. V, at p. 641 ("Vixen had told Dave Rock and Ryan Kona to advise me to get an LLC for payment or I couldn't work."). VXN *never* issued payment to Plaintiff's loan-out companies, as evidenced by the Form 1099s issued directly to Plaintiff. (JAF 45; JAE, Vol. II, Ex. 20).

Plaintiff does not dispute she was making Kenzieland films before working with VXN (JAF 74) and testified she "ran Kenzieland *my business* without an LLC" before that time. JAE, Vol. II, Ex. 28 at p. 413 (*emphasis added*). Further, Plaintiff admitted she created her other company, Lola March, LLC, to accept payments and file taxes as an independent contractor. *Id.* at 421.

### III. CONCLUSION

For the foregoing reasons, the Court should grant Summary Judgment or Summary Adjudication to Defendants on the grounds that: (1) Plaintiff is exempt as a professional actor; and (2) Plaintiff is an independent contractor.

**KANE LAW FIRM**
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035

Dated: January 17, 2025                KANE LAW FIRM

By:    */s/ Brad Kane*
Brad S. Kane
Trey Brown
Attorneys for Defendants

REPLY BRIEF REGARDING DEFENDANTS' MSJ

**KANE LAW FIRM**
1154 S. Crescent Heights Blvd.
Los Angeles, CA 90035