**BIBIYAN LAW GROUP, P.C.**
Sarah H. Cohen (SBN 330700)
sarah@tomorrowlaw.com
1460 Westwood Boulevard
Los Angeles, California 90024
Tel: (310) 438-5555; Fax: (310) 300-1705

Attorneys for MACKENZIE ANNE THOMA, on behalf of herself and all others similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MACKENZIE ANNE THOMA, a.k.a KENZIE ANNE, on behalf of herself and all others similarly situated employees,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>VXN GROUP LLC, a Delaware limited liability company; MIKE MILLER, an individual; and DOES 1 to 100, inclusive,<br><br>　　　　　　Defendants, | CASE NO. 2:23-cv-04901-WLH-AGR<br><br>[Assigned for all purposes to the Hon. Wesley L. Hsu]<br><br>**PLAINTIFF MACKENZIE ANNE THOMA'S REPLY IN SUPPORT OF MOTION TO MODIFY THE COURT'S SCHEDULING ORDER**<br><br>HEARING:<br>Date: December 19, 2025<br>Time: 10:00 a.m.<br>Location: Videoconference<br><br>*[Filed concurrently with Declaration of Sarah H. Cohen]* |

1
PLAINTIFF'S REPLY ISO MOTION TO MODIFY SCHEDULING ORDER

I. **INTRODUCTION**

Defendants do not dispute the central facts that support Plaintiff's motion: (1) this case was mired in motion practice for more than a year before Plaintiff could even begin meaningful discovery; (2) "Phase 2" class discovery did not open until after summary judgment and was further complicated after the recent narrowing to a single Labor Code § 203 claim; (3) Defendants resisted producing basic class-wide discovery—including contact information and native time and pay records—necessitating multiple informal discovery conferences and motion practice; and (4) key discovery remains outstanding and will not reasonably be completed under the current schedule.

In their opposition, Defendants instead focus on a technical argument that under the Court's Order Setting Scheduling Conference and the Civil Pretrial Schedule and Trial Order, Plaintiff's MCC must be filed nine weeks before the last day to hear the motion. Plaintiff accepts that the Court's orders, read together, require the MCC to be filed nine weeks before the January 30, 2026 class-certification hearing deadline, i.e., by November 28, 2025. The question here is whether Rule 16(b)'s "good cause" standard and Rule 23's command that class certification be decided "[a]t an early practicable time" permit rigid enforcement of that filing date in a case where (a) Defendants' own motion practice and discovery conduct delayed the progress of meaningful class discovery and frustrated the ability to comply with the current schedule; (b) Defendants only completed production of class contact information in late October 2025 despite Plaintiff requesting the information five (5) months prior; (c) production of critical pay data remains incomplete; (d) Plaintiff still does not have the native pay data and "next regular payday" information necessary to analyze timeliness of payment; and (e) Plaintiff's counsel made an honest mistake regarding the interplay of the nine-week requirement and the Civil Pretrial Schedule Order while continuing to litigate the case diligently.

Under Ninth Circuit precedent, district courts have broad discretion to manage their calendars, but scheduling orders and local practices cannot be applied in a manner that is "incompatible" with Rule 23's flexible standard or that deprive parties of a fair opportunity to develop the factual record necessary to litigate class certification. (See *ABS Entm't, Inc. v. CBS Corp.*, 908 F.3d 405, 427–28 (9th Cir. 2018). Nor may a missed deadline—especially after phased discovery, ongoing discovery disputes, and a good-faith misunderstanding of how the Court's orders interact—be used as a back-door path to extinguish class claims where there is no bad faith and no prejudice. "Dismissal is a harsh penalty and is to be imposed only in extreme circumstances." (*Henderson v. Duncan*, 779 F.2d 1421, 1423 (1986).)

