**BIBIYAN LAW GROUP, P.C.**
Sarah H. Cohen (SBN 330700)
sarah@tomorrowlaw.com
1460 Westwood Boulevard
Beverly Hills, California 90024
Tel: (310) 438-5555; Fax: (310) 300-1705

Attorneys for MACKENZIE ANNE THOMA, on behalf of herself and all others similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MACKENZIE ANNE THOMA, a.k.a KENZIE ANNE, on behalf of herself and all others similarly situated employees,<br><br>Plaintiffs,<br><br>v.<br><br>VXN GROUP LLC, a Delaware limited liability company; MIKE MILLER, an individual; and DOES 1 to 100, inclusive,<br><br>Defendants, | CASE NO. 2:23-cv-04901-WLH-AGR<br><br>[Assigned for all purposes to the Hon. Wesley L. Hsu]<br><br>**DECLARATION OF SARAH H. COHEN IN SUPPORT OF PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO MODIFY SCHEDULING ORDER**<br><br>HEARING:<br>Date: December 19, 2025<br>Time: 10:00 a.m.<br>Location: Videoconference<br><br>*[Filed concurrently with Plaintiff's Reply]* |

Law Offices of
BIBIYAN LAW GROUP
A Professional Corporation
1460 Wilshire Boulevard
Beverlyl Hills, Callifornia 90024
(310) 438-5555

1
DECLARATION OF SARAH H. COHEN

# DECLARATION OF SARAH H. COHEN IN SUPPORT OF PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER

1. I am an attorney duly licensed to practice law before all the courts of the State of California. I am a Partner with Bibiyan Law Group, P.C., counsel of record for Plaintiff Mackenzie Anne Thoma ("Plaintiff") in this action. I have personal knowledge of the facts set forth in this Declaration, and if called as a witness, could and would testify competently thereto.

2. I submit this declaration in support of Plaintiff's Reply in Support of Motion to Modify the Court's Scheduling Order.

## Background and Procedural History

3. Plaintiff filed this putative class action in Los Angeles Superior Court on April 20, 2023. Defendants removed the action to this Court on June 21, 2023.

4. From removal through approximately March 2025, the case remained largely in the pleading and dispositive-motion stage. Defendants filed multiple Rule 12 motions attacking Plaintiff's complaints and sought to narrow or eliminate. Plaintiff's claims. Defendants moved to bifurcate discovery and the Court granted that request and issued an order phasing discovery. Discovery was divided into Phase 1 and Phase 2, with class wide discovery deferred until after certain threshold issues were resolved.

5. As set forth in Plaintiff's motion for sanctions under 28 U.S.C. § 1927 (Dkt. 149), Defendants' motion practice and litigation conduct required Plaintiff to respond to numerous motions and applications before meaningful class-wide discovery could begin. The case did not effectively exit the pleading and Phase 1 stages until the Court issued its summary judgment order.

6. Following the Court's bifurcation of discovery, Phase 1 focused on threshold liability issues. Phase 2 class discovery—including discovery of class contact information and time-and-pay records—did not open until after the Court's summary

judgment ruling and the issuance of the Civil Pretrial Schedule and Trial Order (Dkt. 168).

7. During the Phase 2 period, Defendants continued to file motions that consumed time and resources, including a motion for judgment on the pleadings, a motion for a protective order seeking to restrict production of class contact information, and a motion to compel a forensic search of Plaintiff's personal electronic devices and accounts via a third-party ESI vendor. The parties have also engaged in at least three informal discovery conferences ("IDCs") with Magistrate Judge Rosenberg since Phase 2 discovery opened, in connection with these and other discovery disputes.

### Diligent Efforts to Obtain Classwide Discovery

8. Following summary judgment, my office promptly served Phase 2 discovery directed at performer contracts, policies, class contact information, native time and pay records, and documents regarding Defendants' payment practices, including wire transfers used to pay performers.

9. Defendants resisted producing class contact information, leading to meet-and-confer efforts and ultimately an IDC with Judge Rosenberg on July 11, 2025. Judge Rosenberg subsequently authorized Defendants to file a motion for protective order concerning disclosure of class contact information, and Defendants filed that motion on July 26, 2025.

