UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-04901-WLH-AGR | Date | April 24, 2026 |
|---|---|---|---|
| Title | *Mackenzie Anne Thoma v. VXN Group, LLC et al* | | |

Present: The Honorable   WESLEY L. HSU, United States District Judge

| Lesbith Castillo | None |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
| None | None |

**Proceedings:**   **(IN CHAMBERS) ORDER RE PLAINTIFF'S MOTION TO CERTIFY [239]**

The Court is in receipt of Plaintiff Mackenzie Anne Thoma's Motion for Class Certification. (Mot. for Class Cert. ("Mot."), Docket No. 239). No party filed a written request for oral argument stating that an attorney with five years or less of experience would be arguing the matter. (*See* Standing Order, Dkt. No. 20 at 16). The Court held oral argument on April 23, 2026. For the reasons below, the Motion is **GRANTED**.

## I. BACKGROUND

Plaintiff Mackenzie Anne Thoma ("Plaintiff"), who uses the stage name "Kenzie Anne," is a performer in the adult film industry. (*See* Fourth Amended Complaint ("4AC"), Dkt. No. 204 ¶ 1). Plaintiff brought a putative class action against VXN Group, LLC ("VXN"), VXN's Executive Director, Mike Miller, and DOES 1 through 100, inclusive (collectively, "Defendants"), alleging the failure to pay waiting time penalties in violation of Cal. Lab. Code Section 203, which states that "[i]f an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

paid or until an action therefor is commenced[.]" (*See generall*y 4AC; *see also* Cal. Lab. Code § 203(a)).  Plaintiff's lawsuit "has been narrowed to a single cause of action for failure to pay waiting time penalties pursuant to Labor Code Section 203." (Mot. at 4; *see also* 4AC).  Plaintiff argues that Defendants violated Section 203 by 1) "misclassifying Class Members as independent contractors to avoid paying wages for hours that Class Members worked on off-set/pre-shoot preparation work" *(Id.* at 4-5; *see also* 4AC ¶ 67) and 2) "fail[ing] to timely pay Class Members by the next regular payday following completion of their specified employment . . . as required by Cal. Labor Code § 201.5(b), (d)." (Mot. at 5; *see also* 4AC ¶ 23).

VXN is an adult film production company.  (4AC¶ 2). Plaintiff had a working relationship with Defendants from November 2020 through September 2022.  (*Id.* ¶¶ 8-9, 33).  During this period, Plaintiff "performed in Defendants' movies and modeled at their direction."  (*Id.* ¶ 8).  To perform services on Defendants' behalf, performers and models were required to enter into Performance Agreements, Model Release Agreements, and/or Loan Out Agreements.[1]  (*Id.* ¶ 3).  Plaintiff entered into two performance agreements and nineteen Model Release Agreements with VXN.  (*Id.* ¶¶ 8-9, 33; Compendium of Declarations ("Decl. Compendium"), Declaration of Mackenzie Anne Thoma ("Pltf. Decl."), Dkt. No. 239-2, Ex. A ¶¶ 3-5).

A.    **Performance Agreements**

On November 11, 2020, Plaintiff entered into a contractual agreement with VXN to "engage[] [Plaintiff] to act, model and provide other services . . . for [VXN's] adult motion pictures and photographs ("Scene" or "Scenes") for the brands and websites

---

[1] Plaintiff asserts that VXN "entered into [twenty-one] Loan Out Agreements for acting services with various LLCs and corporations."  (Pltf. Compendium of Evidence ("Pltf. COE")), Defendant's Objections and Responses to Plaintiff's Special Interrogatories, Dkt. 239-3, Ex. B at 6-7).  The Parties did not provide a copy of the Loan Out Agreement for the Court to review.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

Vixen.com and Blacked.com ("Brand" or "Brands")." (Appendix of Evidence, Performance Agreement dated November 11, 2020 ("Performance Agreement 1"), Dkt. No. 245-1, Ex. 2 at 1) (emphases removed).  Performance Agreement 1 initially contemplated a six-month duration. (*Id*. at 4).  The contract was extended until August 28, 2021, with an addendum.  (Appendix of Evidence, April 2021 Addendum to Performance Agreement, Dkt. No. 245-1, Ex. 3).