Plaintiff respectfully submits that this is not such a case. Plaintiff has been diligent in prosecuting her claims and in attempting to comply with the Court's orders. Defendants, by contrast, have repeatedly multiplied the proceedings, including through successive motions attacking the pleadings, a motion for judgment on the pleadings, a motion for a protective order to prevent the release of contact information for class members, and now a motion to compel a forensic ESI vendor—many of these occuring during the limited Phase 2 discovery window. Considering this history, and the absence of any meaningful prejudice to Defendants, good cause exists to grant Plaintiff's modest request to move the class-certification and related dates approximately 180 days after mediation, and to align class certification with the Court-ordered mediation date.

## II. THE RECORD SHOWS PLAINTIFF'S DILIGENCE AND DEFENDANTS' DELAYS

### a. The Case Could Not Leave the Pleading Stage for More Than a Year

As set out in Plaintiff's pending motion for sanctions under 28 U.S.C. § 1927 (Dkt. 149), this case has been heavily litigated since removal. Defendants filed multiple Rule 12 motions and have stymied Plaintiff's efforts to move this case forward. Defendants continue to do so by withholding critical native pay data and

purposely delayed the production of class contact information. Phase 2 discovery did not begin until this Court issued its order on Defendants' motion for summary judgment (Dkt. 165) Prior, the Court granted Defendants' request to bifurcate discovery into two phases, confining Plaintiff to Phase 1 discovery on threshold issues and deferring class wide discovery until Phase 2. Defendants ignore that Plaintiff's ability to comply with Dkt. 44 and later scheduling orders was necessarily constrained by the phased-discovery structure they themselves requested. (Cohen Decl. ¶¶ 3-7.)

### b. Plaintiff Has Diligently Pursued Phase 2 Discovery While Defendants Withheld Crucial Information

Once Phase 2 opened following summary judgment, Plaintiff diligently served targeted class wide discovery. Since that time, Plaintiff has repeatedly sought crucial information—for example, performer contracts, policies, native time and pay data, and class member contact information—while Defendants have resisted and delayed. (Cohen Decl. ¶ 8.) Plaintiff has engaged in multiple IDCs with Judge Rosenberg, has met and conferred extensively, and has attempted wherever possible to resolve disputes informally in order to conserve resources and focus on the Court-ordered mediation. These efforts are reflected on the Docket and attached as evidence to Plaintiff's Motion (Dkt. 220). (Cohen Decl. ¶¶ 9-10.)

### c. Defendants Delayed Production of Class Contact Information, Making It Practically Impossible to Interview 500 Performers Before November 28, 2025

Defendants admit that class contact information was not fully produced until late October 2025. This is despite Plaintiff initiating further meet and confer efforts regarding privacy concerns in contact information on the same day as requesting contact information. (Cohen Decl. ¶ 11, Ex. A.) Defendants did not even begin producing class contact information until four (4) months later on September 5, 2025, after Judge Rosenberg ordered it; they then produced additional batches on October 7, 21, 22, and 23, 2025, and contact information for all performers was not complete

4

until October 23, 2025. (Dkt. 221-1 at ¶ 4.) Thus, Plaintiff had a complete list of contact information for approximately 500 putative class members for barely five weeks before the November 28, 2025 MCC filing date. (Cohen Decl. ¶ 10.)

In that short span, Plaintiff could not possibly conduct initial outreach and follow-up interviews with hundreds of performers—while also preparing this motion, addressing Defendants' November 17, 2025 meet-and-confer letter, and responding to Defendants' ongoing discovery motions. Defendants' suggestion that Plaintiff's counsel is inadequate class counsel and should have completed this entire process by November 28, 2025 is offensive, ignores both practical realities, and their own role in delaying the production of contact information.

### d. Rolling Pay-Data Production Revealed That Additional Information Is Necessary to Analyze Timeliness of Payment

Defendants' production of pay information has likewise been piecemeal. As Defendants have produced pay information on a rolling basis, it has become apparent that Plaintiff does not yet have adequate information to analyze whether payments were made by the "next regular payday" following the end of each engagement as required by Labor Code § 201.5 which *may* be applicable here rather than Labor Code §§ 201 and 202. Plaintiff still lacks the native pay data, (*e.g.*, wire-transfer records), and payroll calendar information necessary to compare the date each performer's services ended to the date of payment and to the applicable "regular payday." (Cohen Decl. ¶ 12.)