10. On August 27, 2025, Judge Rosenberg granted Defendants' motion in part and ordered Defendants to produce by September 5, 2025, class contact information correlated with performer identification numbers on a spreadsheet, subject to the existing protective order. Defendants did not begin producing class contact information until September 5, 2025, and then produced additional batches on October 7, 21, 22, and 23, 2025. According to defense counsel, class contact information for all performers was not complete until October 23, 2025. I had a

complete list of contact information for approximately 500 putative class members for barely five weeks before the November 28, 2025, MCC filing date.

11. I initiated meet and confer efforts for the production of class contact information on the same day as propounding formal discovery requests requesting contact information. Attached hereto as **Exhibit A** is a true and correct copy of my meet and confer email.

12. I have sought native electronic time-and-pay data and documentation of wire transfers used to pay performers but will need to propound additional discovery. Rather than produce the underlying data, Defendants initially offered an internal Excel spreadsheet prepared by counsel as a purported summary of payments. As Defendants have produced additional pay information on a rolling basis, it has become apparent that Plaintiff does not yet have adequate information to compare the timing of payments against the end of each performer's employment and the "next regular payday" for the relevant payroll period. My office has repeatedly met and conferred with Defendants' counsel about the need for the underlying native data, wire-transfer records, and payroll calendar information so that we can perform that analysis.

13. It was not crystallized until the November 21, 2025, IDC that Defendants possess wire transfer information that Plaintiff must obtain through formal discovery. This information is critical as the only pay data produced to date is internal Excel pay data created by Defendants who have an interest in modifying the data. The native wire transfer data will help ensure that Plaintiff is relying on accurate pay data to determine the true timing of payments to Performers for Labor Code § 203 purposes whether under Labor Code §§ 201, 201.5 or 202.

14. To conserve resources for the parties' upcoming mediation, Plaintiff has attempted to obtain this information informally. As far back as April 17, 2025, I began meet and confer efforts to select a mediator and mediation date in order to comply with the deadline to complete private mediation by July 10, 2026 (Dkt. 167). I also expressed the option to stipulate to continue pre-trial dates in line with mediation with

the intention of shifting to informal discovery for mediation purposes in order to conserve time and resources taken up by formal litigation. Despite my efforts, Defendants did not agree to mediation until five (5) months later on September 26, 2025. On that same day, Plaintiff provided Eve Wagner's availability for mediation. Attached hereto as **Exhibit B** is a true and correct copy of my meet and confer email and Defendants' confirmation of mediation not until September 26, 2025.

15. Following a telephonic meet and confer on October 7, 2025, Plaintiff further met and conferred as to outstanding issues such as the status of contact information, native pay records, scene reports reflecting dates of work performed, a stipulation to modify the scheduling order, and the exchange of information for mediation as well as the scope of mediation. Attached hereto as **Exhibit C** is a true and correct copy of my meet and confer email.

16. As recently as October 22, 2025, Defendants were once again difficult with producing native pay information. Attached hereto as **Exhibit D** is a true and correct copy of my meet and confer email.

### Labor Code Section 201.5 and Defendants' Contracting Practices

17. As Defendants produced contracts and pay records in Phase 2, it became clear that most putative class members are professional performers engaged for a single day or short-term shoot under Wage Order 12. Defendants' contracts reflect that they routinely engage performers on a project basis and pay them per "scene" or shoot rather than as traditional hourly employees.

18. Based on these documents, I came to understand that Labor Code section 201.5—governing payment timing for certain employees in the motion picture industry and tying payment to the "next regular payday" for the payroll period in which the work is performed—is directly implicated. Prior to these productions, I believed the case would present a more typical application of Labor Code section 203, focusing on whether wages were paid within 72 hours of the end of employment. As Defendants' contracting practices and pay records became

clearer, I realized that the core issue is instead whether Defendants complied with section 201.5's "next regular payday" requirement. This realization required a shift in our discovery focus. In addition to the native pay data, we now need information about Defendants' payroll calendar and their position as to when they contend the "next regular payday" falls for each relevant payroll period so that we can compare those dates to the actual payment dates reflected in the native records. We still do not have that information, and it is not feasible to complete this discovery and analysis and file a fulsome MCC under the current timeline. I am amenable to meeting and conferring as to whether Defendants will produce the information informally and confidentially for mediation purposes.