Plaintiff and VXN entered into a second Performance Agreement to renew the terms on July 13, 2021.  (Appendix of Evidence, Second Performance Agreement dated July 13, 2021 ("Performance Agreement 2"), Dkt. No. 245-1, Ex. 4).  The duration was again extended by an addendum until December 31, 2023 (Appendix of Evidence, June 2022 Addendum to Second Performance Agreement, Dkt. No. 245-1, Ex. 5).

The Performance Agreements explicitly state that Plaintiff is "an independent contractor" and is not "deemed an employee of [Defendant VXN]."  (Performance Agreement 1 at 4; Performance Agreement 2 at 4).  The Performance Agreements contemplate compensation in terms of payment on a per-scene basis and include a section entitled "Hours and Obligations for Services," stating that Plaintiff would need to "provide the services on an as-needed basis, including nights, weekends, and holidays." (Performance Agreement 1 at 1-2; Performance Agreement 2 at 1-2).  Performance Agreement 2 also explicitly states that if Plaintiff "is not available on the date proposed by [Defendant VXN] to film a Scene, [Plaintiff] will provide an alternative date within two weeks of [Defendant VXN's] originally proposed date."  (Performance Agreement 2 at 1).  The Performance Agreements state that VXN could terminate the contract "at any time for Cause." (Performance Agreement 1 at 4; Performance Agreement 2 at 4). Cause was defined as "(1) material, uncured breach of this Agreement; (2) inability to meet [VXN's] subjective artistic expectations; (3) failure to follow any framework;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

(4) violation of [VXN's] rules; (5) violation of any applicable laws, rules, or regulations; or (6) failure to follow [Defendant VXN's] directions; (7) unreasonable unavailability; (8) or as otherwise set forth throughout this Agreement." (*Id*.). On September 28, 2022, VXN notified Plaintiff that her contract was being terminated for cause, citing her "unreasonable unavailability." (Appendix of Evidence, Termination Notice, Dkt. No. 245-1, Ex. 10).

The Performance Agreements explicitly state that "Performer waives the right to receive any other consideration for the Services performed under this Agreement, including royalties, residuals, or commissions. Performer acknowledges that no further sums are payable by Producer by reason of exploitation of the content or the results and proceeds of Performer's services under this Agreement." (Performance Agreement 1 at 1; Performance Agreement 2 at 1).

The Performance Agreements also state that throughout the duration of the contract "[Plaintiff] will maintain [her] physical appearance, and [she] will submit to the reasonable personal grooming requests of [Defendant VXN], as such may be considered a norm in the adult entertainment industry." (Performance Agreement 1 at 3; Performance Agreement 2 at 3). If Plaintiff "change[d] her physical appearance . . . (including adding or subtracting tattoos or piercings) without first obtaining written permission by [VXN]," VXN had the ability to terminate the agreement if any breach was not resolved within 48 hours. (*Id*.). Plaintiff was also required to undergo testing for "HIV, hepatitis, COVID-19, or any other medical condition," for which VXN would "fully cover the testing costs." (Performance Agreement 1 at 4; Performance Agreement 2 at 3-4). The time spent taking the health tests were not covered in the Performance Agreement. (*Id*.; *see also* 4AC ¶ 57).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

### B.    Model Release Agreements

Each performer was required to also execute a separate Model Release Agreement for each day of shooting.  (Pltf. COE, Deposition of Jessica Ayala ("Ayala Depo"), Ex. A at 101:3-16).  The Model Release Agreement explicitly states that a

> [m]odel will **render** services as an actor/performer for one or more films or performances at the direction of and for [VXN], at such times, dates and places as [VXN] shall set forth. Model agrees to render such serves on an exclusive basis for those dates, times and places. Model further agrees to render such services including, but not limited to, pre-production services, and services at other times designated by [VXN] until the film(s) and/or performance(s) are complete."