It was not crystallized until the November 21, 2025 IDC that Defendants possess wire transfer information that Plaintiff must obtain through formal discovery. This information is critical as the only pay data produced to date is internal Excel pay data created by Defendants who have an interest in modifying the data. The native wire transfer data will help ensure that Plaintiff is relying on accurate pay data to determine the true timing of payments to Performers for Labor Code § 203 purposes whether under Labor Code §§ 201, 201.5 or 202. (Cohen Decl. ¶13.)

     To conserve resources for the parties' upcoming mediation, Plaintiff has attempted to obtain this information informally. As far back as April 17, 2025, Plaintiff began meet and confer efforts to select a mediator and mediation date in order to comply with the deadline to complete private mediation by July 10, 2026 (Dkt. 167). Plaintiff also expressed the option to stipulate to continue pre-trial dates in line with mediation with the intention of shifting to informal discovery for mediation purposes in order to conserve time and resources taken up by formal litigation. *Id.* Despite Plaintiff's efforts, Defendants did not agree to mediation until five (5) months later on September 26, 2025. On that same day, Plaintiff provided Eve Wagner's availability for mediation.) (Cohen Decl. ¶ 14, Ex. B.)

     Following a telephonic meet and confer on October 7, 2025, Plaintiff further met and conferred on October 21, 2025 as to outstanding issues such as the status of contact information, native pay records, scene reports reflecting dates of work performed, a stipulation to modify the scheduling order, and the exchange of information for mediation as well as the scope of mediation. (Cohen Decl. ¶ 15, Ex. C.) As recently as October 22, 2025, Defendants were once again difficult with producing critical information. (Cohen Decl. ¶ 16, Ex. D.) Plaintiff has clearly attempted to resolve these issues cooperatively without immediate resort to motion practice. Defendants' refusal to provide complete native data now makes it necessary for Plaintiff to propound additional narrowly tailored discovery and, if needed, seek further Court assistance—tasks that simply could not be completed in time to file a fulsome MCC on November 28, 2025.

> **e. Discovery Has Revealed that Labor Code Section 201.5 and Defendants' Contracting Practices Are Central, Requiring a Shift in Focus**

     As Defendants finally began producing contracts and pay records, the nature of the case became more apparent. It became clear that most putative class members are professional performers engaged for a single day or short-term shoot under Wage

Order 12, and that Defendants frequently treat those engagements as project-based contracts. Through this discovery, Plaintiff realized that Labor Code section 201.5—which governs the timing of payment for employees in the motion picture industry and ties payment to the "next regular payday" of the employer for the payroll period in which wages were earned—may be directly implicated. (Cohen Decl. ¶ 17.)

Defendants' contracting practices and the way they schedule and process payments only became apparent when they responded to Phase 2 discovery. Plaintiff then understood that this may not be a typical Labor Code section 203 case in which the only question is whether wages were paid immediately upon termination or within 72 hours of separation; rather, the additional core issue now is whether Defendants complied with section 201.5's "next regular payday" requirement. That realization, based on Defendants' own records, required a different focus in discovery—namely, obtaining evidence of Defendants' payroll calendar and their position on when they contend the "next regular payday" is for each relevant payroll period, and comparing that to the native pay data. Plaintiff still does not have that information but intends to obtain it through formal discovery. Plaintiff is also amenable to meeting and conferring as to whether Defendants will produce the information informally and confidentially for mediation purposes. (Cohen Decl. ¶ 18.)

### III.   GOOD CAUSE EXISTS UNDER RULE 16(b)(4)

A scheduling order may be modified "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good cause" inquiry "primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). A court may modify the schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* Where the moving party has been diligent, courts also consider prejudice and the availability of less drastic alternatives.