### Mediation and Scheduling

19. I first raised mediation with Defendants on April 17, 2025. Due to Defendants' delay, the parties did not agree to mediation until five (5) months later when the only dates available were mid-2026. I attempted for five (5) months to place this case on the resolution track. The purpose of the mediation is to save time and resources for the Court and the parties. In my view, it is not judicially economical to brief and hear a complex class-certification motion before mediation on an incomplete record. Aligning class-certification briefing with the mediation schedule, rather than forcing Plaintiff to file an MCC before critical pay and section 201.5 discovery is completed, is more consistent with the policy underlying this Court's ADR orders.

### Honest Mistake Regarding the Nine-Week Requirement and Thanksgiving Travel

20. I understand from Defendants' opposition that the Court's Order Setting Scheduling Conference and Civil Pretrial Schedule and Trial Order, read together, require that class-certification motions be filed at least nine weeks before the last day to hear such motions. The Civil Pretrial Schedule sets January 30, 2026, as the last day to hear class-certification motions. I therefore accept that the Court's orders,

properly construed, require Plaintiff's MCC to be filed by November 28, 2025, absent modification of the schedule.

21. My failure to appreciate this nine-week requirement earlier was an honest mistake, not an attempt to evade the Court's orders. In negotiating and evaluating the schedule, I focused on the January 30, 2026 hearing deadline and believed, in good faith, that the parties could propose a briefing schedule in their amended joint report that would allow for class-certification briefing closer in time to that hearing date, particularly given the need for Phase 2 discovery, the bifurcated structure, and the scheduled May 2026 mediation.

22. Defendants' own proposed briefing schedule during the meet-and-confer process contemplated an eight-week opposition and six-week reply period, which, by their calculations, would have forced Plaintiff to file an MCC as early as mid-November 2025—before class contact information was fully produced and while key time-and-pay and section 201.5 discovery remained outstanding. I viewed that proposal as unworkable for the reasons explained above and did not understand that there was a November 28, 2025 as a hard deadline for filing an MCC.

23. I also had long-scheduled Thanksgiving travel from November 25, 2025 through December 1, 2025. I prioritized moving for relief from the schedule so that the Court could address the timing issue well before the deadline passed. We prepared and filed Plaintiff's Motion to Modify the Scheduling Order before my departure for Thanksgiving travel. There were no underhanded tactics involved; I sought to bring the scheduling issue to the Court's attention as promptly and transparently as possible.

### **Class-Certification Plan**

24. To minimize any prejudice to Defendants and to demonstrate Plaintiff's continued diligence, my office has developed a concrete plan to complete the remaining discovery necessary to file a motion for class certification. We intend to:

(a) serve additional narrowly tailored discovery by the end of the week of December 8, 2025, focused on native time-and-pay data, wire-transfer records, payroll calendars, verified responses as to dates of employment, and Defendants' contentions regarding the "next regular payday"; (b) continue outreach and interviews with putative class members using the contact information produced in late October 2025, with a goal of substantially completing these contacts within ninety (90) days; (c) if the case does not resolve at the May 16, 2026 mediation, promptly schedule and complete Rule 30(b)(6) depositions of Defendants concerning payment practices, recordkeeping, contracting practices, and policies bearing on Labor Code sections 201.5 and 203 and Rule 23's requirements; and (d) file Plaintiff's motion for class certification by the extended deadline requested in the Motion to Modify, with a corresponding opposition and reply schedule that allows the Court sufficient time to hear and decide the motion well in advance of the current trial date.

25. My office stands ready to work diligently within the modified schedule to complete discovery and present the Court with a fully supported MCC that will allow for efficient adjudication of class certification and facilitate a meaningful mediation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 5th day of December 2025 at Los Angeles, California.

  /s/ Sarah H. Cohen
SARAH H. COHEN