(Decl. Compendium, Model Release Agreement ("Model Release"), Thoma Ex. A ¶ 2) (emphasis added).  The Model Release Agreement also states that a model is paid a flat rate "[i]n complete consideration for the services rendered and to be rendered under [the] Agreement."  (*Id*. ¶ 4).

### C.    Class Certification

Plaintiff proposes to certify the following class[2] under Rule 23(b)(3):

> **Class:** All persons in the position of "Performer" or "Model" who worked for Defendants under a Model Release and Grant of Rights Agreement, a Performance Agreement and/or a Loan Out Agreement and whom Defendants classified as independent contractors in California at any time between April 20, 2020, through the date the class is certified.

(Mot. at 2).

---

[2] Should the Court conclude that performers engaged under the Performance Agreements and Model Release Agreements warrant separate treatment, "Plaintiff requests certification of two subclasses: (1) a Performance Agreement Subclass and (2) a Model Release Subclass, each with the same legal theory and the same common proof regarding classification and pay timing." (Mot. at ii).  The Court does not conclude at this time that the performers warrant separate treatment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

## II. LEGAL STANDARD

Rule 23 of the Federal Rules of Civil Procedure requires that a party seeking class certification demonstrate that "the class is so numerous that joinder of all members is impracticable;" that "there are questions of law or fact common to the class;" that "the claims or defenses of the representative parties are typical of the claims or defenses of the class;" and that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(1)–(4). The party seeking class certification must also satisfy at least one of the three requirements listed in Rule 23(b). Fed. R. Civ. P. 23(b). Rule 23(b)(3) requires a showing that "the questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods of fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

When determining whether to certify a class or classes, the district court's analysis must be "rigorous"—that is, a party seeking class certification must affirmatively demonstrate with evidentiary showings that it has met the requirements of Rule 23; the district court may not infer that class certification is warranted based on the pleadings. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). This rigorous analysis will entail "some overlap with the merits of Plaintiff's underlying claim." *Id.*; *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) ("[A] district court *must* consider the merits if they overlap with the Rule 23(a) requirements."). *But see Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 964 (9th Cir. 2013) ("Rule 23(b)(3) requires [only] a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." (citation omitted)). Plaintiff bears the burden of establishing that all Rule 23 requirements are met. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

### III.     DISCUSSION

#### A. Numerosity

Under Rule 23(a)(1), a class may be certified only if it "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "As a general rule, classes of forty or more are considered sufficiently numerous." *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 617 (C.D. Cal. 2008), *vacated on other grounds*, 666 F.3d 581 (9th Cir. 2012). Here, the proposed class is made up of between 656 and 767 performers. (Mot. at 5-6; *see also* Decl. Compendium, Declaration of Sean Chasworth ("Chasworth Decl."), Ex. B ¶ 20). Defendants argue that: "Plaintiff cannot establish that any other member of the proposed class suffered a labor code violation"; (2) "Plaintiff fails to demonstrate any of the class members were entitled to [compensation for pre-shoot work]"; (3) class members were timely paid; and (4) Plaintiff fails to established evidence of willfulness. (Opp'n at 6-10). At the class certification stage, Plaintiff does not need to prevail on the merits of their claims, as these questions should be properly reserved for trial. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." (citation omitted)). Because joinder of at least 656 members is impracticable, the proposed class satisfies the numerosity requirement.

#### B. Commonality and Predominance

To meet the commonality requirement of Rule 23(a)(2), a plaintiff must show that the class claims present a common question such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. A plaintiff "need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution," however. *Wang*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

*v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013).  "So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)."  *Id*. (quotation omitted).