Here, Plaintiff has diligently prosecuted this case from the outset, but the current schedule cannot reasonably be met because of (1) the long period in which the case

was confined to the pleading and Phase 1 stages; (2) the bifurcation ordered at Defendants' request; (3) Defendants' motion practice and resistance to class-wide discovery during Phase 2; (4) the late production of class contact information; and (5) the incomplete, rolling production of pay data that only recently revealed the centrality of Labor Code section 201.5 and the need for additional information about Defendants' "next regular payday." Plaintiff acted promptly in moving to modify the scheduling order once it became clear that she could not responsibly file an MCC by the current schedule's deadlines, while simultaneously completing necessary discovery and preparing for mediation.

### IV. MEDIATION AND JUDICIAL ECONOMY FURTHER SUPPORT MODIFICATION OF THE SCHEDULE

Plaintiff first raised mediation with Defendants on April 17, 2025. Due to Defendants' delay, the parties did not agree to mediation until five (5) months later when the only dates available were mid-2026. The Court set a mediation-completion deadline of July 10, 2026 and incorporated the mediation into its Civil Pretrial Schedule and Trial Order. The very purpose of that order and of Local Rule 16-15 is to encourage early, efficient resolution of cases through mediation and other ADR processes. The record is clear that Plaintiff attempted for five (5) months to place this case on the resolution track. (Cohen Decl. ¶ 19.)

Moreover, the requested continuance is consistent with how courts in this District routinely manage their dockets to facilitate settlement. The Court has already ordered the parties to mediation, and Plaintiff secured a date with private mediator Eve Wagner. Forcing the parties to brief and argue a complex class-certification motion on an incomplete record immediately before mediation would undermine, not advance, that order and would waste party and judicial resources if the case resolves. Courts in the Central District regularly stay or extend discovery and other deadlines for limited periods where, as here, the parties are engaging in good-faith mediation efforts. (See, e.g., *Young v. Mophie Inc.*, No. 8:19-cv-00827-JVS-DFM (C.D. Cal.

Apr. 20, 2020) (granting joint motion to stay all case deadlines 60 days and extend discovery deadlines pending mediation); *Lindsay v. Torn & Glasser, Inc.*, No. 2:17-cv-03060-ODW (KKx) (C.D. Cal. May 4, 2017) (staying proceedings pending early mediation under C.D. Cal. L.R. 16-15); *In re GTT Commc'ns, Inc. Sec. Litig.*, No. 2:21-cv-00270-DOC-AS (C.D. Cal. June 8, 2021) (staying action pending scheduled mediation); *Wang v. Dada Nexus Ltd.*, No. 2:24-cv-00239-SVW-BFM (C.D. Cal. July 2024) (granting joint stipulation to stay deadlines pending mediation); *Schimmel v. Mercedes-Benz USA, LLC*, No. 2:21-cv-04973-FLA-AS, ECF No. 42 (C.D. Cal. July 18, 2023) (continuing scheduling-order deadlines for good cause to permit mediation). A modest, mediation-aligned extension of approximately six months here is fully in line with these decisions and with Rule 1's directive to secure the "just, speedy, and inexpensive" determination of this action.

It is not judicially economical to require Plaintiff to brief and argue a complex class-certification motion—based on incomplete pay data and limited class-member outreach—before mediation. Doing so would force the parties and the Court to expend substantial time and resources on class-certification briefing that may prove unnecessary if the case resolves at or after mediation. Courts in this District routinely stay or extend discovery and other case deadlines for limited periods to facilitate good-faith mediation efforts and potential settlement. A modest, mediation-aligned extension of the class-certification schedule here is fully consistent with that practice and with principle of securing the just, speedy, and inexpensive determination of every action.

## V. ANY MISUNDERSTANDING ABOUT THE NINE-WEEK REQUIREMENT WAS AN HONEST MISTAKE, NOT GAMESMANSHIP, AND DISMISSAL WOULD BE AN EXTREME AND UNWARRANTED SANCTION

Defendants imply that Plaintiff's counsel either ignored or sought to evade the nine-week requirement. That is incorrect. As set forth in the accompanying

Declaration of Sarah H. Cohen (¶¶ 20-23), counsel genuinely misunderstood the interaction between the Court's Order Setting Scheduling Conference, the Civil Pretrial Schedule and Trial Order, and the parties' competing proposed briefing schedules. Counsel believed, erroneously but in good faith, that the parties could negotiate a briefing schedule in their amended joint scheduling report that would allow class-certification briefing closer to the January 30, 2026 hearing deadline, particularly in light of the phased discovery structure and the Court-ordered mediation.