Rule 23(b)(3) presents the related requirement that common questions, to the extent they exist, "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).  This ensures that "adjudication of common issues will help achieve judicial economy." *Zinser*, 253 F.3d at 1189. (citation omitted).  A plaintiff "must show that 'damages are capable of measurement on a classwide basis,' in the sense that the whole class suffered damages traceable to the same injurious course of conduct underlying the [plaintiff's] legal theory." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) (*quoting Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)). Importantly, however, the plaintiff "need not show that each members' damages from that conduct are identical." *Id*.

Plaintiff has shown that common questions predominate on her claim.  In this instant case, the underlying legal issues are:  (1) whether the putative class members were improperly classified as independent contractors in violation of California law; (2) whether pre-shoot preparation work is compensable labor time; (3) whether the putative class members received untimely wage payments; and (4) whether Defendants' failure to pay wages due was willful.  (Mot. at 6-12).  Here, Plaintiff has shown that the putative class members sign a standard contract form Performance Agreement and/or Model Release Agreement and that "Defendants have a universal policy classifying all Performers as independent contractors." (Mot at 7; *see also* Pltf. COE, Defendant VXN's Responses to Interrogatories, Set Three, No. 23(a),(c), Ex. C at 4; *id*., Deposition of Lisa Belen Burditte ("Burditte Depo.") at 24:1-24.).  "Courts have certified classes where similar issues were presented as to whether the class members were employees or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

independent contractors." *Alfred v. Pepperidge Farm, Inc.*, 322 F.R.D. 519, 544 (C.D. Cal. 2017), *modified by* 2017 WL 5665019 (C.D. Cal. July 13, 2017).

Defendant argues that "[a]n individualized inquiry into, among other things, the level of control VXN exercised over the various members of the putative class must be performed." (Opp'n at 10). But the Court notes that since "the scope of the right to control is governed by the Agreements, which are common, and evidence of actual operational control or independence can be presented at a trial, this factor weighs in favor of finding predominance as to this claim." *Alfred*, 322 F.R.D. at 546; *see also S.G. Borello & Sons, Inc. v. Dep't of Indus. Rels.*, 48 Cal.3d 341, 356–58 (Under California labor laws, whether a driver is an employee or an independent contractor will turn on the defendant's right to control that driver, not on whether the defendant fully exercised that control.). Plaintiff thus demonstrated the predominance of common questions.

### C. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative part[y] are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The purpose of the typicality requirement is "to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992), *overruled on other grounds by Dukes*, 564 U.S. at 347–48. Typicality "is a permissive standard," and "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and Composites, Inc.*, 209 F.R.D. 159, 164 (C.D. Cal. 2002) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

conduct.'" *Hanon*, 976 F.2d at 508 (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

Defendants argue that there is no evidence or allegation in the Complaint that putative class members share Plaintiff's allegations. (Opp'n at 12). For example, Defendants contend that "Plaintiff's claims are not typical of the class because she makes unique allegations about non-payment for a 'documentary style' film." (*Id*.) According to Defendants, the cases cited by Plaintiff are inapposite because "the present case involves varied claims by persons who allege VXN failed to pay them for different aspects of pre-scene preparation work." (Opp'n at 11).[3]

On the other hand, Plaintiff argues that typicality is satisfied because the putative class members' claims involve the same set of operative facts and legal theories. For example, Plaintiff and the putative class members were required to execute Performance Agreements and/or Model Release Agreements, and Defendants had a universal policy to treat performers as independent contractors. (Mot. at 12; *see also* Ayala Depo. 101:3-15; Burditte Depo., pg. 24:1-24; Pltf. Decl. ¶ 5). They were subject to the health testing and grooming requirements pursuant to the contract terms. (*Id*.).