Compounding the confusion, Defendants themselves proposed an eight-week opposition and six-week reply schedule that would have forced Plaintiff to file an MCC as early as mid-November 2025—before class contact information was fully produced and while key time-and-pay and section 201.5 discovery remained outstanding. Plaintiff did not sit on her hands. Plaintiff promptly prepared and filed the instant motion to modify the scheduling order before the deadline expired and before a long-scheduled Thanksgiving vacation from November 25 through December 1, 2025. There were no underhanded tactics—only an honest mistake in interpreting the Court's orders in the context of an unusually complex procedural history and ongoing discovery disputes.

In these circumstances, using the nine-week requirement to effectively dismiss Plaintiff's class claims would be an extreme and unnecessary sanction. The Ninth Circuit has repeatedly cautioned that dismissal is a "harsh penalty" that should be imposed "only in extreme circumstances." (*Henderson*, 779 F.2d at 1423; see also *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130–31 (9th Cir. 1987) (identifying factors courts must consider before imposing case-terminating sanctions, including prejudice, the public policy favoring disposition on the merits, and the availability of less drastic alternatives)). None of those factors supports terminating the class claims here. There is no evidence of bad faith, no meaningful prejudice to Defendants given the August

31, 2026 trial date, and obvious less drastic alternatives—including the modest six-month extension Plaintiff requests.

## VI. <u>PLAINTIFF'S CLASS-CERTIFICATION PLAN FURTHER DEMONSTRATES DILIGENCE AND MINIMIZES ANY PREJUDICE</u>

To further assuage any concern about delay, Plaintiff has prepared a detailed Class Certification Plan. (Cohen Decl. ¶ 24.) In summary, Plaintiff proposes to:

1. Serve additional narrowly tailored discovery by the end of the week of December 8, 2025, focused on native time-and-pay data, proof of wire transfers, payroll calendars, and Defendants' contention as to the "next regular payday" applicable to each relevant payroll period;

2. Complete outreach and interviews with putative class members over the next ninety (90) days, using the contact information finally produced in late October 2025;

3. If the case does not resolve at the May 16, 2026 mediation, promptly schedule and complete Rule 30(b)(6) depositions of Defendants concerning payment practices, recordkeeping, contracting practices, and policies bearing on Labor Code sections 201.5 and 203 and Rule 23's requirements; and

4. File Plaintiff's MCC by the proposed new deadline set forth in the Motion to Modify, with a corresponding opposition and reply schedule that allows the Court sufficient time to hear and decide the motion well in advance of trial.

This plan reflects Plaintiff's commitment to moving the case forward expeditiously and to presenting the Court with a well-supported class-certification record that will facilitate efficient adjudication or meaningful settlement. Far from seeking to avoid class certification, Plaintiff is taking concrete steps—despite Defendants' discovery tactics—to ensure that an MCC can be filed on a realistic timeline consistent with Rule 23 and the Court's calendar.

///

## VII. CONCLUSION

For all of the foregoing reasons, and those set forth in Plaintiff's opening brief, Plaintiff respectfully requests that the Court grant the Motion to Modify the Scheduling Order and grant such other and further relief as the Court deems just and proper.

Dated:  December 5, 2025                BIBIYAN LAW GROUP, P.C.

                                                         */s/ Sarah Cohen*
                                                       SARAH H. COHEN
                                                       Attorneys for Plaintiff, MACKENZIE ANNE THOMA, and on behalf of herself and all others similarly situated

## **LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Mackenzie Anne Thoma, certifies that this brief contains 3,182 words, which complies with the word limit of L.R. 11-6.1.

Dated: December 5, 2025           BIBIYAN LAW GROUP, P.C.

*/s/ Sarah H. Cohen*
Sarah H. Cohen
Attorneys for Plaintiff MACKENZIE ANNE THOMA, on behalf of herself and all others similarly situated