The Court finds Plaintiff's arguments more persuasive. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Plaintiff's claim is therefore "typical" of (even if not identical to) those of the rest of the putative class members.[4]

---

[3] Defendants contend that the Court has found that Plaintiff and the other members of the putative class are exempt from IWC 12's protections. (Opp'n at 12; *See also* Order Re Motion for Summary Judgment, Dkt. No. 165). Even if the putative class members are exempt from IWC 12, that is a classwide issue and does not weigh against the typicality requirement.

[4] Defendants also argue that "[t]he named plaintiff's lack of credibility or other evidence affecting proof of her claim is also a basis to find the plaintiff has not shown typicality." (Opp'n

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

### D. Adequacy

Under Rule 23(a)(4), a class may be certified only if the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This requires "(1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel."  *Dalton v. Lee Publ'ns, Inc.*, 270 F.R.D. 555, 560 (S.D. Cal. 2010) (citations omitted).

Here, Defendants do not contest the adequacy of her counsel but raise several concerns about Plaintiff's adequacy, including her lack of alleged credibility, which the Court finds unavailing.  For example, Defendants argue that Plaintiff has made "false or contradictory representations"—in particular, Plaintiff elected to file her taxes as an independent contractor.  (Opp'n at 14).  "[T]he honesty and credibility of a class representative is a relevant consideration," but "[c]redibility problems do not automatically render a proposed class representative inadequate."  *Harris v. Vector Mktg. Corp.*, 753 F.Supp.2d 996, 1015 (N.D. Cal. 2010).  Here, whether Plaintiff filed her taxes as an independent contractor has no bearing on her legal claim in this action that putative class members are misclassified as independent contractors.  *Del Campo v. American Corrective Counseling Servs., Inc.*, 2008 WL 2038047, (N.D. Cal. May 12, 2008) (stating

---

at 12-13).  Specifically, Defendants assert that "Plaintiff's claims are also not typical of the class because there is evidence that is particular to Plaintiff that shows she agreed she was an independent contractor, despite her allegations now that she was VXN's employee." (*Id.*).  The Court finds this argument unavailing. "California law is clear that '[t]he label placed by parties on their relationship is not dispositive.'" *Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981, 992 (9th Cir. 2014) (alteration in original).  The "belief of the parties as to the legal effect of their relationship is not controlling if as a matter of law a different relationship exists." *Haitayan v. 7-Eleven, Inc.*, 2021 WL 4078727, at *9 (C.D. Cal. Sept. 8, 2021) (citing *Grant v. Woods*, 71 Cal.App.3d 647, 654 (1977)), *aff'd sub nom. Haitayan v. 7-Eleven, Inc.*, 2022 WL 17547805 (9th Cir. Dec. 9, 2022).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

that, "[g]enerally, unsavory character or credibility problems will not justify a finding of inadequacy unless related to the issues in the litigation." (citation omitted)).

Defendants also argue that Plaintiff is in conflict with the putative class members. (Opp'n at 15-16).  Specifically, Defendants contend that "Plaintiff asserts she and the unnamed class members are employees, but the class members do not want to be treated as employees." (*Id*.).  But Defendants misunderstand the adequacy inquiry.  "The fact that some class members may prefer an independent contractor status does not destroy a motion for certification."  *Taylor v. Shippers Transp. Express, Inc.*, 2014 WL 12347060, at *6 (C.D. Cal. Mar. 10, 2014).  "[T]he conflicts that Rule 23(a)(4) is concerned about are conflicts between the class representatives and other members of the putative class, not between those who do and don't think a lawsuit is a good idea in the first place."  *Norris-Wilson v. Delta-T Grp., Inc.*, 270 F.R.D. 596, 606 (S.D. Cal. 2010); *see also Guifu Li v. A Perfect Franchise, Inc.*, 2011 WL 4635198, at *9 (N.D. Cal. Oct. 5, 2011) ("The fact that ... some potential class members may prefer their current employment situation, is not sufficient to defeat adequacy.").  Moreover, these potential class members could elect to opt out.

Defendants further argue that "Plaintiff is not an adequate class representative because she no longer works with VXN."  (Opp'n at 16).   While "a class representative's status as a former employee is a factor" the Court must weigh, "there is no absolute bar against a former employee representing a class that includes current employees."  *Abdullah v. U.S. Sec. Assocs., Inc.*, 2011 WL 11733702, at *2 (C.D. Cal. Jan. 11, 2011), *aff'd*, 731 F.3d 952 (9th Cir. 2013).[5]  In fact, "some courts have held that former

---

[5] According to Plaintiff's declaration, she seeks to "[r]epresent the interest of all members of the class in litigation to recover damages or obtain injunctive relief for the class" for alleged labor code violations.  (Pltf. Decl. ¶ 18).  The Cout clarified at oral argument that Plaintiff does not seek injunctive relief for the class for the alleged labor code violations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

employees provide superior representation in claims against the employer on behalf of current employees." *Maddock*, 248 F.R.D. at 238; *see also* <u>Pryor v. Aerotek Sci., LLC</u>, 278 F.R.D. 516, 529 (C.D. Cal. 2011) (concluding that a former employee was able adequately to represent the class); *Wofford v. Safeway Stores, Inc.*, 78 F.R.D. 460, 489–90 & n.6 (N.D. Cal. 1978) ("[T]here is ample support for the position that former employees may represent present employees."); *Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 234, 247 (3rd Cir. 1975) (allowing a former employee to represent current employees because "being familiar with (the company's) employment practices and being free from any possible coercive influence of management" made the former employee plaintiff better suited to challenge the company's alleged discriminatory practices).  Notwithstanding Plaintiff's former employee status, Plaintiff and the putative class members are all "equally interested in obtaining compensation for the assertedly unlawful practices set forth" in the Fourth Amended Complaint.  *See Glass v. UBS Fin. Servs., Inc.,* 331 F. Appx 452, 455 (9th Cir. 2009).

According to Defendants, "Plaintiff does not have a stake in claims made during a majority of the time period for which Plaintiff seeks certification (April 20, 2020, through the present), and therefore she is not an adequate class representative."  (Opp'n at 16).  To support their position, Defendants cite *Alfred,* 322 F.R.D. at 540 and relied on it heavily at oral argument.  But the Court finds that case is distinguishable to the circumstances here.  In *Alfred*, the plaintiffs, former distributors, brought a putative class action against the defendant for misclassification of its distributors as independent contractors rather than employees.  *Id.* at 522.  Prior to initiating the action, the Plaintiffs sold their distributorships.  *Id.* at 540.  Defendants argued that the named Plaintiffs had a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

potential conflict because the litigation would "have an adverse effect on *the value of the distributorships owned by the [c]lass [m]embers who are active, and that this will be reflected in the sales prices that are received if they are sold in the future*." *Id.* at 522 (emphasis added). The district court concluded that the former distributors did not meet the adequacy requirement for class certification because they were no longer distributors *and*, if the proposed class were certified and the class prevailed on its claims, the current distributors were not required to become employees. *Id*. at 540. Rather, the employment relationship could be defined by future negotiations, in which the former distributors did not have a stake in how future negotiations may proceed because they were not involved in future business dealings or had a stake in the future value of the distributorships that current distributors purchase. *Id*.

This instant case does not share the same fact pattern. Here, Plaintiff and the putative class members do not receive any future contractual value akin to distributorships. Indeed, the Performance Agreement explicitly state that performers waive the right to receive "royalties, residuals, or commissions," (Performance Agreement 1 at 1; Performance Agreement 2 at 1), and the Model Release Agreement only contemplates a flat fee structure. (Model Release Agreement ¶ 4).[6]

Defendants have failed to set forth any viable arguments or evidence as to why this Court should not find in Plaintiff's favor with respect to the adequacy requirement. Finding no conflict of interest and determining Plaintiff's counsel is both qualified and competent to represent the class, the Court concludes that both named Plaintiff and Plaintiff's counsel are adequate representatives.

---

[6] To the extent that *Alfred* stands for the proposition that an alleged former employee cannot be an adequate representative of a class including current employees because the former employee does not have a current employment relationship with the defendant, this Court simply disagrees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

### E.  Rule 23(b) Requirements

Having found that Plaintiff satisfied the requirements of Rule 23(a), the Court must now determine whether Plaintiff meets her burden of demonstrating that the proposed putative class members satisfy Rule 23(b)(3).  Because Plaintiff seeks class certification pursuant to Rule 23(b)(3), that Rule requires a showing that "the questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods of fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Defendants argue that "whether Plaintiff and members of the putative class were independent contractors or employees – is not susceptible to common proof." (Opp'n at 10).  Defendants also contend that "[t]he present case involves varied claims by persons who allege VXN failed to pay them for different aspects of pre-scene preparation work."[7] (Opp'n at 11).  The Court disagrees.  Here, common questions include whether: (1) Defendants properly classified the putative class members as independent contractors in violation of California law; (2) pre-shoot preparation work is compensable labor time; (3) Defendants paid the putative class members untimely; and (4) Defendants' failure to pay wages due was willful.  Several courts have granted class certification in cases where this is the common issue, finding that the factors needed to answer the question were susceptible to common proof.  *See, e.g., Chun-Hoon v. McKee Foods Corp.*, 2006 WL 3093764 at *2 (N.D. Cal. Oct. 31, 2006) ("[T]he common questions concern whether defendant misclassified its distributors as in dependent contractors instead of employees, and these questions predominate over individual ones."); *see also Vizcaino v. United*

---

[7] Defendants incorrectly state that "Plaintiff fails to identify a uniform category of unpaid work." (Opp'n at 8).  Plaintiff alleges that the putative class members should have been compensated for time spent on health testing and grooming requirements.  (Reply at 5).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

*States Dist. Ct. for West. Dist. of Wash.*, 173 F.3d 713, 724 (9th Cir. 1999) (determining whether workers are common-law employees "generally turns on factual variables within an employer's knowledge, thus permitting categorical judgments about the 'employee' status of claimants with similar job descriptions" (citation modified).  These questions apply to the class as a whole.

Under Rule 23(b)(3), the Court must determine whether class representation is "superior" to other methods of adjudication.  Fed. R. Civ. P. 23(b)(3).  "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'"  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001).  However, "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation."  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

Defendants argue that a class action is not the superior method of adjudication because there are "complex and individualized issues" that require "fact-specific and individualized inquiry."  (Opp'n at 18, 21).  For example, Defendants argue that

> [t]he performers will need to testify about: (1) whether the person obtained a manicure or pedicure, and length of time spent; (2) whether the performer attended a wardrobe fitting, and the length of time spent; (3) whether the performer needed to blow dry his or her hair, and the length of time spent; and (4) whether the performer needed to memorize a script, and the length of time spent.

(*Id*. at 19).  But the Court agrees with Plaintiff that "Plaintiff's claims are based on common policies and practices," and there is "is little interest or benefit in having Class Members filings [sic] hundreds of separate claims individually prosecuting their status as employees."  (Mot. at 15).  Because the Court has already determined that common issues predominate, the Court finds that adjudicating the matter as a single "class action

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

is superior to other available methods of fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### IV.    CONCLUSION

Plaintiff's Motion for Class Certification is **GRANTED,** and the proposed class is **CERTIFIED** under Rule 23(b)(3).  The Court additionally **APPOINTS** the law firm of Bibiyan Law Group, P.C. as class counsel.

The Clerk is **INSTRUCTED** to vacate all hearing deadlines.  Parties are **ORDERED** to meet and confer and submit a new 26(f) Report no later than thirty (30) days after the conclusion of the Parties; upcoming mediation currently set for June 20, 2026.

**IT IS SO ORDERED.**